ORIGINAL

FILED
DEC 10 2004
U.S. COURT OF FEDERAL CLAIMS

**IN THE UNITED STATES**
**COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **PARK PROPERTIES ASSOCIATES, L.P.,**<br>**Suite 108**<br>**84 Business Park Drive**<br>**Armonk, NY 10504**<br><br>**VALENTINE PROPERTIES ASSOCIATES L.P.,**<br>**Suite 108**<br>**84 Business Park Drive**<br>**Armonk, NY 10504**<br><br>**ST. JOHN'S I ASSOCIATES, L.P.**<br>**c/o Kinpit Management**<br>**875 6th Avenue, Suite 1605**<br>**New York, NY 10001-3507**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**THE UNITED STATES OF AMERICA,**<br><br>**Defendant.** | **COURT OF FEDERAL CLAIMS NO.** 04-1757C<br><br>**COMPLAINT** |

**Preliminary Statement**

1. Plaintiffs Park Properties Associates, L.P. ("Park Properties"), Valentine Properties Associates, L.P. ("Valentine") and St. John's I Associates, L.P. ("St. John's") (jointly Park Properties, Valentine and St. John's are referred to herein as the "Plaintiffs") bring this action for damages resulting for the failure of the United States of America, acting through the Department of Housing and Urban Development ("HUD"), to provide for automatic annual rent increases from as early as 1995 through 2004 for the properties they own that participate in the Section 8 program. Pursuant to the Housing Assistance Payment Contracts ("HAP Contracts")

entered into between each of the Plaintiffs and HUD, the Plaintiffs are entitled to annual rent increases for the subject properties more fully described herein. HUD and its agents have breached the HAP Contracts by their failure and subsequent refusal to grant rent increases, mandated by the HAP Contracts, resulting in damages to the Plaintiffs jointly in the amount of approximately $2.75 Million. In addition to the monetary damages to which the Plaintiffs are entitled, the Plaintiffs ask the Court to direct HUD to adjust the current Contract Rents to reflect the adjustments that HUD has failed and subsequently refused to make and to use adjusted Contract Rents as the basis for further annual adjustments as required by the HAP Contract.

**Jurisdiction**

2. This Court has subject matter jurisdiction pursuant to the provisions of the Tucker Act, 28 U.S.C. § 1491, as this claim is founded upon breaches of an express contract entered into between the Plaintiffs and HUD.

**Parties**

3. The Plaintiffs are limited partnerships organized under the laws of the State of New York. Park Properties is the owner of an 83-unit multifamily property known as LaMartine Terrace ("LaMartine") located in Yonkers, New York. Valentine is the owner of a 110-unit multifamily property known as Lane Hill Senior Citizen Residence ("Lane Hill") also located in Yonkers, New York. St. John's is the owner of a 192-unit multifamily property known as St. John's Phase I, located in New York City. LaMartine, Lane Hill, and St. John's Phase I are referred to herein as the "Properties."

4. HUD is an agency of the United States of America and at all times relevant to the allegations in this Complaint was acting as an agent of the United States of America. The actions of HUD are therefore imputed to the United States of America.

**Statement of the Facts**

5. On September 27, 1978, pursuant to the United States Housing Act of 1937, 42 U.S.C. 1437, *et seq.*, specifically 42 U.S.C. 1437f ("Section 8"), and the Department of Housing and Urban Development Act, 42 U.S.C. 3531, *et seq.*, Park Properties entered into a HAP Contract with HUD for LaMartine ("LaMartine HAP Contract"), which was designated with Project, HUD project number NY 36-0010-003. (*see* LaMartine HAP Contract attached as Exhibit A.)

6. On September 27, 1978, pursuant to the same legal authority, Valentine entered into a HAP Contract with HUD for Lane Hill ("Lane Hill HAP Contract"), which was designated with HUD project number NY 36-0003-011 (*see* Lane Hill HAP Contract attached as Exhibit B.)

7. On September 29, 1980, pursuant to the same legal authority, St. John's entered into a HAP Contract with HUD for St. John's Phase I (the "St. John's HAP Contract"), which was designated with HUD project number NY 36-H110-050 (*see* St. John's HAP Contract attached as Exhibit C.)

8. Pursuant to the terms of the HAP Contracts, HUD is to provide housing assistance payments to the Plaintiffs for units in the Properties under lease by lower-income families.

9. The LaMartine HAP Contract set forth the initial contract rent for its 0-, 1-, and 2-bedroom units at $415, $490 and $561 per unit respectively ("Initial Contract Rents"). The Lane Hill HAP Contract set forth the Initial Contract Rents for its 0-, 1-, and 2-bedroom units at $420, $510 and $615 per unit respectively. The Initial Contract Rents for 0-, 1-, 2- and 3- bedroom units at St. John's Phase I were $496, $598, $713, and $830 per unit, respectively.

10. Under the provisions of 42 U.S.C. § 1437(c)(1), the housing assistance payments provided by HUD are designed to reimburse the Plaintiffs for the difference between the rent

called for under their respective HAP Contracts for each unit ("Contract Rent") and the amount paid by each leasing family.

11. Section 1.8(b) of the HAP Contracts, entitled Automatic Annual Adjustments, contains a mechanism whereby the Contract Rent due the Plaintiffs is to be adjusted on an annual basis and provides in full as follows:

> (1) Automatic Annual Adjustment Factors will be determined by the Government at least annually; interim revisions may be made as market conditions warrant. Such Factors and the basis for their determination will be published in the Federal Register. These published Factors will be reduced appropriately by the Government where utilities are paid directly by the Families.
>
> (2) On each anniversary date of the Contract, the Contract Rents shall be adjusted by applying the applicable Automatic Annual Adjustment Factor most recently published by the Government. Contract Rents may be adjusted upward or downward, as may be appropriate; however, in no case shall the adjusted Contract Rents be less than the Contract Rents on the effective date of the Contract.

12. Section 1.8(d) of the HAP Contracts further provides:

> (d) Overall Limitation. Not withstanding any other provisions of this Contract, adjustments as provided in this Section shall not result in material differences between the rents charged for assisted and comparable unassisted units, as determined by the Government; provided, that this limitation shall not be construed to prohibit differences in rents between assisted and comparable unassisted units to the extent that such differences may have existed with respect to the initial Contract Rents.

13. Between 1978 and 1994, the Contract Rent for LaMartine was increased pursuant to the provisions of Section 1.8(b) of the LaMartine HAP Contract to \$872, \$959 and \$1,053 per unit per month for its 0-, 1-, and 2-bedroom units, respectively.

14. Between 1978 and 1995, the Contract Rent for Lane Hill was increased pursuant to the provisions of Section 1.8(b) of the Lane Hill HAP Contract to $880, $994 and $1,138 per unit per month for its 0-, 1-, and 2-bedroom units, respectively.

15. Between 1980 and 1996, the Contract Rent for St. John's Phase I was increased pursuant to the provisions of Section 1.8(d) of the St. John's Contracts to $812, $950, $1,082 and $1,257 per unit per month for its 0-, 1-, 2- and 3-bedroom units, respectively.

16. Since the 1994 Contract Rent adjustment, the Government has published Automatic Annual Adjustment Factors each year.

17. Based upon the provisions of the HAP Contract cited above, the Plaintiffs were entitled to receive automatic Contract Rent adjustments for each year since 1998, which HUD has repeatedly failed to provide.

18. The failure by HUD to make the automatic annual adjustments to the Properties' respective Contract Rents on the HAP Contracts' anniversary dates since as early as 1995 has resulted in substantially lower housing assistance payments being made by HUD to the Plaintiffs since HUD's first failure to make the required automatic annual adjustments to those Contract Rents.

19. Despite the Plaintiffs' compliance with the express provisions of the HAP Contract, HUD continues to refuse to make retroactive rent adjustments for the years from as early as 1995 to 2004.

20. By its actions, HUD has breached the express terms of the HAP Contracts in failing to grant automatic annual adjustments in the Contract Rule in each year in which no rent adjustment was made, including the years 1995 to 2004, as applicable.

21. As a result of HUD's breach of the HAP Contract between the Plaintiffs and HUD, the Plaintiffs have been damaged in an approximate amount of $2.75 Million. The Plaintiffs are therefore entitled to the monetary and ancillary injunctive relief described hereinafter.

WHEREFORE, the Plaintiffs pray that this Court award it money damages in the amount of at least $2.75 Million for the years from as early as 1995 to 2004, all additional money damages suffered by Plaintiffs from the filing of the within Complaint until entry of judgment, or such additional or other amounts that are proved at trial, together with the pre- and post-judgment interest, attorney fees and any such other relief that the Court deems proper.

In addition, the Plaintiffs pray that this Court remand this matter to HUD and order that HUD adjust the Properties current Contract Rents to reflect those adjustments which HUD was required but failed to make, and order that the adjusted Contract Rents serve as the basis for all future Contract Rent adjustments which are required to be made by HUD pursuant to the terms of the HAP Contracts.

Respectfully Submitted,

Dated: December 10, 2004

Harry J. Kelly, Esq.
NIXON PEABODY LLP
401 9th Street, NW
Suite 900
Washington, DC 20004
(202) 585-8000

Attorney for Plaintiff