No. 04-1757C
(Judge Allegra)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

PARK PROPERTIES ASSOCIATES, L.P., et al.,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

---

DEFENDANT'S MOTION TO DISMISS IN PART
OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

JOHN E. KOSLOSKE
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., Room 8012
Washington, D.C. 20530
Tele: (202) 307-0282
(FAX)(202) 514-8624

Attorneys for Defendant

OF COUNSEL:

C. ALLEN VILLAFUERTE
Trial Attorney
Office of General Counsel
Department of Housing
and Urban Development
Washington, DC

JULY 29, 2005

# TABLE OF CONTENTS

Page(s)

DEFENDANT'S MOTION TO DISMISS IN PART OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT . . . . . 1

BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS IN PART OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT . . . . . 2

STATEMENT OF THE ISSUES . . . . . 2

STATEMENT OF THE CASE . . . . . 3

I. Nature Of The Case . . . . . 3

II. The Section 8 Housing Assistance Payments (HAP) Program . . . . . 4

A. The Section 8 Statute . . . . . 4

B. The Section 8 HAP Programs For New Construction And Substantial Rehabilitation . . . . . 5

C. Rent Subsidy Payments Under The Section 8 HAP Program . . . . . 6

D. Annual Rent Adjustments Under The Owners' HAP Contracts . . . . . 7

STATEMENT OF THE FACTS . . . . . 8

ARGUMENT . . . . . 8

I. The Jurisdiction Of Court Of Federal Claims Is Limited . . . . . 8

II. Rule 12(b)(1) Motion Standards . . . . . 9

III. Summary Judgment Standards . . . . . 9

IV. Standards Of Contract Interpretation . . . . . 11

**TABLE OF CONTENTS (CONT'D)**

V. The Court Lacks Jurisdiction To Entertain The Owners' Breach-Of-Contract Claims Based Upon The Alleged Failure By HUD To Adjust Contract Rents Under The Owners' HAP Contracts On The HAP Contract Anniversary Dates For The Years 1995, 1996, 1997, And 1998, Because Those Claims Accrued More Than Six Years Before This Suit Was Commenced . . . . . 12

VI. St. John's I Associates, L.P., May Not Maintain An Action For Breach Of The St. John's HAP Contract With Respect To Stage 1 Dwelling Units Based Upon HUD's Failure To Adjust Contract Rents On Or After July 1, 2002, Because The HAP Contract Ended On June 30, 2002, With Respect To The Stage 1 Units . . . . . 18

VII. St. John's I Associates, L.P., May Not Maintain An Action For Breach Of The St. John's HAP Contract With Respect To Stage 2 And Stage 3 Dwelling Units Based Upon HUD's Failure To Adjust Contract Rents After July 1, 2002, Because The HAP Contract Ended On September 21, 2002, With Respect To The Stage 2 Units And Ended On December 14, 2002 With Respect To The Stage 3 Units . . . . . 19

VIII. Insofar As Any Of The Rent Adjustment Claims Of Plaintiff St. John's I Associates, L.P., Are Based Upon The Alleged Breach By HUD Of Any Section 8 Rent Subsidy Agreement Entered By St. John's I Associates, L.P., That Replaced The Expired St. John's HAP Contract, The Court Lacks Jurisdiction To Entertain Those Claims, Inasmuch As The Government Is Not A Party To Any Section 8 Replacement Rent Subsidy Agreement . . . . . 21

IX. To The Extent That Any Of The Rent Adjustment Claims Of Plaintiff St. John's I Associates, L.P., Are Based Upon The Alleged Breach By HUD Of Any Of The Section 8 Rent Subsidy Agreements Entered By St. John's I Associates, L.P., Which Replaced The Expired St. John's HAP Contract, Those Claims Lack Merit Because The Section 8 Replacement Rent Subsidy Agreements Did Not Incorporate Any Rent Adjustment Provisions Of The Expired HAP Contract Or Otherwise Contain Any Rent Adjustment Provisions Similar To Those Of The Expired HAP Contract . . . . . 23

CONCLUSION . . . . . 25

# TABLE OF AUTHORITIES

## CASES

Alaska Pulp & Lumber Co. v. Madigan,
2 F.3d 389 (Fed. Cir. 1993) .......... 11

Alder Terrace, Inc. v. United States,
161 F.3d 1372 (Fed. Cir. 1998) .......... 9, 14

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) .......... 9, 10

Appalachian Regional Healthcare, Inc. v. United States,
999 F.2d 1573 (Fed. Cir. 1993) .......... 8

Booth v. United States,
990 F.2d 617 (Fed. Cir. 1993) .......... 9

Brighton Village Associates v. United States,
52 F.3d 1056 (Fed. Cir. 1995) .......... 14

Brown Park Estates-Fairfield Development Co. v. United States,
127 F.3d 1449 (Fed. Cir. 1997) .......... 14, 15, 16, 17

C.W. Travel, Inc. v. United States,
63 Fed. Cl. 369 (2004) .......... 9

Celentano v. United States,
41 Fed. Cl. 596 (1998) .......... 9, 14

Celotex Corp. v. United States,
477 U.S. 317 (1986) .......... 10, 11

Central Transport International, Inc. v. United States,
63 Fed. Cl. 336 (2004) .......... 21

Cienega Gardens v. United States,
194 F.3d 1231 (Fed. Cir. 1998), cert. denied, 528 U.S. 820 (1999) .......... 21

Cisneros v. Alpine Ridge Group,
508 U.S. 10 (1993) .......... 7

Commodities Recovery Corp. v. United States, 34 Fed. Cl. 282 (1995) .......... 9,10,11

## TABLE OF AUTHORITIES (CONT'D)

## CASES (CONT'D)

Ervin and Associates, Inc. v. United States,
44 Fed. Cl. 646 (1999) .......... 9

Firestone Tire & Rubber Co. v. United States,
195 Ct. C l. 21, 444 F.2d 547 (1971) .......... 11

Globex Corp. v. United States,
54 Fed. Cl. 343 (2002) .......... 9,22

Government Systems Advisors, Inc. v. United States,
847 F.2d 811 (Fed. Cir. 1988) .......... 10

Grumman Data Systems Corp. v. Dalton,
88 F.3d 990 (Fed. Cir. 1996) .......... 11

Hart v. United States,
910 F.2d 815 (Fed. Cir. 1990) .......... 8

Hol-Gar Mfg. Corp. v. United States,
169 Ct. Cl. 384, 351 F.2d 972 (1965) .......... 11, 12

Hunt Construction Group, Inc. v. United States,
281 F.3d 1369 (Fed. Cir. 2002) .......... 11, 12

Keco Industries, Inc. v. United States,
176 Ct. Cl. 983, 364 F.2d 838 (1966), cert. denied, 386 U.S. 958 (1967) ..........11

Kinsey v. United States,
852 F.2d 556 (Fed. Cir. 1988) .......... 14

L. W. Matteson, Inc. v. United States,
61 Fed. Cl. 296 (2004) .......... 10

Malone v. United States,
34 Fed. Cl. 257 aff'd, 64 F.3d 676 (Fed. Cir. 1995) (Table) .......... 22

Massachusetts Port Authority v. United States,
197 Ct. Cl. 721, 456 F.2d 782 (1972) .......... 11

## TABLE OF AUTHORITIES (CONT'D)

## CASES (CONT'D)

Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,
475 U.S. 574 (1986) .......... 10

Mayflower Transit Co. v. United States,
162 Ct. Cl. 233 (1963) .......... 12

McAbee Construction, Inc. v. United States,
97 F.3d 1431 (Fed. Cir. 1996) .......... 11

National Leased Housing Ass'n v. United States,
105 F.3d 1423 (Fed. Cir. 1997) .......... 21

Park Village Apartments v. United States,
25 Cl. Ct. 729 (1992) .......... 15

Ransom v. United States,
900 F.2d 242 (Fed. Cir. 1990) .......... 21

Reynolds v. AAFES,
846 F.2d 746 (Fed. Cir. 1988) .......... 9

Spirit Leveling Contractors v. United States, 19 Cl. Ct. 84 (1989) .......... 10

Statesman II Apartments, Inc. v. United States,
Nos. 04-805C, 04-806C (Fed. Cl., July 20, 2005) .......... 16

Sweats Fashions, Inc. v. Pennill Knitting Co.,
833 F.2d 1560 (Fed. Cir. 1987) .......... 10

Unicon Management Corp. v. United States,
179 Ct. Cl. 534, 375 F.2d 804 (1967) .......... 12

United States v. Mitchell,
445 U.S. 535 (1980) .......... 8

United States v. Testan,
424 U.S. 392 (1976) .......... 8

## TABLE OF AUTHORITIES (CONT'D)

### STATUTES

United States Code:

28 U.S.C. § 2501 .......... 2,14,15,16,18

42 U.S.C. § 1437a(a) (1994) .......... 6

42 U.S.C. § 1437a(b)(6) (2000) .......... 6,19

42 U.S.C. § 1437f .......... 4

42 U.S.C. § 1437f(c)(3)(A) (1994) .......... 7

42 U.S.C. § 1437f(a) (1970 & Supp. 1974) .......... 4

42 U.S.C. § 1437f(c)(1) .......... 5

Public Laws:

Housing and Community Development Act of 1974, Pub. L. No.
Pub. L. No. 93-383, § 201(a), 88 Stat. 633, 653-67 (1974) .......... 4

Housing and Urban-Rural Recovery Act of 1983,
Pub. L. No. 98-181, § 209(a)(1), 97 Stat. 1155, 1183 (1983) .......... 5

Tucker Act (28 U.S.C. § 1491(a)(1)) .......... 2,21

United States Housing Act of 1937, as amended, § 8 (42 U.S.C. 1437f) .......... passim

### REGULATIONS

Code of Federal Regulations:

24 C.F.R. §§ 880.201 & 881.201 (1994) .......... 6

24 C.F.R. §§ 880.301-405 & 881.301-405 (1994) .......... 6

24 C.F.R. §§ 880.501(d)(1) & 881.501(d)(1) (1994) .......... 6

24 C.F.R. § 888.203(b) (1994) .......... 8, 14, 18

## TABLE OF AUTHORITIES (CONT'D)

### REGULATIONS (CONT'D)

24 C.F.R. Part 880 (1994) ........................................ 5

24 C.F.R. Part 881 (1994) ........................................ 5

Federal Register:

42 Fed. Reg. 60,508 (11/25/77) ........................................ 8

44 Fed. Reg. 21,769 (4/12/79) ........................................ 8

### MISCELLANEOUS

Court Rules:

RCFC 1(a)(2) ........................................ 10

RCFC 12(b)(1) ........................................ 1

RCFC 12(h)(3) ........................................ 1

RCFC 56 ........................................ 1

RCFC 56(b) ........................................ 2

RCFC 56(c) ........................................ 9

# INDEX TO DEFENDANT'S APPENDIX

**Document** **Page**

Rule 30(b)(6) Deposition of Park Properties Associates, L.P., Valentine Associates, L.P., and St. John's I Associates, L.P. (Stephen Bolduc) ............. 1

"Defendant's Revised Notice of Rule 30(b)(6) Deposition" dated June 20, 2005 ....... 34

**Park Properties Associates, L.P. (LaMartine Terrace)**

Park Properties HAP Contract re: LaMartine Terrace effective on June 1, 1979 ........................................................................ 38

Letter dated February 8, 1995, from Jerome Z. Ginsburg, Park Property Associates to Gerard W. Sheridan, Director, Housing Management Division, HUD New York Regional Office re: transfer of LaMartine Terrace and Lane Hill to limited partnerships ................................................ 56

Assignment of Park Properties HAP Contract dated July 1, 1996 ............................... 57

Letter dated April 7, 1994, from HUD New York Regional Office (Sheridan) to Park Properties (Bolduc) re: rent adjustment effective on June 1, 1994 ....... 58

**Valentine Associates, L.P. (Lane Hill Senior Citizen Residence)**

Valentine HAP Contract re: Lane Hill effective on January 2, 1980 ................................................................... 61

Letter dated June 25, 1996, from Jerome Z. Ginsburg to HUD New York Regional Office (Sheridan) re: transfer of LaMartine Terrace and Lane Hill to limited partnerships ........................................................... 76

Assignment of Valentine HAP Contract dated July 1, 1996 ......................................... 78

Letter dated March 9, 1995, from Beryl H. Niewood, Acting Director, Multifamily Housing Division, HUD New York Regional Office to Carla Forgione, Valentine Associates, re: rent adjustment effective on January 2, 1994 ................................................................... 79

Letter dated May 10, 1995, from HUD New York Regional Office (Niewood) to Carla Forgione, Valentine Associates, re: rent adjustment determination effective on January 2, 1995 ................................. 83

**INDEX TO DEFENDANT'S APPENDIX (CONT'D)**


**Document** **Page**

**St. John's I Associates, L.P. (St. John's Phase I)**

Commitment for Insurance of Advances dated September 30, 1980, as amended July 9, 1981, re: St. John's Phase I .............................................. 87

Mortgage dated August 25, 1981 re: St. John's Phase I ............................................. 92

Mortgage Note dated August 25, 1981 re: St. John's Phase I ..................................... 99

Insurance Termination Request for Multifamily Mortgage dated December 4, 2003, re: St. John's Phase I ......................................................................... 103

Certificate of Limited Partnership for St. John's I Associates, L.P., dated April 22, 1981 ......................................................................... 104

Previous Participation Certificate re: St. John's Phase I for Unitroy Construction Corp. dated April 18, 1980 ........................................................ 113

Assignment of Partnership Interest in St. John's I Associates. L.P., dated March 2, 1993 ......................................................................... 115

Amended Certificate of Limited Partnership St. John's I Associates, L.P., dated March 2, 1993, ......................................................................... 116

Rule 30(b)(6) Deposition of Park Properties Associates, L.P., Valentine Associates, L.P., and St. John's I Associates, L.P. (Henry Salmond) ............. 118

St. John's HAP Contract effective on July 1, 1982 .................................................... 130

Letter dated October 7, 1994, from HUD New York Regional Office (Sheridan) to Troy Stevens, Jr., President, Kinpit Management, re: rent adjustment effective on July 1, 1994 ......................................................................... 147

Rent comparability study by Eugene Chin, Certified Appraiser, re: St. John's Phase I dated August 2, 1996 ............................................................. 150

Letter from Rochelle Printz, Chief, Asset Management Branch, HUD New York Regional Office, to Kinpit Management (Stevens) re: rent adjustment determination effective on July 1, 1995 ........................................................ 154

**INDEX TO DEFENDANT'S APPENDIX (CONT'D)**


**Document** **Page**

HUD Worksheet for July 1, 1995 rent adjustment determination for St. John's Phase I ........ 157

Letter from Rochelle Printz, Chief, Asset Management Branch, HUD New York Regional Office, to Kinpit Management (Stevens) re: rent adjustment effective on July 1, 1996 ........ 173

HUD Worksheet for July 1, 1996 rent adjustment for St. John's Phase .I ........ 176

Letter dated November 19, 2001, from Henry Salmond, Vice President, Kinpit Management, to "All Tenants" re: Notice of Expiration of St. John's HAP Contract on June 30, 2002 ........ 177

Letter dated January 2, 2002, from Camille Ferrell Knighton, Contract Renewal Specialist, Quadel Consulting Corp., to St. John's I Associates re: expiration of St. John's HAP Contract on June 30, 2002 ........ 178

HAP Interim Mark-To-Market Renewal Contract re: St. John's Phase I effective on July 1, 2002 ........ 179

HAP Interim Mark-To-Market Renewal Contract re: St. John's Phase I effective on September 22, 2002 ........ 192

HAP Interim Mark-To-Market Renewal Contract re: St. John's Phase I effective on December 15, 2002 ........ 208

HAP Watch List Renewal Contract re: St. John's Phase I effective on August 3, 2003 ........ 224

Letter dated September 29, 2004, from Katherine Ozminkowski, Contract Renewal Rent Specialist, Quadel Consulting Corp., re: Notification of Short Term HAP Contract Renewal ........ 239

HAP Basic Renewal Contract re: St. John's Phase I effective on August 1, 2004 ........ 241

HAP Renewal Contract for Mark-Up-To-Market Project re: St. John's Phase I effective on August 6, 2004 ........ 258

## INDEX TO DEFENDANT'S APPENDIX (CONT'D)

**Document** **Page**

Annual Contributions Contract between New York State Housing Trust Fund Corporation and HUD (9/28/00) ........ 271

Contract Between Quadel Consulting Corporation and New York State Housing Trust Fund Corporation (10/4/00) ........ 358

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PARK PROPERTIES ASSOCIATES, L.P., et al., Plaintiffs, | ) | No. 04-1757C |
| v. | ) | (Judge Allegra) |
| THE UNITED STATES, Defendant. | ) | |

DEFENDANT'S MOTION TO DISMISS IN PART OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT

Pursuant to ¶ 3 of the Court's Order filed on April 21, 2005,[1] and RCFC 12(b)(1),[2] defendant, the United States, requests that the Court dismiss for lack of jurisdiction the rent adjustment claims of plaintiffs Park Properties Associates, L.P., Valentine Associates, L.P., and St. John's I Associates, L.P., for the years 1995 through 1998, any claim for breach of the St. John's HAP Contract, which was executed in stages with different effective dates, with respect to dwelling units to which Stage 1 applies based upon HUD's failure to adjust contract rents under the St. John's HAP Contract on or after July 1, 2002, and any claim for breach of the St. John's HAP Contract with respect to dwelling units to which any Stage 2 or Stage 3 applies based upon the failure of HUD to adjust contract rents under the St. John's HAP Contract after the July 1, 2002 contract anniversary date. In the alternative, defendant requests that the Court enter partial sum-

---

[1] The April 21, 2005 Order provides that, "[o]n or before July 29, 2005, the parties shall file any dispositive motions under RCFC 12(b)(1) or RCFC 56."

[2] Rule 12(b)(1) provides that "[e]very defense, in law or in fact, to a claim for relief in any pleading . . . shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter . . . ." See also RCFC 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.").

mary judgment for defendant upon those claims pursuant to RCFC 56(b)[3] upon the grounds that there is no genuine issue as to any material fact and that defendant is entitled to judgment as a matter of law. In support of this application, we rely upon the pleadings of record, the following brief, and related appendix.[4]

BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS IN PART OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT

STATEMENT OF THE ISSUES

1. Whether the Court lacks jurisdiction to entertain plaintiffs' breach-of-contract claims based upon the alleged failure of the Department of Housing and Urban Development (HUD) to adjust contract rents under plaintiffs' Housing Assistance Payments (HAP) contracts for the years 1995, 1996, 1997, and/or 1998, inasmuch as those claims accrued more than six years before this suit was commenced and, therefore, are barred by 28 U.S.C. § 2501, the six-year statute of limitations applicable to suits under the Tucker Act, 28 U.S.C. § 1491(a)(1), such as the present suit.

2. Whether plaintiff St. John's I Associates, L.P., may maintain an action for breach of the St. John's HAP Contract, which was executed in stages with different effective dates, with respect to dwelling units to which Stage 1 applies based upon HUD's failure to adjust contract rents on or after July 1, 2002, inasmuch as the HAP Contract ended on June 30, 2002, with respect to the Stage 1 units.

---

[3] Rule 56(b) provides that "[a] party against whom a claim . . . is asserted . . . may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof."

[4] In this brief, "Compl. ¶ ____" refers to the referenced paragraph(s) of the "Complaint" filed on December 10, 2004; "DPFUF ¶ ____" refers to the referenced paragraph(s) of "Defendant's Proposed Findings of Uncontroverted Fact" dated July 29, 2005; and "Def. App. ____" refers to the referenced page(s) of the appendix to this brief.

3. Whether plaintiff St. John's I Associates, L.P., may maintain an action for breach of the St. John's HAP Contract with respect to dwelling units to which Stages 2 and 3 apply based upon HUD's failure to adjust contract rents after July 1, 2002, inasmuch as the HAP Contract ended on September 21, 2002, with respect to the Stage 2 units, and ended on December 14, 2002, with respect to the Stage 3 units.

4. Whether, to the extent that any of the rent adjustment claims of plaintiff St. John's I Associates, L.P., are based upon the alleged breach by HUD of any of the Section 8 rent subsidy agreements entered by St. John's I Associates, L.P., that replaced the expired St. John's HAP Contract, the Court lacks jurisdiction to entertain those claims, inasmuch as the Government is not a party to any replacement rent subsidy agreement.

5. Whether, to the extent that any of the rent adjustment claims of plaintiff St. John's I Associates, L.P., are based upon the alleged breach by HUD of any of the Section 8 rent subsidy agreements entered by St. John's I Associates, L.P., which replaced the expired St. John's HAP Contract, those claims lack merit, inasmuch as the replacement rent subsidy agreements did not incorporate any rent adjustment provisions of the expired HAP Contract or otherwise contain any rent adjustment provisions similar to those of the expired HAP Contract.

## STATEMENT OF THE CASE

### I. Nature Of The Case

Plaintiffs Park Properties Associates, L.P. ("Park Properties"), Valentine Associates, L.P. ("Valentine"), and St. John's I Associates, L.P. ("St. John's") (collectively referred to herein as "the Owners"), own multifamily rental housing projects in the New York City area. The rents of the low-income tenants in these housing projects are or, in St. John's case, at one time were,

subsidized by the Government pursuant to rent subsidy agreements between the Owners and the Government known as "Housing Assistance Payments Contracts." The Complaint seeks damages for alleged breaches of contract based upon the failure of the Government to adjust the contract rents annually on the HAP contract anniversary dates for the years 1995-2004. See Compl. ¶¶ 18-20. The Owners allege that, as a result of the putative breaches by the Government of the HAP contracts, they have been damaged in the approximate amount of $2.75 million. Compl. ¶ 21.

II. The Section 8 Housing Assistance Payments (HAP) Program

A. The Section 8 Statute

Section 8 of the United States Housing Act of 1937, as amended (42 U.S.C. § 1437f) (the Section 8 statute),[5] creates a statutory scheme pursuant to which the United States, through HUD, directly or indirectly subsidizes the rents of low-income individuals and families living in privately-owned buildings. This litigation concerns claims by owners of "newly constructed" or "substantially rehabilitated" housing with respect to which, at all relevant times, the Section 8 statute provided that "assistance payments" "may be made . . . in accordance with the provisions" of that statute for "the purpose of aiding lower-income families in obtaining a decent place to live and of promoting economically mixed housing." 42 U.S.C. § 1437f(a) (1970 & Supp. 1974).[6]

---

[5] Section 8 was enacted as part of section 201(a) of the Housing and Community Development Act of 1974, Pub. L. No. 93-383, 88 Stat. 633, 653-67 (1974), which amended the United States Housing Act of 1937 in this and other respects.

[6] In 1983, Congress amended 42 U.S.C. § 1437f(a) by repealing the Section 8 "newly constructed, and substantially rehabilitated" programs, but grandfathering existing Section 8 New (continued...)

As originally enacted and at the time the Owners' HAP contracts were executed, the Section 8 statute specified that "[a]n assistance contract entered into pursuant to this section shall establish the maximum monthly rent (including utilities and all maintenance and management charges) which the owner is entitled to receive for each dwelling unit to which such assistance payments are to be made." 42 U.S.C. § 1437f(c)(1) (1970 & Supp. IV 1974). In addition, section 8(c)(2) provided, in part, with respect to the adjustment of contract rents:

> (A) The assistance contract shall provide for adjustment annually or more frequently in the maximum monthly rents for units covered by the contract to reflect changes in the fair market rentals established in the housing area for similar types and sizes of dwelling units or, if the Secretary determines, on the basis of a reasonable formula.
>
> * * * * *
>
> (C) Adjustments in the maximum rents as hereinbefore provided shall not result in material differences between the rents charged for assisted and comparable unassisted units, as determined by the Secretary.

42 U.S.C. § 1437f(c)(2) (1982).

B. The Section 8 HAP Programs For New Construction And Substantial Rehabilitation

HUD has established by regulations a variety of programs implementing the Section 8 statute, including programs addressing "newly constructed" and "substantially rehabilitated" rental housing projects. See 24 C.F.R. Part 880 (1994) ("Section 8 Housing Assistance Payments Program for New Construction"); 24 C.F.R. Part 881 (1994) ("Section 8 Housing Assistance

---

[6](...continued)
Construction and Substantial Rehabilitation HAP projects, such as the Owners' projects in this case, as being subject to the Section 8 laws. See section 209(a)(1) of the Housing and Urban-Rural Recovery Act of 1983, Pub. L. No. 98-181, 97 Stat. 1155, 1183 (1983).

Payments Program for Substantial Rehabilitation"). In each of these programs, proposals were solicited for the construction or rehabilitation of housing the rents for which would be subsidized under agreements entered into pursuant to the Section 8 statute. Upon selection and approval of a proposal, the project owner and HUD or a "public housing agency,"[7] as the case may be, would execute an "Agreement to Enter into a Housing Assistance Payments Contract" under which they agreed to execute a HAP contract upon the owner's satisfactory completion of the project. See 24 C.F.R. §§ 880.301-405 & 881.301-405 (1994).

C. Rent Subsidy Payments Under The Section 8 HAP Program

The rent subsidy is provided in one of two ways. HUD enters a HAP contract directly with the owner of a housing project, or it enters into an "annual contributions contract" with a "public housing agency" (PHA) which, in turn, enters into a HAP contract with a project owner. In either case, the HAP contract is the vehicle for payment of the Section 8 rent subsidy ("housing assistance payment") to the project owner.

The HAP contract specifies a monthly rent for dwelling units covered by the agreement, termed the "contract rent." 24 C.F.R. §§ 880.201 & 881.201 (1994) ("Contract Rent" defined). Under the HAP contract, the tenant pays the owner a portion of the contract rent, which is based upon the tenant's income. 42 U.S.C. § 1437a(a) (1994); 24 C.F.R. §§ 880.201 & 881.201 (1994) ("tenant rent" defined). The governmental entity with which the owner contracts (either HUD or a PHA) pays a rent subsidy to the owner equal to the difference between the tenant rent and the

[7] A "public housing agency" is defined as "any State, county, municipality, or other governmental entity or public body (or agency or instrumentality thereof) which is authorized to engage in or assist in the development or operation of public housing." 42 U.S.C. § 1437a(b)(6)(A) (2000).

contract rent. 42 U.S.C. § 1437f(c)(3)(A) (1994); 24 C.F.R. §§ 880.501(d)(1) & 881.501(d)(1) (1994).

D. Annual Rent Adjustments Under The Owners' HAP Contracts

The rent adjustment provisions contained in the Owners' HAP contracts are virtually identical. The HAP contracts provide:

> b. Automatic Annual Adjustments
>
> (1) Automatic Annual Adjustment Factors will be determined by the Government at least annually; interim revisions may be made as market conditions warrant. Such Factors and the basis for their determination will be published in the Federal Register. These published Factors will be reduced appropriately by the Government where utilities are paid directly by the Families.
>
> (2) On each anniversary date of the Contract, the Contract Rents shall be adjusted by applying the applicable Automatic Annual Adjustment Factor most recently published by the Government. Contract Rents may be adjusted upward or downward, as may be appropriate; however, in no case shall the adjusted Contract Rents be less than the Contract Rents on the effective date of the Contract.

HAP Contracts, Part I, § 1.8b, Def. App. 41, 65, 134; see also DPFUF ¶¶ 6, 15, 26.[8]

HUD regulations specify how annual rent adjustments pursuant to section 1.8b(2) of the Owners' HAP contracts were to be made:

---

[8] This method of adjusting contract rents is subject to an "Overall Limitation" contained in the Owners' HAP contracts that trumps the other rent adjustment provisions. See Cisneros v. Alpine Ridge Group, 508 U.S. 10, 17-19 (1993). The "Overall Limitation" provides: "Notwithstanding any other provisions of this Contract, adjustments as provided in this Section shall not result in material differences between the rents charged for assisted and comparable unassisted units, as determined by the Government; provided, that this limitation shall not be construed to prohibit differences in rents between assisted and comparable unassisted units to the extent that such differences may have existed with respect to the initial Contract Rents." HAP Contracts, Part I, § 1.8d, Def. App. 41, 65, 134; see also DPFUF ¶¶ 6, 15, 26.

> The adjusted monthly amount of the Contract Rent of a dwelling unit shall be determined by multiplying the Contract Rent in Effect on the anniversary date of the contract by the applicable Automatic Annual Adjustment Factor . . . and rounding the result to the next higher whole dollar amount.

See 24 C.F.R. § 888.203(b) (1994).[9] For example, if the monthly contract rent for a dwelling unit in effect on the HAP contract anniversary date is $100 per unit and the applicable AAF is 1.05, the new monthly contract rent adjusted in accordance with the AAF would be $105 (1.05 *x* $100).

STATEMENT OF THE FACTS

For our statement of facts, we respectfully refer the Court to "Defendant's Proposed Findings of Uncontroverted Fact" dated July 29, 2005. In this brief, we reference those facts and other informative facts that are necessary to our argument.

ARGUMENT

I. The Jurisdiction Of Court Of Federal Claims Is Limited.

The Court of Federal Claims "is a court of limited jurisdiction and, absent congressional consent to entertain a claim against the United States, the court lacks jurisdiction over that claim." Appalachian Regional Healthcare, Inc. v. United States, 999 F.2d 1573, 1577 (Fed. Cir. 1993) (citing United States v. Testan, 424 U.S. 392, 399 (1976)). Congressional consent to suit, thereby waiving the Government's traditional immunity from suit, must be explicit and strictly construed. United States v. Mitchell, 445 U.S. 535, 538 (1980); Hart v. United States, 910 F.2d 815, 817 (Fed. Cir. 1990). "The burden of proving that the Court of Federal Claims has subject

---

[9] This regulation was initially issued on November 25, 1977, and amended on April 12, 1979. See 42 Fed. Reg. 60,508 (11/25/77); 44 Fed. Reg. 21,769 (4/12/79).

matter jurisdiction over a claim rests with the party seeking to invoke its jurisdiction," i.e., the Owners in this case. Ervin and Associates, Inc. v. United States, 44 Fed. Cl. 646, 652 (1999); accord Alder Terrace, Inc. v. United States, 161 F.3d 1372, 1377 (Fed. Cir. 1998); Booth v. United States, 990 F.2d 617, 619 (Fed. Cir. 1993); Reynolds v. AAFES, 846 F.2d 746, 748 (Fed. Cir. 1988).

II. Rule 12(b)(1) Motion Standards

RCFC 12(b)(1) "governs dismissal of a claim for lack of subject matter jurisdiction." C.W. Travel, Inc. v. United States, 63 Fed. Cl. 369, 380 (2004). When considering a motion to dismiss, the Court "may consider all relevant evidence in order to resolve any disputes as to the truth of the jurisdictional facts alleged in the complaint." Celentano v. United States, 41 Fed. Cl. 596, 600 (1998) (citing Reynolds, 846 F.2d at 747). The Court "accepts as true all undisputed allegations of fact asserted by the plaintiff and construes all reasonable inferences in the plaintiff's favor." Globex Corp. v. United States, 54 Fed. Cl. 343, 346 (2002).

The Owners have the burden of establishing that the Court has jurisdiction to entertain their rent adjustment claims, inasmuch as they are the parties invoking the jurisdiction of the Court to entertain their claims. As such, the Owners "bear[] the burden of pleading the facts upon which the court's jurisdiction depends." Ervin, 44 Fed. Cl. at 652.

III. Summary Judgment Standards

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. RCFC 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Commodities Recovery Corp. v. United States, 34 Fed. Cl. 282, 287-88 (1995). Summary judgment is not a disfavored procedural shortcut;

it is an integral part of the Court's rules as a whole, which are to be construed to secure the just, speedy, and inexpensive determination of every action. Celotex Corp. v. United States, 477 U.S. 317, 327 (1986); Sweats Fashions, Inc. v. Pennill Knitting Co., 833 F.2d 1560, 1562 (Fed. Cir. 1987); Spirit Leveling Contractors v. United States, 19 Cl. Ct. 84, 89 (1989); see also RCFC 1(a)(2).

A dispute is "genuine" if, on the entirety of the record, the evidence is such that a reasonable jury could resolve a factual matter in favor of the nonmoving party. Anderson, 477 U.S. at 248; Sweats Fashions, 833 F.2d at 1562. Thus, when the record as a whole would not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Commodities Recovery, 34 Fed. Cl. at 288. A fact is "material" if it could affect the outcome of the suit and its materiality is determined by the substantive law applicable to the case. Anderson, 477 U.S. at 248; Spirit Leveling, 19 Cl. Ct. at 89. "Contract interpretation is a matter of law and thus amenable to decision on summary judgment." Government Systems Advisors, Inc. v. United States, 847 F.2d 811, 812 n.1 (Fed. Cir. 1988); accord L. W. Matteson, Inc. v. United States, 61 Fed. Cl. 296, 307 (2004) (Contract interpretation is "an appropriate predicate for summary judgment.").

The party moving for summary judgment bears the initial burden of demonstrating either the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. Celotex, 477 U.S. at 325; Sweats Fashions, 833 F.2d at 1563; Commodities Recovery, 34 Fed. Cl. at 288. If the moving party makes that showing, the burden shifts to the nonmoving party to demonstrate that a genuine dispute exists with respect to a material fact by pointing to evidence of record or proffering evidence establishing an essential element of its

case upon which it bears the burden of proof. Celotex, 477 U.S. at 322; Commodities Recovery, 34 Fed. Cl. at 288.

IV. Standards Of Contract Interpretation

The "intention of the parties to a contract controls its interpretation." Firestone Tire & Rubber Co. v. United States, 195 Ct. Cl. 21, 30, 444 F.2d 547, 551 (1971). A court's "ultimate goal is always to give effect to the expressed or implied intentions of the contracting parties." Massachusetts Port Authority v. United States, 197 Ct. Cl. 721, 726, 456 F.2d 782, 784 (1972). A contract, thus, "is to be read from its four corners." Keco Industries, Inc. v. United States, 176 Ct. Cl. 983, 990, 364 F.2d 838, 842-43 (1966), cert. denied, 386 U.S. 958 (1967) (internal quotation marks omitted).

Interpretation of a contract "[b]egins with the plain language." McAbee Construction, Inc. v. United States, 97 F.3d 1431, 1435 (Fed. Cir. 1996). The language of a contract "is given its ordinary and commonly accepted meaning unless it is shown that the parties intended otherwise." Hol-Gar Mfg. Corp. v. United States, 169 Ct. Cl. 384, 390, 351 F.2d 972, 975 (1965). "A contract term is unambiguous when there is only one reasonable interpretation." Grumman Data Systems Corp. v. Dalton, 88 F.3d 990, 997 (Fed. Cir. 1996). "When the contract language is unambiguous on its face, [the court's] inquiry ends, and the plain language of the contract controls." Hunt Construction Group, Inc. v. United States, 281 F.3d 1369, 1373 (Fed. Cir. 2002); accord Alaska Pulp & Lumber Co. v. Madigan, 2 F.3d 389, 392 (Fed. Cir. 1993) ("Where contract provisions are clear and unambiguous, they must be given their plain and ordinary meaning.").

A "contract must be considered as a whole and interpreted to effectuate its spirit and purpose, giving reasonable meaning to all parts." Hunt, 281 F.3d at 1372. An interpretation "which gives a reasonable meaning to all parts of an instrument will be preferred to one which leaves a portion of it useless, inexplicable, inoperative, void, insignificant, meaningless or superfluous; nor should any provision be construed as being in conflict with another unless no other reasonable interpretation is possible." Hol-Gar, 169 Ct. Cl. at 395, 351 F.2d at 979; see also Unicon Management Corp. v. United States, 179 Ct. Cl. 534, 537, 375 F.2d 804, 806 (1967) (Where possible, it is preferable "to interpret the provisions of a contract as coordinate and not contradictory."). Twisted or strained, out-of-context analysis is to be eschewed. Mayflower Transit Co. v. United States, 162 Ct. Cl. 233, 237 (1963).

V. The Court Lacks Jurisdiction To Entertain The Owners' Breach-Of-Contract Claims Based Upon The Alleged Failure By HUD To Adjust Contract Rents Under The Owners' HAP Contracts On The HAP Contract Anniversary Dates For The Years 1995, 1996, 1997, And 1998, Because Those Claims Accrued More Than Six Years Before This Suit Was Commenced.

The Owners allege that, between 1978 and 1994 in the case of Park Properties, between 1978 and 1995 in the case of Valentine, and between 1980 and 1996 in the case of St. John's, contract rents under their HAP contracts were "increased pursuant to the provisions of Section 1.8(b) of [the Owners' HAP contracts]." Compl. ¶¶ 13-15. In other words, the Owners allege that, between those dates, the contract rents under their HAP contracts were adjusted annually by HUD based upon applicable annual adjustment factors (AAFs) published in the Federal Register.

The Owners further contend, however, that, after 1994 in the case of Park Properties, after 1995 in the case of Valentine, and after 1996 in the case of St. John's, HUD failed to make annual rent adjustments in accordance with section 1.8b of the Owners' HAP contracts "on the

HAP Contracts' anniversary dates," which, the Owners contend, "resulted in substantially lower housing assistance payments being made by HUD to [the Owners] since HUD's first failure to make the required automatic annual adjustments to those Contract Rents." Compl. ¶ 18. The Owners assert that "HUD has breached the express terms of the HAP Contracts in failing to grant automatic annual rent adjustments in the Contract [Rents] in each year in which no rent adjustment was made, including the years 1995 to 2004, as applicable." Compl. ¶ 20.

According to the Owners, "HUD continues to refuse to make retroactive rent adjustments for the years from as early as 1995 to 2004." Compl. ¶ 19. The Owners seek an award of money damages "in the amount of at least $2.75 Million for the years from as early as 1995 to 2004 . . . ." Compl., at 6.[10] They further request that the Court "remand this matter to HUD and order that HUD adjust . . . current Contract Rents [under the Owners' HAP contracts] to reflect those adjustments which HUD was required but failed to make, and order that the adjusted Contract Rents serve as the basis for all future Contract Rent adjustments which are required to be made by HUD pursuant to the terms of the HAP Contracts." Id.

The statute of limitations applicable to suits under the Tucker Act, including the present litigation, provides that "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim

---

[10] The complaint also alleges that, "[b]ased upon the provisions of [section 1.8b of their HAP contracts], the Plaintiffs were entitled to receive automatic Contract Rent adjustments for each year since 1998, which HUD repeatedly failed to provide." Compl. ¶ 17. That allegation seems to conflict with the allegations elsewhere in the complaint that HUD "breached the express terms of the HAP Contracts in failing to grant automatic annual rent adjustments . . . in each year in which no rent adjustment was made, including the years 1995 to 2004, as applicable," and that HUD continues to refuse to make retroactive rent adjustments for the years from as early as 1995 to 2004." Compl. ¶¶ 19, 20.

first accrues." 28 U.S.C. § 2501 (2000). The six-year statute of limitations set forth in section 2501 "is an express limitation on the Tucker Act's waiver of sovereign immunity." Alder Terrace, 161 F.3d at 1376-77 (quoting Hart, 910 F.2d at 817); accord Brown Park Estates–Fairfield Development Co. v. United States, 127 F.3d 1449, 1454 (Fed. Cir. 1997). As the claimants in this suit, the Owners have the burden of establishing jurisdiction, including jurisdictional timeliness. Alder Terrace, 161 F.3d at 1377.

A claim first accrues for purposes of 28 U.S.C. § 2501 "when all the events have occurred which fix the liability of the Government and entitle the claimant to institute an action." Brighton Village Associates v. United States, 52 F.3d 1056, 1060 (Fed. Cir. 1995) (quoting Kinsey v. United States, 852 F.2d 556, 557 (Fed. Cir. 1988)); accord Alder Terrace, 161 F.3d at 1377; Brown Park, 127 F.3d at 1455; Celentano, 41 Fed. Cl. at 602. Generally, in the case of a breach of contract, a cause of action occurs when the breach occurs. Alder Terrace, 161 F.3d at 1377; see also Brighton Village, 52 F.3d at 1060.

As discussed above, the Owners contend that HUD breached their HAP contracts by not adjusting contract rents annually in accordance with the AAF- or factor-based method set forth at section 1.8b(2) of the HAP contracts. Under that method, the monthly contract rent for a dwelling unit is adjusted by applying the applicable AAF to the contract rent in effect on the anniversary date of HAP contract. See 24 C.F.R. § 888.203(b) (1994). Thus, for example, if the contract rent for a dwelling unit in effect on the HAP contract anniversary date is $100 per unit and the applicable AAF is 1.05, the new monthly contract rent adjusted in accordance with the AAF would be $105 (1.05 *x* $100).

Insofar as the Owners allege that HUD breached their HAP contracts by not adjusting the contract rents on the HAP contract anniversary dates in 1995, 1996, 1997, and 1998, those claims are barred by 28 U.S.C. § 2501. These annual rent adjustment claims accrued, and the six-year statute of limitations started to run, on the anniversary dates of the HAP contracts in 1995, 1996, 1997, and 1998 when HUD purportedly did not make the annual contract rent adjustments allegedly required by section 1.8(b) of the HAP contracts. As the Federal Circuit held in Brown Park, which also concerned rent adjustment claims under HAP contracts that contained rent adjustment provisions virtually identical to the rent adjustment provisions of the Owners' HAP contracts in the present case, "[a]t each of these specific points in time [i.e., the contract anniversary dates], the government's liability was fixed and [the project owners] were entitled to institute an action." 127 F.3d at 1455; see also Park Village Apartments v. United States, 25 Cl. Ct. 729, 733 (1992) (statute of limitations barred claims based upon rent determinations that occurred more than six years before suit was filed).[11/]

The anniversary date of the Park Properties HAP Contract is June 1 of each year under that contract. DPFUF ¶ 5. Thus, for purposes of the six-year statute of limitations set forth in 28 U.S.C. § 2501, Park Properties' rent adjustment claims for contract years 1995 through 1998 accrued on June 1 of each of those years when HUD allegedly breached the Park Properties HAP Contract by failing to adjust the contract rents based upon the applicable, published AAFs.

The anniversary date of the Valentine HAP Contract is January 2 of each year under that contract. DPFUF ¶ 14. Thus, for purposes of the six-year statute of limitations set forth in 28

[11] In Brown Park, the Federal Circuit held that the "continuing claim" doctrine does not apply to Section 8 rent adjustment claims. 127 F.3d at 1455.

U.S.C. § 2501, Valentine's rent adjustment claims for contract years 1995 through 1998 accrued on January 2 of each of those years when HUD allegedly breached the Valentine HAP Contract by failing to adjust the contract rents based upon the applicable, published AAFs.

The anniversary date of the St. John's HAP Contract is July 1 of each year under that contract. DPFUF ¶ 25. Thus, for purposes of the six-year statute of limitations set forth in 28 U.S.C. § 2501, St. John's rent adjustment claims for contract years 1995 through 1998 accrued on July 1 of each of those years when HUD allegedly breached the St. John's HAP Contract by failing to adjust the contract rents based upon the applicable, published AAFs.

The Owners commenced the present litigation on December 10, 2004, which is more than six years after the anniversary dates under the Owners' HAP contracts for the years 1995, 1996, 1997, and 1998 – the dates upon which the Owners' breach-of-contract claims for each of those years accrued. The Owners' rent adjustment claims for contract years 1995-1998, therefore, are barred by the six-year statute of limitations set forth in 28 U.S.C. § 2501.

This means that not only are the Owners barred from recovering damages for contract years 1995-1998 based upon the alleged improper failure of HUD to adjust HAP contract rents in accordance with AAFs for those years, but also that the Owners may not pursue rent adjustment claims for HAP contract years 1999-2004 based in whole or in part upon the consequential effects of the alleged improper failure of HUD to adjust contract rents during the 1995-1998 period. Brown-Park, 127 F.3d at 1457-58; see also Statesman II Apartments, Inc. v. United States, Nos. 04-805C, 04-806C (Fed. Cl., July 20, 2005), slip op. at 24 (citing Brown-Park).

As noted above, Brown-Park, involved rent adjustment claims under HAP contracts that contained rent adjustment provisions virtually identical to the rent adjustment provisions in the

Owners' HAP contracts here. The plaintiffs in Brown-Park commenced suit in October 1994, alleging that HUD's failure to make appropriate annual rent adjustments at times between June 1986 and February 1988 constituted a breach of their HAP contracts. 127 F.3d at 1455. They argued that, as a result of the alleged breach, they sustained damages not only during the years in which the alleged breach originally occurred, but also in subsequent years, including during the six years prior to suit (i.e., October 1988 to October 1994). Id.

The Federal Circuit squarely rejected the claims of the plaintiffs in Brown-Park, holding that the "continuing claim" doctrine did not apply to those claims and that the claims were barred by the statute of limitations because the claims "all accrued before the six years preceding filing of suit[.]" 127 F.3d at 1455. The court of appeals explained:

> [A]ppellants are not complaining about any alleged breaches of the HAP contracts by HUD during the six-year period immediately prior to the filing of suit. Appellants' claims are based on HUD's alleged failure to make the proper rent adjustments at the specified times between June of 1986 and February of 1988. That failure, and the consequential damages resulting from it, constitute the actionable wrong that appellants seek to vindicate. As far as the six years prior to filing suit are concerned, appellants do not contend that HUD failed to make rent adjustments during those years. Rather, they argue that on account of HUD's breaches outside the period of the statute of limitations, HUD started from the wrong base when making rent adjustments during the six years prior to the filing of suit. Thus, the alleged improper base for these latter years relates directly to, and is completely dependent on, whether HUD failed to make rent adjustments in earlier years in violation of the HAP contracts.

Id. at 1457-58.

The Owners in the present case similarly cannot avail themselves of the alleged improper failure of HUD to adjust contract rents under their HAP contracts during the 1995-1998 interval to support a claim that contract rents in effect during contract years 1999-2004 were too low.

Consequential damages attributable to the alleged wrong rent base are also barred by the statute of limitations. Any claim for breach of contract grounded upon the failure of HUD to adjust HAP contract rents in 1999 and subsequent years must start with the contract rents that were "in effect" on the 1999 HAP contract anniversary date, as mandated by 24 C.F.R. § 888.203(b), *not* with what the contract rents would have been on the 1999 contract anniversary if they had been adjusted during contract years 1995-1998 based upon AAFs. Otherwise, the rent adjustment claims for the 1999-2004 contract years impermissibly would relate to and depend upon claims that are barred by the six-year statute of limitations set forth in 28 U.S.C. § 2501, i.e., the alleged failure of HUD to adjust contract rents annually during 1995-1998 in violation of the Owners' HAP contracts.

VI. St. John's I Associates, L.P., May Not Maintain An Action For Breach Of The St. John's HAP Contract With Respect To Stage 1 Dwelling Units Based Upon HUD's Failure To Adjust Contract Rents On Or After July 1, 2002, Because The HAP Contract Ended On June 30, 2002, With Respect To The Stage 1 Units.

The St. John's HAP Contract was executed in three stages. DPFUF ¶ 26. The effective date of Stage 1 of the St. John's HAP Contract, which covered 76 dwelling units, was July 1, 1982. Id. The term of the St. John's HAP Contract was 20 years. DPFUF ¶ 27. With respect to the units covered by Stage 1, therefore, the St. John's HAP Contract expired or terminated on June 30, 2002. As a matter of fact, effective on July 1, 2002, St. John's entered a separate HAP contract with the New York State Housing Trust Fund Corporation[12/] regarding the dwelling units

[12] The New York State Housing Trust Fund Corporation is a "public housing agency" as defined in section 3 of the United States Housing Act of 1937 (42 U.S.C. § 1437a(b)(6) (2000)). DPFUF ¶ 34. On or about September 28, 2000, the New York State Housing Trust Fund Corporation (the PHA) and HUD entered an "Annual Contributions Contract" (ACC) in which the PHA agreed to provide contract administration services for project-based HAP contracts entered (continued...)

to which Stage 1 of the St. John's HAP Contract applied. DPFUF ¶ 37. The new HAP contract, titled "HAP Interim (Full) Mark-to-Market Renewal Contract," replaced the earlier St. John's HAP Contract insofar as the Stage 1 units were concerned and it stated, in pertinent part:

> Previously, the Contract Administrator and the Owner had entered into a HAP Contract ("expiring contract") to make Section 8 housing assistance payments to the Owner for eligible families living in the Project. The term of the expiring contract will expire or terminate prior to the beginning of the term of the Renewal Contract.
>
> The purpose of the Renewal Contract is to renew the expiring contract for an additional term sufficient to facilitate the implementation of a mortgage restructuring and rental assistance sufficiency plan, as determined by HUD.

DPFUF ¶ 38 (Renewal Contract, §§ 4c, 4d(1), Def. App. 182).

Consequently, St. John's may not maintain an action for breach of the St. John's HAP Contract with respect to any Stage 1 dwelling units based upon HUD's failure to adjust contract rents under the St. John's HAP Contract on or after July 1, 2002.

VII. St. John's I Associates, L.P., May Not Maintain An Action For Breach Of The St. John's HAP Contract With Respect To Stage 2 And Stage 3 Dwelling Units Based Upon HUD's Failure To Adjust Contract Rents After July 1, 2002, Because The HAP Contract Ended On September 21, 2002, With Respect To The Stage 2 Units And Ended On December 14, 2002 With Respect To The Stage 3 Units.

The effective date of Stage 2 of the St. John's HAP Contract, which covered 44 dwelling units, was September 22, 1982. DPFUF ¶ 26. The effective date of Stage 3 of the St. John's

---

[12](...continued)
under the Section 8 HAP Program. DPFUF ¶ 35. Regarding contract administration services, the ACC provides that "[t]he PHA shall enter into or assume HAP contracts with owners of covered units to make housing assistance payments to the owners of such units during the HAP contract term." Id. The service area for the PHA under the ACC is the State of New York, which includes the New York, NY PMSA fair-market-rent area in which St. John's Phase I is located. Id. On October 4, 2000, the PHA entered a contract with Quadel Consulting Corp. to perform the contract administration services that are the subject of the ACC. DPFUF ¶ 36.

HAP Contract, which covered 71 dwelling units, was December 15, 1982. Id. As noted above, the term of the St. John's HAP Contract was 20 years. Therefore, the St. John's HAP Contract expired or terminated on September 14, 2002, with respect to the units covered by Stage 2 and it expired or terminated on December 14, 2002, with respect to the units covered by Stage 3. As a matter of fact, effective on September 22, 2002, and on December 15, 2002, St. John's entered separate HAP contracts with the New York State Housing Trust Fund Corporation regarding the dwelling units to which Stages 2 and 3 of the St. John's HAP Contract applied. DPFUF ¶¶ 41, 45. The new HAP contracts, titled "HAP Interim (Full) Mark-to-Market Renewal Contracts," replaced the earlier St. John's HAP Contract insofar as the Stages 2 and 3 units were concerned and they stated, in pertinent part:

> Previously, the Contract Administrator and the Owner had entered into a HAP Contract ("expiring contract") to make Section 8 housing assistance payments to the Owner for eligible families living in the Project. The term of the expiring contract will expire or terminate prior to the beginning of the term of the Renewal Contract.
>
> The purpose of the Renewal Contract is to renew the expiring contract for an additional term sufficient to facilitate the implementation of a mortgage restructuring and rental assistance sufficiency plan, as determined by HUD.

DPFUF ¶¶ 42, 46 (Renewal Contracts, §§ 4c, 4d(1), Def. App. 198, 214).

Consequently, St. John's may not maintain an action for breach of the St. John's HAP Contract with respect to any Stage 2 or Stage 3 dwelling units based upon HUD's failure to adjust contract rents under the St. John's HAP Contract after the July 1, 2002 contract anniversary date.

## VIII. Insofar As Any Of The Rent Adjustment Claims Of Plaintiff St. John's I Associates, L.P., Are Based Upon The Alleged Breach By HUD Of Any Section 8 Rent Subsidy Agreement Entered By St. John's I Associates, L.P., That Replaced The Expired St. John's HAP Contract, The Court Lacks Jurisdiction To Entertain Those Claims, Inasmuch As The Government Is Not A Party To Any Section 8 Replacement Rent Subsidy Agreement.

It does not appear that St. John's rent adjustment claims are based upon anything other than the St. John's HAP Contract between St. John's and the Government, which was entered in 1982. Regarding St. John's, the complaint focuses upon an alleged breach by HUD of the St. John's HAP Contract and it does not mention any other rent subsidy agreements to which St. John's is a party. See Compl. ¶¶ 1, 7, 10, 11, 15, 17, 19, 20. The complaint, however, does not clearly limit St. John's rent adjustment claims to claims based upon the alleged failure of HUD to adjust rents during contract years 1995 through 2002, when, as discussed above, the St. John's HAP Contract expired. To the extent that any of St. John's rent adjustment claims are based upon the alleged breach by HUD of any of the Section 8 rent subsidy agreements entered by St. John's that replaced the expired St. John's HAP Contract, the Court lacks jurisdiction to entertain those claims because HUD is not a party to any such Section 8 rent subsidy agreements.

To maintain a cause of action pursuant to the Tucker Act (28 U.S.C. § 1491(a)(1)) that is based upon a contract, "the contract must be between the plaintiff and the government." Ransom v. United States, 900 F.2d 242, 244 (Fed. Cir. 1990); accord Central Transport International, Inc. v. United States, 63 Fed. Cl. 336, 338 (2004). "In other words, there must be privity of contract between the plaintiff and the United States." Cienega Gardens v. United States, 194 F.3d 1231, 1239 (Fed. Cir. 1998), cert. denied, 528 U.S. 820 (1999); accord National Leased Housing Ass'n v. United States, 105 F.3d 1423, 1435 (Fed. Cir. 1997) (privity-of-contract is a "prerequisite for

standing to sue in the Court of Federal Claims under the Tucker Act"); Globex, 54 Fed. Cl. at 347. Absent privity of contract, "there is no claim against the Federal Government and thus no Tucker Act jurisdiction in the [Court of Federal Claims]." Malone v. United States, 34 Fed. Cl. 257, 260, aff'd, 64 F.3d 676 (Fed. Cir. 1995) (Table).

As noted above, the St John's HAP Contract that ended in 2002 initially was replaced by three HAP Interim (Full) Mark-to-Market Renewal Contracts each of which applied to the dwelling units covered by one of the three stages of the St. John's HAP Contract. The Renewal Contract, which is a standard-form agreement, provided that it "is a housing assistance payments contract ('HAP Contract') between the Contract Administrator and the Owner of the Project . . . ." Id., § 4a(1), Def. App. 182, 198, 214. The Contract Administrator could be either HUD or a public housing agency (PHA). In St. John's case, each Renewal Contract identified the New York State Housing Trust Fund Corporation (a PHA) rather than HUD as the contract administrator. Id., § 1, Def. App. 180, 196, 212.

The three HAP Interim (Full) Mark-to-Market Renewal Contracts were replaced by a "HAP Watch List Renewal Contract" effective on August 1, 2003, for a term of 12 months, between St. John's and the New York State Housing Trust Fund Corporation. DPFUF ¶ 49. Upon the expiration of the Watch List Renewal Contract, St. John's and the New York State Housing Trust Fund Corporation entered a "HAP Basic Renewal Agreement" for a term of six months, effective on August 1, 2004. DPFUF ¶ 53. Effective on August 6, 2004, the Basic Renewal Agreement was replaced by a "HAP Renewal Contract for Mark-Up-To-Market Project" between St. John's and the New York State Housing Trust Fund Corporation for a term of five years. DPFUF ¶ 57. On the face of those contracts, HUD is not a party to any of them.

Thus, to the extent that any of St. John's rent adjustment claims are based upon the HAP renewal contracts discussed above, the Court lacks jurisdiction to entertain those claims because St. John's is not in privity of contract with HUD with respect to any of those agreements.

IX. To The Extent That Any Of The Rent Adjustment Claims Of Plaintiff St. John's I Associates, L.P., Are Based Upon The Alleged Breach By HUD Of Any Of The Section 8 Rent Subsidy Agreements Entered By St. John's I Associates, L.P., Which Replaced The Expired St. John's HAP Contract, Those Claims Lack Merit Because The Section 8 Replacement Rent Subsidy Agreements Did Not Incorporate Any Rent Adjustment Provisions Of The Expired HAP Contract Or Otherwise Contain Any Rent Adjustment Provisions Similar To Those Of The Expired HAP Contract.

Assuming for the sake of discussion that St. John's rent adjustment claims are in some fashion based upon the HAP renewal contracts discussed in section VIII of the Argument above and that the Court would be authorized to entertain any such claims, the Government is entitled to summary judgment upon those claims because the HAP renewal contracts that replaced the St. John's HAP Contract did not incorporate any rent adjustment provisions of the expired St. John's HAP Contract or otherwise contain any rent adjustment provisions similar to those of the expired St. John's HAP Contract.

The Interim (Full) Mark-to-Market Renewal Contracts entered by St. John's in 2002, which incorporated by reference some of the provisions of the expired St. John's HAP Contract, stated that "[a]ny and all provisions of the Expiring Contract concerning" "[c]ontract rent adjustments" "are not renewed, and shall not be applicable during the renewal term[.]" DPFUF ¶¶ 38, 42, 46 (Renewal Contract, § 5b(3), Def. App. 183, 199, 215). The Renewal Contracts, moreover, provided that "[t]here shall be no contract rent adjustments during the term of the Renewal Contract." DPFUF ¶¶ 40, 44, 48 (Renewal Contract, § 6b, Def. App. 184, 200, 216).

The Watch List Renewal Contract entered by St. John's in 2003 similarly provided that that "[a]ny and all provisions of the Expiring Contract concerning" "[c]ontract rent adjustments" "are not renewed, and shall not be applicable during the renewal term[.]" DPFUF ¶ 50 (Watch List Renewal Contract, § 5b(3), Def. App. 232). The Watch List Renewal Contract also provided that "[t]here shall be no contract rent adjustments during the term of the Renewal Contract." DPFUF ¶ 52 (Watch List Renewal Contract, § 6b, Def. App. 233).

The Basic Renewal Contract entered by St. John's on August 1, 2004, similarly provided that "[a]ny and all provisions of the Expiring Contract concerning" "[c]ontract rent adjustments" "are not renewed, and shall not be applicable during the renewal term[.]" DPFUF ¶ 54 (Basic Renewal Contract, § 5b(3), Def. App. 248). Regarding contract rent adjustments, the Basic Renewal Contract provided for rent adjustments (a) using an OCAF ("operating cost adjustment factor established by HUD") or (b), at the project owner's request, "based on the budget for the Project, as approved by the Contract Administrator in accordance with HUD requirements." DPFUF ¶ 56 (Basic Renewal Contract, § 6b(1), Def. App. 249). These methods of adjusting contract rents are different from the AAF-based rent adjustment method set forth in the St. John's HAP Contract upon which the Owners' rent adjustment claims set forth in the complaint, are predicated.

The Renewal Contract for Mark-Up-To-Market Project entered by St. John's effective on August 6, 2004, for a five-year term, which is presently in effect, similarly provides that "[a]ny provisions of the Expiring Contract concerning" "[c]ontract rent adjustments" "are not renewed, and shall not be applicable during the renewal term[.]" DPFUF ¶ 58 (Renewal Contract, § 4b(3), Def. App. 261). Regarding contract rent adjustments, the Renewal Contract for Mark-Up-To-

Market Project provides for annual rent adjustments "using an operating cost adjustment factor (OCAF) established by HUD" rather than the AAF-based rent adjustment method set forth in the St. John's HAP Contract upon which the Owners' rent adjustment claims, as described in the complaint, are predicated. See DPFUF ¶ 60 (Renewal Contract, § 5b(1)(a), Def. App. 261-262). The Renewal Contract for Mark-Up-To-Market Project further provides that, "[e]xcept for contract rent adjustments in accordance with paragraph 5b, there shall not be any other adjustments of the contract rents during the term of the Renewal Contract" and that "[s]pecial adjustments shall not be granted." DPFUF ¶ 60 (Renewal Contract, § 5b(4), Def. App. 263).

Therefore, to the extent that any of St. John's rent adjustment claims are based upon the HAP renewal contracts discussed above and, assuming for the sake of argument that the Court would have jurisdiction to entertain such claims, the Government is entitled to summary judgment upon those claims because the HAP renewal contracts that replaced the St. John's HAP Contract did not incorporate any rent adjustment provisions of the expired St. John's HAP Contract or otherwise contain any rent adjustment provisions similar to those of the expired St. John's HAP Contract.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss in part or, in the alternative, for partial summary judgment should be granted.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/John E. Kosloske
JOHN E. KOSLOSKE
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., Room 8012
Washington, D.C. 20530
Tele: (202) 307-0282
(FAX)(202) 514-8624

Attorneys for Defendant

OF COUNSEL:

C. ALLEN VILLAFUERTE
Trial Attorney
Office of General Counsel
Department of Housing
and Urban Development
Washington, DC

JULY 29, 2005