RECD MAR 13 1995

U.S. Department of Housing and Urban Development
New York Regional Office, Region II
Jacob K. Javits Federal Building
26 Federal Plaza
New York, New York 10278-0068

Carla Forgione
Valentine Associates
84 Armonk Park Drive
Armonk, N.Y. 10504

MAR 09 1995

Dear Ms. Forgione:

Subject: Project Name: Valentine Lane
Project No. : NY36-0003-011/Non-Insured
Amended Annual Adjustment Factors (AAF)

This letter cancels and supersedes our letter to you dated December 14, 1993 which computed your most recent contract rents based on the annual adjustment factors.

We have received your December 5, 1994 letter requesting that your contract rents be adjusted in accordance with the most recent annual adjustment factors published on April 26, 1994. Based on these new factors your adjusted contract rents are now stated below effective January 2, 1994. Pay close attention to the attached instructions for claiming the retroactive HAP.

| (a) Unit Type | (b) Current Section 8 Contract Rents | (c) AAF From Register Dated 4/26/94 | (d) Adjusted Section 8 Contract Rents | (e) Revised * Utility Allowances |
|---|---|---|---|---|
| 0 | 826 | 1.032 | 853 | 22 |
| 1 | 933 | 1.032 | 963 | 26* |
| 2 | 1069 | 1.032 | 1103 | 30 * |

If you agree with the above, please submit Rent Schedule forms (92458), reflecting these new contract rents and a copy of this letter to Rochelle Printz, Assisted Housing Management Branch, Room 3214.

For further assistance or information concerning this matter, you may call Rosita Gonzalez or Lenora McJolly at (212) 264-0777 ext.3810.

Sincerely,

Beryl H. Niewood
Acting Multifamily Director
Housing Division, 2AHD

EXHIBIT
37



PP0530

Attachment Pg. 1

Instructions for claiming the Rent Increase (AAF) Amended

Rent increase claims must be separated from the regular assistance payments. Use the first page of the voucher form 52670A Part I to write out the calculations, and enter the totals at the bottom of the page as an adjustment. Bring forward the full amount of the rent increase claim to the face of the form 52670. Strike out Line 4, 1983 HURRA Rent Refunds or Credits* and type in *Rent Increase (AAF).

Any approved increase must be claimed by following the steps below:

—Begin by labeling the first page of the voucher form 52670A part I *Rent Increase as Approved by letter dated (enter date of approved letter).*

—State the effective date of the increase (as noted on page 1 of this letter).

—State the date of the Annual Adjustment Factor.

—State the Unit Type.

—State your present rents and the adjusted rents.

Use the second and remaining pages of the 52670A Part I to show the increase in your regular tenant assistance payments for the month. Enter code "GR" in column (13) for each tenant, and increase your prior month's HAP by the amount of the approved increase for each unit.

Any other adjustments to Housing Assistance Payments must follow your listing of regular tenant assistance payments on the 52670A Part I and must be clearly explained as noted in Handbook 4350.3, CHG-24, Appendix 29, Step II.

If you are claiming a retroactive increase and you claimed vacancies during that retroactive period, you are not entitled to a full rent increase for the vacancy period. You may only claim 80% of the contract rent for those units for the month in which you claim a retroactive increase.

For projects whose HAP anniversary date is effective the first of the month, the full Housing Assistance Payment increase may be claimed retroactively beginning with that month, unless your rent increase request was late. In that case, the effective date of your increase may not be the anniversary date. (See effective date, page 1 of this letter).

For projects whose HAP anniversary date is effective other than the first of the month, the Housing Assistance Payment increase must be prorated for that month. If your rent increase request was late, the effective date of your increase may not be the anniversary date. (See effective date, page 1 of this letter).

State the month and the old HAP (the amount paid as Regular Assistance Payments) on the voucher 52670 Line 1 for the month in which the increase was effective. Do not include any other adjustments which were claimed for that month.

b) Calculate and state the increase in rent for each unit type.

c) Add the old HAP to the increase. This will give you the new HAP.

d) Divide the difference between the old HAP and the new HAP by the number of calendar days in the month, and multiply by the number of days that the new increase is in effect for that month. (Note: do not divide the difference by 30. Divide by the number of actual calendar days in the month that the increase takes effect., e.g., 29, 30, 31.) Round either at each calculation <u>or</u> at the end. (This calculation is for rent increases only).

e) The results will be your retroactive claim for the month only. Each unit does not have to be prorated on the 52670A Part I.

f) The remaining months will be the full amount of the increase. This will be shown by the dollar increase multiplied by the number of units for each size, again multiplied by the number of retroactive months.

Attached is a sample of the calculations and the format as stated above. Please ensure that you follow the format as given in the sample.

As always the vouchers 52670 and 52670A Part I (and Part II if applicable) must be mailed to the Regional Accounting Division as well as to the Assisted Housing Management Branch. <u>Attach a copy of this approval letter to both copies of your voucher.</u>

Mailing instructions are as follows:

Copy 1--Voucher and approval letter (original signature) to:
Regional Accounting Division, Room 35-120.

Copy 2--Voucher, Approval letter, Rent Schedule 92458 to:
Assisted Housing Management Branch
Attention: Rochelle Printz, Room: 3214.

PP0532

4350.3 CHG-17
APPENDIX 29

*SAMPLE

# Schedule of Tenant Assistance Payments Due

U.S. Department of Housing Urban Development
Office of Housing

Before completing this form, read and follow the instructions in Handbook 4350.3, Chapter 6. See the statements on the back for information on public burden.

OMB Approval No. 2502-0182 (11/30/93)

1. Asst. Pymts Due For (mo. & yr): DECEMBER 1993
2. Project Name: (STATE YOUR PROJECT NAME)
3. FHA / EH / Non-Insured Project No: 012 (FILL IN)
4. Section 8 Contract Number: NY36 (FILL IN)
5. Type of Subsidy (mark only one): [X] Sec. 8 Housing Assistance Payments [ ] Rent Supplement [ ] Rental Assistance Payments
6. Type of Section 8 (mark only one): [ ] Substantial Rehabilitation [X] New Construction [ ] Loan Management Set Aside [ ] Property Disposition Set Aside
7. Section 8 Contract information (only for Sec. 8 projects):
a. Was the HAP Agreement signed on or after 10/1/81? [ ] Yes [ ] No [ ] N/A
b. Was the HAP Contract effective on or after 10/1/81? [ ] Yes [ ] No
c. If this is an LM/PD Set Aside (without Rehab.), was the HAP Contract signed on or after 10/3/84? [ ] Yes [ ] No

| | 8. Tenant Name (last, first) | 9. Unit Number or Address | 10. Income Code | Turnover Data 11a. Code | 11b. Mo./Day | Recertification Data 12a. Scheduled Effective Date | 12b. Date Initial Notice Sent | 13. Change Code | Tenant Assistance Payment 14a. Requested | 14b. Approved HUD use only |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | RENT INCREASE AS APPROVED BY LETTER DATED (FILL IN DATE OF APPROVAL LETTER) | | | | | | | | | |
| 2 | (SAMPLE) | | | | | | | | | |
| 3 | Effective date of Annual Increase: July 14, 1993 HAP CLAIMED July 1993–$23,220 | | | | | | | | | |
| 4 | Unit Type Present | Rent | AAF-9/17/93 | Adjusted Rent | | | Increase | | = Full Increase | |
| 5 | 0 BR--(20) $ 399 | | | $ | 420 | | 21 | | $ 420 | |
| 6 | 1 BR-(20) $ 418 | | | $ | 440 | | 22 | | $ 440 | |
| 7 | 2 BR-(32) $ 624 | | | $ | 650 | | 26 | | $ 832 | |
| 8 | 3 BR-(25) $ 650 | | | $ | 676 | | 26 | | $ 650 | |
| 9 | | | | | | | | | $ 2342 | |
| 10 | HAP CLAIMED FOR July 1993 – $23,220 | | | | | | | | | |
| 11 | HAP INCREASE | 2,342 | | | | | | | | |
| 12 | TOTAL ADJUSTED HAP | $25,562 | | | | | | | | |
| 13 | | | | | | | | | DAYS | THRU END |
| 14 | OLD HAP | NEW HAP | DIFFERENCE | ÷ CALENDAR | | DAYS | | EFFECTIVE | | OF MONTH |
| 15 | $23,220 | $25,562 | $ 2342 | | | 31 | | | 18 | $ 1360 |
| 16 | | | | | | | | | | |
| 17 | RETROACTIVE CLAIM FOR MONTHS OF: August 1993–November 1993 | | | | | | | | | |
| 18 | $2342 X .................................................. | | | | | | | | | =$9368 |

Owner/Agent Certification: I hereby certify that all pages of this schedule are true and correct and that all amounts were computed in accordance with HUD Handbook 4350.3 and any other applicable HUD instructions.

Printed Name, Signature, Date, Title & Phone No. (include area code):

print Your Name
Print your Title and Telephone No.

15. Totals for this page:
a. Regular Tenant Assistance:
b. Adjustments: $10,728
c. 1983 HURRA Refund or Credit:

HUD Reviewer & Date:

HUD will prosecute false claims & statements. Conviction may result in criminal and/or civil penalties (18 U.S.C. Sections 1001, 1010, 1012; 31 U.S.C. Sections 3729, 3802).

Previous editions are obsolete

Page ( ) of ( )

form HUD-52670-A part 1 (5/16/91)
ref. Handbook 4350.3

PP0533

U.S. Department of Housing and Urban Development

New York Regional Office, Region II
Jacob K. Javits Federal Building
26 Federal Plaza
New York, New York 10278-0068

MAY 10 1995

Carla Forgione
Valentine Lane Associates
84 Business Park drive
Armonk, N.Y. 10504

Dear Ms. Forgione:

Subject: Project Name: Valentine Lane
Project No. : NY36-0003-011/Non-Insured
Amended Annual Adjustment Factors (AAF)

This letter cancels and supersedes our letter to you dated December 21, 1994 which computed your most recent contract rents based on the annual adjustment factors.

We have received your December 5, 1994 letter requesting that your contract rents be adjusted in accordance with the most recent annual adjustment factors published on April 26, 1994. Based on these new factors your adjusted contract rents are now stated below effective January 2, 1995. Pay close attention to the attached instructions for claiming the retroactive HAP.

| (a) Unit Type | (b) Current Section 8 Contract Rents | (c) AAF From Register Dated 4/26/94 | (d) Adjusted Section 8 Contract Rents | (e) Revised * Utility Allowances |
|---|---|---|---|---|
| 0 | 853 | 1.032 | 880 | 24 * |
| 1 | 963 | 1.032 | 994 | 26 |
| 2 | 1103 | 1.032 | 1138 | 30 |

If you agree with the above, please submit Rent Schedule forms (92458), reflecting these new contract rents and a copy of this letter to Rochelle Printz, Assisted Housing Management Branch, Room 3214.

For further assistance or information concerning this matter, you may call Rosita Gonzalez or Lenora McJolly at (212) 264-0777 ext.3810.

Sincerely,

Beryl H. Niewood
Acting Multifamily Director
Housing Division, 2AHD

EXHIBIT 38

PP0526

Instructions for claiming the Rent Increase (AAF) Amended

Rent increase claims must be separated from the regular assistance payments. Use the first page of the voucher form 52670A Part I to write out the calculations, and enter the totals at the bottom of the page as an adjustment. Bring forward the full amount of the rent increase claim to the face of the form 52670. Strike out Line 4, 1983 HURRA Rent Refunds or Credits* and type in *Rent Increase (AAF).

Any approved increase must be claimed by following the steps below:

--Begin by labeling the first page of the voucher form 52670A part I *Rent Increase as Approved by letter dated (enter date of approved letter).*

--State the effective date of the increase (as noted on page 1 of this letter).

--State the date of the Annual Adjustment Factor.

--State the Unit Type.

--State your present rents and the adjusted rents.

Use the second and remaining pages of the 52670A Part I to show the increase in your regular tenant assistance payments for the month. Enter code "GR" in column (13) for each tenant, and increase your prior month's HAP by the amount of the approved increase for each unit.

Any other adjustments to Housing Assistance Payments must follow your listing of regular tenant assistance payments on the 52670A Part I and must be clearly explained as noted in Handbook 4350.3, CHG-24, Appendix 29, Step II.

If you are claiming a retroactive increase and you claimed vacancies during that retroactive period, you are not entitled to a full rent increase for the vacancy period. You may only claim 80% of the contract rent for those units for the month in which you claim a retroactive increase.

For projects whose HAP anniversary date is effective the first of the month, the full Housing Assistance Payment increase may be claimed retroactively beginning with that month, unless your rent increase request was late. In that case, the effective date of your increase may not be the anniversary date. (See effective date, page 1 of this letter).

For projects whose HAP anniversary date is effective other than the first of the month, the Housing Assistance Payment increase must be prorated for that month. If your rent increase request was late, the effective date of your increase may not be the anniversary date. (See effective date, page 1 of this letter).

) State the month and the old HAP (the amount paid as Regular Assistance Payments) on the voucher 52670 Line 1 for the month in which the increase was effective. Do not include any other adjustments which were claimed for that month.

b) Calculate and state the increase in rent for each unit type.

c) Add the old HAP to the increase. This will give you the new HAP.

d) Divide the difference between the old HAP and the new HAP by the number of calendar days in the month, and multiply by the number of days that the new increase is in effect for that month. (Note: do not divide the difference by 30. Divide by the number of actual calendar days in the month that the increase takes effect., e.g., 29, 30, 31.) Round either at each calculation or at the end. (This calculation is for rent increases only).

e) The results will be your retroactive claim for the month only. Each unit does not have to be prorated on the 52670A Part I.

f) The remaining months will be the full amount of the increase. This will be shown by the dollar increase multiplied by the number of units for each size, again multiplied by the number of retroactive months.

Attached is a sample of the calculations and the format as stated above. 'lease ensure that you follow the format as given in the sample.

As always the vouchers 52670 and 52670A Part I (and Part II if applicable) must be mailed to the Regional Accounting Division as well as to the Assisted Housing Management Branch. Attach a copy of this approval letter to both copies of your voucher.

Mailing instructions are as follows:

Copy 1--Voucher and approval letter (original signature) to:
Regional Accounting Division, Room 35-120.

Copy 2--Voucher, Approval letter, Rent Schedule 92458 to:
Assisted Housing Management Branch
Attention: Rochelle Printz, Room: 3214.

4350.3 CHG-17
APPENDIX 29

#SAMPLE

# Schedule of Tenant Assistance Payments Due

U.S. Department of Housing Urban Development
Office of Housing

Before completing this form, read and follow the instructions in Handbook 4350.3, Chapter 6.
See the statements on the back for information on public burden.

OMB Approval No. 2502-0182 (11/30/93)

1. Asst. Pymts Due For (mo. & yr): DECEMBER 1993
2. Project Name: (STATE YOUR PROJECT NAME)
3. FHA / EH / Non-Insured Project No: 012 (FILL IN)

4. Section 8 Contract Number: NY36 (FILL IN)
5. Type of Subsidy (mark only one): [X] Sec 8 Housing Assistance Payments [ ] Rent Supplement [ ] Rental Assistance Payments

6. Type of Section 8 (mark only one):
[ ] Substantial Rehabilitation
[ ] Loan Management Set Aside
[ ] Property Disposition Set Aside
[X] New Construction

7. Section 8 Contract Information (only for Sec.8 projects):
a. Was the HAP Agreement signed on or after 10/1/81? [ ] Yes [ ] No [ ] N/A
b. Was the HAP Contract effective on or after 10/1/81? [ ] Yes [ ] No
c. If this is an LM/PD Set Aside (without Rehab.), was the HAP Contract signed on or after 10/3/84? [ ] Yes [ ] No

| | 8. Tenant Name (last, first) | 9. Unit Number or Address | 10. Income Code | Turnover Data 11a. Code | 11b. Mo./Day | Recertification Data 12a. Scheduled Effective Date | 12b. Date Initial Notice Sent | 13. Change Code | Tenant Assistance Payment 14a. Requested | 14b. Approved HUD use only |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | RENT INCREASE AS APPROVED BY LETTER DATED (FILL IN DATE OF APPROVAL LETTER) | | | | | | | | | |
| 2 | (SAMPLE) | | | | | | | | | |
| 3 | Effective date of Annual Increase: July 14, 1993 HAP CLAIMED July 1993-$23,220 | | | | | | | | | |
| 4 | Unit Type Present | Rent AAF-9/17/93 | | Adjusted Rent | | | Increase | | = Full Increase | |
| 5 | 0 BR-(20) $ 399 | | | | $ 420 | | 21 | | $ 420 | |
| 6 | 1 BR-(20) $ 418 | | | | $ 440 | | 22 | | $ 440 | |
| 7 | 2 BR-(32) $ 624 | | | | $ 650 | | 26 | | $ 832 | |
| 8 | 3 BR-(25) $ 650 | | | | $ 676 | | 26 | | $ 650 | |
| 9 | | | | | | | | | $ 2342 | |
| 10 | HAP CLAIMED FOR July 1993 - | $23,220 | | | | | | | | |
| 11 | HAP INCREASE | 2,342 | | | | | | | | |
| 12 | TOTAL ADJUSTED HAP | $25,562 | | | | | | | | |
| 13 | | | | | | | | | DAYS | THRU END |
| 14 | OLD HAP | NEW HAP | DIFFERENCE | ÷ CALENDAR | | DAYS | | | EFFECTIVE | OF MONTH |
| 15 | $23,220 | $25,562 | $ 2342 | | | 31 | | | 18 | $ 1360 |
| 16 | | | | | | | | | | |
| 17 | RETROACTIVE CLAIM FOR MONTHS OF: August 1993-November 1993 | | | | | | | | | |
| 18 | $2342 X ........................................ | | | | | | | | | =$9368 |

Owner/Agent Certification: I hereby certify that all pages of this schedule are true and correct and that all amounts were computed in accordance with HUD Handbook 4350.3 and any other applicable HUD instructions.

15. Totals for this page
a. Regular Tenant Assistance
b. Adjustments $10,728
c. 1983 HURRA Refund or Credit

Printed Name, Signature, Date, Title & Phone No. (include area code):

print Your Name
Print your Title and Telephone No.

HUD Reviewer & Date:

HUD will prosecute false claims & statements. Conviction may result in criminal and/or civil penalties (18 U.S.C. Sections 1001, 1010, 1012; 31 U.S.C. Sections 3729, 3802).

Previous editions are obsolete Page ( ) of ( ) form HUD-52670-A part 1 (5/16/91) ref. Handbook 4350.3

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
HOUSING - FEDERAL HOUSING COMMISSIONER

## COMMITMENT FOR INSURANCE OF ADVANCES

*(SECTIONS 207, 220, 221, 231, 232, 242 and 810; and TITLE XI)*
(d)4

(Amended)
Project No. 012-57113-LD-EC 221(d)4-L8

To: Merrill Lynch Huntoon Paige Inc. ~~Northwestern Funding Corporation~~
*(Mortgagee)*

2 Broadway ~~1290 Avenue of the Americas~~
*(Street)*

New York, New York 10004
*(City and State)*

Unitroy Construction Corp/Troy D. Stevens, Jr.
5 Beekman Street, New York, New York
PJR Construction Corp.
*(Name of sponsor(s))*

2411 Avenue X., Brooklyn, New York
Joseph Neumann
39 Broadway., New York
*(Address)*

Mortgagor Entity to be Formed
*(Name of proposed Mortgagor)*

The Federal Housing Commissioner, acting herein on behalf of the Secretary of Housing and Urban Development, will endorse for insurance under the provisions of Section 221(d)4 Pursuant to 223(e) of the National Housing Act, and the Regulations thereunder now in effect, a mortgage note in the amount of $ 9,134,400.00, to be secured by a mortgage, on the property located at 1280,1284,1288,1299 St.Johns Pl.,1535,1539,1550,1566 Sterling Pl.,Brooklyn(Kings County) New York and consisting of approximately 56,620 square feet. The insurance endorsement will be subject to compliance with the requirements of the Regulations, and the terms and conditions set forth below. The mortgage amount, however, is subject to reduction prior to final insurance endorsement of the mortgage note as provided in the Regulations.

1. The mortgage note shall be payable in monthly installments in accordance with the payment provision checked and completed below:

(a) ☐ Combination Declining Annuity Plan

The loan shall bear interest at the rate of ________ percent per annum payable on the first day of each month on the outstanding balance of principal. The first payment to principal (commencement of amortization) shall be due on the first day of the ________ month following the month in which the mortgage is dated. The mortgage shall provide that the first payment to principal shall be in the amount of $ ________. Thereafter, on the first day of each succeeding month until the ________ installment has been paid, an installment of principal shall be paid in an amount equal to ________ percent of the principal payment which became due on the first day of the next preceding month. The ________ payment and, until the mortgage is paid in full, each succeeding payment shall be in an amount equal to ________ percent of the last preceding payment. The maturity and final payment date shall be ________ years and ________ months following the due date of the first payment to principal (commencement of amortization).

(b) ☐ Accelerating Curtail Declining Annuity Plan

The loan shall bear interest at the rate of ________ percent per annum payable on the first day of each month on the outstanding balance of principal. The first payment to principal (commencement of amortization) shall be due on the first day of the ________ month following the month in which the mortgage is dated. The mortgage shall provide that the first payment to principal shall be in the amount of $ ________. Thereafter, on the first day of each succeeding month until the entire indebtedness has been paid, an installment of principal shall be paid in an amount equal to ________ percent of the principal payment which became due on the first day of the preceding month. The maturity and final payment date shall be ________ years and ________ months following the due date of the first payment to principal (commencement of amortization).

(c) ☐ Level Annuity Monthly Payment Plan

The loan shall bear interest at the rate of ________ percent per annum payable on the first day of each month on the outstanding balance of principal. The first payment to principal (commencement of amortization) shall be due on the first day of the ________ month following the month in which the mortgage is dated. The loan shall be payable on a level annuity basis by ________ monthly payments of principal and interest in the amount of $ ________. The maturity and final payment date shall be ________ years and ________ months following the due date of the first payment to principal (commencement of amortization).

(d) ☒ Level Annuity Monthly Payment Plan ~~XXXXXXXXXXXXXXXXXXXXXXXXXXXXX~~ Change in interest rate at Final Endorsement Section 221(d)4 GNMA Tandem Plan

The loan shall bear interest at the rate of 13 percent per annum payable on the first day of each month on the outstanding balance of principal up to and including the date of final endorsement of the secured note. Thereafter, the loan shall bear interest at the rate of 7.5 percent per annum payable on the first day of each month on the outstanding balance of principal.

Replaces FHA-2432, which may be used

HUD-92432 (5-79)

PPAS-NYH-00073

The first payment to principal (commencement of amortization) shall be due on the first day of the 20th month following the month in which the mortgage is dated. The loan shall be payable on a level annuity basis by 480 monthly payments of principal and interest in the amount of $ 60,110.82. The maturity and final payment date shall be 39 years and 11 months following the due date of the first payment to principal (commencement of amortization).

2. A project shall be constructed on the mortgaged property in accordance with Drawings and Specifications filed with the Commissioner and designated as St.John's Phase I, FHA Project No. 012-57113-LD-EC-221(d)4-L8 (Amended), dated May 6, 1980. The Drawings and Specifications, which include "General Conditions of the Contract for Construction" (AIA Document A201) and "Supplementary Conditions of the Contract for Construction" (FHA Form No. 2554), shall be identified in a manner acceptable to the Commissioner by the following parties or their authorized agents: Mortgagor, Design Architect, Architect administering the Construction Contract, Contractor and the Contractor's Surety.

3. At least 15 days prior to the anticipated date for initial insurance endorsement of the mortgage note, two draft copies of each of the following documents and exhibits shall be submitted to the Commissioner. After review, the place and date of the initial closing will be designated, at which time the following documents and exhibits in final form shall be delivered to the Commissioner for approval:

(a) The mortgage and the note evidencing the debt secured.

(b) The Building Loan Agreement (FHA Form No. 2441) between the Mortgagee and the Mortgagor governing advances of the mortgage proceeds.

(c) The Construction Contract (FHA Form No. 2442 or 2442A) between the Mortgagor and the General Contractor whereby the project is to be built.

(d) Contractor's Certification of Labor Standards and Prevailing Wage Requirements.

(e) Agreement and Certification executed by the Mortgagee and Mortgagor.

(f) Owner-Architect Agreement (appropriate FHA Form).

(g) Title evidence in conformity with the Regulations which shall show that title to the property on the date of initial endorsement of the mortgage for insurance is vested in the Mortgagor free of all encumbrances other than the mortgage, and free of all reservations of title (either junior or prior to said mortgage), except such as are specifically determined to be acceptable by the Commissioner. If such title evidence is in the form of a title insurance policy, it shall by its terms inure to the benefit of the Mortgagee and the Secretary of Housing and Urban Development, as interest may appear. Such title evidence must be accompanied by a survey of the property, together with the Surveyor's Certificate showing that there are no easements or encroachments upon the subject property except those acceptable to the Commissioner, which survey will be extended from time to time during construction to show that the improvements on the site have been erected solely upon the land covered by the mortgage and within the building restriction lines, if any, on said land and do not encroach upon or overhang any land not covered by the mortgage nor upon any easement or right-of-way. Evidence will be required to show that the premises are not zoned or restricted so as to prevent the construction of the improvements, and that building and other permits have been issued by legally constituted authorities having jurisdiction.

(h) Assurance of the completion of the project. A 25% Payment Bond and a 25% Performance Bond or acceptable equivalent is required

(i) Assurance that adequate sewer, water, gas, and electric facilities will be fully installed prior to completion of the project and that necessary public streets, sidewalks, and curbing outside the project site, if not yet constructed, will be fully completed within a reasonable time after completion of the project.

(j) The Mortgagee's Certificate itemizing the charges made by you in connection with the mortgage transaction and evidencing the collection by you or your nominee from the Mortgagor of the following sums to be applied to the following items:

(1) Deposit to meet cost of equipping and renting the project subsequent to completion of the entire project or units thereof, and to be applied to taxes, mortgage insurance premiums, property insurance premiums and assessments required by the terms of the mortgage accruing subsequent to initial endorsement of the mortgage for insurance, and not included in the proceeds of the mortgage ... $ 182,688.00. (NOTE: For Section 232 Nursing Home Projects this deposit is required only for accruals of taxes, mortgage insurance premiums, property insurance premiums and assessments.)

(2) Funds, if any, required over and above mortgage proceeds for completion of the project ... $ 875,179.00. This sum represents the difference between the Commissioner's estimate of the total cash required for carrying charges, financing, and for construction of the project, including builder's fees (or builder's and sponsor's profit and risk allowance, if any), architect's fees, and the maximum amount of the mortgage to be insured. These funds may be reduced by so much of the profit and risk allowance and fees, up to a maximum of $ 889,457.00, as the closing documents show are not to be paid in cash.

(3) Escrow deposit, if any, to cover off-site utilities and streets... $ 43,840.00.

(4) The Mortgagor shall establish to the Commissioner's satisfaction that, in addition to the proceeds of the insured mortgage, the Mortgagor has funds in the amount of $____________, or has made financial arrangements acceptable to the Commissioner in order to meet the expenses of the project from the date of initial occupancy until __________ months after the date of final endorsement as the Commissioner estimates is necessary to establish a profitable operation. The funds shall be deposited with the Mortgagee or other depository acceptable to the Commissioner on or before the date of initial endorsement, and such funds shall be held in a special account under an agreement approved by the Commissioner.

(k) The Escrow Agreement providing for the deposit, ~~if any, required by Item (j)~~(3) of this paragraph and covering off-site utilities and streets.

(l) The Mortgagor's Certificate certifying to the priority of the mortgage and to other matters set forth therein.

(m) The instrument under which the Mortgagor entity is created, unless the Mortgagor is an individual.

4. The Mortgagor must possess the powers necessary for operating the project and meeting all the requirements of the Secretary of Housing and Urban Development for insurance of the mortgage. At the initial insurance endorsement of the mortgage note, there shall be filed with the Commissioner copies of all instruments or agreements necessary under the laws of the applicable jurisdiction to authorize the execution of the mortgage and the other closing documents, and a Regulatory Agreement or other instrument to permit the Commissioner's regulation of the Mortgagor as to rents, charges, and methods of operation. Such instrument shall provide, among other things, for the establishment of a Reserve Fund for Replacements under control of the Mortgagee by payment of $ 36,538.00 per annum, to be accumulated monthly commencing on the date of the first payment to principal as established in the insured mortgage, unless a later date is agreed to by the Commissioner.

5. (a) Approval of advances in accordance with the Building Loan Agreement must be obtained on a form prescribed by the Commissioner prior to the date of each advance to be insured. A Contractor's Prevailing Wage Certificate will be filed with the request for approval of each advance which includes a payment for construction costs.

(b) During the course of construction, the Commissioner and his representatives shall at all times have access to the property and the right to inspect the progress of construction, and an inspection fee in the amount of $ 41,714.00 shall be paid upon the initial insurance endorsement of the mortgage note. The inspection of construction by a representative of the Commissioner shall be only for the benefit and protection of the Secretary of Housing and Urban Development.

(c) Upon completion of the project in accordance with the Drawings and Specifications the mortgage note will be finally endorsed for insurance to the extent of the advances of mortgage proceeds approved by the Commissioner, subject to reduction as provided in the Regulations.

6. Any change in the Drawings and Specifications or in the conditions upon which this commitment is based, which may occur after the date hereof, shall be explained in writing, or in a supplementary application if required by the Commissioner, and must be approved by the Commissioner prior to initial endorsement. Any such change occurring subsequent to initial endorsement must be brought to the attention of the Commissioner immediately upon occurrence, and, except for such changes in the Drawings and Specifications which may be authorized by the Architect, must be approved by the Commissioner prior to the date on which the Commissioner is requested to approve any further advance for insurance. Changes in the Drawings and Specifications which result in any net construction cost increase, or will change the design concept, or will result in a net cumulative construction cost decrease of more then 2% of the contract amount may be effected only with the prior written approval of the Lender and the Commissioner. The Commissioner's approval of any change described above may be subject to such conditions and qualifications as the Commissioner in his discretion may prescribe.

7. If under the laws of the jurisdiction in which the project is located, the personal property of the Mortgagor, which is used in the operation of the project, is not covered by and subject to the real estate mortgage, the Mortgagee shall require and receive from the Mortgagor, prior to the final insurance endorsement of the mortgage note, a Security Agreement and a Financing Statement or such other security instrument as may be necessary to effect a first lien on such personal property in favor of the Mortgagee.

8. Any change in the sponsorship upon which this commitment is predicated must be requested in writing by the Mortgagee on behalf of any proposed substitute sponsor, and such request must be approved in writing by the Commissioner. Any sponsor or principal (including the principals of any parent entity of such sponsor or principal), who is now or who may later become involved in this project by way of financial interest, employment or otherwise, and who has not filed a certificate with the Commissioner fully disclosing his previous participation in FHA mortgage insurance programs, shall file such certificate on the form prescribed by the Commissioner and must be approved by the Commissioner.

9. All certificates, documents and agreements called for by this commitment shall be on forms approved or prescribed by the Commissioner and shall be completed, executed and filed in the number of copies and in such manner as he shall prescribe.

10. This commitment shall terminate 30 days from the date hereof unless renewed or extended by the Commissioner. Prior to any renewal or extension of this commitment, the Commissioner may, at his option, reexamine the commitment to determine whether it shall be extended in the same amount, or shall be amended to include a lesser amount.

-4-

11. A request for the reopening of this commitment within 90 days of its termination must be accompanied by the reopening fee prescribed by the Regulations.

12. The Design Architect and the Architect administering the construction contract shall each be covered by a policy of professional liability insurance in an amount consistent with insurance industry practice. At initial closing, there shall be provided for each Architect the writing agent's certificate in substantially the following form:

To: Mortgagee and Secretary of Housing and Urban Development

I certify that ______________________ *(Name of Architect)* is insured in the

amount of $ ____________ under ______________________ *(Name of Insurer)*

Policy No. ____________ of Architect and/or Engineers Professional Liability Insurance.

Your attention is directed to the Regulations covering the assignment or the transfer of the insured mortgage, in whole or in part, and the transfer of your rights, privileges, and obligations under the contract of mortgage insurance.

Special conditions set forth below or attached hereto and identified as additional numbered paragraphs are made a part hereof.

SEE ATTACHED RIDER FOR ADDITIONAL COMMITMENT CONDITIONS

Dated September 30, 1980

(Amended)

JUL 9 1981

SECRETARY OF HOUSING AND URBAN DEVELOPMENT

BY: FEDERAL HOUSING COMMISSIONER

By [signature] *Authorized Agent*

☆U.S. GOVERNMENT PRINTING OFFICE: 1979 O—627-168 REGION 3-1



PPAS-NYH-00076

Project No. 012-57112-LD-EC-221(d)4-L8 (Amended)
St. John's Phase I
Brooklyn, New York

ADDITIONAL COMMITMENT CONDITIONS

1. Presidential Executive Order 11625 entitled, "Prescribing Additional Arrangemen for Developing and Coordinating a National Program for Minority Business Enterp dated October 13, 1971, directs each Department to promote minority business en prises and to develop an information system for purposes of both promotion and ation. A minority business is one that is 51% owned by minorities or is manage minorities. The sponsor/sponsor-developer and contractor shall encourage and p mote minority business enterprise pursuant to Presidential Executive Order 1162

2. This Commitment is subject to the requirements of President's Executive Order 1 relating to Equal Opportunity in Employment and regulations and procedures there

3. This commitment is conditioned upon submission of evidence acceptable to HUD that real estate tax abatement under Article V of the New York State Private Housing Finance Law will be made available for the term of the mortgage with initial taxes based on the higher of either ten percent (10%) of gross shelter rent (based on Section 8 tenants contribution)

4. This Commitment is subject to the requirements of President's Executive Order re ting to Equal Opportunity in Housing issued on November 20, 1962, and regulation procedures issued thereunder.

5. This project is subject to compliance with the requirements of the New York City established by the Department of Labor (effective March 24, 1972) as amended by memo dated 11/24/74, #4205-7.

6. It is a condition of this Commitment that the General Contractor and any Pri... who is now involved or who may later become involved in this project by way of financial interest, employment or otherwise, as defined under the FHA form 2530 procedure and who has not filed a certificate with the Commissioner fully disclosing his previous participation in FHA multifamily programs, shall file such a certificate on the form prescribed by the Commissioner and must be approved under these 2530 procedures prior to the initial endorsement of the mortgage for insurance.

7. This Commitment is conditioned upon the executive of a Housing Assistant Payment Contract under the Section 8 Housing Assistant Payment Program.

8. The HUD "As Is" value of $139,840.00 assumes the completion of certain off-site construction improvement estimated to cost $43,840.00, which is to be escrowed at the time of initial endorsement.

9. This Commitment is conditioned on the availability of Tandem Plan Financing at 7½%.

10. Sponsors and general contractors are to record the name, address and contract amount of each minority-owned general contractor, sub-contractor and mortgagee involved in the subject project and submit this information along with Form HUD-938 Minority Business Participation, at the cost certification stage of processing. Failure to submit this information at that stage of processing will delay endorsement of the note and/or signing of a HAP Contract.

PPAS-NYH-00077

FHA FORM NO. 4159-K
(CORPORATE)
Revised May 1966

# MORTGAGE

THIS MORTGAGE, made the 25th day of August, 19 81 between ST. JOHN'S I ASSOCIATES,

a limited partnership, ~~a corporation organized~~ and existing under the laws of and having ~~its principal place of business at~~ 39 ~~Broadway~~, New York, New York

the MORTGAGOR, and MERRILL LYNCH HUNTOON PAIGE INC.

a corporation organized and existing under the laws of the State of New York and having its principal place of business at 2 Broadway, New York, New York 10004

the MORTGAGEE,

WITNESSETH, that to secure the payment of an indebtedness in the principal sum of Nine Million One Hundred Thirty Four Thousand and Four Hundred and no/100 ---------------------------- Dollars ($ 9,134,400.00 ),* lawful money of the United States, which sum, or so much thereof as may be advanced, with interest from date on outstanding balance at ten & nine-tenths percent ( 10.9 %) per annum, ** is payable in monthly installments in accordance with the terms of a certain Note or obligation bearing even date herewith and having a final maturity of March 1, 2023, which Note is identified as being secured hereby by a certificate thereon. Said Note and all of its terms are incorporated herein by reference and this Mortgage shall secure any and all extensions thereof, however evidenced.

AND ALSO to secure payment by the Mortgagor to the Mortgagee of all sums expended or advanced by the Mortgagee pursuant to any term or provision of this Mortgage; AND ALSO to secure performance of each covenant, term, condition and agreement of the Mortgagor herein contained and in the Regulatory Agreement and Building Loan Agreement hereinafter referred to, the Mortgagor hereby mortgages to the Mortgagee:

ALL that certain lot, piece, or parcel of land with the buildings and improvements thereon erected, situate, lying and being in the Borough of Brooklyn, County of Kings, and State of New York, bounded and described as follows: See Exhibit "A" attached hereto and made a part hereof.

* 248,690.80 of the principal sum secured by this Mortgage is given as a reimbursement to the Mortgagor for the legal, organizational and audit expenses, permanent financing fees, supplemental management fee, cash available to mortgagor; and the balance of the principal sum secured hereby, namely $8,885,709.20 is being loaned pursuant to the provisions of the Building Loan Agreement referred to in Paragraph 16 hereof.

** up to and including the date of final endorsement of the Note by the Federal Housing Commissioner; after final endorsement of the Note, the rate shall be seven and one-half percent (7.5%) per annum, all as more fully set out in the Mortgage Note secured hereby.

The covenant of the Mortgagor to pay principal and interest is included in the Note secured hereby for the purpose of establishing and continuing the existence of the indebtedness. However, it is a condition of said covenant and those contained herein that in the event of a default under the terms hereof, the holder shall take no action against the Mortgagor except such as may be necessary to subject to the satisfaction of the indebtedness the property described herein and any chattels appurtenant to the use thereof, PROVIDED, that nothing in this covenant and no action so taken shall operate to impair any obligation of the Mortgagor under the Building Loan Agreement and the Regulatory Agreement herein referred to and made a part hereof, or to deprive the holder of any rights it may have by law which are not expressly waived.

Mortgagor covenants that for a period of twenty (20) years from the date of initial occupancy upon completion of the construction or rehabilitation for which this Mortgage is given, that at all times twenty (20%) percent or more of the dwelling units in the mortgaged premises will be maintained solely for occupancy by individuals of low or moderate income within the meaning of such section 167(k)(3)(B) of the Internal Revenue Code of 1954, as amended, except that if the mortgaged premises is a "targeted area project" which is a project located in a qualified census tract (within the meaning of section 103A(k)(2) of the Internal Revenue Code of 1954, as amended), or an area of chronic economic distress (within the meaning of section 103A(k)(3) of the Internal Revenue Code of 1954, as amended), fifteen (15%) percent or more of the units in the mortgaged premises will be maintained solely for occupancy by individuals of low or moderate income within the meaning of section 167(k)(3)(B) of the Internal Revenue Code of 1954, as amended.

Together with all right, title, and interest of the Mortgagor in and to the land lying in the streets and roads in front of and adjoining said premises; and

B.16a

TOGETHER with all fixtures and articles of personal property now or hereafter attached to or used in and about the building or buildings now erected or hereafter to be erected on the lands herein described which are necessary to the complete and comfortable use and occupancy of such building or buildings for the purposes for which they were or are to be erected including, but not limited to, all awnings, screens, shades, venetian blinds, cabinets, fixtures; and all plumbing, heating, lighting, cooking, laundry, ventilating, refrigerating, incinerating, and air conditioning equipment and fixtures and appurtenances thereto; and such other goods and chattels and personal property as are ever used or furnished in operating a building or the activities conducted therein similar to the one herein described and referred to, and all renewals or replacements thereof or articles in substitution therefor, whether or not the same are, or shall be attached to said building or buildings in any manner, Mortgagor hereby covenanting for itself and its successors that all the aforesaid property mentioned in this paragraph, all of which is intended to be included in the mortgaged property, when acquired and placed upon the premises, is and shall be owned by it in fee simple, free and clear of all liens and encumbrances; it being hereby mutually agreed that all the aforesaid property shall, so far as permitted by law, be deemed to be affixed to the realty; and together with all building materials and equipment now or hereafter delivered to said premises and intended to be installed therein.

The Mortgagor further covenants and agrees as follows:

1. That Mortgagor will pay the Note at the times and in the manner provided therein;

2. That Mortgagor will not permit or suffer the use of any of the property for any purpose other than the use for which the same was intended at the time this Mortgage was executed; nor will it permit or suffer any alteration of or addition to the building or improvements hereafter constructed in or upon said property without the consent of the Mortgagee;

3. That the Regulatory Agreement, if any, executed by the Mortgagor and the Secretary of Housing and Urban Development, acting by and through the Federal Housing Commissioner, which is being recorded simultaneously herewith, is incorporated in and made a part of this Mortgage. Upon default under the Regulatory Agreement and upon the request of the Secretary of Housing and Urban Development, acting by and through the Federal Housing Commissioner, the Mortgagee, at its option, may declare the whole of the indebtedness secured hereby to be due and payable;

4. That all rents, profits and income from the property covered by this Mortgage are hereby assigned to the Mortgagee for the purpose of discharging the debt hereby secured. Permission is hereby given to Mortgagor so long as no default exists hereunder, to collect such rents, profits and income for use in accordance with the provisions of the Regulatory Agreement;

5. That upon default hereunder Mortgagee shall be entitled to the appointment of a receiver by any court having jurisdiction, without notice, to take possession and protect the property described herein and operate same and collect the rents, profits and income therefrom;

6. That at the option of the Mortgagor the principal balance secured hereby may be reamortized on terms acceptable to the Secretary of Housing and Urban Development, acting by and through the Federal Housing Commissioner if a partial pre-payment ~~results from an award in condemnation in accordance with provisions of Paragraph 8 herein, or from~~ an insurance payment made in accordance with provisions of Paragraph 7 herein, where there is a resulting loss of project income;

7. That the Mortgagor will keep the improvements now existing or hereafter erected on the mortgaged property insured against loss by fire and such other hazards, casualties, and contingencies, as may be stipulated by the Secretary of Housing ~~and Urban Development, acting by and through the Federal Housing Commissioner upon the insurance of~~ the Mortgage and other hazards as may be required from time to time by the Mortgagee, and all such insurance shall be evidenced by standard Fire and Extended Coverage Insurance Policy or policies, in amounts not less than necessary to comply with the applicable Coinsurance Clause percentage, but in no event shall the amounts of coverage be less than 80% of the Insurable Values or not less than the unpaid balance of the insured Mortgage, whichever is the lesser, and in default thereof the Mortgagee shall have the right to effect insurance. Such policies shall be endorsed with standard Mortgagee clause with loss payable to the Mortgagee and the Secretary of Housing and Urban Development as interest may appear, and shall be deposited with the Mortgagee;#

That if the premises covered hereby, or any part thereof, shall be damaged by fire or other hazard against which insurance is held as hereinabove provided, the amounts paid by any insurance company in pursuance of the contract of insurance to the extent of the indebtedness then remaining unpaid, shall be paid to the Mortgagee, and, at its option, may be applied to the debt or released for the repairing or rebuilding of the premises;

8. That all awards of damages in connection with any condemnation for public use of or injury to any of said property, shall be paid to the mortgagee to be applied to the amount due under the Note secured hereby in (1) amounts equal to the next maturing installment or installments of principal and (2) with any balance to be credited to the next payment due under the Note. No amount applied to the reduction of the principal amount due in accordance with (1) shall be considered an optional prepayment as the term is used in this Mortgage and the Note secured hereby, nor relieve the mortgagor from making regular monthly payments commencing on the first month following the date of receipt of the award. The holder of the Note is hereby authorized in the name of the mortgagor to execute and deliver valid acquittances for such awards and to appeal from such awards.

9. That in order more fully to protect the security of this Mortgage, together with, and in addition to, the monthly payments of principal and interest payable under the terms of the Note secured hereby, the Mortgagor agrees to deposit with the Mortgagee concurrently with payments of interest or of interest and principal, on the first day of each month after the date hereof until the said Note is fully paid, the following sums:

*(a)* An amount sufficient to provide the Mortgagee with funds to pay the next mortgage insurance premium if this instrument and the Note secured hereby are insured, or a monthly service charge, if they are held by the Secretary of Housing and Urban Development, as follows:

(I) If and so long as said Note of even date and this instrument are insured or are reinsured under the provisions of the National Housing Act, an amount sufficient to accumulate in the hands of the Mortgagee one month prior to its due date the annual mortgage insurance premium in order to provide such Mortgagee with funds to pay such premium to the Secretary of Housing and Urban Development pursuant to the National Housing Act, as amended, and applicable Regulations thereunder, or

(II) If and so long as said Note of even date and this instrument are held by the Secretary of Housing and Urban Development, a monthly service charge in an amount equal to 1/12 of ½% of the average outstanding principal balance due on the Note computed for each successive year beginning with the first day of the month following the date of this instrument, if the Secretary of Housing and Urban Development is the mortgagee named herein, or the first day of the month following assignment, if the Note and this instrument are assigned to the Secretary of Housing and Urban Development, without taking into account delinquencies or prepayment;

*(b)* A sum equal to the ground rents, if any, next due, plus the premiums that will next become due and payable on policies of fire and other property insurance covering the premises covered hereby, plus water rates, taxes and assessments next due on the premises covered hereby (all as estimated by the Mortgagee) less all sums already paid therefor divided by the number of months to elapse before one month prior to the date when such ground rents, premiums, water rates, taxes and assessments will become delinquent, such sums to be held by Mortgagee in trust to pay said ground rents, premiums, water rates, taxes and special assessments;

#The insurance carrier providing such insurance shall be chosen by borrower subject to approval by Lender; provided that such approval shall not be unreasonably withheld.

*(c)* All payments mentioned in the two preceding subsections of this paragraph and all payments to be made under the Note
secured hereby shall be added together and the aggregate amount thereof shall be paid each month in a single payment to
be applied by Mortgagee to the following items in the order set forth:

(I) premium charges under the Contract of Insurance with the Secretary of Housing and Urban Development, acting by
and through the Federal Housing Commissioner or service charge;

(II) ground rents, taxes, special assessments, water rates, fire and other property insurance premiums;

(III) interest on the Note secured hereby;

(IV) amortization of the principal of said Note;

10. Any excess funds accumulated under *(b)* of the preceding paragraph remaining after payment of the items therein men-
tioned shall be credited to subsequent monthly payments of the same nature required thereunder; but if any such item shall ex-
ceed the estimate therefor the Mortgagor shall without demand forthwith make good the deficiency. Failure to do so before the
same become delinquent or subject to interest or penalties shall be a default hereunder. In case of termination of the Contract
of Mortgage Insurance by prepayment of the mortgage in full, or otherwise (except as hereinafter provided), accumulations un-
der *(a)* of the preceding paragraph not required to meet payments due under the Contract of Mortgage Insurance, shall be credited
to the Mortgagor. If the property is sold under foreclosure or is otherwise acquired by the Mortgagee after default, any remain-
ing balance of the accumulations under *(b)* of the preceding paragraph shall be credited to the principal of the mortgage as of
the date of commencement of foreclosure proceedings or as of the date the property is otherwise acquired; and accumulations
under *(a)* of the preceding paragraph shall be likewise credited unless required to pay sums due the Secretary of Housing and
Urban Development, acting by and through the Federal Housing Commissioner under the Contract of Mortgage Insurance;

11. That no building on the premises shall be altered, removed, or demolished without the consent of the Mortgagee;

12. That the Mortgagor will pay all taxes, assessments, or water rates, and in default thereof, the Mortgagee may pay
the same;

13. That the Mortgagor within five days upon request in person or within ten days upon request by mail will furnish a
written statement duly acknowledged of the amount due on this Mortgage and whether any offsets or defenses exist against the
Mortgage debt.

14. That the Mortgagor warrants the title to the premises and that this Mortgage is, and will be maintained as, a valid
first lien on the premises;

15. That in case of sale under foreclosure the premises may be sold in one parcel;

16. This Mortgage and the Note secured hereby were executed and delivered to secure moneys advanced or to be advanced
and to be used in the construction of certain improvements on the lands herein described, in accordance with a building loan
agreement between the parties hereto dated August 25 , 19 81 , and intended to be filed simultaneously herewith, which
building loan agreement (except such part or parts thereof as may be inconsistent herewith) is incorporated herein by reference
to the same extent and effect as if fully set forth and made a part of this Mortgage, which said building loan agreement Mortga-
gor hereby covenants to perform; and if the construction of the improvements to be made pursuant to said building loan agree-
ment shall not be carried on with reasonable dilligence, or shall be discontinued at any time for any reason other than strikes
or lock-outs, the Mortgagee, after due notice to the Mortgagor, or any subsequent owner, is hereby invested with full and com-
plete authority to enter upon the said premises, employ watchmen to protect such improvements from depredation or injury, and
to preserve and protect the personal property therein, and to continue any and all outstanding contracts for the erection and
completion of said building or buildings, to make and enter into contracts and obligations wherever necessary, either in its own
name or in the name of the Mortgagor, or other owner, and to pay and discharge all debts, obligations, and liabilities incurred
thereby. All such sums so advanced by the Mortgagee (exclusive of advances of the principal of the indebtedness secured
hereby) shall be added to the principal of the indebtedness secured hereby and shall be secured by this Mortgage and shall be
due and payable on demand with interest at the rate specified in said Note, but no such advances shall be insured unless the
same are specifically approved by the Secretary of Housing and Urban Development, acting by and through the Federal Housing
Commissioner prior to the making thereof. The principal sum with interest and other charges provided for herein shall, at the
option of the Mortgagee or holder of this Mortgage and the Note secured thereby, become due and payable on the failure of the
Mortgagor, or owner, to keep and perform any of the covenants, conditions, and agreements of said building loan agreement.
This covenant shall be terminated upon the completion of the improvements to the satisfaction of the Mortgagee and the making
of the final advance as provided in said building loan agreement.

17. The Mortgagor covenants that it will not voluntarily create or permit to be created against the property subject to this
mortgage any lien or liens inferior or superior to the lien of this Mortgage.

18. That the Mortgagor will give immediate notice by mail to the Mortgagee of any fire, damage, or other casualty to the
premises or of any conveyance, transfer, or change of ownership of the premises. The holder of this Mortgage, its agents or
servants, shall have the right to inspect the mortgaged premises from time to time at any reasonable hour of the day;

19. That Mortgagor will not permit or commit any waste on said premises and will keep the buildings thereon and all
equipment therein mortgaged in good repair, and promptly comply with all laws, ordinances, regulations, and requirements of
any governmental body affecting the said mortgaged premises, and should said premises or any part thereof require inspection,
repair, care, or attention of any kind or nature not provided by the Mortgagor, the Mortgagee, being hereby made sole judge of
the necessity therefor, may enter or cause entry to be made upon said property, and inspect, repair, protect, care for or maintain
said property as the Mortgagee may deem necessary, and may pay such sum of money therefor, and shall be the sole judge of the
amount necessary to be paid.

20. That upon any default by the Mortgagor in the compliance with, or performance of, any of the terms, covenants, or con-
ditions of this Mortgage or of the Note secured hereby, the Mortgagee may at its option remedy such default; and that all pay-
ments made by the Mortgagee to remedy a default by the Mortgagor as aforesaid (including reasonable attorney's fees) and the
total of any payment or payments due from the Mortgagor to the Mortgagee and in default, together with interest thereon at the
rate specified in said Note per annum shall be added to the debt secured by this Mortgage and shall be repaid to the Mortgagee
upon demand. Any such sum and the interest thereon shall be a lien on the premises, prior to any other lien attaching or ac-
cruing subsequent to the lien of this Mortgage;

21. That after any default herein or in the Note secured hereby, the Mortgagor or any subsequent owner shall, upon demand,
surrender possession of the premises to the holder of this Mortgage, and the holder of this Mortgage may enter upon the prem-
ises and let the same and collect all the rents therefrom, which are due, or to become due, and apply the same, after payment
of all charges and expenses on account of the indebtedness hereby secured; and all the leases existing at the time of such de-
fault, are hereby assigned to the holder of this Mortgage as further security for the payment of said indebtedness. The holder
of this Mortgage may also dispossess, by the usual summary proceedings, any tenant defaulting in the payment to the holder
of this Mortgage of any rent. In the event that the Mortgagor or any subsequent owner of said premises occupies the same, the
Mortgagor agrees for himself and for such owner to surrender possession of the premises to the holder of this Mortgage immedi-
ately upon any default hereunder and if such Mortgagor or subsequent owner remains in possession after any default the pos-
session shall be as tenant of the holder of this Mortgage and the Mortgagor or such subsequent owner agrees to pay in advance
upon demand to the holder of this Mortgage as a reasonable monthly rental for the premises an amount at least equivalent to

one-twelfth (1/12) of the aggregate of the tw[illegible]ve monthly installments payable in the then c[illegible]rent year, plus the actual amount of the annual taxes, assessments, water ra[illegible] and insurance premiums for such year not c[illegible]ed by the aforesaid monthly payments, and in default of so doing such Mortgagor or subsequent owner may also be dispossessed by the usual summary proceedings. This covenant shall become effective immediately after the happening of any such default, solely on the determination of the then holder of this Mortgage. In case of foreclosure and the appointment of a receiver of the rents, this covenant shall inure to the benefit of such receiver;

22. The Mortgagor covenants and warrants that the improvements about to be made upon the premises above described and all plans and ~~specifications comply with all municipal ordinances and regulations made or promulgated by lawful authority, and~~ that the same will upon completion comply with all such municipal ordinances and regulations and with the rules of the fire rating or inspection organization, ~~bureau, association or office having~~ jurisdiction, which are now or may hereafter ~~become~~ applicable;

23. That the Mortgagor will receive the advances secured by this ~~Mortgage and will hold the right to receive such advances as a trust fund to be applied first for the purpose of paying the cost of the improvement, and~~ that it will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose;

24. That so long as this Mortgage and the Note secured hereby are insured or held by the Secretary of Housing and Urban Development, under the provisions of the National Housing Act, the Mortgagor will not execute or file for record any instrument which imposes a restriction upon the sale or occupancy of the mortgaged property on the basis of race, color or creed;

25. That the whole of the said principal sum and of any other sums of money secured by this Mortgage shall, forthwith or thereafter, ~~at the option of the Mortgagee, become due and payable upon the happening of either of the following events, irrespective of whether or not the same be remedied by the Mortgagee:~~

*(a)* Failure to make any monthly payment provided for herein or in the Note secured hereby prior to the due date of the next such installment.

*(b)* Failure of the Mortgagor to perform or comply with any other covenant, agreement, term, or condition of this mortgage or of the Note secured hereby in accordance with the terms hereof and thereof;

26. In the event the Mortgagee shall declare the whole of the said principal sum and of any other sums of money secured by this Mortgage, due and payable as aforesaid, the Mortgagor does hereby authorize and fully empower the Mortgagee to sell the mortgaged premises at public auction, and convey the same to the purchaser according to the statute in such case made and provided;

27. That no waiver of any covenant herein or of the Note secured hereby shall at anytime thereafter be held to be a waiver of the terms hereof or of the Note secured hereby;

28. That if the Mortgagee is made or becomes a party to any suit or action, by reason of this Mortgage or the indebtedness hereby secured, the Mortgagor will pay all expenses incurred by the Mortgagee therein, including a reasonable attorney's fee;

PROVIDED ALWAYS, NEVERTHELESS, that if the Mortgagor shall well and truly pay the said Note and other indebtedness secured hereby, and shall fully keep and perform all the covenants, agreements, terms and conditions in this Mortgage and in the Note secured hereby, then this Mortgage shall be released and discharged at the cost of the Mortgagor.

This Mortgage ~~and every covenant and agreement therein contained~~ shall be binding upon and inure to the benefit of the Mortgagor and the Mortgagee and their respective successors and assigns and to the extent permitted by law shall bind every subsequent owner of the mortgaged premises. Whenever used, the singular number shall include the plural, the plural the singular and the use of any gender shall be applicable to all genders.

This Mortgage has been executed by authority of the Board of Directors of the Mortgagor, and is subject to the Trust Fund provisions of Section 13 of the Lien Law of the State of New York.

IN WITNESS WHEREOF, this Mortgage has been duly executed by the Mortgagor.

ST. JOHNS I ASSOCIATES, a New York limited partnership
By: Unitroy ~~Construction Corp.~~, a general partner

[~~CORPORATE SEAL~~]

~~ATTEST:~~ WITNESS: [signature]

By [signature]
Troy Stevens Jr., President

STATE OF NEW YORK,
COUNTY OF New York } ss:

On this 25th day of August, in the year one thousand nine hundred and eighty one, before me personally came Troy Stevens Jr., to me known, who, being by me duly sworn, did depose and say, that he resides at 188 Delaware Avenue, in Freeport, New York; that he is the President of Unitroy Construction Corp., a general partner of ST. JOHNS I ASSOCIATES, the ~~corporation~~ limited partnership described in and which executed the above instrument; ~~that he knows the seal of said corporation; that the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of said corporation, and that he signed h... name thereto by like order.~~ and duly acknowledged to me that he executed the above instrument, in the name of and in behalf of said limited partnership.

[signature]
Notary Public

KEVIN SULLIVAN
Notary Public, State of New York
No. 24-02SU4718051
Qualified in Kings County
Commission Expires March 30, 1982

STATE OF NEW YORK

LOAN No. 012-57113-LD-EC-221 (d)4-L8

**Mortgage**

ST. JOHN'S I ASSOCIATES, a New York limited partnership

TO

MERRILL LYNCH HUNTOON PAIGE INC.

FHA-Wash., D. C.

210998-P

Exhibit A

PARCEL I

ALL that certain lot, piece or parcel of land, situate, lying and being in the Borough of Brooklyn, County of Kings City and State of New York, bounded and described as follows:

BEGINNING at a point on the Southerly side of St. John's Place distant 129 feet 0 1/3 inches Easterly from the corner formed by the intersection of the Southerly side of St. John's Place and the Easterly side of Troy Avenue;

running thence Southerly parallel with Troy Avenue 120 feet 3 1/2 inches to the centerline of the block;

running thence Easterly along the centerline of the block and parallel with St. John's Place 210 feet 11 2/3 inches;

running thence Northerly and parallel with Troy Avenue 120 feet 3 1/2 inches to the Southerly side of St. John's Place;

running thence Westerly and parallel with St. John's Place, 210 feet 11 2/3 inches to the point or place of BEGINNING.

SAID PREMISES being known as Tax Lots 15, 18 20 and 22 in Tax Block 1383 in Section 5 of the Tax Map of the Borough of Brooklyn, County of Kings, City and State of New York as said map existed on February 11, 1975 and also known as Numbers 1280, 1284, 1288 and 1292 St. John's Place, Brooklyn, New York.

PARCEL II

ALL that certain lot, piece or parcel of land with the improvements thereon erected, situate lying and being in the Borough of Brooklyn, County of Kings, City and State of New York bounded and described as follows:

BEGINNING at a point on the Northerly side of Sterling Place, distant 55 feet and 0 inches Easterly from the intersection formed by the Easterly side of Rochester Avenue and the Northerly side of Sterling Place;

running thence Northerly parallel with Rochester Avenue, a distance of 100 feet to a point;

running thence Easterly parallel with Sterling Place a distance of 45 feet to a point;

running thence Northerly parallel to Rochester Avenue a distance of 5 feet to a point;

running thence Easterly parallel to Sterling Place a distance of 70 feet 0 3/4 inches to a point;

running thence Southeasterly a distance of 7 feet 0 inches to a point

running thence Southerly and parallel to Rochester Avenue a distance of 98 feet and 1 3/8 inches to the Northerly side of Sterling Place;

running thence Westerly along the Northerly side of Sterling Place, a distance of 116 feet and five inches to a point or place of BEGINNING.

SAID PREMISES being known as Tax lots 70 and 74 in Tax Block 1374 on the Tax Map of the Borough of Brooklyn, County of Kings, City and State of New York as said map existed on April 18, 1979 and also known as Numbers 1535 and 1539 Sterling Place, Brooklyn, New York.

PARCEL III

ALL that certain lot, piece or parcel of land with the improvements thereon erected, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, bounded and described as follows:

BEGINNING at a point on the Southerly side of Sterling Place, distant 180 feet 0 inches Easterly from the corner formed by the the Southerly side of Sterling Place and the Easterly side of Rochester Avenue;

running thence Southerly parallel to Rochester Avenue a distance of 120 feet 3 1/2 inches to the center line of the block;

running thence Easterly and parallel to Sterling Place a distance of 160 feet 0 inches to a point;

running thence Northerly parallel to Rochester Avenue a distance of 120 feet 3 1/2 inches to the Southerly side of Sterling Place;

running thence Westerly along the Southerly side of Sterling Place a distance of 160 feet to the point or place of BEGINNING.

SAID PREMISES being known as Tax lot 18 in Tax Block 1380 in Section 5 of the Tax Map of the Borough of Brooklyn, County of Kings, City and State of New York as said map existed on April 18, 1979 and also known as Numbers 1550 and 1566 Sterling Place, Brooklyn, New York.

Revised March 1965

# MORTGAGE NOTE

$ 9,134,400.00

New York , New York

August 25 , 19 81 .

FOR VALUE RECEIVED, the undersigned, ST. JOHNS I ASSOCIATES, a New York limited partnership promises to pay to MERRILL LYNCH HUNTOON PAIGE INC. , a corporation organized and existing under the laws of the State of New York, or order, hereinafter designated as the Mortgagee, the principal sum of Nine Million One Hundred and Thirty Four Thousand Four Hundred——Dollars ($ 9,134,400.00 ) with interest from date at the rate of ten & nine tenths per centum ( 10.90 %) per annum on the unpaid balance ~~until paid. The said principal and interest shall be payable in monthly installments as follows:~~

up to and including the date of final endorsement by the Federal Housing Commissioner; thereafter interest shall be payable at the rate of seven and one-half percentum (7.5%) per annum on the unpaid balance until paid. Said principal and interest shall be payable in monthly installments as follows: Interest alone on such amount of principal as may be advanced from time to time, computed from the date of each advance, shall be payable monthly on the first day of September , 19 81 , and on the first day of each month thereafter to and including the first day of March , 19 83 . ~~Thereafter, commencing on the first day of——————, 19 83 , installments of interest and principal shall be paid in the sum of -Dollars ($——————) each; such payments to continue monthly thereafter on the first day of each succeeding month up to and including the first day of——————,——.~~ Thereafter, commencing on the first day of April , 83 , installments of interest and principal shall be paid in the sum of Sixty Thousand One Hundred and Ten and 82/100 —————————————— Dollars ($ 60,110.82 ) each, such payments to continue monthly thereafter on the first da of each succeeding month until the entire indebtedness has been paid. In any event, the balanc of principal (if any) remaining unpaid, plus accrued interest, shall be due and payable on the first day of March , 20 23 . The installments of interest and principal shall be applied first to interest at the aforesaid rate upon the principal sum or so much thereof as shall from time to time remain unpaid, and the balance thereof shall be applied on account of principal.

In the event that final endorsement has not taken place at least one month prior to the aforesaid date for commencement of installments of interest and principal, then the undersigned shall be required to pay the aforesaid installments of principal and interest (calculated at 7.5%), plus an additional amount representing the difference between interest at the rate of 7.5% per annum and 10.90 % per annum for each month or part of a month that precedes final endorsement. Notwithstanding anything herein to the contrary, such payment shall be applied first to interest at the rate of 10.90 % per annum and then to principal. After final endorsement, the additional interest shall no longer be payable.

The Maker assumes no personal liability for the payment hereof except as set out in the Mortgage of even date given to secure this indebtedness.

SEE RIDER ATTACHED HERETO AND MADE PART HEREOF, ENTITLED "ADDITIONAL PROVISIONS"

Both principal and interest under this Note, as well as the additional payments set forth in the Mortgage of even date herewith securing this Note, shall be payable at the office of MERRILL LYNCH HUNTOON PAIGE INC. in New York, New York or such other place as the holder may designate in writing.

~~Privilege is reserved to pay the debt in whole or in an amount equal to one or more monthly payments on principal next due, on the first day of any month prior to maturity upon at least thirty (30) days' prior written notice to the holder.~~ If this debt is paid in full prior to maturity and while insured under the National Housing Act, all parties liable for payment of this debt hereby agree to be jointly and severally bound to pay to the holder hereof any adjusted premium charge required by the applicable Regulations.

~~Notwithstanding any provision herein for a prepayment charge, such charge shall be applicable only to the amount of prepayment in any one calendar year which is in excess of fifteen per centum (15%) of the original principal sum of this Note.~~

The whole of the principal sum or any part thereof, and of any other sums of money secured by the Mortgagee given to secure this Note, shall, forthwith, or thereafter, at the option of the Mortgagee, become due and payable if default be made in the payment of any installment under this Note and if such default is not made good prior to the due date of the next such installment or upon the happening of any default which, by the terms of the Mortgage given to secure this Note, shall entitle the Mortgagee to declare the same, or any part thereof, to be due and payable; all the covenants, agreements, terms, and conditions of said Mortgage and of the Building Loan Agreement incorporated in the Mortgage (to the extent said Building Loan Agreement is not inconsistent with the terms of this Note and the said Mortgage) are hereby incorporated herein by reference to the same extent and effect as if fully set forth and made a part of this Note and the undersigned hereby covenants to perform all such covenants and agreements. Failure to exercise this option shall not constitute a waiver of the right to exercise the same in the event of any subsequent default. In the event of default in the payment of this Note, and if the same is collected by an attorney at law, the undersigned hereby agree(s) to pay all costs of collection, including a reasonable attorney's fee.

No default shall exist by reason of nonpayment of any required installment of principal so long as the amount of optional additional prepayments of principal already made pursuant to the privilege of prepayment set forth in this Note equals or exceeds the amount of such required installment of principal.

All parties to this Note, whether principal, surety, guarantor, or endorser, hereby waive presentment for payment, demand, protest, notice of protest, and notice of dishonor.

Signed and sealed the date and year first above written.

ST. JOHNS I ASSOCIATES, a New York limited partnership
By: Unitroy Construction Corp., a general partner

ATTEST:

By ______________________
Troy Stevens, President

THIS IS TO CERTIFY that this is the Note described in, and secured by, Mortgage of even date herewith, and in the same principal amount as herein stated, on property located at 1280,1284,1288,1292 St. Johns Place, 1535,1539,1550,1566 Sterling Pl in the Borough of Brooklyn, County of Kings, State of New York.

______________________

KEVIN SULLIVAN
Notary Public, State of New York
No. 24-02SU4718051
Qualified in Kings County
Commission Expires March 30, 1982

Pay to the order of

, without recourse.

MERRILL LYNCH HUNTOON PAIGE INC.,
a New York Corporation

By: ______________________

Attest: ______________________

STATE OF NEW YORK

LOAN NO.

Mortgage Note

ST. JOHNS I ASSOCIATES, a New York limited partnership
TO
MERRILL LYNCH HUNTOON PAIGE INC.

No. 012-57113-LD-EC-221(d)4-L8

Insured under 221(d)4 / pursuant to 223(e) of the National Housing Act and Regulations thereunder of the Federal Housing Commissioner in effect on Sept. 30, 1980 (amended July 9 1981)

To the extent of advances approved by the Commissioner

FEDERAL HOUSING COMMISSIONER

By ______________________
(Authorized Agent)

Date August 25, 1981

A total sum of $ ________ has been approved for insurance hereunder by the Commissioner.

FEDERAL HOUSING COMMISSIONER

By ______________________
(Authorized Agent)

Date ______________________

Reference is made to the Act and to the Regulations thereunder covering endorsements of the insurance protection on this [illegible].

[illegible] Rev. 1/65 HUD [illegible]

PPAS-NYH-00117

RIDER ATTACHED TO AND MADE PART OF MORTGAGE NOTE FROM ST. JOHNS I ASSOCIATES, a New York Limited Partnership TO MERRILL LYNCH HUNTOON PAIGE INC., DATED August 25, 1981.

ADDITIONAL PROVISIONS

To the extent permitted under 24 C.F.R. §221.524(d), there shall be no payments made hereunder without the prior approval of the holder hereof, other than mandatory prepayment and regularly scheduled payments of principal to reduce the principal amount hereof in whole or part prior to the delivery hereof to GNMA; thereafter, in the event of prepayment of principal during any one calendar year in an amount in excess of fifteen (15%) percent of the original principal amount hereof, all parties liable for payment thereof hereby agree to be jointly and severally bound to pay to the holder hereof for its own account a premium or charge equal to three (3%) percent of the amount of such excess less one-eighth of one percent for each twelve month period which has elapsed since the date of this Mortgage Note. In the event that this Mortgage Note is not delivered to GNMA, no prepayment of principal may be made until permitted by the holder hereof under the terms of any permanent financing.

A reduction in the amount hereof required by the Secretary at the time of Final Endorsement shall not be construed as a prepayment hereunder.

In the event any installment or part of any installment due hereunder becomes delinquent for more than fifteen (15) days, there shall be due at the option of the holder, in addition to other sums then due hereunder, a sum equal to two (2%) percent of the amount of principal and interest so delinquent. Whenever, under the law of the State of New York, the amount of any such late charge is considered to be additional interest, this provision shall not be used if the rate of interest specified in the Mortgage together with the amount of the late charge would aggregate an amount in excess of the maximum rate of interest permitted and would constitute usury.

ST. JOHNS I ASSOCIATES,
a New York limited partnership
By: Unitron Construction Corp., a general partner

By: ______________________
Troy Stevens Jr., President

default shall exist by reason of nonpayment of any required installment of principal so long as the amount of optional additional prepayments of principal already made pursuant to the privilege of prepayment set forth in this Note equals or exceeds the amount of such required installment of principal.

All parties to this Note, whether principal, surety, guarantor, or endorser, hereby waive ~~presentment for payment, demand, protest, notice of~~ protest, and notice of dishonor.

Signed and sealed the date and year first above written.

ST. JOHNS I ASSOCIATES, a New York limited partnership
By: Unitroy Construction Corp., a general partn

ATTEST:

By [signature]
Troy Stevens, Jr., President

THIS IS TO CERTIFY that this is the Note described in, and secured by, Mortgage of even date herewith, and in the same principal amount as herein stated, on property located at 1280,1284,1288,1292 St. Johns Place, 1535,1539,1550,1566 Sterling P in the Borough of Brooklyn, County of Kings, State of New York.

[signature]

KEVIN SULLIVAN
Notary Public, State of New York
No. 24-02SU4718051
Qualified in Kings County
Commission Expires March 30, 1982

Pay to the order of

, without recourse.

MERRILL LYNCH HUNTOON PAIGE INC.,
a New York Corporation

By: ____________________

Attest: ____________________

STATE OF NEW YORK

LOAN No.

Mortgage Note

ST. JOHNS I ASSOCIATES, a New York limited partnership

TO

MERRILL LYNCH HUNTOON PAIGE INC.

No. 012-57113-LD-EC-221(d)4-L8

Insured under 221(d)4 pursuant to 223(e) of the National Housing Act and Regulations thereunder of the Federal Housing Commissioner in effect on Sept. 30, 1980 (amended July 9, 1981)

To the extent of advances approved by the Commissioner

FEDERAL HOUSING COMMISSIONER

By [signature] (Authorized Agent)

Date August 25, 1981

A total sum of $________ has been approved for insurance hereunder by the Commissioner.

FEDERAL HOUSING COMMISSIONER

By ____________ (Authorized Agent)

Date ____________

Reference is made to the Act and to the Regulations thereunder covering assignments of the insurance protection on this note.

HUD-... Rev. 1/65 HUD-Wash., D.C.

cc Henry

BLK 5

~~BANKER~~ Update

# Insurance Termination Request for Multifamily Mortgage

U.S. Department of Housing and Urban Development
Office of Housing
Federal Housing Commissioner

OMB Approval No. 2502-0416 (exp. 05/31/2006)

**Applicant must read all of the Instructions on back before completing this form**

1. Type of Request (Place an X in those that apply)

**Full Insurance**

- [x] Prepayment Termination: Mortgage is paid in full and original credit instrument is canceled.
- [ ] Voluntary Termination: Attach the original credit instrument for cancellation of insurance endorsement.

**Co-Insurance**

- [ ] Date Deed Recorded, (mm/dd/yyyy) ____________
- [ ] Mortgagee intends to file a claim
- [ ] Mortgagee does not intend to file a claim
- [ ] Prepayment Termination - Mortgage Paid in Full
- [ ] Voluntary Termination-Attach credit instrument
- [ ] ~~Mortgagor Redeems Property After Foreclosure~~
- [ ] 3rd Party Acquires Property At Foreclosure Sale

| 2. Date of This Request (mm/dd/yyyy) | 3. FHA Project Number | 4. Mortgagee's Loan No. (if any) |
|---|---|---|
| ~~10/28/2003~~ 12-4-03 | 012-57113 | 001257113 |
| **5. Date of Prepayment in Full, if applicable (mm/dd/yyyy)** | **6. Original Amount of Mortgage** | **7. Maturity Date (mm/dd/yyyy)** |
| 12-4-03 | 9,134,400.00 | 03/01/2023 |

8. The following items are attached, or the statements are applicable:

- [ ] Certified or cashier's check for $100 for redemption of the preferred stock issued to FHA/HUD by the mortgagor corporation plus any due and unpaid dividends.
- [ ] Original Credit Instrument. See Item 1, above.
- [x] Prior Approval to Terminate, if required (See reverse)

9. Program Information. Check a Yes or No on each of the following:

| Yes | No | |
|---|---|---|
| [ ] | [ ] | Nonprofit |
| [ ] | [ ] | Receiving Rent Supplement |
| [ ] | [ ] | Receiving Section 8 Payments |
| [ ] | [ ] | Limited Distribution |

Certifications: [ ] I certify that no dividends are due. [ ] I certify that the amount remitted with this form is the full amount due.

The undersigned certifies that the information shown above is true and correct, and the undersigned agrees that upon request of HUD it will furnish documents to support the responses shown above.

Warning: HUD will prosecute false claims and statements. Conviction may result in criminal and/or civil penalties. (18 U.S.C. 1001, 1010, 1012; 31 U.S.C. 3729, 3802)

RECEIVED
MULTIFAMILY HUB
... 20 PM 3:15

10. Name and Signature of Mortgagors (Complete only if this is a voluntary termination.) (If corporate, give name of corporation and title of authorized officer who signs.)

11. Project Name
St. John's Place
TIN # 133096319

12. HUD Holding Mortgagee Number (To be completed in all instances)
60001

13. HUD Servicing Mortgagee Number (To be completed only if submitted by servicer)
60152

14. Name, Address and Zip Code of Holding Mortgagee (To be completed in all instances)
Riggs Bank NA
808 Seventeenth Street NW
Washington, DC 20006

15. Name, Address and Zip Code of Mortgagee's Servicer (To be completed only if submitted by servicer)
Reilly Mortgage Group Inc.
2010 Corporate Ridge, Suite 1000
McLean, VA 22102

16. Signature of Holding Mortgagee's Authorized Representative

Title of Holding Mortgagee's Authorized Representative

17. Signature of Servicing Mortgagee's Authorized Officer
Joanne M. Benecki

Title of Servicing Mortgagee's Authorized Officer
Joanne M. Benecki, Vice President

**For HUD Use Only:** The contract of insurance, as identified above, has been terminated in accordance with this request and HUD regulations.

- [ ] The original document, showing cancellation of the HUD insurance endorsement, is attached.
- [ ] A refund of unearned insurance premium in the amount of $ 30,022.79 has been authorized for the account of the mortgagor and a U.S. Treasury check will be sent to your office. This refund and any HUD premium held in escrow may be credited or returned to the borrower.

| Date Document Received (mm/dd/yyyy) | Effective Date of Termination (mm/dd/yyyy) | Signature of Designated HUD Official | Date (mm/dd/yyyy) |
|---|---|---|---|
| | 12/4/03 | Ronald P. McDowell | 12/16/03 |

# CERTIFICATE OF LIMITED PARTNERSHIP

# OF

# ST. JOHNS I ASSOCIATES

Pursuant to Section 91 of the Partnership Law of the State of New York

---

WE, the undersigned, desiring to form a Limited Partnership (the "Partnership") pursuant to Article 8 of the Partnership Law of the State of New York, hereby certify as follows:

I. The name of the Partnership is ST. JOHNS I ASSOCIATES.

II. The character of the Partnership's business is to acquire, hold, improve, rehabilitate, maintain, operate and dispose of the property commonly known and described as 1280-1292 St. Johns Place and 1535-50 Sterling Place, Brooklyn, New York (the "Property") and to own, manage, lease or mortgage said Property. The Partnership shall not engage in any other business.

III. The location of the principal place of business of the Partnership is 39 Broadway, New York, New York 10006.

IV. (a) The names and places of residence of the General Partners of the Partnership (the "General Partners") are as follows:



PPAS-NYH-00008

| NAME | PLACE OF RESIDENCE |
| --- | --- |
| UNITROY CONSTRUCTION CORP. | 5 Beekman Street<br>New York, New York 10038 |
| JOSEPH NEUMANN | 1540 55th Street<br>Brooklyn, New York 11219 |

(b) The names and places of residence of the Limited Partners of the Partnership (the "Limited Partners") are as follows:

| NAME | PLACE OF RESIDENCE |
| --- | --- |
| JOSEPH NEUMANN | 1540 55th Street<br>Brooklyn, New York 11219 |
| PJR CONSTRUCTION CORP. | 2411 Avenue X<br>Brooklyn, New York 11235 |

V. The term for which the Partnership is to exist is from the date on which the Partnership is formed until December 31, 2029, except that the term may expire or be terminated earlier if:

(a) The General Partners so elect and obtain the written consent of a "Majority in interest of the 'Limited Partners'" (as such term is defined in the Agreement); or

(b) The Partnership sells and conveys its entire interest in the Property, unless the Partnership simultaneously enters into a lease (as tenant) of all or substantially all of the Property, or receives a purchase money mortgage in connection with such sale or conveyance; of

(c) Any of the following events shall occur and the Partnership is not continued as provided in Section XII below:

(i) The General Partners shall have ceased to serve as such; or

(ii) The General Partners shall (A) be adjudicated a bankrupt, (B) suffer or permit a receiver to be appointed to hold or administer all or any substantial portion of his or its assets and the appointment shall remain in effect for thirty (30) days, (C) make an assignment for the benefit of creditors, or (D) file a petition for an arrangement with his or its creditors under the provisions of the United States Bankruptcy Act or any state statute for the relief of debtors.

VI. The total amount of cash to be contributed by the Limited Partners (there being no other property) is $100.00; $90 by Joseph Neumann and $10 by PJR Construction Corp., which shall be contributed upon the execution of the Agreement.

VII. The Limited Partners are not required to make any contributions in addition to the contribution set forth in Section VI hereof.

VIII. The capital of the Partnership shall be returned to the Limited Partners and the General Partners upon the dissolution or termination of the Partnership unless the Partnership is to be reconstituted as described in Section XII hereof.

IX. The Limited Partners and the General Partners shall share in the income and profits of the Partnership as follows:

(1) If in any fiscal year the Partnership shall realize cash from any source other than a sale or refinance of the Property then the portion of such cash which is not reasonably necessary, as determined by the General Partners, for the operation of the Partnership's business or the reconstruction or the replacement of the Property, shall be distributed as follows:

(A) Two (2%) per cent to the General Partners, to be shared equally between the General Partners; and

(B) Ninety-eight (98%) per cent to the Limited Partners as follows: Ninety seven (97%) per cent to Joseph Neumann and One (1%) per cent to PJR Construction Corp.

(2) If in any fiscal year the Partnership shall realize cash from a sale or refinancing of the Property, same shall be distributed as follows:

(A) The Limited Partners shall be paid the amount of their capital contribution;

(B) The balance shall be distributed as follows: Two (2%) per cent to the General Partners to be shared equally between them and ninety-eight (98%) per cent to the Limited Partners, as follows: (Ninety-seven (97%) per cent to Joseph Neumann and One (1%) per cent to PJR CONSTRUCTION CORP.

X. A Limited Partner may assign his interest in the Partnership provided that (a) the assignee is not a natural

person below the age of twenty-one (21) and is not a natural person who has been adjudged incompetent, (b) the assignment is in writing in form reasonably satisfactory to the General Partner and the assignee has agreed in writing, in form reasonably satisfactory to the General Partners, to be bound by the terms of the Agreement, (c) the General Partners consent in writing to the assignment (no consent or approval of the Limited Partners being required), and (d) the assignment is effective as of the first day of a fiscal quarter. The General Partners shall withhold his or its consent to any assignment of an interest of a Limited Partner if it is reasonable to believe that such assignment will (1) be considered as a termination of the Partnership for Federal income tax purposes under Section 708(b) of the Internal Revenue Code of 1954 or any corresponding provision of any future United States Internal Revenue law, or (2) violate any applicable Federal or State securities or Blue Sky law in any respect, or (3) require registration under the Securities Act of 1933, as amended, and/or registration and/or qualification under any then applicable State and/or Federal statutes, or (4) cause the Partnership to be treated as an association taxable as a corporation rather than as a partnership subject to the provisions of the Internal Revenue Code of 1954. Notwithstanding the foregoing, the Limited Partners agree that they will in no event sell, transfer or distribute all or any part of their interest in the Partnership unless (a) in the opinion of counsel

to the Partnership such sale or transfer may be legally made without registration under the Securities Act of 1933, as amended, and/or registration and/or qualification under any then applicable State and/or Federal statutes, or (b) such sale or transfer shall have been so registered and/or qualified and an appropriate prospectus shall then be in effect.

XI. There is no right given to admit additional Limited Partners.

XII. The Partnership shall not be dissolved pursuant to any of the matters set forth in subdivision (c) of Section V hereof if the Limited Partners elect to reconstitute and continue the Partnership as a successor Limited Partnership upon the same terms and conditions as are set forth in the Agreement, in which event the Partnership shall be continued.

XIII. The Limited Partners do not have the right to demand and to receive property other than cash in return for their contribution.

IN WITNESS WHEREOF, this Certificate has been made and subscribed as of this 22 day of April 1981.

GENERAL PARTNERS:

UNITROY CONSTRUCTION CORP.

BY [signature]
Troy D. Stevens, Jr., President

[signature]
Joseph Neumann

LIMITED PARTNERS

[signature]
Joseph Neumann



PPAS-NYH-00013

PJR CONSTRUCTION CORP.

By ............................
Ronald Lieberman, Pres.

STATE OF NEW YORK )
:ss:
COUNTY OF NEW YORK )

On this 7th day of ~~April~~ May, 1981, before me personally came Troy D. Stevens, Jr., to me known who being by me duly sworn, did depose and say that he resides at 188 Delaware Avenue Freeport, New York; that he is the President of Unitroy Construction Corp., the corporation described in and which executed the foregoing instrument; that he knows the seal of said corporation; that the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of said corporation; and that he signed his name thereto by like order.

............................
(Notary Public

KEVIN SULLIVAN
Notary Public, State of New York
No. 24-02SU4718051
Qualified in Kings County
Commission Expires March 30, 1982

STATE OF NEW YORK )
:ss:
COUNTY OF NEW YORK )

On the 22 day of April, 1981 before me personally came JOSEPH NEUMANN, to me known to be the individual described in and who executed the foregoing instrument, and acknowledged to me that he executed the same.

Notary Public

DONALD PRESS
NOTARY PUBLIC, State of New York
No. 30-3157060
Qualified in Nassau County
Commission Expires March 30, 1983

STATE OF NEW YORK )
: ss:
COUNTY OF NEW YORK )

On the 22 day of April, 1981, before me personally came RONALD LIEBERMAN, to me known, who being by me duly sworn, did depose and say that he resides at 1 Woodstock Place, Freehold, New Jersey; that he is the President of PJR CONSTRUCTION CORP., the corporation described in and which executed the foregoing instrument; that he knows the seal of said corporation; that the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of said Corporation; and that he signed his name thereto by like order.

Notary Public

Notary Public, State of New York
Qualified in Kings County
Commission Expires March 30, 1982

STATE OF NEW YORK )
: ss:
COUNTY OF NEW YORK )

On the 22 day of April 1981, before me personally came Joseph Neumann, to me known and known to me to be the individual described in and who executed the foregoing instrument and duly acknowledged to me that he executed the same.

Donald Press

Notary Public

DONALD PRESS
NOTARY PUBLIC, State of New York
No. 30-3157060
Qualified in Nassau County
Commission Expires March 30, 1983

FHA FORM NO. 2530
Rev. 3/76

U. S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
FEDERAL HOUSING ADMINISTRATION
PREVIOUS PARTICIPATION CERTIFICATE

Form Approved
OMB No. 63–R1406

HUD Area or Insuring Office: New York
Project Number: NY36-H110-050
Proposed Project Name: ST. JOHN'S PHASE I
Location: BROOKLYN, NEW YORK
Proposed Mortgage Amount $ 8,622,900
Number of Units: 191+1

We, the undersigned, request consideration of the above identified project proposal to be financed with a mortgage insured under the National Housing Act. We, individually and collectively, represent that we are the sole Principals in the project (or that all other Principals have filed a similar certificate), that we have not been Principals or had an interest in any FHA insured or other HUD programs except as shown below, and that no project in which we have had any interest is, or ever was, in default or received mortgage relief except as shown below. We agree that any change of the Principals listed herein, or additions thereto, will be reported to FHA and we will inform them of the requirement to file a similar certificate.

| Previous Project Name and Location | FHA or HUD No. | Name of Principal | Type of Participation | Default | Mortgage Relief |
|---|---|---|---|---|---|
| NONE | | | | | |

UNITROY CONSTRUCTION CORP.

April 18, 1980
DATE
SIGNATURE

Employer Identification or Social Security Number
ID#
SS# 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

Troy D. Stevens, Jr. President
PLEASE TYPE NAME AND INTEREST IN PROPOSED PROJECT

New York, New York
CITY, STATE AND ZIP CODE

DATE
SIGNATURE

PLEASE TYPE NAME AND INTEREST IN PROPOSED PROJECT
CITY, STATE AND ZIP CODE

DATE
SIGNATURE

PLEASE TYPE NAME AND INTEREST IN PROPOSED PROJECT
CITY, STATE AND ZIP CODE

DATE
SIGNATURE

PLEASE TYPE NAME AND INTEREST IN PROPOSED PROJECT
CITY, STATE AND ZIP CODE

DATE
SIGNATURE

PLEASE TYPE NAME AND INTEREST IN PROPOSED PROJECT
CITY, STATE AND ZIP CODE

WARNING: Section 1010 of Title 18, U.S.C., "Department of Housing and Urban Development transactions," provides: "Whoever, for the purpose of . . . influencing in any way the action of such Department . . . makes, passes, utters, or publishes any statement, knowing the same to be false . . . shall be fined not more than $5,000 or imprisoned not more than two years, or both."

PPAS-NYH-00003