a) State the month and the old HAP (the amount paid as Regular Assistance Payments) on the voucher 52670 Line 1 for the month in which the increase was effective. Do not include any other adjustments which were claimed for that month.

b) Calculate and state the increase in rent for each unit type.

c) Add the old HAP to the increase. This will give you the new HAP.

d) Divide the difference between the old HAP and the new HAP by the number of calendar days in the month, and multiply by the number of days that the new increase is in effect for that month. (Note: do not divide the difference by 30. Divide by the number of actual calendar days in the month that the increase takes effect., e.g., 29, 30, 31.) Round either at each calculation or at the end. (This calculation is for rent increases only).

e) The results will be your retroactive claim for the month only. Each unit does not have to be prorated on the 52670A Part I.

f) The remaining months will be the full amount of the increase. This will be shown by the dollar increase multiplied by the number of units for each size, again multiplied by the number of retroactive months.

Attached is a sample of the calculations and the format as stated above. Please endure that you follow the format as given in the sample.

As always the vouchers 52670 and 52670A Part I (and Part II if applicable) must be mailed to the Regional Accounting Division as well as to the Assisted Housing Management Branch. Attach a copy of this approval letter to both copies of your voucher.

Mailing instructions are as follows:

Copy 1--Voucher and approval letter (original signature) to:
Regional Accounting Division, Room 35-120.

Copy 2--Voucher, Approval letter, Rental Schedule 92458 to:
Assisted Housing Management Branch
Attention: Rochelle Printz, Room: 3214.

Sincerely,

G. Sheridan 9/30/94

Gerard W. Sheridan
Director
Housing Management Division, 2HM

:: 2HMA Gonzalez/Ramos/Dotts/VE
ML:Buchwalter
ped:9/20/94 by:(ja)

Enclosures

| orrespondence ode | Originator | Concurrence | Concurrence | Concurrence | Concurrence | Concurrence |
|---|---|---|---|---|---|---|
| | 2HMA | RG 2HMA 9/22/94 | 2HMA 9-23-94 | 2HMA (HMS) | 2HMA | |

Aug. 13 1996 9:58AM P15 PHONE No. : 908 506 9534 From : Tony Kamand, MAI

Estimates of Market Rent by Comparison

U.S. Department of Housing and Urban Development
Office of Housing
Federal Housing Commissioner

OMB Approval No. 2502-0331

Public reporting burden of information to average 1 hour per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection o Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden to the Reports Management Office, Office of Information Policies and Systems, U.S. Departmen Housing and Urban Development, Washington, D.C. 20410-3600 and to the Office of Management and Budget Paperwork Reduction Project (2502-0331), Washington, D.C. 20503

| Unit Type: Studio | Subject | Rental #1 | | Rental #2 | | Rental #3 | | Rental #4 | | Rental #5 | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Address | 1535 Sterling Place Brooklyn | 706 Eastern Parkway Brooklyn | | 1004 Montgomery Street Brooklyn | | 1004 Montgomery Street Brooklyn | | 114 Fenimore Street Brooklyn | | 395 Maple Street Brooklyn | |
| Characteristics: | Data | Data | - + | Data | - + | Data | - + | Data | - + | Data | - + |
| Effective Date of Rental | 7/96 | 1/96 | | 3/96 | | 11/95 | | 1/96 | | 2/96 | |
| Type/Stories | Elevator / 4 Story | Elev / 6 Story | | Elev / 6 Story | | Elev / 6 Story | | Elev / 6 Story | | Elev / 6 Story | |
| Floor of Unit in Building | 2nd floor | 3rd floor | ($5) | 2nd floor | | 4th floor | ($10) | 4th floor | ($10) | 3rd floor | ($5) |
| Project Occupancy | 100% | 100% | | 100% | | 100% | | 100% | | 100% | |
| Concessions | None | None | | None | | None | | None | | None | |
| Year Built/Condition | 1917 / Avg. | 1935/Avg. | | 1928/Avg. | | 1928/Avg. | | 1931/Avg. | | 1928/Avg. | |
| Sq. Ft. Area | 450 | 450 | | 475 | | 475 | | 450 | | 450 | |
| Number of Bedrooms | 0 | 0 | | 0 | | 0 | | 0 | | 0 | |
| Number of Baths | 1 | 1 | | 1 | | 1 | | 1 | | 1 | |
| Number of Rooms | 2 | 2 | | 2 | | 2 | | 2 | | 2 | |
| Balc./Terr./Patio | None | None | | None | | None | | None | | None | |
| Garage or Carport | None | None | | None | | None | | None | | None | |
| Equip: a. A/C | None | None | | None | | None | | None | | None | |
| b. Range/Oven | Yes | Yes | | Yes | | Yes | | Yes | | Yes | |
| c. Refrigerator | Yes | Yes | | Yes | | Yes | | Yes | | Yes | |
| d. Disposal | No | No | | No | | No | | No | | No | |
| e. Microwave | No | No | | No | | No | | No | | No | |
| f. Dishwasher | No | No | | No | | No | | No | | No | |
| g. Carpet/Drapes | No | No | | No | | No | | No | | No | |
| h. Pool/Rec. Area | No | No | | No | | No | | No | | No | |
| Service: a. Heat/type | Yes/Steam | Yes/Steam | | Yes/Steam | | Yes/Steam | | Yes/Steam | | Yes/Steam | |
| b. Cook/type | No | No | | No | | No | | No | | No | |
| c. Electric | No | No | | No | | No | | No | | No | |
| d. Water cold/hot | Yes / Yes | Yes / Yes | | Yes / Yes | | Yes / Yes | | Yes / Yes | | Yes / Yes | |
| Storage | No | No | | No | | No | | No | | No | |
| Intercom | Yes | Yes | | Yes | | Yes | | Yes | | Yes | |
| Project Location | Average | Average | | Average | | Average | | Average | | Average | |
| Apartment Condition | Average | Average | | Average | | Average | | Average | | Average | |
| Unit Rent per Month | | $548 | | $534 | | $520 | | $495 | | $519 | |
| Total Adjustment | | | ($5) | | $0 | | ($10) | | ($10) | | ($5) |
| Indicated Rent | | $543 | | $534 | | $510 | | $485 | | $514 | |
| Correlated Subject Rent | $515 | | | | | | | | | | |

Note: In the adjustment column, enter dollar amounts by which subject property varies from comparable properties. If subject is better, enter a "Plus" amount and if subject is inferior to the comparable, enter a "Minus" amount. Use back of page to explain adjustments as needed.

Appraiser's Signature & Date:
Eugene Chin - Certified General Lic. #46-24084, New York E Chin 8/2/96

Reviewer's Signature & Date:
x

Williams & Kamanc Realty Co.

ALL-STATE LEGAL® EXHIBIT 74

Estimates of Market Rent
by Comparison

**U.S. Department of Housing and Urban Development**
Office of Housing
Federal Housing Commissioner

OMB Approval No. 2502-0331

Public reporting burden of information to average 1 hour per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection o
Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden to the Reports Management Office, Office of Information Policies and Systems, U.S. Departmen
Housing and Urban Development, Washington, D.C. 20410-3600 and to the Office of Management and Budget Paperwork Reduction Project (2502-0331), Washington, D.C. 20503

| Unit Type: 1 Bedroom | Subject | Rental #1 | - | + | Rental #2 | - | + |
|---|---|---|---|---|---|---|---|
| Address | 1280 St. John's Place Brooklyn | 26 Butler Place Brooklyn | | | 1004 Montgomery Street Brooklyn | | |
| Characteristics: | Data | Data | - | + | Data | - | + |
| Effective Date of Rental | 7/96 | 3/96 | | | 3/96 | | |
| Type/Stories | Walk-up / 4 Story | Walk-up/4 Sty | | | Elev / 6 Story | ($34) | |
| Floor of Unit in Building | 2nd floor | 2nd floor | | | 6th floor | ($20) | |
| Project Occupancy | 100% | 100% | | | 100% | | |
| Concessions | None | None | | | None | | |
| Year Built/Condition | 1919 / Avg. | 1915/Avg. | | | 1928/Avg. | | |
| Sq. Ft. Area | 540 | 550 | | | 550 | | |
| Number of Bedrooms | 1 | 1 | | | 1 | | |
| Number of Baths | 1 | 1 | | | 1 | | |
| Number of Rooms | 3 | 3 | | | 3 | | |
| Balc./Terr./Patio | None | None | | | None | | |
| Garage or Carport | None | None | | | None | | |
| Equip: a. A/C | None | None | | | None | | |
| b. Range/Oven | Yes | Yes | | | Yes | | |
| c. Refrigerator | Yes | Yes | | | Yes | | |
| d. Disposal | No | No | | | No | | |
| e. Microwave | No | No | | | No | | |
| f. Dishwasher | No | No | | | No | | |
| g. Carpet/Drapes | No | No | | | No | | |
| h. Pool/Rec. Area | No | No | | | No | | |
| Service: a. Heat/type | Yes/Steam | Yes/Steam | | | Yes/Steam | | |
| b. Cook/type | No | No | | | No | | |
| c. Electric | No | No | | | No | | |
| d. Water cold/hot | Yes / Yes | Yes / Yes | | | Yes / Yes | | |
| Storage | No | No | | | No | | |
| Intercom | Yes | Yes | | | Yes | | |
| Project Location | Average | Good | ($70) | | Average | | |
| Apartment Condition | Average | Average | | | Average | | |
| Unit Rent per Month | | $700 | | | $671 | | |
| Total Adjustment | | | ($70) | | | ($54) | |
| Indicated Rent | | $630 | | | $617 | | |
| Correlated Subject Rent | $630 | | | | | | |

| Unit Type: 1 Bedroom | Rental #3 | - | + | Rental #4 | - | + | Rental #5 | - | + |
|---|---|---|---|---|---|---|---|---|---|
| Address | 705 Eastern Parkway Brooklyn | | | 114 Fenimore Street Brooklyn | | | 826 Crown Street Brooklyn | | |
| Characteristics: | Data | - | + | Data | - | + | Data | - | + |
| Effective Date of Rental | 3/96 | | | 11/95 | | | 4/96 | | |
| Type/Stories | Elev / 6 Story | ($34) | | Elev / 6 Story | ($35) | | Elev / 6 Story | ($33) | |
| Floor of Unit in Building | 5th floor | ($15) | | 3rd floor | ($5) | | 2nd floor | | |
| Project Occupancy | 100% | | | 100% | | | 100% | | |
| Concessions | None | | | None | | | None | | |
| Year Built/Condition | 1935/Avg. | | | 1931/Avg. | | | 1930/Avg. | | |
| Sq. Ft. Area | 525 | | | 525 | | | 550 | | |
| Number of Bedrooms | 1 | | | 1 | | | 1 | | |
| Number of Baths | 1 | | | 1 | | | 1 | | |
| Number of Rooms | 3 | | | 3 | | | 3 | | |
| Balc./Terr./Patio | None | | | None | | | None | | |
| Garage or Carport | None | | | None | | | None | | |
| Equip: a. A/C | None | | | None | | | None | | |
| b. Range/Oven | Yes | | | Yes | | | Yes | | |
| c. Refrigerator | Yes | | | Yes | | | Yes | | |
| d. Disposal | No | | | No | | | No | | |
| e. Microwave | No | | | No | | | No | | |
| f. Dishwasher | No | | | No | | | No | | |
| g. Carpet/Drapes | No | | | No | | | No | | |
| h. Pool/Rec. Area | No | | | No | | | No | | |
| Service: a. Heat/type | Yes/Steam | | | Yes/Steam | | | Yes/Steam | | |
| b. Cook/type | No | | | No | | | No | | |
| c. Electric | No | | | No | | | No | | |
| d. Water cold/hot | Yes / Yes | | | Yes / Yes | | | Yes / Yes | | |
| Storage | No | | | No | | | No | | |
| Intercom | Yes | | | Yes | | | Yes | | |
| Project Location | Average | | | Average | | | Average | | |
| Apartment Condition | Average | | | Average | | | Average | | |
| Unit Rent per Month | $680 | | | $695 | | | $654 | | |
| Total Adjustment | | ($49) | | | ($40) | | | ($33) | |
| Indicated Rent | $631 | | | $655 | | | $621 | | |

Note: If the adjustment column, enter dollar amounts by which subject property varies from comparable properties. If subject is better, enter a "Plus" amount and if subject is inferior to the comparable, enter a "Minus" amount. Use back of page to explain adjustments as needed.

Appraiser's Signature & Date:
Eugene Chin - Certified General Lic. #46-24084, New York E Chin 8/2/96

Reviewer's Signature & Date:
x

Williams & Kernand Realty Co.

Estimates of Market Rent by Comparison

U.S. Department of Housing and Urban Development
Office of Housing
Federal Housing Commissioner

OMB Approval No. 2502-0331

Public reporting burden of information to average 1 hour per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection o Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden to the Reports Management Office, Office of Information Policies and Systems, U.S. Departmen Housing and Urban Development, Washington, D.C. 20410-3600 and to the Office of Management and Budget Paperwork Reduction Project (2502-0331), Washington, D.C. 20503

| Unit Type: 2 Bedroom | Subject | Rental #1 | | | Rental #2 | | | Rental #3 | | | Rental #4 | | | Rental #5 | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Address | 1280 St. John's Place Brooklyn | 28 Butler Place Brooklyn | | | 706 Eastern Parkway Brooklyn | | | 114 Fenimore Street Brooklyn | | | 114 Fenimore Street Brooklyn | | | 150 Lefferts Ave Brooklyn | | |
| Characteristics | Data | Data | - | + | Data | - | + | Data | - | + | Data | - | + | Data | - | + |
| Effective Date of Rental | 7/96 | 6/95 | | | 8/95 | | | 11/95 | | | 8/95 | | | 9/95 | | |
| Type/Stories | Walk-up / 4 Story | Walk-up/4 Sty | | | Elev / 6 Story | ($42) | | Elev / 6 Story | ($41) | | Elev / 6 Story | ($43) | | Elev / 6 Story | ($42) | |
| Floor of Unit in Building | 2nd floor | 2nd floor | | | 3rd floor | ($5) | | 2nd floor | | | 3rd floor | ($5) | | 3rd floor | ($5) | |
| Project Occupancy | 100% | 100% | | | 100% | | | 100% | | | 100% | | | 100% | | |
| Concessions | None | None | | | None | | | None | | | None | | | None | | |
| Year Built/Condition | 1919 / Avg. | 1915/Avg. | | | 1935/Avg. | | | 1931/Avg. | | | 1931/Avg. | | | 1939/Avg. | | |
| Sq. Ft. Area | 700 | 700 | | | 725 | | | 700 | | | 700 | | | 725 | | |
| Number of Bedrooms | 2 | 2 | | | 2 | | | 2 | | | 2 | | | 2 | | |
| Number of Baths | 1 | 1 | | | 1 | | | 1 | | | 1 | | | 1 | | |
| Number of Rooms | 4 | 4 | | | 4 | | | 4 | | | 4 | | | 4 | | |
| Balc./Terr./Patio | None | None | | | None | | | None | | | None | | | None | | |
| Garage or Carport | None | None | | | None | | | None | | | None | | | None | | |
| Equip.: a. A/C | None | None | | | None | | | None | | | None | | | None | | |
| b. Range/Oven | Yes | Yes | | | Yes | | | Yes | | | Yes | | | Yes | | |
| c. Refrigerator | Yes | Yes | | | Yes | | | Yes | | | Yes | | | Yes | | |
| d. Disposal | No | No | | | No | | | No | | | No | | | No | | |
| e. Microwave | No | No | | | No | | | No | | | No | | | No | | |
| f. Dishwasher | No | No | | | No | | | No | | | No | | | No | | |
| g. Carpet/Drapes | No | No | | | No | | | No | | | No | | | No | | |
| h. Pool/Rec. Area | No | No | | | No | | | No | | | No | | | No | | |
| Service: a. Heat/type | Yes/Steam | Yes/Steam | | | Yes/Steam | | | Yes/Steam | | | Yes/Steam | | | Yes/Steam | | |
| b. Cook/type | No | No | | | No | | | No | | | No | | | No | | |
| c. Electric | No | No | | | No | | | No | | | No | | | No | | |
| d. Water cold/hot | Yes / Yes | Yes / Yes | | | Yes / Yes | | | Yes / Yes | | | Yes / Yes | | | Yes / Yes | | |
| Storage | No | No | | | No | | | No | | | No | | | No | | |
| Intercom | Yes | Yes | | | Yes | | | Yes | | | Yes | | | Yes | | |
| Project Location | Average | Good | ($90) | | Average | | | Average | | | Average | | | Average | | |
| Apartment Condition | Average | Average | | | Average | | | Average | | | Average | | | Average | | |
| Unit Rent per Month | | $900 | | | $843 | | | $825 | | | $850 | | | $840 | | |
| Total Adjustment | | | ($90) | | | ($47) | | | ($41) | | | ($48) | | | ($47) | |
| Indicated Rent | | $810 | | | $796 | | | $784 | | | $802 | | | $793 | | |
| Correlated Subject Rent | $800 | | | | | | | | | | | | | | | |

Note: In the adjustment column, enter dollar amounts by which subject property varies from comparable properties. If subject is better, enter a "Plus" amount and if subject is inferior to the comparable, enter a "Minus" amount. Use back of page to explain adjustments as needed.

Appraiser's Signature & Date:
Eugene Chin - Certified General Lic. #46-24084, New York E Chin 8/2/96 x

Reviewer's Signature & Date:

Williams & Kamand Realty Co.



PPAS-NYH-00174

Estimates of Market Rent
by Comparison

U.S. Department of Housing and Urban
Office of Housing
Federal Housing Commissioner

Public reporting burden of information to average 1 hour per response, including the time for reviewing instructions, searching existing data sources, gath
Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden to the
Housing and Urban Development, Washington, D.C. 20410-3600 and to the Office of Management and Budget Paperwork Reduction Project (2502-0331

| Unit Type: 3 Bedroom | Subject | Rental #1 | | Rental #2 | |
|---|---|---|---|---|---|
| Address | 1280 St. John's Place Brooklyn | 77-87 Crooke Ave Brooklyn | | 77-87 Crooke Ave Brooklyn | |
| Characteristics: | Data | Data | | Data | |
| Effective Date of Rental | 7/96 | 10/95 | | 1/96 | |
| Type/Stories | Walk-up / 4 Story | Walk-up/4 Sty | | Walk-up/4 Sty | |
| Floor of Unit in Building | 4th floor | 4th floor | | 4th floor | |
| Project Occupancy | 100% | 100% | | 100% | |
| Concessions | None | None | | None | |
| Year Built/Condition | 1919 / Avg. | 1915/Avg. | | 1915/Avg. | |
| Sq. Ft. Area | 1067 | 1050 | | 1050 | |
| Number of Bedrooms | 3 | 3 | | 3 | |
| Number of Baths | 1 | 1 | | 1 | |
| Number of Rooms | 6 | 6 | | 6 | |
| Balc./Terr./Patio | None | None | | None | |
| Garage or Carport | None | None | | None | |
| Equip: a. A/C | None | None | | None | |
| b. Range/Oven | Yes | Yes | | Yes | |
| c. Refrigerator | Yes | Yes | | Yes | |
| d. Disposal | No | No | | No | |
| e. Microwave | No | No | | No | |
| f. Dishwasher | No | No | | No | |
| g. Carpet/Drapes | No | No | | No | |
| h. Pool/Rec. Area | No | No | | No | |
| Service: a. Heat/type | Yes/Steam | Yes/Steam | | Yes/Steam | |
| b. Cook/type | No | No | | No | |
| c. Electric | No | No | | No | |
| d. Water cold/hot | Yes / Yes | Yes / Yes | | Yes / Yes | |
| Storage | No | No | | No | |
| Intercom | Yes | Yes | | Yes | |
| Project Location | Average | Average | | Average | |
| Apartment Condition | Average | Average | | Average | |
| | | | | | |
| Unit Rent per Month | | $943 | | $1,001 | |
| Total Adjustment | | | $0 | | |
| Indicated Rent | | $943 | | $1,001 | |
| Correlated Subject Rent | $970 | | | | |

Note: In the adjustment column, enter dollar amounts by which subject property varies from comparable properties. If subject is better, enter a "Plus" amount and if subject is inferior to the comparable, enter a "Minus" amount. Use back of page to explain adjustments as needed.

Appraiser's Signature & Date:

Eugene Chin - Certified General Lic. #46-24

Williams

U.S. Departm )of Housing and Urban Development
New York State Office
Jacob K. Javits Federal Building
26 Federal Plaza
New York, New York 10278-0068

2HMA

aG

Troy D. Stevenson, Jr.
President
Kinpit Management
599 Broadway, Suite 800
New York, N.Y. 10012

Dear Mr. Stevenson:

Subject: Project Name: St. John's Phase I
Project No. : NY36-H110-050/012-57113
Approval of Rent Increase
Annual Adjustment Factors (AAF) eff. 7/1/95
March 7, 1995 Federal Register *

We have processed an annual rent adjustment for the units covered by the Section 8 contract referenced above according to Notice H95-12(HUD). As a result of that adjustment, your rents remain the same as shown in column (c), of the following chart. If, based on your utility survey we have revised the utility allowances for tenants in your project, the revised allowances will be shown in column (d). You must implement the revised utility allowances for tenants no later than 75 days after the date of this letter.

| (a) Unit Type | (b) Current Section 8 Contract Rents | (c) Contract Rents Remain the same | (d) Present Utility Allowances |
|---|---|---|---|
| 0 | 812 | 812 | 30 |
| 1 | 950 | 950 | 34 |
| 2 | 1082 | 1082 | 40 |
| 3 | 1257 | 1257 | 47 |

* See attached worksheet

Please note that for future requests for rent increases, owners must analyze all utility rates and recommend what utility allowances should be for the upcoming year. (Handbook 4350.3, Chapter 5, Para. 5-10 b.)

ALL-STATE LEGAL® EXHIBIT 75

Rent increase claims must be separated from the regular assistance payments. Use the first page of the voucher form 52670A Part I to write out the calculations, and enter the totals at the bottom of the page as an adjustment. Bring forward the full amount of the rent increase claim to the face of the form 52670. Strike out Line 4, 1983 HURRA Rent Refunds of Credits* and type in *Rent Increase (AAF).

Any approved increase must be claimed by following the steps below:

-Begin by labeling the first page of the voucher form 52670A part I *Rent Increase as Approved by letter dated (enter date of approved letter).*

- State the effective date of the increase (as noted on page 1 of this letter).

- State the date of the Annual Adjustment Factor.

- State the Unit Type.

- State your present rents and the adjusted rents.

Use the second and remaining pages of the 52670A Part I to show the increase in your regular tenant assistance payments for the month. Enter code "GR" in column (13) for each tenant, and increase your prior month's HAP by the amount of the approved increase for each unit.

Any other adjustments to Housing Assistance Payments must follow your listing of regular tenant assitance payments on the 52670A Part I and must be clearly explained as noted in Handbook 4350.3 CHG-1, Appendix 29, Step II.

If you are claiming a retroactive increase and you claimed vacancies during that retroactive period, you are not entitled to a full rent increase for the vacancy period. You may only claim 80% of the contract rent for those units for the month in which you claim a retroactive increase.

For projects whose HAP anniversary date is effective the first of the month, the full Housing Assistance Payment increase may be claimed retroactively beginning with that month, unless your rent increase request was late. In that case, the effective date of your increase may not be the anniversary date. (See effective date, page 1 of this letter).

For projects whose HAP anniversry date is effective other than the first of the month, the Housing Assistance Payment increase must be prorated for that month. If your rent increase request was late the effective date of your increase may not be the anniversary date. (See effective date, page 1 of this letter).

a) State the month and the old HAP (the amount paid as Regular Assistance Assistance Payments) on the voucher 52670 Line 1 for the month in which the increase was effective. Do not include any other adjustments which were claimed for the month.

b) Calculate and state the increase in rent for each unit type.

c) Add the old HAP to the increase. This will give you the new HAP.

d) Divide the difference between the old HAP and the new HAP by the number of calendar days in the month, and multiply by the number of days that the new increase is in effect for that month. (Note: do not divide the difference by 30. Divide by the number of actual calendar days in the month that the increase takes effect. e.g., 29,30,31.) Round either at each calculation or at the end. (This calculation is for rent increases only).

e) The results will be your retroactive claim for the month only. Each unit does not have to be prorated on the 52670A Part I.

f) The remaining months will be the full amount of the increase. This will be shown by the dollar increase multiplied by the number of units for each size, again multiplied by the number or retroactive months.

Attached is a sample of the calculations and the format as stated above. Please ensure that you follow the format as given in the sample.

As always the voucher 52670 and 52670A Part I (and Part II if applicable) must be mailed to the Regional Accounting Division as well as to the Assisted Housing Management Branch. Attach a copy of this approval letter to both copies of your voucher.

Mailing instructions are as follows:

Copy 1 - Voucher and approval letter (original signature) to:
Regional Accounting Division, Room 35-120.

Copy 2 - Voucher, Approval letter, Rental Schedule 92458 to:
Asset Management Branch
Attention: Rochelle Printz, Room 3214.

Sincerely,

Rochelle Printz
Chief
Asset Management Branch, 2HMA

Enclosures

2HMA chrono/ HAL /Ramos
typed: 8/28/96 by: (pa)

2HMA — Mc Jolly Lmc

Team
2HMA Leader — J. HALL

APPENDIX 2

## PART 1 ADJUSTMENTS WORKSHEET

FIELD OFFICE WORKSHEET FOR
PROCESSING RENT INCREASES FOR AAF RENTS FOR NEW CONSTRUCTION AND SUBSTANTIAL REHABILITATION UNIT TYPES WHICH EXCEED THE EXISTING HOUSING FAIR MARKET RENTS
(NOT FOR USE ON BUDGET BASED RENT INCREASES)

Property Name: St. John's Phase I Unit Type: O

012-57113

ESSENTIAL INFORMATION

Existing FMR Level for Unit Type $ 645

Current Contract Rent for Unit Type $ 812 / 30 / 842

AAF from Table 1 1.026

Comparable Rent from HUD-92273 $ 543 (Line 20)

Initial Difference Submitted by Owner (if any) $

STEP 1: Is this contract a New Construction or Sub Rehab contract?; AND Is the current rent for this unit type (before application of the AAF) above the Existing Housing FMR?

- ☑ If the answer to BOTH questions is YES, then proceed to Step 2
- ☐ If the answer to EITHER question is NO, then this unit type should be adjusted under Part 2 of this Notice. This worksheet does not apply. Please find Part 2 Adjustments Worksheet at the end of Appendix 2.



EXHIBIT 76

STEP 2: Apply the appropriate AAF in Table 1 to the current contract rent. (NOTE: Throughout this Worksheet when applying the published AAF, the factor of 1.000 should be used in all cases where the published factor is below 1.000.)

| Current Rent for Unit Type | | Factor Used | | Rent Level Produced by the AAF |
|---|---|---|---|---|
| 812 | x | 1.024 | = | 833 |

STEP 3: Is the Rent Level developed in Step 2, greater than the Correlated Subject Rent Level (CSR) on form 92273, for the particular unit type?

| Rent Level produced by the AAF | | Comparable Rent Level (CSR, form HUD 92273) |
|---|---|---|
| 833 | > | 543 |

☑ Yes, then go to Step 4

☐ No, *then the AAF is granted.* For units in which turnover occurred in the last year, use AAF Table 1 to calculate the rents. For units in which no turnover occurred in the last year use Table 2 to calculate the rents. *Go to Step 6(b) and document the new rent levels.*

STEP 4: Since the AAF rent level derived in Step 2 is greater than the comparable rent submitted by the owner, then the initial difference must be added to the comparable rent.

If documented evidence of the initial difference was submitted by the owner from the original underwriting documents, then use the dollar amount submitted by the owner. If not, then use 10% of the initial Section 8 Contract Rent as a substitute.

$ 49.60 496 x 10 %

Dollar Amount of the Initial Difference

Method Used for the Initial Difference:

☐ Owner Submission ☑ Calculated by HUD

| Comparable Rent Level | | Initial Difference | | Adjusted Comparable Rent Level |
|---|---|---|---|---|
| $ 543 | + | $ 49.60 | = | $ 592.60 |

STEP 5: Is the Adjusted Comparable Rent Level (derived above) greater than the rent level obtained by applying the AAF in Step 2?

$ 593 > $ 83

Adjusted Comparable Rent Level — Rent Level Produced by the AAF (See Step 2)

☐ Yes, *then AAF is granted.*
Rent levels cannot go higher than the AAF.
For units in which turnover occurred in the last year, use AAF Table 1 to calculate the rents. For units in which no turnover occurred in the last year use AAF Table 2 to calculate the rents. (NOTE: Throughout this Worksheet when applying the published AAF, the factor of 1.000 should be used in all cases where the published factor is below 1.000.)

*Turnover units*

$________ X ________ = $________

Current Rent — Table 1 Factor — New Rent Level

*Units with no Turnover*

$________ X ________ = $________

Current Rent — Table 2 Factor — New Rent Level

Document these rent levels in Step 6(b) and proceed through Steps 7 and 8.

☑ No, *then the adjusted comparable rent will be the new rent level for all units without regard to turnover. Document this rent level in Step 6(a).*

STEP 6: The new rent level(s) for D unit type is:

a) $ 593 for all units *(Document this rent level in Step 8)*; **OR**

b) $________ for units with turnover (Number of Units_____); AND

$________ for units with no turnover (Number of Units_____).

STEP 7: If Step 6 resulted in different rent levels for the same unit type, then a common rent level for this unit type must be derived. Use the rent levels listed in Step 6(b) above to derive a new monthly Gross Rent Potential (GRP).

$_______ for units with turnover X ______ (No. of Units) = $__________

$_______ for units with no turnover X _____ (No. of Units) = $__________

Add the two numbers which you just calculated to derive total GRP:

$______________ X $______________ = $______________
Turnover GRP No Turnover GRP Total GRP

Divide Total GRP by the number of units for this unit type to obtain the new rent level for all _______BR units.

$_____________Total GRP divide by _______ units = $________
New Rent Level

STEP 8: The new rent level for all ___0___ BR units is approved at $__593__.

Rents cannot be reduce, so the rents for the 0 bedroom will remain the same.

APPENDIX 2

## PART 1 ADJUSTMENTS WORKSHEET

FIELD OFFICE WORKSHEET FOR
PROCESSING RENT INCREASES FOR AAF RENTS FOR NEW CONSTRUCTION AND SUBSTANTIAL REHABILITATION UNIT TYPES WHICH EXCEED THE EXISTING HOUSING FAIR MARKET RENTS
(NOT FOR USE ON BUDGET BASED RENT INCREASES)

Property Name: St. Johns Phase I Unit Type: 1

**ESSENTIAL INFORMATION**

Existing FMR Level for Unit Type $ 719

Current Contract Rent for Unit Type $ 950 + 34 = 984

AAF from Table 1 1.024

Comparable Rent from HUD-92273 $ 630 (Line 20)

Initial Difference Submitted by Owner (if any) $ ______

STEP 1: Is this contract a New Construction or Sub Rehab contract?; AND Is the current rent for this unit type (before application of the AAF) above the Existing Housing FMR?

- [x] If the answer to BOTH questions is YES, then proceed to Step 2
- [ ] If the answer to EITHER question is NO, then this unit type should be adjusted under Part 2 of this Notice. This worksheet does not apply. Please find Part 2 Adjustments Worksheet at the end of Appendix 2.

STEP 2: Apply the appropriate AAF in Table 1 to the current contract rent. (NOTE: Throughout this Worksheet when applying the published AAF, the factor of 1.000 should be used in all cases where the published factor is below 1.000.)

950 x 1.024 = 975 974.70

Current Rent for Unit Type — Factor Used — Rent Level Produced by the AAF

STEP 3: Is the Rent Level developed in Step 2, greater than the Correlated Subject Rent Level (CSR) on form 92273, for the particular unit type?

975 > 630

Rent Level produced by the AAF — Comparable Rent Level (CSR, form HUD 92273)

☑ Yes, then go to Step 4

☐ No, *then the AAF is granted.* For units in which turnover occurred in the last year, use AAF Table 1 to calculate the rents. For units in which no turnover occurred in the last year use Table 2 to calculate the rents. *Go to Step 6(b) and document the new rent levels.*

STEP 4: Since the AAF rent level derived in Step 2 is greater than the comparable rent submitted by the owner, then the initial difference must be added to the comparable rent.

If documented evidence of the initial difference was submitted by the owner from the original underwriting documents, then use the dollar amount submitted by the owner. If not, then use 10% of the initial Section 8 Contract Rent as a substitute.

$ 59.80 598.00

Dollar Amount of the Initial Difference

Method Used for the Initial Difference:

☐ Owner Submission ☑ Calculated by HUD

$ 630 + $ 59.80 = $ 689.80

Comparable Rent Level — Initial Difference — Adjusted Comparable Rent Level

STEP 5: Is the Adjusted Comparable Rent Level (derived above) greater than the rent level obtained by applying the AAF in Step 2?

$ 690 — Adjusted Comparable Rent Level > $ 975 — Rent Level Produced by the AAF (See Step 2)

☐ Yes, *then AAF is granted.*
Rent levels cannot go higher than the AAF.
For units in which turnover occurred in the last year, use AAF Table 1 to calculate the rents. For units in which no turnover occurred in the last year use AAF Table 2 to calculate the rents. (NOTE: Throughout this Worksheet when applying the published AAF, the factor of 1.000 should be used in all cases where the published factor is below 1.000.)

*Turnover units*

$________ X ________ = $________
Current Rent — Table 1 Factor — New Rent Level

*Units with no Turnover*

$________ X ________ = $________
Current Rent — Table 2 Factor — New Rent Level

Document these rent levels in Step 6(b) and proceed through Steps 7 and 8.

☑ No, *then the adjusted comparable rent will be the new rent level for all units without regard to turnover. Document this rent level in Step 6(a).*

STEP 6: The new rent level(s) for 1 unit type is:

a) $ 690 for all units *(Document this rent level in Step 8)*; **OR**

b) $________ for units with turnover (Number of Units______); AND

$________ for units with no turnover (Number of Units______).

STEP 7: If Step 6 resulted in different rent levels for the same unit type, then a common rent level for this unit type must be derived. Use the rent levels listed in Step 6(b) above to derive a new monthly Gross Rent Potential (GRP).

$________ for units with turnover X _______ (No. of Units) = $__________

$________ for units with no turnover X ______ (No. of Units) = $__________

Add the two numbers which you just calculated to derive total GRP:

$______________ X $______________ = $______________
Turnover GRP No Turnover GRP Total GRP

Divide Total GRP by the number of units for this unit type to obtain the new rent level for all ________BR units.

$______________Total GRP divide by ________ units = $__________
New Rent Level

STEP 8: The new rent level for all 1 BR units is approved at $ 690.

Rents cannot be reduce, so the rents for the 1 bedroom will remain the same.

APPENDIX 2

## PART 1 ADJUSTMENTS WORKSHEET

### FIELD OFFICE WORKSHEET FOR PROCESSING RENT INCREASES FOR AAF RENTS FOR NEW CONSTRUCTION AND SUBSTANTIAL REHABILITATION UNIT TYPES WHICH EXCEED THE EXISTING HOUSING FAIR MARKET RENTS (NOT FOR USE ON BUDGET BASED RENT INCREASES)

Property Name: St John Phase I Unit Type: 2

**ESSENTIAL INFORMATION**

Existing FMR Level for Unit Type $ 817

Current Contract Rent for Unit Type $ 1082 / 40 / 1122

AAF from Table 1 1.024

Comparable Rent from HUD-92273 $ 800 (Line 20)

Initial Difference Submitted by Owner (if any) $ —

STEP 1: Is this contract a New Construction or Sub Rehab contract?; AND Is the current rent for this unit type (before application of the AAF) above the Existing Housing FMR?

- ☑ If the answer to BOTH questions is YES, then proceed to Step 2
- ☐ If the answer to EITHER question is NO, then this unit type should be adjusted under Part 2 of this Notice. This worksheet does not apply. Please find Part 2 Adjustments Worksheet at the end of Appendix 2.

STEP 2: Apply the appropriate AAF in Table 1 to the current contract rent. (NOTE: Throughout this Worksheet when applying the published AAF, the factor of 1.000 should be used in all cases where the published factor is below 1.000.)

1082 x 1.024 = 1,110 1,110.13

Current Rent for Unit Type | Factor Used | Rent Level Produced by the AAF

STEP 3: Is the Rent Level developed in Step 2, greater than the Correlated Subject Rent Level (CSR) on form 92273, for the particular unit type?

1,110 > 800

Rent Level produced by the AAF | Comparable Rent Level (CSR, form HUD 92273)

☑ Yes, then go to Step 4

☐ No, *then the AAF is granted.* For units in which turnover occurred in the last year, use AAF Table 1 to calculate the rents. For units in which no turnover occurred in the last year use Table 2 to calculate the rents. *Go to Step 6(b) and document the new rent levels.*

STEP 4: Since the AAF rent level derived in Step 2 is greater than the comparable rent submitted by the owner, then the initial difference must be added to the comparable rent.

If documented evidence of the initial difference was submitted by the owner from the original underwriting documents, then use the dollar amount submitted by the owner. If not, then use 10% of the initial Section 8 Contract Rent as a substitute.

$ 71.30 713.00

Dollar Amount of the Initial Difference

Method Used for the Initial Difference:

☐ Owner Submission ☑ Calculated by HUD

$ 800 + $ 71.30 = $ 871.30

Comparable Rent Level | Initial Difference | Adjusted Comparable Rent Level

STEP 5: Is the Adjusted Comparable Rent Level (derived above) greater than the rent level obtained by applying the AAF in Step 2?

$ 871 > $ 1,110

Adjusted Comparable Rent Level — Rent Level Produced by the AAF (See Step 2)

☐ Yes, *then AAF is granted.*
Rent levels cannot go higher than the AAF.
For units in which turnover occurred in the last year, use AAF Table 1 to calculate the rents. For units in which no turnover occurred in the last year use AAF Table 2 to calculate the rents. (NOTE: Throughout this Worksheet when applying the published AAF, the factor of 1.000 should be used in all cases where the published factor is below 1.000.)

*Turnover units*

$________ X ________ = $________
Current Rent — Table 1 Factor — New Rent Level

*Units with no Turnover*

$________ X ________ = $________
Current Rent — Table 2 Factor — New Rent Level

Document these rent levels in Step 6(b) and proceed through Steps 7 and 8.

☑ No, *then the adjusted comparable rent will be the new rent level for all units without regard to turnover. Document this rent level in Step 6(a).*

STEP 6: The new rent level(s) for 2 unit type is:

a) $ 871 for all units *(Document this rent level in Step 8)*; **OR**

b) $________ for units with turnover (Number of Units_____); AND

$________ for units with no turnover (Number of Units_____).

STEP 7: If Step 6 resulted in different rent levels for the same unit type, then a common rent level for this unit type must be derived. Use the rent levels listed in Step 6(b) above to derive a new monthly Gross Rent Potential (GRP).

$________ for units with turnover X ________ (No. of Units) = $__________

$________ for units with no turnover X ______ (No. of Units) = $__________

Add the two numbers which you just calculated to derive total GRP:

$______________ X $______________ = $______________

Turnover GRP | No Turnover GRP | Total GRP

Divide Total GRP by the number of units for this unit type to obtain the new rent level for all ________BR units.

$______________Total GRP divide by ________ units = $__________ New Rent Level

STEP 8: The new rent level for all __2__ BR units is approved at $__871__.

Rents cannot be reduce, so the rents for the 2 bed room unit will remain the same

APPENDIX 2

PART 1 ADJUSTMENTS WORKSHEET

FIELD OFFICE WORKSHEET FOR
PROCESSING RENT INCREASES FOR AAF RENTS FOR NEW CONSTRUCTION AND SUBSTANTIAL REHABILITATION UNIT TYPES WHICH EXCEED THE EXISTING HOUSING FAIR MARKET RENTS
(NOT FOR USE ON BUDGET BASED RENT INCREASES)

Property Name: St. Johns Phase I Unit Type: 3

ESSENTIAL INFORMATION

Existing FMR Level for Unit Type $ 1022

Current Contract Rent for Unit Type $ ~~1304~~ 1257 47

AAF from Table 1 1.026

Comparable Rent from HUD-92273 $ 970 (Line 20)

Initial Difference Submitted by Owner (if any) $ ______

STEP 1: Is this contract a New Construction or Sub Rehab contract?; AND Is the current rent for this unit type (before application of the AAF) above the Existing Housing FMR?

- ☐ If the answer to BOTH questions is YES, then proceed to Step 2
- ☐ If the answer to EITHER question is NO, then this unit type should be adjusted under Part 2 of this Notice. This worksheet does not apply. Please find Part 2 Adjustments Worksheet at the end of Appendix 2.

STEP 2: Apply the appropriate AAF in Table 1 to the current contract rent. (NOTE: Throughout this Worksheet when applying the published AAF, the factor of 1.000 should be used in all cases where the published factor is below 1.000.)

1,257 x 1.024 = 1,290. 1289.68

Current Rent for Unit Type — Factor Used — Rent Level Produced by the AAF

STEP 3: Is the Rent Level developed in Step 2, greater than the Correlated Subject Rent Level (CSR) on form 92273, for the particular unit type?

1,290 > 970

Rent Level produced by the AAF — Comparable Rent Level (CSR, form HUD 92273)

☑ Yes, then go to Step 4

☐ No, *then the AAF is granted.* For units in which turnover occurred in the last year, use AAF Table 1 to calculate the rents. For units in which no turnover occurred in the last year use Table 2 to calculate the rents. *Go to Step 6(b) and document the new rent levels.*

STEP 4: Since the AAF rent level derived in Step 2 is greater than the comparable rent submitted by the owner, then the initial difference must be added to the comparable rent.

If documented evidence of the initial difference was submitted by the owner from the original underwriting documents, then use the dollar amount submitted by the owner. If not, then use 10% of the initial Section 8 Contract Rent as a substitute.

$ 83.00 830.00

Dollar Amount of the Initial Difference

Method Used for the Initial Difference:

☐ Owner Submission ☑ Calculated by HUD

$ 970 + $ 83.00 = $ 1,053

Comparable Rent Level — Initial Difference — Adjusted Comparable Rent Level

STEP 5: Is the Adjusted Comparable Rent Level (derived above) greater than the rent level obtained by applying the AAF in Step 2?

$ 1053 > $ 1210
Adjusted Comparable Rent Level — Rent Level Produced by the AAF (See Step 2)

☐ Yes, *then AAF is granted.*
Rent levels cannot go higher than the AAF.
For units in which turnover occurred in the last year, use AAF Table 1 to calculate the rents. For units in which no turnover occurred in the last year use AAF Table 2 to calculate the rents. (NOTE: Throughout this Worksheet when applying the published AAF, the factor of 1.000 should be used in all cases where the published factor is below 1.000.)

*Turnover units*

$________ X ________ = $________
Current Rent — Table 1 Factor — New Rent Level

*Units with no Turnover*

$________ X ________ = $________
Current Rent — Table 2 Factor — New Rent Level

Document these rent levels in Step 6(b) and proceed through Steps 7 and 8.

☑ No, *then the adjusted comparable rent will be the new rent level for all units without regard to turnover. Document this rent level in Step 6(a).*

STEP 6: The new rent level(s) for 3 unit type is:

a) $ 1053 for all units *(Document this rent level in Step 8)*; **OR**

b) $________ for units with turnover (Number of Units_____); AND

$________ for units with no turnover (Number of Units_____).

STEP 7: If Step 6 resulted in different rent levels for the same unit type, then a common rent level for this unit type must be derived. Use the rent levels listed in Step 6(b) above to derive a new monthly Gross Rent Potential (GRP).

$________ for units with turnover X ________ (No. of Units) = $__________

$________ for units with no turnover X ________ (No. of Units) = $__________

Add the two numbers which you just calculated to derive total GRP:

$______________ X $______________ = $______________
Turnover GRP No Turnover GRP Total GRP

Divide Total GRP by the number of units for this unit type to obtain the new rent level for all ________BR units.

$______________Total GRP divide by ________ units = $__________
New Rent Level

STEP 8: The new rent level for all 3 BR units is approved at $1053.

Rents cannot be reduce, so the rents for the 3 bedroom unit will remain the same.

U.S. Department of Housing and Urban Development
New York State Office
Jacob K. Javits Federal Building
26 Federal Plaza
New York, New York 10278-0068

a G

Troy D. Stevens, Jr.
President
Kinpit Management
599 Broadway, Suite 800
New York, N.Y. 10012

Dear Mr. Stevens:

Subject: Project Name: St. John's Phase I
Project No. : NY36-H110-050/012-57113
Approval of Rent Increase
Annual Adjustment Factors (AAF)
November 3, 1995 Federal Register *

We have processed an annual rent adjustment for the units covered by the Section 8 contract referenced above according to Notice H96-33(HUD). As a result of that adjustment, we are approving and you may implement the new rents shown in columns (d), of the following chart. You may make the new rents effective on/after July 1, 1996. If, based on your utility survey we have revised the utility allowances for tenants in your project, the revised allowances will be shown in column (e). You must implement the revised utility allowances for tenants no later than 75 days after the date of this letter.

| (a) Unit Type | (b) Current Section 8 Contract Rents | (c) AAF From Register Dated 11/3/95 | (d) New Section 8 Contract Rents | (e) Revised Utility Allowances |
|---|---|---|---|---|
| 0 | 812 | 1.024 | 831 | 32 |
| 1 | 950 | 1.024 | 973 | 38 |
| 2 | 1082 | 1.024 | 1108 | 44 |
| 3 | 1257 | 1.024 | 1287 | 50 |

EXHIBIT 77
ALL-STATE LEGAL®

* See attached worksheet

Please note that for future requests for rent increases, owners must analyze all utility rates and recommend what utility allowances should be for the upcoming year. (Handbook 4350.3, Chapter 5, Para. 5-10 b.)

Visit our Web Site at: http://www.hud.gov/local/nyn/nynopen.html

Rent increase claims must be separated from the regular assistance payments. Use the first page of the voucher form 52670A Part I to write out the calculations, and enter the totals at the bottom of the page as an adjustment. Bring forward the full amount of the rent increase claim to the face of the form 52670. Strike out Line 4, 1983 HURRA Rent Refunds of Credits* and type in *Rent Increase (AAF).

Any approved increase must be claimed by following the steps below:

-Begin by labeling the first page of the voucher form 52670A part I *Rent Increase as Approved by letter dated (enter date of approved letter).*

- State the effective date of the increase (as noted on page 1 of this letter).

- State the date of the Annual Adjustment Factor.

- State the Unit Type.

- State your present rents and the adjusted rents.

Use the second and remaining pages of the 52670A Part I to show the increase in your regular tenant assistance payments for the month. Enter code "GR" in column (13) for each tenant, and increase your prior month's HAP by the amount of the approved increase for each unit.

Any other adjustments to Housing Assistance Payments must follow your listing of regular tenant assitance payments on the 52670A Part I and must be clearly explained as noted in Handbook 4350.3 CHG-1, Appendix 29, Step II.

If you are claiming a retroactive increase and you claimed vacancies during that retroactive period, you are not entitled to a full rent increase for the vacancy period. You may only claim 80% of the contract rent for those units for the month in which you claim a retroactive increase.

For projects whose HAP anniversary date is effective the first of the month, the full Housing Assistance Payment increase may be claimed retroactively beginning with that month, unless your rent increase request was late. In that case, the effective date of your increase may not be the anniversary date. (See effective date, page 1 of this letter).

For projects whose HAP anniversry date is effective other than the first of the month, the Housing Assistance Payment increase must be prorated for that month. If your rent increase request was late the effective date of your increase may not be the anniversary date. (See effective date, page 1 of this letter).

a) State the month and the old HAP (the amount paid as Regular Assistance Assistance Payments) on the voucher 52670 Line 1 for the month in which the increase was effective. Do not include any other adjustments which were claimed for the month.

b) Calculate and state the increase in rent for each unit type.

c) Add the old HAP to the increase. This will give you the new HAP.

d) Divide the difference between the old HAP and the new HAP by the number of calendar days in the month, and multiply by the number of days that the new increase is in effect for that month. (Note: do not divide the difference by 30. Divide by the number of actual calendar days in the month that the increase takes effect. e.g., 29,30,31.) Round either at each calculation <u>or</u> at the end. (This calculation is for rent increases only).

e) The results will be your retroactive claim for the month only. Each unit does not have to be prorated on the 52670A Part I.

f) The remaining months will be the full amount of the increase. This will be shown by the dollar increase multiplied by the number of units for each size, again multiplied by the number or retroactive months.

Attached is a sample of the calculations and the format as stated above. Please ensure that you follow the format as given in the sample.

As always the voucher 52670 and 52670A Part I (and Part II if applicable) must be mailed to the Regional Accounting Division as well as to the Assisted Housing Management Branch. Attach a copy of this approval letter to both copies of your voucher.

Mailing instructions are as follows:

Copy 1 - Voucher and approval letter (original signature) to:
Regional Accounting Division, Room 35-120.

Copy 2 - Voucher, Approval letter, Rental Schedule 92458 to:
Asset Management Branch
Attention: Rochelle Printz, Room 3214.

Sincerely,

Rochelle Printz
Chief
Asset Management Branch, 2HMA

Enclosures

2HMA chrono/ HALL /Ramos
typed: 8/28/96 by: (pa)

| 2HMA | Team 2HMA Leader |
|---|---|
| McJolly | J. HALL |



PPAS-NYH-00197

Rec'd 4/1/96 (Hand delivered)

# Section 8 Annual Contract Rent Adjustment Worksheet

U.S. Department of Housing and Urban Development
Office of Housing
Federal Housing Commissioner

| 1. Project Name | 2. Project No. | 3. City, State, Zip Code | 4. HAP Year Beginning | 5. Federal Register Area: Title | Highest Utility included in rent? |
|---|---|---|---|---|---|
| St. Johns Phase I | 012-57113 NY36-H160050 | Brooklyn | 7/01/96 | New York | Yes ☑ No ☐ |

**Part A: AAF Rents and AAF Rent Potential**

| | Column a | Column b | Column c | Column d | Column e | Column f | Column g |
|---|---|---|---|---|---|---|---|
| 1. Unit Type | 0 | 1 | 2 | 3 | | | |
| 2. Current Section 8 Rents | 812 | 950 | 1082 | 1257 | | | Potential (per month) $ |
| 3. Back Out of Some/All of Prior Special (Explain in Item 10a below) | — | — | — | — | | | Total (per month) $ |
| 4. Line 2 - Line 3 | 812 | 950 | 1082 | 1257 | | | |
| 5. AAF ☐ Local Area Factor (See 10b below) ☒ From Fed.Reg.Dated: MM DD YY 11 03 95 | 1.024 | 1.024 | 1.024 | 1.024 | | | |
| 6. AAF Rents (Line 5 x Line 4, rounded up to next $) | 831 | 973 | 1108 | 1287 | | | Total Units 191 |
| 7. Number of Units (Include non-revenue producing units.) | 14 | 82 | 78 | 17 | | | Potential (per month) $199,723 |
| 8. AAF Monthly Potential (Line 6 x Line 7) | 11,634 | 79,786 | 86,424 | 21,879 | | | Potential (per year) $2,396,676 |
| 9. AAF Annual Potential (Line 8 Potential x 12) | | | | | | | |

10. Comments
a. Explain why any portion of a prior special is being backed out. Per Notice 96-33, Comparability and turnovers procedures will not be applicable for HAP contract whose anniversaries fall from April 26, 1996 to September 30, 1996

b. Attach a description of how any Local Area Factor was calculated. Identify here the geographic area covered by this factor:

Retain this record for 3 years
Previous Editions are obsolete

form HUD-9833-B (11/92)
ref Handbook 4350.1

ALL-STATE LEGAL® EXHIBIT 78

176

PPAS-NYH-00198

# KINPIT MANAGEMENT

875 6TH AVENUE, SUITE 1603 NEW YORK, NEW YORK 10001-3507
TEL. (212) 279-2833 FAX (212) 279-2883

November 19,2001

RECEIVED
NOV 26 2001
NEW YORK QUADEL

TO ALL TENANTS
St. John's Phase 1

Dear Tenants:

RE: SECTION "8" CONTRACT

In regards to our previous notice, this is a reminder to inform you that our Housing Assistance Payment Contract expires on June 30, 2002. We are not opting out the program, we will be renewing our contract and therefore everything will be as before.

We thank you for your cooperation.

Yours respectfully,

Henry Salmond
Asst. Vice President

Cc: Cheryl Righi
NY Quadel Consulting
217 Montgomery Street, Suite 400
Syracuse, NY 13202

EXHIBIT 82
ALL-STATE LEGAL®

6141 11/29/07



PPAS-QUA-00001

NEW YORK QUADEL

**January 02, 2002**

**St. John's I Associates**
**875 6th Avenue, Suite 1603**
**New York, NY 10001 3235**

**Re: Section 8 HAP Contract Renewal for:**
**800015870**
**NY36H110050**

Dear Sir or Madam:

New York Quadel Consulting Corporation (NYQ) is the Section 8 Contract Administrator for this contract. Our records indicate that the Section 8 Housing Assistance Payment contract that is referenced above is due to expire on **June 30, 2002.**

Several Contract Renewal Options are available to you. Please refer to the HUD Section 8 Renewal Policy Guidebook for clarification on eligibility and documentation requirements for each of the six contract renewal options. A copy of attachment 3A & 3B, including the renewal worksheets and cover letter, are included for your use and/or reference. This notice requires that we receive your complete HAP Contract renewal package on or before **March 02, 2002** which is at least 120 days prior to your contract expiration date.

If the Contract Renewal option you select requires a Rent Comparability Study, please refer to HUD Notice H 00-12 and Chapter 9 of the Renewal Policy Guidebook for the required forms and instructions.

If you have any questions regarding your Section 8 contract renewal, please feel free to contact me at (315) 428-1800x227 or by email at cferrell-knighton@nyquadel.com.

Sincerely,

Camille Ferrell-Knighton
NYQ Contract Renewal Specialist

217 MONTGOMERY STREET SUITE 400
SYRACUSE, NEW YORK 13202
P 315 428 1800
F 315 428 0088
nyq@nyquadel.com

7544

EXHIBIT
83
ALL-STATE LEGAL



PPAS-QUA-00002

U.S. Department of Housing and Urban Development
Office of Housing

Project-based Section 8

# HOUSING ASSISTANCE PAYMENTS

# INTERIM MARK-TO-MARKET RENEWAL CONTRACT[1]

## 1 CONTRACT INFORMATION [2]

**PROJECT**

Section 8 Project Number NY36-H110-050

Section 8 Project Number of Expiring Contract

NY36-H110-050

FHA Project Number (if applicable) 012-57113

Project Name St. John's Place Phase I

Project Description [3]

1280, 1284, 1288 & 1292 St. John's Place and 1535, 1539, 1550 & 1566 Sterling Place, Brooklyn, New York

**TYPE OF RENEWAL**

☐ Check this box for a project renewed under Section 514(c) of MAHRA.

EXHIBIT 85
ALL-STATE LEGAL®

**PARTIES TO RENEWAL CONTRACT**

**Name of Contract Administrator** [4]

**New York State Housing Trust Fund Corporation**

**Address of Contract Administrator**

**38-40 State Street**

**Hampton Plaza**

**Albany, New York 12207**

**Name of Owner** [5]

**St. John's I Associates**

**Address of Owner**

**875 6th Avenue**

**Suite 1603**

**New York, New York 10001**

**2 TERM OF RENEWAL CONTRACT**

a The term of the Renewal Contract begins on **July 01, 2002**. [6]

b Subject to the availability of sufficient appropriations to make housing assistance payments for any year in accordance with the Renewal Contract, as determined by HUD, the Renewal Contract shall begin on the first day of the term and shall terminate upon the date that is the earliest of: (i) twelve (12) months from the date specified in section 2a; (ii) the last day of the month of closing under the Restructuring Commitment; (iii) upon a final decision that results in the discontinuance of the Restructuring process; or (iv) upon determination that the Owner is in default under the Renewal Contract and that such event of default is continuing beyond any notice and cure periods under HUD requirements, if any. Section 8 housing assistance payments to the Owner during the Renewal Contract term shall only be made from budget authority appropriated by the Congress, and available for this purpose.

3 **DEFINITIONS.**

**ACC.** Annual contributions contract

**Contract units.** The units in the Project which are identified in Exhibit A by size and applicable contract rents.

**Contract rent.** The total monthly rent to owner for a contract unit, including the tenant rent (the portion of rent to owner paid by the assisted family).

**HAP contract.** A housing assistance payments contract between the Contract Administrator and the Owner.

**HUD.** The United States Department of Housing and Urban Development.

**HUD requirements.** HUD regulations and other requirements, including changes in HUD regulations and other requirements during the term of the Renewal Contract.

**MAHRA.** The Multifamily Assisted Housing Reform and Affordability Act of 1997 (Title V of Public Law No.105-65, October 27, 1997, 111 Stat. 1384ff), as amended by section 531 of the Departments of Veterans Affairs and Housing and Urban Development, and Independent Agencies Appropriations Act, 2000 (Public Law No. 106-74, October 20, 1999,113 Stat. 1109ff).

**PHA.** Public housing agency (as defined and qualified in accordance with the United States Housing Act of 1937. 42 U.S.C. 1437 et seq.).

**Project.** The housing designated in section 1 of the Renewal Contract.

**Section 8.** Section 8 of the United States Housing Act of 1937 (42 U.S.C. 1437f)

**Renewal Contract.** This contract, including applicable provisions of the Expiring Contract (as determined in accordance with section 5 of the Renewal Contract).

4 RENEWAL CONTRACT

a Parties

(1) The Renewal Contract is a housing assistance payments contract ("HAP Contract") between the Contract Administrator and the Owner of the Project (see section 1).

(2) If HUD is the Contract Administrator, HUD may assign the Renewal Contract to a public housing agency ("PHA") for the purpose of PHA administration of the Renewal Contract, as Contract Administrator, in accordance with the Renewal Contract (during the term of the annual contributions contract ("ACC") between HUD and the PHA). Notwithstanding such assignment, HUD shall remain a party to the provisions of the Renewal Contract that specify HUD's role pursuant to the Renewal Contract, including such provisions of section 9 (HUD requirements), section 10 (statutory changes during term) and section 11 (PHA default), of the Renewal Contract.

b **Statutory authority**

The Renewal Contract is entered pursuant to section 8 of the United States Housing Act of 1937 (42 U.S.C. 1437f), and section 514(c) of the MAHRA.

c **Expiring Contract**

Previously, the Contract Administrator and the Owner had entered into a HAP Contract ("expiring contract") to make Section 8 housing assistance payments to the Owner for eligible families living in the Project. The term of the expiring contract will expire or terminate prior to the beginning of the term of the Renewal Contract.

d **Purpose of Renewal Contract**

(1) The purpose of the Renewal Contract is to renew the expiring contract for an additional term sufficient to facilitate the implementation of a mortgage restructuring and rental assistance sufficiency plan, as determined by HUD. The Renewal Contract constitutes a binding commitment for purposes of section 579(b) of MAHRA. During the term of the Renewal Contract, the Contract Administrator shall make housing assistance payments to the Owner in accordance with the provisions of the Renewal Contract.

(2) Housing assistance payments shall only be paid to the Owner for contract units occupied by eligible families leasing decent, safe and sanitary units from the Owner in accordance with statutory requirements, and with all HUD regulations and other requirements. If the Contract Administrator determines that the Owner has failed to maintain one or more contract units in decent, safe and sanitary condition, and has abated housing assistance payments to the owner for such units, the Contract Administrator may use amounts otherwise payable to the Owner pursuant to the Renewal Contract for the purpose of relocating or rehousing assisted residents in other housing.

e **Contract units**

The Renewal Contract applies to the Contract units.

5 **EXPIRING CONTRACT – PROVISIONS RENEWED**

a Except as specifically modified by the Renewal Contract, all provisions of the Expiring Contract are renewed (to the extent such provisions are consistent with statutory requirements in effect at the beginning of the Renewal Contract term).

b Any and all provisions of the Expiring Contract concerning any of the following subjects are not renewed, and shall not be applicable during the renewal term:

(1) Identification of contract units by size and applicable contract rents;

(2) The amount of the monthly contract rents;

(3) Contract rent adjustments; and

(4) Project account (sometimes called "HAP reserve" or "project reserve") as previously established and maintained by HUD pursuant to former Section 8(c)(6) of the United States Housing Act of 1937 (currently Section 8(c)(5) of the Act, 42 U.S.C. 1437f(c)(5)). Section 8(c)(5) does not apply to the Renewal Contract, or to payment of housing assistance payments during the Renewal Contract term.

c The Renewal Contract includes those provisions of the Expiring Contract that are renewed in accordance with this section 5.

## 6 CONTRACT RENT

### a Initial contract rents

At the beginning of the Renewal Contract term, the contract rent for each bedroom size (number of bedrooms) shall be the initial contract rent amount listed in Exhibit A, which is attached to and, by this reference, is hereby made a part of the Renewal Contract.

### b Contract rent adjustments

There shall be no contract rent adjustments during the term of the Renewal Contract.

## 7 OWNER WARRANTIES, REPRESENTATIONS AND AGREEMENTS

a The Owner warrants that it has the legal right to execute the Renewal Contract and to lease dwelling units covered by the contract.

b The Owner warrants that the rental units to be leased by the Owner under the Renewal Contract are in decent, safe and sanitary condition (as defined and determined in accordance with HUD regulations and procedures), and shall be maintained in such condition during the term of the Renewal Contract.

c The Owner, in full compliance with the requirements of Section 514(b) of MAHRA and Section 401.500 of the Final Rule for the Multifamily Housing Mortgage and Housing Assistance Restructuring Program (the "Mark-to-Market Program") issued on March 22, 2000 (65 FR 15452), warrants that it has provided, or will cause to be provided, the requisite written notice of the Owner's intention to participate in the Mark-to-Market Program to: (i) the tenants residing in the Project; (ii) the chief official of the affected unit of local government having jurisdiction over the Project; and (iii) the current mortgagee on the Project's Loan(s).

d The Owner agrees to undertake all reasonable efforts to obtain any and all consents of third parties (e.g., the current mortgagee on the Project's Loan(s), the Owner's and, if applicable, the Purchaser's partners/investors that may be required in order to enable the Owner and, if applicable, the purchaser to execute a Restructuring Commitment and perform the related obligations in accordance with the Mark-to-Market Program's requirements.

e Except as identified on Exhibit B, which is attached to and made a part of this Renewal Contract, the Owner warrants that neither it nor any of its principals or affiliates is subject to, or received any notice of, any debarment, suspension or other administrative proceeding or investigation initiated by HUD, or any other federal or state government agency, with respect to such party or the Project.

f Except as identified on Exhibit B, the Owner warrants that neither it nor any of its principals or affiliates has engaged in any material adverse actions or omissions with regard to the Project, or with regard to any other project(s) subject to a HUD-held or HUD-insured loan and/or receiving HUD assistance, which causes, or may cause, the Owner, and/or such principals or affiliates to be in default (monetary or technical) under, or in violation of, any HUD regulatory agreement, Section 8 Housing Assistance Payments Contract or other applicable HUD requirements.

g Except as identified on Exhibit B, the Owner warrants that it has not received any notice from HUD or any other governmental authority that any unit(s) within the Project fail to comply with HUD's Section 8 Uniform Physical Condition Standards and/or local housing codes.

h The Owner agrees to proceed in good faith and in a diligent manner to enter into a Restructuring Commitment with HUD and to consummate closing under the Restructuring Commitment *on or before the expiration date of the Renewal Contract*. In connection with such obligation, the Owner agrees to, among other things: (A) promptly submit to the relevant participating administrative entity and its contractors and agents (hereinafter, collectively, the "PAE") all documents and information that may be requested by or on behalf of HUD relating to the Owner and/or the Project and to the extent any such documents or information are not in the Owner's possession or control, the Owner hereby agrees that the Owner will undertake all reasonable efforts to obtain such documents and deliver them to the PAE within ten (10) calendar days of request by HUD; (B) promptly provide the PAE (and its contractors and agents) with access to the Project; (C) attend such meetings as the PAE (and its contractors and agents) may deem reasonably necessary in connection with the Owner's participation in the Mark-to-Market Program; and (D) undertake all reasonable efforts to obtain third-party financing if refinancing of the first mortgage is found necessary under Section CFR 401.460(e).

i Upon the request of HUD, the Owner agrees that it shall provide HUD with evidence satisfactory to HUD relating to each of the foregoing certifications.

j The Owner agrees to provide written notice to the Contract Administrator immediately upon a change in circumstances making any of the above-stated representations or warranties untrue or incomplete.

8 OWNER TERMINATION NOTICE

a Before termination of the Renewal Contract, the Owner shall provide written notice to the Contract Administrator and each assisted family in accordance with HUD requirements.

b If the Owner fails to provide such notice in accordance with the law and HUD requirements, the Owner may not increase the tenant rent payment for any assisted family until such time as the Owner has provided such notice for the required period.

9 HUD REQUIREMENTS

The Renewal Contract shall be construed and administered in accordance with all statutory requirements, and with all HUD regulations and other requirements, including changes in HUD regulations and other requirements during the term of the Renewal Contract. However, any changes in HUD requirements that are inconsistent with the provisions of the Renewal Contract, including the provisions of section 6 (contract rent), shall not be applicable.

10 STATUTORY CHANGES DURING TERM

If any statutory change during the term of the Renewal Contract is inconsistent with section 6, and if HUD determines, and so notifies the Contract Administrator and the Owner, that the Contract Administrator is unable to carry out the provisions of section 6 because of such statutory change, then the Contract Administrator or the Owner may terminate the Renewal Contract upon notice to the other party.

11 PHA DEFAULT

a This section 11 of the Renewal Contract applies if the Contract Administrator is a PHA acting as Contract Administrator pursuant to an annual contributions contract ("ACC") between the PHA and HUD. This includes a case where HUD has assigned the Renewal Contract to a PHA Contract Administrator, for the purpose of PHA administration of the Renewal Contract.

b If HUD determines that the PHA has committed a material and substantial breach of the PHA's obligation, as Contract Administrator, to make housing assistance payments to the Owner in accordance with the provisions of the Renewal Contract, and that the Owner is not in default of its obligations under the Renewal

Contract, HUD shall take any action HUD determines necessary for the continuation of housing assistance payments to the Owner in accordance with the Renewal Contract.

## 12 EXCLUSION OF THIRD-PARTY RIGHTS

a The Contract Administrator does not assume any responsibility for injury to, or any liability to, any person injured as a result of the Owner's action or failure to act in connection with the Contract Administrator's implementation of the Renewal Contract, or as a result of any other action or failure to act by the Owner.

b The Owner is not the agent of the Contract Administrator or HUD, and the Renewal Contract does not create or affect any relationship between the Contract Administrator or HUD and any lender to the Owner or any suppliers, employees, contractors or subcontractors used by the Owner in connection with implementation of the Renewal Contract.

c If the Contract Administrator is a PHA acting as Contract Administrator pursuant to an annual contributions contract ("ACC") between the PHA and HUD, the Contract Administrator is not the agent of HUD, and the Renewal Contract does not create any relationship between HUD and any suppliers, employees, contractors or subcontractors used by the Contract Administrator to carry out functions or responsibilities in connection with contract administration under the ACC.

## 13 WRITTEN NOTICES

a Any notice by the Contract Administrator or the Owner to the other party pursuant to the Renewal Contract shall be given in writing.

b A party shall give notice at the other party's address specified in section 1 of the Renewal Contract, or at such other address as the other party has designated by a contract notice. A party gives a notice to the other party by taking steps reasonably required to deliver the notice in ordinary course of business. A party receives notice when the notice is duly delivered at the party's designated address.

(STAGE 1)

**Project Name:** St. John Place Phase I

**Section 8 Contract Number:** NY36-H110-050

**FHA Insurance Number :** 012-57113

# Exhibit A

*Identification of Units ("Contracts Units")*
*by Size and Applicable Contract Rents*

| Bedroom Size | Number of Units | Contract Rents |
|---|---|---|
| 0-BR | 14 | $831 |
| 1-BR | 82 | $973 |
| 2-BR | 78 | $1,108 |
| 3-BR | 17 | $1,287 |

**Special Conditions:**

NOTE: This Exhibit will be amended by Contract Administrator notice to the Owner to specify adjusted contract rent amounts as determined by the Contract Administrator in accordance with section 6b of the Renewal Contract.

3. Contract is extended 12 months for units on stage one (1) of the original HAP at current rents to accommodate:
   a) **the processing of your Mark-to-Market request.**