make such delivery upon demand, then, and in that event, the Administrator shall pay to HTF any damages HTF may sustain by reason thereof.

C. The Administrator shall maintain its books, records, documents, and other evidence in the manner required under the ACC and applicable HUD regulations.

**Section 2.08 Reports and Reporting Requirements**

The Administrator shall promptly and timely prepare and submit and assist HTF in preparing and transmitting to HUD all applicable financial and program reports of Section 8 Contract administration activities and performance as and when required by HUD.

**Section 2.09 Confidentiality; Use by the Administrator**

The Administrator agrees that all reports and documents prepared or assembled by the Administrator pursuant to this Contract and the information contained therein is to remain confidential, except (i) to the extent released or published by HTF or HUD, and (ii) to the extent approved by HTF in writing prior to any release or publication. Further, except as provided herein or with the prior written approval of HTF, the Administrator agrees that the actual reports and documents prepared or assembled in connection with this Contract shall not be made available to any individual or organization, other than courts of competent jurisdiction or administrative agencies pursuant to a subpoena or an agency of the Federal or State Government.

**Section 2.10 Subcontracts and Assignments**

This Contract and the obligations hereunder are personal to the Administrator and it shall not assign, subcontract, transfer, convey, pledge or otherwise dispose of its interest or any part thereof in this Contract without the prior written consent (which shall not be unreasonably withheld, delayed or conditioned) of HTF, except the Administrator may without such consent subcontract or assign this Contract to New York Quadel Consulting Corporation, a New York corporation. Any subcontract or assignment of this Contract shall not relieve the Administrator of any duties, obligations or responsibilities under this Contract.

**Section 2.11 Force Majeure**

If the Administrator is rendered unable, wholly or in part, to carry out its obligations hereunder by any reason events not under the Administrator's reasonable control, provided it gives HTF prompt written notice of the Force Majeure (hereafter defined) event(s) with full particulars thereof. Thereupon, the obligations of the Administrator, so far as they are affected by said Force Majeure, shall be suspended during, but not longer than, the continuance of the same. The term "Force Majeure" shall include an act of God, strike, lock-out or other industrial disturbance, acts of public enemy, war, blockage, embargo, epidemic, public riot, lightning, fire, storm, flood, other severe adverse weather condition, explosion, governmental restraint, acts of civil or military authorities, priorities under governmental authority, unavailability of equipment or essential personnel, vandalism and any other cause, whether of the kind specifically enumerated

above or otherwise, which is not reasonably within the control of the Administrator shall not be an Event of Default because of any failure to perform this Contract.

## ARTICLE 3 TERM OF SERVICES

### Section 3.01 Contract Term

The initial term of this Contract shall commence on the date of the full execution of this Contract and shall terminate twenty-four (24) months after the effective date of HUD's first assignment of Section 8 Contracts to HTF ("Initial Term"). Following the Initial Term, this Contract may be extended for an additional period of twelve (12) months ("Extension Period") upon mutual agreement of the parties (as used in this Contract, "Contract Term" means the Initial Term and any Extension Period). Following the expiration of the first Extension Period, and subject to HUD and HTF renewals of the ACC, the parties may mutually agree to extend this Contract for up to two (2) additional Extension Periods of twelve (12) months each.

HTF and the Administrator each agree to provide written notice at least one hundred eighty (180) days prior to the expiration date of the Initial Term or any Extension Period of whether they shall extend the Contract for an additional period. If either party fails to give timely written notice as required by this section, then the then-current Contract Term shall be extended to a date that is one hundred eighty (180) days after the date written notice is actually received, except that in the event that HUD serves notice upon HTF that HUD intends not to renew the ACC, and such notice is served less than one hundred eighty (180) days prior to the expiration date of the Initial Term or Extension Period (as applicable), then HTF will promptly serve notice of non-renewal on the Administrator, and the Contract will expire on the expiration date of the then-current Contract Term.

## ARTICLE 4 FUNDING AND COMPENSATION

### Section 4.01 Compensation

Payment shall be made under this Contract by HTF to the Administrator for: (1) Basic Fees (as such term is defined in the ACC), (2) Incentive Fees (as defined in the ACC) and (3) HAP Payments ("HAP Payments") due to landlords entitled to receive payments under the Section 8 Program.

A. The Administrator will receive the following compensation for Services:

1. The basic compensation on a per unit per month basis shall be seventy-seven (77.0%) of the amount of Net Basic Fees paid by HUD to HTF. "Net Basic Fees" shall mean that amount remaining after deducting any Disencentive Deduction (as defined by the ACC) from Basic Fees paid by HUD to HTF.

2. Forty percent (40%) of the Incentive Fees paid by HUD to HTF during the Initial Term.

364

3. If this Contract is renewed for one (1) or more Extension Periods following the Initial Term, HTF shall pay Quadel thirty-three percent (33%) of the Incentives Fees paid by HUD to HTF.

4. HTF shall promptly pay to Quadel all earned fees due to the Administrator after HUD has transferred the funds covering those fees to HTF. HTF shall not be liable to Quadel for any earned fees unless and until HUD pays such fees to HTF. Notwithstanding anything in this Contract to the contrary, Administrator shall be entitled to all earned Basic Fees and Incentive Fees if the Administrator is not in default (beyond any applicable period of notice and cure) under this Contract, and HUD's failure or refusal to pay such fees is related to HTF's failure to perform any of its obligations under this Contract or the ACC.

B. Billing and Payment.

1. Each month during the Contract Term, within five (5) days after the end of the then-current month, the Administrator shall prepare and submit to HUD on behalf of HTF, in the form and manner prescribed by HUD (with a copy to HTF), an invoice for Basic Fees (less any applicable Disincentive Deduction) earned in that month and also submit to HTF an invoice for the Administrator's share of Net Basic Fees.

2. Except as otherwise expressly set forth to the contrary in this Contract, the Administrator shall within ten (10) days after the end of each quarter (*i.e.*, March 31, June 30, September 30 and December 31), or otherwise as required by HUD, prepare and timely submit a requisition to HUD (with a copy to HTF) for Incentive Fees and shall also submit to HTF an invoice for the Administrator's share of earned Incentive Fees.

3. HTF shall promptly review Administrator's invoices to HTF and HTF shall promptly pay the Administrator's share of earned Net Basic Fees and Incentive Fees to the Administrator after HTF receives payment for such fees from HUD.

4. The Administrator shall bill HTF for HAP Payments due to landlords five (5) business days (which term "business day" or "business days" as used in this Contract means a day on which commercial banks are not authorized or required by the laws of the State of New York to close in the State of New York) prior to the day on which the Administrator's bank needs the funds in order to schedule the electronic payments to the landlords. HTF shall transfer funds by electronic payment to the Administrator's account to make these payments as required by HUD performance standards set forth in the ACC.

5. Notwithstanding anything in Section 4.01 of this Contract to the contrary, with respect to any Basic Fees, Incentive Fees or any other payments due to Administrator under this Contract, (i) Administrator shall deliver an invoice for such compensation to both HUD and HTF, then HTF shall promptly review and approve or disapprove (provided, in the event of such disapproval, HTF shall promptly give reasonably

detailed written explanation thereof to Administrator), as the case may be, of such invoice, then HTF shall (after HTF receives payment therefor from HUD) promptly pay all such fees and/or payments to Administrator; (ii) in the event that HUD agrees or establishes procedures to pay either Basic Fees or Incentive Fees, or both, in advance, then (a) the Administrator shall bill HTF fifteen (15) calendar days prior to the first day of each month for estimated Basic Fees paid by HUD to HTF and due the Administrator for that month and (b) HTF shall (after HTF receives payment therefor from HUD) pay the Administrator any estimated Basic Fees and Incentive Fees paid by HUD to HTF and due to the Administrator promptly after HTF receives the Administrator's invoice.

C. Start up Costs.

The Administrator will provide the funds for start-up costs for, among other things, making improvements and betterments in commercial space leased by the Administrator in the State of New York, putting information technology in place, developing operating systems and procedures and hiring and training staff to perform the Services until the first day of the first month of HUD's assignment of Section 8 Contracts to HTF (all of which costs are hereinafter referred to as the "Start Up Costs"). The Start Up Costs shall not exceed Two Million One Hundred Ninety-four Thousand One Hundred Ninety-one Dollars ($2,194,191.00). The Administrator will amortize the Start Up Costs during the Initial Term of this Contract.

**Section 4.02 Bank Accounts**

A. The Administrator shall establish a separate bank account for the sole purpose of receiving transfers from HTF of funds to landlords for HAP Payments and disbursement of payments.

B. The Administrator shall also establish bank accounts into which HTF shall deposit, by wire transfer or other method, Basic Fees, Net Basic Fees and Incentive Fees due to the Administrator.

C. For each of these required bank accounts, the financial institution shall execute and adhere to a depository agreement meeting all HUD requirements.

**Section 4.03 Non-Appropriation**

The Administrator understands and acknowledges that funding for this Contract is subject to changes in the law or appropriations made by Congress applicable to the Section 8 Program and the Administrator's satisfactory performance of the Services. Furthermore, in the event that no funds or insufficient funds are appropriated by Congress and budgeted in any fiscal period of HTF for payments to be made under this Contract, then HTF shall immediately notify the Administrator upon actual receipt of written notice by HTF of such event and this Contract shall terminate on the earlier of (i) the last day of the fiscal period for which sufficient appropriation was made or (ii) whenever the funds appropriated for payment under this Contract are exhausted.

No payments shall be made or due to the Administrator under this Contract beyond those amounts appropriated and budgeted by HTF to fund payments required hereunder.

## ARTICLE 5 DISPUTES

### Section 5.1 Mediation of Disputes

A. Any claim or controversy arising out of or relating to this Contract, an alleged Event of Default, the alleged breach of this Contract or the date of termination of this Contract pursuant to Article 7 ("Dispute"), may, at the option of either party hereto, be submitted to mediation under the Commercial Mediation Rules of the American Arbitration Association ("AAA"). The party electing to mediate any Dispute shall initiate the mediation by filing a written request therefor with the other party and with AAA. Such filing shall be made not less than fifteen (15) days after the filing of a written demand for arbitration as set forth in Section 5.2 hereof, or such option to mediate shall be deemed to have been waived. The parties agree as follows with respect to such mediation:

(i) The cost of the mediation, including filing fees with the AAA and the cost of the mediator (but excluding attorneys' fees and costs), shall be borne equally by the parties;

(ii) Mediation shall occur in Albany, New York, at a time and location to be designated by the mediator, who shall be selected by AAA;

(iii) In the mediation sessions, the parties shall endeavor in good faith to resolve the Dispute(s) at issue;

(iv) Any party or the mediator shall have the right to terminate the mediation at any time after the first mediation session; and

(v) Neither party may make any disclosure of the existence or results of the mediation without the prior written consent of the other party, which consent may be withheld or conditioned in the non-requesting party's sole discretion. The mediator may not make any disclosure of the existence or results of the mediation without the prior written consent of both parties. No discussions in any mediation session shall be admissible in any arbitration or litigation between the parties, and the mediator shall not be subject to subpoena to testify to any communication between the mediator and either party.

B. HTF shall be required to mediate any alleged breach of this Contract, which breach entitles HTF to terminate this Contract.

### Section 5.2 Arbitration of Disputes

A. Except as otherwise set forth in Section 5.1 or this Section 5.2, any Dispute arising out of

or relating to this Contract (including, but not limited to, the validity of this Contract or any of its provisions), the relationship between HTF and/or the Administrator's performance of the Services, shall be submitted for arbitration to the Albany, New York office of AAA on written demand of either party. Such arbitration proceedings shall be conducted in Albany, New York, and shall be heard by one (1) arbitrator in accordance with the then-current Commercial Arbitration Rules of AAA.

B. The arbitrator selected shall have the right to include in his award any relief which he deems proper under the circumstances, including, without limitation, money damages (with interest on the unpaid amounts from the date due), specific performance and/or injunctive relief; provided that the arbitrator shall not have the authority to award exemplary or punitive damages or any amounts beyond the fees earned by HTF or the Administrator under the ACC. The award and decision of the arbitrator shall be conclusive and binding upon all parties hereto and judgment upon the award may be entered in any court of competent jurisdiction. Each party waives any right to contest the validity or enforceability of such award. The parties agree to be bound by the provisions of any limitation on the period of time in which claims must be brought under applicable law. The parties further agree that, in connection with any such arbitration proceeding, each shall submit or file any claim which would constitute a compulsory counterclaim (as defined by Rule 13 of the Federal Rules of Civil Procedure, as may be amended from time to time) within the same proceeding as the claim to which it relates. Any such claim which is not submitted or filed in such proceeding shall be barred.

C. Notwithstanding anything to the contrary in this Contract, either party may seek temporary restraining orders and temporary or preliminary injunctive relief from a court of competent jurisdiction, provided the dispute for which such relief is sought has been, or is contemporaneously, submitted for arbitration on the merits as provided herein.

D. The provisions of this Article 5 shall remain in full force and effect subsequent to and notwithstanding the expiration or termination of this Contract.

## ARTICLE 6 RISK MANAGEMENT

### Section 6.01 Insurance

The Administrator hereby agrees to procure and maintain at all times, at the Administrator's own expense, until final completion of the Services covered under this Contract, and, during the time period following final completion if the Administrator is required, for any reason whatsoever to perform any modification of the Services required by this Contract and the ACC, insurance in the amounts required below on commercially reasonable forms of insurance similar to the forms of insurance specified below, with insurance companies with an AM Best rating of B+ or higher and authorized to do business in the State of New York covering all operations under this Contract, whether performed by the Administrator or by approved subadministrators. HTF and the New York State Division of Housing and Community Renewal shall be named as additional insured on all policies.

A. The forms and amounts of insurance required are as follows:

1. Workers Compensation and Occupational Disease Insurance required by the State of New York and Employer's Liability Insurance in the amount of One Million Dollars ($1,000,000.00);

2. Commercial general liability insurance (primary and umbrella) with limits of not less than One Million Dollars ($1,000,000.00) general aggregate for bodily injury, personal injury and property damage;

3. Professional liability insurance covering the Administrator's negligent acts, errors, or omissions shall be maintained with limits of not less than One Million Dollars ($1,000,000.00) annual aggregate;

4. Valuable papers insurance insuring plans, designs, drawings and diagrams, which are prepared and/or developed by the Administrator in connection with the Program, in commercially reasonable amounts; and

5. Business personal property coverage in commercially reasonable amounts.

**Section 6.02 Administrator's Responsibilities to HTF**

A. The Administrator agrees to protect, defend, indemnify, keep, save, and hold HTF, its officers, officials, employees and agents free and harmless from and against any and all liabilities, losses, penalties, damages, settlements, environmental liability, costs, charges, professional fees (including attorneys' fees) or other expenses or liabilities of every kind, nature and character arising out of or relating to any and all claims, liens, demands, obligations, actions, suits, judgments or settlements, proceedings or causes of action of every kind, nature, and character (collectively, "Claims") in connection with or arising directly or indirectly out of this Contract and/or the acts or omissions of the Administrator, its officers, officials, agents, employees, and subadministrators, including, but not limited to, the enforcement of this indemnification provision. Without limiting the foregoing, any and all such Claims relating to personal injury, death, damage to property, defects in material or workmanship, actual or alleged infringement of any patent, trademark, copyright or of any other tangible or intangible personal or property right, or any actual or alleged violation of any applicable statute, ordinance, order, rule or regulation, or decree of any court, shall be included in the indemnity hereunder. Except as otherwise expressly set forth to the contrary in Section 6.03 of this Contract, the Administrator further agrees to investigate, handle, respond to, provide defense for and defend all suits for any and all claims, at its sole expense and agrees to bear all other costs and expenses related thereto, even if the claims are considered groundless, false, or fraudulent.

B. HTF shall have the right, at its option and at the Administrator's expense, to participate in the defense of any suit, without relieving the Administrator of any of its obligations under this indemnity provision. The Administrator expressly understands and agrees that the

requirements set forth in this indemnity to protect, defend, indemnify, keep, save and hold HTF free and harmless are separate from and not limited by the Administrator's responsibility to obtain, procure and maintain insurance pursuant to any other section of this Contract. The Administrator's indemnities set forth in this Contract shall survive the expiration or termination of this Contract.

**Section 6.03 HTF's Responsibilities to the Administrator**

HTF agrees to be responsible to protect, defend, keep, save, and hold the Administrator, its officers, employees, agents and subcontractors free and harmless from and against all liabilities, losses, penalties, damages, settlements, environmental liability, costs, charges, professional fees (including attorneys' fees) or other expenses or liabilities of every kind, nature and character arising out of or relating to any and all Claims relating to HTF's (including its agents and representatives) administration of the Section 8 programs, arising prior to the effective date of this Contract and directly or proximately (as a result of) caused by the acts, negligence, or omissions of HTF, its officers, officials, agents, or employees, including, but not limited to, the enforcement of this responsibility provision. Without limiting the foregoing, any and all such Claims relating to personal injury, death, damage to property, defects in material or workmanship, actual or alleged infringement of any patent, trademark, copyright or of any other tangible or intangible personal or property right, or any actual or alleged violation of any applicable statute, ordinance, order, rule or regulation, or decree of any court, shall be included in the indemnity hereunder. HTF shall investigate, handle, respond to, provide defense for and defend all suits for any and all claims as stated in the first sentence of this Section 6.03, at its sole expense and agrees to bear all other costs and expenses related thereto, even if the claims are considered groundless, false, or fraudulent. The Administrator shall have the right, at its option and the reasonable expense of HTF, to participate in the defense of any suit, without relieving HTF of any of its obligations under this Section 6.03.

**Section 6.04 Constitutional/Statutory Claims**

Notwithstanding anything contained in subparagraph 6.02A above to the contrary, the Administrator shall have no liability for and the HTF will defend, indemnify and hold the Administrator harmless from and against any and all Claims in which the allegations solely challenge the validity and/or constitutionality of the Section 8 Programs, the Section 8 governing statute and/or HUD regulations. Any Claims that contain mixed allegations including those challenging the validity and/or constitutionality of the Section 8 programs, the Section 8 governing statute and/or HUD regulations and the acts, errors, conduct, omissions and/or negligence of the Administrator in connection with or arising out of this Contract shall be handled in accordance with the provisions of subparagraph 6.02A above and the Administrator shall defend, indemnify and keep and save HTF harmless in accordance with said provisions through the conclusion of such Claim. Thereafter, the parties hereto shall use reasonable efforts to agree to and allocate responsibility for any Claims in proportion to their liability therefor and to enter into a binding written agreement regarding such allocation; provide, however, if the parties fail to reach such agreement, they shall resolve the allocation matter pursuant to the "Dispute" process set forth in Article 5. The responsibilities provisions set forth in this Section

6.03 shall apply to such Claims arising on or after the effective date of this Contract and shall survive the expiration or termination of this Contract.

**Section 6.05 Fidelity Bond**

The Administrator shall furnish at its own expense, a blanket commercial fidelity bond in such amounts as required by HUD to protect HTF against misapplication of Section 8 Program funds by the Administrator and its employees. The other terms and conditions of the fidelity bond, and the surety thereon, shall be subject to the approval of HTF.

## ARTICLE 7 EVENT OF DEFAULT; HTF'S EVENT OF DEFAULT; REMEDIES; TERMINATION; SUSPENSION; THIRD PARTY BENEFICIARY

**Section 7.01 Event of Default by the Administrator Defined**

The occurrence of any of the following events which the Administrator shall fail to cure within thirty (30) calendar days after receipt of written notice from HTF given in accordance with the terms of this Contract and specifying the facts which constitute the default (provided, however, if the Administrator cannot cure the default within such thirty (30) day period, then the Administrator shall not be deemed to be in default (and an Event of Default shall not be deemed to have occurred under this Contract) if the Administrator promptly and with commercially reasonable efforts commences to pursue efforts to cure within the thirty (30) day period), shall constitute an "Event of Default":

A. Notwithstanding anything in the immediately preceding paragraph to the contrary, any material misrepresentation, whether in the inducement or in the performance, made by the Administrator to HUD or HTF. Any such misrepresentation shall immediately constitute an Event of Default and no cure period will be permitted for such default.

B. The Administrator's failure to perform any of its material obligations under this Contract including, but not limited to, any of the following:

1. Failure to timely perform the Services described in the ACC;

2. Discontinuance of the Services by the Administrator, which discontinuance is not related to a Force Majeure event or HTF's failure to perform any of its obligations under this Contract; and

3. Breach of any material provision of this Contract or any other acts specifically and expressly stated in this Contract as constituting an Event of Default.

**Section 7.02 HTF Remedies in an Event of Default by the Administrator**

After receiving HTF's notice of a default under this Contract and after the Administrator's failure to timely cure such default, HTF shall provide written notice to the Administrator of the Event of

Default. Thereafter, HTF shall, subject to the provisions of Article 5 of this Contract, be entitled to the following remedies:

A. The right to terminate this Contract effective at a time specified by HTF; and

B. Any and all remedies available both at law or in equity.

C. All remedies given to HTF under this Contract shall be cumulative and not exclusive of one another or of any other right or remedy or of any other powers and remedies available to HTF, and no delay or omission of HTF to exercise any right or power accruing upon any Event of Default shall impair any other or subsequent Event of Default or impair any rights or remedies consequent thereto. Every power and remedy given to HTF by this Contract or by law may be exercised from time to time, and as often as may be deemed expedient.

**Section 7.03 Administrator Rights and Remedies for HTF's Event of Default**

A. In the event of the failure of HTF to comply with any material term, covenant or condition of the Contract, which HTF shall fail to cure within thirty (30) calendar days (except for a monetary default, which period of cure shall be five (5) calendar days) after receipt of written notice from the Administrator given in accordance with the terms of this Contract and specifying the facts which constitute the default (provided, however, if HTF cannot reasonably cure the default within such thirty (30) day period, then HTF shall not be deemed to be in default under this Contract (and an Event of Default shall not be deemed to have occurred under this Contract) if HTF promptly and diligently commences to pursue efforts to cure within the thirty (30) day period), shall constitute "HTF's Event of Default".

B. The Administrator shall provide written notice to HTF of HTF's Event of Default. Upon such notice, the Administrator shall be entitled to the following remedies:

1. The right to terminate this Contract effective at a time specified by the Administrator; and

2. Any and all remedies available both at law or in equity.

C. All remedies given to the Administrator under this Contract shall be cumulative and not exclusive of one another or of any other right or remedy or of any other powers and remedies available to the Administrator, and no delay or omission of the Administrator to exercise any right or power accruing upon any HTF's Event of Default occurring shall impair any other or subsequent default or impair any rights or remedies consequent thereto. Every power and remedy given to the Administrator by this Contract or by law or in equity may be exercised from time to time, and as often as may be deemed expedient.

**Section 7.04 Termination**

A. Either party may terminate this Contract because of any material breach (after any applicable notice and cure period) of any material term, covenant or condition of this Contract by giving prior written notice thereof as required by this Contract.

B. Notwithstanding anything to the contrary in this Contract, in the event that HUD elects to terminate the ACC with HTF for any reason, this Contract shall terminate on the same date as the effective date of the termination of the ACC.

C. After submission or receipt of a written notice of termination for non-renewal at the conclusion of years two (2), three (3) or four (4) of this Contract as provided herein ("Notice of Termination"), and except as directed by HTF, the Administrator shall immediately proceed with the following obligations, regardless of any delay in determining or adjusting amounts due under this subparagraph 7.04C.

1. Stop the Services as specified in the Notice of Termination;

2. Place no further subcontracts or orders (referred to as subcontracts in this clause) for materials, services, or facilities, except as necessary to complete the continued portion of the Contract;

3. Assign to HTF, as directed by HTF, all right, title and interest of the Administrator under the subcontracts terminated;

4. With approval or ratification to the extent required by HTF, settle all outstanding liabilities and termination settlement proposals arising from the termination of subcontracts, and the approval or ratification will be final for purposes of this clause;

5. As directed by HTF, transfer title and deliver to HTF: (i) the Services in process, completed Services, supplies and other material produced or acquired for the Services terminated, (ii) the completed or partially completed plans, drawings, information and other property that, if the Contract had been completed, would be required to be furnished to the Administrator or HTF, and (iii) any and all property belonging to HTF under the terms of this Contract;

6. Take any reasonable action that may be necessary, or that HTF may direct, for the protection or preservation of the property related to this Contract that is in the possession of the Administrator and in which HTF has or may acquire an interest; and

7. Take any other action which may be reasonably necessary to transfer control of the Administrator's New York offices and operations to HTF.

D. Notwithstanding anything in this Contract to the contrary, in the event that HTF does not renew this Contract for any reason whatsoever, then the Administrator will use commercially reasonable efforts to transition and transfer to HTF, or its designee, control

of the Section 8 Program in order to perform the Services, including, the rights to hire or retain certain members of the Administrator's staff. In consideration for the Administrator's cooperation in the event of such transition and transfer, HTF will use its best efforts to minimize the costs to the Administrator for ceasing and winding down the Administrator's administration of the Program. HTF agrees that, in consideration for, among other things, Quadel's cooperation with such transition and transfer, HTF shall use its best efforts to (i) mitigate any financial loss to the Administrator arising out of such non-renewal, and transfer and transition to HTF, or its designee, and (ii) to the extent not expressly prohibited by the applicable laws of the State of New York, encourage any contractor retained by HTF to assume the Administrator's outstanding leasing obligations for office space in the State of New York as well as the Administrator's other financial obligations, which obligations the Administrator has undertaken in anticipation of continuing to perform the Services as required under the ACC and this Contract.

E. Notwithstanding anything in this Contract to the contrary, HTF agrees to deliver to the Administrator written notice of HTF's intent to non-renew this Contract not later than six (6) months prior to the effective date of such non-renewal.

F. In arriving at the amount due the Administrator under this Section 7.04, there shall be deducted:

1. All unliquidated advances or other payments by HTF to the Administrator, under the terminated portion of this Contract;

2. Any claim which HTF has against the Administrator under this Contract; and

3. The agreed price for, or the proceeds of sale of the Inventory, because the cost of such property was paid for as a direct reimbursement by HTF to the Administrator.

G. HTF acknowledges and agrees that, with respect to the Initial Term and any Extension Term, as applicable, (i) the Administrator is a third-party beneficiary to the ACC, not a mere incidental beneficiary to the ACC, and (ii) both HUD and HTF intend for the Administrator to be a third-party beneficiary under the ACC. Accordingly, notwithstanding anything in this Contract to the contrary, in the event that HUD fails to make any payments to HTF or in the event that HUD terminates this Contract for reasons other than the Administrator's default (beyond any applicable period of notice of cure) of any material term, covenant or condition of this Contract, then HTF agrees to use its best efforts to cooperate (at HTF's sole cost and expense) with the Administrator in the Administrator's pursuit of any and all claims, actions or proceedings against HUD to recover any costs and expenses incurred by, but not reimbursed to, the Administrator and with respect to any financial obligation undertaken by the Administrator with respect thereto.

## ARTICLE 8 WARRANTIES, REPRESENTATIONS AND SPECIAL CONDITIONS

### Section 8.01 Warranties and Representations

In connection with the execution of this Contract, the Administrator warrants and represents:

A. That it is duly organized, validly existing and in good standing under the laws of the state of its organization and is duly authorized to do business in New York and it possesses all requisite authority, power, licenses, permits and franchises to conduct any and all business contemplated by this Contract and to execute, deliver and comply with its obligations under this Contract, and the execution, delivery and performance of this Contract has been duly authorized by all necessary corporate action.

B. That the execution and delivery of this Contract constitute valid, legal and binding obligations of the Administrator, enforceable in accordance with their terms.

C. That the execution and delivery of this Contract by the Administrator and the performance and compliance with its terms by the Administrator do not require the consent or approval of any governmental authority, or if such consent or approval is required, it has been obtained.

D. That the execution and delivery of this Contract in the manner contemplated herein and the performance and compliance with the terms and conditions of this Contract do not conflict with and will not result in any breach or violation of (i) the certificate of incorporation, by-laws or other governing instruments of the Administrator, (ii) any of the terms, conditions or provisions of any applicable laws, including regulations and executive orders or (iii) any agreement or instrument to which the Administrator is now a party or by which it or any of its assets is bound, and do not and will not an event which, with written notice or lapse of time, or both would constitute a default, under any of the foregoing.

E. That no information or statement furnished by the Administrator contains, and no report required hereunder to be delivered by the Administrator to HTF will intentionally contain, any untrue statement of material fact or will omit to state a material fact necessary to make such information, statement or report not misleading.

F. That the Administrator will strictly obey, comply with and observe all laws, rules, regulations, and executive orders of all federal, state, and local governments and regulatory bodies.

G. That it is financially solvent, that it and each of its employees, agents, Subadministrators or any of them is competent to perform the Services required under this Contract.

### Section 8.02 Conflict of Interest and Anti-Lobbying

The Administrator shall conform will all requirements and obligations imposed upon HTF under the terms of the ACC and applicable federal laws and regulations regarding the avoidance of conflicts of interest.

### Section 8.03 Non-liability of Public Officials

No official, employee or agent of HTF shall be charged personally by the Administrator, or by any assignee or Subadministrator of the Administrator, with any liability or expenses of defense or be held personally liable to the Administrator under any term or provision of this Contract, because of HTF's execution or attempted execution, or because of any breach hereof.

### Section 8.04 Independent Contractor

The Administrator shall perform under this Contract as an independent contractor to HTF and not as a representative, employee, agent, or partner of HTF. HTF and the Administrator are not engaged in any partnership or joint venture.

### Section 8.05 Housing Assistance Payments Contracts

Notwithstanding any provision contained herein to the contrary, HTF and the Administrator hereby certify that the Administrator's Services shall be performed in accordance with the provisions of the Section 8 Programs concerning HAP Payments between HTF and owners of Section 8 properties.

### Section 8.06 Confidentiality

Any information or document, received, prepared or assembled by the either party under this Contract whether in writing or oral is strictly confidential and both parties, each for themselves, covenants and agrees that such information shall not be disclosed or made available to any individual or organization without the prior written approval of the other party, which approval shall not be unreasonably withheld or delayed. This provision is an essential element of this Contract, and a breach of this Section 8.06 by either party may result in invoking the remedies available to it under this Contract.

## ARTICLE 9 GENERAL CONDITIONS

### Section 9.01 Entire Agreement

This Contract is comprised of this Contract and the Exhibits attached hereto and incorporated herein, shall constitute the entire agreement between the parties and no other warranties, inducements, considerations, promises or interpretations shall be implied or impressed upon this Contract that are not expressly addressed herein and therein.

**Section 9.02 Counterparts**

This Contract may be comprised of several identical counterparts, each to be fully executed by the parties and each to be deemed an original having identical legal effect.

**Section 9.03 Amendments**

No changes, amendments, modifications, or discharge of this Contract, or any part thereof, shall be valid unless in writing and signed by the authorized agent of the Administrator and by HTF's Executive Director, or his/her designee. HTF shall incur no liability for additional services without a written amendment to this Contract pursuant to this Section. Whenever in this Contract, the Administrator is required to obtain prior written approval, the effect of any approval which may be granted pursuant to the Administrator's request shall be prospective only from the later of the date approval was requested or the date on which the action for which the approval was sought is to begin. In no event may approval apply retroactively to a date before the approval was requested.

**Section 9.04 Compliance with All Laws/Government Orders**

The Administrator shall comply with all applicable Federal, State and local laws, regulations, rules, executive orders and ordinances relating to the performance of the Services.

**Section 9.05 Intentionally Deleted.**

**Section 9.06 Governing Law**

This Contract shall be governed by and interpreted under the laws of the State of New York.

**Section 9.07 Severability**

Unenforceability for any reason against any person or persons of any provision of this Contract, shall not limit or impair the operation or validity of any other provisions of this Contract or any other such agreement, and shall not impair the operation and validity of the same provisions against any other person or persons.

**Section 9.08 Interpretation**

Any headings of this Contract are for convenience of reference only and do not define or limit the provisions thereof. Words of any gender shall be deemed and construed to include correlative words of the other genders. Words importing the singular number shall include the plural number and vice versa, unless the context shall otherwise indicate. All references to any exhibit or document shall be deemed to include all supplements and/or amendments to any such exhibits or documents entered into in accordance with the terms and conditions hereof and thereof. All

references to any person or entity shall be deemed to include any person or entity succeeding to the rights, duties, and obligations of such persons or entities in accordance with the terms and conditions of this Contract.

**Section 9.09 Assigns**

All of the terms and conditions of this Contract shall be binding upon and inure to the benefit of the parties hereto and their respective legal representatives, successors, transferees and assigns.

**Section 9.10 Cooperation**

The Administrator agrees at all times to cooperate fully with HTF and to act in HTF's best interests. If this Contract is terminated for any reason, or if it is to expire on its own terms, the Administrator shall make every effort to assure an orderly transition to another Administrator, if any, orderly demobilization of his own operations in connection with the Services, uninterrupted provision of Services during any transition period and shall otherwise comply with the reasonable requests and requirements of HTF in connection with the termination or expiration of this Contract. Further, each of the parties hereto hereby agrees hereafter to promptly execute and deliver such further documents and instruments, and to promptly do such further acts and things, as may be necessary, appropriate or incidental to carry out the intent and purpose of this Contract.

**Section 9.11 No Waiver; Consent**

No failure of any party to exercise any power, right or remedy given it hereunder, or to insist upon the strict compliance by any other party of any obligation, covenant, term, condition, warranty or agreement hereunder, and no custom or practice at variance with the terms hereof, shall constitute a waiver of such party's right to demand exact compliance with the terms hereof. Further, any waiver by any party of any particular default by any party shall not affect or impair such party's rights in respect to any subsequent default of the same or a different kind, or affect or alter this Contract, but rather each and every obligation, covenant, term, condition, warranty and agreement shall continue in full force and effect with respect to any other existing or subsequent breach thereof; nor shall any delay or omission of any party to exercise any power or right arising from any default affect or impair such party's rights as to the same or any future default. Any consent, approval, determination, agreement, permission or decision required or requested by HTF or the Administrator shall not be unreasonably withheld, delayed or conditioned.

**Section 9.12 Terminology**

The use herein of the word "including," when following any general statement, term or matter, shall not be construed to limit such statement, term or matter to the specific items or matters set forth immediately following such word or to similar items or matters, whether or not nonlimiting language (such as "without limitation," or "but not limited to," or words of similar import) is used with reference thereto, but rather shall be deemed to refer to all other items or matters that could reasonably fall within the broadest possible scope of such general statement, term or

matter. Whenever the last day for the performance of any act required by any party under this Contract shall fall upon a Saturday, Sunday, or legal holiday in the State of New York, the date for the performance of any such act shall be extended to the next succeeding Business Day which is not a Saturday, Sunday or such legal holiday.

## ARTICLE 10 COMMUNICATION AND NOTICES

### Section 10.01 Notices

All notices and other communications under this Contract are to be in writing, addressed to the respective party as set forth in this Section 10.01, and shall be deemed to have been duly given (i) upon delivery, if delivered in person with receipt acknowledged by the recipient thereof, (ii) one (1) Business Day after having been deposited for overnight delivery, fee prepaid, with any reputable overnight delivery courier service or (iii) three (3) Business Days after having been deposited in any post office or mail depository regularly maintained by the U.S. Postal Service and sent by registered or certified mail, postage prepaid, return receipt requested. Initial addresses for each party are as follows:

If to Administrator to:

Quadel Consulting Corporation
1250 Eye Street, N.W., Suite 330
Washington, D.C. 20005
Attention: Kathleen Rotondaro, President

and

New York Quadel Consulting Corporation
115 Broadway
New York, New York 10006
Attention: Edward Symes, III, President

With a copy to:

Shulman, Rogers, Gandal, Pordy & Ecker, P.A.
11921 Rockville Pike, Third Floor
Rockville, MD 20852-2734
Attention: Larry N. Gandal, Esquire

| | |
|---|---|
| Notices sent to HTF to: | New York State Housing Trust Fund Corporation<br>Hampton Plaza, 38-40 State Street<br>Albany, NY 12207<br>Attn: Mr. Alan Smith |
| With a copy to: | Marcia P. Hirsch, Esquire, General Counsel<br>c/o Cullen McVoy, Esquire<br>New York State Division of Housing and Community Renewal<br>25 Beaver Street<br>New York, NY 10004 |

Each party may establish a new address from time to time by written notice to the other party given in accordance with this Section 10.01; provided, however, that no such change of address will be effective until written notice thereof is actually received by the party to whom such change of address is sent.

## ARTICLE 11 AUTHORITY

The Administrator and HTF hereby covenant each for itself, that it has full right, power and authority to enter into this Contract upon the terms and conditions herein set forth. The person executing this Contract on behalf of the Administrator does hereby covenant and warrant that the Administrator is a duly authorized and existing corporation, qualified to do business in the State of New York, that the corporation has full right and authority to enter into this Contract, and that each person signing on behalf of the corporation was authorized to do so. The persons executing this Contract on behalf of HTF do hereby covenant and warrant that each of such persons executing this Contract is authorized to do so on behalf of HTF.

## ARTICLE 12 MISCELLANEOUS

### 12.01 Non-Collusive Bidding Requirement.

In accordance with Section 139-d of the State Finance Law, if this Contract was awarded based upon the submission of bids, the Administrator warrants, under penalty of perjury, that its bid was arrived at independently and without collusion aimed at restricting competition. Administrator further warrants that, at the time Administrator submitted its bid, an authorized and responsible person executed and delivered to HTF a non-collusive bidding certification on Administrator's behalf.

### 12.02 Independent Contractor.

With respect to any activities carried out in connection with this Contract, the Administrator shall not be the agent of HTF nor shall the Administrator represent to any person, foundation, group, organization or government entity that the Administrator is acting as agent for HTF or that the Administrator is entitled in any way to act on behalf of HTF or to incur obligations on behalf of

HTF unless expressly authorized to do so by HTF in writing. This Contract shall not be construed as a partnership or joint venture between HTF and the Administrator.

**12.03 Certification of Non-Sectarian Purpose.**

No funds received pursuant to this Contract will be used for sectarian purposes or to further the advancement of any religion.

**12.04 Rules and Regulations.**

Administrator agrees to comply with the rules and regulations of HTF applicable to the Program, as amended from time to time ("Rules"), which are incorporated into and made a part of this Contract. The parties acknowledge and agree that as of the date of this Contract, HTF has not promulgated any such Rules.

**12.05 Performance Review.**

HTF will review the Administrator in such manner and at such times as HTF shall determine for the purpose, among other things, of ascertaining the quality and quantity of the activities performed by the Administrator, their conformity to the provisions of this Contract, and the financial integrity and efficiency of the Administrator.

**12.06 Dissolution, Liquidation or Termination.**

In the event of dissolution, liquidation or termination of the Administrator (whether voluntary, involuntary or by operation of law), this Contract may be terminated. Such termination shall not relieve the Administrator from liability to HTF under this Contract. Where dissolution occurs by operation of law or in accordance with Article 10 or Article 11 of the Not-For-Profit Corporation Law, the Administrator shall obtain the prior approval of HTF of its plan of dissolution and distribution of assets.

**12.07 No Political Activity.**

The Administrator agrees that no portion of the proceeds of the funds shall be used for any partisan political activity or to further the election or defeat of any candidate for public or political office. The Administrator and all directors, trustees, officers and employees of the Administrator and members of their immediate families shall comply throughout the Initial Term and any applicable Extension Term with all restrictions on political activities and personal benefit to which they may be subject under any statute, regulation, rule or other governmental requirement including, without limitation, the rules and regulations of HTF.

**12.08 Officials Not To Benefit.**

No member of the Legislature of the State of New York, and no public official whether federal, state or municipal, shall be admitted to any share or part hereof.

**12.09 International Boycott Prohibition.**

In accordance with Section 220-f of the Labor Law and Section 139-h of the State Finance Law, if this Contract exceeds Five Thousand Dollars ($5,000.00), the Administrator agrees, as a material condition of the contract, that neither Administrator nor any substantially owned or affiliated person, firm, partnership or corporation has participated, is participating, or shall participate in an international boycott in violation of the federal Export Administration Act of 1979 (50 USC App. Sections 2401 et seq.) or regulations thereunder. If the Administrator, or any of the aforesaid affiliates of the Administrator, is convicted or is otherwise found to have violated said laws or regulations upon the final determination of the United States Commerce Department or any other appropriate agency of the United States subsequent to this Contract's execution, such agreement or modification thereto shall be rendered forfeit and void. The Administrator shall so notify the State Comptroller within five (5) business days of such conviction, determination or disposition of appeal (2 NYCRR 105.4).

**12.10 MacBride Fair Employment Principles.**

The Administrator stipulates to the following: the Administrator and any individual or legal entity in which the Administrator holds a ten percent or grater ownership interest and any individual or legal entity that holds a ten percent or greater ownership interest in the Administrator either (i) have no business operations in Northern Ireland, or (ii) shall take lawful steps in good faith to conduct any business operations they have in Northern Ireland in accordance with MacBride Fair Employment Principles, and shall permit independent monitoring of their compliance with such principles.

**12.11 Waiver of Rights to Termination for Convenience.**

HTF hereby affirmatively waives any and all rights, whether created by statute, common law, regulation or rule, or agrees that it shall not assert the right to terminate this Contract for convenience.

**12.12 Identifying Information and Privacy Notification.**

(i) **Federal Employer Identification Number and/or Federal Social Security Number**. All invoices or State standard vouchers submitted for payment for the sale of goods or services or the lease of real or personal property to a State agency must include the payee's Federal employer identification number, i.e., the seller's or lessor's identification number. The number is either the payee's Federal employer identification number or Federal social security number, or both such numbers when the payee has both such numbers. Failure to include this number or numbers may delay payment. Where the payee does not have such number or numbers, the payee, on his invoice or State standard voucher, must give the reason or reasons why the payee does not have such number or numbers.

(ii) **Privacy Notification.**

(a) The authority to request the above personal information from a seller of goods or services or a lessor of real or personal property, and the authority to maintain such information, is found in Section 5 of the State Tax Law. Disclosure of this information by the seller or lessor to the State is mandatory. The principal purpose for which the information is collected is to enable the State to identify individuals, businesses and others who have been delinquent in filing tax returns or may have understated their tax liabilities and to generally identify persons affected by the taxes administered by the Commissioner of Taxation and Finance. The information will be used for tax administration purposes and for any other purpose authorized by law.

(b) The personal information is requested by the purchasing unit of the agency contracting to purchase the goods or services or lease the real or personal property covered by any contract or lease. The information is maintained in the State's Central Accounting System by the Director of State Accounts, Office of the State Comptroller, AESOB, Albany, New York 12236.

**SIGNATURES FOLLOW**

**REMAINDER OF PAGE INTENTIONALLY LEFT BLANK**

IN WITNESS WHEREOF, HTF and the Administrator have executed this Contract as of the date first written above, effective the date of signature below.

**QUADEL CONSULTING CORPORATION,**
a Maryland corporation

**By:** Edward Symes III
**Name:** EDWARD SYMES, III
**Its:** VICE PRESIDENT

**NEW YORK STATE HOUSING TRUST FUND CORPORATION,**
a public benefit corporation

**By:** ______________________
**Name:** Alan L. Smith
**Its:** VICE PRESIDENT

**LIST OF EXHIBITS**

| Exhibit Number | Description |
|---|---|
| I | Annual Contributions Contract |
| II | Budget |
| III | Drug-Free Workplace Certification |

George E. Pataki
Governor

Judith A. Calogero
Chairperson

**New York State Housing Trust Fund Corporation**
Hampton Plaza
38-40 State Street
Albany, NY 12207

TWELVE MONTH CONTRACT EXTENSION

The New York State Housing Trust Fund Corporation (HTFC) and Quadel Consulting Corporation (Quadel) hereby agree to extend for a period of twelve months the contract between HTFC and Quadel, dated October 4, 2000 ( the Contract) for the delivery of services associated with the Section 8 program under the terms and conditions set forth in the Contract.

New York State Housing Trust Fund Corporation

by: Alan Smith
Vice President
Office of Housing Management

11/4/02
Date

Quadel Consulting Corporation

by: EDWARD SYMES, III
VICE PRESIDENT

31 OCTOBER 2002
Date



Web Site: www.dhcr.state.ny.us
Email address: dhcrinfo@dhcr.state.ny.us

George E. Pataki
Governor

Judith A. Calogero
Chairperson

**New York State Housing Trust Fund Corporation**
Hampton Plaza
38-40 State Street
Albany, NY 12207

CONTRACT EXTENSION

The United States of Housing and Urban Development has extended the Annual Contributions Contract (ACC) with the New York State Housing Trust Fund Corporation (HTFC) through November 30, 2005.

HTFC and Quadel Consulting Corporation (Quadel) do thereby agree to, for the same period, extend the contract between HTFC and Quadel dated October 4, 2000 ( the Contract) for the delivery of services associated with the Section 8 program under the terms and conditions set forth in the Contract.

New York State Housing Trust Fund Corporation

by: Alan Smith
Vice President
Office of Housing Management

8/4/04
Date

Quadel Consulting Corporation

Edward Symes III

by: Edward [illegible] Symes III
EXEC. Vice-President

29 July 2004
Date



Web Site: www.dhcr.state.ny.us
Email address: dhcrinfo@dhcr.state.ny.us