IN THE UNITED STATES COURT OF FEDERAL CLAIMS

PARK PROPERTIES ASSOCIATES, L.P., et al., )
)
Plaintiffs, )
) No. 04-1757C
v. )
) (Judge Allegra)
THE UNITED STATES, )
)
Defendant. )

DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT

Pursuant to RCFC 56(h)(1), defendant, the United States, respectfully submits the following proposed findings of uncontroverted fact in support of "Defendant's Motion to Dismiss in Part or, in the Alternative, for Partial Summary Judgment" dated July 29, 2005:[1/]

A. Park Properties Associates, L.P.

1. Plaintiff, Park Properties Associates, L.P. (Park Properties), is a limited partnership organized under the laws of the State of New York. Compl. ¶ 3; Answer ¶ 3.

2. Park Properties is the owner of a multifamily rental housing project that is known as LaMartine Terrace or Waterview Apartments. Compl. ¶ 3; Answer ¶ 3; Bolduc Depo. 22(10-18), Def. App. 7.[2/] LaMartine Terrace is located in Yonkers, New York. Compl. ¶ 3; Answer ¶ 3.

---

[1] In this document, "Compl. ¶ ____" refers to the referenced paragraph(s) of the "Complaint" filed on December 10, 2004; "Answer ¶ ____" refers to the referenced paragraph(s) of "Defendant's Answer" dated February 7, 2005; and "Def. App. ____" refers to the referenced page(s) of the appendix to "Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment" dated July 29, 2005.

[2] In this document, "Bolduc Depo. ____(____)" refers to the referenced page(s) and (parenthetically) line(s) of the transcript of the deposition of Stephen Bolduc in this case by the Government on July 1, 2005. Plaintiffs Park Properties Associates, L.P., and Valentine Associates, L.P., designated Mr. Bolduc to testify upon their behalf with respect to deposition topics numbered 1 through 6 set forth in the Government's notice of Rule 30(b)(6) deposition. See Bolduc Depo.
(continued...)

3. In 1979, Jerome Z. Ginsburg d/b/a Park Properties Associates, the predecessor-in-interest of Park Properties, and the United States, acting through the Department of Housing and Urban Development (HUD), entered a Housing Assistance Payments (HAP) contract with respect to LaMartine Terrace (the Park Properties HAP Contract). See Def. App. 38-55; Bolduc Depo. 33(23-25)-34(1-7), Def. App. 9-10. On July 1, 1996, the interest of Park Properties Associates in the Park Properties HAP Contract was transferred to Park Properties, the plaintiff in the above-captioned action. See "Assignment of HAP Contract," Def. App. 57; Bolduc Depo. 37(3-25)-38(1-2), Def. App. 10-11.

4. The Park Properties HAP Contract was entered pursuant to the Section 8 HAP Program for Substantial Rehabilitation. See 24 C.F.R. Part 881 (1979). The Park Properties HAP Contract covers 82 apartments in LaMartine Terrace: 16 0-bedroom units; 30 1-bedroom units; and 36 2-bedroom units. Def. App. 46.

5. The term of the Park Properties HAP Contract is five years, renewable at Park Properties' option for five additional terms of five years each for a maximum of 30 years. See Park Properties HAP Contract, Part I, §§ 1.1c, 1.4a (Alternative 2), Def. App. 38, 39; Bolduc Depo. 34(8-13), Def. App. 10..

6. The effective date of the Park Properties HAP Contract is June 1, 1979. Def. App. 49. The anniversary date of the Park Properties HAP Contract, thus, is June 1 of each year during the term of the contract. Id.; see also Bolduc Depo. 35(4-18), Def. App. 10.

[2](...continued)
15(21-25)-16(1-6), Def. App. 5; Def. App. 34-37 (Rule 30(b)(6) deposition notice).

7. With respect to rent adjustments, section 1.8 of Part I of the Park Properties HAP Contract provides, in part:

> b. Automatic Annual Adjustments
>
> (1) Automatic Annual Adjustment Factors will be determined by the Government at least annually; interim revisions may be made as market conditions warrant. Such Factors and the basis for their determination will be published in the Federal Register. These published Factors will be reduced appropriately by the Government where utilities are paid directly by the Families.
>
> (2) On each anniversary date of the Contract, the Contract Rents shall be adjusted by applying the applicable Automatic Annual Adjustment Factor most recently published by the Government. Contract Rents may be adjusted upward or downward, as may be appropriate; however, in no case shall the adjusted Contract Rents be less than the Contract Rents on the effective date of the Contract.
>
> * * * * *
>
> d. Overall Limitation. Notwithstanding any other provisions of this Contract, adjustments as provided in this Section shall not result in material differences between the rents charged for assisted and comparable unassisted units, as determined by the Government; provided, that this limitation shall not be construed to prohibit differences in rents between assisted and comparable unassisted units to the extent that such differences may have existed with respect to the initial Contract Rents.

Def. App. 41.

8. Effective on June 1, 1994, contract rents under the Park Properties HAP Contract were adjusted, based upon the application of annual rent adjustment factors published in the Federal Register, to $872 per month for the 0-bedroom units, to $959 per month for the 1-bedroom units, and to $1,053 per month for the 2-bedroom units. Def. App. 58-60; Bolduc Depo. 39(2-25)-40(1-12), Def. App. 11.

9. From June 1, 1994, through May 31, 1999, the monthly contract rents under the Park Properties HAP Contract were $872 for the 0-bedroom units, $959 for the 1-bedroom units, and $1,053 for the 3-bedroom units. Def. App. 11; Bolduc Depo. 40(13-23).

B. Valentine Associates, L.P.

10. Plaintiff, Valentine Associates, L.P. (Valentine), is a limited partnership organized under the laws of the State of New York. Compl. ¶ 3; Answer ¶ 3.

11. Valentine is the owner of a multifamily rental housing project that is known as Lane Hill Senior Citizen Residence (Lane Hill). Compl. ¶ 3; Answer ¶ 3; Bolduc Depo. 29(24-25), Def. App. 8. Lane Hill is located in Yonkers, New York. Compl. ¶ 3; Answer ¶ 3; Bolduc Depo. 30(1-3), Def. App. 9.

12. In 1980, Jerome Z. Ginsburg d/b/a Valentine Associates, the predecessor-in-interest of Valentine, and the United States, acting through HUD, entered a HAP contract with respect to Lane Hill (the Valentine HAP Contract). See Def. App.61-75; Bolduc Depo. 86(16-25)-87(1), Def. App. 23. On July 1, 1996, the interest of Valentine Associates in the Valentine HAP Contract was transferred to Valentine, the plaintiff in the above-captioned action. See "Assignment of HAP Contract," Def. App. 78; Bolduc Depo. 88(13-23), Def. App. 23.

13. The Valentine HAP Contract was entered pursuant to the Section 8 HAP Program for New Construction. See 24 C.F.R. Part 880 (1979). The Valentine HAP Contract covers a total of 109 apartments in Lane Hill: nine 0-bedroom units; 99 1-bedroom units; and one 2-bedroom unit. Def. App. 68.

14. The Valentine HAP Contract was executed in two stages. The effective date of Stage 1, which covers 55 dwelling units (three 0-bedroom units, 51 1-bedroom units, and one 2-bed-

room unit), is January 2, 1980. Def. App. 67; Bolduc Depo. 87(2-15), Def. App. 23. The effective date of Stage 2, which covers 54 dwelling units (six 0-bedroom units and 48 1-bedroom units), is February 19, 1980. Id.

15. The term of the Valentine HAP Contract is five years, renewable at Valentine's option for five additional terms of five years each for a maximum of 30 years. See Valentine HAP Contract, Part I, §§ 1.1c, 1.4a (Alternative 2), Def. App. 61, 62.

16. The effective date of the first stage of the Valentine HAP Contract is January 2, 1980. See Valentine HAP Contract, Def. App. 67. The anniversary date of the Valentine HAP Contract, thus, is January 2 of each year during the term of the contract.

17. With respect to rent adjustments, section 1.8 of Part I of the Valentine HAP Contract provides, in part:

> b. Automatic Annual Adjustments
>
> (1) Automatic Annual Adjustment Factors will be determined by the Government at least annually; interim revisions may be made as market conditions warrant. Such Factors and the basis for their determination will be published in the Federal Register. These published Factors will be reduced appropriately by the Government where utilities are paid directly by the Families.
>
> (2) On each anniversary date of the Contract, the Contract Rents shall be adjusted by applying the applicable Automatic Annual Adjustment Factor most recently published by the Government. Contract Rents may be adjusted upward or downward, as may be appropriate; however, in no case shall the adjusted Contract Rents be less than the Contract Rents on the effective date of the Contract.
>
> * * * * *

> d. Overall Limitation. Notwithstanding any other provisions of this Contract, adjustments as provided in this Section shall not result in material differences between the rents charged for assisted and comparable unassisted units, as determined by the Government; provided, that this limitation shall not be construed to prohibit differences in rents between assisted and comparable unassisted units to the extent that such differences may have existed with respect to the initial Contract Rents.

Def. App. 65.

18. Effective on January 2, 1994, contract rents under the Valentine HAP Contract were adjusted, based upon the application of annual rent adjustment factors published in the Federal Register, to $853 per month for the 0-bedroom units, $963 per month for the 1-bedroom units, and $1,103 per month for the 2-bedroom units. Def. App. 79-82; Bolduc Depo. 89(2-25)-90(1), Def. App. 23-24.

19. Effective on January 2, 1995, contract rents under the Valentine HAP Contract were adjusted, based upon the application of annual rent adjustment factors published in the Federal Register, to $880 per month for the 0-bedroom units, to $994 per month for the 1-bedroom units, and to $1,138 per month for the 2-bedroom units. Def. App. 83-86; Bolduc Depo. 90(2-24), Def. App. 24.

20. From January 2, 1995, through January 1, 1999, the monthly contract rents under the Valentine HAP Contract were $880 for the 0-bedroom units, $994 for the 1-bedroom units, and $1,138 for the 2-bedroom units. Def. App. 24; Bolduc Depo. 90(25)-91(1-6), Def. App. 24.

C. St. John's I Associates, L.P.

21. Plaintiff, St. John's Associates I, L.P. (St. John's), is a limited partnership organized under the laws of the State of New York. Compl. ¶ 3; Answer ¶ 3; Salmond Depo. 15(2-5), Def.

App. 122.[3]

22. St. John's is the owner of a multifamily rental housing project known as St. John's Phase I located in Brooklyn, New York. Compl. ¶ 3; Answer ¶ 3; Salmond Depo. 15(13-18), Def. App. 122.

23. St. John's Phase I is a substantial rehabilitation project that was developed with a private loan secured by a mortgage insured by HUD pursuant to section 221(d)(4) of the National Housing Act, as amended. See "Commitment for Insurance of Advances," Def. App. 87-91, "Mortgage," Def. App. 92-98, and "Mortgage Note," Def. App. 99-102.[4]

24. As initially organized, the general partners of St. John's were Unitroy Construction Corp. and Mr. Joseph Neumann. See "Certificate of Limited Partnership," Def. App. 104-112. The President of Unitroy Construction Corp. was Troy D. Stevens, Jr. See "Previous Participation Certificate," Def. App. 113-114. On March 2, 1993, Mr. Neumann assigned his general partnership interest in St. John's to Mr. Stevens. See "Assignment of Partnership Interest," Def. App. 115; "Amended Certificate of Limited Partnership," Def. App. 116-117.

25. In 1982, St. John's and the United States, acting through HUD, entered a HAP contract with respect to St. John's Phase I (the St. John's HAP Contract), pursuant to the Section 8 HAP Program for Substantial Rehabilitation (24 C.F.R. Part 881 (1979)). See Def. App. 130-

---

[3] In this document, "Salmond Depo. ____(____)" refers to the referenced page(s) and (parenthetically) line(s) of the transcript of the deposition of Henry Salmond in this case by the Government on July 1, 2005. Plaintiff St. John's I Associates, L.P., designated Mr. Salmond to testify upon its behalf with respect to deposition topics numbered 7 through 17 set forth in the Government's notice of Rule 30(b)(6) deposition. See Salmond Depo. 8(8-12), Def. App. 120; Def. App. 34-37 (Rule 30(b)(6) deposition notice).

[4] St. John's prepaid the mortgage loan in full on December 4, 2003. See Def. App. 103.

146; Salmond Depo. 18(7-17), Def. App. 123. The St. John's HAP Contract applies to a total of 191 apartments in St. John's Phase I: 14 0-bedroom units; 82 1-bedroom units; 78 2-bedroom units; and 17 3-bedroom units. Def. App. 136.

26. The St. John's HAP Contract was executed in three stages. The effective date of Stage 1, which covered 76 dwelling units (26 1-bedroom units, 37 2-bedroom units, and 13 3-bedroom units) was July 1, 1982. Def. App. 137. The effective date of Stage 2, which covered 44 dwelling units (five 0-bedroom units, 25 1-bedroom units, 10 2-bedroom units, and four 3-bedroom units) was September 22, 1982. Def. App. 137. The effective date of Stage 3, which covered 71 dwelling units (nine 0-bedroom units, 31 1-bedroom units, and 31 2-bedroom units), was December 15, 1982. Def. App. 138.

27. The term of the St. John's HAP Contract was 20 years. See St. John's HAP Contract, Part I, § 1.1c(3), Def. App. 130.

28. The effective date of the first stage of the St. John's HAP Contract was July 1, 1982. See St. John's HAP Contract, Def. App. 137. The anniversary date of the St. John's HAP Contract, thus, was July 1 of each year during the term of the contract.

29. With respect to rent adjustments, section 1.8 of Part I of the St. John's HAP Contract provided, in part:

> b. Automatic Annual Adjustments
>
> (1) Automatic Annual Adjustment Factors will be determined by the Government at least annually; interim revisions may be made as market conditions warrant. Such Factors and the basis for their determination will be published in the Federal Register. These published Factors will be reduced appropriately by the Government where utilities are paid directly by the Families.

> (2) On each anniversary date of the Contract, the Contract Rents shall be adjusted by applying the applicable Automatic Annual Adjustment Factor most recently published by the Government. Contract Rents may be adjusted upward or downward, as may be appropriate; however, in no case shall the adjusted Contract Rents be less than the Contract Rents on the effective date of the Contract.
>
> * * * * *
>
> d. Overall Limitation. Notwithstanding any other provisions of this Contract, adjustments as provided in this Section shall not result in material differences between the rents charged for assisted and comparable unassisted units, as determined by the Government; provided, that this limitation shall not be construed to prohibit differences in rents between assisted and comparable unassisted units to the extent that such differences may have existed with respect to the initial Contract Rents.

Def. App. 134.

30. Effective on July 1, 1994, contract rents under the St. John's HAP Contract were adjusted, based upon the application of annual rent adjustment factors published in the Federal Register, to $812 per month for the 0-bedroom units, $950 per month for the 1-bedroom units, $1,082 per month for the 2-bedroom units, and $1,257 per month for the 3-bedroom units. Def. App. 147-149; Salmond Depo. 19(2-18), Def. App. 123.

31. In light of a rent comparability study for St. John's Phase I submitted to HUD by St. John's,[5] HUD determined that, based upon the overall limitation upon contract rents contained in the St. John's HAP Contract, St. John's was not entitled to an adjustment of the contract rents under the HAP Contract on the July 1, 1995 contract anniversary date. Def. App. 154-172; Salmond Depo. 20(21-25)-21(1-4), Def. App. 123.

---

[5] See Def. App. 150-153; Salmond Depo. 19(23-25)-20(1-6), Def. App. 123.

32. Effective on July 1, 1996, the contract rents under the St. John's HAP Contract were adjusted, based upon the application of annual rent adjustment factors published in the Federal Register, to $831 per month for the 0-bedroom units, to $973 per month for the 1-bedroom units, to $1,108 per month for the 2-bedroom units, and to $1,287 per month for the 3-bedroom units. Def. App. 173-176; Salmond Depo. 22(17-25)-23(1-10), Def. App. 124.

33. From July 1, 1996, through June 30, 1999, the monthly contract rents under the St. John's HAP Contract were $831 for the 0-bedroom units, $973 for the 1-bedroom units, $1,108 for the 2-bedroom units, and $1,287 for the 3-bedroom units. Salmond Depo. 24-27, Def. App. 124-125.

34. The New York State Housing Trust Fund Corporation is a "public housing agency" as defined in section 3 of the United States Housing Act of 1937 (42 U.S.C. § 1437a(b)(6)). See "Annual Contributions Contract," § 1 ("Definitions"), at 5, Def. App. 275.

35. On or about September 28, 2000, the New York State Housing Trust Fund Corporation (the PHA) and HUD entered an "Annual Contributions Contract" (ACC) in which the PHA agreed to provide contract administration services for project-based HAP contracts entered under the Section 8 HAP Program. See ACC, Exhibit A (Scope of Services), at 6-26, Def. App. 298-318. Regarding contract administration services, the ACC provides that "[t]he PHA shall enter into or assume HAP contracts with owners of covered units to make housing assistance payments to the owners of such units during the HAP contract term." ACC, § 3a(1), at 7, Def. App. 277. The service area for the PHA under the ACC is the State of New York, including the fair-market-rent areas of Westchester County, New York, and the New York, NY PMSA. See ACC, Exhibits D (PHA Service Area), E (PHA Administrative Fee), Def. App. 354-355.

36. On or about October 4, 2000, the New York State Housing Trust Fund Corporation and Quadel Consulting Corporation (Quadel) entered the "Contract Between Quadel Consulting Corporation and the New York State Housing Trust Fund Corporation" in which Quadel agreed to perform the contract administration services that are the subject of the ACC between the New York State Housing Trust Fund Corporation and HUD. See Def. App. 358-387.

37. Effective on July 1, 2002, St. John's and the New York State Housing Trust Fund Corporation entered a HAP Interim (Full) Mark-to-Market Renewal Contract with respect to the 76 dwelling units in St. John's Phase I that were covered by Stage 1 of the St. John's HAP Contract (Renewal Contract (Stage 1 Units)). See Renewal Contract (Stage 1 Units), § 2 & Exhibit A, Def. App. 180, 188; Salmond Depo. 33(22-25)-34(1-9), Def. App. 126-127.

38. Section 4b of Renewal Contract (Stage 1 Units) provided that "[t]he Renewal Contract is entered pursuant to section 8 of the United States Housing Act of 1937 (42 U.S.C. 1437f), and section 514(c) of [the Multifamily Housing Reform and Affordability Act of 1997, Pub. L. No. 105-65, 111 Stat. 1384ff (1997) (MAHRA), as amended by section 531 of the Department of Veterans Affairs and Housing and Urban Development, and Independent Agencies Appropriations Act, 2000, Pub. L. No. 106-74, 113 Stat. 1109ff (1999) (MAHRA)]." Def. App. 182.[6]

---

[6] Two of the purposes of MAHRA are "to preserve low-income rental housing affordability and availability while reducing the long-term costs of project-based assistance" and "to encourage owners of eligible multifamily housing projects to restructure their FHA-insured mortgages and project-based assistance contracts in a manner that is consistent with this subtitle . . . ." MAHRA, § 511(b)(1), (3), 111 Stat. 1387. To that end, MAHRA required that HUD "develop procedures and requirements for the submission of a mortgage restructuring and rental assistance sufficiency plan for each eligible multifamily housing project with an expiring contract." MAHRA, § 514(a)(1), 111 Stat. 1392. For purposes of MAHRA, an "expiring contract" is "a project-based assistance contract attached to an eligible multifamily housing project which, under the terms of the contract, will expire." MAHRA, § 512(3), 111 Stat. 1388. Section 514(c) of
(continued...)

Sections 4c and 4d(1) of the Renewal Contract (Stage 1 Units) provided:

> Previously, the Contract Administrator and the Owner had entered into a HAP Contract ("expiring contract") to make Section 8 housing assistance payments to the Owner for eligible families living in the Project. The term of the expiring contract will expire or terminate prior to the beginning of the term of the Renewal Contract.
>
> The purpose of the Renewal Contract is to renew the expiring contract for an additional term sufficient to facilitate the implementation of a mortgage restructuring and rental assistance sufficiency plan, as determined by HUD.

Def. App. 182. Section 5 of the Renewal Contract (Stage 1 Units) further provided:

> **a** Except as specifically modified by the Renewal Contract, all provisions of the Expiring Contract are renewed (to the extent such provisions are consistent with statutory requirements in effect at the beginning of the Renewal Contract term).
>
> **b** Any and all provisions of the Expiring Contract concerning any of the following subjects are not renewed, and shall not be applicable during the renewal term:
>
> * * * * *
>
> **(3)** Contract rents adjustments . . . .
>
> * * * * *
>
> **c** The Renewal Contract includes those provisions of the Expiring Contract that are renewed in accordance with this section 5.

Def. App. 183.

---

[6](...continued)
MAHRA provides that "[s]ubject to an agreement by a project owner, [HUD] may extend the term of any expiring contract or provide a section 8 contract with rent levels set in accordance with [section 514(g) of MAHRA] for a period sufficient to facilitate the implementation of a mortgage restructuring and rental assistance sufficiency plan, as determined by [HUD]." 111 Stat. 1393.

39. With respect to "initial contracts rents," section 6a of the Renewal Contract (Stage 1 Units) provided that, "[a]t the beginning of the Renewal Contract term, the contract rent for each bedroom size (number of bedrooms) shall be the initial contract rent amount listed in Exhibit A, which is attached to and, by this reference, made a part of the Renewal Contract." Def. App. 184. Exhibit A to the Renewal Contract (Stage 1 Units) reflected the following monthly contract rents:

| **Bedroom Size** | **Number of Units** | **Contract Rents** |
|---|---|---|
| 0-BR | 14 | $ 831 |
| 1-BR | 82 | $ 973 |
| 2-BR | 78 | $1,108 |
| 3-BR | 17 | $1,287 |

Def. App. 188.

40. Regarding "contract rent adjustments," section 6b of the Renewal Contract (Stage 1 Units) provided that "[t]here shall be no contract rent adjustments during the term of the Renewal Contract." Def. App. 184.

41. Effective on September 22, 2002, St. John's and the New York State Housing Trust Fund Corporation entered a HAP Interim Mark-to-Market Renewal Contract with respect to the 76 dwelling units in St. John's Phase I that were covered by Stage 2 of the St. John's HAP Contract (Renewal Contract (Stage 2 Units)). See Renewal Contract (Stage 2 Units), § 2 & Exhibit A, Def. App. 196, 204; Salmond Depo. 34(14-22), Def. App. 127.

42. Section 4b of the Renewal Contract (Stage 2 Units) provided that "[t]he Renewal Contract is entered pursuant to section 8 of the United States Housing Act of 1937 (42 U.S.C. 1437f), and section 514(c) of [MAHRA], as amended by section 531 of the Department of Vet-

erans Affairs and Housing and Urban Development, and Independent Agencies Appropriations Act, 2000, Pub. L. No. 106-74, 113 Stat. 1109ff (1999)]." Def. App. 198. Sections 4c and 4d(1) of the Renewal Contract (Stage 2 Units) provided:

> Previously, the Contract Administrator and the Owner had entered into a HAP Contract ("expiring contract") to make Section 8 housing assistance payments to the Owner for eligible families living in the Project. The term of the expiring contract will expire or terminate prior to the beginning of the term of the Renewal Contract.
>
> The purpose of the Renewal Contract is to renew the expiring contract for an additional term sufficient to facilitate the implementation of a mortgage restructuring and rental assistance sufficiency plan, as determined by HUD.

Def. App. 198. Section 5 of the Renewal Contract (Stage 2 Units) further provided:

> **a** Except as specifically modified by the Renewal Contract, all provisions of the Expiring Contract are renewed (to the extent such provisions are consistent with statutory requirements in effect at the beginning of the Renewal Contract term).
>
> **b** Any and all provisions of the Expiring Contract concerning any of the following subjects are not renewed, and shall not be applicable during the renewal term:
>
> * * * * *
>
> **(3)** Contract rents adjustments . . . .
>
> * * * * *
>
> **c** The Renewal Contract includes those provisions of the Expiring Contract that are renewed in accordance with this section 5.

Def. App. 199.

43. With respect to "initial contracts rents," section 6a of the Renewal Contract (Stage 2 Units) provided that, "[a]t the beginning of the Renewal Contract term, the contract rent for each

bedroom size (number of bedrooms) shall be the initial contract rent amount listed in Exhibit A, which is attached to and, by this reference, made a part of the Renewal Contract." Def. App. 200. Exhibit A to the Renewal Contract (Stage 2 Units) reflected the following monthly contract rents:

| **Bedroom Size** | **Number of Units** | **Contract Rents** |
|---|---|---|
| 0-BR | 14 | $ 831 |
| 1-BR | 82 | $ 973 |
| 2-BR | 78 | $1,108 |
| 3-BR | 17 | $1,287 |

Def. App. 204.

44. Regarding "contract rent adjustments," section 6b of the Renewal Contract (Stage 2 Units) provided that "[t]here shall be no contract rent adjustments during the term of the Renewal Contract." Def. App. 200.

45. Effective on December 15, 2002, St. John's and the New York State Housing Trust Fund Corporation entered a HAP (Full) Interim Mark-to-Market Renewal Contract with respect to the 71 dwelling units in St. John's Phase I that were covered by Stage 3 of the St. John's HAP Contract (Renewal Contract (Stage 3 Units)). See Renewal Contract (Stage 3 Units), § 2 & Exhibit A, Def. App. 212, 220; Salmond Depo. 35(2-10), Def. App. 127.

46. Section 4b of the Renewal Contract (Stage 3 Units) provided that "[t]he Renewal Contract is entered pursuant to section 8 of the United States Housing Act of 1937 (42 U.S.C. 1437f), and section 514(c) of [MAHRA], as amended by section 531 of the Department of Veterans Affairs and Housing and Urban Development, and Independent Agencies Appropriations Act, 2000, Pub. L. No. 106-74, 113 Stat. 1109ff (1999)]." Def. App. 214. Sections 4c and 4d(1)

of the Renewal Contract (Stage 3 Units) provided:

> Previously, the Contract Administrator and the Owner had entered into a HAP Contract ("expiring contract") to make Section 8 housing assistance payments to the Owner for eligible families living in the Project. The term of the expiring contract will expire or terminate prior to the beginning of the term of the Renewal Contract.
>
> The purpose of the Renewal Contract is to renew the expiring contract for an additional term sufficient to facilitate the implementation of a mortgage restructuring and rental assistance sufficiency plan, as determined by HUD.

Def. App. 214. Section 5 of the Renewal Contract (Stage 3 Units) further provided:

> **a** Except as specifically modified by the Renewal Contract, all provisions of the Expiring Contract are renewed (to the extent such provisions are consistent with statutory requirements in effect at the beginning of the Renewal Contract term).
>
> **b** Any and all provisions of the Expiring Contract concerning any of the following subjects are not renewed, and shall not be applicable during the renewal term:
>
> * * * * *
>
> **(3)** Contract rents adjustments . . . .
>
> * * * * *
>
> **c** The Renewal Contract includes those provisions of the Expiring Contract that are renewed in accordance with this section 5.

Def. App. 215.

47. With respect to "initial contracts rents," section 6a of the Renewal Contract (Stage 3 Units) provided that, "[a]t the beginning of the Renewal Contract term, the contract rent for each bedroom size (number of bedrooms) shall be the initial contract rent amount listed in Exhibit A, which is attached to and, by this reference, made a part of the Renewal Contract." Def. App.

216. Exhibit A to the Renewal Contract (Stage 3 Units) reflected the following monthly contract rents:

| **Bedroom Size** | **Number of Units** | **Contract Rents** |
|---|---|---|
| 0-BR | 14 | $ 831 |
| 1-BR | 82 | $ 973 |
| 2-BR | 78 | $1,108 |
| 3-BR | 17 | $1,287 |

Def. App. 220.

48. Regarding "contract rent adjustments," section 6b of the Renewal Contract (Stage 3 Units) provided that "[t]here shall be no contract rent adjustments during the term of the Renewal Contract." Def. App. 216.

49. Effective on August 1, 2003, St. John's and the New York State Housing Trust Fund Corporation entered a HAP Watch List Renewal Contract for a term of 12 months with respect to the 191 dwelling units in St. John's Phase I that were covered by the St. John's HAP Contract. See Watch List Renewal Contract, § 2 & Exhibit A, Def. App. 228, 237; Salmond Depo. 36(5-16), Def. App. 127.

50. Section 4b of the Watch List Renewal Contract provided that "[t]he Renewal Contract is entered pursuant to section 8 of the United States Housing Act of 1937 (42 U.S.C. 1437f), and section 524 of the MAHRA." Def. App. 230.[7] Sections 4c and 4d(1) of the Watch List

---

[7] Section 524(a) of MAHRA, as amended by section 531 of the Department of Veterans Affairs and Housing and Urban Development, and Independent Agencies Appropriations Act, 2000, Pub. L. No. 106-74, 113 Stat. 1109ff (1999)]," provides, in relevant part: "[U]pon termination or expiration of a contract for project-based assistance under section 8 for a multifamily housing project . . . [HUD] shall, at the request of the owner of the project and to the extent sufficient amounts are made available in appropriation Acts, use amounts available for the re-
(continued...)

Renewal Contract provided:

> Previously, the Contract Administrator and the Owner had entered into a HAP Contract ("expiring contract") to make Section 8 housing assistance payments to the Owner for eligible families living in the Project. The term of the expiring contract will expire or terminate prior to the beginning of the term of the Renewal Contract.
>
> The purpose of the Renewal Contract is to renew the expiring contract for an additional term.

Def. App. 230. Section 5 of the Watch List Renewal Contract further provided:

> **a** Except as specifically modified by the Renewal Contract, all provisions of the Expiring Contract are renewed (to the extent such provisions are consistent with statutory requirements in effect at the beginning of the Renewal Contract term).
>
> **b** Any and all provisions of the Expiring Contract concerning any of the following subjects are not renewed, and shall not be applicable during the renewal term:
>
> * * * * *
>
> **(3)** Contract rents adjustments . . . .
>
> * * * * *
>
> **c** The Renewal Contract includes those provisions of the Expiring Contract that are renewed in accordance with this section 5.

Def. App. 232.

51. With respect to "initial contracts rents," section 6a of the Watch List Renewal Contract provided that, "[a]t the beginning of the Renewal Contract term, and until contract

---

[7](...continued)
newal of assistance under section 8 of [the United States Housing Act of 1937, as amended] to provide such assistance for the project. The assistance shall be provided under a contract having such terms and conditions as [HUD] considers appropriate, subject to the requirements of this section." 113 Stat. 1110.

rents for units in the Project are adjusted in accordance with section 6b, the contract rent for each bed-room size (number of bedrooms) shall be the initial contract rent amount listed in Exhibit A, which is attached to and, by this reference, made a part of the Renewal Contract." Def. App. 233. Exhibit A to the Watch List Renewal Contract reflected the following monthly contract rents:

| **Bedroom Size** | **Number of Units** | **Contract Rents** |
|---|---|---|
| 0-BR | 14 | $ 664 |
| 1-BR | 82 | $ 743 |
| 2-BR | 78 | $ 892 |
| 3-BR | 17 | $1,185 |

Def. App. 237.

52. Regarding "contract rent adjustments," section 6b of the Watch List Renewal Contract provided that "[t]here shall be no contract rent adjustments during the term of the Renewal Contract." Def. App. 233.

53. Effective on August 1, 2004, St. John's and the New York State Housing Trust Fund Corporation entered a HAP Basic Renewal Contract for a term of six months with respect to the 191 dwelling units in St. John's Phase I that were covered by the St. John's HAP Contract. See Basic Renewal Contract, § 2 & Exhibit A, Def. App. 245, 256; Salmond Depo. 36(20-25)-37(1-18), Def. App. 127.

54. Section 4b of the Basic Renewal Contract provided that "[t]he Renewal Contract is entered pursuant to section 8 of the United States Housing Act of 1937 (42 U.S.C. 1437f), and section 524 of the MAHRA." Def. App. 247. Sections 4c and 4d(1) of the Basic Renewal Contract provided:

> Previously, the Contract Administrator and the Owner had entered into a HAP Contract ("expiring contract") to make Section 8 housing assistance payments to the Owner for eligible families living in the Project. The term of the expiring contract will expire prior to the beginning of the term of the Renewal Contract.
>
> The purpose of the Renewal Contract is to renew the expiring contract for an additional term.

Def. App. 247-248. Section 5 of the Basic Renewal Contract further provided:

> **a** Except as specifically modified by the Renewal Contract, all provisions of the Expiring Contract are renewed (to the extent such provisions are consistent with statutory requirements in effect at the beginning of the Renewal Contract term).
>
> **b** Any and all provisions of the Expiring Contract concerning any of the following subjects are not renewed, and shall not be applicable during the renewal term:
>
> * * * * *
>
> **(3)** Contract rents adjustments . . . .
>
> * * * * *
>
> **c** The Renewal Contract includes those provisions of the Expiring Contract that are renewed in accordance with this section 5.

Def. App. 248.

55. With respect to "initial contracts rents," section 6a of the Basic Renewal Contract provided that, "[a]t the beginning of the Renewal Contract term, and until contract rents for units in the Project are adjusted in accordance with section 6b, the contract rent for each bedroom size (number of bedrooms) shall be the initial contract rent amount listed in Exhibit A of the Renewal Contract." Def. App. 249. Exhibit A to the Basic Renewal Contract reflected the following monthly contract rents:

| **Bedroom Size** | **Number of Units** | **Contract Rents** |
|---|---|---|
| 0-BR | 14 | $ 664 |
| 1-BR | 82 | $ 743 |
| 2-BR | 78 | $ 892 |
| 3-BR | 17 | $1,185 |

Def. App. 256.

56. Regarding "contract rent adjustments," section 6b of the Basic Renewal Contract provided, in part:

**Contract rent adjustments**

**(1) OCAF[[8]] or Budget-Based Rent Adjustments**

**(a)** Except as provided in section 6b(2) below (concerning adjustments at each Fifth Year Anniversary and discretionary comparability adjustments within each five-year term), during the term of the Renewal Contract the Contract Administrator shall annually, on the anniversary date of the Renewal Contract, adjust the amounts of the monthly contract rents in accordance with HUD requirements by either of the following methods (as determined by the Contract Administrator in accordance with HUD requirements):

**(i)** Using an OCAF; or

**(ii)** At the request of the owner, based on the budget for the Project, as approved by the Contract Administrator in accordance with HUD requirements.

* * * * * *

**(4) No other adjustments**

Except for contract rent adjustments in accordance with paragraph 5b, there shall not be any other adjustments of the contract rents during the term of the renewal Contract. Special adjustments shall not be

[8] "OCAF" means "[a]n operating cost adjustment factor established by HUD." Basic Renewal Contract, § 3 ("Definitions"), Def. App. 246.

granted.

Def. App. 249, 252.

57. Effective on August 6, 2004, St. John's and the New York State Housing Trust Fund Corporation entered a HAP Renewal Contract for Mark-Up-To-Market Project for a term of five years with respect to the 191 dwelling units in St. John's Phase I that were covered by the St. John's HAP Contract. See Renewal Contract for Mark-Up-To-Market Project, § 2 & Exhibit A, Def. App. 259, 267; Salmond Depo. 37(23-25)-38(1-14), Def. App. 127-128.

58. Section 3b of the Renewal Contract for Mark-Up-To-Market Project provides that "[t]he Renewal Contract is entered pursuant to section 8 of the United States Housing Act of 1937 . . . and section 524(a) and (c) of [MAHRA, as amended]." Def. App. 260.[9] Sections 3c and 3d of the Renewal Contract for Mark-Up-To-Market Project provides:

> Previously, the owner entered into a Housing Assistance Payments Contract ("Expiring Contract") with HUD or a PHA to make Section 8 housing assistance payments to the Owner for eligible families living in the Project. The term of the Expiring Contract has or will expire prior to the beginning of the term of the Renewal Contract.
>
> The purpose of the Renewal Contract is to renew the expiring contract for an additional term.

Def. App. 260. Section 4 of the Renewal Contract for Mark-Up-To-Market Project further provides:

---

[9] Section 524(a)(3) of MAHRA, as amended by section 531 of the Department of Veterans Affairs and Housing and Urban Development, and Independent Agencies Appropriations Act, 2000, Pub. L. No. 106-74, 113 Stat. 1109ff (1999)], provides, with respect to the contract term for "mark-up-to-market contracts:" "In the case of an expiring or terminating contract that has rent levels less than comparable market rents for the market area, if the rent levels under the renewal contract under this section are equal to comparable market rents for the market area, the contract shall have a term of not less than 5 years, subject to the availability of sufficient amounts in appropriations Acts." 113 Stat. 1110.

> **a** Except as specifically modified by the Renewal Contract, all provisions of the Expiring Contract are renewed (to the extent such provisions are consistent with statutory requirements in effect at the beginning of the Renewal Contract term).
>
> **b** Any provisions of the Expiring Contract concerning any of the following subjects are not renewed, and shall not be applicable during the renewal term:
>
> * * * * *
>
> **(3)** Contract rents adjustments . . . .
>
> * * * * *
>
> **c** The Renewal Contract includes those provisions of the Expiring Contract that are renewed in accordance with this section.

Def. App. 260-261.

59. With respect to "initial contracts rents," section 5a of the Renewal Contract for Mark-Up-To-Market Project provides:

> At the beginning of the Renewal Contract term, and until contract rents for units in the project are adjusted in accordance with section 5b, the contract rent for each bedroom size (number of bedrooms) shall be the initial contract rent amount listed in Exhibit A, which is attached to and made a part of the Renewal Contract. The initial contract rent amounts listed in Exhibit A have been increased to market levels under the HUD Mark-Up-To-Market Option.

Def. App. 261. Exhibit A to the Renewal Contract for Mark-Up-To-Market Project reflects the following monthly contract rents:

| **Bedroom Size** | **Number of Units** | **Contract Rents** |
|---|---|---|
| 0-BR | 14 | $ 700 |
| 1-BR | 82 | $ 900 |
| 2-BR | 78 | $1,150 |

| | | |
|---|---|---|
| 3-BR | 17 | $1,300 |

Def. App. 267.

60. Regarding "contract rent adjustments," section 5b(1) of the Renewal Contract for Mark-Up-To-Market Project provides:

**Contract rent adjustments**

**(1) OCAF Adjustment**

**(a)** Except for adjustment of the contract rents to comparable market levels at the expiration of each 5-year period (as provided in paragraph 5b(2) of this section) ("fifth year adjustment"), during the term of the Renewal Contract the contract administrator shall annually, on the anniversary of the Renewal Contract, adjust the amounts of the monthly contract rents in accordance with HUD requirements, using an operating cost adjustment factor (OCAF) established by HUD. Such adjustments by use of the OCAF shall not result in a negative adjustment (decrease) of the contract rents. The OCAF shall not be used for a fifth year adjustment.[10/]

* * * * *

**(4) No other adjustments**

Except for contract rent adjustments in accordance with paragraph 5b, there shall not be any other adjustments of the contract rents during the term of the Renewal Contract. Special adjustments shall not

[10] Section 524(c) of MAHRA, as amended by section 531 of the Departments of Veterans Affairs and Housing and Urban Development, and Independent Agencies Appropriations Act, 2000, Pub. L. No. 106-74, 113 Stat. 1109ff (1999)], provides, in pertinent part, with respect to "rent adjustments after renewal of contract:" "After the initial renewal of a contract for assistance under section 8 of the United States Housing Act of 1937 pursuant to subsection (a), (b)(1), or (e)(2) [of section 524 of MAHRA], [HUD] shall annually adjust the rents using an operating cost adjustment factor established by [HUD] (which shall not result in a negative adjustment) . . . ." 113 Stat. 1113.

be granted.

Def. App. 261, 263.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/John E. Kosloske
JOHN E. KOSLOSKE
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., Room 8012
Washington, D.C. 20530
Tele: (202) 307-0282
(FAX)(202) 514-8624

Attorneys for Defendant

OF COUNSEL:

C. ALLEN VILLAFUERTE
Trial Attorney
Office of General Counsel
Department of Housing
and Urban Development
Washington, DC

JULY 29, 2005