Units) = $________

$__________ for units with no turnover X ______ (No. of Units) = $________

Add the two numbers which you just calculated to derive total GRP:

$__________ + $__________ = $__________
Turnover GRP    No Turnover GRP    Total GRP

Divide Total GRP by the number of units for this unit type to obtain the new rent level for all _____BR units.

$_______ Total GRP divided by ______ units = $______
New Rent Level

STEP 5: The new rent level for all ______ BR units is approved at $_________.

2

APPENDIX 3

SAMPLE FORMAT FOR
OWNER'S CERTIFICATION OF COMPLIANCE WITH THE REQUIREMENTS OF NOTICE: Annual Adjustment Factor Rent Increase Requirements Pursuant to 42 U.S.C. 1437f(c)(2)(A).

Property Name:_________________________________________

FHA Number:____________________________________________

Section 8 Contract Number:_____________________________

The attached represents a request for a rent increase for the aforementioned property and the following unit type(s) (e.g. 1 BR, 2BR/2BA, 3 BR, etc.):

I certify as the owner of the property (or the agent empowered to act on behalf of the owner) that all of the following items are true:

- o Preparation of all copies of form HUD-92273 were completed by a state certified, general appraiser who does NOT have an identity of interest relationship with the project.

- o If project funds were used to pay for the completion of form(s) HUD-92273, I certify that I am in compliance with the Contracting Guidelines set forth in Paragraph 6.50 of Handbook 4381.5, REV-2.

- o If a figure is submitted for the initial difference, this figure is the same dollar difference which existed between the original comparable used in underwriting (or the FMRS) and the contract rents at the time of initial occupancy. If no initial difference is submitted, then I authorize HUD to use 10% of the initial Section 8 contract rent for each unit type as the initial difference.

- o The figures submitted with this request regarding the number of units in which turnover has occurred since the last HAP anniversary date are complete and accurate.

Under penalties and provisions of Title 18, United States Cost,

Chapter 47, Section 1001, the statements contained in this request have been examined by me and to the best of my knowledge and belief are true, correct and complete.

APPENDIX 4
OWNER
SAMPLE FORMAT FOR REPORTING UNIT TURNOVER

This form or any other format may be used for reporting the number of units in which turnover occurred since the last HAP contract anniversary date. This information need only be submitted for the unit types in which a rent increase is being requested under this Notice.

This information reflects the number of units in which turnover has occurred since __/__/__ (HAP Anniversary Date)

Unit Type ______ Total Number of Units______

______ Units have incurred turnover

______ Units did not incur turnover

Unit Type ______ Total Number of Units______

______ Units have incurred turnover

______ Units did not incur turnover

Unit Type ______ Total Number of Units______

______ Units have incurred turnover

______ Units did not incur turnover

Unit Type ______ Total Number of Units______

______ Units have incurred turnover

______ Units did not incur turnover

Unit Type ______ Total Number of Units______

______ Units have incurred turnover

______ Units did not incur turnover

________________
Owner/Agent

APPENDIX V
Estimate of Market Rent by Comparison
form HUD-92273 (3/95)

APPENDIX 5 CONTAINS FORM HUD-82273, ESTIMATES OF MARKET RENT BY COMPARISON AND CAN BE FOUND ON HUDWEB AND THE HUD INTERNET "FORMS WAREHOUSE" ON THE WWW.

---

[Search] [Prev List] [Doc List] [Next List] [First Doc] [Prev Doc] [Curr Doc] [Next Doc] [Last Doc] [Top] [Help]

# *ANNUAL ADJUSTMENT FACTORS (AAF)*

*Directive Number:* **98-3**

U.S. Department of Housing and Urban Development
Office of Housing

Special Attention of:
State Coordinators; Director of Housing; Director, Multifamily Housing Division; Multifamily Asset Management and Development Branch Chiefs; Contract Administrators; Owners and Managers of Projects with Expiring Section 8 Contracts

Notice H 98-3 (HUD)

Issued: 23 January 1998
Expires: 31 January 1999

Cross References:

Subject: ANNUAL ADJUSTMENT FACTORS (AAF)

This notice announces the extension of statutory rent adjustment procedures for Section 8 projects that use the HUD-published Annual Adjustment Factors (AAF) for adjustment of the contract rent.

These procedures concern (1) the application of comparability to rent adjustment for Section 8 new construction and substantial rehabilitation projects; and (2) rent adjustment for non-turnover Section 8 units (for Section 8 new construction and substantial rehabilitation projects, loan management (LMSA) projects, property disposition (PD) projects, and renewal or extension projects). The procedures do not apply to rent adjustments for the Section 8 Moderate Rehabilitation Program or the Project-based Certificate (PBC) program.

The Section 8 rent adjustment requirements were originally enacted in the HUD appropriation for Fiscal Year 1995, and were subsequently extended through FY 1997 (amendments of 42 U.S.C. 1437f (c)(2)(A)). HUD issued a series of notices implementing the statutory adjustment requirements through FY 1997 (H 95-12 , H 9714). The Congress has enacted legislation that extends the Section 8 adjustment requirements beyond 1997, as permanent law. The HUD appropriation for FY 98 provides that the amendments of Section 1437f(c)(2)(A) are effective through FY 1998 (P.L. 10565, 111 Stat. 1344, 1364, approved October 27,1997); Administrative Provisions Section 201(c)(1) and (c)(2)). The Balanced Budget Act of 1997 provides that these amendments are in effect through FY 1999 and thereafter (P.L. 105-33, Section 2003 and 2004, 111 Stat. 251, approved August 5, 1997).

HMMM: Distribution: W-3-1, R-1,R-2,R-3-1 (H) (RC) R-3-2,R-3-3,R-6,R-6-2,R-7, R-7-2,R-8

2

This Notice applies to Section 8 rent adjustments for HAP anniversary dates from October 1, 1997 until further notice by HUD.

Since the law is now permanent, HUD hereby extends indefinitely, until further notice, Housing Notice 97-14 , which describes procedures for implementing statutory Section 8 adjustment requirements concerning comparability for Section 8 new construction and substantial rehabilitation

projects, and requiring reduced adjustments for non turnover units.

Notice H-97-14 shall apply to the calculation of rent adjustments for Section 8 contract anniversaries on and after October 1, 1997 (as well as adjustments prior to that date). The adjustments for a HAP contract anniversary date shall be calculated using the AAF factors published in the Federal Register (Table 1 or Table 2) in effect at the HAP contract anniversary.

If you have any questions regarding this notice, please contact Peter Giaquinto at (202) 708-4162, or your desk officer in the Operations Division.

Nicolas P. Retsinas
Assistant Secretary for Housing-
Federal Housing Commissioner

---

[Search] [Prev List] [Doc List] [Next List] [First Doc] [Prev Doc] [Curr Doc] [Next Doc] [Last Doc] [Top] [Help]

# *Reinstatement and Extension of Notice H 98-03, Annual Adjustment Factors (AAF)*

---

*Directive Number:* **99-17**

---

Click Here or type Alt-k to Download MS Word version of Notice

**U.S. Department of Housing and Urban Development**
**Office of Housing**

**Special Attention of:**

All Multifamily Hub Directors
All Multifamily Program Center
Directors, All Project Managers
Contract Administrators, Owners and Managers
of Covered Projects

**Notice** H 99-17 (HUD)

**Issued:** July 8, 1999
**Expires:** July 31, 2000

Cross References:

Subject: Reinstatement and Extension of Notice H 98-03, Annual Adjustment Factors (AAF)

Notice H 98-03 , issued January 23, 1998, provides instructions for statutory rent adjustment procedures for Section 8 projects that use the HUD-published Annual Adjustment Factors (AAF) for adjustment of the contract rent. The Notice extended and made permanent procedures outlined in HUD Notice H 97-14 , issued March 17, 1997.

This Notice reinstates and extends HUD Notice H 98-03, Annual Adjustment Factors (AAF).

William C. Apgar
Assistant Secretary for Housing-
Federal Housing Commissioner

HM: Distribution: W-3-1, R-1, R-2, R-3-1(H)(RC), R-3-2, R-3-3, R-6, R-6-2, R-7, R-7-2, R-8

---

[Search] [Prev List] [Doc List] [Next List] [First Doc] [Prev Doc] [Curr Doc] [Next Doc] [Last Doc] [Bottom] [Help] [Text Only]

# *Reinstatement and Extension of HUD Notice H 99-17, Annual Adjustment Factors (AAF)*

---

*Directive Number:* **00-14**

---

Click Here or type Alt-k to Download MS Word version of Notice

**U.S. Department of Housing and Urban Development**
**Office of Housing**

**Special Attention of:** | **Notice** H 00-14

All Multifamily Hub Directors
All Multifamily Program Center
Directors, All Project Managers
Contract Administrators, Owners and Managers
of Covered Projects

**Issued:** August 9, 2000
**Expires:** August 9, 2001
Cross References:

Subject: Reinstatement and Extension of HUD Notice H 99-17, Annual Adjustment Factors (AAF)

Notice H 99-17 , issued July 8, 1999, extended instructions provided in HUD Notice H 98-3 . HUD Notice H 98-3 extended and made permanent instructions for statutory rent adjustment procedures for Section 8 projects that use HUD-published Annual Adjustment Factors (AAF) for adjustment of the contract rent as outlined in HUD Notice H 97-14 , issued March 17, 1997.

This Notice reinstates and extends HUD Notice H 99-17, Annual Adjustment Factors (AAF).

William C. Apgar
Assistant Secretary for Housing-
Federal Housing Commissioner

Distribution: W-3-1

---

[Search] [Prev List] [Doc List] [Next List] [First Doc] [Prev Doc] [Curr Doc] [Next Doc] [Last Doc] [Top] [Help]

[Search] [Prev List] [Doc List] [Next List] [First Doc] [Prev Doc] [Curr Doc] [Next Doc] [Last Doc]
[Bottom] [Help] [Text Only]

# *Section 8 Project-Based Rent Adjustments Using the Annual Adjustment Factor (AAF)*

*Directive Number:* **02-10**

Click Here or type Alt-x to Download Self-Extracting file of Notice and Excel Attachme

Click Here or type Alt-k to Download MS Word version of this Notice

U.S. Department of Housing and Urban Development
Office of Housing

Special Attention of: **Notice: H 2002-10**
All Regional Directors Issued: May 17, 2002
All Multifamily Hub Directors Expires: May 31, 2003
All Multifamily Program Center Directors

All Contract Administrators Cross References:
All Owners and Managements Agents of Section 8 Properties

**Subject:** Section 8 Project-Based Rent Adjustments Using the Annual Adjustment Factor (AAF)

**PURPOSE:**

This Notice describes updated procedures for annual adjustment of pre-renewal contract rent for Section 8 projects where rent is adjusted using the HUD-published Annual Adjustment Factor. This Notice also describes the procedures for applying statutory comparability requirements in AAF adjustments for Section 8 new construction and substantial rehabilitation projects, including updated guidance concerning Rent Comparability Studies (RCS). The procedures implement statutory requirements and they will not be waived.

NOTICE APPLICABILITY:

What units are covered under this Notice?

This Notice applies to AAF adjustments of contract rent for a Section 8 project-based HAP contract that is assisted under the Section 8 new construction, substantial rehabilitation, loan management and property disposition programs.

This Notice does NOT apply to HAP contracts that renewed under the Multifamily Assisted Housing Reform and Affordability Act of 1997 (MAHRA), after expiration or termination of the original HAP contract term.

This Notice does NOT apply to budget-based adjustments of contract rent.

This Notice does NOT apply to the Section 8 Voucher Program, the Moderate Rehabilitation program (including the Moderate Rehabilitation Single Room Occupancy (SRO) Program), or to

Section 8 Project-Based assistance under the Project-Based Certificate or Project-Based Voucher Programs.

WHEN IS THIS NOTICE EFFECTIVE?

The procedures in this Notice apply to rent adjustments for HAP contract anniversaries that fall on or after the publication date of this Notice.

BACKGROUND:

This notice specifies procedures for contract rent adjustments using the HUD-published AAF in accordance with 42 U.S.C. 1437f (□ 8(c)(2)(A) of the United States Housing Act of 1937).

For Section 8 new construction and substantial rehabilitation units, the AAF-based rent adjustment is subject to rent comparability if the pre-adjustment gross rent (contract rent plus any allowance for tenant-paid utilities) is above the HUD-published fair market rent (FMR) for the area in which the project is located. The owner must submit a RCS to support any increase in the contract rent by application of the AAF.

Each year, HUD publishes two separate AAF tables in the Federal Register (24 CFR Part 888, Schedule C, Tables I and II). As required by law, each Table II AAF is 0.01 less than the corresponding Table I AAF for the same area and bedroom size. In general, Table I AAFs are used to adjust contract rent for units occupied by a new family since the last contract anniversary (turnover units), and Table II AAFs are used to adjust contract rent for non-turnover units. The FY 2002 AAFs were published in the Federal Register on Monday November 26, 2001.

Part I of this Notice describes the procedures for adjusting contract rent of Section 8 new construction and substantial rehabilitation units for which the pre-adjustment contract rent exceeds the FMR.

Part II of this Notice describes the procedures for adjusting contract rent of:
* All other Section 8 new construction and substantial rehabilitation units (i.e., units not covered by Part I);
* All Section 8 loan management (LM) and property disposition (PD) units where rents are adjusted by application of the AAF (but not for units for which HUD elects a budget-based adjustment of the contract rent).

This Notice includes the following appendices:
1. Part One Adjustment Worksheet
2. Part Two Adjustment Worksheet
3. Sample Owner's Certification Form
4. Sample Format for Reporting Unit Turnover
5. Owner Certification for RCS Adjustment
6. HUD 92273-S8 Rent Comparability Study Form (RCS)

WHEN AND HOW AN OWNER REQUESTS AN AAF RENT ADJUSTMENT:

Owner's request for AAF Adjustment:

The contract rent shall not be increased unless the owner has timely submitted a written request for an AAF rent adjustment to the Contract Administrator (HUD/CA or Public Housing Agency). The owner's request must include all of the required submissions to support the adjustment. The request must be in the form and manner required by HUD, as described in this Notice. If the owner is required to submit an RCS to support the rent

adjustment, the owner's submission must include the required comparability analysis.

When the Rent Adjustment is Effective:

An AAF contract rent increase is effective for contract months commencing on the later of:

(1) The annual contract anniversary date for which the adjustment is requested, or

(2) The first contract month beginning at least two months after the owner has submitted all required materials to the CA (but no later than two months before the next annual contract anniversary date).

The following principles apply:

* When the Owner's request with all required materials is submitted within the two-month deadline:

If the owner's request for the annual rent adjustment (with all required materials) is submitted at least two months before the annual contract anniversary date for which the adjustment is requested ("two-month deadline"), any increase is effective for the contract months beginning on the annual contract anniversary date. Note: The increased rent is the base for any special adjustment, and for the next annual adjustment.

* When the Owner's request is submitted late ("extended deadline"):

If the owner's request for the annual rent adjustment is submitted after the two-month deadline, but not after the end of the twelve-month period commencing on the two-month deadline date ("extended deadline"), any increase is effective only for contract months beginning at least two months after submission of the owner's request. The contract rent for prior contract months will not be increased, however, the increased rent is the base for any special rent adjustment and for the next annual adjustment.

* When the Owner's request is not submitted by the extended deadline:

If the owner's request for the annual rent adjustment is submitted after the extended deadline, the owner's request is not accepted, and the contract rent is not increased.

Note: A special rent adjustment is never approved to make up any loss of contract rent where rent is not increased at the annual anniversary date because the owner failed to submit their request by the two-month deadline.

PART 1: NEW CONSTRUCTION AND SUBSTANTIAL REHABILITATION CONTRACTS WHERE PRE-ADJUSTMENT GROSS RENTS ARE ABOVE THE PUBLISHED FMR

When comparability applies:

Comparability only applies if the pre-adjustment gross rents for new construction or substantial rehabilitation contract units are above the published FMR for the unit size in the area where the project is located. Comparability does not apply to the determination of the annual adjustment for project-based units

assisted under the loan management or property disposition programs.

"Gross rent" is the sum of the contract rent for each unit size, plus any applicable allowance for tenant-paid utilities. The calculation of gross rent is based on the pre-adjustment gross rent for the contract month before the annual contract anniversary, including any special adjustment included in the pre-anniversary contract rent, but not including any additional adjustment by application of the AAF at the annual anniversary.

When an Owner Must Submit a RCS:

If comparability applies, the owner must submit a RCS to the CA. The RCS must be submitted with the owner's request for an AAF rent increase. The contract rent will not be increased unless the owner has submitted the RCS in the form and manner required by HUD.

How to Determine Comparability:
On January 19, 2001, HUD issued the Section 8 Renewal Policy Guide. Chapter Nine of the Guide contains detailed instructions for conducting and reporting results of the RCS. The RCS instructions contained in the Section 8 User Guide must be used in preparing the RCS for AAF rent adjustments. The Section 8 User Guide is available at www.hudclips.org

The RCS must include the comparability analysis for all unit sizes assisted under the HAP contract (0 bedroom (BR), 1 BR, 2 BR, etc;) and must be submitted on form HUD-92273-S8 (7/00), Estimates of Market Rent by Comparison (Appendix 6 of this Notice).

Adjusting the RCS:

Some owners of projects that have not yet renewed under MAHRA and who utilize the AAF as the method of rent adjustment have requested that HUD permit the five-year RCS that is used for MAHRA contracts to be used for AAF properties. Unfortunately, the Department is unable to approve such a request.

However, in an effort to reduce the costs associated with conducting comprehensive annual RCS's, the Department has determined that owners of AAF properties may submit an "updated RCS" rather than a new RCS. The updated RCS may be used for a period of four years (the original submission plus four (4) updates). A certified appraiser must prepare the updated RCS. HUD anticipates that the costs associated with an updated RCS should be considerably less than a new study (see Appendix 5).

In addition to annual rent adjustments, owners are permitted to request HUD approval of justified "special rent adjustments" during the contract year. Eligible expenses for special adjustments are defined in HUD Handbook 4350.1, Chapter 34. Special rent adjustments must NOT result in contract rents that exceed the comparable market rent.

HOW TO CALCULATE THE PART I ANNUAL ADJUSTMENT:

The CA will apply the published AAF in Table I and will ask the following question for each unit type: "Will the resulting rent still be equal to or lower than the comparable rent?" (NOTE: Throughout Part I of this Notice, when applying the published AAF, the factor of 1.000 must be used in all cases where the published factor is below 1.000.)

A. If yes, then the published AAF in Table I is applied to adjust contract rent for units in which turnover occurred since the last HAP anniversary date (see Appendix 4). The published AAF in Table II is used to adjust contract rents for units in which turnover has not occurred.

B. If no (the pre-adjustment contract rent multiplied by the Table I AAF exceeds the comparable market rent), then the CA must:

1. Determine the adjusted comparable rent (sum of the comparable rent plus any "initial difference" (see below);

2. Multiply the pre-adjustment contract rent times the Table I AAF;

3. If the amount calculated in Step 2 above is equal to or less than the adjusted comparable rent, then calculate the adjusted contract rent in accordance with paragraph A above.

4. If the adjusted comparable rent is less than the amount calculated in Step 2 above, then calculate the adjusted contract rent in accordance with paragraph C below.

C. If the adjusted comparable rent is less than the amount calculated in Step 2 (pre-adjustment contract rent times the Table I AAF), then the adjusted comparable rent is the new contract rent, and by statute, will be applied to all units regardless of turnover.

When the adjusted contract rent is determined, the owner must be notified of the new contract rent. The Field Office Worksheet (Appendices 1 and 2) is used to determine the new contract rent level and should be attached to all correspondence informing the owner of the new rent level.

How to determine adjusted comparable rent:

The "adjusted comparable rent" is the sum of the comparable rent (as documented by the rent comparability study), plus the initial difference. The initial difference is the dollar amount by which the initial Section 8 contract rent exceeded the original comparable rent (or the FMR if originally used instead of a comparable).

The owner must submit adequate evidence of the initial difference. If the owner does not submit adequate evidence of the amount of the initial difference to the contract administrator and if the initial difference is not documented in the project file (generally maintained by the local HUD Office), then the CA must use 10% of the initial Section 8 contract rent for that unit, as a substitute for the initial difference.

For Financial Adjustment Factor (FAF) properties, the initial difference should also include the original dollar figure of the FAF, if the FAF has not been removed as a part of a refinancing transaction.

Once the initial difference is determined for each unit type, the initial difference is added to the comparable rent for each unit type to determine the Adjusted Comparable Rent.

How to determine adjusted rent if an owner does not request a rent increase:

If an owner does not request an increase or fails to submit a request based on the procedures in this Notice, then the adjusted contract rents are the same as the pre-adjustment contract rents. Rent decreases in Section 8 new construction and substantial rehabilitation projects, are specifically prohibited by law, unless the project has been refinanced and the refinancing reduces owner's periodic payments.

EXAMPLES OF PART I IMPLEMENTATTON:

A New Construction Project with 100% Section 8 adjusted by the AAF. The property has 100 units, 20 have turned over since the last anniversary date, and 10 have remained vacant since the last anniversary date. The rents at this property for 1 BR units are $400 and $500 for 2 BR units. The initial Section 8 contract rents on this property in 1979 were $210 for 1 BR units and $260 for 2 BR Units. Published FMRs for this area are $375 for a 1 BR and $475 for a 2 BR. The published AAF in Table I (AAF for Turnover Units) is 1.054 and the published AAF in Table II (AAF for non-turnover Units) is 1.044.

Scenario 1: Project is eligible to receive the AAF based on the comparable rents.

The owner submits a form HUD-92273-S8 for the 1 BR rents and a form HUD-92273-S8 for 2 BR rents, both completed in accordance with instructions contained in Chapter Nine of the Section 8 User Guide. The Estimated Market Rents on these forms are $410 for a 1 BR and $510 for a 2 BR. HUD receives these forms 60 days prior to the contract anniversary date and begins processing for a thirty-day turnaround.

Applying the Table I AAF to the current rents of $400 and $500 would result in new rent levels of $422 and $527, both above the rent levels that the comparable produced. The owner did not submit evidence of the initial difference, so the PM/CA would use 10% of the initial Section 8 contract rent as a substitute for the initial difference. For 1 BR units, this figure would be $21 (10% of $210) and for 2 BR units, this figure would be $26 (10% of $260). These figures added to comparable rents of $410 and $510 would produce adjusted comparable rent levels of $431 for 1 BR units and $536 for 2 BR units.

Since these rent levels are both above the rent levels produced by the Table I AAF of $422 and $527, respectively, then the maximum rent levels that would be permitted are the rents produced by application of the appropriate AAF published in the Federal Register.

Since adjustment by the AAF is permitted based on the comparable rents plus the initial difference, then the 1 BR rent levels would be $422 for the units in which turnover occurred and $418 for the units in which turnover has not occurred (including any units which were vacant at the time of the last annual adjustment). In deriving the new GRP for this unit type, $422 would be multiplied by 20 (turnover units) and $418 would be multiplied by 80 (non-turnover units) to produce a monthly GRP of $8,440 (for turnover units) plus $33,440 (for non-turnover units) which equals $41,880, divided by 100 units would yield a rent of $419 for all one bedroom units. The same calculation would then be performed for the 2 BR units.

Scenario 2: The Project is only eligible for the comparable rents.

The owner submits a form HUD-92273-S8 for the 1 BR rents and a form HUD-92273-S8 for 2 BR rents, both completed in accordance with instructions contained in Chapter Nine of the Section 8 User Guide. The Estimated Market Rent on these forms are $400 for a 1 BR and $500 for a 2 BR. HUD receives these forms 60 days prior to the anniversary date and begins processing for a thirty-day turnaround.

Applying the Table I AAF to the current rents of $400 and $500 would result in new rent levels of $422 and $527, both above the rent levels that the comparable produced. The owner did not submit evidence of the initial difference, so the PM/CA would use 10% of the initial Section 8 contract rent as a substitute for the initial difference. For 1 BR units this figure would be $21 (10% of $210) and for 2 BR units, this figure would be $26 (10% of $260). These figures added to comparable rents would produce adjusted comparable rent levels of $421 for 1 BR units and $526 for 2 BR units. Since these rent levels are both below the rent levels produced by the AAF in Table I of $422 and $527, respectively, then the comparable rent plus the initial difference would be the maximum permissible rents HUD could approve.

PART 2: NEW CONSTRUCTION AND SUBSTANTIAL REHABILITATION CONTRACTS WHERE THE PRE-ADJUSTMENT GROSS RENT FOR THE SPECIFIC UNIT TYPE DOES NOT EXCEED THE CURRENT PUBLISHED APPLICABLE EXISTING FMR; AND ALL SECTION 8 LMSA AND PD CONTRACTS IN WHICH THE METHOD OF RENT ADJUSTMENT IS THE ANNUAL ADJUSTMENT FACTOR.

Where the rent level for a specific unit type falls under one of the conditions stated above, the contract administrator applies the appropriate AAF to the pre-adjustment contract rent for the unit type.

For units in which turnover has occurred since the last HAP anniversary date, the AAF in Table I will be applied. For units in which turnover did NOT occur since the last HAP anniversary date, the AAF in Table II will be applied.

The owner must submit a statement specifying the number of contract units in which turnover occurred since the last HAP contract anniversary date.

Special Rent Adjustments and Rent Comparability Studies:

HUD Handbook 4350.1, Chapter 34, Section 3, provides instructions for approving and calculating special rent adjustments for AAF units. At its discretion, HUD may approve special rent adjustments to cover a substantial and general increase in real property taxes, assessments, utility rates and hazard insurance increases, where the increased cost is not sufficiently covered by the annual AAF adjustment.

HUD may approve a special rent adjustment that increases contract rents up to the comparable market rent, but in no case can the special rent adjustment increase rents above the comparable rent for unassisted units in the local housing market. Since special rent adjustments are provided at HUD's discretion, owners must always submit a RCS when requesting a special rent adjustment.

Prohibition of rent reduction for NC & SR projects:

If an owner does not request an increase or fails to submit a request for adjustment (for new construction or substantial

rehabilitation projects) in accordance with this Notice, then the contract rents will remain the same as the pre-adjustment contract rents (not including any prior special adjustment).

Rent reductions in Section 8 new construction and substantial rehabilitation are specifically prohibited by law, unless the project has been refinanced and the refinancing reduces the owner's periodic payments. The annual adjustment for new construction or substantial rehabilitation units shall not result in a decrease of the pre-adjustment contract rent (not including prior special adjustments).

Field Office Worksheets:

THE FIELD OFFICE WORKSHEETS found at Appendices 1 and 2 of this Notice must be used for both Part 1 and Part II rent adjustments. The worksheets must be used to calculate the rents, as they are based in statute. A worksheet should be completed for each unit type.

OWNER SUBMISSION REQUIREMENTS FOR PART I:

Where rent levels for a specific unit type, in a substantial rehabilitation or new construction contract, exceed the existing FMR for that specific unit type, then the owner must submit the following items in order to be eligible to receive a rent increase for that unit type:

* Form HUD-92273-S8 (7/00), Estimates of Market Rent by Comparison, completed in accordance with the instructions outlined in Chapter Nine of the Section 8 User Guide. (See Appendix 6)

* A copy of the owner certification (Appendix 3) (Only one certification per project is necessary regardless of the number of unit types for which a rent increase is requested).

* The number of units in which turnover occurred since the last HAP contract anniversary, FOR EACH UNIT TYPE (a sample format for reporting can be found at Appendix 4).

NOTE: Appendices 3 and 4 provide sample formats in which information may be reported or certification language is presented. These formats may be modified so long as the certification language contained in Appendix 3 is presented exactly as printed and the information required by Appendix 4 is contained in the modified format.

Optional Information:

* Evidence of the Initial Difference which existed between the original contract rents and underwriting comparable, or the FMRs at the time of initial underwriting, including any FAF which was a part of the original rents. (If this figure, and the documentation to support this figure, is not submitted, then HUD will use 10% of the initial Section 8 contract rent as a substitute for the initial difference)

* Adjusted RCS.

OWNER SUBMISSION REQUIREMENTS FOR PART II:

Where the rent levels for a specific unit type, in a substantial rehabilitation or new construction contract, DOES NOT exceed the existing FMR for that specific unit type, and for all LMSA and PD

Section 8 contracts where rents are adjusted by the AAF, the owner must submit the following items in order to be eligible to receive a rent increase for that unit type:

* The number of units in which turnover occurred since the last HAP contract anniversary, FOR EACH UNIT TYPE (a sample format for reporting is attached in Appendix 4).

OWNERS OF SUBSTANTIAL REHABILITATION AND NEW CONSTRUCTION PROPERTIES WITH BOTH PART I AND PART II UNIT TYPES

Unit types are treated individually. In some situations, new construction and substantial rehabilitation properties may have some unit types that meet the requirements of Part I and other unit types that meet the requirements of Part II When an owner encounters this condition at a property, they are required to submit the information for each unit type based on the section of this Notice that the rent increase will be processed under.

For example, a new construction property where the 1 BR rents exceed the current FMRs, but the 2 BR rents do not. In requesting a rent increase, the owner should detail in the request to the CA that the 1 BR units exceed the published FMR and thus the information submitted is that required for a Part I request. However, the 2 BR units do not exceed the published FMR and therefore the information submitted for the BR units is that required for a Part II request. The units that are above the FMR must complete a RCS, while units below FMR do not need a RCS. This policy is unit, not project specific.

If you have any further questions regarding this notice, please contact Peter Giaquinto at (202) 708-2866, or your Section 8 Help Desk Officer.

John C. Weicher

Assistant Secretary for Housing -
Federal Housing Commissioner

APPENDIX 1

PART I ADJUSTMENTS WORKSHEET

CONTRACT ADMINISTRATOR WORKSHEET FOR PROCESSING RENT INCREASES FOR AAF RENT ADJUSTMENTS FOR NEW CONSTRUCTION AND SUBSTANTIAL REHABILITATION UNIT TYPES IF THE PRE-ADJUSTMENT GROSS RENT EXCEEDS THE EXISTING HOUSING FAIR MARKET RENT
(NOT USED TO CALCULATE BUDGET BASED RENT INCREASES)

Property Name: Unit Type:

ESSENTIAL INFORMATION TO DETERMINE ADJUSTED CONTRACT RENT FOR EACH UNIT TYPE

Unit Type _____BR

For each unit type:

Number of Contract Units: _________
Number of Units With Turnover: _________
Number of Units Without Turnover: ________

Existing Housing FMR
for Unit Type $ _

AAF from Table I_______

Comparable Rent (Estimated Market Rent from HUD-92273-S8, line 46) $

AAF from Table II ______

Pre-adjustment Contract Rent $_________

Utility Allowance $__________

Pre-adjustment Gross Rent for Unit Type $ __

Initial Difference $_____________

Step 1: Is this contract a New Construction or Sub Rehab contract? ; AND
Is the current gross rent for this unit type (before application of the AAF) above the Existing Housing FMR?

If the answer to BOTH questions is YES, then go to Step 2.

If the answer to EITHER question is NO, this worksheet does not apply. Contract rent for this unit type is adjusted under Part II of this Notice. Go to Part II Adjustments Worksheet at Appendix 2.

Step 2: Multiply the Table I AAF times the pre-adjustment contract rent. (NOTE: Use a factor of 1.000 if the published Table I AAF is below 1.000.)

Pre-adjustment Contract Rent x Table I Factor = Step 2 Amount ______

Step 3: Add the initial difference to the comparable rent.

$ ______ + $__________________ = $__________________
Comparable Rent + Initial Difference = Adjusted Comparable Rent

STEP 4: Determine if the amount calculated in Step 2 is more than the adjusted comparable rent calculated in Step 3.

$ Amount calculated In Step 2

$ Adjusted Comparable Rent (from Step 3)

b. If the amount calculated in Step 2 is more than the adjusted comparable rent, go to Step 6a and enter the amount of the adjusted comparable rent (in this case, the adjusted contract rent equals the adjusted comparable rent).

b. If the amount calculated in Step 2 is equal to or less than the adjusted comparable rent, go to step 5.

Step 5: For units in which turnover occurred in the last year, use AAF Table I to calculate the rents. For units in which no turnover occurred in the last year use AAF Table II to calculate the rents. (NOTE: Throughout this Worksheet, when applying the published AAF, the factor of 1.000 must be used in all cases where the published factor is below 1.000.)

TURNOVER UNITS

Step 5a:

$ Pre-Adjustment Contract Rent x ___ Table 1 Factor = $ _ Adjusted Contract Rent for Turnover Units (enter this amount in Step 6b)

UNITS WITH NO TURNOVER

Step 5b:

$ __________ Pre-Adjustment Contract Rent x Table 2 Factor = $ __ Adjusted Contract Rent for Non-Turnover Units (enter this amount in Step 6c)

Step 6: Enter the adjusted contract rent.

a) From Step 4a $ for all units; OR

b) From Step 5a $ for units with turnover
Number of Units with turnover: _________

c) From Step 5b $ for units with no turnover
Number of Units with no turnover: _________

Step 7: Repeat Steps 1 through 6 for each unit type.

STEP 8: If Step 5 resulted in different rent levels for the same unit type, then a common rent level for this unit type must be derived. Use the rent levels listed in Step 6 to derive a new monthly Contract Rent Potential.

$ ______ for units with turnover X (units) = $ ______

$ ___ for units with no turnover X (Units) = $

Add the two numbers calculated above to derive total Contract Rent Potential

$ Turnover + $ No Turnover = $ Total

Divide Total Contract Rent Potential by the number of units for this unit type to obtain the new rent level for all BR units.

$ Total Contract Rent Potential divided by _____ units =
$ New Rent Level

STEP 9: The new rent level for all BR units is approved at $ .

APPENDIX 2

PART II ADJUSTMENTS WORKSHEET

FIELD OFFICE WORKSHEET FOR
PROCESSING RENT INCREASES FOR AAF RENTS FOR NEW CONSTRUCTION AND SUBSTANTIAL REHABILITATION UNIT TYPES THAT DO NOT EXCEED

THE EXISTING HOUSING FAIR MARKET RENTS AND FOR ALL LMSA AND PD SECTION 8 CONTRACT TYPES.
(NOT FOR USE ON BUDGET BASED RENT INCREASES)

Property Name: Unit Type:

ESSENTIAL INFORMATION

Existing FMR Level for Unit Type $ Current Contract Rent for Unit Type $

Step 1: If this contract is a New Construction or a Substantial Rehab contract, is the current gross rent for this unit type (before application of the AAF) below the Existing Housing FMR? ;

OR

If this contract is an LMSA or PD contract, is the method of adjustment for gross rent the application of the AAF (as opposed to budget-based)?

(NOTE: Budget-based rents are NOT processed under this Notice. See Chapter 7, Handbook 4350.1)

If the answer to the applicable question is YES, then proceed to Step 2.

If the answer to the applicable question is NO, then this unit type should be adjusted under Part I of this Notice. This worksheet does not apply. Please find Part I Adjustments Worksheet at Appendix 1.

If the second question is applicable and the answer is NO, then this Notice is not applicable and the rents should be adjusted under Chapter 7, Handbook 4350.1.

Step 2: For units in which turnover occurred in the last year, use AAF Table I to calculate the rents. For units in which no turnover occurred in the last year, use AAF Table II to calculate the rents. (NOTE: Throughout this Worksheet, when applying the published AAF, the factor of 1.000 should be used in all cases where the published factor is below 1.000.)

Turnover units

$ X = $

Current Rent Table I Factor New Rent Level

Units with no Turnover

$ ___ X = $ ____

Current Rent Table II Factor New Rent Level

Step 3: The new rent level(s) for unit type is:

$ for units with turnover (Number of Units )

$ for units with no turnover (Number of Units )

Step 4: Since the calculation in Step 3 resulted in different

rent levels for the same unit type, then a common rent level for this unit type must be derived. Use the rent levels listed in Step 3 above to derive a new monthly Gross Rent Potential (GRP).

$ for units with turnover X ____(Units) = $

$ for units with no turnover X (Units)=$_________

Add the two numbers calculated above to derive the total Contract Rent Potential

$ + $ ___ = $ ____
Turnover No Turnover Total Contract Rent Potential

Divide Total GRP by the number of units for this unit type to obtain the new rent level for all BR units.

$ Total GRP divided by units = $

New Rent Level

Step 5: The new rent level for all BR units is approved at $ .

APPENDIX 3

SAMPLE FORMAT FOR
OWNER'S CERTIFICATION OF COMPLIANCE WITH THE REQUIREMENTS OF NOTICE:
Annual Adjustment Factor Rent Increase Requirements Pursuant to 42 U.S.C. 1437f(c)(2)(A).

Property Name:

FHA Number:

Section 8 Contract Number:

The attached represents a request for a rent increase for the aforementioned property and the following unit type(s) (e.g. 1 BR, 2BR/2BA, 3 BR, etc.):

I certify as the owner of the property (or the agent empowered to act on behalf of the owner) that all of the following items are true:

* Preparations of all copies of form HUD-92273-S8 were completed IN ACCORDANCE WITH INSTRUCTIONS CONTAINED IN Chapter Nine of the Section 8 User Guide.

* If project funds were used to pay for the completion of form(s) HUD-92273-S8, I certify that I am in compliance with the Contracting Guidelines set forth in Paragraph 6.50 of Handbook 4381.5, REV-2.

* If a figure is submitted for the initial difference this figure is the same dollar difference that existed between the original comparable used in underwriting (or the FMRs) and the contract rents at the time of initial occupancy. If no initial difference is submitted, then I authorize HUD to use 10% of the initial Section 8 contract rent for each unit type as the initial difference.

* The figures submitted with this request regarding the number of units in which turnover has occurred since the last HAP anniversary date are complete and accurate.

Under penalties and provisions of Title 18, United States Cost, Chapter 47, Section 1001, the statements contained in this request have been examined by me and to the best of my knowledge and belief are true, correct and complete.

Owner/Agent

APPENDIX 4
OWNER
SAMPLE FORMAT FOR REPORTING UNIT TURNOVER

This form or any other format may be used for reporting the number of units in which turnover occurred since the last HAP contract anniversary date. This information need only be submitted for the unit types in which a rent increase is being requested under this Notice.

This information reflects the number of units in which turnover has occurred since / / (HAP Anniversary Date)

Unit Type Total Number of Units

Units have incurred turnover

Units did not incur turnover

Unit Type Total Number of Units

Units have incurred turnover

Units did not incur turnover

Unit Type Total Number of Units

Units have incurred turnover

Units did not incur turnover

Unit Type Total Number of Units

Units have incurred turnover

Units did not incur turnover

Unit Type Total Number of Units

Units have incurred turnover

Units did not incur turnover

______________________
Owner/Agent

APPENDIX 5

AAF RCS ADJUSTMENT WORKSHEET

______ My Rent Comparability Study (RCS) is less than five years old.

* The date of my original RCS is ____________________.

* A updated RCS was completed on ________________________.
(Attach a list with the names and titles of persons contacted for each comparable property).

* Based on the updated RCS, the New Comparable Market Rent Potential is________________.

I hereby certify that:

_____ The original RCS that was submitted on ________________,

has been updated and that the revised comparable market rent is as stated above; AND

_____ neither I, nor any of my affiliates, are suspended or debarred,

OR

_____ I, or my affiliates, are suspended or debarred and are requesting a contract renewal subject to HUD approval; AND

_____ this information is true and complete.

Project Name

______________________________________________________________

Owner's Name

______________________________________________________________

Owner's signature:______________________________________Date:____________

Warning: There are fines and imprisonment--$250,000/5 years-for anyone who makes false, fictitious, or fradulent statements or entries in any matter within the jurisdiction of the Federal government (18 USC 1001). In addition, any person who knowingly and materially violates any required disclosure of information, including intentional non-disclosure, is subject to civil money penalty not to exceed $10,000 for each violation.

1

Click Here to Download Excel Attachment

[Search] [Prev List] [Doc List] [Next List] [First Doc] [Prev Doc] [Curr Doc] [Next Doc] [Last Doc] [Top] [Help]

federal register

Wednesday
September 28, 1994

# Part IV

# Department of Housing and Urban Development

## Office of the Secretary

24 CFR Part 888

Section 8 Housing Assistance Payments Program; Fair Market Rents; Final Rule



HeinOnline -- 59 Fed. Reg. 49493 1994

**DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**

**Office of the Secretary**

**24 CFR Part 888**

**[Docket No. N-94-3754; FR-3699-N-03]**

**Section 8 Housing Assistance Payments Program; Fair Market Rent Schedules for Use in the Rental Certificate Program, Loan Management and Property Disposition Programs, Moderate Rehabilitation Program and Rental Voucher Program**

**AGENCY:** Office of the Secretary, HUD.

**ACTION:** Notice of final fair market rents.

**SUMMARY:** Section 8(c)(1) of the United States Housing Act of 1937 requires the Secretary to publish Fair Market Rents (FMRs) annually to be effective on October 1 of each year. FMRs are used for the Section 8 Rental Certificate program (part 882, subparts A and B), including space rentals by owners of manufactured homes under the Section 8 Rental Certificate program (part 882, subpart F) and project-based Certificate assistance (part 882, subpart G); the Section 8 Moderate Rehabilitation program (part 882, subparts D and E); Section 8 housing assisted under part 886, subparts A and C (Section 8 Loan Management and Property Disposition programs); and to determine payment standard schedules in the Rental Voucher program (part 887).

HUD published the proposed Fiscal Year (FY) 1995 FMRs in the Federal Register on June 23, 1994 (59 FR 32492), and in another publication on July 13, 1994 (59 FR 35739), announced that the public comment period was extended to October 14, 1994. The public comment period was extended to give Public Housing Agencies (PHAs) the opportunity to use the new rental housing survey guide that HUD had recently developed for smaller, nonmetropolitan areas.

Two separate sets of proposed FMRs were published on June 23—one based on the 45th percentile rent standard and the other based on the 40th percentile rent standard. The authorization bill now moving through Congress establishes FMRs at the 45th percentile rent standard. This notice, therefore, makes effective the final FY 1995 FMRs at the 45th percentile level.

As announced in the Federal Register on July 13, there will be two final FY 1995 FMR publications. Today's notice makes effective final FMRs for all areas on October 1, 1994. The FMRs in this notice are based on the proposed FMRs included in the June 23 notice for all areas except eight with RDD and AHS surveys that will have proposed reductions in their FMRs postponed pending the outcome of the review of comments submitted (see AHS and RDD surveys). A second publication later this year will announce revised final FMRs for the areas for which HUD makes a determination that the rental housing surveys submitted as public comments provided a sufficient basis for such revision.

**EFFECTIVE DATE:** The FMRs published in this notice are effective on October 1, 1994.

**FOR FURTHER INFORMATION CONTACT:** Shirley C. Stone, Rental Assistance Division, Office of Elderly and Assisted Housing, telephone (202) 708-0477. (TDD: (202) 708-0850). For technical information on the development of schedules for specific areas or the method used for the rent calculations, contact Michael R. Allard, Economic and Market Analysis Division, Office of Economic Affairs, telephone (202) 708-0577 (TDD: (202) 708-0770). (These are not toll-free numbers.)

**SUPPLEMENTARY INFORMATION:** Section 8 of the United States Housing Act of 1937 (the Act) (42 U.S.C. 1437f) authorizes housing assistance to aid lower income families in renting decent, safe, and sanitary housing. Assistance payments are limited by FMRs established by HUD for different areas. In general, the FMR for an area is the amount that would be needed to pay the gross rent (shelter rent plus utilities) of privately owned, decent, safe, and sanitary rental housing of a modest (non-luxury) nature with suitable amenities.

## Method Used to Develop FMRs

*FMR Standard:* The FMRs are gross rent estimates; they include shelter rent and the cost of utilities, except telephone. HUD sets FMRs to assure that a sufficient supply of rental housing is available to program participants. To accomplish this objective, FMRs must be both high enough to permit a selection of units and neighborhoods and low enough to serve as many families as possible. The level at which FMRs are set is expressed as a percentile point within the rent distribution of standard quality rental housing units. The current definition used is the 45th percentile rent, the dollar amount below which 45 percent of the standard quality rental housing units rent. The 45th percentile rent is drawn from the distribution of rents of units which are occupied by recent movers (renter households who moved into their unit within the past 15 months). Public housing units and newly built units less than two years old are excluded.

*Data Sources:* HUD used the most accurate and current data available to develop the FMR estimates. Three sources of survey data were used for the base-year estimates. They are: (1) The 1990 Census; (2) RDD telephone surveys conducted of individual FMR areas since the 1990 Census; and (3) the post-1990 Census American Housing Surveys (AHSs) available at the time the FMR estimates were prepared. The base-year FMRs were then updated using Consumer Price Index (CPI) data for rents and utilities or the HUD regional rent change factors developed from RDD surveys. Annual average CPI data are available individually for 103 metropolitan FMR areas. RDD Regional rent change factors are developed annually for the metropolitan and nonmetropolitan parts of each of the 10 HUD regions (a total of 20 separate factors). The RDD factors are used to update the base year estimates for all FMR areas that do not have their own local CPI survey.

The decennial Census provides statistically reliable rent data for use in establishing base-year FMRs. AHSs are conducted by the Bureau of the Census for HUD and have accuracy comparable to the decennial Census. These surveys enable HUD to develop between-census revisions for the largest metropolitan areas on a revolving schedule. The RDD telephone survey technique is based on a sampling procedure that uses computers to select random samples of rental housing, dial and keep track of the telephone numbers and tabulate the responses.

*Manufactured Home Space FMRs:* The final manufactured home space FMRs are established at 30 percent of the applicable Section 8 Rental Certificate program two-bedroom FMR. HUD accepts public comments requesting modifications of manufactured home space FMRs. To be accepted for approval, such comments must contain statistically valid survey data that show the 45th percentile space rent (excluding the cost of utilities) for the FMR area. This program uses the same FMR area definitions as the Section 8 Rental Certificate program. All manufactured home space FMR revisions approved will be published as final FMRs in Schedule D. In addition HUD has retained all of the modifications approved since 1990 because they are based on recent survey data that HUD had determined to be valid.



HeinOnline -- 59 Fed. Reg. 49494 1994

**New Metropolitan Area**

This publication makes final the FMRs for the newly designated Hattiesburg, Mississippi Metropolitan Statistical Area (MSA), which was defined by OMB on July 1, 1994 (OMB Bulletin 94–07) to include Forrest and Lamar Counties. HUD has determined that the new metropolitan area definition is appropriate for use as an FMR area definition.

**AHS and RDD Surveys**

The eight areas identified in the proposed FMR notice with reduced FMRs resulting from RDD and AHS surveys will continue to use the FY 1994 FMRs, which are republished in this notice. Final FY 1995 FMRs for these areas, including any revisions resulting from public comments, will be included in the second publication later this year. The eight areas are:

*RDD AREAS*
Gage County, NE
Holmes County, FL
Jamestown, NY, MSA
Las Cruces, NM, MSA
Reading, PA, MSA
Washington County, FL
*AHS AREAS*
Memphis, TN–AR–MS, MSA
Oklahoma City, OK, MSA

**HUD Rental Housing Survey Guides**

HUD continues to recommend use of professionally-conducted Random Digit Dialing (RDD) telephone surveys to test the accuracy of FMRs for areas where there is a sufficient number of Section 8 units to justify the survey cost of $10,000–$12,000. Areas with 500 or more units usually meet this criterion, and areas with fewer units may meet it if the actual two-bedroom FMR rent standard is significantly different than that proposed by HUD. In addition, HUD has developed a simplified version of the RDD survey methodology for smaller, non-metropolitan PHAs. This methodology is designed to be simple enough to be done by the PHA itself, rather than by professional survey organizations, at a cost of around $5,000. The smallest PHAs may, in certain circumstances, do surveys of clusters of counties. All clustered surveys must be approved in advance by HUD. PHAs are cautioned that the resultant FMRs will not be identical within the cluster—e.g., each individual FMR area will have a separate FMR based on its relationship to the combined rent of the cluster of FMR areas. HUD does not mandate the use of either the RDD telephone survey or the modified RDD telephone survey methodology. Other survey methodologies are acceptable as long as they provide statistically reliable unbiased estimates of the 45th percentile gross rent. All survey results must be fully documented.

Because it takes two months to obtain survey estimates, interested organizations concerned about FMR accuracy may wish to begin their FMR surveys in the next few months to assure that the results will be available in time to be incorporated into the FY 1996 FMRs. The starting point is to carefully review one of the two following publications, both obtainable from HUD USER at 1–800–245–2691. Larger PHAs should obtain "Random Digit Dialing Surveys; A Guide to Assist Larger Public Housing Agencies in Preparing Fair Market Rent Comments." Smaller PHAs should obtain "Rental Housing Surveys; A Guide to Assist Smaller Public Housing Agencies in Preparing Fair Market Rent Comments."

**FMRs for Flood Damaged Areas in the Southeast and Midwest**

Under the authority granted in 24 CFR part 899, the Secretary finds good cause to waive the regulatory requirements that govern requests for geographic area FMR exceptions for the flood-impacted areas in the midwest and southeast that have been declared Federal disaster areas. The FMR areas eligible for exceptions are those declared Federal disaster areas. Recognizing that the substantial losses resulting from the floods will have a direct effect on local rent levels, HUD is prepared to grant FMR exceptions up to 10 percent above the final FY 1995 FMRs for single-county FMR areas and for individual county parts of multi-county FMR areas. The flood-related FMR exceptions will be approved by the HUD field office with jurisdiction for: (1) Counties that qualify as disaster areas under the Robert T. Stafford Disaster Relief and Emergency Assistance Act; if (2) the PHA certifies that damage to the rental housing stock is so substantial that it has increased the prevailing rent levels. Such exceptions must be requested in writing by the responsible PHAs. Once approved by HUD, they will remain in effect until superseded by final FY 1996 FMRs.

**Other Matters**

A Finding of No Significant Impact with respect to the environment as required by the National Environmental Policy Act (42 U.S.C. 4321–4374) is unnecessary, since the Section 8 Rental Certificate program is categorically excluded from the Department's National Environmental Policy Act procedures under 24 CFR 50.20(d).

The undersigned, in accordance with the Regulatory Flexibility Act (5 U.S.C. 605(b)), hereby certifies that this notice does not have a significant economic impact on a substantial number of small entities, because FMRs do not change the rent from that which would be charged if the unit were not in the Section 8 program.

The General Counsel, as the Designated Official under Executive Order No. 12606, The Family, has determined that this notice will not have a significant impact on family formation, maintenance, or well-being. The notice amends Fair Market Rent schedules for various Section 8 assisted housing programs, and does not affect the amount of rent a family receiving rental assistance pays, which is based on a percentage of the family's income.

The General Counsel, as the Designated Official under section 6(a) of Executive Order No. 12611, *Federalism*, has determined that this notice will not involve the preemption of State law by Federal statute or regulation and does not have Federalism implications. The Fair Market Rent schedules do not have any substantial direct impact on States, on the relationship between the Federal government and the States, or on the distribution of power and responsibility among the various levels of government.

The Catalog of Federal Domestic Assistance program number is 14.156, Lower-Income Housing Assistance Program (section 8).

Accordingly, the Fair Market Rent Schedules, which will not be codified in 24 CFR Part 888, are amended as follows:

Dated: September 20, 1994.

**Henry G. Cisneros,**
*Secretary.*

**Section 8 Housing Assistance Payments Program; Fair Market Rent Schedules for Use in the Rental Certificate Program, Loan Management and Property Disposition Programs, Moderate Rehabilitation Program and Rental Voucher Program**

*Schedules B and D—General Explanatory Notes*

1. Geographic Coverage

a. The FMRs shown in Schedule B incorporate the Office of Management and Budget's (OMB) most current definitions of metropolitan areas (with the exceptions discussed in paragraph b). HUD uses the OMB Metropolitan Statistical Area (MSA) and Primary Metropolitan Statistical Area (PMSA) definitions for FMR areas because they closely correspond to housing market area definitions. FMRs are housing



HeinOnline -- 59 Fed. Reg. 49495 1994

market-wide rent estimates that are intended to provide housing opportunities throughout the geographic area in which rental housing units are in direct competition.

b. The exceptions are counties which have been deleted from seven large metropolitan areas whose revised OMB definitions were determined by HUD to be larger than the housing market areas. The FMRs for the following counties (shown by the metropolitan area) are calculated separately and are shown in Schedule B within their respective States under the "Metropolitan FMR Areas" listing:

*Metropolitan Area and Counties Deleted*

Atlanta, GA—Carroll, Pickens, Spalding, and Walton Counties.
Chicago, IL—DeKalb, Grundy and Kendall Counties.
Cincinnati-Hamilton, OH–KY–IN—Brown County, Ohio; Gallatin, Grant and Pendleton Counties in Kentucky; and Ohio County, Indiana.
Dallas, TX—Henderson County.
Lafayette, LA—St. Landry and Acadia Parishes.
New Orleans, LA—St. James Parish.
Washington, DC—Berkeley and Jefferson Counties in West Virginia; and Clarke, Culpeper, King George and Warren counties in Virginia.

c. FMRs also are established for nonmetropolitan counties and for county equivalents in the United States, for nonmetropolitan parts of counties in the New England states and for FMR areas in Puerto Rico, the Virgin Islands and the Pacific Islands.

d. FMRs for the areas in Virginia shown in the table below were established by combining the Census data for the nonmetropolitan counties with the data for the independent cities that are located within the county borders. Because of space limitations, the FMR listing in Schedule B includes only the name of the nonmetropolitan county. The full definitions of these areas including the independent cities are as follows:

VIRGINIA NONMETROPOLITAN COUNTY FMR AREA AND VIRGINIA INDEPENDENT CITIES INCLUDED WITH COUNTY

| County | Cities |
|---|---|
| Allegheny | Clifton Forge and Covington. |
| Augusta | Staunton and Waynesboro. |
| Carroll | Galax. |
| Frederick | Winchester. |
| Greensville | Emporia. |
| Halifax | South Boston. |
| Henry | Martinsville. |
| Montgomery | Radford. |
| Rockbridge | Buena Vista and Lexington. |
| Rockingham | Harrisonburg. |
| Southhampton | Franklin. |
| Wise | Norton. |

e. FMRs for Section 8 manufactured home spaces are established at 30 percent of the two-bedroom Section 8 Rental Certificate program FMRs, with the exception of the areas listed in Schedule D whose FMRs have been modified on the basis of public comments. The FMR area definitions used for manufactured home spaces are the same as for the Section 8 Certificate program.

2. Arrangement of FMR Areas and Identification of Constituent Parts

a. The FMR areas in Schedule B are listed alphabetically by metropolitan FMR area and by nonmetropolitan county within each State. The exception FMRs for manufactured home spaces in Schedule D are listed alphabetically by State.

b. The constituent counties (and New England towns and cities) included in each metropolitan FMR area are listed immediately following the listings of the FMR dollar amounts. All constituent parts of a metropolitan FMR area that are in more than one State can be identified by consulting the listings for each applicable State.

c. Two nonmetropolitan counties are listed alphabetically on each line of the nonmetropolitan county listings.

d. The New England towns and cities included in a nonmetropolitan part of a county are listed immediately following the county name.

e. The FMRs are listed by dollar amount on the first line beginning with the FMR area name.

BILLING CODE 4210–32–P



HeinOnline -- 59 Fed. Reg. 49496 1994

SCHEDULE B - FAIR MARKET RENTS FOR EXISTING HOUSING



## N E W M E X I C O

| METROPOLITAN FMR AREAS | 0 BR | 1 BR | 2 BR | 3 BR | 4 BR | Counties of FMR AREA within STATE |
|---|---|---|---|---|---|---|
| Albuquerque, NM MSA | 349 | 413 | 519 | 714 | 843 | Bernalillo, Sandoval, Valencia |
| Las Cruces, NM MSA | 279 | 350 | 417 | 571 | 673 | Dona Ana |
| Santa Fe, NM MSA | 393 | 558 | 690 | 925 | 1048 | Los Alamos, Santa Fe |

| NONMETROPOLITAN COUNTIES | 0 BR | 1 BR | 2 BR | 3 BR | 4 BR |
|---|---|---|---|---|---|
| Catron | 192 | 303 | 347 | 484 | 570 |
| Cibola | 238 | 261 | 303 | 421 | 497 |
| Curry | 233 | 298 | 392 | 491 | 550 |
| Eddy | 266 | 269 | 359 | 482 | 589 |
| Guadalupe | 200 | 274 | 363 | 454 | 576 |
| Hidalgo | 192 | 268 | 347 | 435 | 487 |
| Lincoln | 295 | 301 | 400 | 525 | 656 |
| Mckinley | 257 | 328 | 415 | 518 | 580 |
| Otero | 224 | 288 | 374 | 521 | 525 |
| Rio Arriba | 303 | 311 | 383 | 481 | 537 |
| San Juan | 291 | 312 | 389 | 540 | 639 |
| Sierra | 215 | 262 | 347 | 484 | 487 |
| Taos | 356 | 361 | 482 | 601 | 791 |
| Union | 200 | 317 | 364 | 455 | 570 |

| NONMETROPOLITAN COUNTIES | 0 BR | 1 BR | 2 BR | 3 BR | 4 BR |
|---|---|---|---|---|---|
| Chaves | 255 | 296 | 391 | 536 | 549 |
| Colfax | 218 | 273 | 313 | 435 | 513 |
| Debaca | 192 | 296 | 348 | 484 | 487 |
| Grant | 239 | 272 | 358 | 469 | 565 |
| Harding | 158 | 216 | 288 | 397 | 404 |
| Lea | 239 | 262 | 347 | 484 | 544 |
| Luna | 268 | 272 | 347 | 484 | 570 |
| Mora | 186 | 255 | 339 | 424 | 475 |
| Quay | 257 | 377 | 424 | 530 | 593 |
| Roosevelt | 243 | 262 | 333 | 453 | 535 |
| San Miguel | 289 | 292 | 390 | 488 | 547 |
| Socorro | 197 | 293 | 358 | 497 | 587 |
| Torrance | 286 | 308 | 363 | 453 | 536 |

## N E W Y O R K

| METROPOLITAN FMR AREAS | 0 BR | 1 BR | 2 BR | 3 BR | 4 BR | Counties of FMR AREA within STATE |
|---|---|---|---|---|---|---|
| Albany-Schenectady-Troy, NY MSA | 387 | 474 | 586 | 732 | 820 | Albany, Montgomery, Rensselaer, Saratoga, Schenectady Schoharie |
| Binghamton, NY MSA | 300 | 378 | 484 | 616 | 679 | Broome, Tioga |
| Buffalo-Niagara Falls, NY PMSA | 338 | 420 | 505 | 632 | 707 | Erie, Niagara |
| Dutchess County, NY PMSA | 511 | 649 | 801 | 1041 | 1218 | Dutchess |
| Elmira, NY MSA | 295 | 381 | 476 | 601 | 719 | Chemung |
| Glens Falls, NY MSA | 331 | 446 | 543 | 680 | 762 | Warren, Washington |
| Jamestown, NY MSA | 226 | 331 | 397 | 513 | 557 | Chautauqua |
| Nassau-Suffolk, NY PMSA | 702 | 846 | 1032 | 1435 | 1537 | Nassau, Suffolk |
| New York, NY PMSA | 664 | 740 | 840 | 1052 | 1177 | Bronx, Kings, New York, Putnam, Queens, Richmond Rockland |
| Westchester County, NY | 631 | 822 | 1001 | 1302 | 1552 | Westchester |
| Newburgh, NY-PA PMSA | 508 | 662 | 808 | 1026 | 1172 | Orange |
| Rochester, NY MSA | 369 | 479 | 585 | 748 | 817 | Genesee, Livingston, Monroe, Ontario, Orleans, Wayne |
| Syracuse, NY MSA | 354 | 427 | 528 | 676 | 749 | Cayuga, Madison, Onondaga, Oswego |
| Utica-Rome, NY MSA | 327 | 368 | 459 | 574 | 643 | Herkimer, Oneida |

Note: The FMRS for unit sizes larger than 4 BRs are calculated by adding 15% to the 4 BR FMR for each extra bedroom. For example, the FMR for a 5 BR unit is 1.15 times the 4BR FMR, and the FMR for a 6 BR unit is 1.30 times the 4 BR FMR. 092294



HeinOnline -- 59 Fed. Reg. 49530 1994

SCHEDULE B - FAIR MARKET RENTS FOR EXISTING HOUSING



N E W Y O R K continued

| NONMETROPOLITAN COUNTIES | 0 BR | 1 BR | 2 BR | 3 BR | 4 BR |
|---|---|---|---|---|---|
| Allegany | 245 | 302 | 372 | 468 | 520 |
| Chenango | 364 | 369 | 436 | 558 | 618 |
| Columbia | 430 | 453 | 581 | 761 | 813 |
| Delaware | 329 | 379 | 445 | 589 | 731 |
| Franklin | 290 | 353 | 425 | 537 | 601 |
| Greene | 334 | 441 | 530 | 685 | 835 |
| Jefferson | 371 | 437 | 515 | 644 | 721 |
| Otsego | 319 | 403 | 464 | 599 | 762 |
| Schuyler | 373 | 398 | 471 | 656 | 773 |
| Steuben | 356 | 406 | 451 | 608 | 685 |
| Tompkins | 450 | 485 | 623 | 866 | 1022 |
| Wyoming | 254 | 355 | 418 | 522 | 585 |

| NONMETROPOLITAN COUNTIES | 0 BR | 1 BR | 2 BR | 3 BR | 4 BR |
|---|---|---|---|---|---|
| Cattaraugus | 245 | 300 | 389 | 486 | 600 |
| Clinton | 287 | 379 | 506 | 633 | 709 |
| Cortland | 281 | 408 | 510 | 638 | 755 |
| Essex | 268 | 389 | 486 | 609 | 681 |
| Fulton | 250 | 358 | 455 | 569 | 637 |
| Hamilton | 342 | 415 | 476 | 595 | 667 |
| Lewis | 292 | 373 | 450 | 562 | 629 |
| St. Lawrence | 270 | 345 | 451 | 563 | 647 |
| Seneca | 365 | 392 | 473 | 610 | 663 |
| Sullivan | 456 | 511 | 624 | 861 | 873 |
| Ulster | 423 | 588 | 708 | 920 | 1160 |
| Yates | 333 | 378 | 458 | 572 | 621 |

N O R T H C A R O L I N A

| METROPOLITAN FMR AREAS | 0 BR | 1 BR | 2 BR | 3 BR | 4 BR | Counties of FMR AREA within STATE |
|---|---|---|---|---|---|---|
| Asheville, NC MSA | 281 | 347 | 452 | 588 | 634 | Buncombe, Madison |
| Charlotte-Gastonia-Rock Hill, NC-SC MSA | 406 | 459 | 516 | 681 | 815 | Cabarrus, Gaston, Lincoln, Mecklenburg, Rowan, Union |
| Fayetteville, NC MSA | 348 | 393 | 442 | 612 | 726 | Cumberland |
| Goldsboro, NC MSA | 202 | 305 | 368 | 511 | 604 | Wayne |
| Greensboro--Winston-Salem--High Point, NC MSA | 346 | 393 | 469 | 647 | 657 | Alamance, Davidson, Davie, Forsyth, Guilford, Randolph Stokes, Yadkin |
| Greenville, NC MSA | 343 | 347 | 451 | 606 | 741 | Pitt |
| Hickory-Morganton, NC MSA | 363 | 394 | 458 | 575 | 684 | Alexander, Burke, Caldwell, Catawba |
| Jacksonville, NC MSA | 326 | 382 | 430 | 597 | 706 | Onslow |
| Norfolk-Virginia Beach-Newport News, VA-NC MSA | 416 | 466 | 555 | 772 | 906 | Currituck |
| Raleigh-Durham-Chapel Hill, NC MSA | 387 | 469 | 552 | 740 | 872 | Chatham, Durham, Franklin, Johnston, Orange, Wake |
| Rocky Mount, NC MSA | 306 | 319 | 388 | 531 | 586 | Edgecombe, Nash |
| Wilmington, NC MSA | 368 | 406 | 496 | 680 | 810 | Brunswick, New Hanover |

| NONMETROPOLITAN COUNTIES | 0 BR | 1 BR | 2 BR | 3 BR | 4 BR |
|---|---|---|---|---|---|
| Alleghany | 230 | 278 | 325 | 407 | 508 |
| Ashe | 164 | 267 | 299 | 405 | 492 |
| Beaufort | 258 | 313 | 368 | 472 | 516 |
| Bladen | 221 | 267 | 299 | 374 | 420 |
| Carteret | 321 | 352 | 429 | 596 | 663 |
| Cherokee | 236 | 267 | 299 | 374 | 483 |
| Clay | 164 | 267 | 299 | 416 | 420 |
| Columbus | 242 | 276 | 309 | 402 | 433 |
| Dare | 295 | 466 | 537 | 736 | 752 |
| Gates | 164 | 225 | 299 | 416 | 420 |

| NONMETROPOLITAN COUNTIES | 0 BR | 1 BR | 2 BR | 3 BR | 4 BR |
|---|---|---|---|---|---|
| Anson | 203 | 331 | 371 | 501 | 519 |
| Avery | 266 | 298 | 364 | 455 | 510 |
| Bertie | 192 | 258 | 299 | 374 | 426 |
| Camden | 269 | 366 | 489 | 610 | 684 |
| Caswell | 178 | 244 | 325 | 407 | 455 |
| Chowan | 196 | 315 | 355 | 493 | 498 |
| Cleveland | 222 | 345 | 405 | 545 | 573 |
| Craven | 237 | 358 | 432 | 566 | 604 |
| Duplin | 236 | 267 | 299 | 397 | 420 |
| Graham | 163 | 264 | 296 | 369 | 485 |

Note: The FMRS for unit sizes larger than 4 BRs are calculated by adding 15% to the 4 BR FMR for each extra bedroom. For example, the FMR for a 5 BR unit is 1.15 times the 4BR FMR, and the FMR for a 6 BR unit is 1.30 times the 4 BR FMR.

092294



HeinOnline -- 59 Fed. Reg. 49531 1994

federal register

Tuesday
August 15, 1995

# Part II

# Department of Housing and Urban Development

## Office of the Secretary

## 24 CFR Part 888
## Fair Market Rents for Section 8 Existing Housing; Amendments to Method of Calculating; Final Rule

**DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**

**Office of the Secretary**

**24 CFR Part 888**

**[Docket No. FR-3694-F-02]**

**RIN 2501-AB76**

## Fair Market Rents for Section 8 Existing Housing; Amendments to Method of Calculating

**AGENCY:** Office of the Secretary, HUD.

**ACTION:** Final rule.

**SUMMARY:** This final rule amends the Department's regulations at 24 CFR part 888 governing the method of calculating Fair Market Rents (FMRs) for Section 8 Existing housing programs including the Section 8 Rental Certificate program (including space rentals by owners of manufactured homes under that program); the Moderate Rehabilitation Single Room Occupancy program; the Loan Management and Property Disposition programs; payment standards for the Rental Voucher program; and any other programs which use the Section 8 FMRs.

HUD is changing the definition from the 45th percentile of the rental distribution of standard quality rental housing units to the 40th percentile as a cost saving measure. On average, FMRs will be 3.3 percent less than if they were set at the 45th percentile level. This change will not significantly affect September 8 program operations. Families will continue to have an adequate choice of good housing and neighborhoods at the 40th percentile FMR.

**EFFECTIVE DATE:** September 14, 1995.

**FOR FURTHER INFORMATION CONTACT:** Gerald J. Benoit, Rental Assistance Division, Office of Public and Indian Housing; telephone (202) 708-0477 or (202) 708-0850 (TDD for speech- or hearing-impaired), for questions relating to the Section 8 Rental Certificate, Rental Voucher, and Moderate Rehabilitation programs;

Barbara Hunter, Program Planning Division, Office of Multifamily Housing Management; telephone (202) 708-3944 or (202) 708-4594 (TDD for speech- or hearing-impaired), for questions relating to all other Section 8 programs.

David Pollack, Office of Community Planning and Development; telephone (202) 708-1234 or (202) 708-2565 (TDD for speech- or hearing-impaired), for questions relating to Moderate Rehabilitation, Single Room Occupancy (SRO).

Michael Allard, Office of Policy Development and Research, (202) 708-0577 or 708-1455 (TDD for speech- or hearing-impaired), for questions relating to measurement of rent levels.

Mailing address for above persons: Department of Housing and Urban Development, 451 Seventh Street SW., Washington, DC 20410. (Telephone numbers are not toll-free.)

**SUPPLEMENTARY INFORMATION:**

### I. Background

Section 8 of the U. S. Housing Act of 1937 (the Act) (42 U.S.C. 1437f) authorizes housing assistance to aid low-income families in renting decent, safe, and sanitary housing. Assistance payments are limited by Fair Market Rents (FMRs) established by HUD, or by payment standards based on the FMRs established by public housing agencies for the Rental Voucher program. In general, the FMR for an area is the amount that would be needed to pay the gross rent (shelter rent plus utilities) of privately-owned, decent, safe, and sanitary rental housing of a modest (non-luxury) nature with suitable amenities.

Under section 8(c) of the Act, the Secretary of HUD is directed to establish FMRs periodically, but not less frequently than annually. HUD publishes proposed FMRs each year, and after a period of public comment, publishes the final FMRs. The method used to calculate FMRs is described in 24 CFR part 888, subpart A. This rule amends the regulations:

(1) To change the FMR rent standard from the 45th to 40th percentile rent of the rent distribution of rental housing units;

(2) To authorize the Secretary to establish FMR areas that differ from the OMB definitions of metropolitan areas where the OMB definitions are determined by HUD to be larger than housing market areas;

(3) To identify Random Digit Dialing (RDD) telephone surveys as a data source used to establish FMRs for selected individual areas and to develop rent-change factors for updating FMRs;

(4) To state the requirement that, in order to be considered as a basis for revising the FMRs, public comments on proposed FMRs must contain statistically valid rental housing survey data justifying the requested changes; and

(5) To provide that the FMR for a manufactured home space in the tenant-based certificate program is 30 percent of the FMR for a two-bedroom housing unit.

The amendments to the method of calculating FMRs in this final rule apply to the following Section 8 Housing Assistance Payments programs: the Rental Certificate program, including space rentals by owners of manufactured homes; the Moderate Rehabilitation SRO Program; the loan management program for projects with HUD-insured or HUD-held mortgages, as well as the Property Disposition program; and any other HUD programs which use these FMRs (*e.g.*, programs to assist the homeless). In addition, the rule amends the regulations to reflect use of FMRs to establish payment standards for the Rental Voucher program. The rule applies to public housing agencies (PHAs) and Indian Housing Authorities (IHAs), which are collectively referred to as housing authorities (HAs).

### II. Public Comments on Proposed Rule

On March 2, 1995 (60 FR 11626), HUD published its proposed rule that would amend the Department's regulations at 24 CFR part 888 governing the method of calculating FMRs for the Section 8 Rental Certificate Programs discussed above. The Department received 628 comments on the proposed regulation.

The following presents the major issues raised in the public comments and HUD's responses to these issues.

1. *Comment:* Many commenters contended that the reduction to the 40th percentile rent standard would result in a shortage of units available to the Section 8 program and that participants would be limited in their housing choices and, therefore, trapped in poor neighborhoods where units are of marginal quality. Some HAs are claiming that the reduction will kill the program in rural areas.

*Response:* The proposed rule would have HUD set the FMR standard at the 40th percentile rent level of the distribution of standard quality rental housing units occupied by recent movers. Because the rents of recent movers are almost always higher than the rents of stayers, more than 40 percent of the standard quality rental housing units in each FMR area have rents that would make them available to program participants.

A HUD analysis of Census data shows that, contrary to the perception of most of the commenters, rent-eligible units are actually widely dispersed throughout FMR areas. An analysis of a representative sample of 13 metropolitan areas revealed that, on average, 85 percent of census tract neighborhoods with 10 or more two-bedroom rental units had at least 30 percent of the two-bedroom units below the FMRs. The variation among these areas was not great. All areas had high



HeinOnline -- 60 Fed. Reg. 42222 1995

percentages of neighborhoods with rent eligible units, ranging from 71 to 95 percent of the census tracts with 30 percent or more of the units below the FMR. This is strongly suggestive that families will continue to have an adequate choice of good housing and neighborhoods at the 40th percentile FMR.

A similar analysis was conducted and similar results found for a number of nonmetropolitan counties, supporting the conclusion that rural areas also will have an ample proportion of rental housing that families with housing certificates can afford at the 40th percentile FMR standard.

2. *Comment:* Many commenters were concerned that lower FMRs would result in landlords dropping out of the Section 8 Existing program.

*Response:* Lowering the standard from the 45th to the 40th percentile rent will reduce FMRs by a small amount, 3.3 percent on average. While some participating landlords with units renting very close to the current FMRs may choose to drop out of the program, the vast majority of units now in the program will continue to be eligible under the new 40th percentile standard. In addition, HUD will be able to use the FMR exception authority available for submarkets of FMR areas to mitigate this situation.

3. *Comment:* The proposed rule was viewed by commenters as an attempt by OMB and HUD to reduce budgets at the expense of low-income Americans.

*Response:* The reduction in the FMR standard is a cost savings measure. The streamlined Section 8 program will save taxpayers money while still assuring that low-income families participating in the program will be able to improve their housing situations. HUD is confident that providing Section 8 families access to 40 percent of the standard quality rental housing stock in a housing market offers them the opportunity to afford decent, safe, and sanitary housing. Further, a lower FMR standard permits assistance for more families with available funding.

4. *Comment:* Commenters thought that lower FMRs would result in more program vacancies and therefore lower administrative fees to HAs increasing their financial burden and impacting their ability to operate the program.

*Response:* The fact that FMRs are lower does not mean there will be a lower lease-up rate in the program. Lower FMRs are an issue only for new families entering the program or for families that move. Families in need of housing will find units that rent below the lower FMR rather than give up their rental assistance. Current program participants desiring to move will be less likely to move if they have difficulty finding a unit.

HUD is in the process of decoupling the HA ongoing administrative fees from the current FMR to the extent allowed by law. Under the notice on administrative fees for the Section 8 Rental Voucher and Rental Certificate Programs that was published in the **Federal Register** on January 24, 1995 (59 FR 32492), the HA ongoing administrative fees for the rental vouchers and certificates funded from pre-FY 1989 appropriations, representing more than one-half of the program units, were decoupled from the current FMRs. HUD is seeking legislation to decouple fees from the FMRs for rental vouchers and certificates funded from FY 1989 and subsequent appropriations. Changes in the monthly per unit fee amount would be based on changes in wage data or other objectively measurable data, as determined by HUD, that reflect the costs of administering the program.

5. *Comment:* Commenters objected that the proposed rule encourages HAs to conduct RDD surveys which are too costly and are not as reliable as local surveys of real estate agents, renters, and visual inspections of rental units. RDD surveys do not account for substandard housing, and households with telephones are not necessarily standard quality units, especially in rural areas. HUD requires HAs to use statistically valid surveys, implying the required use of the RDD approach. HUD should allow a common sense, inexpensive approach to rental housing surveys.

*Response:* HUD encourages HAs that believe their FMRs are too low to conduct statistically valid surveys to test these numbers. HUD recommends the use of RDD-type surveys, but these surveys are not mandatory. Both the RDD and the traditional methods that HUD recommends emphasize the need to obtain a complete list of the rental universe and conduct the survey in an unbiased way. Very small samples, if carefully drawn and surveyed, are more accurate than large samples drawn from biased sources or surveyed in a biased manner. Regardless of how the survey itself is conducted, the universe list must reflect the entire rent distribution of the FMR area. HAs may continue to submit traditional rental housing surveys and HUD will continue to evaluate them in terms of their sample validity.

HUD provides extensive step-by-step guidance on how to conduct statistically valid surveys, including sample selection (using either the RDD or traditional method), questionnaire wording, follow-ups of nonrespondents, and data processing. HUD is also willing to help HAs that want to conduct their own surveys.

HUD's past analysis indicates that RDD surveys appropriately reflect the rent levels of the standard quality housing stock. The impact of substandard housing is offset by the use of samples of rental housing units with telephones. The upward rent bias from surveying only units with telephones is offset by the high proportion of non-telephone units that would not meet quality standards.

HUD has always required the use of statistically valid housing surveys in FMR comments and has stated the requirements for such surveys in the preambles to the notices of proposed FMRs. In recent years, HUD has also publicized the availability of its rental housing survey guides and has conducted an outreach program to help HAs conduct statistically valid surveys. These surveys need not be conducted by professionals, and are cheap enough that most HAs can afford to conduct them. Even very small HAs have been able to use these surveys by joining their resources and conducting combined surveys.

6. *Comment:* The proposed change was particularly perplexing to several commenters in view of the Section 8 NOFA selection criteria—Efforts of HA to Provide Area-Wide Housing Opportunities for Families.

*Response:* Prior to issuing the proposed regulation, HUD considered the impact of this change on efforts to encourage families to move from high poverty neighborhoods. As discussed in the response to the first comment, HUD is confident that rental housing units meeting the program standards are available throughout FMR areas, and will favorably consider requests for submarket exception rents in order to maintain opportunities for families to rent units in non-poverty neighborhoods.

7. *Comment:* The reduction in the FMR standard would make it more difficult to administer a program that mandates Family Self-Sufficiency (FSS).

*Response:* HUD provided special funding in FY 1994 for HAs to hire a service coordinator under the FSS program. The Notice of Funding Availability for FY 1995 provides additional funding for HAs to hire FSS service coordinators.

8. *Comment:* Several commenters stated that reduced FMRs were insufficient to support new construction programs like the Low Income Housing Tax Credit (LIHTC) or HOME program.



HeinOnline -- 60 Fed. Reg. 42223 1995