IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PARK PROPERTIES ASSOCIATES, L.P., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 04-1757C |
| v. | ) | |
| | ) | (Judge Allegra) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S ADDITIONAL PROPOSED FINDINGS OF UNCONTROVERTED FACT

Pursuant to RCFC 56(h)(2),[1] defendant, the United States, respectfully submits the following additional proposed findings of uncontroverted fact in support of "Defendant's Opposition to Plaintiffs' Motion for Summary Judgment as to Liability" dated August 31, 2005:[2]

A. Fair Market Rents

1. Lamartine Terrace, the rental housing project owned by Park Properties Associates, L.P. (Park Properties), and Lane Hill Senior Citizen Residence (Lane Hill), the rental housing project owned by Valentine Associates, L.P. (Valentine), are located in Westchester County,

---

[1] Rule 56(h)(2) provides, in part, that, in addition to filing a response to the moving party's proposed findings of uncontroverted, the party opposing the moving party's motion for summary judgment may file "proposed findings of uncontroverted fact as to any relevant matters not covered by the moving party's statement" and that, in the absence of a cross-motion for summary judgment, such additional statements of proposed findings "shall be set forth in a separate document."

[2] In this document, "Compl. ¶ ____" refers to the referenced paragraph(s) of the "Complaint" filed on December 10, 2004; "Answer ¶ ____" refers to the referenced paragraph(s) of "Defendant's Answer" dated February 7, 2005; "Def. App. ____" refers to the referenced page(s) of the appendix to "Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment" dated July 29, 2005; and "Def. Supp. App. ____" refers to the referenced page(s) of the appendix to "Defendant's Opposition to Plaintiffs' Motion for Summary Judgment as to Liability" dated August 31, 2005."

New York. Bolduc Depo. 22(22-24), 30(4-6),[3] Def. App. 7, 9.

2. St. John's Phase I, the rental housing project owned by St. John's I Associates, L.P. (St. John's), is located in Brooklyn, New York. Compl. ¶ 3; Answer ¶ 3; Salmond Depo. 15(13-18),[4] Def. App. 122.

3. During the years 1994 to 2004, the Department of Housing and Urban Development (HUD) published in the Federal Register the following fair market rents for existing housing in the Westchester County, NY, fair market rents area in which LaMartine Terrace and Lane Hill are located:

| Effective Date | 0-Bedroom | 1-Bedroom | 2-Bedroom |
|---|---|---|---|
| 10/1/94 | $631 | $ 822 | $1,001 |
| 9/14/95 | $605 | $ 788 | $ 960 |
| 10/1/95 | $620 | $ 807 | $ 983 |
| 2/21/96 | $620 | $ 807 | $ 983 |
| 10/1/96 | $636 | $ 828 | $1,009 |
| 10/1/97 | $654 | $ 852 | $1,038 |
| 10/1/98 | $675 | $ 881 | $1,073 |
| 10/1/99 | $698 | $ 910 | $1,108 |
| 10/1/00 | $720 | $ 939 | $1,144 |
| 10/1/01 | $753 | $ 982 | $1,196 |
| 10/1/02 | $782 | $1,020 | $1,242 |
| 10/1/03 | $814 | $1,062 | $1,294 |

[3] In this document, "Bolduc Depo. ____(____)" refers to the referenced page(s) and (parenthetically) line(s) of the transcript of the deposition of Stephen Bolduc in this case by the Government on July 1, 2005. Plaintiffs Park Properties Associates, L.P., and Valentine Associates, L.P., designated Mr. Bolduc to testify upon their behalf with respect to deposition topics numbered 1 through 6 set forth in the Government's notice of Rule 30(b)(6) deposition. See Bolduc Depo. 15(21-25)-16(1-6), Def. App. 5; Def. App. 34-37 (Rule 30(b)(6) deposition notice).

[4] In this document, "Salmond Depo. ____(____)" refers to the referenced page(s) and (parenthetically) line(s) of the transcript of the deposition of Henry Salmond in this case by the Government on July 1, 2005. Plaintiff St. John's I Associates, L.P., designated Mr. Salmond to testify upon its behalf with respect to deposition topics numbered 7 through 17 set forth in the Government's notice of Rule 30(b)(6) deposition. See Salmond Depo. 8(8-12), Def. App. 120; Def. App. 34-37 (Rule 30(b)(6) deposition notice).

| | | | |
|---|---|---|---|
| 10/1/04 | $908 | $1,083 | $1,259 |

See 59 Fed. Reg. 49530 (9/28/94), Def. Supp. App. 65; 60 Fed. Reg. 42267 (8/15/95), Def. Supp. App. 79; 60 Fed. Reg. 48316 (9/18/95), Def. Supp. App. 84; 61 Fed. Reg. 6727 (2/21/96), Def. Supp. App. 90; 61 Fed. Reg. 49613 (9/20/96), Def. Supp. App. 92; 62 Fed. Reg. 50761 (9/26/97), Def. Supp. App. 99; 63 Fed. Reg. 52895 (10/1/98), Def. Supp. App. 106; 64 Fed. Reg. 53487 (10/1/99), Def. Supp. App. 113; 65 Fed. Reg. 57695 (9/25/00), Def. Supp. App. 120; 66 Fed. Reg. 50062 (10/1/01), Def. Supp. App. 128; 67 Fed. Reg. 61418 (9/30/02), Def. Supp. App. 134; 68 Fed. Reg. 56742 (10/1/03), Def. Supp. App. 141; 69 Fed. Reg. 59045 (10/1/04), Def. Supp. App. 151.

4. During the years 1994 to 2002, HUD published in the Federal Register the following fair market rents for existing housing in the New York, NY PMSA fair market rents area in which St. John's Phase I is located:

| Effective Date | 0-Bedroom | 1-Bedroom | 2-Bedroom | 3-Bedroom |
|---|---|---|---|---|
| 10/1/94 | $664 | $740 | $ 840 | $1,052 |
| 9/14/95 | $630 | $702 | $ 798 | $ 998 |
| 10/1/95 | $645 | $719 | $ 817 | $1,022 |
| 2/21/96 | $645 | $719 | $ 817 | $1,022 |
| 10/1/96 | $662 | $738 | $ 838 | $1,048 |
| 10/1/97 | $681 | $759 | $ 862 | $1,078 |
| 10/1/98 | $704 | $785 | $ 891 | $1,114 |
| 10/1/99 | $727 | $810 | $ 920 | $1,150 |
| 10/1/00 | $750 | $836 | $ 949 | $1,187 |
| 10/1/01 | $785 | $874 | $ 993 | $1,242 |
| 10/1/02 | $815 | $907 | $1,031 | $1,289 |

See 59 Fed. Reg. 49530 (9/28/94), Def. Supp. App. 65; 60 Fed. Reg. 42267 (8/15/95), Def. Supp. App. 79; 60 Fed. Reg. 48316 (9/18/95), Def. Supp. App. 84; 61 Fed. Reg. 6727 (2/21/96), Def. Supp. App. 90; 61 Fed. Reg. 49613 (9/20/96), Def. Supp. App. 92; 62 Fed. Reg. 50761 (9/26/97),

Def. Supp. App. 99; 63 Fed. Reg. 52895 (10/1/98), Def. Supp. App. 106; 64 Fed. Reg. 53487 (10/1/99), Def. Supp. App. 113; 65 Fed. Reg. 57695 (9/25/00), Def. Supp. App. 120; 66 Fed. Reg. 50062 (10/1/01), Def. Supp. App. 128; 67 Fed. Reg. 61418 (9/30/02), Def. Supp. App. 134; 68 Fed. Reg. 56742 (10/1/03), Def. Supp. App. 141; 69 Fed. Reg. 59045 (10/1/04), Def. Supp. App. 151.

B. Contract Rent Annual Adjustment Factors

5. From March 1995 to January 2005, HUD published in the Federal Register the following contract rent (highest cost utility included) annual adjustment factors for the Westchester County, NY, area in which LaMartine Terrace and Lane Hill are located:

| Effective Date | Turnover Units | Non-Turnover Units |
|---|---|---|
| 3/7/95 | 1.026 | 1.016 |
| 10/1/95 | 1.024 | 1.014 |
| 10/1/96 | 1.026 | 1.016 |
| 3/11/98 | 1.029 | 1.019 |
| 10/1/98 | 1.034 | 1.024 |
| 10/1/99 | 1.033 | 1.023 |
| 10/1/00 | 1.031 | 1.021 |
| 10/1/01 | 1.046 | 1.036 |
| 1/22/03 | 1.039 | 1.030 |
| 9/16/03 | 1.041 | 1.031 |
| 1/14/05 | 1.050 | 1.040 |

See 60 Fed. Reg. 12594, 12598, 12601 (3/7/95), Def. Supp. App. 154, 158, 161; 60 Fed. Reg. 55934, 55939, 55942 (11/3/95), Def. Supp. App. 190, 195, 198; 61 Fed. Reg. 66132, 66137, 66140 (12/16/96), Def. Supp. App. 215, 220, 223; 63 Fed. Reg. 11956, 11961, 11964 (3/11/98), Def. Supp. App. 241, 246, 249; 63 Fed. Reg. 51224, 51229, 51232 (9/24/98), Def. Supp. App. 267, 272, 275; 64 Fed. Reg. 72730, 72734, 72737 (12/28/99), Def. Supp. App. 292, 296, 299; 65 Fed. Reg. 66888, 66892, 66895 (11/7/00), Def. Supp. App. 318, 322, 325; 66 Fed. Reg.

59052, 59056, 59059 (11/26/01), Def. Supp. App. 344, 348, 351; 68 Fed. Reg. 3116, 3120, 3123 (1/22/03), Def. Supp. App. 372, 376, 379; 68 Fed. Reg. 54270, 54273, 54275 (9/16/03), Def. Supp. App. 398, 401, 403; 70 Fed. Reg. 2774, 2778, 2780 (1/14/05), Def. Supp. App. 422, 426, 428.

6. From March 1995 to January 2005, HUD published in the Federal Register the following contract rent (highest cost utility included) annual adjustment factors for the New York, NY PMSA area in which St. John's Phase I is located:

| Effective Date | Turnover Units | Non-Turnover Units |
|---|---|---|
| 3/7/95 | 1.026 | 1.016 |
| 10/1/95 | 1.024 | 1.014 |
| 10/1/96 | 1.026 | 1.016 |
| 3/11/98 | 1.029 | 1.019 |
| 10/1/98 | 1.034 | 1.024 |
| 10/1/99 | 1.032 | 1.022 |
| 10/1/00 | 1.031 | 1.021 |
| 10/1/01 | 1.046 | 1.036 |
| 1/22/03 | 1.039 | 1.030 |
| 9/16/03 | 1.041 | 1.031 |
| 1/14/05 | 1.047 | 1.037 |

See 60 Fed. Reg. 12594, 12598, 12601 (3/7/95), Def. Supp. App. 154, 158, 161; 60 Fed. Reg. 55934, 55939, 55942 (11/3/95), Def. Supp. App. 190, 195, 198; 61 Fed. Reg. 66132, 66137, 66140 (12/16/96), Def. Supp. App. 215, 220, 223; 63 Fed. Reg. 11956, 11960, 11963 (3/11/98), Def. Supp. App. 241, 245, 248; 63 Fed. Reg. 51224, 51228, 51231 (9/24/98), Def. Supp. App. 267, 271, 274; 64 Fed. Reg. 72730, 72734, 72737 (12/28/99), Def. Supp. App. 292, 296, 299; 65 Fed. Reg. 66888, 66892, 66895 (11/7/00), Def. Supp. App. 318, 322, 325; 66 Fed. Reg. 59052, 59056, 59059 (11/26/01), Def. Supp. App. 344, 348, 351; 68 Fed. Reg. 3116, 3120, 3123 (1/22/03), Def. Supp. App. 372, 376, 379; 68 Fed. Reg. 54270, 54273, 54275 (9/16/03), Def.

Supp. App. 348, 401, 403; 70 Fed. Reg. 2774, 2778, 2780 (1/14/05), Def. Supp. App. 422, 426, 428.

C. Park Properties HAP Contract: Contract Rents, Utility Allowances, Gross Rents

7. From June 1, 1994, through July 11, 2001, the contract rents, utility allowances, and gross rents for the dwelling units covered by the Park Properties HAP Contract were as follows:

| | 0-Bedroom | 1-Bedroom | 2-Bedroom |
|---|---|---|---|
| Contract Rent | $872 | $959 | $1,053 |
| Utility Allowance | $ 27 | $ 32 | $ 34 |
| Gross Rent | $899 | $991 | $1,087 |

Def. App. 58; Def. Supp. App. 509.

8. From July 12, 2001, through October 13, 2002, the contract rents, utility allowances, and gross rents for the dwelling units covered by the Park Properties HAP Contract were as follows:

| | 0-Bedroom | 1-Bedroom | 2-Bedroom |
|---|---|---|---|
| Contract Rent | $917 | $1,002 | $1,102 |
| Utility Allowance | $ 27 | $ 32 | $ 34 |
| Gross Rent | $944 | $ 1,034 | $1,136 |

Def. Supp. App. 513, 514, 579.

9. From October 14, 2002, through May 2, 2003, the contract rents, utility allowances, and gross rents for the dwelling units covered by the Park Properties HAP Contract were as follows:

| | 0-Bedroom | 1-Bedroom | 2-Bedroom |
|---|---|---|---|
| Contract Rent | $956 | $1,040 | $1,143 |
| Utility Allowance | $ 39 | $ 40 | $ 50 |
| Gross Rent | $995 | $1,080 | $1,193 |

Def. Supp. App. 579, 581, 584.

10. From May 3, 2003, through May 9, 2004, the contract rents, utility allowances, and gross rents for the dwelling units covered by the Park Properties HAP Contract were as follows:

| | 0-Bedroom | 1-Bedroom | 2-Bedroom |
|---|---|---|---|
| Contract Rent | $ 988 | $1,071 | $1,177 |
| Utility Allowance | $ 39 | $ 40 | $ 50 |
| Gross Rent | $1,027 | $1,111 | $1,227 |

Def. Supp. App. 584, 585, 595.

11. As of May 10, 2004, the contract rents, utility allowances, and gross rents for the dwelling units covered by the Park Properties HAP Contract were as follows:

| | 0-Bedroom | 1-Bedroom | 2-Bedroom |
|---|---|---|---|
| Contract Rent | $1,017 | $1,105 | $1,213 |
| Utility Allowance | $ 39 | $ 40 | $ 50 |
| Gross Rent | $1,056 | $1,145 | $1,263 |

Def. Supp. App. 595, 597.

D. Park Properties HAP Contract: 1995-2004 Rent Adjustment History

12. During the years 1995 to 1999, Park Properties did not seek to obtain any rent adjustments under the Park Properties HAP Contract for LaMartine Terrace and Park Properties did not receive a rent adjustment during that interval. Bolduc Depo. 40(13-25)-41(1), 43(16-19), Def. App. 11, 12.

13. The New York State Housing Trust Fund Corporation is a "public housing agency" as defined in section 3 of the United States Housing Act of 1937 (42 U.S.C. § 1437a(b)(6)). See "Annual Contributions Contract," § 1 ("Definitions"), at 5, Def. App. 275.

14. On or about September 28, 2000, the New York State Housing Trust Fund Corporation (the PHA) and HUD entered an "Annual Contributions Contract" (ACC) in which the PHA agreed to provide contract administration services for project-based HAP contracts entered under

the Section 8 HAP Program. See ACC, Exhibit A (Scope of Services), at 6-26, Def. App. 298-318. Regarding contract administration services, the ACC provides that "[t]he PHA shall enter into or assume HAP contracts with owners of covered units to make housing assistance payments to the owners of such units during the HAP contract term." ACC, § 3a(1), at 7, Def. App. 277. The service area for the PHA under the ACC is the State of New York, including the fair-market-rent areas of Westchester County, New York, and the New York, NY PMSA. See ACC, Exhibits D (PHA Service Area), E (PHA Administrative Fee), Def. App. 354-355.

15. On or about October 4, 2000, the New York State Housing Trust Fund Corporation and Quadel Consulting Corporation (Quadel) entered the "Contract Between Quadel Consulting Corporation and the New York State Housing Trust Fund Corporation" in which Quadel agreed to perform the contract administration services that are the subject of the ACC between the New York State Housing Trust Fund Corporation and HUD. See Def. App. 358-387.

16. On February 27, 2001, Bill O'Neill, Rent Specialist, Quadel, advised Park Properties that, effective on December 1, 2000, Quadel became the contract administrator for the Park Properties HAP Contract. Def. Supp. App. 445.

17. By letter dated May 11, 2001, Park Properties requested that Quadel adjust the rents for LaMartine Terrace under the Park Properties HAP Contract. The letter stated: "Subject Rent Increase for Fiscal Years 2000 and 2001," 2 BR Units below FMR," and "0 and 1 BR Units Over FMR Increase Applied For Under RCS." The referenced enclosures to the letter included, among others, a "Rent Comparability Study." Def. Supp. App. 446.

18. In or about May 2001, Park Properties submitted a "Rent Comparability Study" to Quadel in support of a request for an adjustment of the rents for LaMartine Terrace under the

Park Properties HAP Contract. Def. Supp. App. 447-508; Bolduc Depo. 54(21-25)-55(1-16), Def. App. 15. The rent comparability study was per-formed by Kenneth L. Golub, MAI, American Property Counselors, Armonk, New York. In the rent comparability study, Mr. Golub opined that, as of April 16, 2001, the comparable, unassisted rent for a 0-bed-room (studio) unit was $875 per month and that the comparable, unassisted rent for a one-bed-room unit was $1,000 per month. Def. Supp. App. 448, 450.

19. On July 12, 2001, Quadel advised Park Properties that it had "processed an annual adjustment of rents for units covered by [the Park Properties HAP Contract]," effective on August 1, 2001. Under this rent adjustment, monthly contract rents were increased from $872 to $895 for the 0-bedroom units, from $959 to $981 for the one-bedroom units, and from $1,053 to $1,079 for the two-bedroom units. Def. Supp. App. 509.

20. In a July 23, 2001 letter to Mr. Tracy S. Newman of Quadel concerning rent adjustments for the years 2000 and 2001, Mr. Jerome Z. Ginsburg, the President of Friendly Management, Inc., the general partner for both Park Properties and Valentine, stated, with respect to the LaMartine Terrace and Lane Hill projects:

> When these projects were originally built and rehabilitated under the Section 8 Turnkey Program, the costs could not be supported based on existing rent levels in the City of Yonkers because of the fact that Yonkers had imposed rent control. Rent control stopped all construction in a market that was in dire need of housing. It effectively froze the rent levels at levels that did not support construction or rehabs.
>
> These Section 8 project[s] were approved at 110% of fair market rent which is really free market, not rent controlled market. Rent increases were thereafter granted on an annual basis.

> However, subsequently, [HUD] through its eminent wisdom decided to change the rent increase formula to 70% of the median rental and thereafter lowered it further which impacted on the ability to get rent increases.
>
> The [HUD] action, however, did not freeze the cost of operating the building.
>
> We sent an employee to various HUD seminars and either through her ignorance or the complexity of the process, she arrived at the conclusion that no increases were possible in this building.
>
> Mr. Bolduc and myself spent a week reviewing the HUD rent increase process and, contrary to her opinion, found that the RCS [Rent Comparability Study] Program would allow us to obtain rent increases since it does account for projects where rent control is imposed.
>
> However, because of this error, approximately seven years went by without an increase . . . .

Def. Supp. App. 511-512; see also Bolduc Depo. 45(18-20), 46(13-22), Def. App. 12, 13.

21. In a May 21, 2002 letter concerning a "Corrected Annual Adjustment Factor Rent Increase," Quadel advised Park Properties that it had "processed an annual adjustment factor rent increase for the units covered by [the Park Properties HAP Contract]," effective on July 12, 2001. Under this rent adjustment, monthly contract rents were increased from $896 to $917 for the 0-bedroom units, from $981 to $1,002 for the one-bedroom units, and from $1,079 to $1,102 for the two-bedroom units. Def. Supp. App. 513; Bolduc Depo. 57(13-23), Def. App. 15; see also "Rent Schedule" effective 7/12/01, Def. Supp. App. 514-515; Bolduc Depo. 60(7-25), Def. App. 16.

22. By letter dated June 4, 2002, Park Properties requested that Quadel adjust the rents for LaMartine Terrace under the Park Properties HAP Contract. The letter stated: "Subject Rent

Increase for Fiscal Year 2002" and "0 BR Units over FMR Increase applied for under RCS [Rent Comparability Study]." The referenced enclosures to the letter included, among others, the "Rent Comparability Study dated May 22, 2002." Def. Supp. App. 516; Bolduc Depo. 62(5-15), Def. App. 17.

23. In or about June 2002, Park Properties submitted a "Rent Comparability Study" to Quadel in support of a request for an adjustment of the rents for LaMartine Terrace under the Park Properties HAP Contract. Def. Supp. App. 517-575; Bolduc Depo. 64(19-25)-65(1-7), Def. App. 17. The rent comparability study was performed by Kenneth L. Golub, MAI, American Property Counselors, Armonk, New York. In the rent comparability study, Mr. Golub opined that, as of May 20, 2002, the comparable, unassisted rent for a 0-bed-room (studio) unit was $975 per month and the comparable, unassisted rent for a one-bedroom unit was $1,150 per month. Def. Supp. App. 518, 520.

24. On August 12, 2002, Quadel advised Park Properties that, in order to calculate the new utility allowance for the various sizes of dwelling units covered by the Park Properties HAP Contract, Quadel needed a list of the dwelling units in LaMartine Terrace by bedroom-size and apartment number. Def. Supp. App. 576; Bolduc Depo. 69(1-5), Def. App. 18. Park Properties provided that information on August 14, 2002. Def. Supp. App. 577-578; Bolduc Depo. 70(7-10, 12-25), Def. App. 19.

25. On September 11, 2002, Quadel advised Park Properties that it had "processed an annual adjustment factor rent increase and a utility allowance adjustment for the units covered by [the Park Properties HAP Contract]," effective on October 14, 2002. Under this rent adjustment, monthly contract rents were increased from $917 to $956 for the 0-bedroom units, from

$1,002 to $1,040 for the one-bedroom units, and from $1,102 to $1,143 for the two-bedroom units. Monthly utility allowances were increased to $39 for the 0-bedroom units, to $40 for the one-bedroom units, and to $50 for the two-bedroom units. Def. Supp. App. 579; Bolduc Depo. 71(5-19), Def. App. 19; see also "Rent Schedule" effective 10/14/02, Def. Supp. App. 581-582; Bolduc Depo. 73(11-19), Def. App. 19.

26. By letter dated March 3, 2003, Park Properties requested that Quadel adjust the rents for LaMartine Terrace under the Park Properties HAP Contract. The letter stated: "Subject Rent Increase for Fiscal Year 2003," "2 BR Units below FMR," and "0 and 1 BR Units over FMR Increase applied for under RCS [Rent Comparability Study]." The referenced enclosures to the letter included, among others, the "[c]over sheet of Rent Comparability Study, (already on file from earlier years)." Def. Supp. App. 583; Bolduc Depo. 74(7-10, 16-18), Def. App. 20.

27. On March 26, 2003, Quadel advised Park Properties that it had "processed an annual adjustment factor rent increase for the units covered by [the Park Properties HAP Contract]," effective on May 3, 2003. Under this rent adjustment, monthly contract rents were increased from $956 to $988 for the 0-bedroom units, from $1,040 to $1,071 for the one-bedroom units, and from $1,143 to $1,177 for the two-bedroom units. Def. Supp. App. 584; Bolduc Depo. 76(4-16), Def. App. 20; see also "Rent Schedule" effective 5/13/03, Def. Supp. App. 585-587; Bolduc Depo. 78(20-25)-79(1-3), Def. App. 21.

28. By letter dated March 10, 2004, Park Properties requested that Quadel adjust the rents for LaMartine Terrace under the Park Properties HAP Contract. The letter stated: "Subject Rent Increase for Fiscal Year 2003 [sic]," "2 BR Units below FMR," and "0 and 1 BR Units over FMR Increase applied for under RCS [Rent Comparability Study]." The referenced enclosures to

the letter included, among others, the "Rent Comparability Study – Up-date Letter." Def. Supp. App. 588; Bolduc Depo. 79(17-25)-80(1-2), Def. App. 21.

29. In or about March 2004, Park Properties submitted a rent comparability study update to Quadel in support of a request for an adjustment of the rents for LaMartine Terrace under the Park Properties HAP Contract. Def. Supp. App. 589-594; Bolduc Depo. 80(21-25)-81(1-2), Def. App. 21. The rent comparability study update was performed by Kenneth L. Golub, MAI, American Property Counselors, Armonk, New York. Mr. Golub opined that, "under conditions in effect on and around March 1, 2004," the comparable, unassisted rent for a 0-bedroom (studio) unit was "at least" $975 per month and that the compar-able, unassisted rent for a one-bedroom unit was "at least" $1,150 per month. Def. Supp. App. 589, 590.

30. On April 28, 2004, Quadel advised Park Properties that it had "processed an annual adjustment factor rent increase for the units covered by [the Park Properties HAP Contract]," effective on May 10, 2004. Under this rent adjustment, monthly contract rents were increased from $988 to $1,017 for the 0-bedroom units, from $1,071 to $1,105 for the one-bedroom units, and from $1,177 to $1,213 for the two-bedroom units. Def. Supp. App. 595; Bolduc Depo. 83(3-16), Def. App. 22; see also "Rent Schedule" effective 5/10/04, Def. Supp. App. 597-599; Bolduc Depo. 85(16-25), Def. App. 22.

E. Valentine HAP Contract: Contract Rents, Utility Allowances, Gross Rents

31. As of January 2, 1994, the contract rents, utility allowances, and gross rents for the dwelling units covered by the Valentine HAP Contract were as follows:

| | 0-Bedroom | 1-Bedroom | 2-Bedroom |
|---|---|---|---|
| Contract Rent | $853 | $963 | $1,103 |
| Utility Allowance | $ 22 | $ 26 | $ 30 |

| | | | |
|---|---|---|---|
| Gross Rent | $875 | $989 | $1,133 |

Def. App. 79.

32. From January 2, 1995, through July 31, 2001, the contract rents, utility allowances, and gross rents for the dwelling units covered by the Valentine HAP Contract were as follows:

| | 0-Bedroom | 1-Bedroom | 2-Bedroom |
|---|---|---|---|
| Contract Rent | $880 | $ 994 | $1,138 |
| Utility Allowance | $ 24 | $ 26 | $ 30 |
| Gross Rent | $904 | $1,020 | $1,168 |

33. From August 1, 2001, through October 13, 2002, the contract rents, utility allowances, and gross rents for the dwelling units covered by the Valentine HAP Contract were as follows:

| | 0-Bedroom | 1-Bedroom | 2-Bedroom |
|---|---|---|---|
| Contract Rent | $892 | $1,016 | $1,162 |
| Utility Allowance | $ 24 | $ 26 | $ 30 |
| Gross Rent | $916 | $1,042 | $1,192 |

Def. App. 83; Def. Supp. App. 602.

34. From October 14, 2002, through January 1, 2003, the contract rents, utility allowances, and gross rents for the dwelling units covered by the Valentine HAP Contract were as follows:

| | 0-Bedroom | 1-Bedroom | 2-Bedroom |
|---|---|---|---|
| Contract Rent | $928 | $1,053 | $1,204 |
| Utility Allowance | $ 24 | $ 33 | $ 42 |
| Gross Rent | $952 | $1,086 | $1,246 |

Def. Supp. App. 602, 669.

35. From January 2, 2003, through May 9, 2004, the contract rents, utility allowances, and gross rents for the dwelling units covered by the Valentine HAP Contract were as follows:

| | 0-Bedroom | 1-Bedroom | 2-Bedroom |
|---|---|---|---|
| Contract Rent | $964 | $1,092 | $1,204 |
| Utility Allowance | $ 24 | $ 33 | $ 42 |
| Gross Rent | $988 | $1,125 | $1,246 |

Def. Supp. App. 674, 675, 691.

36. As of May 10, 2004, the contract rents, utility allowances, and gross rents for the dwelling units covered by the Valentine HAP Contract were as follows:

| | 0-Bedroom | 1-Bedroom | 2-Bedroom |
|---|---|---|---|
| Contract Rent | $ 992 | $1,128 | $1,241 |
| Utility Allowance | $ 24 | $ 33 | $ 42 |
| Gross Rent | $1,016 | $1,161 | $1,283 |

Def. Supp. App. 691, 693.

F. Valentine HAP Contract: 1995-2002 Rent Adjustment History

37. On May 10, 1995, Beryl H. Niewood, Acting Multifamily Director, Housing Division, HUD New York Regional Office, advised Valentine that HUD had approved an adjustment of the contracts rents for Lane Hill under the Valentine HAP Contract based upon published AAFs, effective on January 2, 1995. Under this rent adjustment, monthly contract rents were increased from $853 to $880 for the 0-bedroom units, from $963 to $994 for the one-bedroom units, and from $1,103 to $1,138 for the two-bedroom units. Def. App. 83; see also DPFUF ¶ 19.

38. During the years 1995 to 2000, Valentine did not seek to obtain any rent adjustments for Lane Hill under the Valentine HAP Contract and Valentine did not receive a rent adjustment during that interval. Bolduc Depo. 90(25)-91(1-16), Def. App. 24.

39. On or about January 18, 2001, Quadel advised Valentine that, effective on December 1, 2000, Quadel became the contract administrator for the Valentine HAP Contract. Def. Supp. App. 600.

40. By letter dated May 11, 2001, Valentine requested that Quadel adjust the rents for Lane Hill under the Valentine HAP Contract. The letter stated: "Subject Rent Increase for Fiscal Year 2001," "2 BR Units below FMR," and "0 and 1 BR Units Over FMR Increase Applied For Under RCS [Rent Comparability Study]." The referenced enclosures to the letter included, among others, a "Rent Comparability Study." Def. Supp. App. 601; Bolduc Depo. 93(23-25)-94(1-10), Def. App. 24-25.

41. On July 12, 2001, Quadel advised Valentine that Quadel had "processed an annual adjustment of rents for the units covered by [the Valentine HAP Contract]," effective on August 1, 2001. Under this rent adjustment, monthly contract rents were increased from $880 to $892 for the 0-bedroom units, from $994 to $1,016 for the one-bedroom units, and from $1,138 to $1,162 for the two-bedroom units. Def. Supp. App. 602.

42. By letter dated June 4, 2002, Valentine requested that Quadel adjust the rents for Lane Hill under the Valentine HAP Contract. The letter stated: "Subject Rent Increase for Fiscal Year 2002" and "0 BR Units over FMR Increase applied for under RCS [Rent Comparability Study]." The referenced enclosures to the letter included, among others, a "Rent Comparability Study dated May 20, 2002." Def. Supp. App. 603; Bolduc Depo. 96(9-19), Def. App. 25.

43. In or about June 2002, Valentine submitted a rent comparability study update to Quadel in support of a request for an adjustment of the rents for Lane Hill under the Valentine HAP Contract. Def. Supp. App. 604-664; Bolduc Depo. 99(10-21), Def. App. 26. The rent comparability study update was performed by Kenneth L. Golub, MAI, American Property Counselors, Armonk, New York. Mr. Golub opined that, as of May 20, 2002, the comparable, unassisted rent for a 0-bedroom (studio) unit was $950 per month and that the comparable,

unassisted rent for a one-bedroom unit was $1,100 per month. Def. Supp. App. 605, 607.

44. On August 12, 2002, Quadel advised Valentine that, in order to calculate the new utility allowance for the various sizes of dwelling units covered by the Valentine HAP Contract, Quadel needed a list of the dwelling units in Lane Hill by bedroom-size and apartment number. Def. Supp. App. 665; Bolduc Depo. 101(5-18), Def. App. 26. Valentine provided that information on August 14, 2002. Def. Supp. App. 666-668; Bolduc Depo. 101(23-25)-102(1-18), Def. App. 26-27.

45. On September 10, 2002, Quadel advised Valentine that Quadel had "processed an annual adjustment factor rent increase and a utility allowance adjustment for the units covered by [the Valentine HAP Contract]," effective on October 14, 2002. Under this rent adjustment, monthly contract rents were increased from $892 to $928 for the 0-bedroom units, from $1,016 to $1,053 for the one-bedroom units, and from $1,162 to $1,204 for the two-bedroom units. Monthly utility allowances were increased from $26 to $33 for the one-bedroom units and from $30 to $42 for the two-bedroom units. Quadel did not approve a change in the utility allowance for the 0-bedroom units. Def. Supp. App. 669-670; Bolduc Depo. 102(23-25)-103(1-6), Def. App. 27; <u>see</u> <u>also</u> "Rent Schedule" effective 10/14/02, Def. Supp. App. 671-672; Bolduc Depo. 105(13-22), Def. App. 27.

46. By letter dated October 22, 2002, Valentine requested that Quadel adjust the rents for Lane Hill under the Valentine HAP Contract. The letter stated: "Subject Rent Increase for Fiscal Year 2003," "2 BR Units below FMR," and "0 and 1 BR Units over FMR Increase applied for under RCS [Rent Comparability Study]." The referenced enclosures to the letter included, among others, the "[c]over sheet of Rent Comparability Study, (already on file from earlier this

year)." Def. Supp. App. 673; Bolduc Depo. 106(23-25)-107(1-9), Def. App. 28.

47. On November 26, 2002, Quadel advised Valentine that Quadel had approved an annual adjustment factor rent increase for the 0-bedroom and one-bedroom units covered by the Valentine HAP Contract]," effective on January 2, 2003. Under this rent adjustment, monthly contract rents were increased from $928 to $964 for the 0-bedroom units and from $1,053 to $1,092 for the one-bedroom units. The monthly contract rent for the two-bedroom units, i.e., $1,204, was not adjusted. Def. Supp. App. 674; Bolduc Depo. 108(14-19), Def. App. 28; see also "Rent Schedule" effective 1/2/03, Def. Supp. App. 675-676; Bolduc Depo. 110(10-18), Def. App. 29.

48. By letter dated November 11, 2003, Valentine requested that Quadel adjust the rents for Lane Hill under the Valentine HAP Contract. The letter stated: "Subject Rent Increase for Fiscal Year 2004," "2 BR Units below FMR," and "0 and 1 BR Units over FMR Increase applied for under RCS [Rent Comparability Study]." The referenced enclosures to the letter stated: "Cover Sheet of Rent Comparability Study, (already on file from previous year)." Def. Supp. App. 677; Bolduc Depo. 111(6-18), Def. App. 29.

49. On November 19, 2003, Quadel acknowledged receipt of Valentine's November 11, 2003 AAF rent adjustment request and responded to that request as follows:

> In order to complete the processing of your request additional information is required. Please submit the following by December 4, 2003:
>
> 1. Rent Comparability Study – Although a study was done last year, an updated version must be submitted this year as per page 5 of the attached HUD Notice H 2002-10.
>
> 2. Owner Report of Unit Turnover – Again, although one was submitted, we will need a corrected one. Please fill out the attached

> form for the total move ins from the HAP anniversary date (January 2, 2003) to current date.

Def. Supp. App. 678; Bolduc Depo. 112(7-18), Def. App. 29.

50. On December 8, 2003, Quadel returned to Valentine the latter's November 11, 2003 AAF rent adjustment request submission, stating that the submission was not complete because it did not contain a rent comparability study or a report of unit turnover. Quadel stated that Valentine "may wish to submit a new AAF rent increase request that includes all required items." Def. Supp. App. 679; Bolduc Depo. 112(22-25)-113(1-11), Def. App. 29.

51. On March 10, 2004, in response to a request by Valentine, Quadel sent Valentine a blank Form HUD-92273-A (Owner Format for Reporting Unit Turnover). Def. Supp. App. 680-683.

52. By letter dated March 10, 2004, Valentine requested that Quadel adjust the rents for Lane Hill under the Valentine HAP Contract. The letter stated: "Subject Rent Increase for Fiscal Year 2004," "2 BR Units below FMR," and "0 and 1 BR Units over FMR Increase applied for under RCS [Rent Comparability Study]." The referenced enclosures to the letter included, among others, "Rent Comparability Study – Up-date letter." Def. Supp. App. 684; Bolduc Depo. 114(15-25)-115(1-2), Def. App. 30.

53. In or about March 2004, Valentine submitted a rent comparability study update to Quadel in support of a request for an adjustment of the rents for Lane Hill under the Valentine HAP Contract. Def. Supp. App. 685-690; Bolduc Depo. 115(20-25)-116(1), Def. App. 30. The rent comparability study update was performed by Kenneth L. Golub, MAI, American Property Counselors, Armonk, New York. Mr. Golub opined that, "under conditions in effect on and

around March 1, 2004," the comparable, unassisted rent for a 0-bedroom (studio) unit was "at least" $950 per month and that the comparable, unassisted rent for a one-bedroom unit was "at least" $1,100 per month. Def. Supp. App. 685, 686.

54. On April 2, 2004, Quadel advised Valentine that Quadel had "processed an annual adjustment factor rent increase for the units covered by [the Valentine HAP Contract]," effective on May 10, 2004. Under this rent adjustment, monthly contract rents were increased from $964 to $994 for the 0-bedroom units, from $1,092 to $1,128 for the one-bedroom units, and from $1,204 to $1,241 for the two-bedroom units. Def. Supp. App. 691-692; Bolduc Depo. 116(22-25)-117(1), Def. App. 30; see also "Rent Schedule" effective 5/10/04, Def. Supp. App. 693-695; Bolduc Depo. 119(12-20), Def. App. 31.

55. On April 28, 2004, Quadel advised Valentine that Quadel had "reviewed and corrected the annual adjustment factor rent increase" for the 0-bedroom units under the Valentine HAP Contract. The monthly contract rent for the 0-bedroom units was changed from $994 to $992. Def. Supp. App. 696-697; Bolduc Depo. 120(20-25), Def. App. 31; see also corrected "Rent Schedule" effective 5/10/04, Def. Supp. App. 698-700; Bolduc Depo. 121(25)-122(1-19), Def. App. 31-32.

G. St. John's HAP Contract: Contract Rents, Utility Allowances, Gross Rents

56. From July 1, 1994, through June 30, 1996, the contract rents, utility allowances, and gross rents for the dwelling units covered by the St. John's HAP Contract were as follows:

| | 0-Bedroom | 1-Bedroom | 2-Bedroom | 3-Bedroom |
|---|---|---|---|---|
| Contract Rent | $812 | $950 | $1,082 | $1,257 |
| Utility Allowance | $ 30 | $ 34 | $ 40 | $ 47 |
| Gross Rent | $842 | $984 | $1,122 | $1,304 |

Def. App. 147.

57. From July 1, 1996, until the expiration or termination of the St. John's HAP Contract in 2002, the contract rents, utility allowances, and gross rents for the dwelling units covered by the St. John's HAP Contract were as follows:

| | 0-Bedroom | 1-Bedroom | 2-Bedroom | 3-Bedroom |
|---|---|---|---|---|
| Contract Rent | $831 | $ 973 | $1,108 | $1,287 |
| Utility Allowance | $ 32 | $ 38 | $ 44 | $ 50 |
| Gross Rent | $863 | $1,011 | $1,152 | $1,337 |

Def. App. 173.

H. St. John's HAP Contract: 1995-2002 Rent Adjustment History

58. In or about August 1996, St. John's submitted to HUD a rent comparability study for St. John's Phase I. The rent comparability study was prepared by Mr. Eugene Chin, Certified General License #45-24084 (New York), and dated August 2, 1996. Mr. Chin opined that the comparable, unassisted rent for 0-bedroom units was $515 per month, the comparable, unassisted rent for one-bedroom units was $630 per month, the comparable, unassisted rent for two-bedroom units was $800 per month, and the comparable, unassisted rent for three-bedroom units was $970 per month. See Def. App. 150-153; Salmond Depo. 19(23-25)-20(1-6), Def. App. 123.

59. In light of the August 1996 rent comparability study for St. John's Phase I, HUD determined that, based upon the overall limitation upon contract rents contained in the St. John's HAP Contract, St. John's was not entitled to an adjustment of the contract rents under the HAP Contract effective on the July 1, 1995 contract anniversary date. Def. App. 154-172; Salmond Depo. 20(21-25)-21(1-4), Def. App. 123.

60. Effective on July 1, 1996, HUD adjusted the contract rents under the St. John's HAP Contract based upon the application of published AAFs, to $831 per month for the 0-bedroom units, to $973 per month for the one-bedroom units, to $1,108 per month for the two-bedroom units, and to $1,287 per month for the three-bedroom units. Def. App. 173-176; Salmond Depo. 22(17-25)-23(1-10), Def. App. 124.

61. During the years 1997 to 2002, the rents for St. John's Phase I under the St. John's HAP Contract were not adjusted. Salmond Depo. 24-32, Def. App. 124-126.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/John E. Kosloske
JOHN E. KOSLOSKE
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., Room 8012
Washington, D.C. 20530
Tele: (202) 307-0282
(FAX)(202) 514-8624

Attorneys for Defendant

OF COUNSEL:

NANCY CHRISTOPHER
Acting Associate General Counsel

HOWARD SCHMELTZER
Assistant General Counsel

C. ALLEN VILLAFUERTE
Trial Attorney
Office of General Counsel
Department of Housing
and Urban Development
Washington, DC

AUGUST 31, 2005