IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PARK PROPERTIES ASSOCIATES, L.P., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 04-1757C |
| v. | ) | |
| | ) | (Judge Allegra) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS IN PART OR,
IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT

## PRELIMINARY STATEMENT

In their opposition to "Defendant's Motion to Dismiss in Part, or, in the Alternative, for Partial Summary Judgment," dated July 29, 2005, plaintiffs, Park Properties Associates, L.P. (Park Properties), Valentine Associates, L.P. (Valentine), and St. John's I Associates, L.P. (St. John's) (referred to collectively herein as "the Owners"), argue that the Government has conceded liability in the above-captioned action because, in our dispositive motion, we did not "challenge" the Owners' assertion that, "by failing to make rent adjustments as required by [the Owners'] Housing Assistance Payments Contracts (HAP Contracts), the government breached those contracts." Pl. Opp. 1-2.[1] The Owners also argue that the six-year statute of limitations applicable to this litigation "does not bar claims for diminished rent during the years subsequent to 1998 based on the government's failure to make rent adjustments from 1995 to 1998," Pl. Opp. 3, and

[1] In this reply brief, "Pl. Opp. ____" refers to the referenced pages of "Plaintiffs' Opposition to Defendant's Motion to Dismiss in Part or, in the Alternative, for Partial Summary Judgment" dated August 31, 2005, and "Compl. ¶ ____" refers to the referenced paragraph(s) of the Complaint filed in this case on December 10, 2004.

that the Owners, in any case, "should be permitted to recover damages with respect to all inadequate payments after December 10, 1998." Pl. Opp. 7.[2] For the reasons set forth below, these arguments are without merit.

## ARGUMENT

### I. The Government Has Not Conceded Liability Upon The Owners' Rent Adjustment Claims.

The Owners assert that, because the Government did not apply for a summary judgment with respect to their rent adjustment claims, the Government has "conceded liability" upon the Owners' claims. See Pl. Opp. 1-3. The short answer to this contention is that we have not conceded liability upon any of the Owners' rent adjustment claims. See Defendant's Answer dated February 7, 2005, ¶¶ 20, 21; "Defendant's Opposition to Plaintiffs' Motion for Summary Judgment as to Liability," dated August 31, 2005.

Nothing in the Court's April 21, 2005 scheduling order purports to require the Government to present its position upon the Owners' breach-of-contract claims through the procedural vehicle of a motion pursuant to Rule 12 and/or 56 or that the omission of the Government to do so would be deemed a concession of liability upon the Owners' claims. The Owners, moreover, do not cite any legal precedent to that effect and we are not aware of any such authority.

---

[2] Plaintiff St. John's, however, "concedes that it does not have a claim for contract rents after the expiration dates of the [St. John's HAP Contract], as it expired in stages on June 30, 2002, September 14, 2002 and December 14, 2002 respectively . . . ." Pl. Opp. 3 n.2. St. John's acknowledges that, because St. John's "did not have a contract with the government" after those dates and the terms of the rent subsidy agreements entered by St. John's after those dates "did not contain automatic annual adjustment mechanisms like the subject HAP Contract for St. Johns," "the government was not liable for the failure to adjust contract rents after that date." Id.

II. The Federal Circuit's Decision In Brown Park Is Dispositive Of The Owners' Rent Adjustment Claims For The Years 1995-1998, Including The Owners' Contention That The Statute Of Limitations Does Not Bar Claims For Diminished Contract Rents After 1998 Based Upon The Government's Failure To Make Rent Adjustments From 1995 To 1998.

The Owners contend that, after 1994 for Park Properties, after 1995 for Valentine, and after 1996 for St. John's, the Department of Housing and Urban Development (HUD) failed to make annual rent adjustments in accordance with section 1.8b of the Owners' HAP contracts "on the HAP Contracts' anniversary dates," which, the Owners posit, "resulted in substantially lower housing assistance payments being made by HUD to [the Owners] since HUD's first failure to make the required automatic annual adjustments to those contracts." Compl. ¶ 18.

These rent adjustment claims accrued, and the six-year statute of limitations (28 U.S.C. § 2501) applicable to the claims started to run, on the anniversary dates of the HAP contracts in 1995, 1996, 1997, and 1998 when HUD did not make the annual contract rent adjustments allegedly required by section 1.8b of the HAP Contracts. As the Federal Circuit held in Brown Park Estates–Fairfield Development Co. v. United States, 127 F.3d 1449, 1455 (Fed. Cir. 1997), which also concerned rent adjustment claims under HAP contracts with rent adjustment provisions virtually identical to the rent adjustment provisions of the Owners' HAP contracts in the present case, "[a]t each of these specific points in time [i.e., the contract anniversary dates], the government's liability was fixed and [the project owners] were entitled to institute an action."[3]

The Owners commenced the present litigation on December 10, 2004, which is more than six years after the anniversary dates under the Owners' HAP contracts for the years 1995, 1996,

[3] See also Park Village Apartments v. United States, 25 Cl. Ct. 729, 733 (1992) (statute of limitations barred claims based upon rent determinations that occurred more than six years before suit was filed).

1997, and 1998 – the dates upon which the Owners' breach-of-contract claims for each of those years accrued. The Owners' rent adjustment claims for contract years 1995-1998, therefore, are barred by the six-year statute of limitations set forth in 28 U.S.C. § 2501.

This means that not only are the Owners barred from recovering damages for contract years 1995-1998 based upon the alleged improper failure of HUD to adjust HAP contract rents in accordance with annual adjustment factors for those years, but also that the Owners may not pursue rent adjustment claims for HAP contract years after 1998 based in whole or in part upon the consequential effects of the alleged improper failure of HUD to adjust contract rents during the 1995-1998 period. Brown-Park, 127 F.3d at 1457-58; accord Statesman II Apartments, Inc. v. United States, 66 Fed. Cl. 608, 625-26 (2005) (citing Brown-Park).

The Owners invoke the "continuing claim" doctrine, contending that it applies so as to avoid the bar of the statute of limitations to their pre-1999 rent adjustment claims. The Owners argue that consideration of the conditions of the type of claims to which, historically, courts have applied the continuing claim doctrine identified in Friedman v. United States, 159 Ct. Cl. 1, 310 F.2d 381 (1962),[4] leads to the conclusion that the continuing claim doctrine also applies to the Owners' rent adjustment claims. See Pl. Opp. 5-7.

In Brown Park, however, the Federal Circuit held that the continuing claim doctrine did not apply to Section 8 rent adjustment claims indistinguishable from the rent adjustment claims

[4] The three conditions of a "continuing claim" identified in Friedman are: (1) the case turns upon pure issues of law or upon specific issues of fact which the court is to decide for itself; (2) Congress has not interposed an administrative agency or officer charged with the duty of determining the claimant's eligibility for the money claimed (i.e., there is no discretionary administrative determination at issue); and (3) if there are fact issues, they are "sharp and narrow." Id., 159 Ct. Cl. at 7, 310 F.2d at 384-85.

in the present case. 127 F.3d at 1455.[5] The Owners assert that Brown Park has been undermined by Hatter v. United States, 203 F.3d 795 (Fed. Cir. 2000), in which the Federal Circuit, sitting en banc, revisited the continuing claim doctrine and discussed Brown Park, among other decisions. Hatter, however, did not overrule Brown Park. When the Federal Circuit, acting en banc, intends to overrule a previous decision, it does so *expressly*. See Knorr-Bremse Systeme Fuer Nutzfahrzeuge GMBH v. Dana Corp., 383 F.3d 1337, 1341 (Fed. Cir. 2004) (en banc) ("We now hold that no adverse inference that an opinion of counsel was or would have been unfavorable flows from an alleged infringer's failure to obtain or produce an exculpatory opinion of counsel. Precedent to the contrary is overruled."); Reflectone, Inc. v. Dalton, 60 F.3d 1572, 1583 (Fed. Cir. 1995) (en banc) ("To the extent that Dawco and cases relying on Dawco can be read to suggest otherwise, they are overruled."). Brown Park remains a binding precedent upon the Court of Federal Claims[6] and, thus, is controlling upon the applicability of the continuing claim doctrine to the Owners' rent adjustment claims.[7]

---

[5] In Brown Park, the Federal Circuit stated that, "[b]ased on our conclusion that appellants have not asserted a continuing claim, we do not need to address whether appellants would have met the Friedman conditions for applying the continuing claim doctrine." 127 F.3d at 1459 n.13.

[6] For a recent decision of the Court of Federal Claims that follows and applies the reasoning of Brown Park in rejecting a claimant's attempt to invoke the continuing claim doctrine to avoid the statute of limitations, see Davidson v. United States, 66 Fed. Cl. 206, 209-10 (2005).

[7] The Owners assert that "[n]o court . . . has applied the Friedman test to claims involving the government's failure to make rent adjustments in Section 8 cases." Pl. Opp. 5. We disagree. The Court of Federal Claims itself in the Brown Park litigation applied the Friedman conditions and concluded that the Section 8 rent adjustment claims of the plaintiffs in that case did not satisfy any of those conditions. See Brown Park Estates–Fairfield Development Co. v. United States, 34 Fed. Cl. 464, 467 (1995), aff'd on other grounds, 127 F.3d 1449 (Fed. Cir. 1997).

III. The Owners' Claim For Damages Upon Their Rent Adjustment Claims Prior To The Anniversary Dates Of Their HAP Contracts In 1999 Are Barred By The Statute Of Limitations.

The Owners contend that, in any case, they should be permitted to recover damages for underpaid rent subsidies after December 10, 1998, which is within six years of the date upon which the present litigation was instituted. See Pl. Opp. 7-8. According to the Owners, "each month that the government failed to pay the increased rent it was contractually obligated to pay constituted another claim against the government." Pl. Opp. 7. In support of that argument, the Owners invoke Friedman and the continuing claim doctrine. However, as discussed above, that doctrine is not applicable to Section 8 rent adjustment claims such as the claims in this case. See Brown Park, 127 F.3d at 1455.

Next, the Owners argue that "the HAP Contracts called for monthly performance by the government of its obligation to pay rent subsidies" and that, "[i]n that sense, payments for the subject month actually arose each month, and each month in which HUD did not meet its payment obligation there was a breach of the HAP Contracts for that month." Pl. Opp. 8. Thus, the argument goes, "[i]t was upon the occurrence of the breach that the statute of limitations began to run" and, consequently, the Owners' "claims with respect to the months immediately following December 10, 1998 are not barred by [28 U.S.C. § 2501]." Id. We disagree.

The Owners' claims in this case are based entirely upon the failure of HUD to adjust contract rents on the HAP contract anniversary dates. The Owners do not attribute the underpayment of rent subsidies to any other cause. The Owners' claim for underpaid rent subsidies before the 1999 HAP contract anniversary dates, therefore, relates directly to and is completely dependent upon whether HUD failed to make rent adjustments in earlier years in violation of the HAP con-

tracts. The claim, thus, is barred by the statute of limitations because the alleged breach(es) of contract to which it relates occurred more than six years before the present suit was commenced. See Brown Park, 127 F.3d at 1455, 1457-58, 1459.

The Owners' reliance upon Franconia Associates v. United States, 536 U.S. 129 (2002), is misplaced. The petitioners in Franconia were developers of low-income, rural rental housing properties financed with low-interest mortgage loans issued by the Farmers Home Administration (FmHA). Under their loan agreements with FmHA, the petitioners allegedly enjoyed the right to prepay the loans at any time, the effects of which would have been termination of the petitioners' participation in the Federal low-income rental housing program and a release from the low-income use restrictions imposed by that housing program. Subsequently, the Emergency Low Income Housing Preservation Act of 1987, as amended (42 U.S.C. § 1472(c)) (ELIHPA) was enacted, which placed restraints upon the prepayment of FmHA loans. Petitioners instituted suit, contending, among other things, that ELIHPA effected a repudiation of their loan contracts with FmHA.

The Federal Circuit in Franconia held that the petitioners' suit was time-barred because it was not commenced within six years of the enactment of ELIHPA, the date upon which the court of appeals concluded the breach-of-contract claims accrued and the statute of limitations began to run. The Supreme Court, however, reversed the Federal Circuit's judgment. Accepting for purposes of its decision that the loan contracts guaranteed the absolute prepayment right petitioners alleged, the Court concluded that the enactment of ELIHPA qualified as a repudiation of the parties' bargain, not a present breach of the loan agreements. 536 U.S. at 133. "Accordingly," the Court held, "breach would occur, and the six-year limitations period would commence to run,

when a borrower tenders prepayment and the Government dishonors its obligation to accept the tender and release its control over use of the property that secured the loan." Id.

As the Supreme Court explained in Franconia, in the case of a repudiation of a contract before the repudiating party's time for performance is due, the time of accrual of a right of action for breach of contract depends upon whether the injured party elects to treat the repudiation as a present breach. 536 U.S. at 144. If so, the accrual date of the cause of action is accelerated from the time of performance to the date of such election. Id. But if the injured party instead opts to await performance, the cause of action accrues, and the statute of limitations commences to run, from the time fixed for performance rather than from the earlier date of repudiation. Id. Applying these standards to the petitioners' claims, the Supreme Court opined that, "[u]nless petitioners treated ELIHPA as a present breach by filing suit prior to the date indicated for performance, breach would occur when a borrower attempted to prepay, for only at that time would the Government's responsive performance become due." Id. at 143 (footnote omitted).

Assuming for the sake of discussion that the 1994 amendments to the Section 8 statute and/or HUD Notice 95-12 constituted a repudiation of the Owners' right to "automatic" annual rent adjustments, as the Owners evidently assert, Franconia is of no help to them. The Owners here did not choose to treat the supposed repudiation as a present breach of contract. Their rent adjustment claims, therefore, accrued, and the statute of limitations started to run, from the time fixed for performance, which, as discussed above, in the case of the rent adjustment claims for the years 1995, 1996, 1997, and 1998, was the HAP contract anniversary date in each of those years. This suit, therefore, was commenced more than six years after the rent adjustment claims for those years accrued. Hence, those claims are barred by 28 U.S.C. § 2501.

CONCLUSION

For the foregoing reasons and those set forth in "Defendant's Motion to Dismiss in Part or, in the Alternative for Partial Summary Judgment" dated July 29, 2005, the Court should dismiss for lack of jurisdiction, pursuant to RCFC 12(b)(1), (a) plaintiffs' rent adjustment claims for the years 1995 through 1998, (b) any claim for breach of plaintiff St. John's HAP Contract, which was executed in stages with different effective dates, with respect to dwelling units to which Stage 1 applies based upon HUD's failure to adjust contract rents under the St. John's HAP Contract on or after July 1, 2002, and (c) any claim for breach of plaintiff St. John's HAP Contract with respect to dwelling units to which Stage 2 or Stage 3 applies based upon the failure of HUD to adjust contract rents under the St. John's HAP Contract after the July 1, 2002 contract anniversary date. Alternatively, the Court should enter partial summary judgment for defendant pursuant to RCFC 56(b) upon those claims because there is no genuine issue of material fact as to any of those claims and defendant is entitled to judgment upon them as a matter of law.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/John E. Kosloske
JOHN E. KOSLOSKE
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., Room 8012
Washington, D.C. 20530
Tele: (202) 307-0282
(FAX)(202) 514-8624

Attorneys for Defendant

OF COUNSEL:

NANCY CHRISTOPHER
Acting Associate General Counsel

HOWARD SCHMELTZER
Assistant General Counsel

C. ALLEN VILLAFUERTE
Trial Attorney
Office of General Counsel
Department of Housing
and Urban Development
Washington, DC

SEPTEMBER 23, 2005