No. 04-1757C
(Judge Allegra)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

PARK PROPERTIES ASSOCIATES, L.P., et al.,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

---

# PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT WITH RESPECT TO APPLICATION OF OVERALL LIMITATION TO CALCULATION OF DAMAGES

---

Harry J. Kelly, Esq.
NIXON PEABODY LLP
401 Ninth Street, N.W., Suite 900
Washington, D.C. 20004
P: (202) 585-8000
F: (202) 585-8080

Counsel for the Plaintiffs

February 23, 2007

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .......... iii

STATEMENT OF THE ISSUES .......... 2

STATEMENT OF THE CASE .......... 2

1. The Nature of the Case .......... 2

2. The Parties .......... 2

3. Status of the Case and the Present Proceedings .......... 3

STATEMENT OF FACTS .......... 4

ARGUMENT .......... 7

I THE COURT SHOULD GRANT SUMMARY JUDGMENT WHERE THERE IS NO MATERIAL FACTUAL DISPUTE .......... 7

II THE OVERALL LIMITATION CANNOT BE APPLIED HERE TO RESTRICT THE PLAINTIFFS' DAMAGES. .......... 7

A. The Express Terms Of The HAP Contract Prohibit the Application of the Overall Limitation Here. .......... 8

B. Courts Construing the Overall Limitation Agree That It Does Not Constrain the Plaintiffs' Damages Here. .......... 10

1. This Court Has Already Determined that In The Absence of A Comparability Study, the AAAF- Based Contract Rent Applies. .......... 10

2. Prior Judicial Constructions Of The Overall Limitation Concur that In The Absence Of Comparability Studies, The AAAF-Based Contract Rent Applies .......... 11

C. Both the Section 8 Statute and HUD's Practices Thereunder Require That The Plaintiffs Receive the Full AAAF-Based Rent Adjustments .......... 14

1. At The Outset of the Section 8 Program, HUD Granted Rent Adjustments Based Solely On the AAAFs. .......... 14

2. In Subsequent Years, Congress Limited The Scope of the Overall Limitation. .......... 15

Page

D. The 1987 Act Expressly Prohibits the Application of the Overall Limitation Here. .......... 18

III THE COURT SHOULD DIRECT THE ENTRY OF DAMAGES FOR THE PLAINTIFFS ON THE BASIS OF THE AAAF-ADJUSTED RENTS. .......... 20

CONCLUSION .......... 21

## TABLE OF AUTHORITIES

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)....................7

Cisneros v. Alpine Ridge, 508 U.S. 10 (1993)....................12

Cuyahoga Metro. Hous. Auth. v. United States, 57 Fed. Cl. 751 (2003).................. passim

Cuyahoga Metro. Hous. Auth. v. United States, 65 Fed. Cl. 534 (2005)....................13

Hunt v. Cromartie, 526 U.S. 541, 143 L.Ed. 2d 731, 110 S.Ct. 1545 (1999)....................7

National Leased Housing Assn. v. United States, 22 Cl. Ct. 649 (1991), aff'd, 105 F.3d 1423 (Fed. Cir. 1997)....................12, 16

Park Properties Assocs., L.P. v. United States, 74 Fed. Cl. 264 (2006).................. passim

PCL Const. Services, Inc. v U.S., 47 Fed. Cl. 745 (2000)....................10

### STATUTES

42 U.S.C. §1437f (as amended).................. passim

Department of Housing and Urban Development Reform Act of 1989, Pub.L. 101-235, § 801, 103 Stat. 1987, 2057-2059 (1989)....................16

Departments of Veterans Affairs and Housing and Urban Development, and Independent Agencies Appropriations Act , 1995, Pub.L. No. 103 – 327, 108 Stat. 2298, 2315 (1994)....................2

Housing and Community Development Act of 1974, Pub.L. 93 - 383, Title II, § 201(a), 88 Stat. 633, 749 (1974)....................4, 5, 6

Housing and Community Development Act of 1987, Pub.L. 100 – 242, § 142, 101 Stat. 1815, 1850 (1988)....................15, 16, 18, 19

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PARK PROPERTIES ASSOCIATES, L.P., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | No. 04-1757C<br>(Judge Allegra) |

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
WITH RESPECT TO APPLICATION OF OVERALL LIMITATION TO
CALCULATION OF DAMAGES

The Plaintiffs, Park Properties Associates, L.P., Valentine Associates, L.P., and St. John's I Associates, L.P. (jointly, the "Plaintiffs"), by and through undersigned counsel, respectfully submit this motion for partial summary judgment pursuant to RCFC 56 and the Court's Order dated December 19, 2006 on the application of the so-called "overall limitation" provision of their respective Housing Assistance Payments Contracts ("HAP Contracts") to the calculation of damages for the breach identified by this court in its Opinion dated November 17, 2006. Park Properties Assocs., L.P. v. United States, 74. Fed. Cl. 264 (2006) (the "Opinion"). In that Opinion, the Court determined that the Government breached its contracts with the Plaintiffs by failing to make automatic annual adjustments to their Section 8 rental assistance payments pursuant to the terms of the Plaintiffs' respective HAP Contracts. The Plaintiffs assert that the "overall limitation" provision of their HAP Contracts cannot be applied here to limit the damages to which the Plaintiffs are entitled, pursuant to the Opinion. In support of this Motion, the Plaintiffs rely upon the pleadings of record in this case, the following Brief, and the accompanying Appendix.

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT WITH RESPECT TO APPLICATION OF OVERALL LIMITATION TO CALCULATION OF DAMAGES**

## STATEMENT OF THE ISSUES

The sole issue to be determined is "whether the overall limitation provision in the HAP contracts affects the amount of damages recoverable for breach of contract in this case." Order of December 19, 2006 (the "Order") at 1 (Appendix to Plaintiffs' Motion For Partial Summary Judgment With Respect To Application Of Overall Limitation To Calculation Of Damages ("Plfs. App."), Exhibit 1 hereto, at 1). Further, the Court directed in that Order that "[t]he parties shall not address any other issues at this time." Id.

## STATEMENT OF THE CASE

1. The Nature of the Case

The nature of the case asserted in the Plaintiffs' Complaint is stated in the Opinion, where it explains that the Plaintiffs "allege that the government repudiated [its HAP Contracts with the Plaintiffs] in 1994, when Congress amended the controlling statute to alter the way in which rent increases were to be determined." Park Properties Assocs., L.P. v. United States, 74. Fed. Cl. 264 (2006). These changes were made in the Departments of Veterans Affairs and Housing and Urban Development, and Independent Agencies Appropriations Act , 1995, Pub.L. No. 103-327, 108 Stat. 2298, 2315 (1994) (the "1994 Act"). In the Opinion, the Court concluded, inter alia, that "Congress, indeed, effectuated a repudiation of the relevant HAP contracts in modifying the mechanism for determining rent increases." Id. at 265-266

2. The Parties

The parties include the three Plaintiffs and the United States of America. The Plaintiffs are the owners of three multifamily apartment properties located in the State of New York.

Plaintiff Park Properties Associates L.P. ("Park") owns the Lamartine Terrace Apartments, a multifamily apartment building located in the City of Yonkers, N.Y. Plaintiff Valentine Associates L.P. ("Valentine") owns the Lane Hill Apartments, a multifamily apartment building also located in the City of Yonkers, N.Y. Plaintiff St. John's I Associates, L.P. ("St. John's") is the owner of St. John's I, a multifamily apartment building located in the City of New York. Park and Valentine entered into Housing Assistance Payments Contracts ("HAP Contracts") with the U.S. Department of Housing and Urban Development ("HUD"), pursuant to the Section rental housing assistance program, as set forth in 42 U.S.C. §1437f (as amended). St. John's entered into a HAP Contract with HUD in September 1980.[1] Among other things, these HAP Contracts obligated HUD to make monthly rental assistance payment and provided for the annual adjustment of those rental assistance payments. The nature and operation of those rent adjustment provisions were the subject of much of the Opinion (see 74 Fed. Cl. at 266-270) and are discussed in more detail below.

The United States of America ("Government") is the Defendant in this action. HUD, one of the departments of the Government, is a party to each of the HAP Contracts with the Plaintiffs.

3. Status of the Case and the Present Proceedings

At the conclusion of the Opinion, the Court directed the parties to submit a joint status report, "indicating how this case should proceed," including a proposed schedule. Id. at 277. On

---

[1] Opinion at 267; Plaintiffs' Proposed Findings of Uncontroverted Facts In Support Of Motion For Partial Summary Judgment filed herewith (cited herein as "Plaintiffs' Findings") at ¶¶ 1-3. The Plaintiffs' Findings are submitted in compliance with RCFC 56(h)(1) and for the convenience of the Court, but are substantially identical to the original Proposed Findings of Uncontroverted Facts filed by the Plaintiffs on July 29, 2005 ("Plaintiffs' Initial Findings"). Citations to relevant documents in the Plaintiffs' Findings have been revised to include references to those documents in the attached Appendix.

December 11, 2006, the parties submitted the requested Joint Status Report (the "Report," Plfs. App. 2). According to that Report, the parties were in agreement that in the Opinion, the Court "has rendered its ruling upon liability issues in this case," and that "[t]he remaining issues, broadly speaking, are the appropriate measure and quantum of damages." Report at 1 (Plfs App. 2). The parties agreed that additional briefing would be desirable to resolve these issues. Id. With respect to the scope of that briefing, the Plaintiffs stated their view that "the measure of damages should be based on the adjustment method contained in Paragraph 1.8b" of their respective HAP Contracts." Id. In response, the government raised a number of issues, including whether the "'overall limitation' provision contained in [the Plaintiffs' HAP Contracts is] a constraint upon the damages plaintiffs may recover for the breach of contract held by the Court" in the Opinion. Id. at 2 (Plfs. App. 3). The Government raised a series of additional issues, including issues that, in its view, might arise if the overall limitation were in fact deemed to affect damages here, such as the meaning and application of the "material difference" provision in the HAP Contracts. Id. at 2 – 3 (Plfs. App. 3-4).

In its Order, the Court determined that such briefing should proceed, "but be limited to the issue of whether the overall limitation provision in the HAP contracts affects the amount of damages recoverable for breach of contract in this case." Order at 1 (Plfs. App. 1). Further, the Court warned that "[t]he parties shall not address any other issues at this time." Id. The present Motion, this supporting Brief, and accompanying Appendix are submitted pursuant to the directions in the Order.

## STATEMENT OF FACTS

The Plaintiffs are the owners of three multifamily apartment properties that entered into HAP Contracts with HUD. These HAP Contracts were authorized pursuant to the Section 8 rental assistance program, created by the Housing and Community Development Act of 1974,

Pub.L. 93-383, Title II, § 201(a), 88 Stat. 633, 749 (1974) ("1974 Act"), as amended, pursuant to which HUD made monthly payments to the Plaintiffs to provide housing to low and middle income families. According to the 1974 Act, HUD was authorized to make annual adjustments to the owners' rents, pursuant to changes in the local housing market:

> The assistance contract shall provide for adjustment annually or more frequently in the maximum monthly rents for units covered by the contract to reflect changes in the fair market rentals established in the housing area for similar types and sizes of dwelling units or, if the Secretary determines, on the basis of a reasonable formula.

1974 Act, §201(a), codified at 42 U.S.C. §1437f(c)(2)(A) (as amended).

Implementing these provisions, § 1.8b of the subject HAP Contracts established a procedure to provide annual rent adjustments, based on the "automatic annual adjustment factors" ("AAAFs") to be published by HUD:

> b. Automatic Annual Adjustments.
>
> (1) Automatic Annual Adjustment Factors will be determined by the Government at least annually . . . .
>
> (2) On each anniversary date of the Contract, the Contract Rents shall be adjusted by applying the applicable Automatic Annual Adjustment Factors most recently published by the Government. Contract Rents may be adjusted upward or downward, as may be appropriate; however, in no case shall the adjusted Contract Rents be less than the Contract Rents on the effective date of the Contract.

HAP Contracts, § 1.8b (Plfs. App. 10, 24, 43). The annual adjustment process set out in the HAP Contract, therefore, was straightforward: as the anniversary date approached, HUD would apply the latest AAAF to the existing year's rents to determine the next year's rents. In this way, the rent adjustment was automatic: owners did not have to take any steps to request or apply for a rent increase, and the increase took effect without further action unless HUD, under limited circumstances, took action to prevent the increase from taking effect. In other words, in the

absence of HUD action, the owner received the AAAF-determined rent at the time of the next contract anniversary date.

The nature of that action was described in the 1974 Act and in §1.8d of the HAP Contract. The 1974 Act included a provision that "[a]djustments in the maximum rents as hereinbefore provided shall not result in material differences between the rents charged for assisted and comparable unassisted units, as determined by the Secretary." 1974 Act, §201(a). Reflecting this language, § 1.8d of the HAP Contracts provides that the automatic annual rent adjustment could be restricted if the adjusted rent was "materially different" from the rent for "comparable unassisted units," pursuant to affirmative action taken by HUD:

> Notwithstanding any other provision of this Contact, adjustments as provided in this Section shall not result in material differences between the rents charged for assisted and comparable unassisted units, ***as determined by the Government***; provided, that this limitation shall not be construed to prohibit differences in rents between assisted and comparable unassisted units to the extent that such differences may have existed with respect to the initial Contract Rent.

HAP Contract at §1.8d (emphasis added) (Plfs. App. 10, 24, 43). As explained in more detail below, the method eventually adopted by HUD to make the determinations authorized by §1.8d was to perform comparability studies, pursuant to which HUD compared the rents of the subject Section 8 properties to the rents at other comparable unassisted properties.[2]

It was a change in this long-standing rule – in legislation adopted by Congress in 1994 that shifted the burden to owners to do their own comparability studies – that the court found to

---

[2] Issues such as the nature of the "material difference" between the Section 8 contract rent and the rent at "comparable unassisted units" were raised by the Government in the Joint Status Report. As noted, the Court's Order directed the parties to address the effect of the overall limitation on the recoverable damages here and not to address other issues in this briefing. As noted in the Joint Status Report, issues such as the material difference are "subsidiary issues" that do not need to be addressed in order to determine whether the overall limitation affects the calculation of the Plaintiffs' damages. Report at 2 (Plfs. App. 3). Plaintiffs reserve the right to discuss other pertinent issues at trial, in response to arguments raised in the present briefing by the Government, or in such other briefing as may be ordered later by the Court.

constitute a breach of the HAP Contract in its Opinion here (at 272-274) and in its earlier decision in Cuyahoga Metro. Hous. Auth. v. United States, 57 Fed. Cl. 751 (2003) ("Cuyahoga I"). Indeed, in its Cuyahoga I decision, this Court has already answered the sole issue presented in this briefing:

> Accordingly, this court holds that ***the HAP contracts expressly require HUD to provide [the owner] with annual adjustments barring the agency's invocation of the overall limitation***.

Cuyahoga I at 762 (emphasis added). Thus, as the Court decided in Cuyahoga I, where, as here, only HUD had authority to conduct comparability studies under §1.8d, and where HUD did not exercise that authority, the Plaintiffs are entitled to receive the full AAAF-based rent adjustments. The bases for this holding are discussed in more detail below.

## ARGUMENT

### I THE COURT SHOULD GRANT SUMMARY JUDGMENT WHERE THERE IS NO MATERIAL FACTUAL DISPUTE

Pursuant to RCFC 56, "[s]ummary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Cuyahoga I at 758, citing Hunt v. Cromartie, 526 U.S. 541, 549, 143 L.Ed. 2d 731, 110 S.Ct. 1545 (1999) and Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986). As the following discussion explains, the Plaintiffs are entitled to summary judgment here because there is no genuine issue of material fact that the overall limitation should not be applied in determining the damages recoverable by the Plaintiffs here.

### II THE OVERALL LIMITATION CANNOT BE APPLIED HERE TO RESTRICT THE PLAINTIFFS' DAMAGES.

In its Order, the Court made clear that there was only one issue it wished the parties to address in the present round of briefing: whether the so-called "overall limitation" contained in the Plaintiffs' HAP Contracts "affects the amount of damages recoverable for breach of contract

in this case." Order at 1 (Plfs. App. 1). Indeed, to emphasize the narrow focus of the pending inquiry, the Court warned that "[t]he parties shall not address any other issues at this time." Id. Mindful of the Court's directive, the following argument explains that the "overall limitation" cannot and should not be used to restrict the Plaintiffs' damages here.

### A. The Express Terms Of The HAP Contract Prohibit the Application of the Overall Limitation Here.

The point of departure for the Court's consideration here is the language of the HAP Contract itself, the terms of which reflect the agreement of the parties. As this Court has previously observed,

> Several interpretational guides mark this decisional path. First, as an over-arching matter, the court, in interpreting a contract, seeks to "effectuate its spirit and purpose." Toward this end, contract interpretation "begins with the plain meaning of the agreement." "An interpretation which gives a reasonable meaning to all parts," the law provides," will be preferred to one which leaves a portion of it, useless, inexplicable, inoperative, void, insignificant, meaningless, superfluous, or achieves a weird and whimsical result."

Cuyahoga I at 759 (intervening citations omitted).

According to the express terms of the HAP Contracts here, the first step to determine the Plaintiffs' damages is Section 1.8b, which provides that HUD will calculate a new contract rent each year, based on the annual adjustment factors it calculates:

> b. Automatic Annual Adjustments.
>
> (1) Automatic Annual Adjustment Factors will be determined by the Government at least annually . . . .
>
> (2) On each anniversary date of the Contract, the Contract Rents shall be adjusted by applying the applicable Automatic Annual Adjustment Factors most recently published by the Government. Contract Rents may be adjusted upward or downward, as may be appropriate; however, in no case shall the adjusted Contract Rents be less than the Contract Rents on the effective date of the Contract.

HAP Contract, § 1.8b (Plfs. App. 10, 24, 43). In other words, as the anniversary date approached each year, HUD would multiply its most-recently published annual adjustment factors against the current year's contract rents to determine the contract rent for the next year. As § 1.8b explains, rents could be raised, lowered or maintained with each AAAF adjustment, although rents were never to be reduced below the level of the original contract rents.

There was a second contract provision which applied to the annual adjustment process. This was the so-called "overall limitation," contained in §1.8d of the HAP Contracts, which provided that:

> Notwithstanding any other provision of this Contact, adjustments as provided in this Section shall not result in material differences between the rents charged for assisted and comparable unassisted units, ***as determined by the Government***; provided, that this limitation shall not be construed to prohibit differences in rents between assisted and comparable unassisted units to the extent that such differences may have existed with respect to the initial Contract Rent.

HAP Contracts at §1.8d (emphasis added) (Plfs. App. 10, 24, 43). The overall limitation thus served to limit the amount of annual adjustments but only, as the express language of the HAP Contract states, "as determined by HUD." In other words, this was not a self-executing provision, nor was it a formal "cap" on the amount of the annual adjustment. On the contrary, it empowered HUD to take action to determine whether the factor-adjusted rent was "materially different" from the rents charged for "assisted and comparable unassisted units." The express language of the HAP Contract thus makes clear that in order to affect the factor-based rents set pursuant to §1.8b, above, HUD had to make some determination about the level of comparable rents.

HUD made no such determination here. In fact, the record is bare of any evidence that HUD took any action, within the time period for which damages are sought, to conduct comparability studies here. All of the Plaintiffs have testified that during that time period, HUD

did not perform, and they did not receive from HUD, any comparability studies for their properties. Plaintiffs' Findings at ¶¶ 11-13.

Thus, while the express language of the HAP Contracts conveyed authority for HUD to make a determination concerning the relation between the factor-based rents and the rents at "comparable unassisted units," HUD did not exercise that authority. There is no need to speculate about HUD's intentions here, or its interpretation of the HAP Contracts. Such idiosyncratic interpretations, if they exist, are impermissible to alter the express terms of a contract. PCL Const. Services, Inc. v U.S., 47 Fed. Cl. 745, 785 (2000) ("subjective, unexpressed intent of one party or a post-hoc 'interpretation' . . . is irrelevant for interpreting the contract."). In any event, they are ultimately irrelevant here because the simple fact is that HUD did not make any such determination. In the absence of any such determination, the provisions of §1.8d of the HAP Contract have not been satisfied, and there is no contractual basis to use that provision to reduce the amount of damages otherwise recoverable by the Plaintiffs.

### B. Courts Construing the Overall Limitation Agree That It Does Not Constrain the Plaintiffs' Damages Here.

#### 1. This Court Has Already Determined that In The Absence of A Comparability Study, the AAAF-Based Contract Rent Applies.

While the express language of the HAP Contracts is itself the best evidence of the parties' undertaking here, it is valuable to look at the construction that Federal courts have applied to those provisions. This Court itself has already closely scrutinized the nature and operation of the overall limitation in its Cuyahoga I opinion. Its views, examining language substantially identical to the text of the HAP Contracts here, confirm that the overall limitation does not affect the calculation of damages to which the Plaintiffs are entitled here. Thus, in Cuyahoga I, the Court construed the relationship between the annual adjustment requirement

contained in §1.8b and the overall limitation provision in §1.8d. In determining that HUD had in that case – as in this case – violated the owner's right to receive a factor-based rent adjustment, the Court focused on the use of the word "automatic" contained in §1.8b. As the Court explained, "the 'automatic' references in this provision, as well as the annual periodicity established therein, plainly reveal an intent that the adjustments would occur without [the owner] having to take any significant action." Cuyahoga I at 759.

As the Court explained, the only event that could prevent the "automatic" rent adjustment from taking effect was if HUD made an express determination that that factor-based rent exceeded the "material difference," pursuant to §1.8d. In other words, unless HUD takes affirmative action, the "automatic" provisions of §1.8b takes effect:

> [The overall limitation] provision requires HUD to determine whether there is a material difference. . . . Logic, however, suggests that for the adjustment in the first part of the contract [i.e., §1.8b] to be truly "automatic," ***the burden of demonstrating a material difference must lie on HUD.***

Cuyahoga I at 759. Thus, the Court's decision in Cuyahoga I realized that the overall limitation provision was not self-executing: If any party was to do a rent comparability study, that party was HUD, and unless HUD took affirmative action to limit the owner's rent adjustment, the owner was entitled to would receive the full rent adjustment to which it was entitled pursuant to §1.8b. Applying the same logic here, the Plaintiffs are entitled to receive the full AAAF-based rent adjustments.

**2. Prior Judicial Constructions Of The Overall Limitation Concur that In The Absence Of Comparability Studies, The AAAF-Based Contract Rent Applies.**

As the Cuyahoga I Court reasoned, this conclusion was the logical extension of earlier judicial constructions of the HAP contract rent adjustment provision, which similarly concluded that the rent established by §1.8b took effect unless HUD took affirmative action:

> the exegeses over the overall limitation provision in these opinions consistently indicate that a projected owner would receive an automatic adjustment ***unless HUD came forward with evidence triggering the limitation***.

Id. at 760 (emphasis added). Thus, the Cuyahoga I Court drew from Cisneros v. Alpine Ridge, 508 U.S. 10 (1993), where the U.S. Supreme Court recognized that it would only be in "presumably exceptional cases" that the overall limitation would apply and that

> [b]ecause the automatic adjustment factors are themselves geared to reflect trends in the local or regional housing market, theoretically it should not be often that the comparability would suggest material difference between the *Section 8* and private market rents.

Cuyahoga I at 760, quoting Alpine Ridge at 19 – 20 (emphasis original). Moreover, summing up the holdings of several other earlier decisions, including National Leased Housing Assn. v. United States, 22 Cl. Ct. 649 (1991), aff'd, 105 F.3d 1423 (Fed. Cir. 1997), the Court in Cuyahoga I concluded that "the critical statutory language here places on HUD, and only on HUD, the burden of coming forward to show that a particular adjustment would violate the limitation." Cuyahoga I at 760. Thus, Alpine Ridge, National Leased Housing, Cuyahoga I and the other cases cited there all reached the conclusion that §1.8d placed the burden of applying the overall limitation provision solely onto HUD.

If HUD had sole authority to conduct those comparability studies, but did not do so – in other words, if the "as determined by the Government" language in §1.8d was not exercised – then there is no legal or factual basis to deny the Plaintiffs the full AAAF-based adjustment established by §1.8b. The logic is undeniable. In Cuyahoga I, this Court recognized that the Supreme Court's references in Alpine Ridge "to comparability studies being invoked only in 'exceptional cases' and to automatic adjustment being 'presumptive'" required the rejection of the Government's claim that the HAP Contract could be construed to require owners to perform comparability studies to obtain their "automatic" adjustment. Cuyahoga I at 760. That same

language and logic require that, where HUD has ***not*** affirmatively exercised its powers under §1.8d, the "presumptive" factor-based rent determined by §1.8b governs: If the AAAF-adjusted rent is indeed presumptively correct, and if HUD's powers to conduct comparability analyses under §1.8b is to be exercised only in "exceptional cases," then where HUD has not exercised that power, the "presumptive" rents generated by §1.8b are the only possible rents that can apply.

Indeed, that was expressly the conclusion reached by this Court in Cuyahoga I. At the conclusion of its analysis, after reviewing the identical language in the subject HAP Contracts, the prior judicial opinions and the statutory history of the Section 8 program, the Court expressly held that the plaintiffs there were entitled to the AAAF-based rent unless HUD conducted a comparability study:

> Accordingly, this court holds that ***the HAP contracts expressly require HUD to provide [the owner] with annual adjustments barring the agency's invocation of the overall limitation***.

Cuyahoga I at 762 (emphasis added) Thus, in its Cuyahoga I decision, the Court has already determined the outcome of the present dispute: where, as here, HUD did not invoke the overall limitation, "the HAP contracts expressly require HUD to provide" the AAAF-based rent adjustments to the Plaintiffs.[3]

3 The parties in Cuyahoga ultimately entered into a number of stipulations, including that the overall limitation would apply in that case. Cuyahoga Metro. Hous. Auth. v. United States, 65 Fed. Cl. 534, 543 (2005)("Cuyahoga II"). Whatever the strategic reasons that led the parties in Cuyahoga II to enter into that stipulation, the Court referred to that stipulation as a "significant concession," apparently reaffirming its view in Cuyahoga I that the AAAF-based rents applied when HUD does not perform a comparability study. Cuyahoga II at 543.

**C. Both the Section 8 Statute and HUD's Practices Thereunder Require That The Plaintiffs Receive the Full AAAF-Based Rent Adjustments.**

**1. At The Outset of the Section 8 Program, HUD Granted Rent Adjustments Based Solely On the AAAFs.**

Undoubtedly, the Government will collect snippets from decisions, including Alpine Ridge, to contend that the overall limitation was a final, unalterable restriction on the amount of rents that an owner could collect. The sole issue in those cases, however, was whether HUD had the power to conduct comparability studies, not whether, as in the present case, HUD was compelled to grant the factor-based adjustment established by §1.8b in the absence of such studies. Certainly, there is nothing in those cases to controvert the holding in Cuyahoga I that, in the absence of such studies, the owners of Section 8 properties are entitled to receive the rent established by the application of the AAAFs.

Indeed, at the outset of the Section 8 program, HUD did exactly what the Court in Cuyahoga I anticipated: that is, without invoking its authority under §1.8d, HUD routinely granted the factor-based adjustment Although the Section 8 statute, 42 U.S.C. §1437f, contained provisions authorizing HUD to limit rents in light of comparable unassisted rents, HUD did not begin to exercise that authority until sometime in 1980, when senior HUD officials first considered using comparable rents to limit the AAAF-based rents at two specific properties. See HUD Memorandum dated March 5, 1980 (Plfs. App. 67-68). The formal initiation of agency-wide rent comparability studies did not occur until the early 1980s. See Opinion, 74 Fed. Cl. at 267.

Thus, from the outset, HUD's own contemporaneous interpretation of the Section 8 statutes and the HAP Contracts allowed it to make annual rent adjustments without regard to the overall limitation provision. Certainly at the outset of the program, therefore, HUD operated

under the very rule enunciated by this Court in Cuyahoga I: HUD was to provide the owners "with annual adjustments, barring the agency's invocation of the overall limitation." Cuyahoga I at 762.

### 2. In Subsequent Years, Congress Limited The Scope of the Overall Limitation.

While the Government may try to portray the overall limitation provision as the *ne plus ultra* of the rent adjustment process, Congress has on several occasions restricted HUD's authority under §1.8d, often honoring that provision more in its breach than in its observance. In 1987, for example, Congress adopted legislation that, among other things, made numerous statutory modifications to the Section 8 program. Housing and Community Development Act of 1987, Pub.L. 100 – 242, § 142, 101 Stat. 1815, 1850 ("1987 Act"). Specifically, the 1987 Act included the following provision to assure that owners would get their full factor-based adjustment if HUD did not provide timely comparability studies:

> If the Secretary or appropriate State agency does not complete and submit to the project owner a comparability study not later than 60 days before the anniversary date of the assistance contract under this section, ***the automatic annual adjustment factor shall be applied***

1987 Act, §142(c)(2)(B) (1988) (emphasis added). Summing up these changes, this Court in Cuyahoga I made clear that the 60-day rule represented an affirmative restriction on HUD's authority under the overall limitation provision:

> Congress explicitly ratified [HUD's power to perform comparability studies] in the 1987 Act, . . . but qualified this authority by providing that if HUD did not submit comparability to a Section 8 owner within 60 days of the anniversary date of the contract, ***the full AAAF would apply***.

Cuyahoga I at 761 (footnote omitted; emphasis added), citing 42 U.S.C. §1437f(c)(2)(C)(1988).

In addition to requiring that all comparability studies have to be performed within 60 days of the relevant anniversary date, the 1987 Act also prohibited HUD from applying the

overall limitation retroactively. During the 1980s, HUD claimed that the overall limitation not only conferred a right to limit specific annual rent adjustments, but allowed the agency to reduce previously granted AAAF-based adjustments based on later comparability studies. This policy upset many owners, who had based their operating budgets on the existing Section 8 subsidies, and led to litigation between HUD and owners, including cases such as National Leased Housing Assn. In part to address concerns, at the same time it added the 60-day requirement for comparability studies, the 1987 Act also revoked HUD's claimed authority to use the overall limitation to reduce previously granted AAAF-based adjustment by providing that

> The Secretary may not reduce the contract rents in effect on or after April 15, 1987 for newly constructed, substantially rehabilitated, or moderately rehabilitated projects assisted under this section (including projects assisted under this section as in effect prior to November 30, 1983), unless the project has been refinanced in a manner that reduces the periodic payments of the owner.

1987 Act, §142(d). Here, again, Congress demonstrated that the overall limitation was not the last word in the rent adjustment process and should not be applied retroactively.

Several years later, Congress once again took steps to limit the impact of the overall limitation. In response to the on-going litigation concerning the implementation of HUD's rent comparability methodology during the 1980s and other matters, Congress adopted the Department of Housing and Urban Development Reform Act of 1989, Pub.L. 101-235, § 801, 103 Stat. 1987, 2057-2059 (1989) (the "Reform Act"). Among other things, § 801 of the Reform Act directed HUD for the first time to formalize its comparability program by adopting regulations for conducting comparability studies. Reform Act, § 801 (c). In addition, in § 801 (a), Congress directed HUD to make supplemental payment to owners in cases in which, among other circumstances, HUD had used comparability studies pursuant to its authority under the overall limitation to reduce or limit the amount of rents calculated using the AAAFs. As the Opinion explained, "[r]etrospectively, [§ 801 (a)] required HUD to pay landlords an increased

amount, above what the studies required HUD to pay under its interpretation of the contracts; prospectively, it established a limited role, under defined criteria, for HUD's future use of comparability studies." Opinion at 267.

By these actions, Congress demonstrated repeatedly that the overall limitation was not the last word in setting Section 8 rents. To be sure, §1.8d provided authority, in the context of the annual Section 8 rent adjustment process, for HUD to consider comparable unassisted rents, and, in those "presumably exceptional cases" referred to in Alpine Ridge, to restrict a specific factor based adjustment as a result of contemporaneous comparability data. But to argue that the overall limitation precludes, ***a fortiori***, any Section 8 rents in excess of the comparable rent is a proposition not supported by HUD's own practice or subsequent Congressional action, as this Court has previously determined:

> Thus, from the passage of Section 8 in 1974 until it was modified in 1995, ***the statutory mechanism clearly envisioned that annual adjustments were to be automatic unless HUD promptly performed a comparability study.***

Cuyahoga I at 761 – 762 (emphasis added).

These examples show HUD's own initial practice was to ignore its authority under §1.8d. Later, when given the opportunity to endorse a "hard" reading of the overall limitation, Congress refused to do so, explicitly allowing owners to receive the full AAAF-based rent if HUD did not exercise its §1.8d authority in a timely manner, striking down HUD's attempts to impose rent reductions based on a retroactive application of that authority and, in the Reform Act, expressly authorizing payments to owners in excess of the amount allowed by the overall limitation. See Opinion, 74 Fed. Cl. at 267. Thus, to argue that in all cases, and in all times, the overall limitation operates to restrict owners to the comparable rents is simply not supported by the text of the HAP Contract, HUD's own conduct, or the statutory history of the Section 8 program.

There is no legal basis for such a construction of the overall limitation and it should not be applied here to limit the Plaintiffs' damages.

**D. The 1987 Act Expressly Prohibits the Application of the Overall Limitation Here.**

While, as noted above, the 1987 Act is among several statutory provisions that demonstrate the limited operation of the overall limitation, it is even more directly on point because its provisions show that Congress has expressly forbidden the application of the overall limitation here. First, as noted above, Congress adopted language in the 1987 Act that precluded HUD from engaging in retroactive application of the overall limitation to reduced previously granted factor-based rent increases. Although these provisions are not directly applicable here – the issue here is the status of adjustments that were not made during the subject period, rather than the status of adjustments that were previously made – they shed light on the limited scope of the overall limitation, especially as it applies here. As the anti-retroactivity provision in § 142(d) of the 1987 Act makes clear, while the overall limitation is properly applied to current-year rent adjustments, it should not be applied retroactively to "claw back" previously-granted adjustments – even if those adjustments exceed the overall limitation. By the same logic, it should not be applied to prevent owners from receiving rent adjustments that they were previously denied. In both situations, the overall limitation should not be given retroactive effect.

There are even more explicit grounds provided by the 1987 Act to preclude the application of the overall limitation here, however. The express provisions of that legislation impose a time restriction on HUD's ability to perform comparability studies that, with respect to the specific years involved here, expired long ago. As noted above (pg. 15), § 142(c)(2)(B) of the 1987 Act provided that if HUD did not complete and submit to the property owner "a comparability study not later than 60 days before the anniversary date" of the Plaintiffs' HAP

Contracts, ***"the automatic annual adjustment factor shall be applied."*** 42 U.S.C. §1437f(c)(2)(B)(1988).

The language of the 1987 Act of § 142(c)(2)(B) is unambiguous and unequivocal: unless HUD performs and submits its comparability study within 60 days of the anniversary date, the overall limitation is inapplicable and HUD must grant the full AAAF-based rent adjustment. Addressing these provision, the Court in Cuyahoga I explained that while Congress confirmed HUD's power to conduct comparability studies in the Reform Act and in the 1994 Act, it retained the requirement that HUD perform and submit comparability studies to owners within 60 days of the anniversary dates of the HAP Contracts. Specifically, the Court explained that

> Congress retained the sixty-day limitation adopted in the 1987 Act, ***thus adhering to the view that HUD's failure to perform a comparability study would lead to an automatic adjustment.*** These provisions were left undisturbed . . .in the 1994 [Act] . . . .

Cuyahoga I at 761 (intervening references omitted; emphasis added). Whatever else Congress did with respect to HUD's authority under the overall limitation provision in the 1994 Act, therefore, it retained the rule that if HUD did not conduct timely comparability studies, the annual adjustment factors would take effect. Thus, just as the Government has contended that the Plaintiffs' claims are subject to the statute of limitations, so HUD was subject to the 60-day provision. Upon the expiration of that time restriction, HUD's power to invoke the overall limitation expired and it is legally required to grant the AAAF-based rents here.

Of course, HUD could have protected itself by performing those comparability studies during the relevant time period – nothing in the 1994 Act deprived HUD of that power if it chose to exercise it. On the contrary, however, there is absolutely no dispute that HUD did not complete and submit a comparability study to the Plaintiffs "not later than 60 days" before any of the relevant anniversary dates in this case. See Plaintiffs' Findings at ¶¶ 11-13. If HUD is now

legally barred from conducting those comparability studies – as §142(c)(2)(B) expressly provides – it has only itself to blame. Consequently, the express provisions of the 1987 Act require that the "automatic annual adjustment factor shall be applied" here to determine the Plaintiffs' damages, without regard to the overall limitation.

## III THE COURT SHOULD DIRECT THE ENTRY OF DAMAGES FOR THE PLAINTIFFS ON THE BASIS OF THE AAAF-ADJUSTED RENTS.

As shown above, there is no basis to apply the overall limitation to restrict the recovery of damages in this case. The other issues raised in the Joint Status Report – including, for example, the determination of the "material difference" and the "initial difference" – are "subsidiary issues" that do not arise unless the overall limitation applies, and therefore do not need to be addressed here. Joint Status Report at 2 (Plfs. App. 3). Most of the relevant facts, including the relevant AAAFs, are already matters of record here and are not subject to dispute. See Plaintiffs' Initial Findings at ¶ 7. A bare number of factual matters – arguably including matters such as the number of vacant units and the number of turnover and non-turnover units – remain that the parties should be able to resolve without extensive discovery or briefing.[4] If, as it determined previously, the Plaintiffs are entitled to receive the full AAAF-adjusted rents in the absence of "promptly performed" comparability studies, Cuyahoga I at 762, the other issues raised by the Government (see Joint Status Report at 3) are simply irrelevant. The Court should therefore direct the parties to prepare a stipulation with respect to the damages recoverable here,

---

[4] Facts relating to unit turnover numbers are only relevant because of provisions in the 1994 Act, codified at 42 U.S.C. §1437(c)(2)(A), that reduce the AAAFs by 1 percent in units that did not turnover since the date of the last rent adjustment. In the Opinion, the Court concluded that the 1 percent reduction did not constitute a breach of the HAP Contracts. Opinion at 274 – 276. To the extent they may be required to provide factual information relating to the effect of the 1 percent turnover units in order to determine damages pursuant to a subsequent order of the Court, the Plaintiffs do not waive their right to claim that the 1 percent turnover provision constitutes a breach of their HAP Contracts both in its theory and its application.

setting forth the contract rents, the applicable AAAFs, and the adjusted rents pursuant to applying the AAAFs without regard to the overall limitation.

## CONCLUSION

For the foregoing reasons, the Court should enter partial summary judgment on behalf of the Plaintiffs and direct that their damages should be calculated on the basis of the application of the AAAFs to the contract rents for the subject period, without applying the provisions of §1.8d of the HAP Contract to those adjusted rents.

Dated: February 23, 2007

/s/ Harry J. Kelly

Harry J. Kelly, Esq.
NIXON PEABODY LLP
401 Ninth Street, N.W., Suite 900
Washington, D.C. 20004
P: (202) 585-8000
F: (202) 585-8080

Counsel for the Plaintiffs

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY this 23rd day of February, 2007, that two copies of the foregoing Motion and Brief and the accompanying Appendix were served by U.S. Postal Service, first class mail, postage prepaid upon the following person:

John Edgar Kosloske
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
1100 L Street, N.W.
8th Floor
Washington, D.C. 20530

/s/ Harry J. Kelly
Harry J. Kelly