EXHIBIT I

No. 04-1757C
(Judge Allegra)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

PARK PROPERTIES ASSOCIATES, L.P., *et al.*,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

---

APPENDIX TO
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
WITH RESPECT TO APPLICATION OF OVERALL LIMITATION TO
CALCULATION OF DAMAGES

---

Harry J. Kelly, Esq.
NIXON PEABODY LLP
401 Ninth Street, N.W., Suite 900
Washington, D.C. 20004
(202) 585-8000

Counsel for the Plaintiffs

February 23, 2007

**Table of Contents**


| | Document | Page |
|---|---|---|
| 1. | December 19, 2006 Order | 001 |
| 2. | Joint Status Report | 002 |
| 3. | HAP Contract between Valentine Property Associates and HUD | 006 |
| 4. | HAP Contract between Park Property Associates and HUD | 021 |
| 5. | HAP Contract between St. Johns Associates and HUD | 039 |
| 6. | Affidavit of Stephen Bolduc | 056 |
| 7. | Affidavit of Henry Salmond | 059 |
| 8. | Defendant's Response to Plaintiff's First Set of Requests for Admissions | 062 |
| 9. | Declaration of Harry J. Kelly | 066 |
| 10. | HUD Memo Re: Overall Limitation of the Rent Adjustment Clause of the Standard Housing Assistance Payments Contract | 067 |

# In The United States Court of Federal Claims

No. 04-1757 C

(Filed: December 19, 2006)

PARK PROPERTIES ASSOCIATES, L.P., et al,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

**ORDER**

On December 11, 2006, the parties filed a joint status report requesting the court to order further briefing on issues related to damages. The court has reviewed this report and has determined that such briefing shall proceed, but be limited to the issue whether the overall limitation provision in the HAP contracts affects the amount of damages recoverable for breach of contract in this case. The parties shall not address any other issues at this time. The parties' briefs shall be filed in accordance with the following schedule:

1. On or before February 23, 2007, plaintiff shall file its motion for partial summary judgment on the issue of whether the overall limitation applies.

2. On or before March 26, 2007, defendant shall file its cross-motion for partial summary judgment and response.

3. On or before April 25, 2007, plaintiff shall file its response and reply.

4. On or before May 25, 2007, defendant shall file its reply.

**IT IS SO ORDERED.**

s/ Francis M. Allegra
Francis M. Allegra
Judge

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PARK PROPERTIES ASSOCIATES, L.P., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 04-1757C |
| v. | ) | |
| | ) | (Judge Allegra) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**JOINT STATUS REPORT**

Pursuant to the Court's November 17, 2006 Opinion, plaintiffs, Park Properties Associates, et al., and defendant, the United States, respectfully submit the following joint status report indicating how the above-captioned action should proceed, with an appropriate schedule:

The Court has rendered its ruling upon liability issues in this case. The remaining issues, broadly speaking, are the appropriate measure and quantum of damages. On December 5, 2006, plaintiffs' counsel and defendant's counsel had a meeting to discuss measure-of-damages issues and the content of this joint status report, including a proposed schedule for further proceedings. After extensive discussions, the plaintiffs and the defendant have identified legal issues upon which we are divided that, in the interest of judicial economy and efficiency, we believe are amenable to resolution, and should be resolved, through briefing and a ruling by the Court before the parties conduct any additional discovery in this case. Specifically, the plaintiffs believe that, in the absence of timely Government-prepared rent comparability studies, the measure of damages should be based on the adjustment method contained in Paragraph 1.8b of their respective Housing Assistance Payments (HAP) Contracts. The defendant has identified two legal issues that, it contends, must be decided before the measure of damages can be calculated in this case:

1. Is the "overall limitation" provision contained in plaintiffs' Housing Assistance Payments (HAP) contracts a constraint upon the damages plaintiffs may recover for the breach of contract held by the Court based upon the failure of the Department of Housing and Urban Development (HUD) to make annual rent adjustments upon the HAP contract anniversary dates for the relevant years?

2. If the "overall limitation" provision contained in plaintiffs' HAP contracts applies to the determination of expectancy damages for the breach of contract held by the Court, what is a "material difference" between the rents charged for assisted and comparable, unassisted units? In other words, when is a difference between the rents charged for assisted and comparable, unassisted units "material?"

The plaintiffs understand that the foregoing constitutes the defendant's statement of the legal issues relating to the "overall limitation," and reserve the right to restate and address them as appropriate in subsequent briefing.

In addition, there may be some subsidiary issues to be addressed in resolving these legal issues. For example the defendant argues that, to resolve the "overall limitation" issue, the Court will have to address, among other things, whether, in fashioning damages, the Court may disregard evidence of comparable unassisted rents contained in market rent surveys submitted by an owner (plaintiffs Park Properties Associates and Valentine Associates here) to HUD in support of requests for annual rent adjustments under the procedures established by HUD Notice 95-12. The plaintiffs reserve comment on any subsidiary issues until they are properly presented in a brief.

The parties believe that it would promote judicial economy to have the legal issues identified above resolved before conducting any further discovery because, if the Court were to rule in plaintiffs' favor that the "overall limitation" provision is not a constraint upon the determination of expectancy damages, it will have been a waste, for purposes of the present proceedings, of the parties' time and resources to have conducted discovery regarding application of the "overall limitation" provision to plaintiffs' damages claims, including the engagement of

experts to perform market rent surveys to determine comparable, unassisted rents, the preparation of expert testimony disclosures, depositions of experts, and discovery concerning the "initial difference" to be preserved when applying the "overall limitation" provision.

On the other hand, if the "overall limitation" provision were deemed not to apply, the defendant has identified the following subjects as the only discovery that potentially would be required to resolve damages issues:

1. The number of turnover and non-turnover units and vacancy rate for each of the relevant years,
2. The costs of rent comparability studies submitted by plaintiffs Park Properties Associates and Valentine Associates in support of requests for annual rent adjustments under the procedures established by HUD Notice 95-12 for the relevant years, and,
3. In the case of Park Properties Associates and Valentine Associates, discovery that for the years 1999 and 2000, the failure of those plaintiffs to receive annual rent adjustments was not the direct or proximate consequence of the requirements of the 1994 Act or HUD Notice 95-12 but, rather, the result of plaintiffs' mistaken belief that they were not eligible for rent increases because their rental housing projects were located in a housing market subject to local rent control regulation.

The plaintiffs understand the foregoing constitutes an illustrative list of the discovery that the defendant may pursue if the Court determines that the "overall limitation" does not apply. Consequently, the plaintiffs (a) neither accept nor reject that list, (b) do not waive their right to claim that discovery with respect to such issues may be irrelevant, or that discovery has already

taken place on those matters, and (c) reserve the right to seek protection from the Court with respect to any discovery requests that the defendant may serve in the future.

The parties, therefore, propose that discovery upon damages issues be deferred until the Court has resolved the legal issues described above. The parties also propose that the Court adopt the following briefing schedule for the resolution of such legal issues:

1. On or before February 23, 2007, plaintiffs and defendant shall file initial briefs (not to exceed 40 pages in length).

2. On or before March 23, 2007, plaintiffs and defendant shall file responses to the initial briefs (not to exceed 20 pages in length).

3. Within 15 days of the Court's entry of an order upon the legal issues identified above, the parties shall file a joint status report setting forth a proposed schedule for further proceedings in this case.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

/s/Harry J. Kelly
HARRY J. KELLY, ESQ.
Nixon Peabody LLP
401 9th Street, N.W., Suite 900
Washington, D.C. 20004
Tele: (202) 585-8000

Attorney for Plaintiffs

/s/John E. Kosloske
JOHN E. KOSLOSKE
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., Room 8012
Washington, D.C. 20530
Tele: (202) 307-0282
(fax)(202) 514-8624

Attorneys for Defendant

DECEMBER 11, 2006

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
SECTION 8 HOUSING ASSISTANCE PAYMENTS PROGRAM
NEW CONSTRUCTION

PART I OF THE

# HOUSING ASSISTANCE PAYMENTS CONTRACT

PRIVATE-OWNER OR FHA-OWNER PROJECT

| HAP CONTRACT LIST NUMBER AND DATE: | PROJECT NUMBER: |
|---|---|
| [illegible] 609 9/29/78 | RI 36-0003-[illegible] |

This Housing Assistance Payments Contract ("Contract") is entered into by and between the United States of America acting through the Department of Housing and Urban Development ("Government"), and Valentine Property Associates ("Owner"), pursuant to the United States Housing Act of 1937 ("Act"), 42 U.S.C. 1437, et seq., and the Department of Housing and Urban Development Act, 42 U.S.C. 3531, et seq.

The parties hereto agree as follows:

1.1 SIGNIFICANT DATES AND OTHER ITEMS; CONTENTS OF CONTRACT.

a. Effective Date of Contract. The effective date of this Contract is SEE STAGES ATTACHED , 19 __. [This date shall be no earlier than the date of Government acceptance of the project.]

b. Initial Term of Contract. The initial term of this Contract (see Section 1.4a) shall be 5 years [not to exceed five years], beginning with the effective date of this Contract and ending ______________, 19__.

c. Number and Length of Optional Additional Terms. The number and length of optional additional terms (see Section 1.4a) shall be 5 terms of 5 years each [not to exceed five years each].

d. Maximum Total Term of Contract. The maximum total term of this Contract for any unit, including all renewals (see Section 1.4a) shall be [illegible] years. [Insert 20, except that (1) in the case of a project owned by, or financed by a loan or loan guarantee from, a State or local agency, insert the number, not to exceed 40, which will provide a term ending with the scheduled maturity date for the last payment under such financing; and (2) in the case of a mobile home project, insert number as authorized by the Government pursuant to 24 CFR, Section 880.109, not to exceed 20.]

e. Fiscal Year. The ending date of each Fiscal Year (see Section 1.4b) shall be Sept. 30th [Insert March 31, June 30, September 30, or December 31, as determined by the Government].

f. Maximum Housing Assistance Commitment. The maximum amount of the commitment for housing assistance payments under this Contract (see Section 1.5a) is $ 669,520 per annum.

g. Contents of Contract. This Contract consists of Part I, Part II, and the following exhibits:

Exhibit A: The Schedule showing the number of units by size ("Contract Units") and their applicable rents ("Contract Rents");

Exhibit B: The project description;

Exhibit C: The statement of services, maintenance and utilities to be provided by Owner;

Exhibit D: The Affirmative Fair Housing Marketing Plan, if applicable, and

Additional exhibits: [Specify additional exhibits, if any. If none, insert "None."] None

Exhibit E - Daily Debt Service Computation

This Contract, including such exhibits, comprises the entire agreement between the parties hereto with respect to the matters contained herein, and neither party is bound by any representations or agreements of any kind except as contained herein or except agreements entered into in writing which are not inconsistent with this Contract.

1.2 OWNER'S WARRANTIES.

a. Legal Capacity. The Owner warrants that he has the legal right to execute this Contract and to lease dwelling units covered by this Contract.

b. Completion of Work. The Owner warrants that the project as described in Exhibit B is in good and tenantable condition and that the project has been completed in accordance with the terms and conditions of the Agreement to Enter into Housing Assistance Payments Contract ("Agreement") or will be completed in accordance with the terms on which the project was accepted. The Owner further warrants that he will remedy any defects or omissions covered by this warranty if called to his attention within 12 months of the effective date of this Contract. The Owner and the Government agree that the continuation of this Contract shall be subject to the conditions set forth in Section 3.4f of the Agreement.

1.3 FAMILIES TO BE HOUSED; GOVERNMENT ASSISTANCE.

a. Families To Be Housed. The Contract Units are to be leased by the Owner to eligible Lower-Income Families ("Families") for use and occupancy by such Families solely as private dwellings.

b. Government Assistance.

(1) The Government hereby agrees to make housing assistance payments on behalf of Families for the Contract Units, to enable such Families to lease Decent, Safe, and Sanitary housing pursuant to section 8 of the Act. Such housing assistance payments shall equal the difference between the Contract Rents for units leased by Families and the portion of such rents payable by Families as determined by the Owner in accordance with schedules and criteria established by the Government.

(2) If there is an Allowance for Utilities and Other Services and if such Allowance exceeds the Gross Family Contribution, the Owner shall pay the Family the amount of such excess on behalf of the Government upon receipt of funds from the Government for that purpose.

**1.4 TERM OF CONTRACT; FISCAL YEAR.**

a. Term of Contract.

[Alternative provisions—incorporate Alternative 1 or 2, as applicable.]

Alternative 1—General

The initial term of this Contract shall be as stated in Section 1.1b. This Contract may be renewed, at the sole option of the Owner, for the number and length of additional terms stated in Section 1.1c, provided that the total Contract term for any unit, including all renewals, shall not exceed the number of years stated in Section 1.1d. Renewal shall be automatic unless the Owner notifies the Government, no later than 60 days prior to the expiration of the current term, of his intention not to renew. If the project is completed in stages, the dates for the initial term and renewal terms shall be separately related to the units in each stage: Provided, however, that the total Contract term for all the stages, beginning with the effective date of the Contract with respect to the first stage, shall not exceed the total Contract term stated in Section 1.1d, plus two years. In any case where the project is owned by, or financed by a loan or loan guarantee from, a State or local agency, the housing assistance payments pursuant to this Contract with respect to any dwelling unit shall be payable for a period not to exceed 40 years.

Alternative 2—For mobile home project

In the case of mobile homes, the initial term of this Contract for each mobile home shall be as stated in Section 1.1b. This Contract shall be renewed, as may be mutually agreed upon by the Owner and the Government, with respect to any mobile home, for the number and length of additional terms as stated in Section 1.1c, provided that the total Contract term for any mobile home, including all renewals, shall not exceed the number of years stated in Section 1.1d. Renewals shall become effective only if either party gives written notice, no later than 60 days prior to the expiration of the current term, of his desire to renew, and the other party consents or fails to object before the expiration of the current term. If the project is completed in stages, the dates for the initial term and renewal terms shall be separately related to the mobile homes in each stage: Provided, however, that the total Contract term for all the stages, beginning with the effective date of the Contract with respect to the first stage, shall not exceed the total Contract term stated in Section 1.1d, plus two years. For purposes of this paragraph a, the term "mobile home" means the original mobile home and any replacement(s), combined.

b. Fiscal Year. The Fiscal Year for the project shall be the 12-month period ending on the date stated in Section 1.1e; Provided, however, that the first Fiscal Year for the project shall be the period beginning with the effective date of the Contract and ending on the last day of the established Fiscal Year which is not less than 12 months after such effective date. If the first Fiscal Year exceeds 12 months, the maximum total annual housing assistance payment in Section 1.5a may be adjusted by the addition of the pro rata amount applicable to the period of operation in excess of 12 months.

**1.5 MAXIMUM HOUSING ASSISTANCE COMMITMENT; PROJECT ACCOUNT.**

a. Maximum Housing Assistance Commitment. Notwithstanding any other provisions of this Contract (other than paragraph b of this Section) or any provisions of any other contract between the Government and the Owner, the Government shall not be obligated to make and shall not make any housing assistance payments under this Contract in excess of the amount per annum stated in Section 1.1f; Provided, however, that this amount shall be reduced commensurately with any reduction in the number of Contract Units or in the Contract Rents as pursuant to any other provisions of this Contract.

b. Project Account. In order to assure that housing assistance payments will be increased on a timely basis to cover increases in Contract Rents or decreases in Family Incomes:

(1) A Project Account shall be established and maintained, in an amount as determined by the Government consistent with its responsibilities under section 8(c)(6) of the Act, out of amounts by which the maximum Contract commitment per year exceeds amounts paid under the Contract for any Fiscal Year. This account shall be established and maintained by the Government as a specifically identified and segregated account. To the extent funds are available in said account, the maximum total annual housing assistance payments for any Fiscal Year may exceed the maximum amount stated in paragraph a of this Section to cover increases in Contract Rents or decreases in Family Incomes (see Section 1.9). Any amount remaining in said account after payment of the last housing assistance payment with respect to the project shall be applied by the Government in accordance with law.

(2) Whenever the Government approved estimate of the required Annual Contribution exceeds the maximum Contract commitment then in effect, and would cause the amount in the Project Account to be less than an amount equal to 40 percent of such maximum Contract commitment, the Government shall, within a reasonable period of time, take such additional steps authorized by section 8(c)(6) of the Act as may be necessary to carry out this assurance, including (as provided in that section of the Act) "the reservation of annual contributions authority for the purpose of amending housing assistance contracts or the allocation of a portion of new authorizations for the purpose of amending housing assistance contracts."

**1.6 HOUSING ASSISTANCE PAYMENTS TO OWNERS.**

a. General.

(1) Housing assistance payments shall be paid to the Owner for units under lease by Families in accordance with the Contract. The housing assistance payment will cover the difference between the Contract Rent and that portion of said rent payable by the Family as determined in accordance with the Government-established schedules and criteria.

(2) The amount of housing assistance payment payable on behalf of a Family and the amount of rent payable by such Family shall be subject to change by reason of changes in Family Income, Family composition, or extent of exceptional medical or other unusual expenses, in accordance with the Government-established schedules and criteria; or by reason of adjustment by the Government of any applicable Allowance for Utilities and Other Services. Any such change shall be effective as of the date stated in a notification of such change to the Family.

b. Vacancies During Rent-up. If a Contract Unit is not leased as of the effective date of the Contract, the Owner shall be entitled to housing assistance payments in the amount of 80 percent of the Contract Rent for the unit for a vacancy period not exceeding 60 days from the effective date of the Contract, provided that the Owner (1) commenced marketing and otherwise complied with Section 1.4 of the Agreement, (2) has taken and continues to take all feasible actions to fill the vacancy, including, but not limited to, contacting applicants on his waiting list, if any, requesting the Public Housing Agency ("PHA") and other appropriate sources to refer eligible applicants, and advertising the availability of the unit, and (3) has not rejected any eligible applicant, except for good cause acceptable to the Government.

c. Vacancies After Rent-up.

(1) If a Family vacates its unit (other than as a result of action by the Owner which is in violation of the Lease or the Contract or any applicable law), the Owner shall receive housing assistance payments in the amount of 80 percent of the Contract Rent for a vacancy period not exceeding 60 days; Provided, however, that if the Owner collects any of the Family's share of the rent for this period in an amount which, when added to the 80 percent payments, results in more than the Contract Rent, such excess shall be payable to the Government or as the Government may direct. (See also Section 1.9b.) The Owner shall not be entitled to any payment under this subparagraph unless he: (i) immediately upon learning of the vacancy, has notified the Government of the vacancy or prospective vacancy and the reasons for the vacancy, and (ii) has taken and continues to take the actions specified in paragraphs b(2) and b(3) of this Section.

(3) If the Owner evicts a Family, he shall not be entitled to any payment under paragraph c(1) of this Section unless the request for such payment is supported by a certification that (i) he gave such Family a written notice of the proposed eviction, stating the grounds and advising the Family that it had 30 days within which to present its objections to the Owner in writing or in person and (ii) the proposed eviction was not in violation of the lease or the Contract or any applicable law.

d. Limitation on Payments for Vacant Units. The Owner shall not be entitled to housing assistance payments with respect to vacant units under this Section to the extent he is entitled to payments from other sources (e.g., payments for losses of rental income incurred for holding units vacant for relocatees pursuant to Title I of the Housing and Community Development Act of 1974 or payments under Section 1.9b of this Contract).

e. Government Not Obligated for Family Rent. The Government has not assumed any obligation for the amount of rent payable by any Family or the satisfaction of any claim by the Owner against any Family other than in accordance with Section 1.9b of this Contract. The financial obligation of the Government is limited to making housing assistance payments on behalf of Families in accordance with this Contract.

SEE RIDER ATTACHED

f. Owner's Monthly Requests for Payments.

(1) The Owner shall submit monthly requests to the Government for housing assistance payments. Each such request shall set forth: (i) the name of each Family and the address and/or number of the unit leased by the Family; (ii) the address and/or the number of units, if any, not leased to Families for which the Owner is claiming payments; (iii) the Contract Rent as set forth in Exhibit A for each unit for which the Owner is claiming payments; (iv) the amount of rent payable by the Family leasing the unit for, where applicable, the amount to be paid the Family in accordance with Section 1.5c(2); and (v) the total amount of housing assistance payments requested by the Owner.

(2) Each of the Owner's monthly requests shall contain a certification by him that to the best of his knowledge and belief (i) the dwelling units are in Decent, Safe, and Sanitary condition, (ii) all the other facts and data on which the request for funds is based are true and correct, (iii) the amount requested has been calculated in accordance with the provisions of this Contract and is payable under the Contract, and (iv) none of the amount claimed has been previously claimed or paid.

(3) If the Owner has received an excessive payment, the Government, in addition to any other rights to recovery, may deduct the amount from any subsequent payment or payments.

(4) The Owner's monthly requests for housing assistance payments shall be made subject to penalty under 18 U.S.C. 1001, which provides, among other things, that whoever knowingly and willfully makes or uses a document or writing containing any false, fictitious, or fraudulent statement or entry, in any matter within the jurisdiction of any department or agency of the United States, shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

g.[1] Recoupment of Savings in Financing Costs.

(1) In the event that interim financing is continued after the first year of the term of the Contract and the debt service of the interim financing for any period of three months, after such first year, is less than the anticipated debt service under the permanent financing on which the Contract Rents were based, an amount reflecting the savings in financing cost, computed in accordance with paragraph g(2) of this Section, shall be credited by the Government to the Project Account, and withheld from housing assistance payments to the Owner. If during the course of the same year there is any period of three months in which the debt service is greater than the anticipated debt service under the permanent financing, an adjustment shall be made so that only the net amount of savings in financing cost for the year is credited by the Government to the Project Account and withheld from housing assistance payments to the Owner as aforesaid (no increased payment shall be made to the Owner on account of any net excess for the year of actual interim debt service over the anticipated debt service under the permanent financing). Nothing in this paragraph g shall be construed as requiring a reduction in the Contract Rents or precluding adjustments of Contract Rents in accordance with Section 1.8.

(2) The computation and recoupment under this paragraph g may be made on an annual or on a quarterly or other periodic basis, but in any event no later than at the end of each Fiscal Year; Provided, however, that if recoupment is to be made less often than quarterly, the amounts of recoupment shall be computed on at least a quarterly basis and the funds shall be deposited in a special account from which withdrawals may be made only with the authorization of the Government. The manner of computing the amount of recoupment shall be as follows:

(i) Determine the amount by which the debt service for the interim financing for the period in question is less than the anticipated debt service under the permanent financing on which the Contract Rents were based;

(ii) Determine what percentage the amount found under paragraph g(2)(i) of this Section is of the aggregate Contract Rents for all Contract Units for the period in question;

(iii) Apply the percentage found in paragraph g(2)(ii) of this Section to the aggregate Contract Rents for those Contract Units which are included in the Owner's claims for housing assistance payments for the period in question; and

(iv) The amount found in paragraph g(2)(iii) of this Section shall be credited to the Project Account and withheld from the next housing assistance payment or payments to the Owner.

1.7 MAINTENANCE, OPERATION AND INSPECTION.

a. Maintenance and Operation. The Owner agrees (1) to maintain and operate the Contract Units and related facilities so as to provide Decent, Safe, and Sanitary housing, and (2) to provide all the services, maintenance and utilities set forth in Exhibit C. If the Government determines that the Owner is not meeting one or more of these obligations, the Government shall have the right, in addition to its other rights and remedies under this Contract, to abate housing assistance payments in whole or in part.

b. Inspection.

(1) Prior to occupancy of any unit by a Family, the Owner and the Family shall inspect the unit and both shall certify, on forms prescribed by the Government, that they have inspected the unit and have determined it to be Decent, Safe, and Sanitary in accordance with the criteria provided in the prescribed forms. Copies of these reports shall be kept on file by the Owner for at least three years.

[1] Delete this paragraph when the project is subject to 24 CFR, Section 880.[illegible].

RIDER TO SECTION 1.6 OF HOUSING ASSISTANCE PAYMENTS CONTRACT

DEBT SERVICE PAYMENTS

(1) If a unit continues to be vacant after the 60 day period specified in paragraph b or c of this Section, the Owner may submit a claim to receive additional housing assistance payments on a semiannual basis with respect to such a vacant unit in an amount equal to the principal and interest payments required to amortize the portion of the debt attributable to that unit for the period of the vacancy, whether such vacancy commenced during rent-up or after rent-up.

(2) Additional Payments under this paragraph for any unit shall not be for more than 12 months for any vacancy period, and shall be made only if:

(i) The unit was in decent, safe and sanitary condition during the vacancy period for which payments are claimed.

(ii) The Owner has taken and is continuing to take the actions specified in paragraphs b(1)(2) and (3) or paragraphs c(1)(i) and (ii) and c(2) of this Section, as appropriate.

(iii) The Owner has demonstrated in connection with the semiannual claim on a form and in accordance with the standards prescribed by HUD with respect to the period of vacancy, that the project is not providing the Owner with revenues at least equal to the project costs incurred by the Owner, and that the amount of the payments requested is not in excess of that portion of the deficiency which is attributable to the vacant units for the period of the vacancies.

(iv) The Owner has submitted, in connection with the semiannual claim, a statement with relevant supporting evidence that there is a reasonable prospect that the project can achieve financial soundness within a reasonable time. The statement shall indicate the causes of the deficiency; the corrective steps that have been and will be taken; and the time by which it is expected that the project revenues will at least equal project costs without the additional payments provided under this paragraph.

(3) HUD may deny any application for additional payments or suspend or terminate payments if it determines, based on the Owner's statement and other evidence, that there is not a reasonable prospect that the project can achieve financial soundness within a reasonable time.

The Government shall inspect or cause to be inspected each Contract Unit and related facilities at least annually and at such other

(3) The Government shall inspect or cause to be inspected each Contract Unit and related facilities at least annually and at such other times (including prior to initial occupancy and rerenting of any unit) as may be necessary to assure that the Owner is meeting his obligation to maintain the units in Decent, Safe, and Sanitary condition and to provide the agreed upon utilities and other services. The Government shall take into account complaints by occupants and any other information coming to its attention in scheduling inspections and shall notify the Owner and the Family of its determination.

e. Units Not Decent, Safe, and Sanitary. If the Government notifies the Owner that he has failed to maintain a dwelling unit in Decent, Safe, and Sanitary condition and the Owner fails to take corrective action within the time prescribed in the notice, the Government may exercise any of its rights or remedies under the Contract, including abatement of housing assistance payments, even if the Family continues to occupy the unit. If, however, the Family wishes to be rehoused in another dwelling unit with section 8 assistance and the Government does not have other section 8 funds for such purposes, the Government may use the abated housing assistance payments for the purpose of rehousing the Family in another dwelling unit. Where this is done, the Owner shall be notified that he will be entitled to resumption of housing assistance payments for the vacated dwelling unit if (1) the unit is restored to Decent, Safe, and Sanitary condition, (2) the Family [illegible] [illegible] [illegible] [illegible] [illegible] [illegible] [illegible] [illegible]

payments.

f. Notification of Abatement. Any abatement of housing assistance payments shall be effective as provided in written notification to the Owner. The Government shall promptly notify the Family of any such abatement.

g. Overcrowded and Underoccupied Units. If the Government determines that a Contract Unit is not Decent, Safe, and Sanitary by reason of increase in Family size, or that a Contract Unit is larger than appropriate for the size of the Family in occupancy, housing assistance payments with respect to such unit will not be abated, unless the Owner fails to offer the Family a suitable unit as soon as one becomes vacant and ready for occupancy. In the case of an overcrowded unit, if the Owner does not have any suitable units or if no vacancy of a suitable unit occurs within a reasonable time, the Government will assist the Family in finding a suitable dwelling unit and require the Family to move to such a unit as soon as possible. The Owner may receive housing assistance payments for the vacated unit if he complies with the requirements of Section 1.6c(1).

1.8 RENT ADJUSTMENTS.

a. Funding of Adjustments. Housing assistance payments will be made in increased amounts commensurate with Contract Rent adjustments under this Section, up to the maximum amount authorized under Section 1.5a of this Contract.

b. Automatic Annual Adjustments.

(1) Automatic Annual Adjustment Factors will be determined by the Government at least annually; interim revisions may be made as market conditions warrant. Such Factors and the basis for their determination will be published in the Federal Register. These published Factors will be reduced appropriately by the Government where utilities are paid directly by the Families.

(2) On each anniversary date of the Contract, the Contract Rents shall be adjusted by applying the applicable Automatic Annual Adjustment Factor most recently published by the Government. Contract Rents may be adjusted upward or downward, as may be appropriate; however, in no case shall the adjusted Contract Rents be less than the Contract Rents on the effective date of the Contract.

c. Special Additional Adjustments. Special additional adjustments shall be granted, when approved by the Government, to reflect increases in the actual and necessary expenses of owning and maintaining the Contract Units which have resulted from substantial general increases in real property taxes, utility rates, or similar costs (i.e., assessments, and utilities not covered by regulated rates), but only if and to the extent that the Owner clearly demonstrates that such general increases have caused increases in the Owner's operating costs which are not adequately compensated for by automatic annual adjustments. The Owner shall submit to the Government financial statements which clearly support the increase.

d. Overall Limitation. Notwithstanding any other provisions of this Contract, adjustments as provided in this Section shall not result in material differences between the rents charged for assisted and comparable unassisted units, as determined by the Government; provided, that this limitation shall not be construed to prohibit differences in rents between assisted and comparable unassisted units to the extent that such differences may have existed with respect to the initial Contract Rents.

e. Incorporation of Rent Adjustment. Any adjustment in Contract Rents shall be incorporated into Exhibit A by a dated addendum to the Exhibit establishing the effective date of the adjustment.

f.[2] Adjustment to Reflect Actual Cost of Permanent Financing. This paragraph f shall apply if the project is not permanently financed until after the effective date of the Contract. After the project is permanently financed, the Financing Agency shall submit a certification to the Government as to the actual financing terms. If the actual debt service under the permanent financing is lower than the anticipated debt service on which the Contract Rents were based, the Contract Rents currently in effect shall be reduced commensurately, and the amount of the savings shall be credited to the Project Account. The maximum Contract commitment shall not be reduced. If the actual debt service is higher, the Contract Rents shall not be increased.

1.9 MARKETING AND LEASING OF UNITS.

a. Compliance with Equal Opportunity. Marketing of units and selection of Families by the Owner shall be in accordance with the Owner's Government-approved Affirmative Fair Housing Marketing Plan, shown as Exhibit D, and with all regulations relating to fair housing advertising.

b. Security and Utility Deposits.

(1) The Owner may require Families to pay a security deposit in an amount equal to one month's Gross Family Contribution. If a Family vacates its unit, the Owner, subject to State and local law, may utilize the deposit as reimbursement for any unpaid rent or other amount owed under the Lease. If the Family has provided a security deposit, and it is insufficient for such reimbursement, the Owner may claim reimbursement from the Government, not to exceed an amount equal to the remainder of one month's Contract Rent. Any reimbursement under this Section shall be applied first toward any unpaid rent. If a Family vacates the unit owing no rent or other amount under the Lease or if the amount owed is less than the amount of the security deposit, the Owner shall refund the full amount or the unused balance, as the case may be, to the Family.

(2) In those jurisdictions where interest is payable by the Owner on security deposits, the refunded amount shall include the amount of interest payable. All security deposit funds shall be deposited by the Owner in a segregated bank account, and the balance of this account, at all times, shall be equal to the total amount collected from tenants then in occupancy, plus any accrued interest. The Owner shall comply with all State and local laws regarding interest payments on security deposits.

(3) Families shall be expected to obtain the funds to pay security and utility deposits, if required, from their own resources and/or other private or public sources.

[2] Delete this paragraph unless the project is subject to 24 CFR, Section 880.[illegible]

c. Eligibility, Selection and Admission of Families

(1) The Owner shall be responsible for determination of eligibility of applicants, selection of families from among those determined to be eligible, and computation of the amount of housing assistance payments on behalf of each selected Family in accordance with schedules and criteria established by the Government. In the initial renting of the Contract Units, the Owner shall lease at least 30 percent to Very Low-Income Families (determined in accordance with the Government-established schedules and criteria) and shall thereafter exercise his best efforts to maintain at least 30 percent occupancy of the Contract Units by Very Low-Income Families as determined in accordance with such schedules and criteria.

(2) The Lease entered into between the Owner and each selected Family shall be on the form of Lease approved by the Government.

(3) The Owner shall make a reexamination of Family income, composition, and the extent of medical or other unusual expenses incurred by the Family, at least annually (except that such reviews may be made at intervals of no longer than two years in the case of elderly Families), and appropriate redeterminations shall be made by the Owner of the amount of Family contribution and the amount of housing assistance payment, all in accordance with schedules and criteria established by the Government. In connection with the reexamination, the Owner shall determine what percentage of Families in occupancy are Very Low-Income Families. If there are fewer than 30 percent Very Low-Income Families in occupancy, the Owner shall report the fact to the Government and shall adopt changes in his admission policies to achieve, as soon as possible, at least 30 percent occupancy by such Families.

d. Rent Redetermination after Adjustment in Allowance for Utilities and Other Services. In the event that the Owner is notified of a Government determination making an adjustment in the Allowance for Utilities and Other Services applicable to any of the Contract Units, the Owner shall promptly make a corresponding adjustment in the amount of rent to be paid by the affected Families and the amount of housing assistance payments.

e. Processing of Applications and Complaints. The Owner shall process applications for admission, notifications to applicants, and complaints by applicants in accordance with applicable Government requirements and shall maintain records and furnish such copies or other information as may be required by the Government.

f. Government Review; Incorrect Payments. In making housing assistance payments to Owners, the Government will review the Owner's determinations under this Section. If as a result of this review, or other reviews, audits or information received by the Government at any time, it is determined that the Owner has retained improper or excessive housing assistance payments, the Government shall have the right to deduct the amount of such overpayments from any amounts otherwise due the Owner, or otherwise effect recovery thereof.

1.10 TERMINATION OF TENANCY. The Owner shall be responsible for termination of tenancies, including evictions. However, conditions for payment of housing assistance payments for any resulting vacancies shall be as set forth in Section 1.6c.

1.11 REDUCTION OF NUMBER OF CONTRACT UNITS FOR FAILURE TO LEASE TO ELIGIBLE FAMILIES.

a. After First Year of Contract. If at any time, beginning six months after the effective date of this Contract, the Owner fails for a continuous period of six months to have at least 90 percent of the Contract Units leased or available for leasing by Families, the Government may on 30 days notice reduce the number of Contract Units to not less than the number of units under lease or available for leasing by Families, plus 10 percent of such number if the number is 10 or more, rounded to the next highest number.

b. At End of Initial and Each Renewal Term. At the end of the initial term of the Contract and of each renewal term, the Government may, by notice to the Owner, reduce the number of Contract Units to not less than (1) the number of units under lease or available for leasing by Families at that time or (2) the average number of units so leased or available for leasing during the last year, whichever is the greater number, plus 10 percent of such number if the number is 10 or more, rounded to the next highest number.

c. Restoration of Units. The Government will agree to an amendment of the Contract to provide for subsequent restoration of any reduction made pursuant to paragraph a or b of this Section if the Government determines that the restoration is justified as a result of changes in demand and in the light of the Owner's record of compliance with his obligations under this Contract and if annual contributions contract authority is available; and the Government will take such steps authorized by section 8(c)(6) of the Act as may be necessary to carry out this assurance (see Section 1.5).

WARNING: 18 U.S.C. 1001 provides, among other things, that whoever knowingly and willfully makes or uses a document or writing containing any false, fictitious, or fraudulent statement or entry, in any matter within the jurisdiction of any department or agency of the United States, shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

OWNER ____________________

By ____________________

____________________
(Official Title)

Date ______________, 19___

United States of America
Secretary of Housing and Urban Development

By ____________________

____________________
(Official Title)

Date ______________, 19___

[1] If the project is to be completed and accepted in stages, execution of the Contract with respect to the several stages appears on the following pages of this Contract. [illegible]

EXECUTION OF CONTRACT WITH RESPECT
TO CONTRACT UNITS COMPLETED AND ACCEPTED
IN STAGES

STAGE 1

This Contract is hereby executed with respect to the units described in Exhibit A-1.

EFFECTIVE DATE. The effective date of this Contract is January 2, 19 80
[Insert date which shall be no earlier than the date of Government acceptance of the project.]

Stage I: 55 Units
ODR: 3 Bldg. #1 1-6 Floors
1BR: 51
2BR: 1

OWNER VALENTINE PROPERTY ASSOCIATES
By [signature]
Partner (Official Title)
Date ______, 19__

United States of America
Secretary of Housing and Urban Development
By [signature]
Deputy Director, MF Housing Division (Official Title)
Date 3/7, 19 80

EXECUTION OF CONTRACT WITH RESPECT
TO CONTRACT UNITS COMPLETED AND ACCEPTED
IN STAGES

STAGE 2

This Contract is hereby executed with respect to the units described in Exhibit A-2.

EFFECTIVE DATE. The Effective date of this Contract is February 19, 19 80
[Insert date which shall be no earlier than the date of Government acceptance of the project.]

STAGE II:
OBR: 6 Bldg. #1 7-12 Floors
1BR: 48

OWNER VALENTINE PROPERTY ASSOCIATES
By [signature]
Partner (Official Title)
Date ______, 19__

United States of America
Secretary of Housing and Urban Development
By [signature]
Deputy Director, MF Hsg. Division (Official Title)
Date 3/7/80

EXECUTION OF CONTRACT WITH RESPECT
TO CONTRACT UNITS COMPLETED AND ACCEPTED
IN STAGES

STAGE 3

This Contract is hereby executed with respect to the units described in Exhibit A-3.

EFFECTIVE DATE. The effective date of this Contract is ______, 19__
[Insert date which shall be no earlier than the date of Government acceptance of the project.]

OWNER ______
By ______
(Official Title)
Date ______, 19__

United States of America
Secretary of Housing and Urban Development
By ______
(Official Title)
Date ______, 19__

EXHIBIT A - CONTRACT RENTS

| UNIT SIZE | NO. OF UNITS | CONTRACT RENTS |
|---|---|---|
| 0 Bedroom | 9 | 420 |
| 1 Bedroom | 99 | 510 |
| 2 Bedroom | 1 | 615 |

EXHIBIT B - PROJECT DESCRIPTION

1 nine story, full basement, masonry bearing building with precast concrete floor; concrete and brick exterior, oil, hot water, heat

EXHIBIT C - STATEMENT OF SERVICES

Utilities and Services: gas, ranges, electric refrigerators, kitchen exhaust fans, laundry facilities, heat, hot and cold water and gas, for cooking.

EXHIBIT D - SEE PLAN ATTACHED

HUD-52519
November 1976

FINAL PROPOSAL REVIEW CHECKLIST
SECTION 8 NEW CONSTRUCTION

Proposal/Project No. NY36-0003-012
Yonkers, N.Y.

SECTION A—EQUAL OPPORTUNITY DIVISION

1. The Final Proposal is consistent with the Preliminary Proposal.

[X] Yes
[ ] No (Explain)

2. The Affirmative Fair Housing Marketing Plan, Form HUD-935.2, has designated acceptable anticipated results, has demonstrated adequately methods by which these results can be achieved including special outreach to encourage those persons least likely to apply for the housing to lease units in the project, and is otherwise acceptable.

[X] Yes
[ ] No (Explain)
[ ] Not Required

3. An acceptable statement of affirmative actions to be taken to provide an opportunity for persons expected to reside in the community to apply for units in the project has been submitted.

[X] Yes
[ ] No (Explain)

REMARKS:

RECOMMENDATION: Proposal is:

[X] Approvable
[ ] Not Approvable
[ ] Conditionally Approvable (Specify conditions which must be met for approval)

7/25/77
(Date)

(Signature of Approving Official)

Director, FH&EO
(Title)

EO Specialist

Page 3 of 11

Form Approved OMB No. [illegible]

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

AFFIRMATIVE FAIR HOUSING MARKETING PLAN

FOR HUD USE ONLY — ANY FILE NUMBER

COMPLETE FORM AND SUBMIT TO: FAIR HOUSING AND EQUAL OPPORTUNITY DIRECTOR/SPECIALIST AREA HOUSING OFFICE

1. INTRODUCTION

The Affirmative Fair Housing Marketing Regulations require that each applicant subject to these Regulations carry out an affirmative program to attract prospective buyers or tenants of all minority and nonminority groups to the housing, including whites (non-minorities) and members of minority groups: Negro/Black, Spanish American, American Indian, Oriental, or other minority groups in the Standard Metropolitan Statistical Areas (SMSA's) or housing market area who may be subject to housing discrimination on the basis of race, color, religion, sex or national origin.

2. APPLICANT AND PROJECT IDENTIFICATION

A. APPLICANT(S):

NAME: DHI ENTERPRISES, INC.

ADDRESS: 984 N. Broadway, Yonkers, N.Y. 1070[illegible]

TELEPHONE NO.: 968-9700

B. PROJECT OR APPLICATION NUMBER: NY 36-003-011

SECTION OF ACT: 8

NUMBER OF UNITS: 110

PRICE OR RENTAL RANGE OF UNITS: FROM $ 367.00 TO $ 551.00

C. PROJECT: 50

NAME: Valentine Lane &St.Andrews Place

LOCATION/ADDRESS: Yonkers, N.Y. 10701

CITY: Yonkers, STATE: New York

COUNTY: Westchester, CENSUS TRACT: 1970

D. FOR MULTIFAMILY HOUSING ONLY

☒ ELDERLY ☐ NON-ELDERLY

E. APPROXIMATE STARTING DATES: ADVERTISING June 1978 OCCUPANCY Nov. 197[illegible]

3. TYPE OF AFFIRMATIVE MARKETING PLAN: ☐ Project Plan ☐ Annual Plan (for tract/area)

NOTE: A separate Annual Plan must be submitted for each type area in which housing is to be built. Indicate the specific area for which this plan applies: ☐ Minority Area ☐ White (non-minority) Area ☒ Mixed Area (with 30 % minority residents)

4. DIRECTION OF MARKETING ACTIVITY:

Each applicant is required to carry out an affirmative marketing program to attract buyers or tenants of all minority and non-minority groups to the housing. The purpose of this program is to assure that any group(s) of persons normally NOT likely to apply for the housing without special outreach efforts (because of existing neighborhood racial or ethnic patterns, price, and/or other factors) know about the housing, feel welcome to apply and have the opportunity to buy or rent. Indicate below which group(s) are least likely to apply for the housing without special outreach efforts.

☐ White (non-minority) ☐ Negro/Black ☒ Spanish American ☒ American Indian ☒ Oriental ☐ Other Minority (specify)

5. MARKETING PROGRAM: All advertising will include: a) methods to attract minority and non-minority persons, especially persons in the group(s) checked above; b) prominent use of the approved Equal Housing Opportunity Logotype, slogan and/or Statement.

Advertising in the localnewspaper, meeting with local groups& churches,mailings to civic organizations & hospitals.

A. COMMERCIAL MEDIA: Check the media to be used to advertise the availability of this housing.

☒ Newspaper(s)/Publication(s) ☐ Radio ☐ TV ☐ Billboards ☐ Other (specify)

For the media identified above, provide the requested information. (If more space is needed attach an additional sheet.)

| NAME OF MEDIA | STATE IN PERCENTAGES THE RACIAL/ETHNIC IDENTIFICATIONS OF MAJOR READERS/AUDIENCE: White (non-minority) | Negro/Black | Spanish American | American Indian | Oriental | Other Minority | ADS/BROADCASTS, ETC.: Size and/or Duration | Frequency & Intervals |
|---|---|---|---|---|---|---|---|---|
| Newspaper: The Yonkers Herald Statesman | 60 | 20 | 10 | | | 10 | | |

NOTE: Attach copy of ad or state when it will be submitted. 3 months prior to Rental Office opening.

B. BROCHURES, SIGNS AND HUD'S FAIR HOUSING POSTER(S): Will brochures, leaflets or handouts be used? ☒ Yes ☐ No. (If yes, attach a photocopy of or ... a copy when available.) (2) For project site signs, indicate sign size ... ; Logotype size ... (Attach a photograph of or ... design of sign when available.) (3) HUD's Fair Housing Poster must be conspicuously displayed wherever sales/rentals and showings take place. Fair Housing Poster will be displayed in the ☒ Sales/Rental Office(s) ☐ Real Estate Office(s) ☐ Model Unit(s) ☐ Other (specify)

C. COMMUNITY CONTACTS: To further inform the group(s) least likely to apply about the availability of the housing, the applicant agrees to establish and maintain contact with the groups/organizations located in the housing market area or SMSA listed below. If more space is needed, attach an additional sheet. Notify HUD/FHEO of any changes in this list. Submit a copy of correspondence to be mailed to these groups/organizations. (Provide all requested information.)

| Name of Group/Organization | Racial/Ethnic Identification | Approximate Date of Contact | Person Contacted | Address and Telephone | Method of Contact | Indicate the specific function group/organization will undertake in implementing this plan |
|---|---|---|---|---|---|---|
| (Attached List) | 3-5months prior to completion of construction | (Attached) | | | Mailings Telephone Personal | |

6. FUTURE MARKETING ACTIVITIES: (Rental Only) Check the block(s) that best describe future marketing activities to fill vacancies as they occur after the project has been initially occupied.

☒ Newspapers/Publications ☐ Radio ☐ TV ☒ Brochures/Leaflets/Handouts ☒ Site Signs ☒ Community Contacts

[illegible]

8. STAFFING AND EXPERIENCE

(Give the information requested on the table below for your organization (Developer/Sponsor) and for the other companies/organizations identified. If applicable provide total staffing figures, i.e., do not limit staffing to those staff persons connected with or working on this housing. NOTE: HUD should be notified of any changes in the companies named in this chart.)

| Name of Company, Address and Telephone No. | Job Classification | | STAFFING: Present: Totals | White (Non-minority) | Negro/Black | Spanish Am. | Am. Indian | Oriental | Other Minority | Anticipated: Vacancies | Date of 1st Opening | Recruitment steps taken or to be taken to attract all persons | Company's past experience with those persons least likely to apply for subject housing (Indicate name and address of the housing and tenant/job data): Housing | Jobs |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. Developer/Sponsor<br>DHI Enterprises Incorporated<br>984 North Broadway<br>Yonkers, NY 10701 | Adm. | M | | 7 | | | | | | | | | | |
| | | F | | 3 | | 2 | | | | | | | | |
| | Other | M | | | | | | | | | | | | |
| | | F | | | | | | | | | | | | |
| B. Advertising (Answer if different from A)<br>Parkledge Mgmt. Corp<br>984 North Broadway<br>Yonkers, NewYork | Prof. | M | | 1 | | | | | | | | | | |
| | | F | | | | | | | | | | | | |
| | Other | M | | | | | | | | | | | | |
| | | F | | | | | | | | | | | | |
| C. Management and Sales/Rental Staff (Answer if different from A and/or B)<br>Parkledge Mgmt, Corp.<br>984 North Broadway<br>Yonkers, New York | Prof. | M | | 1 | | | | | | | | 1 Supt. & Porter will be hired for maintance using local advertising under Equal Opportunity Employment | | |
| | | F | | 1 | | 1 | | | | | | | | |
| | Other | M | | | | | | | | | | | | |
| | | F | | | | | | | | | | | | |

9. STAFF INSTRUCTIONS:

Fair Housing Training: All persons engaged in the sale/rental of real property have to be instructed periodically to insure that they are aware and knowledgeable of Fair Housing requirements.

A. Are regular sales/rental staff meetings conducted? ☒ Yes, when? Weekly ☐ No.
If yes, is Fair Housing training provided to the sales/rental staff at that meeting? ☒ Yes ☐ No.

B. If you answered "no" for either of the questions in item 9A, when is Fair Housing training provided to the sales/rental staff?

C. Is a copy of the instructions and/or materials to be used for training sales/rental staff in Fair Housing attached to this plan? ☐ Yes ☒ No; indicate date when information will be submitted 3 months prio to Rental Office opening

D. Do the instructions include and relate to local, State and Federal Fair Housing Laws, including Executive Order 11063, the Civil Rights Act of 1968 and this Affirmative Marketing Plan? ☒ Yes ☐ No; explain:

10. ADDITIONAL CONSIDERATIONS:

Other Efforts: Please describe other efforts you plan, as part of your outreach program, to attract persons in those groups that you have designated as least likely to apply for housing in the project under consideration, that are not covered elsewhere in this plan. Efforts to attract female-headed households should be emphasized.

We shall meet with the Yonkers Senior Citizen Council & have meetings & mailings to groups & individuals in the outreach progam

11. The applicant agrees to make any changes in its plan covering the subject project which may reasonably be required, after written notice, to assure compliance with Section 200.620 of HUD's Affirmative Fair Housing Marketing Regulations.

| FOR HUD'S USE ONLY | | SIGNATURE OF PERSON SUBMITTING PLAN |
|---|---|---|
| APPROVAL BY: | DISAPPROVAL BY: | |
| SIGNATURE | SIGNATURE | [signature] |
| NAME (Type or print) | NAME (Type or print) | NAME (Type or print)<br>Arthur Margulis |
| TITLE | TITLE | TITLE AND COMPANY<br>Parkledge Management Corporation<br>984 North Broadway, Yonkers, NY.10701 |
| DATE | DATE | DATE |

Memorandum HOUSING AND URBAN DEVELOPMENT

TO : Benjamin Skurnick, Area Counsel, 2.3C DATE: 2/13/76

-2-

Valentine Lane area

Mrs. Sally Robinson
Office of the Aging
City Hall
Yonkers, New York
963-3980

Parks, Recreation, Conservation Dept.
Senior Citizen Center
Cedar Place
Yonkers, New York
(Parks Dept. has several other senior citizen centers in various parts of the City of Yonkers. Contact Mr. Joseph Sansone if you are interested in contacting them. His number is 963-3980)

Mrs. Regina Greenblat
159 Hawthorne Avenue
Yonkers, New York 10701
968-5357
American Association of Retired Persons

Minority Groups

Spanish Community Progress Foundation
Felix Garcia, Executive Director
75 Ludlow Street
Yonkers, New York 10705

Puerto Rican Council
29 Palisade Avenue
Yonkers, New York 10701

Urban League
308 Warburton Avenue
Yonkers, New York 10701

Mr. Winston Ross
NAACP
53 Hunt Avenue
Yonkers, New York 107 10

League of United Latin American Citizens
101 Ashburton Avenue
Yonkers, New York 10701
Rolando D. Muhlig, President

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
SECTION 8 HOUSING ASSISTANCE PAYMENTS PROGRAM
NEW CONSTRUCTION

PART II OF THE

# HOUSING ASSISTANCE PAYMENTS CONTRACT

PRIVATE-OWNER OR PHA-OWNED PROJECT

| HAP CONTRACT IDENTIFICATION AND DATE: | PROJECT NUMBER: |
|---|---|
| NY 28-64 4/22/78 | NY 36-0003-011 |

2.1 NONDISCRIMINATION IN HOUSING

a. The Owner shall not in the selection of Families, in the provision of services, or in any other manner, discriminate against any person on the grounds of race, color, creed, religion, sex or national origin. [illegible] shall be not unlawfully [illegible] from participation in, or be denied the benefits of, the Housing Assistance Payments Program because of membership in a class such as unmarried mothers, recipients of public assistance, etc.

b. The Owner shall comply with all requirements imposed by Title VIII of the Civil Rights Act of 1968, and any rules and regulations pursuant thereto.

c. The Owner shall comply with all requirements imposed by Title VI of the Civil Rights Act of 1964, Public Law 88-352, 78 Stat. 241; the regulations of the Department of Housing and Urban Development issued thereunder, 24 CFR, Subtitle A, Part 1, Section 1.1, et seq.; the requirements of said Department pursuant to said regulations; and Executive Order 11063 to the end that, in accordance with that Act, the regulations and requirements of said Department thereunder, and said Executive Order, no person in the United States shall, on the grounds of race, color, creed, religion or national origin, be excluded from participation in, or be denied the benefits of, the Housing Assistance Payments Program, or be otherwise subjected to discrimination. This provision is included pursuant to the regulations of the Department of Housing and Urban Development, 24 CFR, Subtitle A, Part 1, Section 1.1, et seq. issued under Title VI of the said Civil Rights Act of 1964, and the requirements of said Department pursuant to said regulations; and the obligation of the Owner to comply therewith inures to the benefit of the Government and the said Department, either of which shall be entitled to invoke any remedies available by law to redress any breach thereof or to compel compliance therewith by the Owner.

2.2 TRAINING, EMPLOYMENT, AND CONTRACTING OPPORTUNITIES FOR BUSINESSES AND LOWER-INCOME PERSONS.[1]

a. The project assisted under this Contract is subject to the requirements of section 3 of the Housing and Urban Development Act of 1968, as amended, 12 U.S.C. 1701u. Section 3 requires that, to the greatest extent feasible, opportunities for training and employment be given lower-income residents of the project area and contracts for work in connection with the project be awarded to business concerns which are located in, or owned in substantial part by persons residing in, the area of the project.

b. Notwithstanding any other provision of this Contract, the Owner shall carry out the provisions of said section 3 and the regulations issued pursuant thereto by the Secretary of Housing and Urban Development set forth in 24 CFR, Part 135 (published in 38 Federal Register 29220, October 23, 1973), and all applicable rules and orders of the Secretary issued thereunder prior to the execution of this Contract. The requirements of said regulations include, but are not limited to, development and implementation of an affirmative action plan for utilizing business concerns located within, or owned in substantial part by persons residing in, the area of the project; the making of a good faith effort, as defined by the regulations, to provide training, employment, and business opportunities required by section 3; and incorporation of the "section 3 clause" specified by section 135.20(b) of the regulations and paragraph d of this Section in all contracts for work in connection with the project. The Owner certifies and agrees that he is under no contractual or other disability which would prevent him from complying with these requirements.

c. Compliance with the provisions of section 3, the regulations set forth in 24 CFR, Part 135, and all applicable rules and orders of the Secretary issued thereunder prior to approval by the Government of the application for this Contract, shall be a condition of the Federal financial assistance provided to the project, binding upon the Owner, his successors and assigns. Failure to fulfill these requirements shall subject the Owner, his contractors and subcontractors, his successors, and assigns to the sanctions specified by this Contract, and to such sanctions as are specified by 24 CFR, Section 135.135.

d. The Owner shall incorporate or cause to be incorporated into any contract or subcontract for work pursuant to this Contract in excess of $10,000 cost, the following clause:

EMPLOYMENT OF PROJECT AREA RESIDENTS AND CONTRACTORS

a. The work to be performed under this Contract is on a project assisted under a program providing direct Federal financial assistance from the Department of Housing and Urban Development and is subject to the requirements of section 3 of the Housing and Urban Development Act of 1968, as amended, 12 U.S.C. 1701u. Section 3 requires that, to the greatest extent feasible, opportunities for training and employment be given lower-income residents of the project area and contracts for work in connection with the project be awarded to business concerns which are located in, or owned in substantial part by persons residing in, the area of the project.

b. The parties to this Contract will comply with the provisions of said section 3 and the regulations issued pursuant thereto by the Secretary of Housing and Urban Development set forth in 24 CFR, Part 135, and all applicable rules and orders of the Department issued thereunder prior to the execution of this Contract. The parties to this Contract certify and agree that they are under no contractual or other disability which would prevent them from complying with these requirements.

c. The contractor will send to each labor organization or representative of workers with which he has a collective bargaining agreement or other contract or understanding, if any, a notice advising the said labor organization or workers' representative of his commitments under this section 3 clause and shall post copies of the notice in conspicuous places available to employees and applicants for employment or training.

[illegible] contractor will include this section 3 clause in every subcontract for work in connection with the project and will, at the direction of the [illegible] recipient of Federal financial assistance, take appropriate action [illegible] to the subcontract [illegible] that the [illegible] is in violation of regulations issued by the Secretary of Housing and Urban Development, 24 CFR, Part 135. The contractor will [illegible] with any subcontractor where it has notice or knowledge that the latter has been found in violation of regulations [illegible] Part 135, and will not let any subcontract unless the [illegible] has first provided it with a preliminary statement of ability to comply with the requirements of these regulations.

[1] [illegible] this Section II the Contract [illegible] the effective date of this Contract, over the maximum term of the Contract, [illegible] $500,000 or less.

"f. Compliance with the provisions of section 3, the regulations set forth in 24 CFR, Part 135, and all applicable rules and orders of the Department issued thereunder prior to the execution of the Contract, shall be a condition of the Federal financial assistance provided to the project, binding upon the applicant or recipient for such assistance, its successors, and assigns. Failure to fulfill these requirements shall subject the applicant or recipient, its contractors and subcontractors, its successors, and assigns to those sanctions specified by the grant or loan agreement or contract through which Federal assistance is provided, and to such sanctions as are specified by 24 CFR, Section 135.135."

e. The Owner agrees that he will be bound by the above Employment of Project Area Residents and Contractors clause with respect to his own employment practices when he participates in federally assisted work.

2.3 COOPERATION IN EQUAL OPPORTUNITY COMPLIANCE REVIEWS. The Owner will cooperate with the Government in the conducting of compliance reviews and complaint investigations pursuant to all applicable civil rights statutes, Executive Orders, and rules and regulations pursuant thereto.

2.4 FLOOD INSURANCE. If the project is located in an area that has been identified by the Secretary of Housing and Urban Development as an area having special flood hazards and if the sale of flood insurance has been made available under the National Flood Insurance Act of 1968, the Owner agrees that the project will be covered, during its anticipated economic or useful life, by flood insurance in an amount at least equal to its development or project cost (less estimated land cost) or to the maximum limit of coverage made available with respect to the particular type of property under the National Flood Insurance Act of 1968, whichever is less.

2.5 CLEAN AIR ACT AND FEDERAL WATER POLLUTION CONTROL ACT.* In compliance with regulations issued by the Environmental Protection Agency ("EPA"), 40 CFR, Part 15, [illegible] F.R. [illegible], pursuant to the Clean Air Act, as amended ("Air Act"), 42 U.S.C. 1857, et seq., the Federal Water Pollution Control Act, as amended ("Water Act"), 33 U.S.C. 1251, et seq., and Executive Order 11738, the Owner agrees that:

a. any facility to be utilized in the performance of this Contract or any subcontract shall not be a facility listed on the EPA List of Violating Facilities pursuant to section 15.20 of said regulations;

b. He will promptly notify the Department of Housing and Urban Development field office director of the receipt of any communication from the EPA indicating that a facility to be utilized for the Contract is under consideration to be listed on the EPA List of Violating Facilities;

c. He will comply with all the requirements of section 114 of the Air Act and section 308 of the Water Act relating to inspection, monitoring, entry, reports, and information, as well as all other requirements specified in section 114 and section 308 of the Air Act and the Water Act, respectively, and all regulations and guidelines issued thereunder; and

d. He will include or cause to be included the provisions of this Section in every nonexempt subcontract, and that he will take such action as the Government may direct as a means of enforcing such provisions.

2.6 REPORTS AND ACCESS TO PREMISES AND RECORDS.

a. The Owner shall furnish such information and reports pertinent to the Contract as reasonably may be required from time to time by the Government.

b. The Owner shall permit the Government or any of its duly authorized representatives to have access to the premises and, for the purpose of audit and examination, to have access to any books, documents, papers and records of the Owner that are pertinent to compliance with this Contract, including the verification of information pertinent to the housing assistance payments.

2.7 DEFAULT BY THE OWNER UNDER CONTRACT.

a. A default by the Owner under this Contract shall result if:

(1) The Owner has violated or failed to comply with any provision of, or obligation under, this Contract or of any Lease; or

(2) The Owner has asserted or demonstrated an intention not to perform some or all of his obligations under this Contract or under any Lease.

b. Upon a determination by the Government that a default has occurred, the Government shall notify the Owner of (1) the nature of the default, (2) the actions required to be taken and the remedies to be applied on account of the default (including actions by the Owner to cure the default, and, where appropriate, abatement of housing assistance payments in whole or in part and recovery of overpayments), and (3) the time within which the Owner shall respond with a showing that he has taken all the actions required of him. If the Owner fails to respond or take action to the satisfaction of the Government, the Government shall have the right to terminate this Contract in whole or in part or to take other corrective action to achieve compliance.

c. The availability of any remedy under this Contract shall not preclude the exercise of any other remedy available under this Contract or under any provisions of law, nor shall any action taken in the exercise of any remedy be deemed a waiver of any other rights or remedies. Failure to exercise any right or remedy shall not constitute a waiver of the right to exercise that or any other right or remedy at any time.

3.0 DISPUTES.

a. Except as otherwise provided herein, any dispute concerning a question of fact arising under this Contract which is not disposed of by agreement between the Department of Housing and Urban Development field office and the Owner may be submitted by the Owner to the Secretary of Housing and Urban Development. The decision of the Secretary or duly authorized representative for the resolution of such disputes shall be final and conclusive, unless determined by a court of competent jurisdiction to have been fraudulent, or capricious, or arbitrary, or so grossly erroneous as necessarily to imply bad faith, or not supported by substantial evidence. In connection with any proceeding under this Section, the Owner shall be afforded an opportunity to be heard and to offer evidence in support of his position.

b. This Section does not preclude consideration of questions of law in connection with the decision rendered under paragraph a of this Section. Provided, however, that nothing herein shall be construed as making final the decision of any administrative official, representative, or board, on a question of law.

[illegible] INTEREST OF MEMBERS, OFFICERS, OR EMPLOYEES OF [illegible] MEMBERS [illegible] GOVERNING BODY OF [illegible] [illegible] [illegible] the locality and county [illegible] [illegible] public official of such locality [illegible] [illegible]

[illegible] of this Contract, are $100,000 or less.

*Strike this Section [illegible] Contract [illegible] the effective date [illegible]

 

2.10 **INTEREST OF MEMBER OF OR DELEGATE TO CONGRESS.** No member of or delegate to the Congress of the United States of America or resident commissioner shall be admitted to any share or part of this Contract or to any benefits which may arise therefrom.

2.11 **ASSIGNMENT, SALE OR FORECLOSURE.**

a. The Owner agrees that he has not made and will not make any sale, assignment, or conveyance or transfer in any other form, of this Contract or the project or any part thereof or any of his interest therein, without the prior consent of the Government; Provided, however, that in the case of an assignment as security for the purpose of obtaining financing of the project, the Government shall consent in writing if the terms of the financing have been approved by the Government.

b. The Owner agrees to notify the Government promptly of any proposed action covered by paragraph a of this Section. The Owner further agrees to request the written consent of the Government in regard thereto.

(1) A transfer by the Owner, in whole or in part, or a transfer by a party having a substantial interest in said Owner, or transfers by more than one party of interests aggregating a substantial interest in said Owner, or any other similarly significant change in the ownership of interests in the Owner, or in the relative distribution thereof, or with respect to the parties in control of the Owner or the degree thereof, by any other method or means (e.g., increased capitalization, merger with another corporation or other entity, corporate or other amendments, issuance of new or additional ownership interests or classification of ownership interests or otherwise) shall be deemed an assignment, conveyance, or transfer for purposes of this Section 2.11. An assignment by the Owner to a limited partnership, in which no limited partner has a 25 percent or more interest and of which the Owner is the sole general partner, shall not be considered an assignment, conveyance, or transfer.

(2) The term "substantial interest" means the interest of any general partner, any limited partner having a 25 percent or more interest in the organization, any corporate officer or director, and any stockholder having a 10 percent or more interest in the organization.

(3) The Owner, and the party signing this Contract on behalf of said Owner, represent that they have the authority of all of the parties having ownership interests in the Owner to agree to this provision on their behalf and to bind them with respect thereto.

c. In the event of foreclosure, including foreclosure by the Government, and in the event of assignment or sale agreed to by the Government or made to the Government, housing assistance payments shall continue in accordance with the terms of the Contract.

[If the project is subject to 24 CFR, Section 880.123, paragraph d above shall be stricken and the following shall be used instead:

d. In the event of foreclosure, or assignment or sale to the financing agency in lieu of foreclosure, or in the event of assignment or sale agreed to by the financing agency and approved by the Government (which approval shall not be unreasonably delayed or withheld), housing assistance payments shall continue in accordance with the terms of the Contract.]

HOUSING ASSISTANCE PAYMENTS CONTRACT — PART I

HAP CONTRACT (HUD) NUMBER AND DATE: [illegible] 78-6083 9/27/78

PROJECT NUMBER: NY 36-0010-003

This Housing Assistance Payments Contract ("Contract") is entered into by and between the United States of America acting through the Department of Housing and Urban Development ("Government") and PARK PROPERTY ASSOCIATES ("Owner"), pursuant to the United States Housing Act of 1937 ("Act"), 42 U.S.C. 1437, et seq., and the Department of Housing and Urban Development Act, 42 U.S.C. 3531, et seq.

The parties hereto agree as follows:

1.1 SIGNIFICANT DATES AND OTHER ITEMS; CONTENTS OF CONTRACT.

a. Effective Date of Contract. The effective date of this Contract is See Stages Attached, 19__. [This date shall not be earlier than the date of Government acceptance of the project.]

~~b. Term of Contract Where Relative Cost of Rehabilitation Is Less Than 15 Percent of Value. The term of this Contract for any unit (see Section 1.4) shall be __ years (not to exceed five years), beginning with the effective date of this Contract.~~

c. Term of Contract Where Relative Cost of Rehabilitation Is 15 Percent or More of Value.

(1) Initial Term. The initial term of this Contract for any unit (see Section 1.4e, Alternative 2) shall be 5 years (not to exceed five years), beginning with the effective date of this Contract for such unit.

(2) Number and Length of Optional Additional Terms. The number and length of optional additional terms (see Section 1.4e, ___) terms of 5 years each (not to exceed five years each).

(3) Maximum Total Term. The maximum total term of this Contract for any unit, including all renewals (see Section ___) shall be 30 years. (Insert number as authorized by the Government pursuant to 24 CFR, Section 881.___, but except where 20 years, or, in the case of a project owned by, or financed by a loan or a loan guarantee from a State or local agency, the number, not to exceed 40, which will provide a term ending with the scheduled maturity of the last payment under such financing.)

d. Fiscal Year. The ending date of each Fiscal Year (see Section 1.4b) shall be Sept. 30th (Insert March 31, June 30, September 30, or December 31, as determined by the Government).

e. Maximum Housing Assistance Commitment. The maximum amount of the commitment for housing assistance payments under the Contract (see Section 1.5c) is $ 522,232 per annum.

f. Minimum Percentage of Occupancy by Very Low-Income Families. In the initial renting of the Contract Units, the Owner shall lease at least 30 percent (insert 30, or lower number if authorized by the Government in accordance with 24 CFR, Section 881.[illegible]) to Very Low-Income Families (determined in accordance with the Government-established schedules and criteria) and shall thereafter take best efforts to achieve and maintain at least 30 percent occupancy of the Contract Units by Very Low-Income Families as determined in accordance with such schedules and criteria.

g. Contents of Contract. This Contract consists of Part I, Part II, and the following exhibits:

Exhibit A: The schedule showing the number of units by size ("Contract Units") and their applicable rents ("Contract Rents");

Exhibit B: The project description; See attached for Exhibits A, B, C & D.

Exhibit C: The statement of services, maintenance and utilities to be provided by Owner;

Exhibit D: The Affirmative Fair Housing Marketing Plan, if applicable; and

Additional exhibits: [Specify additional exhibits, if any. If none, insert "None."] None

Exhibit E — Daily Debt Service-Computation

This Contract, including said exhibits, contains the entire agreement between the parties hereto with respect to the matters covered therein, and neither party is bound by any representations or agreements of any kind except as contained herein or except agreements entered into in writing which are not inconsistent with this Contract.

1.2 OWNER'S WARRANTIES.

a. Legal Capacity. The Owner warrants that he has the legal right to execute this Contract and to lease dwelling units covered by this Contract.

b. Completion of Work. The Owner warrants that the project as described in Exhibit B is in good and tenantable condition and that the project has been completed in accordance with the terms and conditions of the Agreement to Enter into Housing Assistance Payments Contract ("Agreement") or will be completed in accordance with the terms on which the project was accepted. The Owner further warrants that he will remedy any defects or omissions covered by this warranty if called to his attention within 12 months of the effective date of this Contract. The Owner and the Government agree that the continuation of this Contract shall be subject to the conditions set forth in Section 1.4f of the Agreement.

1.3 FAMILIES TO BE ASSISTED; GOVERNMENT ASSISTANCE.

a. Families To Be Housed. The Contract Units are to be leased by the Owner to eligible Lower-Income Families ("Families") for use as housing by such Families solely as private dwellings.

b. Government Assistance.

(1) The Government hereby agrees to make housing assistance payments on behalf of Families for the Contract Units, to enable Families to Lease Decent, Safe, and Sanitary housing pursuant to section 8 of the Act. Such housing assistance payments shall be the difference between the Contract Rents for units leased to Families and the portion of such rents payable by Families as determined by the Owner in accordance with schedules and criteria established by the Government.

[illegible]

a. Term of Contract.

[Alternative provisions—Incorporate alternative 1 or ...]

*Alternative 1 — Where HUD has Determined that the Cost of Rehabilitation Is Less Than 15 Percent of Value.*

The term of this Contract for any unit shall be as stated in Section 1.1b, with no option for renewal in either party. If the [illegible] is completed in stages, the term shall be separately related to the units in each stage; provided, however, that the total Contract term [illegible] all the stages, beginning with the effective date of the Contract with respect to the first stage, shall not exceed said Contract term plus two years.

*Alternative 2 — Where HUD Has Determined that the Cost of Rehabilitation Is 15 Percent or More of Value.*

The initial term of this Contract for any unit shall be as stated in Section 1.1a(1). This Contract may be renewed at the [illegible] [illegible] [illegible] Section 1.1a(2), provided that the actual Contract term for [illegible] [illegible] [illegible] Section 1.1a(3). Renewal shall be automatic unless the Owner [illegible] [illegible] [illegible] expiration of the current term, of his intention not to renew. If the project [illegible] Government, no later than 12 days prior to the expiration of [illegible] [illegible] [illegible] separately related to the units in each stage; provided, [illegible] the dates for the initial term and renewal terms shall be [illegible] [illegible] the effective date of the Contract with respect to the first stage, [illegible] the total Contract term for all the stages, beginning with the effective date of the Contract [illegible] stated in Section 1.1a(3), plus two years. In any case where the project is owned by, or financed [illegible] [illegible] exceed the total Contract term stated in Section 1.1a(3), the housing assistance payments pursuant to this Contract with respect to any [illegible] [illegible] shall be payable over a period not to exceed 40 years.

b. Fiscal Year. The Fiscal Year for the project shall be the 12-month period ending on the date stated in Section 1.1d; Provided, however, that the first Fiscal Year for the project shall be the period beginning with the effective date of the Contract and ending on the last day of the established Fiscal Year which is not less than 12 months after such effective date. If the first Fiscal Year exceeds 12 months, the maximum total annual housing assistance payment in Section 1.5a may be adjusted by the addition of the pro rata amount applicable to the period of operation in excess of 12 months.

5 MAXIMUM HOUSING ASSISTANCE COMMITMENT; PROJECT ACCOUNT.

a. Maximum Housing Assistance Commitment. Notwithstanding any other provisions of this Contract (other than paragraph b of this [illegible]) or any provisions of any other contract between the Government and the Owner, the Government shall not be obligated to make [illegible] not make any housing assistance payments under this Contract in excess of the amount per annum stated in Section 1.1e; Provided, however, that this amount shall be reduced commensurately with any reduction in the number of Contract Units or in the Contract [illegible] or pursuant to any other provisions of this Contract.

b. Project Account. In order to assure that housing assistance payments will be increased on a timely basis to cover increases in Contract [illegible] or decreases in Family Incomes:

(1) A Project Account shall be established and maintained, in an amount as determined by the Government consistent with its [illegible] [illegible] under section 8(c)(6) of the Act, out of amounts by which the maximum Contract commitment per year exceeds [illegible] paid under the Contract for any Fiscal Year. This account shall be established and maintained by the Government as a specific identified and segregated account. To the extent funds are available in said account, the maximum total annual housing [illegible] payments for any Fiscal Year may exceed the maximum amount stated in paragraph a of this Section to cover increases in Contract Rents or decreases in Family Incomes (see Section 2.8). Any amount remaining in said account after payment of the last housing assistance payment with respect to the project shall be applied by the Government in accordance with law.

(2) Whenever the Government approved estimate of the required Annual Contribution exceeds the maximum Contract commitment then in effect, and would cause the amount in the Project Account to be less than an amount equal to 40 percent of such maximum Contract commitment, the Government shall, within a reasonable period of time, take such additional steps authorized by section 8(c)(6) of the Act as may be necessary to carry out this assurance, including (as provided in that section of the Act) "the use of annual contributions authority for the purpose of amending housing assistance contracts or the allocation of a portion of new authorizations for the purpose of amending housing assistance contracts."

HOUSING ASSISTANCE PAYMENTS TO OWNERS.

a. General.

(1) Housing assistance payments shall be paid to the Owner for units under lease by Families in accordance with the Contract. The housing assistance payment will cover the difference between the Contract Rent and that portion of said rent payable by the Family as determined in accordance with the Government-established schedules and criteria.

(2) The amount of housing assistance payment payable on behalf of a Family and the amount of rent payable by such Family shall [be] subject to change by reason of changes in Family Income, Family composition, or extent of exceptional medical or other unusual expenses, in accordance with the Government-established schedules and criteria; or by reason of adjustment by the Government of any applicable Allowance for Utilities and Other Services. Any such change shall be effective as of the date stated in a notification of such change to the Family.

b. Vacancies During Rent-up. If a Contract Unit is not leased as of the effective date of the Contract, the Owner shall be entitled to housing assistance payments in the amount of 80 percent of the Contract Rent for the unit for a vacancy period not exceeding 60 days from the effective date of the Contract, provided that the Owner (1) commenced marketing and otherwise complied with Section 2.2 of the Agreement, (2) has taken and continues to take all feasible actions to fill the vacancy, including, but not limited to, contacting applicants on [the] waiting list, if any, requesting the Public Housing Agency ("PHA") and other appropriate sources to refer eligible applicants, and advertising the availability of the unit, and (3) has not rejected any eligible applicant, except for good cause acceptable to the Government.

c. Vacancies After Rent-up.

(1) If a Family vacates its unit (other than as a result of action by the Owner which is in violation of the lease or the Contract or any applicable law), the Owner shall receive housing assistance payments in the amount of 80 percent of the Contract Rent for a [illegible] period not exceeding 60 days; Provided, however, that if the Owner collects any of the Family's share of the rent for this period [illegible] [illegible] [illegible] added to the 80 percent payments, results in more than the Contract Rent, such excess shall be [illegible] [illegible] [illegible] [illegible] (see Section 2.4(c)). [illegible]

[illegible]

[illegible]

[illegible]

[illegible]

d. [illegible] for Vacant Units. The Owner shall not be entitled to housing assistance payments with respect to vacant units [illegible] to the extent he is entitled to payments from other sources (for example, payments for losses of rental income on vacant units [illegible] pursuant to Title I of the Housing and Community Development Act of 1974 or payments under [illegible] of this Contract). [illegible]

e. Government Not Obligated for Family Rent. The Government has not assumed any obligation for the amount of rent payable by any Family or for the satisfaction of any claim by the Owner against any Family other than in accordance with Section 1.5 of this Contract. [illegible] financial obligation of the Government is limited to making housing assistance payments on behalf of Families in accordance with this Contract.

SEE RIDER ATTACHED

f. Owner's Monthly Requests for Payments.

(1) The Owner shall submit monthly requests to the Government for housing assistance payments. Each such request shall set forth: (i) the name of each Family and the address and/or number of the unit leased by the Family; (ii) the address and/or the number of units, if any, not leased to Families for which the Owner is claiming payments; (iii) the Contract Rent as set forth in Exhibit [illegible] for each unit for which the Owner is claiming payments; (iv) the amount of rent payable by the Family leasing the unit [illegible], if applicable, the amount to be paid the Family in accordance with Section 1.23 (b); and (vi) the total amount of housing assistance payments requested by the Owner.

(2) Each of the Owner's monthly requests shall contain a certification by him that to the best of his knowledge and belief (i) the dwelling units are in Decent, Safe, and Sanitary condition, (ii) all the other facts and data on which the request for funds is based are true and correct, (iii) the amount requested has been calculated in accordance with the provisions of this Contract and is payable under this Contract, and (iv) none of the amount claimed has been previously claimed or paid.

(3) If the Owner has received an excessive payment, the Government, in addition to any other rights to recovery, may deduct the amount from any subsequent payment or payments.

(4) The Owner's monthly requests for housing assistance payments shall be made subject to penalty under 18 U.S.C. 1001, which provides, among other things, that whoever knowingly and willfully makes or uses a document or writing containing any false, fictitious, or fraudulent statement or entry, in any matter within the jurisdiction of any department or agency of the United States, shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

g. Recoupment of Savings in Financing Cost.

(1) In the event that interim financing is continued after the first year of the term of the Contract and the debt service of the interim financing for any period of three months, after such first year, is less than the anticipated debt service under the permanent financing on which the Contract Rents were based, an amount reflecting the savings in financing cost, computed in accordance with paragraph g(2) of this Section, shall be credited by the Government to the Project Account, and withheld from housing assistance payments to the Owner. If during the course of the same year there is any period of three months in which the debt service is greater than the anticipated debt service under the permanent financing, an adjustment shall be made so that only the net amount of savings in financing cost for the year is credited by the Government to the Project Account and withheld from housing assistance payments to the Owner (no [illegible] increased payments shall be made to the Owner on account of any net excess for the year of actual interim debt service over the anticipated debt service under the permanent financing). Nothing in this paragraph g shall be construed as requiring a reduction in [illegible] Contract Rents or precluding any [illegible] of Contract Rents in accordance with Section 1.8.

(2) The computation and recoupment under this paragraph g may be made on an annual or on a quarterly or other periodic basis, but in any event no later than as of the end of each Fiscal Year: Provided, however, that if recoupment is to be made less often than quarterly, the amounts of recoupment shall be computed on at least a quarterly basis and the funds shall be deposited in a special account from which withdrawals may be made only with the authorization of the Government. The [illegible] of computing the amount of recoupment shall be as follows:

(i) Determine the amount by which the interest cost for the debt service for the period in question is less than the anticipated debt service under the permanent financing on which the Contract Rents were based;

(ii) Determine what percentage the amount found under paragraph g(2)(i) of this Section is of the aggregate Contract Rents for all Contract Units for the period in question;

(iii) Apply the percentage found in paragraph g(2)(ii) of this Section to the aggregate Contract Rents for those Contract Units which are included in the Owner's claim(s) for housing assistance payments for the period in question; and

(iv) The amount found in paragraph g(2)(iii) of this Section shall be credited to the Project Account and withheld from the next housing assistance payment or payments to the Owner.

MAINTENANCE, OPERATION AND INSPECTION.

Maintenance and Operation. The Owner agrees (1) to maintain and operate the Contract Units and related facilities so as to provide Decent, Safe, and Sanitary housing, and (2) to provide all the services, maintenance and utilities set forth in Exhibit C. If the Government determines that the Owner is not meeting one or more of these obligations, the Government shall have the right, in addition to its other rights and remedies under this Contract, to abate housing assistance payments in whole or in part.

Inspection.

(1) Prior to occupancy of any unit by a Family, the Owner and the Family shall inspect the unit and both shall certify, on forms prescribed by the Government, that they have inspected the unit and have determined it to be Decent, Safe, and Sanitary in accordance with the criteria provided in the prescribed forms. Copies of these reports shall be kept on file by the Owner for at least three years.

(2) The Government shall inspect or cause to be inspected each Contract Unit and related facilities at least annually and at such other times (including prior to initial occupancy and rerenting of any unit) as may be necessary to assure that the Owner is meeting his obligations to maintain the units in Decent, Safe, and Sanitary condition and to provide the agreed upon utilities and other services. The Government shall take into account complaints by occupants and any other information coming to its attention in scheduling inspections and shall notify the Owner and the Family of its determination.

Units Not Decent, Safe, and Sanitary. If the Government notifies the Owner that he has failed to maintain a dwelling unit in Decent, Safe, and Sanitary condition and the Owner fails to take corrective action within the time prescribed in the notice, the Government may exercise

[illegible] (2) [illegible] for the expenses [illegible]

[illegible] housing assistance payments shall be effective as provided in written notification to the [illegible].

Notification of Abatement. Any abatement of housing assistance payments shall [illegible] promptly notify the Family of any such abatement.

Decent, Safe and Sanitary by reason of [illegible] Government determines that a Contract Unit is not Decent, Safe and Sanitary by reason of [illegible] larger than appropriate for the size of the Family in occupancy, housing assistance [illegible] Family size, or [illegible] will not be abated, unless the Owner fails to offer the Family a suitable unit as soon as one becomes vacant [illegible] with respect to such unit will not be abated. If the Owner does not have any suitable units or if no vacancy of a suitable [illegible] unit occurs within a reasonable time, the Government will assist the Family in finding a suitable dwelling unit and require the Family [illegible] to move to such a unit as soon as possible. The Owner may receive housing assistance payments for the vacated unit if he complies with the requirements of Section 1.6c(4).

ADJUSTMENTS.

Funding of Adjustments. Housing assistance payments will be made in increased amounts commensurate with Contract Rent adjustments under this Section, up to the maximum amount authorized under Section 1.5a of this Contract.

Automatic Annual Adjustments.

(1) Automatic Annual Adjustment Factors will be determined by the Government at least annually; interim revisions may be made as market conditions warrant. Such Factors and the basis for their determination will be published in the Federal Register. These published Factors will be reduced appropriately by the Government where utilities are paid directly by the Families.

(2) On each anniversary date of the Contract, the Contract Rents shall be adjusted by applying the applicable Automatic Annual Adjustment Factor most recently published by the Government. Contract Rents may be adjusted upward or downward, as may be appropriate; however, in no case shall the adjusted Contract Rents be less than the Contract Rents on the effective date of the Contract.

Special Additional Adjustments. Special additional adjustments shall be granted, when approved by the Government, to reflect increases in the actual and necessary expenses of owning and maintaining the Contract Units which have resulted from substantial general increases in real property taxes, utility rates, or similar costs (i.e., assessments, and utilities not covered by regulated rates), but only if and to the extent that the Owner clearly demonstrates that such general increases have caused increases in the Owner's operating costs which are not adequately compensated for by automatic annual adjustments. The Owner shall submit to the Government financial statements which clearly support the increase.

Overall Limitation. Notwithstanding any other provisions of this Contract, adjustments as provided in this Section shall not result in material differences between the rents charged for assisted and comparable unassisted units, as determined by the Government; provided, that this limitation shall not be construed to prohibit differences in rents between assisted and comparable unassisted units to the extent that such differences may have existed with respect to the initial Contract Rents.

Incorporation of Rent Adjustments. Any adjustment in Contract Rents shall be incorporated into Exhibit A by a dated addendum to the Exhibit establishing the effective date of the adjustment.

Adjustment to Reflect Actual Cost of Permanent Financing. This paragraph f shall apply if the project is not permanently financed until after the effective date of the Contract. After the project is permanently financed, the Financing Agency shall submit a certification to the Government as to the actual financing terms. If the actual debt service under the permanent financing is lower than the anticipated debt service on which the Contract Rents were based, the Contract Rents currently in effect shall be reduced commensurately, and the amount of the savings shall be credited to the Project Account. The maximum Contract commitment shall not be reduced. If the actual debt service is higher, the Contract Rents shall not be increased.

MARKETING AND LEASING OF UNITS.

Compliance with Equal Opportunity. Marketing of units and selection of Families by the Owner shall be in accordance with the Owner's Government-approved Affirmative Fair Housing Marketing Plan, shown as Exhibit D, and with all regulations relating to fair housing advertising.

Security and Utility Deposits.

(1) The Owner may require Families to pay a security deposit in an amount equal to one month's Gross Family Contribution. If a Family vacates its unit, the Owner, subject to State and local law, may utilize the deposit as reimbursement for any unpaid rent or other amount owed under the Lease. If the Family has provided a security deposit, and it is insufficient for such reimbursement, the Owner may claim reimbursement from HUD, not to exceed an amount equal to the remainder of one month's Contract Rent. Any reimbursement under this Section shall be applied first toward any unpaid rent. If a Family vacates the unit owing no rent or other amount under the Lease or if the amount owed is less than the amount of the security deposit, the Owner shall refund the full amount or the unused balance, as the case may be, to the Family.

(2) In those jurisdictions where interest is payable by the Owner on security deposits, the refunded amount shall include the amount of interest payable. All security deposit funds shall be deposited by the Owner in a segregated bank account, and the balance of this account, at all times, shall be equal to the total amount collected from tenants then in occupancy, plus any accrued interest. The Owner shall comply with all State and local laws regarding interest payments on security deposits.

(3) Families shall be expected to obtain the funds to pay security and utility deposits, if required, from their own resources and/or other private or public sources.

[illegible]

c. Eligibility, Selection and Admission of Families.

(1) The Owner shall be responsible for determination of eligibility of applicants, selection of Families from among those determined to be eligible, and computation of the amount of housing assistance payments on behalf of each selected Family in accordance with schedules and criteria established by the Government. [illegible] Section 1.8[illegible]

(2) The lease entered into between the Owner and each selected Family shall be on the form of lease approved by the Government [illegible]

[illegible]

5. Continued .....

C. Community contacts will be used extensively. Minority and white organizations will be contacted initially by letter with a personal visit follow-up to inform them of the Housing Project and to encourage them to refer persons in need of housing to make applications. In the same manner, local churches with a large portion of Whites and Hispanic members will be contacted also as a special outreach. In addition, contact will be made with the major employers in the area to attract some of their employees to the project.

D. As a result of these various means of contact, and considering the existing racial mix of the immediate area, it is anticipated that approximately 30% of the occupants will be of minority race.

E. After the initial rent-up, contacts will be maintained as mentioned to increase the White and Hispanic groups percentage if necessary. As indicated in Item 1, special effort by the sponsors will be made to attract retired elderly residents of the city to the project.

8. <u>Staffing</u>:

A. The firm that has been chosen to manage the proposed project is Parkledge Management Corporation located in Yonkers.

B. The firm of Parkledge Management Corporation is an experienced management firm and they presently manage the largest HUD/UDC project in Yonkers.

9. A. All staff personnel employed by Parkledge Management Corp. will be instructed both orally and in printed form to obey all fair housing laws that are applicable to the area, to refrain from discrimination regarding an application for housing on the basis of race, color, religion or natural origin and to promote fair housing practices in every respect. All staff will be provided with a copy of the <u>Affirmative Fair Housing Marketing Plan</u>, <u>Executive Order 10063</u> and <u>Title VIII of the Civil Rights Act of 1968</u>. They will be instructed to read and understand through discussion and study all policies of HUD regulations.

ATTACHMENT TO

AFFIRMATIVE FAIR HOUSING MARKETING PLAN

4. Direction of Marketing Program:

Because of the existing composition of the immediate surrounding area and of the entire City of Yonkers, the groups least likely to apply to the proposed project would be Hispanics and Whites. Special outreach efforts would be required to attract Hispanics and White residents. The area is largely minority Black, and an effort to maintain 30% minority will be strived for. Elderly will also be contacted and we expect to obtain tenants for the building in this category.

5. Marketing Program:

A. Newspapers and community contacts will be the most effective means of reaching the Hispanic and White sector of the City to encourage their applications. The newspapers in which we will advertise will be "El Diario-La Prensa", a daily paper with Hispanic readership and the Herald Statesman, with White readership. Ads will be approximately 1/8 page to 6 column inches to appear daily for initial rent-up, and as necessary to maintain occupancy. The ads will feature an Equal Housing Opportunity logo or slogan, at least to be 8 point bold face type. The content will adhere to the Advertising Guidelines for Fair Housing.

B. Brochures and flyers (8-1/2 x 11) will be used in depicting the units and displaying the Equal Housing Opportunity logotype or slogan. If the brochure depicts persons they will be shown as persons of both minority and majority groups. They will be made available to special outreach community contact groups so they may encourage majority applications. On site at the most viable and convenient location, a sign will be erected on the day of rehabilitation commencement. It will measure 5' x 6' and will display the Equal Housing Opportunity logo and slogan at a size of 2' x 2'.

4. STAFFING AND EXPERIENCE [illegible]

[illegible] the information requested in the table below for your organization (Developer/Sponsor) and for the other companies/organizations [illegible] with marketing this housing [illegible] applicable [illegible] staffing figures [illegible] staffing in those staff persons connected with marketing this housing [illegible] should be notified of any changes in the companies named in this chart.)

| Name of Company, Address and Telephone No. | Job Classification | | Present: Totals | White (non-minority) | Negro/Black | Spanish Am. | Am. Indian | Oriental | Other minority | Anticipated: Vacancies | Date of 1st Opening | Recruitment steps taken or to be taken to attract [illegible] persons | Company's experience with [illegible] (Minority % [illegible]) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Developer/Sponsor: BBI Enterprises, Inc. 924 North Broadway Yonkers, New York | Prof. | M | | 7 | | | | | | | | | |
| | | F | | 3 | | 2 | | | | | | | |
| | Other | M | | | | | | | | | | | |
| | | F | | | | | | | | | | | |
| 2. Advertising Agency (if different from #1): Parkledge Manage-ment Corporation 984 North Broadway Yonkers, New York | Prof. | M | | 1 | | | | | | | | | |
| | | F | | | | | | | | | | | |
| | Other | M | | | | | | | | | | | |
| | | F | | | | | | | | | | | |
| 3. Management and Sales/Rental staff (if different from #1 and/or #2): Parkledge Manage-ment Corporation 984 North Broadway Yonkers, New York | Prof. | M | 1 | | | | | | | | | 1 Supt. and 1 Porter will be hired for maintenance using local advertising under Equal Opportunity Employment | |
| | | F | 1 | 1 | | | | | | | | | |
| | Other | M | | | | | | | | | | | |
| | | F | | | | | | | | | | | |

9. STAFF INSTRUCTIONS: [illegible]

Fair Housing Training: [illegible] of Fair Housing requirements.

A. Are regular [illegible] staff meetings conducted? [X] Yes, when? weekly [ ] No.

[illegible] at these meetings? [ ] Yes, [X] No.

If yes, is Fair Housing training [illegible] to the [illegible] staff?

B. If you answered "no" [illegible] in item 9A, [illegible] [X] Yes [ ] No [illegible]

C. [illegible] will be submitted 3 months prior to Rental office opening

D. [illegible] Executive Order 11063, the Civil Rights Act of 1968 [illegible] and the Affirmative Marketing Plan? [X] Yes [ ] No, explain.

10. ADDITIONAL CONSIDERATIONS: [illegible]

We shall meet with the Yonkers Community Groups and have meeting and mailings to groups and individuals in the outreach program.

11. [illegible] Fair Housing Marketing Regulations.

| FOR HUD-OFFICE USE ONLY | | Signature of person submitting this plan |
|---|---|---|
| Approved by: Signature | Disapproved by: Signature | [signature] |
| Name (Type or print) | Name (Type or print) | Name (Type or print): Arthur Margulis |
| Title | Title | Title and Company: Manager Parkledge Management Corporation 984 North Broadway, Yonkers N. Y. |
| Date | Date | Date: July 12, 1977 |

HUD-935.2 (3-74)

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

AFFIRMATIVE FAIR HOUSING MARKETING PLAN

A. 1. FHA FILE NUMBER (Insured Home Projects) [illegible]

COMPLETE FORM AND SUBMIT TO: FAIR HOUSING AND EQUAL OPPORTUNITY DIRECTOR/SPECIALIST AREA/INSURING OFFICE

1. INTRODUCTION: [illegible]

2. APPLICANT AND PROJECT IDENTIFICATION:

A. APPLICANT'S NAME: DHI Enterprises, Inc.
ADDRESS: 984 North Broadway, Yonkers, New York
TELEPHONE NO.: 914-968-3700

B. PROJECT OR APPLICATION NUMBER: ______
SECTION OF ACT: ______
NUMBER OF UNITS: 82
PRICE OR RENTAL RANGE OF UNITS: FROM $ 415 TO $ 561

C. PROJECT:
NAME: Lamartine Terrace
LOCATION/ADDRESS: 28 Lamartine Avenue
CITY: Yonkers STATE: N.Y.
COUNTY: Yonkers CENSUS TRACT: 4.2

D. FOR MULTIFAMILY HOUSING ONLY: ☒ ELDERLY ☒ NON-ELDERLY

E. APPROXIMATE STARTING DATES: ADVERTISING: 6 months prior to completion of Rehabilitation OCCUPANCY: Summer 19[illegible]

3. TYPE OF AFFIRMATIVE MARKETING PLAN: ☒ Project Plan ☐ Annual Plan [illegible]
☐ Minority Area ☐ Mixed Area ☒ Other Area (% 30 % minority residents)

4. DIRECTION OF MARKETING ACTIVITY: [illegible]
☐ White (non-minority) ☐ Negro/Black ☒ Spanish American ☐ American Indian ☒ Oriental ☐ Other Minority (specify) ______

5. MARKETING PROGRAM: [illegible]

A. COMMERCIAL MEDIA: [illegible] ☐ Radio ☐ TV ☐ Billboards ☒ Other (specify) Mailings to Community groups, hospitals, etc.

| NAME OF MEDIA | White (non-minority) | Negro/Black | Spanish American | American Indian | Oriental | Other Minority | Size and/or Duration | Frequency of Insertion |
|---|---|---|---|---|---|---|---|---|
| Yonkers Herald Statesman | 50 | 30 | 20 | | 10 | | | |
| El Diario | | | 100 | | | | | |

NOTE: Attach copy of ad or state when it will be submitted.

B. BROCHURES, SIGNS AND HUD'S FAIR HOUSING POSTER: [illegible] ☒ Yes ☐ No. [illegible] Fair Housing Posters will be displayed at the ☒ Sales/Rental Office(s) ☐ Real Estate Office(s) ☐ Model Unit(s) ☐ Other (specify) ______

C. COMMUNITY CONTACTS: [illegible]

| Name of Group/Organization | Racial/Ethnic Identification | Approximate Date of Contact or Initial Contact | Person Contacted or to be Contacted | Address and Telephone No. | Method of Contact(s) | Indicate the specific function person(s) will undertake in implementing this plan |
|---|---|---|---|---|---|---|
| see attached list | | 3-6 mos prior to completion of Rehab. | attached | | Mailing Personal Contact | Parkledge Management Corporation staff |

6. FUTURE MARKETING ACTIVITIES (Rental Units Only): [illegible]
☒ Newspaper(s)/Publications ☐ Radio ☐ TV ☒ Brochures/Leaflets/Handouts ☒ Site Signs ☒ Community Contacts
☐ Other (specify) ______

7. ANTICIPATED OCCUPANCY RESULTS: [illegible]
White (non-minority) 50 Negro/Black 30 Spanish American 15 American Indian ___ Oriental 5
Other Minority (Specify) Applicants shall be treated equally according to Fair Housing Laws, trying to achieve Marketing Goals

HUD-935.2 (1-76) Previous Edition is Obsolete

Proj.No. NY 36-0010-003

EXHIBIT A - CONTRACT RENTS

| UNIT SIZE | NO. OF UNITS | CONTRACT RENTS |
| --- | --- | --- |
| 0-Br. | 16 | $415. |
| 1-Br. | 30 | 490. |
| 2-Br. | 36 | 561. |

EXHIBIT B - PROJECT DESCRIPTION

1-six story existing building to be substantially rehabilitated. Masonry and brick, full basement, slab on grade, oil, hot water, heat.

EXHIBIT C - STATEMENT OF SERVICES

Gas ranges, electric refrigerators, air conditioning, sleeves, heat, hot and cold water, gas for cooking.

EXHIBIT D - SEE PLAN ATTACHED

## RIDER TO SECTION 1.6 OF HOUSING ASSISTANCE PAYMENTS CONTRACT

### DEBT SERVICE PAYMENTS

(1) If a unit continues to be vacant after the 60 day period specified in paragraph b or c of this Section, the Owner may submit a claim to receive additional housing assistance payments on a semiannual basis with respect to such a vacant unit in an amount equal to the principal and interest payments required to amortize the portion of the debt attributable to that unit for the period of the vacancy, whether such vacancy commenced during rent-up or after rent-up.

(2) Additional Payments under this paragraph for any unit shall not be for more than 12 months for any vacancy period, and shall be made only if:

(i) The unit was in decent, safe and sanitary condition during the vacancy period for which payments are claimed.

(ii) The Owner has taken and is continuing to take the actions specified in paragraphs b(1)(2) and (3) or paragraphs c(1)(i) and (ii) and c(2) of this Section, as appropriate.

(iii) The Owner has demonstrated in connection with the semiannual claim on a form and in accordance with the standards prescribed by HUD with respect to the period of vacancy, that the project is not providing the Owner with revenues at least equal to the project costs incurred by the Owner, and that the amount of the payments requested is not in excess of that portion of the deficiency which is attributable to the vacant units for the period of the vacancies.

(iv) The Owner has submitted, in connection with the semiannual claim, a statement with relevant supporting evidence that there is a reasonable prospect that the project can achieve financial soundness within a reasonable time. The statement shall indicate the causes of the deficiency; the corrective steps that have been and will be taken; and the time by which it is expected that the project revenues will at least equal project costs without the additional payments provided under this paragraph.

(3) HUD may deny any application for additional payments or suspend or terminate payments if it determines, based on the Owner's statement and other evidence, that there is not a reasonable prospect that the project can achieve financial soundness within a reasonable time.

[illegible] Allowances for Utilities and Other Services. In the event [illegible] Allowance for Utilities and Other Services [illegible] the Owner shall promptly make corresponding adjustments in the amount of rent to be paid by the affected Families and the amount of housing assistance payments.

b. Processing of Applications and Complaints. The Owner shall process applications for admission, notifications to applicants, and complaints by Families in accordance with applicable Government requirements and shall maintain records and furnish such copies or other information as may be required by the Government.

c. Government Review [illegible] Payments. In making housing assistance payments to Owners, the Government will review the Owner's determinations under this Section. If as a result of this review, or other reviews, audits or information received by the Government at any time, it is determined that the Owner has received improper or excessive housing assistance payments, the Government shall have the right to deduct the amount of such overpayments from any amounts otherwise due the Owner, or otherwise effect recovery thereof.

TERMINATION OF TENANCY.

The Owner shall be responsible for termination of tenancies, including evictions. However, conditions for payment of housing assistance payments for any resulting vacancies shall be as set forth in Section 1.4.

REDUCTION OF NUMBER OF CONTRACT UNITS FOR FAILURE TO LEASE TO ELIGIBLE FAMILIES.

a. After First Year Of Contract. If at any time, beginning six months after the effective date of this Contract, the Owner fails for a continuous period of six months to have at least 80 percent of the Contract Units leased or available for leasing by Families, the Government may on 30 days notice reduce the number of Contract Units to not less than the number of units under lease or available for leasing by Families plus 10 percent of such number if the number is 10 or more, rounded to the next highest number.

b. At End of Initial and Each Renewal Term. At the end of the initial term of the Contract and of each renewal term, the Government may by notice to the Owner, reduce the number of Contract Units to not less than (1) the number of units under lease or available for leasing by Families at that time or (2) the average number of units so leased or available for leasing during the last year, whichever is the greater number, plus 10 percent of such number if the number is 10 or more, rounded to the next highest number.

c. Restoration of Units. The Government will agree to an amendment of the Contract to provide for subsequent restoration of any reduction made pursuant to paragraph a or b of this Section if the Government determines that the restoration is justified as a result of changes in demand and in the light of the Owner's record of compliance with his obligations under this Contract and if annual contributions contract authority is available; and the Government will take such steps authorized by section 8(c)(6) of the Act as may be necessary to carry out this assurance (see Section 1.5).

WARNING: 18 U.S.C. 1001 provides, among other things, that whoever knowingly and willfully makes or uses a document or writing containing any false, fictitious, or fraudulent statement or entry, in any matter within the jurisdiction of any department or agency of the United States, shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

OWNER ______________________________

By ______________________________

______________________________
(Official Title)

Date ______________________________ 19___

United States of America
Secretary of Housing and Urban Development

By ______________________________

______________________________
(Official Title)

Date ______________________________ 19___

[illegible] project is to be completed and accepted in stages, execution of the Contract with respect to the several stages appears on the following page [illegible] attached.)

The effective date of this contract is June 1, 1979 ... Park Property Associates

June 1, 1979 ... By [signature]

(Official Title)

Date ..., 19 .

United States of America
Secretary of Housing and Urban Development

By [signature]

Deputy Director, MF Housing Division
(Official Title)

Date 7/20 79

EXECUTION OF CONTRACT WITH RESPECT TO CONTRACT UNITS COMPLETED AND ACCEPTED IN STAGES
STAGE 2

This Contract is hereby executed with respect to the units described in Exhibit A-2.

...TIVE DATE. The effective date of this Contract is ______, 19___. [Insert date which shall be no earlier than t...e of Government acceptance of the project.]

OWNER ______

By ______

______
(Official Title)

Date ______, 19__

United States of America
Secretary of Housing and Urban Development

By ______

______
(Official Title)

Date ______, 19__

EXECUTION OF CONTRACT WITH RESPECT TO CONTRACT UNITS COMPLETED AND ACCEPTED IN STAGES
STAGE 3

...is Contract is hereby executed with respect to the units described in Exhibit A-3.

...TIVE DATE. The effective date of this Contract is ______, 19___. [Insert date which shall be no earlier than th...e of Government acceptance of the project.]

OWNER ______

By ______

______
(Official Title)

Date ______, 19___

United States of America
Secretary of Housing and Urban Development

By ______

______
(Official Title)

Date ______, 19___

9. Continued .....

B. As anticipated, a resident superintendent will be necessary for this project.

C. Training of the Rental Staff will include attending a discussion with persons who are expert administering fair housing laws preferably with a HUD staff member. Personnel will be required to attend specially arranged HUD programs dealing with management matters when they are available. The staff will be selected on the basis of their responsiveness and sensitivity to persons that are expected to apply for proposed housing. It will be made clear to both staff and the applicant through distribution of printed circulars how applicants are taken and the nature and length of time that is required for processing the application. Further, it will be made clear to all staff that no discrimination as to location of tenants in the project or use of any portion of the project facility will exist.

10. <u>Solicitation of HUD referrals</u>:

Referrals of possible tenants made by HUD will initially be contacted by direct mail, then telephone contact and followed by personal contact or by a personal interview.

In addition to the above, it will be made very clear to the applicant that they also will be responsible for recruiting members of Hispanic and White families of the area to obtain marketing goals.

11. The applicant agrees to make any changes in a plan covering a multifamily project, which may reasonably be required after initial rent-up to assure continued compliance with Section 200.260 of HUD's Affirmative Fair Housing Marketing Plan.

PARKLEDGE MANAGEMENT CORP.

****** COMMUNITY GROUPS TO BE CONTACTED FOR

****** 28 LAMARTINE TERRACE, YONKERS, NY

Rev. Frank T. Moore
St. Augestines Episcopal Church
81 Locust Hill Ave.

St. Margaret's R.C. Church
76 Locust Hill Avenue

Yonkers Child Care Assn.
156 North Broadway

First Westminister Presbyterian Church
111 North Broadway

Full Gospel Tabernacle
Assembly of God
57 Locust Hill Avenue

Community Bapist Church
156 North Broadway

Messiah Bapist Church
76 Warburton Avenue

# Memorandum

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

TO : Benjamin Skurnick, Area Counsel, 2.3G

DATE: JUNE 4, 1979

IN REPLY REFER 702.3HM

FROM : Edwin S. Sprenger, Housing Management, 2.3H

SUBJECT: Daily Debt Service Computation

Below is the daily debt service information to be made an exhibit to the Housing Payments Contract for:
LAMARTINE TERRACE (N.Y. 36-0010-003)

DAILY DEBT SERVICE COMPUTATION WORKSHEET

| Bedroom Size (a) | Number of Units (b) | Contract Rent (c) | Total. Contract Rent (d) | Contract Rent Percentage (e) | Debt Service by Bdr. Size (f) | Debt Service by Unit (g) | Daily Debt Service (h) |
|---|---|---|---|---|---|---|---|
| 0 | 16 | $415. | 6640. | 15.99% | $32,610.81 | 2038.18 | $5.66 |
| 1 | 30 | $490. | 14,700 | 35.39% | $72,196.14 | 2405.87 | $6.68 |
| 2 | 36 | $561. | 20,196. | 48.62% | 99,158.06 | 2754.39 | $7.65 |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| TOTAL | 82 | | 41,536 | 100.00% | $203,945.01 | | |

Deputy Director

PREVIOUS EDITION IS OBSOLETE

HUD-94 (7-75)

U. S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
SECTION 8 HOUSING ASSISTANCE PAYMENTS PROGRAM
SUBSTANTIAL REHABILITATION

PART II OF THE

# HOUSING ASSISTANCE PAYMENTS CONTRACT

PRIVATE-OWNER OR PHA-OWNER PROJECT

| HAP CONTRACT LIST NUMBER AND DATE: | PROJECT NUMBER: |
| --- | --- |
| 24/79-103 1/23/79 | ~~22-35-0013-003~~ |

2.1 NONDISCRIMINATION IN HOUSING.

a. The Owner shall not in the selection of Families, in the provision of services, or in any other manner, discriminate against any person on the grounds of race, color, creed, religion, sex, or national origin. No person shall be automatically excluded from participation in, or be denied the benefits of, the Housing Assistance Payments Program because of membership in a class such as unmarried mothers, recipients of public assistance, etc.

b. The Owner shall comply with all requirements imposed by Title VIII of the Civil Rights Act of 1968, and any rules and regulations pursuant thereto.

c. The Owner shall comply with all requirements imposed by Title VI of the Civil Rights Act of 1964, Public Law 88-352, 78 Stat. 241; the regulations of the Department of Housing and Urban Development issued thereunder, 24 CFR, Subtitle A, Part 1, Section 1.1, et seq.; the requirements of said Department pursuant to said regulations; and Executive Order 11063 to the end that, in accordance with that Act, the regulations and requirements of said Department thereunder, and said Executive Order, no person in the United States shall, on the grounds of race, color, creed, religion or national origin, be excluded from participation in, or be denied the benefits of, the Housing Assistance Payments Program, or be otherwise subjected to discrimination. This provision is included pursuant to the regulations of the Department of Housing and Urban Development, 24 CFR, Subtitle A, Part 1, Section 1.1, et seq., issued under Title VI of the said Civil Rights Act of 1964, and the requirements of said Department pursuant to said regulations; and the obligation of the Owner to comply therewith inures to the benefit of the Government and the said Department, either of which shall be entitled to invoke any remedies available by law to redress any breach thereof or to compel compliance therewith by the Owner.

2.2 TRAINING, EMPLOYMENT, AND CONTRACTING OPPORTUNITIES FOR BUSINESSES AND LOWER-INCOME PERSONS.[3]

a. The project assisted under this Contract is subject to the requirements of section 3 of the Housing and Urban Development Act of 1968, as amended, 12 U.S.C. 1701u. Section 3 requires that, to the greatest extent feasible, opportunities for training and employment be given lower-income residents of the project area and contracts for work in connection with the project be awarded to business concerns which are located in, or owned in substantial part by persons residing in, the area of the project.

b. Notwithstanding any other provision of this Contract, the Owner shall carry out the provisions of said section 3 and the regulations issued pursuant thereto by the Secretary of Housing and Urban Development set forth in 24 CFR, Part 135 (published in 38 Federal Register 29220, October 23, 1973), and all applicable rules and orders of the Secretary issued thereunder prior to the execution of this Contract. The requirements of said regulations include, but are not limited to, development and implementation of an affirmative action plan for utilizing business concerns located within, or owned in substantial part by persons residing in, the area of the project; the making of a good faith effort, as defined by the regulations, to provide training, employment, and business opportunities required by section 3; and incorporation of the "section 3 clause" specified by section 135.20(b) of the regulations and paragraph d of this Section in all contracts for work in connection with the project. The Owner certifies and agrees that he is under no contractual or other disability which would prevent him from complying with these requirements.

c. Compliance with the provisions of section 3, the regulations set forth in 24 CFR, Part 135, and all applicable rules and orders of the Secretary issued thereunder prior to approval by the Government of the application for this Contract, shall be a condition of the Federal financial assistance provided to the project, binding upon the Owner, his successors and assigns. Failure to fulfill these requirements shall subject the Owner, his contractors and subcontractors, his successors and assigns to the sanctions specified by this Contract, and to such sanctions as are specified by 24 CFR, Section 135.135.

d. The Owner shall incorporate or cause to be incorporated into any contract or subcontract for work pursuant to this Contract in excess of $50,000 cost, the following clause:

"EMPLOYMENT OF PROJECT AREA RESIDENTS AND CONTRACTORS

"A. The work to be performed under this Contract is on a project assisted under a program providing direct Federal financial assistance from the Department of Housing and Urban Development and is subject to the requirements of section 3 of the Housing and Urban Development Act of 1968, as amended, 12 U.S.C. 1701u. Section 3 requires that, to the greatest extent feasible, opportunities for training and employment be given lower-income residents of the project area and contracts for work in connection with the project be awarded to business concerns which are located in, or owned in substantial part by persons residing in, the area of the project.

"B. The parties to this Contract will comply with the provisions of said section 3 and the regulations issued pursuant thereto by the Secretary of Housing and Urban Development set forth in 24 CFR, Part 135, and all applicable rules and orders of the Department issued thereunder prior to the execution of this Contract. The parties to this Contract certify and agree that they are under no contractual or other disability which would prevent them from complying with these requirements.

"C. The contractor will send to each labor organization or representative of workers with which he has a collective bargaining agreement or other contract or understanding, if any, a notice advising the said labor organization or workers' representative of his commitments under this section 3 clause and shall post copies of the notice in conspicuous places available to employees and applicants for employment or training.

"D. The contractor will include this section 3 clause in every subcontract for work in connection with the project and will, at the direction of the applicant for or recipient of Federal financial assistance, take appropriate action pursuant to the subcontract upon a finding that the subcontractor is in violation of regulations issued by the Secretary of Housing and Urban Development, 24 CFR, Part 135. The contractor will not subcontract with any subcontractor where it has notice or knowledge that the latter has been found in violation of regulations under 24 CFR, Part 135, and will not let any subcontract unless the subcontractor has first provided it with a preliminary statement of ability to comply with the requirements of these regulations.

"E. Compliance with the provisions of section 3, the regulations set forth in 24 CFR, Part 135, and all applicable rules and orders of the Department issued thereunder prior to the execution of the Contract, shall be a condition of the Federal financial assistance provided to the project, binding upon the applicant or recipient for such assistance, its successors, and assigns. Failure to fulfill these requirements shall subject the applicant or recipient, its contractors and subcontractors, its successors, and assigns to those sanctions specified by the grant or loan agreement or contract through which Federal assistance is provided, and to such sanctions as are specified by 24 CFR, Section 135.135."

[3] Strike this Section if the Contract Rents on the effective date of this Contract, over the maximum term of this Contract, are $500,000 or less.

c. The Owner agrees that he will be bound by the above Employment of Project Area Residents and Contractors clause with respect to his own employment practices when he participates in federally assisted work.

2.3 COOPERATION IN EQUAL OPPORTUNITY COMPLIANCE REVIEWS. The Owner shall cooperate with the Government in the conducting of compliance reviews and complaint investigations pursuant to all applicable civil rights statutes, Executive Orders, and rules and regulations pursuant thereto.

2.4 FLOOD INSURANCE. If the project is located in an area that has been identified by the Secretary of Housing and Urban Development as an area having special flood hazards and if the sale of flood insurance has been made available under the National Flood Insurance Act of 1968, the Owner agrees that the project will be covered, during its anticipated economic or useful life, by flood insurance in an amount at least equal to its development or project cost (less estimated land cost) or to the maximum limit of coverage made available with respect to the particular type of property under the National Flood Insurance Act of 1968, whichever is less.

2.5 CLEAN AIR ACT AND FEDERAL WATER POLLUTION CONTROL ACT.[3] In compliance with regulations issued by the Environmental Protection Agency ("EPA"), 40 CFR, Part 15, 39 F.R. 15099, pursuant to the Clean Air Act, as amended ("Air Act"), 42 U.S.C. 1857, et seq., the Federal Water Pollution Control Act, as amended ("Water Act"), 33 U.S.C. 1251, et seq., and Executive Order 11738, the Owner agrees that:

a. Any facility to be utilized in the performance of this Contract or any subcontract shall not be a facility listed on the EPA List of Violating Facilities pursuant to section 15.20 of said regulations;

b. He will promptly notify the Department of Housing and Urban Development field office director of the receipt of any communication from the EPA indicating that a facility to be utilized for the Contract is under consideration to be listed on the EPA List of Violating Facilities;

c. He will comply with all the requirements of section 114 of the Air Act and section 308 of the Water Act relating to inspection, monitoring, entry, reports, and information, as well as all other requirements specified in section 114 and section 308 of the Air Act and the Water Act, respectively, and all regulations and guidelines issued thereunder; and

d. He will include or cause to be included the provisions of this Section in every nonexempt subcontract, and that he will take such action as the Government may direct as a means of enforcing such provisions.

2.6 REPORTS AND ACCESS TO PREMISES AND RECORDS.

a. The Owner shall furnish such information and reports pertinent to the Contract as reasonably may be required from time to time by the Government.

b. The Owner shall permit the Government or any of its duly authorized representatives to have access to the premises and, for the purpose of audit and examination, to have access to any books, documents, papers and records of the Owner that are pertinent to compliance with this Contract, including the verification of information pertinent to the housing assistance payments.

2.7 DEFAULT BY THE OWNER UNDER CONTRACT.

a. A default by the Owner under this Contract shall result if:

(1) The Owner has violated or failed to comply with any provision of, or obligation under, this Contract or of any lease; or

(2) The Owner has asserted or demonstrated an intention not to perform some or all of his obligations under this Contract or under any Lease.

b. Upon a determination by the Government that a default has occurred, the Government shall notify the Owner of (1) the nature of the default, (2) the actions required to be taken and the remedies to be applied on account of the default (including actions by the Owner to cure the default, and, where appropriate, abatement of housing assistance payments in whole or in part and recovery of overpayments), and (3) the time within which the Owner shall respond with a showing that he has taken all the actions required of him. If the Owner fails to respond or take action to the satisfaction of the Government, the Government shall have the right to terminate this Contract in whole or in part or to take other corrective action to achieve compliance.

c. The availability of any remedy under this Contract shall not preclude the exercise of any other remedy available under this Contract or under any provisions of law, nor shall any action taken in the exercise of any remedy be deemed a waiver of any other rights or remedies. Failure to exercise any right or remedy shall not constitute a waiver of the right to exercise that or any other right or remedy at any time.

2.8 DISPUTES.

a. Except as otherwise provided herein, any dispute concerning a question of fact arising under this Contract which is not disposed of by agreement between the Department of Housing and Urban Development field office and the Owner may be submitted by the Owner to the Secretary of Housing and Urban Development. The decision of the Secretary or duly authorized representative for the resolution of such disputes shall be final and conclusive, unless determined by a court of competent jurisdiction to have been fraudulent, or capricious, or arbitrary, or so grossly erroneous as necessarily to imply bad faith, or not supported by substantial evidence. In connection with any proceeding under this Section, the Owner shall be afforded an opportunity to be heard and to offer evidence in support of his position.

b. This Section does not preclude consideration of questions of law in connection with the decision rendered under paragraph a of this Section; provided, however, that nothing herein shall be construed as making final the decision of any administrative official, representative, or board, on a question of law.

2.9 INTEREST OF MEMBERS, OFFICERS, OR EMPLOYEES OF PHA, MEMBERS OF LOCAL GOVERNING BODY OR OTHER PUBLIC OFFICIALS. No member, officer, or employee of the PHA, no member of the governing body of the locality (city and county) in which the project is situated, no member of the governing body of the locality in which the PHA was activated, and no other public official of such locality or localities who exercises any functions or responsibilities with respect to the project, during his tenure or for one year thereafter, shall have any interest, direct or indirect, in this Contract or in any proceeds or benefits arising therefrom.

2.10 INTEREST OF MEMBER OF OR DELEGATE TO CONGRESS. No member of or delegate to the Congress of the United States of America or resident commissioner shall be admitted to any share or part of this Contract or to any benefits which may arise therefrom.

[3] Strike this Section if the Contract Rents on the effective date of this Contract, over the maximum rental term of this Contract, are $100,000 or less.

HUD-52528-[illegible]

2.11 ASSIGNMENT, SALE, OR FORECLOSURE.

a. The Owner agrees that he has not made and will not make any sale, assignment, or conveyance or transfer in any other form, of this Contract or the project or any part thereof or any of his interest therein, without the prior consent of the Government; Provided, however, that in the case of an assignment as security for the purpose of obtaining financing of the project, the Government shall consent in writing if the terms of the financing have been approved by the Government.

b. The Owner agrees to notify the Government promptly of any proposed action covered by paragraph a of this Section. The Owner further agrees to request the written consent of the Government in regard thereto.

c. (1) A transfer by the Owner, in whole or in part, or a transfer by a party having a substantial interest in said Owner, or any other similarly significant change in the ownership of interests in the Owner, or in the relative distribution thereof, or with respect to the parties in control of the Owner, by any other method or means (e.g., increased capitalization, merger with another corporation or other entity, corporate or other amendments, issuance of new or additional ownership interests or reclassification of ownership interests or otherwise) shall be deemed an assignment, conveyance, or transfer for purposes of this Section 2.11. An assignment by the Owner to a limited partnership, in which the Owner is the sole general partner, shall not be considered an assignment, conveyance, or transfer.

(2) The term "substantial interest" means the interest of any general partner, any limited partner having a 25 percent or more interest in the organization, any corporate officer or director, and any stockholder having a 10 percent or more interest in the organization.

(3) The Owners and the party signing this Contract on behalf of said Owners, represent that they have the authority of all of the parties having ownership interests in the Owner to agree to this provision on their behalf and to bind them with respect thereto.

d. In the event of foreclosure, including foreclosure by the Government, and in the event of assignment or sale agreed to by the Government or made to the Government, housing assistance payments shall continue in accordance with the terms of the Contract.

[If the project is subject to 24 CFR, Section 881.125, paragraph d above shall be stricken and the following shall be used instead:

e. In the event of foreclosure, or assignment or sale to the financing agency in lieu of foreclosure, or in the event of assignment or sale agreed to by the financing agency and approved by the Government (which approval shall not be unreasonably delayed or withheld), housing assistance payments shall continue in accordance with the terms of the Contract.]

SUBSTANTIAL REHABILITATION
PART I OF THE
# HOUSING ASSISTANCE PAYMENTS CONTRACT
PRIVATE-OWNER OR PHA-OWNER PROJECT

CONTRACT LIST NUMBER AND DATE: 1 9/29/80 | PROJECT NUMBER: NY36-H130-050

NYDO-739
NY 81-441 8/4/81 (Amended)

[illegible] Housing Assistance Payments Contract ("Contract") is entered into by and between the United States of America acting through the Department of Housing and Urban Development ("Government"), and St. Johns T. Associates ("Owner"), [illegible] the United States Housing Act of 1937 ("Act"), 42 U.S.C. 1437, et seq., and the Department of Housing and Urban Development Act, 42 [illegible] et seq.

[illegible] parties hereto agree as follows:

SIGNIFICANT DATES AND OTHER ITEMS; CONTENTS OF CONTRACT.

Effective Date of Contract. The effective date of this Contract is SEE STAGING ATTACHED, 19__. (This date shall be no earlier than the date of Government acceptance of the project.)

Term of Contract Where Relative Cost of Rehabilitation Is 15 Percent or More of Value.

(3) Maximum Total Term. The maximum total term of this Contract for any unit, including [illegible] (see Section 1.1a), shall be 20 years. [Insert number as authorized by the Government pursuant to 24 CFR, Section 881.[illegible], but in no event more than 30 years, or, in the case of a project owned by, or financed by a loan or a loan guarantee from, a State or local agency, the number, not to exceed 40, which will provide a term ending with the scheduled maturity date for the last payment under such financing.]

Fiscal Year. The ending date of each Fiscal Year (see Section 1.6b) shall be Dec. 31 [Insert March 31, June 30, September 30, or December 31, as determined by the Government].

Maximum Housing Assistance Commitment. The maximum amount of the commitment for housing assistance payments under this Contract (see Section 1.4e) is $1,581,804: annum.

Minimum Percentage of Occupancy by Very Low-Income Families. In the initial renting of the Contract Units, the Owner shall lease at least 30 percent [Insert 30, or lower number if authorized by the Government in accordance with 24 CFR, Section 881.117] to Very Low-Income Families determined in accordance with the Government-established schedules and criteria] and shall thereafter exercise his best efforts to achieve and maintain at least 30 percent occupancy of the Contract Units by Very Low-Income Families as determined in accordance with such schedules and criteria.

Contents of Contract. This Contract consists of Part I, Part II, and the following exhibits:

Exhibit A: The schedule showing the number of units by size ("Contract Units") and their applicable rents ("Contract Rents");

Exhibit B: The project description;

Exhibit C: The statement of services, maintenance and utilities to be provided by Owner;

Exhibit D: The Affirmative Fair Housing Marketing Plan, if applicable; and

Additional exhibits: [Specify additional exhibits, if any. If none, insert "None."]

Exhibit E: Daily Debt Service Computation

[illegible] Contract, including said exhibits, comprises the entire agreement between the parties hereto with respect to the matters contained therein, and neither party is bound by any representations or agreements of any kind except as contained herein or except agreements entered into in writing which are not inconsistent with this Contract.

OWNER'S WARRANTIES.

Legal Capacity. The Owner warrants that he has the legal right to execute this Contract and to lease dwelling units covered by this Contract.

Completion of Work. The Owner warrants that the project as described in Exhibit B is in good and tenantable condition and that the project has been completed in accordance with the terms and conditions of the Agreement to Enter Into Housing Assistance Payments Contract ("Agreement") or will be completed in accordance with the terms on which the project was accepted. The Owner further warrants that he will remedy any defects or omissions covered by this warranty if called to his attention within 12 months of the effective date of this Contract. The Owner and the Government agree that the continuation of this Contract shall be subject to the conditions set forth in Section 1.4f of the Agreement.

[illegible] TO RECEIVE GOVERNMENT ASSISTANCE.

[illegible]

## RIDER TO SECTION 1.6 OF HOUSING ASSISTANCE PAYMENTS CONTRACT

### DEBT SERVICE PAYMENTS

(1) If a unit continues to be vacant after the 60 day period specified in paragraph b or c of this Section, the Owner may submit a claim to receive additional housing assistance payments on a semiannual basis with respect to such a vacant unit in an amount equal to the principal and interest payments required to amortize the portion of the debt attributable to that unit for the period of the vacancy, whether such vacancy commenced during rent-up or after rent-up.

(2) Additional Payments under this paragraph for any unit shall not be for more than 12 months for any vacancy period, and shall be made only if:

(i) The unit was in decent, safe and sanitary condition during the vacancy period for which payments are claimed.

(ii) The Owner has taken and is continuing to take the actions specified in paragraphs b(1)(2) and (3) or paragraphs c(1)(i) and (ii) and c(2) of this Section, as appropriate.

(iii) The Owner has demonstrated in connection with the semiannual claim on a form and in accordance with the standards prescribed by HUD with respect to the period of vacancy, that the project is not providing the Owner with revenues at least equal to the project costs incurred by the Owner, and that the amount of the payments requested is not in excess of that portion of the deficiency which is attributable to the vacant units for the period of the vacancies.

(iv) The Owner has submitted, in connection with the semiannual claim, a statement with relevant supporting evidence that there is a reasonable prospect that the project can achieve financial soundness within a reasonable time. The statement shall indicate the causes of the deficiency; the corrective steps that have been and will be taken; and the time by which it is expected that the project revenues will at least equal project costs without the additional payments provided under this paragraph.

(3) HUD may deny any application for additional payments or suspend or terminate payments if it determines, based on the Owner's statement and other evidence, that there is not a reasonable prospect that the project can achieve financial soundness within a reasonable time.

(2) If there is an Allowance for Utilities and Other Services and if such Allowance exceeds the Gross Family Contribution, the Owner shall pay the Family the amount of such excess on behalf of the Government upon receipt of funds from the Government for this purpose.

TERM OF CONTRACT; FISCAL YEAR.

a. Term of Contract.

[Alternative provisions–incorporate alternative 1 or 2]

Alternative 1 – Where HUD has determined that the Cost of Rehabilitation is Less Than 25 Percent of Value.

The term of this Contract for any unit shall be as stated in Section 1.1b, with an option for renewal by either party. If the project is completed in stages, this term shall be separately related to the units in each stage; Provided, however, that the total Contract term for all the stages, beginning with the effective date of the Contract with respect to the first stage, shall not exceed said Contract term plus two years.

Alternative 2 – Where HUD Has Determined that the Cost of Rehabilitation Is 25 Percent or More of Value.

The initial term of this Contract for any unit shall be as stated in Section 1.1c(1). This Contract may be renewed at the option of the Owner, for the number and length of additional terms stated in Section 1.1c(2). Provided that the total Contract term for any unit... Renewal shall be automatic unless the Owner notifies the Government, no later than 10 days prior to the expiration of the current term, of his intention not to renew. If the project is completed in stages, the dates for the initial term and renewal terms shall be separately related to the units in each stage; Provided, however, that the total Contract term for all the stages, beginning with the effective date of the Contract with respect to the first stage, shall not exceed the total Contract term stated in Section 1.1c(2), plus two years. In any case where the project is owned by, or financed by or insured by a State or local agency, the housing assistance payments pursuant to this Contract with respect to any unit shall not exceed the total Contract term, or 40 years, whichever is less, and shall be payable over a period not to exceed 40 years.

b. Fiscal Year. The Fiscal Year for the project shall be the 12-month period ending on the date stated in Section 1.1d; Provided, however, that the first Fiscal Year for the project shall be the period beginning with the effective date of the Contract and ending on the last day of the first Fiscal Year which is not less than 12 months after such effective date. If the first Fiscal Year exceeds 12 months, the maximum total annual housing assistance payment in Section 1.5a may be adjusted by the addition of the pro rata amount applicable to the period of operation in excess of 12 months.

MAXIMUM HOUSING ASSISTANCE COMMITMENT; PROJECT ACCOUNT.

a. Maximum Housing Assistance Commitment. Notwithstanding any other provisions of this Contract *(other than paragraph b of this Section)* or any provisions of any other contract between the Government and the Owner, the Government shall not be obligated to make any housing assistance payments under this Contract in excess of the amount per annum stated in Section 1.1e; Provided, however, that this amount shall be reduced commensurately with any reduction in the number of Contract Units or in the Contract Rents pursuant to any other provisions of this Contract.

b. Project Account. In order to assure that housing assistance payments will be increased on a timely basis to cover increases in Contract Rents or decreases in Family Incomes:

(1) A Project Account shall be established and maintained, in an amount as determined by the Government consistent with its responsibilities under section 5(c)(6) of the Act, out of amounts by which the maximum Contract commitment per year exceeds amounts paid under the Contract for any Fiscal Year. This account shall be established and maintained by the Government as a specifically identified and segregated account. To the extent funds are available in said account, the maximum total annual housing assistance payments for any Fiscal Year may exceed the maximum amount stated in paragraph a of this Section to cover increases in Contract Rents or decreases in Family Incomes *(see Section 1.6j)*. Any amount remaining in said account after payment of the last housing assistance payment with respect to the project shall be applied by the Government in accordance with law.

(2) Whenever the Government approved estimate of the required Annual Contribution exceeds the maximum Contract commitment then in effect, and would cause the amount in the Project Account to be less than an amount equal to 40 percent of such maximum Contract commitment, the Government shall, within a reasonable period of time, take such additional steps authorized by section 5(c)(6) of the Act as may be necessary to carry out this assurance, including *(as provided in that section of the Act)* "the reservation of annual contributions authority for the purpose of amending housing assistance contracts or the allocation of a portion of new authorizations for the purpose of amending housing assistance contracts."

See Rider

HOUSING ASSISTANCE PAYMENTS TO OWNERS.

a. General.

(1) Housing assistance payments shall be paid to the Owner for units under lease by Families in accordance with the Contract. The housing assistance payment will cover the difference between the Contract Rent and that portion of said rent payable by the Family as determined in accordance with the Government-established schedules and criteria.

(2) The amount of housing assistance payment payable on behalf of a Family and the amount of rent payable by such Family shall be subject to change by reason of changes in Family Income, Family composition, or extent of exceptional medical or other unusual expenses, in accordance with the Government-established schedules and criteria; or by reason of adjustment by the Government of any applicable Allowance for Utilities and Other Services. Any such change shall be effective as of the date stated in a notification of such change to the Family.

b. Vacancies During Rent-up. If a Contract Unit is not leased as of the effective date of the Contract, the Owner shall be entitled to housing assistance payments in the amount of 80 percent of the Contract Rent for the unit for a vacancy period not exceeding 60 days from the effective date ... and otherwise complied with Section ...

(2) If the Owner evicts a Family, he shall not be entitled to any payment under paragraph (1) of this Section unless the request for such payment is supported by a certification that (i) he gave such Family a written notice of the proposed eviction stating the grounds and advising the Family that it had 10 days within which to present its objections to the Owner in writing or in person and (ii) the proposed eviction was not in violation of the lease or the Contract or any applicable law.

Limitation on Payments for Vacant Units. The Owner shall not be entitled to housing assistance payments with respect to vacant units under this Section to the extent he is entitled to payments from other sources (e.g., payments for losses of rental income incurred for holding units vacant for relocatees pursuant to Title I of the Housing and Community Development Act of 1974 or payments under Section 1.9b of this Contract).

Government Not Obligated for Family Rent. The Government has not assumed any obligation for the amount of rent payable by any Family or the satisfaction of any claim by the Owner against any Family other than in accordance with Section 1.9b of this Contract. The financial obligation of the Government is limited to making housing assistance payments on behalf of Families in accordance with this Contract.

Owner's Monthly Requests for Payments.

(1) The Owner shall submit monthly requests to the Government for housing assistance payments. Each such request shall set forth the (i) the name of each Family and the address and/or number of the unit leased by the Family; (ii) the address and/or the number of units, if any, not leased to Families for which the Owner is claiming payment; (iii) the Contract Rent as set forth in Exhibit A for each unit for which the Owner is claiming payments; (iv) the amount of rent payable by the Family leasing the unit (or, where applicable, the amount to be paid the Family in accordance with Section 1.2b(2)); and (v) the total amount of housing assistance payments requested by the Owner.

(2) Each of the Owner's monthly requests shall contain a certification by him that to the best of his knowledge and belief (i) the dwelling units are in Decent, Safe, and Sanitary condition, (ii) all the other facts and data on which the request for funds is based are true and correct, (iii) the amount requested has been calculated in accordance with the provisions of this Contract and is payable under the Contract, and (iv) none of the amount claimed has been previously claimed or paid.

(3) If the Owner has received an excessive payment, the Government, in addition to any other rights to recovery, may deduct the amount from any subsequent payment or payments.

(4) The Owner's monthly requests for housing assistance payments shall be made subject to penalty under 18 U.S.C. 1001, which provides, among other things, that whoever knowingly and willfully makes or uses a document or writing containing any false, fictitious, or fraudulent statement or entry, in any matter within the jurisdiction of any department or agency of the United States, shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

Recoupment of Savings in Financing Cost.

(1) In the event that interim financing is continued after the first year of the term of the Contract and the debt service of the interim financing for any period of three months, after such first year, is less than the anticipated debt service under the permanent financing on which the Contract Rents were based, an amount reflecting the savings in financing cost, computed in accordance with paragraph g(2) of this Section, shall be credited by the Government to the Project Account, and withheld from housing assistance payments to the Owner. If during the course of the same year there is any period of three months in which the debt service is greater than the anticipated debt service under the permanent financing, an adjustment shall be made so that only the net amount of savings in financing cost for the year is credited by the Government to the Project Account and withheld from housing assistance payments to the Owner as aforesaid (no increased payments shall be made to the Owner on account of any net excess for the year of actual interim debt service over the anticipated debt service under the permanent financing). Nothing in this paragraph g shall be construed as requiring a reduction in the Contract Rents or precluding adjustments of Contract Rents in accordance with Section 1.8.

(2) The computation and recoupment under this paragraph g may be made on an annual or on a quarterly or other periodic basis, but in any event no later than as of the end of each Fiscal Year: Provided, however, that if recoupment is to be made less often than quarterly, the amounts of recoupment shall be computed on at least a quarterly basis and the funds shall be deposited in a special account from which withdrawals may be made only with the authorization of the Government. The manner of computing the amount of recoupment shall be as follows:

(i) Determine the amount by which the interest cost for the debt service for the period in question is less than the anticipated debt service under the permanent financing on which the Contract Rents were based;

(ii) Determine what percentage the amount found under paragraph g(2)(i) of this Section is of the aggregate Contract Rents for all Contract Units for the period in question;

(iii) Apply the percentage found in paragraph g(2)(ii) of this Section to the aggregate Contract Rents for those Contract Units which are included in the Owner's claim(s) for housing assistance payments for the period in question; and

(iv) The amount found in paragraph g(2)(iii) of this Section shall be credited to the Project Account and withheld from the next housing assistance payment or payments to the Owner.

MAINTENANCE, OPERATION AND INSPECTION.

Maintenance and Operation. The Owner agrees (1) to maintain and operate the Contract Units and related facilities so as to provide Decent, Safe, and Sanitary housing, and (2) to provide all the services, maintenance and utilities set forth in Exhibit C. If the Government determines that the Owner is not meeting one or more of these obligations, the Government shall have the right, in addition to its other rights and remedies under this Contract, to abate housing assistance payments in whole or in part.

Inspection.

(1) Prior to occupancy of any unit by a Family, the Owner and the Family shall inspect the unit and both shall certify, on forms prescribed by the Government, that they have inspected the unit and have determined it to be Decent, Safe, and Sanitary in accordance with the criteria provided in the prescribed forms. Copies of these reports shall be kept on file by the Owner for at least three years.

(2) The Government shall inspect or cause to be inspected each Contract Unit and related facilities at least annually and at such other times (including prior to initial occupancy and execution of any lease) as may be necessary to assure that the Owner is meeting his obligation to maintain the units in Decent, Safe, and Sanitary condition and to provide the agreed upon utilities and other services. The Government shall take into account complaints by occupants and any other information coming to its attention [illegible] schedule [illegible]

any of its rights or remedies under the Contract, including abatement of housing assistance payments, even if the Family continues to occupy the unit. If, however, the Family wishes to be relocated in another dwelling unit with Section 8 assistance and the Government does not have other Section 8 funds for such purposes, the Government may use the abated housing assistance payments for the purpose of relocating the Family in another dwelling unit. Where this is done, the Owner shall be notified that he will be entitled to resumption of housing assistance payments for the vacated dwelling unit if (1) the unit is restored to Decent, Safe, and Sanitary condition, (2) the Family is willing to and does move back into the restored unit, and (3) a deduction is made for the expenses incurred by the Family for both moves.

d. Notification of Abatement. Any abatement of housing assistance payments shall be effective as provided in written notification to the Owner. The Government shall promptly notify the Family of any such abatement.

e. Overcrowded and Underoccupied Units. If the Government determines that a Contract Unit is not Decent, Safe, and Sanitary by reason of increase in Family size, or that a Contract Unit is larger than appropriate for the size of the Family in occupancy, housing assistance payments with respect to such unit will not be abated, unless the Owner fails to offer the Family a suitable unit as soon as one becomes vacant and ready for occupancy. In the case of an overcrowded unit, if the Owner does not have any suitable units or if no vacancy of a suitable unit occurs within a reasonable time, the Government will assist the Family in finding a suitable dwelling unit and require the Family to move to such a unit as soon as possible. The Owner may receive housing assistance payments for the vacated unit if he complies with the requirements of Section 1.6(1).

RENT ADJUSTMENTS.

a. Funding of Adjustments. Housing assistance payments will be made in increased amounts commensurate with Contract Rent adjustments under this Section, up to the maximum amount authorized under Section 1.5 of this Contract.

b. Automatic Annual Adjustments.

(1) Automatic Annual Adjustment Factors will be determined by the Government at least annually; interim revisions may be made as market conditions warrant. Such Factors and the basis for their determination will be published in the Federal Register. These published Factors will be reduced appropriately by the Government where utilities are paid directly by the Families.

(2) On each anniversary date of the Contract, the Contract Rents shall be adjusted by applying the applicable Automatic Annual Adjustment Factor most recently published by the Government. Contract Rents may be adjusted upward or downward, as may be appropriate; however, in no case shall the adjusted Contract Rents be less than the Contract Rents on the effective date of the Contract.

c. Special Additional Adjustments. Special additional adjustments shall be granted, when approved by the Government, to reflect increases in the actual and necessary expenses of owning and maintaining the Contract Units which have resulted from substantial general increases in real property taxes, utility rates, or similar costs (i.e., assessments, and utilities not covered by regulated rates), but only if and to the extent that the Owner clearly demonstrates that such general increases have caused increases in the Owner's operating costs which are not adequately compensated for by automatic annual adjustments. The Owner shall submit to the Government financial statements which clearly support the increase.

d. Overall Limitation. Notwithstanding any other provisions of this Contract, adjustments as provided in this Section shall not result in material differences between the rents charged for assisted and comparable unassisted units, as determined by the Government; provided, that this limitation shall not be construed to prohibit differences in rents between assisted and comparable unassisted units to the extent that such differences may have existed with respect to the initial Contract Rents.

e. Incorporation of Rent Adjustment. Any adjustment in Contract Rents shall be incorporated into Exhibit A by a dated addendum to the exhibit establishing the effective date of the adjustment.

f. Adjustment to Reflect Actual Cost of Permanent Financing. This paragraph f shall apply if the project is not permanently financed until after the effective date of the Contract. After the project is permanently financed, the Financing Agency shall submit a certification to the Government as to the actual financing terms. If the actual debt service under the permanent financing is lower than the anticipated debt service on which the Contract Rents were based, the Contract Rents currently in effect shall be reduced commensurately, and the amount of the savings shall be credited to the Project Account. The maximum Contract commitment shall not be reduced. If the actual debt service is higher, the Contract Rents shall not be increased.

MARKETING AND LEASING OF UNITS.

a. Compliance with Equal Opportunity. Marketing of units and selection of Families by the Owner shall be in accordance with the Owner's Government-approved Affirmative Fair Housing Marketing Plan, shown as Exhibit D, and with all regulations relating to fair housing advertising.

b. Security and Utility Deposits.

(1) The Owner may require Families to pay a security deposit in an amount equal to one month's Gross Family Contribution. If a Family vacates its unit, the Owner, subject to State and local law, may utilize the deposit as reimbursement for any unpaid rent or other amount owed under the Lease. If the Family has provided a security deposit, and it is insufficient for such reimbursement, the Owner may claim reimbursement from HUD, not to exceed an amount equal to the remainder of one month's Contract Rent. Any reimbursement under this Section shall be applied first toward any unpaid rent. If a Family vacates the unit owing no rent or other amount under the Lease or if the amount owed is less than the amount of the security deposit, the Owner shall refund the full amount or the unused balance, as the case may be, to the Family.

In those jurisdictions where interest is payable by the Owner on security deposits, the refunded amount shall include the amount of interest payable. All security deposit funds shall be deposited by the Owner in a segregated bank account, and the balance of this account, at all times, shall be equal to the total amount collected from tenants then in occupancy, plus any accrued interest. The Owner shall comply with all State and local laws regarding interest payments on security deposits.

*of elderly Families*), and appropriate redetermination shall be made by the Owner of the amount of Family contribution and the amount of housing assistance payment, all in accordance with schedules and criteria established by the Government. In connection with the reexamination, the Owner shall determine what percentage of Families in occupancy are Very Low-Income Families. If there are fewer than 30 percent Very Low-Income Families in occupancy, the Owner shall report the fact to the Government and shall adopt changes in his admission policies to achieve, as soon as possible, at least 30 percent occupancy by such Families.

Rent Redetermination after Adjustment in Allowance for Utilities and Other Services. In the event that the Owner/Government makes an adjustment in the Allowance for Utilities and Other Services applicable to any of the Contract Units, the Owner shall promptly make a corresponding adjustment in the amount of rent to be paid by the affected Families and the amount of housing assistance payments.

Processing of Applications and Complaints. The Owner shall process applications for admission, notifications to applicants, and complaints by applicants in accordance with applicable Government requirements and shall maintain records and furnish such copies or other information as may be required by the Government.

Government Review; Incorrect Payments. In making housing assistance payments to Owners, the Government will review the Owner's determinations under this Section. If as a result of this review, or other reviews, audits or information received by the Government at any time, it is determined that the Owner has received improper or excessive housing assistance payments, the Government shall have the right to deduct the amount of such overpayments from any amounts otherwise due the Owner, or otherwise effect recovery thereof.

TERMINATION OF TENANCY.

The Owner shall be responsible for termination of tenancies, including evictions. However, conditions for payment of housing assistance payments for any resulting vacancies shall be as set forth in Section 1.6c.

REDUCTION OF NUMBER OF CONTRACT UNITS FOR FAILURE TO LEASE TO ELIGIBLE FAMILIES.

After First Year Of Contract. If at any time, beginning six months after the effective date of this Contract, the Owner fails for a continuous period of six months to have at least 80 percent of the Contract Units leased or available for leasing by Families, the Government may, on 30 days notice reduce the number of Contract Units to not less than the number of units under lease or available for leasing by Families, plus 10 percent of such number if the number is 10 or more, rounded to the next highest number.

At End of Initial and Each Renewal Term. At the end of the initial term of the Contract and of each renewal term, the Government may, by notice to the Owner, reduce the number of Contract Units to not less than (1) the number of units under lease or available for leasing by Families at that time or (2) the average number of units so leased or available for leasing during the last year, whichever is the greater number, plus 10 percent of such number if the number is 10 or more, rounded to the next highest number.

Restoration of Units. The Government will agree to an amendment of the Contract to provide for subsequent restoration of any reduction made pursuant to paragraphs a or b of this Section if the Government determines that the restoration is justified as a result of changes in demand and in the light of the Owner's record of compliance with his obligations under this Contract and if annual contributions contract authority is available and the Government will take such steps authorized by section 8(c)(6) of the Act as may be necessary to carry out this assurance (see Section 1.5).

WARNING: 18 U.S.C. 1001 provides, among other things, that whoever knowingly and willfully makes or uses a document or writing containing any false, fictitious, or fraudulent statement or entry, in any matter within the jurisdiction of any department or agency of the United States, shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

OWNER St. John I Associates

By ______________________

(Official Title)

______________________, 19__

Date

United States of America
Secretary of Housing and Urban Development

By ______________________

Deputy Director M/F Hsng. Dev.
(Official Title)

______________________, 19__

Date

...ject is to be completed and accepted in stages, execution of the Contract with respect to the several stages appears on the following pages.]

REVISED

Section 8 Staging Schedule

St. Johns Phase I
NY 36 - 4110 - 050 - (Sec 8#)
012 - 57113 - LD - EC (FHANO)

| STAGE I: 76 Units | No of Units | 0 Br | 1 Br | 2 Br | 3 Br |
|---|---|---|---|---|---|
| 1280 St Johns Place | 20 | 0 | 5 | 8 | 7 |
| 1284 St Johns Place | 18 | 0 | 6 | 9 | 3 |
| 1288 St Johns Place | 18 | 0 | 6 | 9 | 3 |
| 1292 St Johns Place | 20 | 0 | 9 | 11 | 0 |
| TOTAL STAGE I | 76 | 0 | 26 | 37 | 13 |
| OCCUPANCY DATE: | June 25, 1982 | | | | |

| STAGE II: 44 Units | No of Units | 0 Br | 1 Br | 2 Br | 3 Br |
|---|---|---|---|---|---|
| 1535 Sterling Place | 16 | 2 | 10 | 0 | 4 |
| 1539 Sterling Place | 28 | 3 | 15 | 10 | - |
| TOTAL STAGE II | 44 | 5 | 25 | 10 | 4 |

ANTICIPATED OCCUPANCY DATE: September 15, 1982

| STAGE III: | No of Units | 0 Br | 1 Br | 2 Br | 3 Br |
|---|---|---|---|---|---|
| 1550 Sterling Place | 37 | 5 | 20 | 12 | - |
| 1566 Sterling Place | 34 | 4 | 11 | 19 | - |
| TOTAL STAGE III | 71 | 9 | 31 | 31 | - |

ANTICIPATED OCCUPANCY DATE: October 30, 1982

EXECUTION OF CONTRACT WITH RESPECT TO CONTRACT UNITS COMPLETED AND ACCEPTED IN STAGES
STAGE 1

[illegible] Contract is hereby executed with respect to the units described in Exhibit A-1.

[illegible] DATE. The effective date of this Contract is July 1, 1982, 19___. [Insert date which shall be no earlier than the [illegible] acceptance of the project.]

SEE STAGING SHEET ATTACHED

OWNER St.Johns I Associates
By
MANAGING GENERAL PARTNER
(Official Title)
Date 8/23/82, 19

United States of America
Secretary of Housing and Urban Development
By
Director of Housing
(Official Title)
Date 8/25, 1982

EXECUTION OF CONTRACT WITH RESPECT TO CONTRACT UNITS COMPLETED AND ACCEPTED IN STAGES
STAGE 2

[illegible] Contract is hereby executed with respect to the units described in Exhibit A-2.

DATE. The effective date of this Contract is September 22, 1982, 19___. [Insert date which shall be no earlier than the [illegible] acceptance of the project.]

SEE STAGING SHEET ATTACHED

OWNER St.Johns Associates
By
(Official Title)
Date 11/30, 1982

United States of America
Secretary of Housing and Urban Development
By
Director of Housing
(Official Title)
Date 12/1, 1982

[illegible]ECUTION OF CONTRACT WITH RESPECT TO CONTRACT UNITS COMPLETED AND ACCEPTED IN STAGES

CONTINUED ON NEXT PAGE

[illegible] The effective date of this Contract is [illegible] 19___ [illegible] than the [illegible] of the project.]

By

EXECUTION OF CONTRACT WITH RE... TO CONTRACT UNITS COMPLETED AND ACCEPTED IN STAGES

STAGE 3

This Contract is hereby executed with respect to the units described in Exhibit A-1.

...IVE DATE. The effective date of this Contract is December 15, 1982. (Insert date which shall be no earlier than the ...of Government acceptance of the project.)

SEE STAGING SHEET ATTACHED

OWNER ST. JOHNS I ASSOCIATES

By [signature]

(Official Title)

Date 3/1, 19 83

United States of America
Secretary of Housing and Urban Development

By [signature]

DIRECTOR OF HOUSING
(Official Title)

Date 3/1, 19 83

EXECUTION OF CONTRACT WITH RESPECT TO CONTRACT UNITS COMPLETED AND ACCEPTED IN STAGES

[redacted]

This Contract is hereby executed with respect to the units described in Exhibit A-1.

...IVE DATE. The effective date of this Contract is ______, 19__. (Insert date which shall be no earlier than the ... Government acceptance of the project.)

OWNER

By

(Official Title)

Date ______, 19__

United States of America
Secretary of Housing and Urban Development

By

(Official Title)

Date ______, 19__

EXECUTION OF CONTRACT WITH RESPECT TO CONTRACT UNITS COMPLETED AND ACCEPTED IN STAGES

[redacted]

Contract is hereby executed with respect to the units described in Exhibit A-3.

...IVE DATE. The effective date of this Contract is ______, 19__. (Insert date which shall be no earlier than the ...ernment acceptance of the project.)

OWNER

By

(Official Title)

Date ______, 19__

United States of America
Secretary of Housing and Urban Development

By

(Official Title)

Date ______, 19__

PJR Construction Corporation
122 West End Avenue • Brooklyn, New York 11235 • (212) 332-9859
9070

January 12, 1982.

St. Johns I Assoc.
39 Broadway
New York, N.Y.

Re: St. Johns Phase I
Brooklyn, N.Y.
017-57113-LD-EC

Att: Mr. Joseph Neumann

Gentlemen:

This project, as you are aware, is split into two sites. Site One comprises the buildings on St. Johns Place containing 76 apartments. Site Two comprises the buildings on Sterling Place containing 116 apartments.

We expect the St. Johns site to be completed prior to the Sterling Place Site. We therefore advise that you plan for occupancy accordingly.

Very truly yours,

PJR CONSTRUCTION CORPORATION
Irving M. Kusnitz

JMK/jm

EXHIBIT A CONTRACT RENTS

| UNIT SIZE | NUMBER OF UNITS | CONTRACT RENT |
|---|---|---|
| 0 BR | 14 | 496 |
| 1 BR | 82 | 598 |
| 2 BR | 78 | 713 |
| 3 BR | 17 | 830 |

EXHIBIT B PROJECT DESCRIPTION

Eight 4 story buildings providing 191 revenue producing units. Buildings are of wood masonry wall bearing structural system, wood joist floor system and brick exterior. Apartments finish and have hot water heat. Apartments are walk-up.

EXHIBIT C STATEMENT OF SERVICES

The owner will provide all management and maintenance services in accordance with HUD's Regulatory Agreement and outstanding Section 8 regulations. Equipment and services included in the contract rents are as follows: gas ranges, electric refrig's, kitchen exhaust fans, shades, community laundry facilities, heat and hot water.

EXHIBIT D- SEE ATTACHED FOR AFFIRMATIVE MARKETING PLAN

TO : Benjamin Skurnick, Area Counsel, 2.35

DATE:

IN REPLY REFER TO:
2.3HDH

FROM : Evelyn J. Wolff

SUBJECT: Daily Debt Service Computation

Below is the daily debt service information to be made an exhibit to the Housing Payment Contract for:

*St. John's Phase I*

*NY 36 - H110 - 050*

DAILY DEBT SERVICE COMPUTATION WORKSHEET

| Bedroom Size (a) | Number of Units (b) | Contract Rent (c) | Total Contract Rent (d) | Contract Rent Percentage (e) | Debt Service by Bdr. Size (f) | Debt Service by Unit (g) | Daily Debt Service (h) |
|---|---|---|---|---|---|---|---|
| 0 BR | 14 | 496 | 6944 | 5.52 | 42,342 | 3024 | 8.40 |
| 1 BR | 82 | 598 | 49,036 | 39.61 | 342,267 | 3649 | 10.14 |
| 2 BR | 78 | 713 | 55,614 | 44.24 | 339,532 | 4350 | 12.08 |
| 3 BR | 17 | 390 | 14,110 | 11.23 | 86,134 | 5067 | 14.08 |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| TOTAL | | | 125,764 | 100% | 763,142 | | |

Evelyn J. Wolff for
Deputy Director
Multifamily Housing Division

HUD-35 (7-78)

ST. John's - Place

EXHIBIT " G "

The "Owner" agrees that the Affirmative Fair Housing Marketing Plan will be provided by the Department of Housing and Urban Development unless the owner provides such plan as approved by the Department of H.U.D. within the earlier of 60 days or initial closing of the construction loan.

Owner

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
[illegible]
SUBSTANTIAL REHABILITATION

PART II OF THE

# HOUSING ASSISTANCE PAYMENTS CONTRACT

PRIVATE-OWNER OR PHA-OWNED PROJECT

| HAP CONTRACT LOT NUMBER AND DATE: | PROJECT NUMBER: |
|---|---|
| NY80-739 9/29/80 | NY36-H110-050 |

7/87-441 - 9/4/78 (Amended)

2.1 NONDISCRIMINATION IN HOUSING.

a. The Owner shall not in the selection of Families, in the provision of services, or in any other manner, discriminate against any person on the grounds of race, color, creed, religion, sex, or national origin. No person shall be automatically excluded from participation in, or be denied the benefits of, the Housing Assistance Payments Program because of membership in a class such as unmarried mothers, recipients of public assistance, etc.

b. The Owner shall comply with all requirements imposed by Title VIII of the Civil Rights Act of 1968, and any rules and regulations pursuant thereto.

c. The Owner shall comply with all requirements imposed by Title VI of the Civil Rights Act of 1964, Public Law 88-352, 78 Stat. 241; the regulations of the Department of Housing and Urban Development issued thereunder, 24 CFR, Subtitle A, Part 1, Section 1.1, et seq.; the requirements of said Department pursuant to said regulations; and Executive Order 11063 to the end that, in accordance with that Act, the regulations and requirements of said Department thereunder, and said Executive Order, no person in the United States shall, on the grounds of race, color, creed, religion or national origin, be excluded from participation in, or be denied the benefits of, the Housing Assistance Payments Program, or be otherwise subjected to discrimination. This provision is included pursuant to the regulations of the Department of Housing and Urban Development, 24 CFR, Subtitle A, Part 1, Section 1.1, et seq.; issued under Title VI of the said Civil Rights Act of 1964, and the requirements of said Department pursuant to said regulations; and the obligation of the Owner to comply therewith inures to the benefit of the Government and the said Department, either of which shall be entitled to invoke any remedies available by law to redress any breach thereof or to compel compliance therewith by the Owner.

2.2 TRAINING, EMPLOYMENT, AND CONTRACTING OPPORTUNITIES FOR BUSINESSES AND LOWER-INCOME PERSONS.[2]

a. The project assisted under this Contract is subject to the requirements of section 3 of the Housing and Urban Development Act of 1968, as amended, 12 U.S.C. 1701u. Section 3 requires that, to the greatest extent feasible, opportunities for training and employment be given lower-income residents of the project area and contracts for work in connection with the project be awarded to business concerns which are located in, or owned in substantial part by persons residing in, the area of the project.

b. Notwithstanding any other provision of this Contract, the Owner shall carry out the provisions of said section 3 and the regulations issued pursuant thereto by the Secretary of Housing and Urban Development set forth in 24 CFR, Part 135 (published in 38 Federal Register 29220, October 23, 1973), and all applicable rules and orders of the Secretary issued thereunder prior to the execution of this Contract. The requirements of said regulations include, but are not limited to, development and implementation of an affirmative action plan for utilizing business concerns located within, or owned in substantial part by persons residing in, the area of the project; the making of a good faith effort, as defined by the regulations, to provide training, employment, and business opportunities required by section 3; and incorporation of the "section 3 clause" specified by section 135.20(b) of the regulations and paragraph d of this Section in all contracts for work in connection with the project. The Owner certifies and agrees that he is under no contractual or other disability which would prevent him from complying with these requirements.

c. Compliance with the provisions of section 3, the regulations set forth in 24 CFR, Part 135, and all applicable rules and orders of the Secretary issued thereunder prior to approval by the Government of the application for this Contract, shall be a condition of the Federal financial assistance provided to the project, binding upon the Owner, his successors and assigns. Failure to fulfill these requirements shall subject the Owner, his contractors and subcontractors, his successors and assigns to the sanctions specified by this Contract, and to such sanctions as are specified by 24 CFR, Section 135.135.

d. The Owner shall incorporate or cause to be incorporated into any contract or subcontract for work pursuant to this Contract in excess of $50,000 the following clause:

"EMPLOYMENT OF PROJECT AREA RESIDENTS AND CONTRACTORS

"A. The work to be performed under this Contract is on a project assisted under a program providing direct Federal financial assistance from the Department of Housing and Urban Development and is subject to the requirements of section 3 of the Housing and Urban Development Act of 1968, as amended, 12 U.S.C. 1701u. Section 3 requires that, to the greatest extent feasible, opportunities for training and employment be given lower-income residents of the project area and contracts for work in connection with the project be awarded to business concerns which are located in, or owned in substantial part by persons residing in, the area of the project.

"B. The parties to this Contract will comply with the provisions of said section 3 and the regulations issued pursuant thereto by the Secretary of Housing and Urban Development set forth in 24 CFR, Part 135, and all applicable rules and orders of the Department issued thereunder prior to the execution of this Contract. The parties to this Contract certify and agree that they are under no contractual or other disability which would prevent them from complying with these requirements.

"C. The contractor will send to each labor organization or representative of workers with which he has a collective bargaining agreement or other contract or understanding, if any, a notice advising the said labor organization or workers' representative of his commitments under this section 3 clause and shall post copies of the notice in conspicuous places available to employees and applicants for employment or training.

"D. The contractor will include this section 3 clause in every subcontract for work in connection with the project and will, at the direction of the applicant for or recipient of Federal financial assistance, take appropriate action pursuant to the subcontract upon a finding that the subcontractor is in violation of regulations issued by the Secretary of Housing and Urban Development, 24 CFR, Part 135. The contractor will not subcontract with any subcontractor where it has notice or knowledge that the latter has been found in violation of regulations under 24 CFR, Part 135, and will not let any subcontract unless the subcontractor has first provided it with a preliminary statement of ability to comply with the requirements of these regulations.

"E. Compliance with the provisions of section 3, the regulations set forth in 24 CFR, Part 135, and all applicable rules and orders of the Department issued thereunder prior to the execution of the Contract, shall be a condition of the Federal financial assistance provided to the project, binding upon the applicant or recipient for such assistance, its successors, and assigns. Failure to fulfill these requirements shall subject the applicant or recipient, its contractors and subcontractors, its successors, and assigns to those sanctions specified by the grant or loan agreement or contract through which Federal assistance is provided, and to such sanctions as are specified by 24 CFR, Section 135.135."

[2] Strike this Section if the Contract Rents on the effective date of this Contract, over the maximum term of this Contract, are [illegible] 500,000 or less.



HUD-52528

e. The Owner agrees that he will be bound by the above Employment of Project Area Residents and Contractors clause with respect to his own employment practices when he participates in federally assisted work.

2.3 COOPERATION IN EQUAL OPPORTUNITY COMPLIANCE REVIEWS. The Owner shall cooperate with the Government in the conducting of compliance reviews and complaint investigations pursuant to all applicable civil rights statutes, Executive Orders, and rules and regulations pursuant thereto.

2.4 FLOOD INSURANCE. If the project is located in an area that has been identified by the Secretary of Housing and Urban Development as an area having special flood hazards and if the sale of flood insurance has been made available under the National Flood Insurance Act of 1968, the Owner agrees that the project will be covered, during its anticipated economic or useful life, by flood insurance in an amount at least equal to the development or project cost (less estimated land cost) or to the maximum limit of coverage made available with respect to the particular type of property under the National Flood Insurance Act of 1968, whichever is less.

2.5 CLEAN AIR ACT AND FEDERAL WATER POLLUTION CONTROL ACT.[a] In compliance with regulations issued by the Environmental Protection Agency ("EPA"), 40 CFR, Part 15, 38 F.R. 11095, pursuant to the Clean Air Act, as amended ("Air Act"), 42 U.S.C. 1857, et seq., the Federal Water Pollution Control Act, as amended ("Water Act"), 33 U.S.C. 1251, et seq. and Executive Order 11738, the Owner agrees that:

a. Any facility to be utilized in the performance of this Contract or any subcontract shall not be a facility listed on the EPA List of Violating Facilities pursuant to section 15.20 of said regulations.

b. He will promptly notify the Department of Housing and Urban Development field office director of the receipt of any communication from the EPA indicating that a facility to be utilized for the Contract is under consideration to be listed on the EPA List of Violating Facilities.

c. He will comply with all the requirements of section 114 of the Air Act and section 308 of the Water Act relating to inspection, monitoring, entry, reports, and information, as well as all other requirements specified in section 114 and section 308 of the Air Act and the Water Act, respectively, and all regulations and guidelines issued thereunder; and

d. He will include or cause to be included the provisions of this Section in every nonexempt subcontract, and that he will take such action as the Government may direct as a means of enforcing such provisions.

2.6 REPORTS AND ACCESS TO PREMISES AND RECORDS.

a. The Owner shall furnish such information and reports pertinent to the Contract as reasonably may be required from time to time by the Government.

b. The Owner shall permit the Government or any of its duly authorized representatives to have access to the premises and, for the purpose of audit and examination, to have access to any books, documents, papers and records of the Owner that are pertinent to compliance with this Contract, including the verification of information pertinent to the housing assistance payments.

2.7 DEFAULT BY THE OWNER UNDER CONTRACT.

a. A default by the Owner under this Contract shall result if:

(1) The Owner has violated or failed to comply with any provision of, or obligation under, this Contract or of any Lease; or

(2) The Owner has asserted or demonstrated an intention not to perform some or all of his obligations under this Contract or under any Lease.

b. Upon a determination by the Government that a default has occurred, the Government shall notify the Owner of (1) the nature of the default, (2) the actions required to be taken and the remedies to be applied on account of the default (including actions by the Owner to cure the default, and, where appropriate, abatement of housing assistance payments in whole or in part and recovery of overpayments), and (3) the time within which the Owner shall respond with a showing that he has taken all the actions required of him. If the Owner fails to respond or take action to the satisfaction of the Government, the Government shall have the right to terminate this Contract in whole or in part or to take other corrective action to achieve compliance.

c. The availability of any remedy under this Contract shall not preclude the exercise of any other remedy available under this Contract or under any provisions of law, nor shall any action taken in the exercise of any remedy be deemed a waiver of any other rights or remedies. Failure to exercise any right or remedy shall not constitute a waiver of the right to exercise that or any other right or remedy at any time.

2.8 DISPUTES.

a. Except as otherwise provided herein, any dispute concerning a question of fact arising under this Contract which is not disposed of by agreement between the Department of Housing and Urban Development field office and the Owner may be submitted by the Owner to the Secretary of Housing and Urban Development. The decision of the Secretary or duly authorized representative for the resolution of such disputes shall be final and conclusive, unless determined by a court of competent jurisdiction to have been fraudulent, or capricious, or arbitrary, or so grossly erroneous as necessarily to imply bad faith, or not supported by substantial evidence. In connection with any proceeding under this Section, the Owner shall be afforded an opportunity to be heard and to offer evidence in support of his position.

b. This Section does not preclude consideration of questions of law in connection with the decision rendered under paragraph a of this Section; provided, however, that nothing herein shall be construed as making final the decision of any administrative official, representative, or board, on a question of law.

2.9 INTEREST OF MEMBERS, OFFICERS, OR EMPLOYEES OF PHA, MEMBERS OF LOCAL GOVERNING BODY OR OTHER PUBLIC OFFICIALS. No member, officer, or employee of the PHA, no member of the governing body of the locality in which the project is situated, no member of the governing body of the locality in which the PHA was activated, and no other public official of such locality or localities who exercises any functions or responsibilities with respect to the project, during his tenure or for one year thereafter, shall have any interest, direct or indirect, in this Contract or in any proceeds or benefits arising therefrom.

2.10 INTEREST OF MEMBER OF OR DELEGATE TO CONGRESS. No member of or delegate to the Congress of the United States of America or resident commissioner shall be admitted to any share or part of this Contract or to any benefits which may arise therefrom.

[a] Delete this Section of the Contract if, as of the effective date of this Contract, the maximum total amount of this Contract [illegible] is $100,000 or less.

2.11 ASSIGNMENT, SALE, OR FORECLOSURE.

a. The Owner agrees that he has not made and will not make any sale, assignment, or conveyance or transfer in any other form, of this Contract or the project or any part thereof or any of his interest therein, without the prior consent of the Government; Provided, however, that in the case of an assignment as security for the purpose of obtaining financing of the project, the Government shall consent in writing if the terms of the financing have been approved by the Government.

b. The Owner agrees to notify the Government promptly of any proposed action covered by paragraph a of this Section. The Owner further agrees to request the written consent of the Government in regard thereto.

c. (1) A transfer by the Owner, in whole or in part, or a transfer by a party having a substantial interest in said Owner, or any other similarly significant change in the ownership of interests in the Owner, or in the relative distribution thereof, or with respect to the parties in control of the Owner or the degree thereof, by any other method or means (e.g., increased capitalization, merger with another corporation or other entity, corporate or other amendments, issuance of new or additional ownership interests or reclassification of ownership interests or otherwise) shall be deemed an assignment, conveyance or transfer for purposes of this Section 2.11. An assignment by the Owner to a limited partnership, in which the Owner is the sole general partner, shall not be considered an assignment, conveyance or transfer.

(2) The term "substantial interest" means the interest of any general partner, any limited partner having a 25 percent or more interest in the organization, any corporate officer or director, and any stockholder having a 10 percent or more interest in the organization.

(3) The Owner, and the party signing this Contract on behalf of said Owner, represent that they have the authority of all of the parties having ownership interests in the Owner to agree to this provision on their behalf and to bind them with respect thereto.

d. In the event of foreclosure, including foreclosure by the Government, and in the event of assignment or sale agreed to by the Government or made to the Government, housing assistance payments shall continue in accordance with the terms of the Contract.

(If the project is subject to 24 CFR, Section 883.315, paragraph d above shall be stricken and the following shall be used instead:

d. In the event of foreclosure, or assignment or sale to the financing agency in lieu of foreclosure, or in the event of assignment or sale agreed to by the financing agency and approved by the Government (which approval shall not be unreasonably delayed or withheld), housing assistance payments shall continue in accordance with the terms of the Contract.)

91-96-41110-050

EXHIBIT " D "

The "Owner" agrees that the Affirmative Fair Housing Marketing Plan will be provided by the Department of Housing and Urban Development unless the owner provides such plan as approved by the Department of H.U.D. within the earlier of 60 days or initial closing of the construction loan.

IN THE UNITED STATES
COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PARK PROPERTIES ASSOCIATES, L.P., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | ) | No. 1:04-cv-01757-FMA<br>Judge Allegra |

## AFFIDAVIT OF STEPHEN BOLDUC

I, Stephen Bolduc, being duly sworn, depose and say:

1. I am an executive for JZG Resources and, in that capacity, acquired personal knowledge of the facts stated in this affidavit. JZG Resources is the general partner for Plaintiffs Park Properties Associates, L.P. (which manages LaMartine Terrace) and Valentine Associates L.P. (which manages Lane Hill Senior Apartments).

2. I submit this Affidavit in support of the Motion for Summary Judgment as to Liability submitted by the Plaintiffs in the above-captioned matter.

3. On September 27, 1978, Park Properties and the United States Department of Housing and Urban Development ("HUD" or "Defendant") entered into a housing assistance payment contract ("HAP Contract") for LaMartine Terrace (the "LaMartine HAP Contract").

4. On September 27, 1978, Valentine and HUD entered into a HAP contract for Valentine's Lane Hill Apartments (the "Lane Hill HAP Contract").

5. Pursuant to the application of HUD's published annual adjustment factors (AAFs), the contract rents for LaMartine Terrace increased from its initial contract rents of $415, $490 and $561 for 0 bedroom, 1 bedroom, and 2 bedroom units, respectively, in 1979 to $872, $959 and $1,053 in 1994.

6. Pursuant to the application of HUD's published AAFs, the contract rent for the Lane Hill Apartments increased from its initial contract rents of $420, $510 and $615 for 0 bedroom, 1 bedroom, and 2 bedroom units, respectively, in 1979 to $880, $994 and $1,138 in 1995.

7. Plaintiffs have not received annual rent increases for the LaMartine Terrace Property for the years 1995 through 1999. Plaintiffs received a rent adjustment for the year 2000, which did not take effect until 2001.

8. Plaintiffs have not received annual rent increases for the Lane Hill Property for the years 1996 through 2000.

9. Plaintiffs did not receive any annual rent comparability studies from HUD relative to the LaMartine property.

10. Plaintiffs did not receive any annual rent comparability studies from HUD relative to the Lane Hill property.

Stephen Bolduc

Sworn to before me this 28th
Day of July, 2005

Notary Public

LORRAINE A. CIERO
Notary Public, State of New York
No. 60-0632520
Qualified in Westchester County
Commission Expires March 30, 2007

IN THE UNITED STATES
COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PARK PROPERTIES ASSOCIATES, L.P., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | ) | No. 1:04-cv-01757-FMA<br>Judge Allegra |

**AFFIDAVIT OF HENRY SALMOND**

I, Henry Salmond, being duly sworn, depose and say:

1. I am the Assistant Vice President of Kinpit Management Co. ("Kinpit") and, in that capacity, acquired personal knowledge of the facts stated in this affidavit. Kinpit is the property manager for St. John's Phase I.

2. I submit this Affidavit in support of the Motion for Summary Judgment as to Liability submitted by the Plaintiffs in the above-captioned matter.

3. On September 29, 1980, St. John's and the United States Department of Housing and Urban Development ("HUD" or "Defendant") entered into a housing assistance payment contract ("HAP Contract") for St. John's Phase I (the "St. John's HAP Contract").

4. Pursuant to the application of the Government's published Annual Adjustment Factors ("AAFs"), the contract rents for the St. John's HAP increased from its initial contract

rents of $496, $598, $713 and $830 for 0 bedroom, 1 bedroom, 2 bedroom and 3 bedroom units, respectively, in 1979 to $812, $950, $1,082 and $1,257 in 1994.

5. Plaintiffs have not received annual rent increases for the St. John's Property for the years through the expiration of the St. John's HAP Contract in 2002.

6. Plaintiffs did not receive any annual rent comparability studies from HUD relative to St. John's Phase I.

Henry Salmond

Sworn to before me this
28th day of July, 2005

Notary Public

**Edna M. Peña**
Notary Public, State of New York
Lic. No. 01PE6086637
Qualified in Kings County
Commission Expires: 1/27/2007

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PARK PROPERTIES ASSOCIATES, L.P., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 04-1757C |
| v. | ) | |
| | ) | (Judge Allegra) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S RESPONSE TO PLAINTIFF'S
FIRST SET OF REQUESTS FOR ADMISSION

Pursuant to Rules 26 and 36 of the United States Court of Federal Claims, defendant, the United States, responds to "Plaintiffs' First Set of Requests for Admissions" as follows:

REQUEST NO. 1: Admit that between 1994 and 2004, HUD calculated AAAFs with respect to the locations where each of the Projects was located.

RESPONSE: Denied, except to admit that, between 1994 and 2004, HUD caused to be published in the Federal Register annual adjustment factors (AAFs) for specified geographical areas, including AAFs for the geographical areas in which LaMartine Terrace, Lane Hill Senior Citizens Residence, and St. John's Phase I are located.

REQUEST NO. 2: Admit that Section 1.8(b) of the Original HAP Contracts established the method pursuant to which Annual Automatic Adjustments of rents were to be performed with respect to each of the Properties.

RESPONSE: Denied.

REQUEST NO. 3: Admit that Section 1.8(b) of the Original HAP Contracts did not require any of the owners of the Projects to perform a study or analysis of rents at comparable unassisted units in order to receive an Automatic Annual Adjustment of rents pursuant to such

Section 1.8(b).

RESPONSE: Denied, except to admit that Section 1.8(b) of the Original HAP Contracts is not the source of the requirement that (or circumstances under which) plaintiffs must perform a study or analysis of the rents of comparable unassisted units in order to receive a AAF-based rent adjustment.

REQUEST NO. 3[A]: Admit that between 1994 and 2004, HUD did not perform any study or analysis of rents at comparable unassisted units with respect to any of the subject Properties for purposes of performing Automatic Annual Adjustments pursuant to Section 1.8(b)(2) of the Properties' respective Original HAP Contracts.

RESPONSE: Admitted.

REQUEST NO. 4: Admit that between 1994 and 2004, HUD did not provide Automatic Annual Adjustments of the respective Project's contract rents pursuant to Section 1.8(b)(2) of the Properties' respective Original HAP Contracts.

RESPONSE: Denied.

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

OF COUNSEL:

C. ALLEN VILLAFUERTE
Trial Attorney
Office of General Counsel
Department of Housing
and Urban Development
Washington, DC

JOHN E. KOSLOSKE
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., Room 8012
Washington, D.C. 20530
Tele: (202) 307-0282
(FAX)(202) 514-8624

Attorneys for Defendant

JUNE 27, 2005

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 27th day of JUNE, 2005, I caused to be delivered by hand "DEFENDANT'S RESPONSE TO PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION" addressed as follows:

HARRY J. KELLY, ESQ.
Nixon Peabody LLP
401 9th Street, N.W., Suite 900
Washington, D.C. 20004

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| PARK PROPERTIES ASSOCIATES, L.P., et al., Plaintiffs, v. THE UNITED STATES, Defendant. | No. 04-1757C (Judge Allegra) |

DECLARATION OF HARRY J. KELLY

I, Harry J. Kelly, declare:

1. I am a partner in the law firm of Nixon Peabody LLP. I submit this declaration in support of the Plaintiffs' Motion For Partial Summary Judgment With Respect To Application of Overall Limitation To Calculation Of Damages ("Plaintiffs' Motion").

2. Attached hereto is a copy of a memorandum prepared by officials of the U.S. Department of Housing and Urban Development dated March 5, 1980. The memorandum was included in the Appendix to the Memorandum of Points and Authorities In Support Of Plaintiffs' Motion For Partial Summary Judgment On Counts II, III and VI And On Other Matters ("Appendix") in National Leased Housing Assn. v. United States, Case Nos. 6-87C, 324-87C, 204-88C and 90-6C (Fed. Cl.) filed on January 14, 1994. The Appendix is available for inspection and copying at the offices of the undersigned, and, upon information and belief, is also available in the files of the Clerk of the Court of Federal Claims.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on February 23, 2007, at Washington, D.C.

[signature]

Harry Kelly

10321547.1

File Sec. 8 New
Marysville Tow[er]
Docket
HAP Contract

Lawrence B. Simons, Assistant Secretary for Housing, H — March 5, 1980

Attention: Conrad Egan, Acting Director, Office of Multi-family Housing Management and Occupancy, HMH

A.7TMA (S. Humble, FTS 854-1324)

Donald C. Thomas, Housing Division, 4.7H

Overall Limitation Provision of the Rent Adjustment Clause of the Standard Housing Assistance Payments Contract

It is probable that the application of the Automatic Annual Adjustment Factors in making contract rent adjustments for Section 8 New Construction and Substantial Rehabilitation Projects will, after a period of time, result in rents higher than those allowed under the provisions of Section 1.8(d) of Part I of the Housing Assistance Payments Contract. Specifically, that portion of the Contract places the following limitation on rent adjustments:

> Notwithstanding any other provisions of this Contract, adjustments as provided in this Section shall not result in material differences between the rents charged for assisted and comparable unassisted units, as determined by the Government; provided that this limitation shall not be construed to prohibit differences in rents between assisted and comparable unassisted units to the extent that such differences may have existed with respect to the initial Contract Rents.

The above quoted limitation applies to both Automatic Annual Adjustments and Special Additional Adjustments (Reference: HAP Contract, Sections 1.8(b) and 1.8(c).) Similar language is to be found in Section 8(c)(2) of the Act.

It has been determined by this Office, in our two oldest Section 8 projects, that the use of the adjustment factors has resulted in contract rents which are in excess of those allowed by the rent adjustment provisions of Section 1.8 of the HAP Contract. Consequently, the owners of these two projects have been notified that the contract rents have been adjusted to reflect those rents which are justified by the rents for comparable unassisted units (adjusted upward to reflect the percentage by which the initial contract rents exceeded rents for comparable unassisted units.) As a result of our finding that use

2

of the factors has resulted in higher than allowable rents, we have instituted a procedure to assure that rent adjustments for all Section 8 projects meet the comparability test.

If you have any questions regarding the procedural details involved in our processing of rent adjustments, please do not hesitate to contact this Office.

Director

cc: HMB Egan

4.7HMA Chief, AHMB, General Subject: Sec. 8 Rent Adjustments for New Construction and Substantial Rehabilitation
4.7HMA Humble - Follow-up: None
4.7HMA Reading File
4.7S DeBruhl
4.7H Thomas
4.7G Garton
4.7HVD Robbins
Filing: Section 8, Miscellaneous Correspondence

[illegible]

004

00089

Humble:mcp 3/5/80 854-1324

4.7HMA 4.7HMA 4.7HM 4.7

Humble Morrow Cheatwood