IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PARK PROPERTIES ASSOCIATES, L.P., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 04-1757C |
| v. | ) | |
| | ) | (Judge Allegra) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S RESPONSE TO PLAINTIFFS' PROPOSED FINDINGS OF UNCONTROVERTED FACT

Pursuant to RCFC 56(h)(2),[1] defendant, the United States, respectfully submits the following response to "Plaintiffs' Proposed Findings of Uncontroverted Facts in Support of Motion for Partial Summary Judgment" dated February 23, 2007:[2]

1. On September 27, 1978, Park Properties and the United States Department of Housing and Urban Development ("HUD" or "Defendant") entered into a housing assistance payment contract ("HAP Contract") for Lamartine Terrace ("the LaMartine HAP Contract"). See Paragraph 5 of Plaintiffs' Complaint filed [in] Case No. 04-1757C [] ("Complaint") and paragraph 5 of the Defendant's Answer to the Complaint.

---

[1] Rule 56(h)(2) provides, in part: "The opposing party shall file, together with its opposition [to the moving party's motion for summary judgment], a response to the requested findings by indicating, immediately below each finding, whether it agrees or disagrees with the finding as stated. If the opposing party does not agree with the proposed finding, it shall note the basis for its objection and may draft a proposed revision of the finding directly below the challenged finding." (Emphasis in original.).

[2] In this document, "Answer ¶ ____" refers to the referenced paragraph(s) of "Defendant's Answer" dated February 7, 2005; "DPFUF ¶ ____" refers to the referenced paragraph(s) of "Defendant's Proposed Findings of Uncontroverted Fact" filed on March 26, 2007; "Def. App. ____" refers to the referenced page(s) of the appendix to "Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment" dated July 29, 2005; and "Def. Supp. App. ____" refers to the referenced page(s) of the appendix to "Defendant's Opposition to Plaintiffs' Motion for Summary Judgment as to Liability" dated August 31, 2005."

RESPONSE: Defendant objects to this proposed finding of fact to the extent that it states that plaintiff, Park Properties Associates, L.P., and HUD entered a HAP contract with respect to laMartine Terrace on September 27, 1978. The initial parties to the Park Properties HAP Contract were Jerome Z. Ginsburg d/b/a "Park Property Associates." See Park Properties HAP Contract, Def. App. 38 ("This Housing Assistance Payments Contract . . . is entered into by and between the [United States] acting through [HUD] and PARK PROPERTY ASSOCIATES . . . ." Def. App. 49 (signature page of HAP contract executed by Jerome Z. Ginsburg upon behalf of "Park Property Associates"). On July 1, 1996, Park Property Associates' interest in the HAP Contract was transferred to Park Properties Associates, L.P., the plaintiff in this case. See "Assignment of HAP Contract," Def. App. 57; see also DPFUF ¶ 3.

The Park Properties HAP Contract was not entered on September 27, 1978. The effective date of the HAP Contract is June 1, 1979. Regarding "Effective Date of Contract," the HAP Contract provides: "The effective date of this Contract is See Stages Attached , 19 ." HAP Contract, Part I, § 1.1a, Def. App. 38. The signature page for the HAP Contract, which is in the form of a signature page for a project that is completed in stages, provides that "[t]he effective date of this Contract is June 1, 1979." Def. App. 49.

A "contract must be considered as a whole and interpreted to effectuate its spirit and purpose, giving reasonable meaning to all parts." Hunt Construction Group, Inc. v. United States, 281 F.3d 1369, 1372 (Fed. Cir. 2002). An interpretation "which gives a reasonable meaning to all parts of an instrument will be preferred to one which leaves a portion of it useless, inexplicable, inoperative, void, insignificant, meaningless or superfluous; nor should any provision be construed as being in conflict with another unless no other reasonable interpretation

is possible." Hol-Gar Mfg. Corp. v. United States, 169 Ct. Cl. 384, 395, 351 F.2d 972, 979 (1965); see also Unicon Management Corp. v. United States, 179 Ct. Cl. 534, 537, 375 F.2d 804, 806 (1967) (Where possible, it is preferable "to interpret the provisions of a contract as coordinate and not contradictory."). Twisted or strained, out-of-context analysis is to be eschewed. Mayflower Transit Co. v. United States, 162 Ct. Cl. 233, 237 (1963). Plaintiffs' contention that September 27, 1978, is the effective date of the Park Properties HAP Contract conflicts with the express terms of the HAP Contract, rendering those provisions inoperative, void, insignificant, meaningless, or superfluous, contrary to these settled canons of contract interpretation.

The Government proposes that plaintiffs' proposed finding of fact # 1 be revised to read as follows:

> Effective on June 1, 1979, Jerome Z. Ginsburg d/b/a Park Property Associates and the United States, acting through the Department of Housing and Urban Development (HUD), entered a housing assistance payments contract (HAP contract) for LaMartine Terrace (Park Properties HAP Contract).

2. On September 27, 1978, Valentine and HUD entered into a HAP contract for Valentine's Lane Hill Apartments ("the Lane Hill HAP Contract"). See Paragraph 6 of the Complaint and Paragraph 6 of the Defendant's Answer to the Complaint.

RESPONSE: Defendant objects to this proposed finding of fact to the extent that it states that plaintiff, Valentine Associates, L.P., and HUD entered a HAP contract with respect to Lane Hill on September 27, 1978. The original parties to the Valentine HAP Contract were Jerome Z. Ginsburg d/b/a "Valentine Property Associates." See Valentine HAP Contract, Def. App. 61 ("This Housing Assistance Payments Contract . . . is entered into by and between the [United States] acting through [HUD] and VALENTINE PROPERTY ASSOCIATES . . . ." Def. App.

67 (signature page of HAP Contract executed by Jerome Z. Ginsburg upon behalf of "VALENTINE PROPERTY ASSOCIATES."). On July 1, 1996, Valentine Property Associates' interest in the HAP Contract was transferred to Valentine Associates, L.P., the plaintiff in this case. See "Assignment of HAP Contract," Def. App. 78; see also DPFUF ¶ 34.

The Valentine HAP contract was not entered on September 27, 1978. The HAP Contract was executed in two stages. Stage 1 was effective on January 2, 1980, and Stage 2 was effective on February 19, 1980. Regarding "Effective Date of Contract," the HAP Contract provides: "The effective date of this Contract is SEE STAGES ATTACHED , 19 ." HAP Contract, Part I, § 1.1a, Def. App. 61. The signature page for the HAP Contract, which is in the form of a signature page for a project that is completed in stages, provides, with respect to Stage 1, that "[t]he effective date of this Contract is January 2, 1980," and, with respect to Stage 2, that "[t]he effective date of this Contract is February 19, 1980." Def. App. 67. Plaintiffs' contention that September 27, 1978, is the effective date of the Valentine HAP Contract conflicts with the express terms of the HAP Contract, rendering those provisions inoperative, void, insignificant, meaningless, or superfluous, contrary to settled canons of contract interpretation noted above.

The Government proposes that plaintiffs' proposed finding of fact # 2 be revised to read as follows:

> Jerome Z. Ginsburg d/b/a Valentine Property Associates and the United States, acting through HUD, entered a HAP contract for Lane Hill (Valentine HAP Contract) in two stages. Stage 1 of the Valentine HAP Contract was effective on January 2, 1980. Stage 2 of the Valentine HAP Contract was effective on February 19, 1980.

3. On September 29, 1980, St. John's and HUD entered into a HAP contract for St. John's Phase I ("the St. John's HAP Contract"). See Paragraph 6 of the Complaint and Paragraph 6 of the Defendant's Answer to the Complaint.

RESPONSE: Defendant objects to this proposed finding of fact to the extent that it states that the HAP contract for St. John's Phase I was entered on September 29, 1980. The St. John's HAP Contract was not entered on September 29, 1980. The HAP Contract was executed in three stages. Stage 1 was effective on July 1, 1982, Stage 2 was effective on September 22, 1982, and Stage 3 was effective on December 15, 1982. Regarding "Effective Date of Contract," the HAP Contract provides: "The effective date of this Contract is SEE STAGING ATTACHED , 19 ." HAP Contract, Part I, § 1.1a, Def. App. 130. The signature page for the HAP Contract, which is in the form of a signature page for a project that is completed in stages, provides, with respect to Stage 1, that "[t]he effective date of this Contract is July 1, 1982," Def. App. 137, with respect to Stage 2, that "[t]he effective date of this Contract is September 22, 1982, id., and, with respect to Stage 3, that "[t]he effective date of this Contract is December 15, 1982." Def. App. 138.

Plaintiffs' contention that September 29, 1980, is the effective date of the St. John's HAP Contract conflicts with the express terms of the HAP Contract, rendering those provisions inoperative, void, insignificant, meaningless, or superfluous, contrary to settled canons of contract interpretation noted above.

By its terms, the St. John's HAP Contract was for a maximum term of 20 years. The HAP Contract provided that "[t]he total term of this Contract for any unit . . . shall be 20 years." HAP Contract, Part I, § 1.1c(3), Def. App. 130. If, as plaintiffs assert, the effective date of the St. John's HAP Contract was September 29, 1978, the HAP Contract would have

expired 20 years later on September 28, 2000. That view, however, is not consistent with the parties' pre-litigation conduct, which treated the HAP Contract as having been executed in three stages that expired or terminated on July 1, 2002, on September 22, 2002, and on December 15, 2002 respectively.[3] See "Defendant's Proposed Findings of Uncontroverted fact" filed on July 29, 2005, at ¶¶ 37-48; Def. App. 177 (November 19, 2001 letter from Henry Salmond, Assistant Vice-President, Kinpit Management, the property management agent for St. John's Phase I, upon behalf of St. John's, to "All Tenants" of St. John's Phase I, stating that "this is a reminder to inform you that our Housing Assistance Payments Contract expires on June 30, 2002.").

The Government proposes that plaintiffs' proposed finding of fact # 3 be revised to read as follows:

> St. John's and the United States, acting through HUD, entered a HAP contract for St. John's Phase I (St. John's HAP Contract) in three stages. Stage 1 of the St. John's HAP Contract was effective on July 1, 1982. Stage 2 of the St. John's HAP Contract was effective on September 22, 1982. Stage 3 of the St. John's HAP Contract was effective on December 15, 1982.

4. Pursuant to the application of the Government's published annual adjustment factors (AAFs), the contract rent for LaMartine Terrace increased from its initial contract rents of $415, $490 and $561 for 0 bedroom, 1 bedroom, and 2 bedroom units, respectively, in 1979 to $872, $959 and $1,053 in 1994. See Paragraphs 9 and 13 of the Complaint and Paragraphs 9 and 13 of the Defendant's Answer to the Complaint. See also Affidavit of Stephen Bolduc, at paragraph

[3] Regarding HAP contracts executed in stages, such as the St. John's HAP Contract, applicable HUD regulations provided: "If the project is completed in stages, the dates for the initial and the renewal terms shall be separately related to the units in each stage; provided, however, that the total Contract term for the units in all the stages, beginning with the effective date of the Contract with respect to the first stage, may not exceed the overall maximum term allowable for any one unit, plus two years." 24 C.F.R. § 881.109(c) (1979).

5 (Appendix in Support of Plaintiffs' Motion for Partial Summary Judgment ("Plfs. App.") at 57.

RESPONSE: Admitted.

5. Pursuant to the application of the Government's published AAFs, the contract rent for the Lane Hill Apartments increased from its initial contract rents of $420, $510 and $615 for 0 bedroom, 1 bedroom, and 2 bedroom units, respectively, in 1979 to $872, $959 and $1,053 in 1994. See Paragraphs 9 and 14 of the Complaint and Paragraphs 9 and 14 of the Defendant's Answer to the Complaint. See also Affidavit of Stephen Bolduc, at paragraph 6 (Plfs. App. 57).

RESPONSE: Defendant objects to this proposed finding of fact to the extent that it states that monthly contract rents under the Valentine HAP Contract were increased in 1994 to $872 for 0-bedroom units, to $959 for 1-bedroom units, and to $1,053 for 2-bedroom units. Effective on January 2, 1994, contract rents under the Valentine HAP Contract were increased, based upon the application of annual rent adjustment factors published in the Federal Register, to $853 per month for the 0-bedroom units, $963 per month for the 1-bedroom units, and $1,103 per month for the 2-bedroom units. Def. App. 79-82; Bolduc Depo. 89(2-25)-90(1),[4] Def. App. 23-24; see also DPFUF ¶ 40.

6. Pursuant to the application of the Government's published AAFs, the contract rent for the St. John's HAP increased from its initial contract rents of $496, $598, $713, and $830 for 0 bedroom, 1 bedroom, 2 bedroom and 3 bedroom units, respectively, in 1979 to $812, $950,

---

[4] In this document, "Bolduc Depo. ____(____)" refers to the referenced page(s) and (parenthetically) line(s) of the transcript of the deposition of Stephen Bolduc in this case by the Government on July 1, 2005. Plaintiffs Park Properties Associates, L.P., and Valentine Associates, L.P., designated Mr. Bolduc to testify upon their behalf with respect to deposition topics numbered 1 through 6 set forth in the Government's notice of Rule 30(b)(6) deposition. See Bolduc Depo. 15(21-25)-16(1-6), Def. App. 5; Def. App. 34-37 (Rule 30(b)(6) deposition notice).

$1,082 and $1,257 in 1994. See Paragraphs 9 and 15 of the Complaint and Paragraphs 9 and 15 of the Defendant's Answer to the Complaint. See also Affidavit of Henry Salmond, at paragraph 6 (Plfs. App. 57).

RESPONSE: Admitted.

7. Since 1994, the AAFs published by the Government for the years 1995 through 2004 are as follows:

| | LaMartine/Lane Hill | | St. John's | |
|---|---|---|---|---|
| Year | Turnover Units | Non-Turnover Units | Turnover Units | Non-Turnover Units |
| 1995 | 1.026 | 1.016 | 1.026 | 1.016 |
| 1996 | 1.024 | 1.014 | 1.024 | 1.014 |
| 1997 | 1.026 | 1.016 | 1.026 | 1.016 |
| 1998 | 1.029 | 1.019 | 1.029 | 1.019 |
| 1999 | 1.034 | 1.024 | 1.034 | 1.024 |
| 2000 | 1.033 | 1.023 | 1.032 | 1.022 |
| 2001 | 1.031 | 1.021 | 1.031 | 1.021 |
| 2002 | 1.046 | 1.036 | 1.046 | 1.036 |
| 2003 | 1.039 | 1.030 | 1.039 | 1.030 |
| 2004 | 1.041 | 1.031 | 1.041 | 1.031 |

See Federal Register 60 FR 12594; 60 FR 55934; 61 FR 66132; 63 FR 11956; 63 FR 51224; 64 FR 51860; 65 FR 66888; 66 FR 59052; 68 FR 3116; 68 FR 54270.

RESPONSE: Admitted that the AAFs in the columns under "LaMartine/Lane Hill" are published contract rent AAFs (highest cost utility included) for the indicated years for the West-chester County, NY area (in which the rental housing projects LaMartine Terrace and Lane Hill are located) and that the contract rent AAFs (highest cost utility included) in the columns under "St. John's" are published AAFs for the indicated years for the PMSA New York, NY area (in which the rental housing project St. John's Phase I is located). See "Defendant's Additional Proposed Findings of Uncontroverted Fact" filed on August 31, 2005, at ¶¶ 5, 6.

8. Plaintiffs have not received annual rent increases for the LaMartine Terrace Property for the years 1995 through 2000. See Paragraphs 17 and 19 of the Complaint; Affidavit of Stephen Bolduc, at paragraph 7 (Plfs. App. 57) and Paragraph 19 of the Defendant's Answer to the Complaint.

RESPONSE: Defendant admits that Park Properties did not receive annual rent increases for LaMartine Terrace under the Park Properties HAP Contract for the years 1995 through 1999. Defendant denies the proposed finding of uncontroverted fact to the extent that it states that Park Properties did not receive a rent increase for LaMartine Terrace in 2000 because that proposed finding is not supported by the cited bases. At paragraph numbered 8 of his affidavit, Stephen Bolduc states that a rent adjustment for LaMartine Terrace was "received" "for the year 2000, which did not take effect until 2001."

Paragraph 8 of the Complaint contains the following allegation: "Pursuant to the terms of the HAP Contracts, HUD is to provide housing assistance payments to the Plaintiffs for units in the Properties under lease by lower-income families." Defendant answered this allegation as follows: "The allegations contained in paragraph 8 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied." Answer ¶ 8.

Paragraph 19 of the Complaint contains the following allegation: "Despite Plaintiffs' compliance with the express provisions of the HAP Contract, HUD continues to refuse to make retroactive rent adjustments for the years from as early as 1995 to 2004." Defendant answered this allegation, in pertinent part, as follows: "Denies the allegations contained in paragraph 19,

except to admit that . . . the monthly HAP Contract rents for LaMartine Terrace were not increased *between* 1995 and 2000 . . . ." Answer ¶ 19 (emphasis added).

9. Plaintiffs have not received annual rent increases for the Lane Hill Property for the years 1996 through 2000, and did not receive a rent increase for 2-bedroom units at the Lane Hill Property in 2003. See Paragraphs 17 and 19 of the Complaint; Affidavit of Stephen Bolduc, at paragraph 8 (Plfs. App. 57); and Paragraph 19 of the Defendant's Answer to the Complaint.

RESPONSE: Admitted.

10. Plaintiffs have not received annual rent increases for the St. John's Property for the years 1996 through 2001. See Paragraphs 17 and 19 of the Complaint; Exhibit 5, Affidavit of Henry Salmond, at paragraph 5 (Plfs. App. 60); and Paragraph 19 of the Defendant's Answer to the Complaint.

RESPONSE: Defendant admits that St. John's did not receive annual rent increases for St. John's Phase I under the St. John's HAP Contract for the years 1997 through 2001. Defendant denies the proposed finding of uncontroverted fact to the extent that the proposed finding states that St. John's did not receive a rent increase for St. John's Phase I in 1996. Effective on July 1, 1996, HUD increased the contract rents under the St. John's HAP Contract based upon the application of published AAFs, to $831 per month for the 0-bedroom units, to $973 per month for the one-bedroom units, to $1,108 per month for the two-bedroom units, and to $1,287 per month for the three-bedroom units. Def. App. 173-176; Salmond Depo. 22(17-25)-23(1-10),[5] Def. App. 124; see also DPFUF ¶ 77.

---

[5] In this document, "Salmond Depo. ____(____)" refers to the referenced page(s) and (parenthetically) line(s) of the transcript of the deposition of Henry Salmond in this case by the Govern-
(continued...)

The Government proposes that plaintiffs' proposed finding of fact # 10 be revised to read as follows:

> St. John's did not receive annual rent increases for St. John's Phase I under the St. John's HAP Contract for the years 1997 through 2001.

11. HUD did not perform annual rent comparability studies for LaMartine from 1995-2004 and the Plaintiffs did not receive any such studies within 60 days of the anniversary dates of LaMartine HAP Contracts [sic] during that time period. See Affidavit of Stephen Bolduc, at paragraph 9 (Plfs. App. 57) and Defendant's Response to Plaintiff's First Set of Requests for Admission, at Response 3[A] (Plfs. App. 63).

RESPONSE: Admitted. Park Properties, however, provided HUD with rent comparability studies for LaMartine Terrace for the purpose of annual rent adjustment determinations in 2001, 2002, and 2004. See Def. Supp. App. 447-508, 517-575, 589-594; Bolduc Depo. 54(21-25)-55(1-16), 64(19-25)-65(1-7), 80(21-25)-81(1-2), Def. App. 15, 17, 21; see also DPFUF ¶¶ 15, 21, 29.

12. HUD did not perform annual rent comparability studies for Lane Hill from 1995-2004 and the Plaintiffs did not receive any such studies within 60 days of the anniversary dates of the Lane Hill HAP Contracts [sic] during that time period. See Affidavit of Stephen Bolduc, at paragraph 10 (Plfs. App. 57) and Defendant's Response to Plaintiff's First Set of Requests for Admission, at Response 3[A] (Plfs. App. 63).

---

[5](...continued)
ment on July 1, 2005. Plaintiff St. John's I Associates, L.P., designated Mr. Salmond to testify upon its behalf with respect to deposition topics numbered 7 through 17 set forth in the Government's notice of Rule 30(b)(6) deposition. See Salmond Depo. 8(8-12), Def. App. 120; Def. App. 34-37 (Rule 30(b)(6) deposition notice).

RESPONSE: Admitted. Valentine, however, provided HUD with rent comparability studies for Lane Hill for the purpose of annual rent adjustment determinations in 2001, 2002 and 2004. See Def. Supp. App. 604-664, 685-690; Bolduc Depo. 99(10-21), 115(20-25)-116(1), Def. App. 26, 30; see also DPFUF ¶¶ 44, 48, 60.

13. HUD did not perform annual rent comparability studies for St. John's Phase I from 1995-2004 and the Plaintiffs did not receive any such studies within 60 days of the anniversary dates of the St. John's HAP Contracts [sic] during that time period. See Affidavit of Henry Salmond, at paragraph 6 (Plfs. App. 60) and Defendant's Response to Plaintiff's First Set of Requests for Admission, at Response 3[A] (Plfs. App. 63).

RESPONSE: Defendant objects to this proposed finding of fact to the extent that it states that there were anniversary dates for the St. John's HAP Contract in 2003 and in 2004. The HAP Contract ended on June 30, 2002, with respect to Stage 1 units, on September 21, 2002, with respect to Stage 2 units, and on December 14, 2002, with respect to Stage 3 units. See "Defendant's Proposed Findings of Uncontroverted Fact" filed on July 29, 2005, at ¶¶ 37-48. St. John's, moreover, provided HUD with a rent comparability study in August 1996 for St. John's Phase I for the purpose of an annual rent adjustment determination. See Def. App. 150-153; Salmond Depo. 19(23-25)-(20(1-6), Def. App. 123; see also DPFUF ¶ 75.

14. HUD, under 42 U.S.C. § 1437(c)(2)(A) and the comparability requirements and the 60-day time limit set forth in HUD Notice 95-12, has failed to provide the automatic annual rent increases to which Plaintiffs are entitled. See Paragraphs 17 and 19 of the Complaint and paragraph 19 of the Defendant's Answer to the Complaint.

RESPONSE: Defendant objects to this proposed finding of fact. Defendant's responses to paragraphs 17 and 19 of the Complaint do not support this proposed statement of fact. Paragraph 17 of the Complaint avers: "Based upon the provisions of the HAP Contract cited above, the Plaintiffs were entitled to receive Contract Rent adjustments for each year since 1998, which HUD has repeatedly failed to provide. Defendant answered paragraph 17 of the complaint as follows: "Denies." Answer ¶ 17. Paragraph 19 of the Complaint avers: "Despite the Plaintiffs' compliance with the express provisions of the HAP Contract, HUD continues to refuse to make retroactive rent adjustments for the years from as early as 1995 to 2004." Defendant answered paragraph 19 of the Complaint as follows: "Denies the allegations contained in paragraph 19, except to admit that (a) the monthly HAP Contract rents for LaMartine Terrace were not increased between 1995 and 2000, (b) the monthly HAP Contract rents for Lane Hill were not increased between 1996 and 2000, and (c) the monthly contract rents for St. John's Phase I were not increased between 1996 and the present." Answer ¶ 19.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/John E. Kosloske
JOHN E. KOSLOSKE
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., Room 8012
Washington, D.C. 20530
Tele: (202) 307-0282
(FAX)(202) 514-8624

Attorneys for Defendant

OF COUNSEL:

NANCY CHRISTOPHER
Associate General Counsel

GERALD ALEXANDER
Assistant General Counsel

C. ALLEN VILLAFUERTE
Trial Attorney
Office of General Counsel
Department of Housing
and Urban Development
Washington, DC

MARCH 26, 2007

CERTIFICATE OF FILING

I hereby certify that on this 26th day of MARCH, 2007, a copy of "DEFENDANT'S RESPONSE TO PLAINTIFFS' PROPOSED FINDINGS OF UNCONTROVERTED FACT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/John E. Kosloske