No. 04-1757C
(Judge Allegra)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

PARK PROPERTIES ASSOCIATES, L.P., et al.,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

PLAINTIFFS' BRIEF IN
OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT AND
REPLY TO MOTION FOR PARTIAL SUMMARY JUDGMENT WITH RESPECT TO APPLICATION OF OVERALL LIMITATION TO CALCULATION OF DAMAGES

May 3, 2007

Harry J. Kelly, Esq.
NIXON PEABODY LLP
401 Ninth Street, N.W., Suite 900
Washington, D.C. 20004
P: (202) 585-8000
F: (202) 585-8080

Counsel for the Plaintiffs

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .......... ii

INTRODUCTION .......... 1

BACKGROUND .......... 2

ARGUMENT .......... 3

I THE GOVERNMENT HAS FAILED TO PROVIDE ANY BASIS TO REDUCE THE OWNERS' DAMAGES BY APPLYING THE OVERALL LIMITATION. .......... 4

A. The Authorities Relied Upon By The Government Address HUD's Power To Perform Comparability Studies, And Do Not Explain How the Court Should Calculate Damages Here. .......... 4

B. The Plaintiffs Are Not Asking For More Than Their HAP Contracts Allow. .......... 6

C. At This Point, There Is No Legal Authority For HUD To Conduct Comparability Studies. .......... 9

1. The enactment of Section 142(c)(2)(B) did not constitute an improper alteration of the HAP Contracts. .......... 10

2. The enactment of the 1994 Act did not constitute an implied repeal of Section .......... 12

II THE COURT SHOULD NOT DELAY DETERMINING THE OWNERS' DAMAGES HERE. .......... 15

CONCLUSION .......... 17

## TABLE OF AUTHORITIES

Page

### FEDERAL CASES

Cisneros v. Alpine Ridge Group, 508 U.S. 10 (1993) .... 4

Cuyahoga Metro. Hous. Auth. v. United States, 57 Fed. Cl. 751 (2003) .... passim

Cuyahoga Metro. Hous. Auth. v. United States, 65 Fed. Cl. 534 (2005) .... 15, 16

J.E.M. AG Supply, Inc. v. Pioneer Hi-Bred International, Inc., 534 U.S. 124 (2001) .... 12, 14

Long Island Sav. Bank, FSB v. United States, 67 Fed. Cl. 616 (2005), *rev'd on issue of liability*, Long Island Sav. Bank, FSB v. United States, 476 F.3d 917 (Fed. Cir 2007) .... 16

Morton v. Mancari, 417 U.S. 535 (1974) .... 14

National Leased Housing Ass'n v. United States, 24 Ct. Cl. 647 (1991) .... 4

Park Properties Assocs., L.P. v. United States, 74 Fed. Cl. 264 (2006) .... passim

Southern California Edison v. United States, 69 Fed. Cl. 66 (Fed. Cir. 2005) .... 12

Statesman II Apts., Inc. v. United States, 71 Fed. Cl. 662 (2006) .... 9

### FEDERAL STATUTES

42 U.S.C. § 1437f .... 12

Housing and Community Development Act of 1987, Section 142(c)(2)(B) P.L. 100-242, 101 Stat. 1815 .... passim

Department of Veterans Affairs and Housing and Urban Development, and Independent Agencies Appropriations Act, 1995, Pub. L. No. 103-327 .... passim

No. 04-1757C
(Judge Allegra)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

PARK PROPERTIES ASSOCIATES, L.P., et al.,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

PLAINTIFFS' BRIEF IN
OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT AND
REPLY TO MOTION FOR PARTIAL SUMMARY JUDGMENT WITH RESPECT TO APPLICATION OF OVERALL LIMITATION TO CALCULATION OF DAMAGES

## INTRODUCTION

Pursuant to the Court's Order filed on December 19, 2006 (the "December Order"), as amended by the Court's order dated April 10, 2006, Plaintiffs (referred to here as the "Plaintiffs" or "Owners"), by and through undersigned counsel, respectfully submit this brief in opposition to the Government's Motion for Cross-Motion For Summary Judgment (the "Government Motion," cited as "Gov. Mot. at __") and as their reply in connection with their Motion For Partial Summary Judgment With Respect to Overall Limitation To Calculation (the "Owners' Motion," cited as "Owners' Mot. at __").

The Government's Motion answers the wrong question. As predicted by the Owners (Owners' Mot. at 14), the Government's Motion collects snippets from other cases that discuss

HUD's overall authority to perform comparability studies – a matter that was settled long ago but that sheds little light on the present question, which is whether the so-called "overall limitation" should serve to constrain the damages that the Owners have suffered here. Moreover, the Government's Motion veers into other issues that are beyond the narrow scope that the Court's December Order directed them to address. Because it provides no grounds for using the overall limitation to constrain the damages to which the Plaintiffs are entitled, the Government's Motion should be denied and the Plaintiffs' Motion should be granted.

## BACKGROUND

The Court has previously determined that the government breached its Housing Assistance Payment Contracts ("HAP Contracts") with the Plaintiffs in this case, Park Properties Associates, L.P. ("Park"), Valentine Associates, L.P. ("Valentine") and St. John's I Associates, L.P. ("St. John's"). Park Properties Assocs., L.P. v. United States, 74 Fed. Cl. 262 (2006). Specifically, the Court concluded that the enactment of the Department of Veterans Affairs and Housing and Urban Development, and Independent Agencies Appropriations Act, 1995, Pub. L. No. 103-327 (the "1994 Act"), and its implementing agency guidance, Notice 95-12, issued by the U.S. Department of Housing and Urban Development ("HUD") on March 7, 1995, attempted to shift the burden of performing certain aspects of the Section 8 rent adjustment process from HUD, which traditionally exercised the power to perform rent comparability studies pursuant to the HAP Contracts, to the Owners. Relying on its prior decision in Cuyahoga Metro. Hous. Auth. v. United States, 57 Fed. Cl. 751 (2003) ("Cuyahoga I"), the Court explained

> The HAP contracts ***expressly require HUD to provide [owners] with annual adjustments barring the agency's invocation of the overall limitation***. As such, the passage of the 1994 [Act] was a repudiation of this contract provision that seemingly caused a failure to perform the contractual duty when it was due, at that point ripening into an apparent breach of contract . . . .

Park Properties, 74 Fed. Cl. at 273, *quoting* Cuyahoga I, 57 Fed. Cl. at 762 (emphasis added). Ultimately, the Court held "as a matter of law, that in passing the 1994 [Act] and issuing [Notice 95-12], defendant repudiated the HAP contracts here, which repudiation ripened into a beach of those contracts, at least to the extent that it precluded ***required*** rent adjustments from being made." Park Properties, 74 Fed. Cl. at 274 (emphasis added). As in this Court's decision in Cuyahoga I, its Park Properties decision emphasized that HUD was "required" to pay the full AAAF-adjusted rents in the absence of having performed rent comparability studies, and its failure to do so amounted to a repudiation of its contractual obligations.

Thereafter, pursuant to a joint status report filed by the parties, the Court issued an order, directing the parties to file briefs "limited to the issue whether the overall limitation provision in the HAP contracts affects the amount of damages recoverable for breach of contract in this case." Order dated December 19, 2006. In February 2007, the Owners submitted the Owners' Motion, explaining that, pursuant to the holdings in Cuyahoga I and Park Properties, where HUD does not exercise its authority to perform rent comparability studies, the Owners' HAP Contracts require HUD to pay the full AAAF-adjusted rents and that consequently, the overall limitation cannot be used to limit the Owners' recovery here. In March 2007, the Government filed the Government Motion. As explained in more detail below, the arguments advanced by the Government Motion are unavailing, because the HAP Contract requires HUD to pay the full AAAF-adjusted rent if HUD does not make a timely comparability determination. That did not happen here, and so the Owners are entitled to payment of the full AAAF-adjusted rents here.

## ARGUMENT

In the Owners' Motion, they set forth a series of arguments that demonstrate that, under the facts of this case, the overall limitation provision should not be used to limit the Plaintiffs' damages here. The Government's argument is largely off-point, seeking to invoke authorities

that address its authority to conduct comparability studies as a ground to reduce the Plaintiffs' recovery here. Indeed, if the Government had exercised that very authority – if it had performed the comparability studies that both its contracts and its cases authorized it to perform – rather that attempt to shift that burden to the Plaintiffs in violation of those contracts, there would be no case to adjudicate here. Having refused to exercise that authority in a timely manner in a method authorized under the terms of the contract and the Section 8 statute, it is barred from doing so now. Its Motion should therefore be denied and the Owners' Motion should be granted.

## I THE GOVERNMENT HAS FAILED TO PROVIDE ANY BASIS TO REDUCE THE OWNERS' DAMAGES BY APPLYING THE OVERALL LIMITATION.

### A. The Authorities Relied Upon By The Government Address HUD's Power To Perform Comparability Studies, And Do Not Explain How the Court Should Calculate Damages Here.

The bulk of the argument in the Government Motion derives from a series of cases pending in the late 1980s and early 1990s, addressing the question of whether HUD had the power to perform comparability studies pursuant to the Section 8 statutes and the HAP Contracts. *See, e.g.*, Cisneros v. Alpine Ridge Group, 508 U.S. 10 (1993) and National Leased Housing Ass'n v. United States, 24 Ct. Cl. 647 (1991). In these and similar cases, courts determined that HUD did, in fact, have the power to perform comparability studies pursuant to the overall limitation provision of the subject HAP Contracts. Here, the overall limitation provided that

> Notwithstanding any other provision of this Contact, adjustments as provided in this Section shall not result in material differences between the rents charged for assisted and comparable unassisted units, ***as determined by the Government***; provided, that this limitation shall not be construed to prohibit differences in rents between assisted and comparable unassisted units to the extent that such differences may have existed with respect to the initial Contract Rent.

HAP Contract at §1.8d (emphasis added)[1] In finding that § 1.8d authorized HUD to conduct comparability studies, the courts analyzed the relationship between section §1.8b, which established the essential contract right of owners to obtain automatic annual adjustment factors (*see* Owners' Mot. at 5), and the power conferred on HUD to perform comparability studies pursuant to the overall limitation found in §1.8d.[2]

None of these cases imposed an express obligation on HUD to perform comparability studies however, nor did they address the factual situation here, where, after having its right to perform comparability studies vindicated, HUD waived that right and instead sought to shift that responsibility to the owners, including the Plaintiffs here. The question here is not, as the Government would like, whether HUD had the power to perform rent comparability studies. Rather, the issue is what the appropriate course is where HUD, fully authorized by Alpine Ridge and related cases to conduct comparability studies, abjures that power and instead seeks to cast that task onto the shoulders of the Plaintiffs and other others.

---

1 *See* Plaintiffs Appendix (Plfs. App. 10, 24, 43), filed with the Owners' Motion.

2 HUD's constant drumbeat concerning the primacy of the overall limitation would perhaps be more compelling if it were willing to take that provision as seriously as it insists it should be. Indeed, applying the Government's logic, the overall limitation can be read, not as a cap on the AAAF-based rent adjustment mechanism, but a direction to HUD to take pains to set the Section 8 rents so that they are not materially different from the actual rents for comparable unassisted units. If that were the case, then there would be no way in which, for example, the "one percent deduction" imposed by the 1994 Act could be applied, because there is no basis to assume that an arbitrary deduction of one percent for non-turnover units will yield anything like a rent comparable to market rents. *See* Park Properties, 74 Fed. Cl. at 274-276. On the contrary, the application of that provision on an annual basis means that units that are subject to the one-percent deduction will slip further and further behind comparable unassisted units, for several reasons. First, comparable rents used by HUD by definition incorporate adjustments for turnover and nonturnover units. Adding an additional one-percent deduction is nothing more than "double-dipping" and guarantees that there will be a material difference between the Section 8 rents and comparable market rate rents. Second, to the extent that comparable rents do not reflect nonturnover factors during a rental period, they can be "caught up" when a tenancy ends. No such "catch up" is permitted with the one-percent deduction. Third, assuming the HAP Contracts' comparability mechanism worked flawlessly and achieved a comparable rent each year, the annual application of the one-percent deduction mathematically must result in a year-by-year divergence between the contract and comparable rents for units subject to that rule. HUD's insistence on the overall limitation's position here would be more compelling if it admitted that it should be treated as a floor, not just a ceiling, for Section 8 rent adjustments.

Indeed, the Government is in the unenviable position of seeking to explain how it can now impose on the Owners the task of performing comparability studies that were the source of the very breach that the Court identified in Cuyahoga and Park Properties. Certainly, as the Government admits (Gov. Mot. at 29), the Court has determined that the owners cannot be forced to perform a comparability study to obtain a rent adjustment, and HUD itself is time-barred from seeking to perform that function now. *See* pp. 9-14, below. Faced with that situation, the Government contends that the Owners are seeking to write the overall limitation out of the HAP Contract. Gov. Mot. at 23. In fact, a closer examination of how the overall limitation was intended to function here demonstrates that the Owners are not treating the overall limitation as a "nullity," as the Government claims (Gov. Mot. at 23). Rather, they seek to enforce their HAP Contract as written where, as here, HUD failed to exercise the power that overall limitation conferred on it.

**B. The Plaintiffs Are Not Asking For More Than Their HAP Contracts Allow.**

The Government Motion presses the theme that the Owners should not be allowed to obtain in damages more than they could have obtained if the HAP Contracts had been performed as written. Gov. Mot. at 16. In fact, the Owners are not requesting more than their HAP Contracts allowed. As explained above, cases such as Alpine Ridge and Natural Leased Housing Ass'n, ultimately decided that § 1.8d of the HAP Contracts was not self-executing, and required action by HUD to implement, in the form of rent comparability studies that those cases authorized. The HAP Contract empowers HUD to perform comparability studies, thus, but it does not require it. As noted by the Owners' previously, such comparability studies were not required by the Section 8 statute on the HAP Contracts; for many years, HUD did not exercise its authority to conduct comparability studies under the HAP Contracts. Owners' Motion at 14.

Where HUD opts to conduct those comparability studies, it has the power to reduce AAAF-based adjustments to the comparability standard. But where, as here, HUD did not perform those studies, there is no contractual basis to reduce the AAAF-based rents.

After all, as noted in the Owners' Motion (pg. 9), all that §1.8d provides is that the rent adjustment process "shall not result in material differences between the rents charged for assisted and comparable unassisted units, ***as determined by the Government***. . . ." Emphasis added. Here, there was no such determination by HUD. Indeed, this is the ultimate holding of the Court in Cuyahoga I, which correctly perceived that §1.8d of the HAP Contract is not self-executing and requires affirmative agency action to take effect. Thus, scrutinizing the language of §1.8d, the court said that provision

> requires HUD to determine whether there is a material difference [between the contract and comparable unassisted rents] but does not identify whether it or the project owners must bear the burden of showing, respectively, that there is or is not a material difference. Logic, however, suggests, that for the adjustments in the first part of the contract to be truly "automatic," the burden of demonstrating a material difference must lie on HUD.

Cuyahoga I, 57 Fed. Cl. at 759. As the Court explained there, although the precise issue had not previously been discussed, "the exegeses of the overall limitation provision in these opinions [including the Supreme Court's Alpine Ridge holding] consistently indicate that a project owner would receive an automatic adjustment unless HUD came forward with evidence triggering the limitation." *Id.* at 759 – 760. Sifting through the statutory background of the Section 8 rent assistance programs, from which the Section 8 contracts emerged, the Cuyahoga I Court found that beginning with the Housing and Community Development Act of 1987, P.L. 100-242, 101 Stat. 1815 (the "1987 Act"), Congress "explicitly ratified" HUD's power to perform rent comparability standards pursuant to the overall limitation, "but qualified this authority by providing that if HUD did not submit a comparability study to a Section 8 owner within 60 days

of the anniversary date of the contract, the full AAAF would apply." *Id*. at 761. Indeed, as discussed in more detail below (pp. 11-12), the Court noted that while later amendments were made to the Section 8 statute, "Congress retained the sixty-day limitation adopted in the 1987 Act, ***thus adhering to the view that HUD's failure to perform a comparability study would lead to an automatic adjustment.*"** *Id*. (emphasis added).

Summing up its analysis, the Court in Cuyahoga I concluded that from the outset, Section 8 owners were entitled to the full AAAF-adjusted rents unless HUD performed a comparability study:

> Thus, from the passage of Section 8 in 1974 until it was modified in 1995, the statutory mechanism clearly envisioned that annual adjustments ***were to be automatic unless HUD promptly performed a comparability study***

*Id*., at 761 – 762 (emphasis added). The Court held that "the HAP contracts ***expressly require*** HUD to provide [the plaintiff there] with annual adjustments barring the agency's innovation of the overall limitation." *Id*. at 762 (emphasis added). Applying the same logic, the Court found in this case that the 1994 Act and Notice 95-12 "repudiated the HAP contracts here, which repudiation eventually ripened into a breach of those contracts, ***at least to the extent that it precluded required rent adjustments from being made***." Park Properties, 74 Fed. Cl. at 274 (emphasis added).[3]

The holding in Cuyahoga I and Park Properties is both simple and compelling: based on both the language of the HAP Contracts and the statutory background from which they emerge, the overall limitation authorized HUD to conduct rent comparability studies; if it fails to do so,

---

[3] It is the Government, in fact, that is seeking to nullify part of §1.8d by attempting to read out its "as determined the Government" phrase. Gov. Mot. at 18. According to the Government, the overall limitation clause applies, even when the Government does not make the determination that the overall limitation expressly requires. It is the Government, not the Owners, therefore, who seek to read critical provisions out of the HAP Contracts here. In any event, the Court in Cuyahoga I has already addressed the issue of how the overall limitation operates here, and has given the "as determined by the Government" phrase teeth by concluding that "HUD's failure to perform a comparability study would lead to an automatic rent adjustment." 57 Fed. Cl. at 761.

HUD must pay the full AAAF-adjusted rents. Recognizing that §1.8d was not self-executing, the Court concluded in Cuyahoga I and Park Properties that where HUD did not exercise its power to conduct the comparability studies, there was no basis in the HAP Contract to pay the owners anything other than the AAAF-adjusted rents. This is not a case, as the Government concludes, of treating the overall limitation as a "nullity." Gov. Mot. at 23. On the contrary, this analysis gives life and consequence to that provision, especially where, as here, HUD chooses not to exercise its power. Performing rent comparability determinations are not a task for the Owners or the Court: by statute and by contract, only HUD can perform that task. Thus, where HUD has not made any rent comparability determination pursuant to §1.8d, basing the Owners' damages here on the AAAF-adjusted rents would not yield the Owners a windfall, but rather exactly what they bargained for and what their HAP Contracts require.[4]

### C. At This Point, There Is No Legal Authority For HUD To Conduct Comparability Studies.

In the Owners' Motion, they demonstrated that even if HUD wanted to do comparability studies now, it is legally forbidden from doing so, because Section 142(c)(2)(B) of the 1987 Act, adopted before the 1994 Act was enacted, required HUD to deliver its comparability studies to Section 8 owners at least 60 days prior to the property's anniversary date and, more important, forbade HUD from applying comparability to reduce the AAAF-based rent adjustments if it did not meet that deadline:

> If the Secretary [of HUD] . . . does not complete and submit to the project owner a comparability study not later than 60 days before the anniversary date of the

---

[4] The court in Statesman II Apts., Inc. v. United States, 71 Fed. Cl. 662 (2006), concurred with this Court's holding in Cuyahoga I that the Government had breached the HAP Contract by requiring the owner in that case to perform a rent comparability study in order to obtain a rent increase. In attempting to calculate damages, however, the Statesman II court did not perceive, as the Cuyahoga I court did, that where HUD opted not to exercise its power to perform comparability studies, the AAAF-adjusted rents should apply. Statesman II should not be followed here, however, because in that case, the parties stipulated that there were comparable rents. 71 Fed. Cl. at 669-670. There is no such stipulation here.

> assistance contract under this section, the automatic annual adjustment factor shall be applied.

1987 Act, Section 142(c)(2)(B); Owners' Mot. at 18. This provision is important in several respects, not least because it indicates Congress's agreement that the rent comparability provisions of the HAP Contract were not self-executing and – even more important – because it shows that in the absence of a timely HUD-performed comparability study, it was appropriate to pay the owners the AAAF-adjusted rent. It certainly belies the argument, made in the Government's Motion, that § 1.8d of the HAP Contract applies in all time and manners as an absolute limit on the HAP contract rents. On the contrary, Section 142(c)(2)(B) indicates that, along with this Court in Cuyahoga I and Park Properties, Congress agreed that where there was no proper HUD-implemented rent comparability study in place, the "default position" is to grant the owners the rent as adjusted by the AAAF. Because the subject anniversary dates have long since passed and so, pursuant to § 142(c)(2)(B), HUD cannot perform comparability studies pursuant to § 1.8d of the HAP Contract, the AAAF-adjusted rents must be applied.

In response, the Government Motion makes two unavailing arguments. First, the Government claims that subsequent Congressional enactments cannot vary the terms of a contract and that the 1994 Act somehow amounted to an implied repeal of Section 142(c)(2)(B). (Gov. Mot. at 25, 27). Both positions are demonstrably mistaken.

**1. The enactment of Section 142(c)(2)(B) did not constitute an improper alteration of the HAP Contracts.**

First, the Government's position – that "the law in effect when a Government contract is made becomes part of the contract" (Gov. Mot. at 27) – is suffused with irony, if not more. After all, it is the impact of a subsequent enactment – the effect of the 1994 Act – that caused the injury the Owners suffered and triggered the litigation in Cuyahoga, Statesman II, and the present case. If the Government now takes the position that "the law in effect when a

Government contract is made becomes part of the contract," as it insists (Gov. Mot. at 27), it should have admitted so in its Answers in these cases, and spared the owners and the courts in these cases the time and expense in litigating the threshold question of whether the 1994 Act constituted a breach of the respective owners' HAP contract. If the applicable law was fixed when the Owner's signed the HAP Contract here, then the Government has admitted that 1994 Act constituted a prima facie breach of the HAP Contract. At a minimum, the position asserted by the Government now must be rejected as inconsistent with the position taken at the outset by the Government here.

Whatever the significance of the Government's tardy admission that its position on liability was mistaken, its argument is inapposite so far as Section 142(c)(2)(B) is concerned, because that law only sought to reaffirm what the contracts already provided. The Government argues that in enacting Section 142(c)(2)(B) here, Congress in 1987 was somehow attempting to reinterpret a previously enacted law. That clearly was not the case here as the Court, when examining the legislative history of the Section 8 program, explained:

> Of course, unlike normal contractual undertakings, the contracts here had their source in legislation passed by the Congress, requiring the court to consider that legislation in construing the contracts. Far from supporting defendant, however, ***the history of the legislation, in fact, only confirms the interpretation that proceeds naturally from the contracts' plain language.***

Cuyahoga I, 57 Fed. Cl. 761 (emphasis added; internal citations omitted). Thus, in enacting Section 142(c)(2)(B), Congress did not alter the terms of the HAP Contracts. Rather, it limited HUD's administrative powers. Congress as part of a multifaceted overhaul of the Section 8 program in the 1987 Act was making a decision about how it wanted HUD to operate the Section 8 program, in response to many loud and vociferous calls that it had mismanaged the comparability process. Cuyahoga I, 57 Fed. Cl. at 761-762; *see* Owners' Mot. at 16. True, as noted above (pg. 8), in providing that if HUD did not conduct comparability studies by a specific

deadline, Congress understood that the HAP Contract required HUD to award the AAAF-based rent adjustment if it did not perform timely comparability studies. But in imposing those deadlines, Congress did not alter the terms of those contracts; rather, it was merely exercising its authority to oversee and carry out what those contracts already required. Improving HUD's management and operations of the Section 8 program did not effectuate an alteration to the underlying Section 8 contracts themselves.

**2. The enactment of the 1994 Act did not constitute an implied repeal of Section .**

To resist the impact of Section 142(c)(2)(B), the Government argues that in enacting the 1994 Act, Congress implicitly repealed that law. Gov. Mot. at 27. This is an extraordinary position to take – the Government cites not a single case in support of its contention – and demonstrates the Government's recognition that Section 142(c)(2)(B) essentially makes it impossible to conduct comparability studies here. As the Supreme Court has explained, implied repeal of Congressional enactments is strongly disfavored:

> "[T]he only permissible justification for a repeal by implication is when the earlier and later statutes are irreconcilable." "The rarity with which [the Court has] discovered implied repeals is due to the relatively stringent standard for such findings, namely, that there be an irreconcilable conflict between the two federal statutes at issue."

J.E.M. AG Supply, Inc. v. Pioneer Hi-Bred International, Inc., 534 U.S. 124, 141 - 142 (2001) (internal citations omitted); Southern California Edison v. United States, 69 Fed. Cl. 66, 75 (Fed. Cir. 2005) ("repeals by implication are disfavored"). The enactment of the 1994 Act presents no such "irreconcilable conflict" with the provisions of Section 142(c)(2)(B), both of which found in 42 U.S.C. § 1437f, the Section 8 statute. The two provisions address two different matters, because Section 142(c)(2)(B) was codified as part of 42 U.S.C. § 1437f(8)(2)(C), dealing with the manner in which rent adjustment studies are to be performed, while the 1994 Act was an

amendment to § 1437f(8)(2)(A), an addition that merely addressed under what circumstances the owner could be compelled to perform comparability studies. Cuyahoga I, 57 Fed. Cl. at 761. The two provisions are part of the same statute, but address different aspects of the program and do not conflict with each other.

Certainly, nothing in the 1994 Act purported to eliminate HUD's authority to conduct rent comparability studies, and therefore, it does not conflict with Section 142(c)(2)(B). Indeed, addressing this very point, the Court in Cuyahoga I recognized that, in the post-1987 amendments to the Section 8 statute,

> Congress retained the sixty-day limitation adopted in the 1987 Act, thus adhering to the view that HUD's failure to perform a comparability study would lead to an automatic adjustment. These provisions ***were left undisturbed*** [when Congress adopted the 1994 Act].

Cuyahoga I, 57 Fed. Cl. at 761 (emphasis added). Thus, as this Court explained in Cuyahoga I, Congress apparently found no inconsistency between Section 142(c)(2)(B) and the 1994 Act; rather, the 60-day deadline was "retained" and "left undisturbed" when Congress made the other changes in 1994 from which this dispute arose. *Id*.

Moreover, HUD's argument for implied repeal lacks any formal cohesion or content. If the enactment of the 1994 Act constituted an implied repeal, what exactly was repealed – merely the 60-day deadline or something more? If so, where is the indication of what was actually repealed? Did it repeal all of § 1437f(8)(2)(C), the provision of the Section 8 statute that governs how comparability studies are to be performed, or only a part? Were these not the parts that the Cuyahoga I court recognized Congress "retained" or "left undisturbed" by the 1994 Act? 57 Fed. Cl. at 761. Certainly, if Congress intended to repeal all of §1437f(c)(2)(C), it gave no indication to that effect. Moreover, if Congress intended to repeal all of § 1437f(8)(2)(C), then it also eliminated HUD's statutory authority to conduct comparability studies. *See* Cuyahoga I, 57

Fed. Cl. at 761. That cannot be its goal here, for it would leave HUD in exactly the position it seeks to avoid, because, as the Court found in Cuyahoga I, absent comparability studies, Section 8 owners are entitled to the AAAF-adjusted rents, as the Owners have argued here. *Id.* at 762. HUD cannot cherry-pick apart the Section 8 statute, seeking to enforce those provisions it likes and arguing the balance has been repealed. Perhaps in an abundance of caution, Congress preserved Section 142(c)(2)(B) and the rest of § 1437f(c)(2)(C) in the event that the 1994 Act were later deemed to be unlawful and Congress wanted to assure there was at least some authority for HUD to perform comparability studies going forward.

Fortunately, the Court need not speculate about Congress' motivations here, because the Government has presented no justification to find an implied repeal of the 60-day deadline here. As the Supreme Court explained in J.E.M. AG Supply, "there is no 'positive repugnance' between Section 142(c)(2)(B) and the 1994 Act, "[n]or can it be said that the two statutes 'cannot mutually coexist.'" 534 U.S. at 143 (internal citations omitted); Cuyahoga I, 57 Fed. Cl. at 761 (the provisions were "retained" and left "undisturbed" by Congress). As the Supreme Court explained, "when two statutes are capable of coexistence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." J.E.M. AG Supply, 534 U.S. at 143, *quoting* Morton v. Mancari, 417 U.S. 535, 551 (1974). Because there is no "irreconcilable conflict" between the 60-day deadline contained in Section 142(c)(2)(B) and the provisions of the 1994 Act, there was no implied repeal. As a result, the 60-day deadline applies, HUD is forbidden from conducting comparability studies, and the Owners are contractually entitled to receive the AAAF-based adjustment they seek.

## II THE COURT SHOULD NOT DELAY DETERMINING THE OWNERS' DAMAGES HERE.

Veering away the Court's direction in the Order of December 19, 2006 to limit this briefing to the effect the overall limitation has on the amount of damages recoverable here, the Government argues that the Court should not direct the parties to prepare a stipulation regarding damages because an unresolved issue remains as to whether the proximate cause of the damages suffered by Park and Valentine was their mistaken belief that local rent control precluded their receiving HUD rent adjustments. Gov. Mot. at 29-30. The Government's argument is mistaken for several reasons. First, as a pure matter of causation, the Government's argument misunderstands the cause for the effect. To the extent Park and Valentine opted not to file rent comparability studies after 1996, the issue only arose because HUD did not perform rent comparability studies, as the HAP Contract allowed. *See* Park Properties, 74 Fed. Cl. at 274. The Owners' injury arose solely from HUD's conduct, therefore, not their own actions, so their ability to collect expectation damages is not impaired. In its second decision in the Cuyahoga case, the Court recognized that HUD cannot complain about the reasonableness of the owners' actions were, as here, HUD was initially at fault:

> Arguing that [the owner there] did not act reasonably, defendant harps that "[the owner's] failure to submit comparability studies in a timely manner has resulted in complex and time-consuming litigation that might not have been necessary had it submitted its studies in time." One might note that this litigation also would have been unnecessary had defendant not repudiated the HAP contracts and forced plaintiff to litigate not only that question, but its entitlement to the costs of the relevant comparability studies. Notably, defendant did not concede that the latter costs were recoverable (and then, only in part) until it briefed the pending motions.

Cuyahoga Metro. Hous. Auth. v. United States, 65 Fed. Cl. 534, 548 fn. 17 (2005) ("Cuyahoga II"). HUD is essentially saying Park and Valentine are responsible for the breach that HUD's own conduct caused. That position is both legally incorrect and logically impossible. If HUD

had performed as the HAP Contract allowed, it would have performed the comparability studies here, eliminating the possibility that Park and Valentine would have to decide whether or not to perform comparability studies. Both logically and factually, the sole cause of the Owner's injuries here was HUD's breach, not any action of their own.[5]

In any event contrary to the Government's contentions, this issue does not bear on any issue of causation regarding the expectation damages that the Owner seeks to establish by joint stipulation. *See* Cuyahoga II, 65 Fed. Cl. at 543 – 548. Clearly, this Court has already held that the Owners met this burden when it granted summary judgment in their favor on the issue of liability. Rather, as the Court has noted, the Government's argument goes to its own burden of establishing a mitigation defense—that the Owners somehow had at their disposal "reasonable possibilities for mitigation [which] were ignored."[6] *See* Cuyahoga II., 65 Fed. Cl. at 547; Tr. 44: 11-13. As noted, however, the Government will be unable to demonstrate that the Owners' decision to refrain from undertaking the comparability studies and seeking rent adjustments was unreasonable, because their decision was a rational one based on information – or rather, misinformation – obtained from HUD and its agent, New York Quadel Consulting. *See* Bolduc Dep. 43:16-24; 44: 14-18; 46-47; 50:6-11; Ginsberg Letter at 2.

Thus, the decision of Park and Valentine not to seek rent adjustments for some periods after 1996 was itself an effect of HUD's breach of the HAP Contract, not a separate cause of

---

5 Moreover, the deposition testimony and contemporary documents demonstrate that to the extent Park and Valentine opted not to file rent comparability studies after 1996, they did so on the basis of information largely obtained from HUD's own trainers, not because of some misapprehension about the impact of local rent control (*see* Gov. Mot. at 30). *See* Bolduc Dep. 43:16-24; 44:14-18; 46-47; 50:6-11; Ginsberg Letter at 2. Indeed, when Park and Valentine became aware that they had been misled, they took prompt action to correct that position. Letter of Jerome Ginsburg to Tracy E. Newman dated July 23, 2001 at 2 (Defendant's. Supplemental Appendix 510, 11) ("Ginsberg Letter").

6 As it were, the Government likely raises this issue, in part, in an attempt to avoid summary judgment, but also to side-step its evidentiary burden in establishing mitigation. *See* Long Island Sav. Bank, FSB v. United States, 67 Fed. Cl. 616, 640 (2005), *rev'd on issue of liability*, Long Island Sav. Bank, FSB v. United States, 476 F.3d 917 (Fed. Cir. 2007).

their injury here, and should not delay the Court from entering a judgment in favor of the Owner. At most, the decision of Park and Valentine not to seek rent adjustments for that time period is a mitigation question, not a matter of causation, upon which the Government has the burden of proof and which should be decided in separate proceedings, rather than in connection with a determination of the impact of the overall limitation here.

## CONCLUSION

For the foregoing reasons, the Government's Motion should be denied, and the Owners' Motion should be granted.

Dated: May 3, 2007

/s/Harry J. Kelly
Harry J. Kelly, Esq.
NIXON PEABODY LLP
401 Ninth Street, N.W., Suite 900
Washington, D.C. 20004
P: (202) 585-8000
F: (202) 585-8080

Counsel for the Plaintiffs

**CERTIFICATE OF ELECTRONIC FILING**

I hereby certify this 3rd day of May, 2007 that a copy of the foregoing was filed electronically with the Court of Federal Claims. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/Harry J. Kelly