IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PARK PROPERTIES ASSOCIATES, L.P., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 04-1757C |
| v. | ) | |
| | ) | (Judge Allegra) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT WITH RESPECT TO APPLICATION OF OVERALL LIMITATION TO CALCULATION OF DAMAGES

Defendant, the United States, respectfully submits our reply in support of our cross-motion for partial summary judgment with respect to application of the overall limitation to the calculation of damages. In their response to our motion, plaintiffs, Park Properties Associates, L.P. ("Park Properties"), Valentine Associates, L.P. ("Valentine"), and St. John's I Associates, L.P. ("St. John's") (hereinafter collectively referred to as "the Owners"), argue that the 1994 Amendments to the Section 8 statute "attempted" to shift the burden of performing rent comparability studies to the Owners and that "the Court has determined that the owners cannot be forced to perform a comparability study to obtain a rent adjustment, and HUD is time-barred from seeking to perform that function now." Pl. Resp. 2, 4, 6.[1] This argument confuses perfor-

[1] In this reply brief, "Pl. Mot. ____" refers to the referenced page(s) of "Plaintiffs' Motion for Partial Summary Judgment with Respect to Application of Overall Limitation to Calculation of Damages" dated February 23, 2007; "Def. Opp. ____" refers to the referenced page(s) of "Defendant's Opposition to Plaintiffs' Motion for Partial Summary Judgment with Respect to Application of Overall Limitation to Calculation of Damages and Defendant's Cross-Motion for Partial Summary Judgment" dated March 26, 2007; and "Pl. Resp. ____" refers to the referenced page(s) of "Plaintiffs' Brief in Opposition to Defendant's Cross-Motion for Summary Judgment and Reply to Motion for Partial Summary Judgment with Respect to Application of Overall Limitation to Calculation of Damages" dated May 3, 2007.

mance of the HAP contract with the determination of damages for the breach of contract found by the Court.

The 1994 Amendments condition annual rent adjustments for Section 8 HAP projects whose current gross rents exceed applicable published Fair Market Rents (FMRs) "only to the extent that the owner demonstrates that the adjusted rent would not exceed the rent for an unassisted unit of similar quality, type, and age in the same market area, as determined by the Secretary." Pub. L. No. 103-327, 108 Stat. 2298, 2315 (1994). The 1994 Amendments are the law of the land. The Owners must comply with the 1994 Amendments to be eligible for annual rent adjustments where the current gross rent exceeds the applicable FMR.

Contrary to the Owners' claim, the Court has not determined that the Owners cannot be forced to perform a comparability study to obtain a rent adjustment.[2/] What the Court has held is that the 1994 Amendments and HUD Notice 95-12 breached, or resulted in the breach of, the Owners' HAP contracts for which the law gives the Owners a remedy, i.e., damages sufficient to place the Owners in as good a position as they would have enjoyed had HUD not been constrained by the 1994 Amendments from fully performing the HAP contracts, keeping in mind that the Owners are not entitled, through an award of damages, to achieve a position superior to the one they reasonably would have occupied had the breach not occurred.

---

[2] The Owners assert that, in the Government's opposition to the Owners' motion for partial summary judgment and the Government's cross-motion for partial summary judgment, the Government "admits" that "the Court has determined that the owners cannot be forced to perform a comparability study to obtain a rent adjustment . . . ." Pl. Resp. 6 (citing to page 29 of the Government's initial brief). That is not correct. In our brief, we state that the Court held "that the 1994 Amendments and HUD Notice 95-12 breached the HAP contracts by imposing upon the Owners the requirement to provide HUD with the rent comparability studies in support of AAF rent adjustments . . . ." Def. Opp. 29.

In Statesman II Apartments, Inc. v. United States, 71 Fed. Cl. 662, 667 (2006), the court held, with respect to similarly-situated Section 8 HAP project owners, that, in fashioning a damages award, the court could not disregard the overall limitation provision contained in the HAP contract in calculating damages because to do so would put the owners in a better position than they would have held had the breach of contract not occurred. The Owners attempt to distinguish Statesman II by arguing that it should not be followed here because, in Statesman II, "the parties stipulated that there were comparable rents," whereas, in the present case, there is no stipulation. Pl. Resp. 9 n.4. That is a distinction without a difference, however, because there is no indication in Statesman II that its holding that the overall limitation provision is a constraint upon the calculation of damages was in any way affected by the parties' stipulation in that case regarding comparable unassisted rents. There is no logical reason that a stipulation as to comparable unassisted rents would have a bearing upon whether the overall limitation is a constraint upon the calculation of damages.

The Owners also argue that "[p]erforming rent comparability determinations are [sic] not a task for the Owners or the Court: by statute and by contract, only HUD can perform that task." Pl. Resp. 9. We disagree. In Statesman II, the court was prepared to try, in a damages context, issues of comparable unassisted rents and the amount of the initial differences to be preserved in applying the overall limitation upon rent adjustments contained in the plaintiffs' HAP contracts, had the parties not entered a pretrial stipulation regarding comparable unassisted rents and initial differences to be preserved in rent adjustments. See also Park Village Apartments v. United States, 32 Fed. Cl. 441, 448-50 (1994), aff'd, 152 F.3d 943 (Fed. Cir.) (Table), cert. denied, 525 U.S. 962 (1998) (determining comparable unassisted rents based upon competing compara-

bility studies of parties' experts).

Section 142(c)(2)(B) of the Housing and Community Development Act of 1987, Pub. L. No. 100-242, 101 Stat. 1815, 1850 (1988) ("the 1987 Act"), provides: "If the Secretary . . . does not complete and submit to the project owner a comparability study not later than 60 days before the anniversary date of the [HAP] contract . . . , the automatic annual adjustment factor shall be applied." The Owners argue that the 1987 Act is consistent with and was not displaced by the 1994 Amendments to the Section 8 statute. Pl. Resp. 12-14. In support of that contention, the Owners make two arguments neither of which has any merit.

First, the Owners mistakenly assert that, in Cuyahoga Metropolitan Housing Authority v. United States, 57 Fed. Cl. 751 (2003), the court "apparently found no inconsistency between Section 142(c)(2)(B) and the 1994 Act . . . ." Pl. Resp. 13. The Cuyahoga court determined just the opposite. In the course of its opinion, the court stated that the 60-day limitation in the 1987 Act and the provisions of the HUD Reform Act of 1989 "were left undisturbed when, in the 1994 amendments, Congress finally indicated that where the maximum monthly rent 'exceeds the fair market rental for an existing dwelling unit in the market area, the Secretary shall adjust the rent only to the extent that the owner demonstrates that adjusted rents would not exceed the rent for an unassisted unit of similar quality, type, and age in the market area, as determined by the Secretary.'" 57 Fed. Cl. at 761. In stating that "These provisions were left undisturbed when, in the 1994 amendments," the court clearly meant that, up until 1994, Congress did not tinker with the 1987 Act's requirement that HUD complete and provide a project owner with a rent comparability study 60 days before the HAP contract anniversary date, but that, in the 1994 Amendments, Congress reversed the process when it required that, to be eligible for a rent adjustment, a project

owner must complete and provide HUD with a comparability study demonstrating such entitlement. This also is apparent from the ensuing discussion in Cuyahoga in which the court states that, "[f]rom the passage of Section 8 in 1974 *until it was modified in 1995*, the statutory mechanism clearly envisioned that annual adjustments were to be automatic unless HUD promptly performed a comparability study," id. at 761-62, and, referring to the 1994 Amendments, that "[e]very indication is that Congress knew it was *fundamentally altering* the process for determining rent adjustments in preexisting contracts . . . ." Id. at 762 (emphases added). In short, the Owners got what the Cuyahoga court states about the effect of the 1994 Amendments upon the 1987 Act precisely backwards.[3]

Second, the Owners argue that the 1994 Amendments did not implicitly repeal the 1987 Act because, according to them, there is no irreconcilable conflict between these statutes. See Pl. Resp. 12-14. In support of that argument, the Owners cite J.E.M. AG Supply, Inc. v. Pioneer Hi-Bred International, Inc., 534 U.S. 124 (2001), in which the Supreme Court observed that "the only permissible justification for a repeal by implication is when the earlier and later statutes are irreconcilable," id. at 141-42, and that "when two statutes are capable of coexistence, it is the

[3] The incompatibility of the requirement of the 1987 Act that HUD adjust an owner's rents based upon published AAFs unless HUD provides the owner with a timely rent comparability study and the requirement of the 1994 Amendments that, where the current gross rent exceeds the applicable FMR, the contract rent will not be adjusted unless the owner demonstrates that an adjusted rent would not exceed the rent for a comparable, unassisted unit is also addressed in Statesman II Apartments, Inc. v. United States, 66 Fed. Cl. 608 (2005). In concluding that the HAP contract rent adjustment provision imposes upon HUD the onus of demonstrating that a given adjustment would violate the overall limitation, the Statesman II court stated that this contractual duty, which the 1987 Act reinforces (quoting section 142(c)(2)(B)'s 60-day limitation), was imposed on the project owner in the 1994 Amendments: "By shifting the burden of coming forward with a [comparability] study to the owners, the 1994 Amendments require the owners to prove a negative–that an adjusted rent would not exceed a comparable unassisted rent–and thus reverse the thrust of Section 1.8 of the [HAP] contracts." 66 Fed. Cl. at 617.

duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective, id. at 143-44 (quoting Morton v. Mancari, 417 U.S. 535, 551 (1974)).

The Supreme Court described Morton as "a prototypical case where an adjudication of repeal by implication is not appropriate." 417 U.S. at 550. Section 12 of the Indian Reorganization Act of 1934 ("the 1934 Act") accorded an employment preference for qualified Indians in the Bureau of Indian Affairs (BIA), in part to give them a greater participation in their own self-government. Id. at 537-38, 541. The later-enacted Equal Employment Opportunity Act of 1972 ("the 1972 Act") carried over and applied to the Federal Government the anti-discrimination law embraced in Title VII of the Civil Rights Act of 1964. Id. at 545-47. The question was whether the Indian preference in the 1934 Act had been repealed by the 1972 Act. The Supreme Court held that the 1972 Act did not repeal the Indian preference in the 1934 Act because those statutes were not irreconcilable, stating that a specific "provision aimed at furthering Indian self-government by according an employment preference within the BIA for qualified members of the governed group can readily co-exist with a general rule prohibiting employment discrimination on the basis of race." Id. at 550. The Court noted that, "[w]here there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment." Id. at 550-51.

In this case, by contrast, the 1987 Act and the 1994 Amendments are addressed to the same legislation, i.e., the Section 8 statute, and both the 1987 Act and the 1994 Amendments concern the process for adjusting HAP contract rents. More importantly, the requirement of the 1987 Act that a Section 8 HAP project owner receive a AAF-based rent adjustment if HUD does not complete and submit a comparability study to the owner 60 days before the HAP contract

anniversary date cannot be reconciled with the 1994 Amendments, which condition eligibility for a rent adjustment for a unit whose current gross rent exceeds the applicable FMR upon the owner's demonstration that the adjusted rent does not exceed the comparable, unassisted rent, as determined by HUD. The 1994 Amendments require that, when the current gross rent exceeds the applicable FMR, to be eligible for a rent adjustment, a *project owner* must provide HUD with a comparability study demonstrating that the adjusted rent does not exceed the comparable, unassisted rent, whereas, in the same situation, the 1987 Act mandates that the owner receive a AAF-based rent adjustment unless *HUD* completes and provides the owner with a comparability study 60 days prior to the HAP contract anniversary date. The later-enacted 1994 Amendments, thus, supersede and nullify the 1987 Act whenever the current gross rent for a unit exceeds the applicable FMR.[4/]

Lastly, the Owners' response to the Government's opposition to their motion for partial summary judgment disregards the Court's December 19, 2006 Order limiting briefing at this juncture of the proceedings to whether the overall limitation provision contained in the HAP contracts is a constraint upon the calculation of damages recoverable by the Owners for the breach of contract found by the Court. In their initial brief, the Owners argued that if, as they contend, the overall limitation is not a constraint upon the calculation of such damages, the Court should "direct the parties to prepare a stipulation with respect to the damages recoverable here, setting forth the contract rents, the applicable AAAFs, and the adjusted rents pursuant to apply-

---

[4] In our initial brief, we stated that the later-enacted 1994 Amendments "effectively repealed or superseded section 142(c)(2)(B) of the Housing and Community Development Act of 1987." Def. Opp. 27. The 1994 Amendments do not displace section 142(c)(2)(B) in the case of an annual rent adjustment for a unit whose current gross rent does *not* exceed the applicable FMR.

ing the AAAFs without regard to the overall limitation" because, the Owners asserted, all other damages issues identified in the parties' December 11, 2006 Joint Status Report are "'subsidiary issues' that do not arise unless the overall limitation applies . . . ." Pl. Mot. 30-31.

In our response to the Owners' initial brief, we identified an unresolved issue raised in the Joint Status Report that is not tied or subordinate to the determination of whether the overall limitation is a constraint upon the calculations of damages: whether the failure of Park Properties and Valentine to receive annual rent adjustments for the years 1999 and 2000 was not the direct or proximate consequence of the requirements of the 1994 Amendments or HUD Notice 95-12, but, rather, the result of their mistaken belief that they were not eligible for rent increases because their rental housing projects were located in a housing market subject to local rent control regulation. Def. Opp. 29-30. In their response, the Owners argue the merits of this unresolved issue. See Pl. Resp. 15-17. We do not join issue with the Owners upon that issue at this time, however, in view of the Court's December 19, 2006 Order, which explicitly states that briefing "shall be limited to the issue whether the overall limitation provision in the HAP contracts affects the amount of damages recoverable for breach of contract in this case" and that "[t]he parties shall not address any other issues at this time."

For the foregoing reasons and the reasons set forth in "Defendant's Opposition to Plaintiffs' Motion for Partial Summary Judgment with Respect to Application of Overall Limitation to Calculation of Damages and Defendant's Cross-Motion for Partial Summary Judgment" dated March 26, 2007, plaintiffs' motion for partial summary judgment with respect to application of the overall limitation provision contained in their HAP contracts to the calculation of damages

should be denied and defendant's cross-motion for partial summary upon that issue should be granted.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/John E. Kosloske
JOHN E. KOSLOSKE
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., Room 8012
Washington, D.C. 20530
Tele: (202) 307-0282
(FAX)(202) 514-8624

Attorneys for Defendant

OF COUNSEL:

NANCY CHRISTOPHER
Associate General Counsel

GERALD ALEXANDER
Assistant General Counsel

C. ALLEN VILLAFUERTE
Trial Attorney
Office of General Counsel
Department of Housing
and Urban Development
Washington, D.C.

MAY 31, 2007

CERTIFICATE OF FILING

I hereby certify that on this 31st day of MAY, 2007, a copy of "DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT WITH RESPECT TO APPLICATION OF OVERALL LIMITATION TO CALCULATION OF DAMAGES DEFENDANT'S MOTION FOR SUMMARY JUDG-MENT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/John E. Kosloske