IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PARK PROPERTIES ASSOCIATES, L.P., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 04-1757C |
| v. | ) | |
| | ) | (Judge Allegra) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S SUPPLEMENTAL BRIEF

Defendant, the United States, respectfully submits this supplemental brief in response to the Court's August 2, 2007 Order, which requires additional briefing by the parties addressed to the issues enumerated in the Order and set out below.

Issue No. 1: In the context of determining expectation damages, at what point are the parties' expectations assessed? Specifically, should the court assess expectations at the time the contract was entered into or at the time of the breach(es)?

The Court should assess the parties' expectations as of the time that each of the Housing Assistance Payments contracts ("HAP contracts") between plaintiffs, Park Properties, L.P., Valentine Associates, L.P., and St. John's I Associates, L.P. (hereinafter referred to as "the Owners") and the Government was entered into, not as of when the HAP contracts allegedly were breached.

A contracting party has three legally-protected interests – a restitution interest, a reliance interest, and an expectation interest. John D. Calamari & Joseph M. Perillo, Contracts § 14-4 (2d ed. 1977), at 522; see also Glendale Federal Bank, FSB v. United States, 239 F.3d 1374, 1380, 1382 (Fed. Cir. 2001). We are concerned here with the Owners' expectation interest: the Owners seek compensation for the greater housing assistance payments which, allegedly, would

have resulted from annual adjustments of their contract rents that, because of the Government's breach of the HAP contracts found by the Court, were not made.

In Glendale, the Federal Circuit observed that "[o]ne way the law makes the non-breaching party whole is to give him the benefits he expected to receive had the breach not occurred." 239 F.3d at 1380 (citing Restatement (Second) of Contracts § 344(a) (1981)). "The benefits that were expected from the contract, 'expectancy damages,' are often equated with lost profits, although they can include other damage elements as well." Id. (citing Restatement (Second) of Contracts § 347 (1981)). The object of an award of expectancy damages, thus, is damages sufficient to place the non-breaching party in as good a position pecuniarily as it would have been had the breaching party fully performed. San Carlos Irrigation & Drainage District v. United States, 111 F.3d 1557, 1562-63 (Fed. Cir. 1997); Northern Helix Co. v. United States, 207 Ct.Cl. 862, 875 & n.3, 524 F.2d 707, 713 & n.3 (1975), cert. denied, 429 U.S. 866 (1976).

An award of expectancy damages is subject to several limitations, one of which is that the loss must have been foreseeable by the breaching party at the time of contracting: "Damages for a breach of contract are recoverable where: (1) the damages were reasonably foreseeable by the breaching party *at the time of contracting*; (2) the breach is a substantial causal factor in the damages; and (3) the damages are shown with reasonable certainty." Indiana Michigan Power Co. v. United States, 422 F.3d 1369, 1373 (Fed. Cir. 2005) (emphasis added); accord Hughes Communications Galaxy, Inc. v. United States, 271 F.3d 1060, 1066 (Fed. Cir. 2001) ("[T]he damages must have been foreseeable at the time the parties entered the contract[.]"); Prudential Insurance Co. v. United States, 801 F.2d 1295, 1300 (Fed. Cir. 1986), cert. denied, 479 U.S. 1086 (1987) (Where the Government breached a lease by holding over beyond the term of the

lease, "the better rule, and the one that is applicable in federal law in interpreting a government contract, is that, for damages to be recoverable as consequential or special, they must be foreseeable by the tenant at the time the lease agreement is executed," not as of the time the lease was breached. (citations omitted)); Locke v. United States, 151 Ct.Cl. 262, 270, 283 F.2d 521, 526 (1960) (The "basic position long followed by" the Court of Claims is that "[c]ompensation is given for only those injuries that the defendant had reason to foresee as a probable result of his breach when the contract was made," quoting Restatement of Contracts § 330 (1932)); Precision Pine & Timber, Inc. v. United States, 72 Fed. Cl. 460, 476-480 (2007) (noting general rule that forseeability should be assessed at the time of contracting; holding that, in that case, foreseeability inquiry should be guided by that principle).

The "foreseeability requirement reflects the principle that a breaching party should not be held liable for damages that 'it did not at the time of contracting have reason to foresee as a probable result of such a breach.'" Citizens Federal Bank v. United States, 474 F.3d 1314, 1321 (Fed. Cir. 2007) (quoting Restatement (Second) of Contracts § 351 cmt. a (1981)). The Restatement Second, at § 351(1), states this rule, which stems from the well-known English case of Hadley v. Baxendale, 9 Ex. 341, 156 Eng. Rep. 145 (1854),[1/] as follows: "Damages are not recoverable for loss that the party in breach did not have reason to foresee as a probable result of the breach *when the contract was made*." (Emphasis added.) The Restatement Second adds that loss may

---

[1] In Spang Industries, Inc., Fort Pitt Bridge Division v. Aetna Casualty & Surety Co., 512 F.2d 365, 368 (2d Cir. 1975), the Second Circuit remarked that "[t]here can be no question but that Hadley v. Baxendale represents the law in New York and in the United States generally," noting that, "[w]hile it is evident that the function of the award of damages for a breach of contract is to put the plaintiff in the same position he would have been in had there been no breach, Hadley v. Baxendale limits the recovery to those injuries which the parties could reasonably have anticipated at the time the contract was entered into."

be foreseeable as a probable result of a breach if it follows from the breach "in the ordinary course of events" or if it follows from the breach "as a result of special circumstances, beyond the ordinary course of events, that the party in breach had reason to know." Id., at § 351(2).

Issue No. 2: Are the parties' expectations measured solely by the terms of the contract, as reasonably construed? Is performance under similar contracts predating the execution of the contract relevant?

Regarding damages, the parties' expectations are not measured solely by the terms of the contract. The determination whether damages were foreseen or foreseeable at the time of contracting "may be discerned from 'the language of the contract in light of the facts, including the nature and purpose of the contract and circumstances attending its execution.'" Kuehl v. Freeman Brothers Agency, Inc., 521 N.W.2d 714, 718 (Iowa 1994) (quoting 22 Am.Jur.2d Damages § 640, at 541 (1988)); see also E. Allen Farnsworth, Farnsworth on Contracts § 12.14 (3d ed. 2004), at 260 (parol evidence rule should not bar resort to extrinsic evidence for the limited purpose of showing that the party in breach had notice of special circumstances from which damages beyond the ordinary course of events resulted). Because "foreseeability is to be determined as of the time of the making of the contract," it is "unaffected by events subsequent to that time." Farnsworth on Contracts § 12.14, at 260; see also Globe Refining Co. v. Landa Cotton Oil Co., 190 U.S. 540, 544 (1903) (rejecting suggestion that notice of special circumstances after the contract was made and before breach would be enough to satisfy the foreseeability limitation and stating that "[t]he consequences must be contemplated at the time of making the contract").

For purposes of measuring the Owners' damages – and application of the foreseeability requirement in particular – performance under similar contracts predating the execution of the Owners' HAP contracts is not relevant. Evidence of performance under other contracts would

not constitute circumstances attending the execution of the Owners' HAP contracts, much less evidence of the language, nature, or purpose of the Owners' HAP contracts. Performance under other HAP contracts does not constitute a special circumstance attending execution of the Owners' HAP contracts from which damages beyond the ordinary course of events could be deemed to have resulted.

Issue No. 3: Do questions involving the application of the overall limitation in this case involve causation or mitigation? Which party has the burden of proof in demonstrating the parties' expectations regarding the use of that clause?

Questions concerning the application of the overall limitation to damages involve causation, not mitigation. Under the mitigation doctrine, the non-breaching party "cannot recover damages for loss that he could have avoided by *reasonable efforts*." Robinson v. United States, 305 F.3d 1330, 1333 (Fed. Cir. 2002) (quoting Restatement (Second) of Contracts § 350, cmt. b (1981) (emphasis in original)); accord Indiana Michigan Power, 422 F.3d at 1375 (quoting Robinson); see also Cuyahoga Metropolitan Housing Authority v. United States, 65 Fed. Cl. 534, 546 (2005) ("[A] non-breaching party generally may not recover damages attributable to that party's failure to take reasonable, non-burdensome steps to avoid its loss." (quoting Koby v. United States, 53 Fed. Cl. 493, 496-97 (2002)). Application of the overall limitation contained in the Owners' HAP contracts to the assessment of damages does not involve steps the Owners might have taken to avoid the claimed loss, i.e., the additional rent subsidies the Owners allegedly would have realized if they had received the annual rent adjustments at issue here.[2]

[2] The mitigation argument that the Government made in Cuyahoga differs from the issue of the applicability of the overall limitation to the determination of damages presented by the parties' pending cross-motions for partial summary judgment. In Cuyahoga, the court analyzed, under mitigation-of-damages principles, the Government's contention that the plaintiff could not recover damages for breach of contract resulting from the enactment of the 1994 Amend-

Questions involving the application of the overall limitation upon rent adjustments in this case relate to causation in the sense that the object of the damages award is damages sufficient to place the non-breaching party – the Owners here – in as good a position pecuniarily as it would have been had the breaching party – the Government, as the Court ruled – fully performed the HAP contracts. The issue is what performance would have satisfied the Government's obligation under the HAP contracts insofar as annual rent adjustments are concerned.

The Owners have the burden of proof in demonstrating the parties' expectations regarding the use of the overall limitation provision. "A plaintiff must show that but for the breach, the damages would not have been suffered." Hughes, 271 F.3d at 1066 (quoting San Carlos, 111 F.3d at 1563); accord California Federal Bank v. United States, 395 F.3d 1263, 1267 (Fed. Cir. 2005) ("In order to be entitled to expectancy damages, which include lost profits, the plaintiff must satisfy three requirements. First, the plaintiff must show that the lost profits were within the contemplation of the parties because the loss was foreseeable or because the defaulting party had knowledge of special circumstances at the time of contracting. Second, the plaintiff must establish that there would have been a profit but for the breach. Third, the measure of damages must be reasonably certain, although, if a reasonable probability of damage can be clearly established, uncertainty as to the amount will not preclude recovery." (citations and internal quotation marks omitted); La Van v. United States, 382 F.3d 1340, 1351 (Fed. Cir. 2004) (Plaintiffs may recover expectancy damages "only if they establish by a preponderance of the evidence that: (1) the loss was the proximate result of the breach; (2) the loss of profits caused by the breach

---

ments and/or HUD Notice 95-12 because it neglected to seek rent increases during the years at issue in that case pursuant to the mechanism established by the 1994 Amendments and HUD Notice 95-12. See 65 Fed. Cl. at 545-48.

was within the contemplation of the parties because the loss was foreseeable or because the defaulting party had knowledge of special circumstances at the time of contracting; and (3) a sufficient basis exists for estimating the amount of lost profits with reasonable certainty." (quoting Energy Capital Corp. v. United States, 302 F.3d 1314, 1324-25 (Fed. Cir. 2002) (citation omitted); Holland v. United States, 75 Fed. Cl. 483, 489 (2007) ("In order to establish expectancy damages, plaintiff must satisfy three requirements: it must demonstrate that (1) the damages it seeks were reasonably foreseeable by the breaching party at the time of contracting; (2) defendant's breach was a substantial factor in causing plaintiff's damages; and (3) the measure of damages is reasonably certain, although uncertainty as to the amount of damages will not preclude recovery where plaintiff can establish a reasonable probability of damage." (citations and internal quotation marks omitted)).[3/]

Issue No. 4: Whether, in light of the answers to the questions raised above, the Government believes that this case still is amenable to being resolved as a matter of law?

We take this question to be whether, in light of the answers to the foregoing questions, the Government continues to believe that its pending motion for partial summary judgment with respect to the applicability of the overall limitation to the calculation of damages for the breach of contract found by the Court is amenable to being resolved as a matter of law. We do.

The Owners do not seek special or consequential damages. They seek an award of damages as compensation for the greater rent subsidy payments that allegedly would have resulted from annual adjustments of their HAP contract rents which, because of the Government's breach

[3] See also Servidone Construction Corp. v. United States, 931 F.2d 860, 861 (Fed. Cir. 1991) (To recover for a breach of contract, a claimant "must show three necessary elements – liability, causation, and resultant injury.").

of the HAP contracts found by the Court, were not made, i.e., the increased rent subsidies the Owners would have received if the Government had fully performed the HAP contracts. The object of an award of expectancy damages is to put the injured party in the same position as if the breaching party had actually performed – in other words, to give the injured party the benefit of the bargain. The "bargain" in this case was formed, and the meeting of the minds occurred, when the HAP contracts were executed. Whether the overall limitation upon rent adjustments contained in the HAP contracts constitutes a ceiling upon the amount of damages that may be awarded for the breach of contract found by the Court involves contract interpretation, which is a question of law, not a question of fact.

We have argued that any damages award for annual rent adjustments that the Owners did not receive must be capped by the overall limitation contained in the HAP contracts, which established a ceiling that superseded any other rent adjustments indicated in the HAP contracts, including the factor-based rent adjustments that are the subject of § 1.8b. The Owners counter that the Government's own contemporaneous interpretation of the HAP contracts allowed the Government to make annual adjustments without regard to the overall limitation. We do not agree that the Government interpreted the HAP contracts in that manner. But even if the Government had the option of disregarding the overall limitation in making rent adjustments, that does not get the Owners anywhere.

What the Owners seem to be suggesting is that the Government could have satisfied its duty to adjust contract rents annually in either of two ways: grant full factor-based rent adjustments or adjust rents by setting them at levels that are not materially different than the rents for comparable unassisted housing. In other words, the HAP contracts reserved to the Government

the option of alternative performances with respect to the method of annual rent adjustments.

In the 1994 Amendments, as implemented by HUD Notice 95-12, the Government made clear its intent that, for any unit whose gross rent exceeded the applicable published Fair Market Rent, the contract rent would be set at a level not materially different than the rent charged for a comparable unassisted unit. However, even if the Government had not made what under the Owners' view of the HAP contracts would be tantamount to an election to adjust rents based on the overall limitation provision, their damages nevertheless should be fashioned in accordance with the rent-adjustment method least expensive to the Government.

The courts have held that, where the breaching party had the option of choosing between alternative performances at the time of breach, damages are to be fashioned in accordance with the least onerous alternative, i.e., based upon the alternative that will result in the smallest recovery. Koby, 53 Fed. Cl. at 501; accord Liberty Bank v. Talman Home Mortgage Corp., 877 F.2d 400, 407 (5th Cir. 1989); In re Community Medical Center, 623 F.2d 864, 867-68 (3d Cir. 1980); Western Oil & Fuel Co. v. Kemp, 245 F.2d 633, 640 (8th Cir. 1957). The rationale for this rule is that "the court may not place the promisee in a better position than had the contract been performed–it presumes that the promisor bargained for the flexibility of the alternatives and, therefore, should be liable for no more than the least expensive alternative he could have chosen." Koby, 53 Fed. Cl. at 501 (citing Podlesnick v. Airborne Express, Inc., 627 F.Supp. 1113, 1116 (S.D. Ohio 1986), aff'd per curiam, 836 F.2d 550 (6th Cir. 1987)). Therefore, even under the Owners' view of the operation of the rent adjustment provisions contained in the HAP contracts, the overall limitation provision cannot be ignored in the calculation of damages for the breach of contract found by the Court.

An additional word: We do not mean to suggest that the entire case can be disposed of at this juncture by a ruling upon the issue of the applicability of the overall limitation to the calculation of damages. If the Court were to accept the Government's position that the overall limitation is a constraint in the damages context, further proceedings would be required to determine what the comparable unassisted rents were at relevant times and related issues such as the initial differences to be preserved when applying the overall limitation to rent adjustments and the extent to which factor-based rent adjustments would materially differ from the rents charged for comparable unassisted units. These are fact-bound questions with respect to which the parties would need discovery, including the retention of experts to perform rent comparability studies.[4/]

Moreover, even if the Court were to accept the Owners' position that the overall limitation is not a constraint upon the calculation of damages, the Government would need discovery from the Owners with respect to the number of turnover and non-turnover units and vacancy rate for the Owners' rental housing projects for each of the relevant years. In addition, there is the unresolved question of whether the failure of plaintiffs Park Properties and Valentine to receive annual rent adjustments for the years 1999 and 2000 was not the direct or proximate consequence of the requirements of the 1994 Amendments to the Section 8 statute or HUD Notice 95-12, but, rather, the result of plaintiffs' mistaken belief that they were not eligible for rent increases because their rental housing projects (LaMartine Terrace, Lane Hill Senior Citizen Residence)

[4] The parties' thinking in filing the pending cross motions for partial summary judgment upon the overall limitation issue was that, if the Court were to agree with the Owners that the overall limitation is to be ignored in calculating damages, that potentially would save the parties the time and expense associated with litigating whether application of the overall limitation provision would result in a less than full factor-based rent adjustment for any year as to which the Court has held there was a breach of contract.

were located in a housing market subject to local rent control regulation.[5]

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/John E. Kosloske
JOHN E. KOSLOSKE
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., Room 8012
Washington, D.C. 20530
Tele: (202) 307-0282
(FAX)(202) 514-8624

Attorneys for Defendant

OF COUNSEL:

NANCY CHRISTOPHER
Associate General Counsel

GERALD ALEXANDER
Assistant General Counsel

C. ALLEN VILLAFUERTE
Trial Attorney
Office of General Counsel
Department of Housing
and Urban Development
Washington, D.C.

SEPTEMBER 7, 2007

---

[5] The Government raised this issue in its response to the Owners' motion for summary judgment as to liability, see "Defendant's Opposition to Plaintiffs' Motion for Summary Judgment as to Liability" dated August 31, 2005, at 29-31, but the Court did not resolve that issue in its November 17, 2006 Opinion regarding liability.

CERTIFICATE OF FILING

I hereby certify that on this 7th day of SEPTEMBER, 2007, a copy of “DEFENDANT’S SUPPLEMENTAL BRIEF” was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court’s electronic filing system. Parties may access this filing through the Court’s system.

s/John E. Kosloske