Proj.No. NY 36-0010-003

EXHIBIT A – CONTRACT RENTS

| UNIT SIZE | NO. OF UNITS | CONTRACT RENTS |
|---|---|---|
| 0-Br. | 16 | $415. |
| 1-Br. | 30 | 490. |
| 2-Br. | 36 | 561. |

EXHIBIT B – PROJECT DESCRIPTION

1-six story existing building to be substantially rehabilitated. Masonry and brick, full basement, slab on grade, oil, hot water, heat.

EXHIBIT C – STATEMENT OF SERVICES

Gas ranges, electric refrigerators, air conditioning, sleeves, heat, hot and cold water, gas for cooking.

EXHIBIT D – SEE PLAN ATTACHED

RIDER TO SECTION 1.6 OF HOUSING ASSISTANCE PAYMENTS CONTRACT

DEBT SERVICE PAYMENTS

(1) If a unit continues to be vacant after the 60 day period specified in paragraph b or c of this Section, the Owner may submit a claim to receive additional housing assistance payments on a semiannual basis with respect to such a vacant unit in an amount equal to the principal and interest payments required to amortize the portion of the debt attributable to that unit for the period of the vacancy, whether such vacancy commenced during rent-up or after rent-up.

(2) Additional Payments under this paragraph for any unit shall not be for more than 12 months for any vacancy period, and shall be made only if:

(i) The unit was in decent, safe and sanitary condition during the vacancy period for which payments are claimed.

(ii) The Owner has taken and is continuing to take the actions specified in paragraphs b(1)(2) and (3) or paragraphs c(1)(i) and (ii) and c(2) of this Section, as appropriate.

(iii) The Owner has demonstrated in connection with the semiannual claim on a form and in accordance with the standards prescribed by HUD with respect to the period of vacancy, that the project is not providing the Owner with revenues at least equal to the project costs incurred by the Owner, and that the amount of the payments requested is not in excess of that portion of the deficiency which is attributable to the vacant units for the period of the vacancies.

(iv) The Owner has submitted, in connection with the semiannual claim, a statement with relevant supporting evidence that there is a reasonable prospect that the project can achieve financial soundness within a reasonable time. The statement shall indicate the causes of the deficiency; the corrective steps that have been and will be taken; and the time by which it is expected that the project revenues will at least equal project costs without the additional payments provided under this paragraph.

(3) HUD may deny any application for additional payments or suspend or terminate payments if it determines, based on the Owner's statement and other evidence, that there is not a reasonable prospect that the project can achieve financial soundness within a reasonable time.

[illegible] in the Allowance for Utilities and Other Charges. In the event that the Owner is notified [illegible] applicable to any of the Contract Units, [illegible] an adjustment in the Allowance for Utilities and Other, [illegible] Owner shall promptly make a corresponding adjustment in the amount of rent to be paid by the affected Families and the amount of Families' assistance payments.

b. Processing of Applications and Complaints. The Owner shall process applications for admission, notifications to applicants, and compl[illegible] by Families in accordance with applicable Government requirements and shall maintain records and furnish such copies or other docu[illegible] tion as may be required by the Government.

c. Government Review; Incorrect Payments. In making housing assistance payments to Owners, the Government will review the Owner's determinations under this Section. If as a result of this review, or other reviews, audit or information received by the Government at a[illegible] time, it is determined that the Owner has received improper or excessive housing assistance payments, the Government shall have the ri[illegible] to deduct the amount of such overpayments from any amounts otherwise due the Owner, or otherwise effect recovery thereof.

TERMINATION OF TENANCY.

The Owner shall be responsible for termination of tenancies, including evictions. However, conditions for payment of housing assistance pay-ments for any resulting vacancies shall be as set forth in Section 1.6c.

REDUCTION OF NUMBER OF CONTRACT UNITS FOR FAILURE TO LEASE TO ELIGIBLE FAMILIES.

a. After First Year Of Contract. If at any time, beginning six months after the effective date of this Contract, the Owner fails for a contin[illegible] ous period of six months to have at least 90 percent of the Contract Units leased or available for leasing by Families, the Government m[illegible] on 30 days notice reduce the number of Contract Units to not less than the number of units under lease or available for leasing by Fami[illegible] plus 10 percent of such number if the number is 10 or more, rounded to the next highest number.

b. At End of Initial and Each Renewal Term. At the end of the initial term of the Contract and of each renewal term, the Government m[illegible] by notice to the Owner, reduce the number of Contract Units to not less than (1) the number of units under lease or available for leasing by Families at that time or (2) the average number of units so leased or available for leasing during the last year, whichever is the greater number, plus 10 percent of such number if the number is 10 or more, rounded to the next highest number.

c. Restoration of Units. The Government will agree to an amendment of the Contract to provide for subsequent restoration of any reduct[illegible] made pursuant to paragraph a or b of this Section if the Government determines that the restoration is justified as a result of changes in demand and in the light of the Owner's record of compliance with his obligations under this Contract and if annual contributions contra[illegible] authority is available; and the Government will take such steps authorized by section 8(c)(6) of the Act as may be necessary to carry out this assurance *(see Section 1.5)*.

WARNING: 18 U.S.C. 1001 provides, among other things, that whoever knowingly and willfully makes or uses a document or writing containing any false, fictitious, or fraudulent statement or entry, in any matter within the jurisdiction of any department or agency of the United States, shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

OWNER ______________________

By ______________________

______________________ *(Official Title)*

Date ______________________ 19___

United States of America
Secretary of Housing and Urban Development

By ______________________

______________________ *(Official Title)*

Date ______________________ 19___

[illegible] project is to be completed and accepted in stages, execution of the Contract with respect to the several stages appears on the following pages [illegible] attached.]

The effective date of this contract is June 1,1979 ... Park Property Associates

June 1, 1979 ... By ______

(Official Title)

Date ______, 19__.

United States of America
Secretary of Housing and Urban Development

By ______

Deputy Director, MF Housing Division
(Official Title)

Date 7/20, 79

EXECUTION OF CONTRACT WITH RESPECT TO CONTRACT UNITS COMPLETED AND ACCEPTED IN STAGES
STAGE 2

This Contract is hereby executed with respect to the units described in Exhibit A-2.

CTIVE DATE. The effective date of this Contract is ______, 19__. [Insert date which shall be no earlier than t
e of Government acceptance of the project.]

OWNER ______

By ______

(Official Title)

Date ______, 19__

United States of America
Secretary of Housing and Urban Development

By ______

(Official Title)

Date ______, 19__

EXECUTION OF CONTRACT WITH RESPECT TO CONTRACT UNITS COMPLETED AND ACCEPTED IN STAGES
STAGE 3

is Contract is hereby executed with respect to the units described in Exhibit A-3.

CTIVE DATE. The effective date of this Contract is ______, 19__. [Insert date which shall be no earlier than th
e of Government acceptance of the project.]

OWNER ______

By ______

(Official Title)

Date ______, 19__

United States of America
Secretary of Housing and Urban Development

By ______

(Official Title)

Date ______, 19__

9. Continued .....

B. As anticipated, a resident superintendent will be necessary for this project.

C. Training of the Rental Staff will include attending a discussion with persons who are expert administering fair housing laws preferably with a HUD staff member. Personnel will be required to attend specially arranged HUD programs dealing with management matters when they are available. The staff will be selected on the basis of their responsiveness and sensitivity to persons that are expected to apply for proposed housing. It will be made clear to both staff and the applicant through distribution of printed circulars how applicants are taken and the nature and length of time that is required for processing the application. Further, it will be made clear to all staff that no discrimination as to location of tenants in the project or use of any portion of the project facility will exist.

10. <u>Solicitation of HUD referrals</u>:

Referrals of possible tenants made by HUD will initially be contacted by direct mail, then telephone contact and followed by personal contact or by a personal interview.

In addition to the above, it will be made very clear to the applicant that they also will be responsible for recruiting members of Hispanic and White families of the area to obtain marketing goals.

11. The applicant agrees to make any changes in a plan covering a multifamily project, which may reasonably be required after initial rent-up to assure continued compliance with Section 200.260 of HUD's Affirmative Fair Housing Marketing Plan.

PARKLEDGE MANAGEMENT CORP.

****** COMMUNITY GROUPS TO BE CONTACTED FOR

****** 28 LAMARTINE TERRACE, YONKERS, NY

Rev. Frank T. Moore
St. Augestines Episcopal Church
81 Locust Hill Ave.

St. Margaret's R.C. Church
76 Locust Hill Avenue

Yonkers Child Care Assn.
156 North Broadway

First Westminister Presbyterian Church
111 North Broadway

Full Gospel Tabernacle
Assembly of God
57 Locust Hill Avenue

Community Bapist Church
156 North Broadway

Messiah Bapist Church
76 Warburton Avenue

# *Memorandum*

U.S. DEPARTMENT OF
HOUSING AND URBAN DEVELOPMENT

DATE: JUNE 4, 1979

IN REPLY REFER TO: 2.3HHA

TO : Benjamin Skurnick, Area Counsel, 2.3G

FROM : Edwin S. Sprenger, Housing Management, 2.3H

SUBJECT: Daily Debt Service Computation

Below is the daily debt service information to be made an exhibit to the Housing Payments Contract for:
LAMARTINE TERRACE (N.Y. 36-0010-003)

DAILY DEBT SERVICE COMPUTATION WORKSHEET

| Bedroom Size (a) | Number of Units (b) | Contract Rent (c) | Total Contract Rent (d) | Contract Rent Percentage (e) | Debt Service by Bdr. Size (f) | Debt Service by Unit (g) | Daily Debt Service (h) |
|---|---|---|---|---|---|---|---|
| 0 | 16 | $415. | 6640. | 15.99% | $32,610.81 | 2038.18 | $5.66 |
| 1 | 30 | $490. | 14,700 | 35.39% | $72,196.14 | 2405.87 | $6.68 |
| 2 | 36 | $561. | 20,196. | 48.62% | 99,158.06 | 2754.39 | $7.65 |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| TOTAL | 82 | | 41,536 | 100.00% | $203,945.01 | | |

Deputy Director

PREVIOUS EDITION IS OBSOLETE

HUD-95 (7-75)

U. S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
SECTION 8 HOUSING ASSISTANCE PAYMENTS PROGRAM
SUBSTANTIAL REHABILITATION

PART II OF THE

# HOUSING ASSISTANCE PAYMENTS CONTRACT

PRIVATE-OWNER OR PHA-OWNER PROJECT

| HAP CONTRACT LIST NUMBER AND DATE: | PROJECT NUMBER: |
|---|---|
| 7473-108 9/23/75 | ~~NY 36-2010-003~~ |

## 2.1 NONDISCRIMINATION IN HOUSING.

a. The Owner shall not in the selection of Families, in the provision of services, or in any other manner, discriminate against any person on the grounds of race, color, creed, religion, sex, or national origin. No person shall be automatically excluded from participation in, or be denied the benefits of, the Housing Assistance Payments Program because of membership in a class such as unmarried mothers, recipients of public assistance, etc.

b. The Owner shall comply with all requirements imposed by Title VIII of the Civil Rights Act of 1968, and any rules and regulations pursuant thereto.

c. The Owner shall comply with all requirements imposed by Title VI of the Civil Rights Act of 1964, Public Law 88-352, 78 Stat. 241; the regulations of the Department of Housing and Urban Development issued thereunder, 24 CFR, Subtitle A, Part 1, Sections 1.1, et seq.; the requirements of said Department pursuant to said regulations; and Executive Order 11063 to the end that, in accordance with that Act, the regulations and requirements of said Department thereunder, and said Executive Order, no person in the United States shall, on the grounds of race, color, creed, religion or national origin, be excluded from participation in, or be denied the benefits of, the Housing Assistance Payments Program, or be otherwise subjected to discrimination. This provision is included pursuant to the regulations of the Department of Housing and Urban Development, 24 CFR, Subtitle A, Part 1, Section 1.1, et seq., issued under Title VI of the said Civil Rights Act of 1964, and the requirements of said Department pursuant to said regulations; and the obligation of the Owner to comply therewith inures to the benefit of the Government and the said Department, either of which shall be entitled to invoke any remedies available by law to redress any breach thereof or to compel compliance therewith by the Owner.

## 2.2 TRAINING, EMPLOYMENT, AND CONTRACTING OPPORTUNITIES FOR BUSINESSES AND LOWER-INCOME PERSONS.[3]

a. The project assisted under this Contract is subject to the requirements of section 3 of the Housing and Urban Development Act of 1968, as amended, 12 U.S.C. 1701u. Section 3 requires that, to the greatest extent feasible, opportunities for training and employment be given lower-income residents of the project area and contracts for work in connection with the project be awarded to business concerns which are located in, or owned in substantial part by persons residing in, the area of the project.

b. Notwithstanding any other provision of this Contract, the Owner shall carry out the provisions of said section 3 and the regulations issued pursuant thereto by the Secretary of Housing and Urban Development set forth in 24 CFR, Part 135 (published in 38 Federal Register 29220, October 23, 1973), and all applicable rules and orders of the Secretary issued thereunder prior to the execution of this Contract. The requirements of said regulations include, but are not limited to, development and implementation of an affirmative action plan for utilizing business concerns located within, or owned in substantial part by persons residing in, the area of the project; the making of a good faith effort, as defined by the regulations, to provide training, employment, and business opportunities required by section 3; and incorporation of the "section 3 clause" specified by section 135.20(b) of the regulations and paragraph d of this Section in all contracts for work in connection with the project. The Owner certifies and agrees that he is under no contractual or other disability which would prevent him from complying with these requirements.

c. Compliance with the provisions of section 3, the regulations set forth in 24 CFR, Part 135, and all applicable rules and orders of the Secretary issued thereunder prior to approval by the Government of the application for this Contract, shall be a condition of the Federal financial assistance provided to the project, binding upon the Owner, his successors and assigns. Failure to fulfill these requirements shall subject the Owner, his contractors and subcontractors, his successors and assigns to the sanction specified by this Contract, and to such sanctions as are specified by 24 CFR, Section 135.135.

d. The Owner shall incorporate or cause to be incorporated into any contract or subcontract for work pursuant to this Contract in excess of $50,000 cost, the following clause:

"EMPLOYMENT OF PROJECT AREA RESIDENTS AND CONTRACTORS

"A. The work to be performed under this Contract is on a project assisted under a program providing direct Federal financial assistance from the Department of Housing and Urban Development and is subject to the requirements of section 3 of the Housing and Urban Development Act of 1968, as amended, 12 U.S.C. 1701u. Section 3 requires that, to the greatest extent feasible, opportunities for training and employment be given lower-income residents of the project area and contracts for work in connection with the project be awarded to business concerns which are located in, or owned in substantial part by persons residing in, the area of the project.

"B. The parties to this Contract will comply with the provisions of said section 3 and the regulations issued pursuant thereto by the Secretary of Housing and Urban Development set forth in 24 CFR, Part 135, and all applicable rules and orders of the Department issued thereunder prior to the execution of this Contract. The parties to this Contract certify and agree that they are under no contractual or other disability which would prevent them from complying with these requirements.

"C. The contractor will send to each labor organization or representative of workers with which he has a collective bargaining agreement or other contract or understanding, if any, a notice advising the said labor organization or workers' representative of his commitments under this section 3 clause and shall post copies of the notice in conspicuous places available to employees and applicants for employment or training.

"D. The contractor will include this section 3 clause in every subcontract for work in connection with the project and will, at the direction of the applicant for or recipient of Federal financial assistance, take appropriate action pursuant to the subcontract upon a finding that the subcontractor is in violation of regulations issued by the Secretary of Housing and Urban Development, 24 CFR, Part 135. The contractor will not subcontract with any subcontractor where it has notice or knowledge that the latter has been found in violation of regulations under 24 CFR, Part 135, and will not let any subcontract unless the subcontractor has first provided it with a preliminary statement of ability to comply with the requirements of these regulations.

"E. Compliance with the provisions of section 3, the regulations set forth in 24 CFR, Part 135, and all applicable rules and orders of the Department issued thereunder prior to the execution of the Contract, shall be a condition of the Federal financial assistance provided to the project, binding upon the applicant or recipient for such assistance, its successors, and assigns. Failure to fulfill these requirements shall subject the applicant or recipient, its contractors and subcontractors, its successors, and assigns to those sanctions specified by the grant or loan agreement or contract through which Federal assistance is provided, and to such sanctions as are specified by 24 CFR, Section 135.135."

3/ Strike this Section if the Contract Rents on the effective date of this Contract, over the maximum term of this Contract, are $500,000 or less.

c. The Owner agrees that he will be bound by the above Employment of Project Area Residents and Contractors clause with respect to his own employment practices when he participates in federally assisted work.

2.3 COOPERATION IN EQUAL OPPORTUNITY COMPLIANCE REVIEWS. The Owner shall cooperate with the Government in the conducting of compliance reviews and complaint investigations pursuant to all applicable civil rights statutes, Executive Orders, and rules and regulations pursuant thereto.

2.4 FLOOD INSURANCE. If the project is located in an area that has been identified by the Secretary of Housing and Urban Development as an area having special flood hazards and if the sale of flood insurance has been made available under the National Flood Insurance Act of 1968, the Owner agrees that the project will be covered, during its anticipated economic or useful life, by flood insurance in an amount at least equal to its development or project cost (less estimated land cost) or to the maximum limit of coverage made available with respect to the particular type of property under the National Flood Insurance Act of 1968, whichever is less.

2.5 CLEAN AIR ACT AND FEDERAL WATER POLLUTION CONTROL ACT.[1] In compliance with regulations issued by the Environmental Protection Agency ("EPA"), 40 CFR, Part 15, 39 F.R. 11099, pursuant to the Clean Air Act, as amended ("Air Act"), 42 U.S.C. 1857, et seq., the Federal Water Pollution Control Act, as amended ("Water Act"), 33 U.S.C. 1251, et seq., and Executive Order 11738, the Owner agrees that:

a. Any facility to be utilized in the performance of this Contract or any subcontract shall not be a facility listed on the EPA List of Violating Facilities pursuant to section 15.20 of said regulations;

b. He will promptly notify the Department of Housing and Urban Development field office director of the receipt of any communication from the EPA indicating that a facility to be utilized for the Contract is under consideration to be listed on the EPA List of Violating Facilities;

c. He will comply with all the requirements of section 114 of the Air Act and section 308 of the Water Act relating to inspection, monitoring, entry, reports, and information, as well as all other requirements specified in section 114 and section 308 of the Air Act and the Water Act, respectively, and all regulations and guidelines issued thereunder; and

d. He will include or cause to be included the provisions of this Section in every nonexempt subcontract, and that he will take such action as the Government may direct as a means of enforcing such provisions.

2.6 REPORTS AND ACCESS TO PREMISES AND RECORDS.

a. The Owner shall furnish such information and reports pertinent to the Contract as reasonably may be required from time to time by the Government.

b. The Owner shall permit the Government or any of its duly authorized representatives to have access to the premises and, for the purpose of audit and examination, to have access to any books, documents, papers and records of the Owner that are pertinent to compliance with this Contract, including the verification of information pertinent to the housing assistance payments.

2.7 DEFAULT BY THE OWNER UNDER CONTRACT.

a. A default by the Owner under this Contract shall result if:

(1) The Owner has violated or failed to comply with any provision of, or obligation under, this Contract or of any Lease; or

(2) The Owner has asserted or demonstrated an intention not to perform some or all of his obligations under this Contract or under any Lease.

b. Upon a determination by the Government that a default has occurred, the Government shall notify the Owner of (1) the nature of the default, (2) the actions required to be taken and the remedies to be applied on account of the default (including actions by the Owner to cure the default, and, where appropriate, abatement of housing assistance payments in whole or in part and recovery of overpayments), and (3) the time within which the Owner shall respond with a showing that he has taken all the actions required of him. If the Owner fails to respond or take action to the satisfaction of the Government, the Government shall have the right to terminate this Contract in whole or in part or to take other corrective action to achieve compliance.

c. The availability of any remedy under this Contract shall not preclude the exercise of any other remedy available under this Contract or under any provisions of law, nor shall any action taken in the exercise of any remedy be deemed a waiver of any other rights or remedies. Failure to exercise any right or remedy shall not constitute a waiver of the right to exercise that or any other right or remedy at any time.

2.8 DISPUTES.

a. Except as otherwise provided herein, any dispute concerning a question of fact arising under this Contract which is not disposed of by agreement between the Department of Housing and Urban Development field office and the Owner may be submitted by the Owner to the Secretary of Housing and Urban Development. The decision of the Secretary or duly authorized representative for the resolution of such disputes shall be final and conclusive, unless determined by a court of competent jurisdiction to have been fraudulent, or capricious, or arbitrary, or so grossly erroneous as necessarily to imply bad faith, or not supported by substantial evidence. In connection with any proceeding under this Section, the Owner shall be afforded an opportunity to be heard and to offer evidence in support of his position.

b. This Section does not preclude consideration of questions of law in connection with the decision rendered under paragraph a of this Section: Provided, however, that nothing herein shall be construed as making final the decision of any administrative official, representative, or board, on a question of law.

2.9 INTEREST OF MEMBERS, OFFICERS, OR EMPLOYEES OF PHA, MEMBERS OF LOCAL GOVERNING BODY OR OTHER PUBLIC OFFICIALS. No member, officer, or employee of the PHA, no member of the governing body of the locality (city and county) in which the project is situated, no member of the governing body of the locality in which the PHA was activated, and no other public official of such locality or localities who exercises any functions or responsibilities with respect to the project, during his tenure or for one year thereafter, shall have any interest, direct or indirect, in this Contract or in any proceeds or benefits arising therefrom.

2.10 INTEREST OF MEMBER OF OR DELEGATE TO CONGRESS. No member of or delegate to the Congress of the United States of America or resident commissioner shall be admitted to any share or part of this Contract or to any benefits which may arise therefrom.

[1] Strike this Section if the Contract Rents on the effective date of this Contract, over the maximum total term of this Contract, are $100,000 or less.

HUD-52522B (11-75)

2.11 ASSIGNMENT, SALE, OR FORECLOSURE.

a. The Owner agrees that he has not made and will not make any sale, assignment, or conveyance or transfer in any other form, of this Contract or the project or any part thereof or any of his interest therein, without the prior consent of the Government; Provided, however, that in the case of an assignment as security for the purpose of obtaining financing of the project, the Government shall consent in writing if the terms of the financing have been approved by the Government.

b. The Owner agrees to notify the Government promptly of any proposed action covered by paragraph a of this Section. The Owner further agrees to request the written consent of the Government in regard thereto.

c. (1) A transfer by the Owner, in whole or in part, or a transfer by a party having a substantial interest in said Owner, or transfers by more than one party of interests aggregating a substantial interest in said Owner, or any other similarly significant change in the ownership of interests in the Owner, or in the relative distribution thereof, or with respect to the parties in control of the Owner or the degree thereof, by any other method or means (e.g., increased capitalization, merger with another corporation or other entity, corporate or other amendments, issuance of new or additional ownership interests or reclassification of ownership interests or otherwise) shall be deemed an assignment, conveyance, or transfer for purposes of this Section 2.11. An assignment by the Owner to a limited partnership, in which no limited partner has a 25 percent or more interest and of which the Owner is the sole general partner, shall not be considered an assignment, conveyance, or transfer.

(2) The term "substantial interest" means the interest of any general partner, any limited partner having a 25 percent or more interest in the organization, any corporate officer or director, and any stockholder having a 10 percent or more interest in the organization.

(3) The Owner and the party signing this Contract on behalf of said Owner, represent that they have the authority of all of the parties having ownership interests in the Owner to agree to this provision on their behalf and to bind them with respect thereto.

d. In the event of foreclosure, including foreclosure by the Government, and in the event of assignment or sale agreed to by the Government or made to the Government, housing assistance payments shall continue in accordance with the terms of the Contract.

[If the project is subject to 24 CFR, Section 881.125, paragraph d above shall be stricken and the following shall be used instead:

e. In the event of foreclosure, or assignment or sale to the financing agency in lieu of foreclosure, or in the event of assignment or sale agreed to by the financing agency and approved by the Government (which approval shall not be unreasonably delayed or withheld), housing assistance payments shall continue in accordance with the terms of the Contract.]

SUBSTANTIAL REHABILITATION
PART I OF THE
# HOUSING ASSISTANCE PAYMENTS CONTRACT
PRIVATE-OWNED OR PHA-OWNED PROJECT

| CONTRACT LIST NUMBER AND DATE: 9/29/82 | PROJECT NUMBER: NY36-H110-050 |
|---|---|
| NY80-739 NY 81-441 8/4/81 (Amended) | |

is Housing Assistance Payments Contract ("Contract") is entered into by and between the United States of America acting through the Department of Housing and Urban Development ("Government"), and St. Johns Associates ("Owner"), pursuant to the United States Housing Act of 1937 ("Act"), 42 U.S.C. 1437, et seq., and the Department of Housing and Urban Development Act, 42 [illegible] et seq.

parties hereto agree as follows:

SIGNIFICANT DATES AND OTHER ITEMS; CONTENTS OF CONTRACT.

Effective Date of Contract. The effective date of this Contract is SEE STAGING ATTACHED, 19__. [This date shall be no earlier than the date of Government acceptance of the project.]

~~Term of Contract Where Relative Cost of Rehabilitation is Less Than 15 Percent of Value. The term of this Contract for any unit (see Section 1.4a, Alternative 1) shall be ______ years [not to exceed five years], beginning with the effective date of this Contract for each unit.~~

Term of Contract Where Relative Cost of Rehabilitation Is 15 Percent or More of Value.

~~(1) Initial Term. The initial term of this Contract for any unit (see Section 1.4a, Alternative 2) shall be ______ years [not to exceed five years], beginning with the effective date of this Contract for each unit.~~

~~(2) Number and Length of Optional Additional Terms. The number and length of optional additional terms (see Section 1.4b) shall be ______ terms of ______ years each [not to exceed five years each].~~

(3) Maximum Total Term. The maximum total term of this Contract for any unit, including all renewals (see Section 1.4c), shall be 20 years. [Insert number as authorized by the Government pursuant to 24 CFR, Section 881.109, but in no event more than 30 years, or, in the case of a project owned by, or financed by a loan or a loan guarantee from, a State or local agency, the number, not to exceed 40, which will provide a term ending with the scheduled maturity date for the last payment under such financing.]

Fiscal Year. The ending date of each Fiscal Year (see Section 1.4b) shall be Dec. 31 [Insert March 31, June 30, September 30, or December 31, as determined by the Government].

Maximum Housing Assistance Commitment. The maximum amount of the commitment for housing assistance payments under this Contract (see Section 1.5c) is $1,581,804: annum.

Minimum Percentage of Occupancy by Very Low-Income Families. In the initial renting of the Contract Units, the Owner shall lease at least 30 percent [insert 30, or lower number if authorized by the Government in accordance with 24 CFR, Section 881.117] to Very Low-Income Families (determined in accordance with the Government-established schedules and criteria) and shall thereafter exercise his best efforts to achieve and maintain at least 30 percent occupancy of the Contract Units by Very Low-Income Families as determined in accordance with such schedules and criteria.

Contents of Contract. This Contract consists of Part I, Part II, and the following exhibits:

Exhibit A: The schedule showing the number of units by size ("Contract Units") and their applicable rents ("Contract Rents");

Exhibit B: The project description;

Exhibit C: The statement of services, maintenance and utilities to be provided by Owner;

Exhibit D: The Affirmative Fair Housing Marketing Plan, if applicable; and

Additional exhibits: [Specify additional exhibits, if any. If none, insert "None."]

Exhibit E: Daily Debt Service Computation

This Contract, including said exhibits, comprises the entire agreement between the parties hereto with respect to the matters contained herein, and neither party is bound by any representations or agreements of any kind except as contained herein or except agreements entered into in writing which are not inconsistent with this Contract.

OWNER'S WARRANTIES.

Legal Capacity. The Owner warrants that he has the legal right to execute this Contract and to lease dwelling units covered by this Contract.

Completion of Work. The Owner warrants that the project as described in Exhibit B is in good and tenantable condition and that the project has been completed in accordance with the terms and conditions of the Agreement to Enter into Housing Assistance Payments Contract ("Agreement") or will be completed in accordance with the terms on which the project was accepted. The Owner further warrants that he will remedy any defects or omissions covered by this warranty if called to his attention within 12 months of the effective date of this Contract. The Owner and the Government agree that the continuation of this Contract shall be subject to the conditions set forth in Section 1.4f of the Agreement.

LEASING TO BE ELIGIBLE; GOVERNMENT ASSISTANCE.

Families To Be Housed. The Contract Units are to be leased by the Owner to eligible Lower-Income Families [illegible]

RIDER TO SECTION 1.6 OF HOUSING ASSISTANCE PAYMENTS CONTRACT

DEBT SERVICE PAYMENTS

(1) If a unit continues to be vacant after the 60 day period specified in paragraph b or c of this Section, the Owner may submit a claim to receive additional housing assistance payments on a semiannual basis with respect to such a vacant unit in an amount equal to the principal and interest payments required to amortize the portion of the debt attributable to that unit for the period of the vacancy, whether such vacancy commenced during rent-up or after rent-up.

(2) Additional Payments under this paragraph for any unit shall not be for more than 12 months for any vacancy period, and shall be made only if:

(i) The unit was in decent, safe and sanitary condition during the vacancy period for which payments are claimed.

(ii) The Owner has taken and is continuing to take the actions specified in paragraphs b(1)(2) and (3) or paragraphs c(1)(i) and (ii) and c(2) of this Section, as appropriate.

(iii) The Owner has demonstrated in connection with the semiannual claim on a form and in accordance with the standards prescribed by HUD with respect to the period of vacancy, that the project is not providing the Owner with revenues at least equal to the project costs incurred by the Owner, and that the amount of the payments requested is not in excess of that portion of the deficiency which is attributable to the vacant units for the period of the vacancies.

(iv) The Owner has submitted, in connection with the semiannual claim, a statement with relevant supporting evidence that there is a reasonable prospect that the project can achieve financial soundness within a reasonable time. The statement shall indicate the causes of the deficiency; the corrective steps that have been and will be taken; and the time by which it is expected that the project revenues will at least equal project costs without the additional payments provided under this paragraph.

(3) HUD may deny any application for additional payments or suspend or terminate payments if it determines, based on the Owner's statement and other evidence, that there is not a reasonable prospect that the project can achieve financial soundness within a reasonable time.

(2) If there is an Allowance for Utilities and Other Services and if such Allowance exceeds the Gross Family Contribution, the Owner shall pay the Family the amount of such excess on behalf of the Government upon receipt of funds from the Government for th. purpose.

TERM OF CONTRACT; FISCAL YEAR.

a. Term of Contract.

[Alternative provisions—Incorporate alternative 1 or 2]

Alternative 1 — Where HUD has determined that the Cost of Rehabilitation Is Less Than 15 Percent of Value.

The term of this Contract for any unit shall be as stated in Section 1.1b, with no option for renewal in either party. If the proje is completed in stages, this term shall be separately related to the units in each stage; Provided, however, that the total Contract term for all the stages, beginning with the effective date of the Contract with respect to the first stage, shall not exceed said Contra term plus two years.

Alternative 2 — Where HUD Has Determined that the Cost of Rehabilitation Is 15 Percent or More of Value.

The initial term of this Contract for any unit shall be as stated in Section 1.1c(1). This Contract may be renewed at the sole opt the Owner, for the number and length of additional terms stated in Section 1.1c(2), Provided that the total Contract term for any or all renewals, shall not exceed the number of years stated in Section 1.1c(3). Renewal shall be automatic unless the Owner noti Government, no later than 60 days prior to the expiration of the current term, of his intention not to renew. If the project is co in stages, the dates for the initial term and renewal terms shall be separately related to the units in each stage; Provided, ho the total Contract term for all the stages, beginning with the effective date of the Contract with respect to the first stage, sha exceed the total Contract term stated in Section 1.1c(3), plus two years. In any case where the project is owned by, or financed or loan guarantee from, a State or local agency, the housing assistance payments pursuant to this Contract with respect to any dw shall be payable over a period not to exceed 40 years.

b. Fiscal Year. The Fiscal Year for the project shall be the 12-month period ending on the date stated in Section 1.1d; Provided, however that the first Fiscal Year for the project shall be the period beginning with the effective date of the Contract and ending on the last day said established Fiscal Year which is not less than 12 months after such effective date. If the first Fiscal Year exceeds 12 months, the mum total annual housing assistance payment in Section 1.5a may be adjusted by the addition of the pro rata amount applicable to th period of operation in excess of 12 months.

MAXIMUM HOUSING ASSISTANCE COMMITMENT; PROJECT ACCOUNT.

a. Maximum Housing Assistance Commitment. Notwithstanding any other provisions of this Contract *[other than paragraph b of this Se* or any provisions of any other contract between the Government and the Owner, the Government shall not be obligated to make and not make any housing assistance payments under this Contract in excess of the amount per annum stated in Section 1.1e; Provided, however, that this amount shall be reduced commensurately with any reduction in the number of Contract Units or in the Contract Re or pursuant to any other provisions of this Contract.

b. Project Account. In order to assure that housing assistance payments will be increased on a timely basis to cover increases in Contract or decreases in Family Incomes:

(1) A Project Account shall be established and maintained, in an amount as determined by the Government consistent with its resp bilities under section 8(c)(6) of the Act, out of amounts by which the maximum Contract commitment per year exceeds amou paid under the Contract for any Fiscal Year. This account shall be established and maintained by the Government as a specific identified and segregated account. To the extent funds are available in said account, the maximum total annual housing assista payments for any Fiscal Year may exceed the maximum amount stated in paragraph a of this Section to cover increases in Con Rents or decreases in Family Incomes *(see Section 1.8)*. Any amount remaining in said account after payment of the last housi assistance payment with respect to the project shall be applied by the Government in accordance with law.

(2) Whenever the Government approved estimate of the required Annual Contribution exceeds the maximum Contract commitment then in effect, and would cause the amount in the Project Account to be less than an amount equal to 40 percent of such maxi Contract commitment, the Government shall, within a reasonable period of time, take such additional steps authorized by secti 8(c)(6) of the Act as may be necessary to carry out this assurance, including *[as provided in that section of the Act]* "the reserv of annual contributions authority for the purpose of amending housing assistance contracts or the allocation of a portion of ne authorizations for the purpose of amending housing assistance contracts."

See Rider 1

HOUSING ASSISTANCE PAYMENTS TO OWNERS.

a. General.

(1) Housing assistance payments shall be paid to the Owner for units under lease by Families in accordance with the Contract. The housing assistance payment will cover the difference between the Contract Rent and that portion of said rent payable by the F as determined in accordance with the Government-established schedules and criteria.

(2) The amount of housing assistance payment payable on behalf of a Family and the amount of rent payable by such Family shal subject to change by reason of changes in Family Income, Family composition, or extent of exceptional medical or other unus expenses, in accordance with the Government-established schedules and criteria; or by reason of adjustment by the Governmer any applicable Allowance for Utilities and Other Services. Any such change shall be effective as of the date stated in a notifica of such change to the Family.

b. Vacancies During Rent-up. If a Contract Unit is not leased as of the effective date of the Contract, the Owner shall be entitled to hou sistance payments in the amount of 80 percent of the Contract Rent for the unit for a vacancy period not exceeding 60 days from t ... the Owner (1) commenced marketing and otherwise complied with Section 1.5b of t

If the Owner evicts a Family, he shall not be entitled to any payment under paragraph e(1) of this Section unless the request for
(2) such payment is supported by a certification that (i) he gave such Family a written notice of the proposed eviction stating the
grounds and advising the Family that it had 10 days within which to present its objections to the Owner in writing or in person and
(ii) the proposed eviction was not in violation of the Lease or the Contract or any applicable law.

Limitation on Payments for Vacant Units. The Owner shall not be entitled to housing assistance payments with respect to vacant units
under this Section to the extent he is entitled to payments from other sources (e.g., payments for losses of rental income incurred for hold-
ing units vacant for relocatees pursuant to Title I of the Housing and Community Development Act of 1974 or payments under Section 1.9b
of this Contract).

Government Not Obligated for Family Rent. The Government has not assumed any obligation for the amount of rent payable by any
Family or the satisfaction of any claim by the Owner against any Family other than in accordance with Section 1.9b of this Contract. The
financial obligation of the Government is limited to making housing assistance payments on behalf of Families in accordance with this
Contract.

Owner's Monthly Requests for Payments.

(1) The Owner shall submit monthly requests to the Government for housing assistance payments. Each such request shall set forth:
(i) the name of each Family and the address and/or number of the unit leased by the Family; (ii) the address and/or the number
of units, if any, not leased to Families for which the Owner is claiming payments; (iii) the Contract Rent as set forth in Exhibit A
for each unit for which the Owner is claiming payments; (iv) the amount of rent payable by the Family leasing the unit [or, where
applicable, the amount to be paid the Family in accordance with Section 1.3b(2)]; and (v) the total amount of housing assistance
payments requested by the Owner.

(2) Each of the Owner's monthly requests shall contain a certification by him that to the best of his knowledge and belief (i) the
dwelling units are in Decent, Safe, and Sanitary condition, (ii) all the other facts and data on which the request for funds is based
are true and correct, (iii) the amount requested has been calculated in accordance with the provisions of this Contract and is pay-
able under the Contract, and (iv) none of the amount claimed has been previously claimed or paid.

(3) If the Owner has received an excessive payment, the Government, in addition to any other rights to recovery, may deduct the
amount from any subsequent payment or payments.

(4) The Owner's monthly requests for housing assistance payments shall be made subject to penalty under 18 U.S.C. 1001, which
provides, among other things, that whoever knowingly and willfully makes or uses a document or writing containing any false,
fictitious, or fraudulent statement or entry, in any matter within the jurisdiction of any department or agency of the United
States, shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

Recoupment of Savings in Financing Cost.

(1) In the event that Interim financing is continued after the first year of the term of the Contract and the debt service of the interim financing
for any period of three months, after such first year, is less than the anticipated debt service under the permanent financing on which the
Contract Rents were based, an amount reflecting the savings in financing cost, computed in accordance with paragraph g(2) of this
Section, shall be credited by the Government to the Project Account, and withheld from housing assistance payments to the Owner. If
during the course of the same year there is any period of three months in which the debt service is greater than the anticipated debt service
under the permanent financing, an adjustment shall be made so that only the net amount of savings in financing cost for the year is
credited by the Government to the Project Account and withheld from housing assistance payments to the Owner as aforesaid (no
increased payments shall be made to the Owner on account of any net excess for the year of actual interim debt service over the
anticipated debt service under the permanent financing). Nothing in this paragraph g shall be construed as requiring a reduction in the
Contract Rents or precluding adjustments of Contract Rents in accordance with Section 1.8.

(2) The computation and recoupment under this paragraph g may be made on an annual or on a quarterly or other periodic basis, but
in any event no later than as of the end of each Fiscal Year: Provided, however, that if recoupment is to be made less often than
quarterly, the amounts of recoupment shall be computed on at least a quarterly basis and the funds shall be deposited in a special account
from which withdrawals may be made only with the authorization of the Government. The manner of computing the amount
of recoupment shall be as follows:

(i) Determine the amount by which the interest cost for the debt service for the period in question is less than the anticipated debt
service under the permanent financing on which the Contract Rents were based;

(ii) Determine what percentage the amount found under paragraph g(2)(i) of this Section is of the aggregate Contract Rents for
all Contract Units for the period in question;

(iii) Apply the percentage found in paragraph g(2)(ii) of this Section to the aggregate Contract Rents for those Contract Units
which are included in the Owner's claim(s) for housing assistance payments for the period in question; and

(iv) The amount found in paragraph g(2)(iii) of this Section shall be credited to the Project Account and withheld from the next
housing assistance payment or payments to the Owner.

MAINTENANCE, OPERATION AND INSPECTION.

Maintenance and Operation. The Owner agrees (1) to maintain and operate the Contract Units and related facilities so as to provide Decent,
Safe, and Sanitary housing, and (2) to provide all the services, maintenance and utilities set forth in Exhibit C. If the Government determines
that the Owner is not meeting one or more of these obligations, the Government shall have the right, in addition to its other rights and remedies
under this Contract, to abate housing assistance payments in whole or in part.

Inspection.

(1) Prior to occupancy of any unit by a Family, the Owner and the Family shall inspect the unit and both shall certify, on forms pre-
scribed by the Government, that they have inspected the unit and have determined it to be Decent, Safe, and Sanitary in accordance
with the criteria provided in the prescribed forms. Copies of these reports shall be kept on file by the Owner for at least three years.

(2) The Government shall inspect or cause to be inspected each Contract Unit and related facilities at least annually and at such other
times (including prior to initial occupancy and rerenting of any unit) as may be necessary to assure that the Owner is meeting his
obligation to maintain the units in Decent, Safe, and Sanitary condition and to provide the agreed upon utilities and other services.
The Government shall take into account complaints by occupants and any other information coming to its attention in scheduling

any of its rights or remedies under the Contract, including abatement of housing assistance payments, even if the Family continues to occupy the unit. If, however, the Family wishes to be rehoused in another dwelling unit with section 8 assistance and the Government does not have other section 8 funds for such purposes, the Government may use the abated housing assistance payments for the purpose of rehousing the Family in another dwelling unit. Where this is done, the Owner shall be notified that he will be entitled to resumption of housing assistance payments for the vacated dwelling unit if (1) the unit is restored to Decent, Safe, and Sanitary condition, (2) the Family is willing to and does move back into the restored unit, and (3) a deduction is made for the expenses incurred by the Family for both moves.

d. Notification of Abatement. Any abatement of housing assistance payments shall be effective as provided in written notification to the Owner. The Government shall promptly notify the Family of any such abatement.

e. Overcrowded and Underoccupied Units. If the Government determines that a Contract Unit is not Decent, Safe, and Sanitary by reason of increase in Family size, or that a Contract Unit is larger than appropriate for the size of the Family in occupancy, housing assistance payments with respect to such unit will not be abated, unless the Owner fails to offer the Family a suitable unit as soon as one becomes vacant and ready for occupancy. In the case of an overcrowded unit, if the Owner does not have any suitable units or if no vacancy of a suitable unit occurs within a reasonable time, the Government will assist the Family in finding a suitable dwelling unit and require the Family to move to such a unit as soon as possible. The Owner may receive housing assistance payments for the vacated unit if he complies with the requirements of Section 1.6c(1).

RENT ADJUSTMENTS.

a. Funding of Adjustments. Housing assistance payments will be made in increased amounts commensurate with Contract Rent adjustments under this Section, up to the maximum amount authorized under Section 1.5a of this Contract.

b. Automatic Annual Adjustments.

(1) Automatic Annual Adjustment Factors will be determined by the Government at least annually; interim revisions may be made as market conditions warrant. Such Factors and the basis for their determination will be published in the Federal Register. These published Factors will be reduced appropriately by the Government where utilities are paid directly by the Families.

(2) On each anniversary date of the Contract, the Contract Rents shall be adjusted by applying the applicable Automatic Annual Adjustment Factor most recently published by the Government. Contract Rents may be adjusted upward or downward, as may be appropriate; however, in no case shall the adjusted Contract Rents be less than the Contract Rents on the effective date of the Contract.

c. Special Additional Adjustments. Special additional adjustments shall be granted, when approved by the Government, to reflect increases in the actual and necessary expenses of owning and maintaining the Contract Units which have resulted from substantial general increases in real property taxes, utility rates, or similar costs (i.e., assessments, and utilities not covered by regulated rates), but only if and to the extent that the Owner clearly demonstrates that such general increases have caused increases in the Owner's operating costs which are not adequately compensated for by automatic annual adjustments. The Owner shall submit to the Government financial statements which clearly support the increase.

d. Overall Limitation. Notwithstanding any other provisions of this Contract, adjustments as provided in this Section shall not result in material differences between the rents charged for assisted and comparable unassisted units, as determined by the Government; provided, that this limitation shall not be construed to prohibit differences in rents between assisted and comparable unassisted units to the extent that such differences may have existed with respect to the initial Contract Rents.

e. Incorporation of Rent Adjustment. Any adjustment in Contract Rents shall be incorporated into Exhibit A by a dated addendum to the exhibit establishing the effective date of the adjustment.

f. Adjustment to Reflect Actual Cost of Permanent Financing. This paragraph f shall apply if the project is not permanently financed until after the effective date of the Contract. After the project is permanently financed, the Financing Agency shall submit a certification to the Government as to the actual financing terms. If the actual debt service under the permanent financing is lower than the anticipated debt service on which the Contract Rents were based, the Contract Rents currently in effect shall be reduced commensurately, and the amount of the savings shall be credited to the Project Account. The maximum Contract commitment shall not be reduced. If the actual debt service is higher, the Contract Rents shall not be increased.

MARKETING AND LEASING OF UNITS.

a. Compliance with Equal Opportunity. Marketing of units and selection of Families by the Owner shall be in accordance with the Owner's Government-approved Affirmative Fair Housing Marketing Plan, shown as Exhibit D, and with all regulations relating to fair housing advertising.

b. Security and Utility Deposits.

The Owner may require Families to pay a security deposit in an amount equal to one month's Gross Family Contribution. If a Family vacates its unit, the Owner, subject to State and local law, may utilize the deposit as reimbursement for any unpaid rent or other amount owed under the Lease. If the Family has provided a security deposit, and it is insufficient for such reimbursement, the Owner may claim reimbursement from HUD, not to exceed an amount equal to the remainder of one month's Contract Rent. Any reimbursement under this Section shall be applied first toward any unpaid rent. If a Family vacates the unit owing no rent or other amount under the Lease or if the amount owed is less than the amount of the security deposit, the Owner shall refund the full amount or the unused balance, as the case may be, to the Family.

In those jurisdictions where interest is payable by the Owner on security deposits, the refunded amount shall include the amount of interest payable. All security deposit funds shall be deposited by the Owner in a segregated bank account, and the balance of this account, at all times, shall be equal to the total amount collected from tenants then in occupancy, plus any accrued interest. The Owner shall comply with all State and local laws regarding interest payments on security deposits.

*of Elderly Families]*, and appropriate redeterminations shall be made by the Owner of the amount of Family contribution and the amount of housing assistance payment, all in accordance with schedules and criteria established by the Government. In connection with the reexamination, the Owner shall determine what percentage of Families in occupancy are Very Low-Income Families. If there are fewer than 30 percent Very Low-Income Families in occupancy, the Owner shall report the fact to the Government and shall adopt changes in his admission policies to achieve, as soon as possible, at least 30 percent occupancy by such Families. [illegible]

Rent Redetermination after Adjustment in Allowance for Utilities and Other Services. In the event that the [illegible] the Contract Units, the Rent determination making an adjustment in the Allowance for Utilities and Other Services applicable to any of the Contract Units, the Owner shall promptly make a corresponding adjustment in the amount of rent to be paid by the affected Families and the amount of housing assistance payments.

Processing of Applications and Complaints. The Owner shall process applications for admission, notifications to applicants, and complaints by applicants in accordance with applicable Government requirements and shall maintain records and furnish such copies or other information as may be required by the Government.

Government Review; Incorrect Payments. In making housing assistance payments to Owners, the Government will review the Owner's determinations under this Section. If as a result of this review, or other reviews, audits or information received by the Government at any time, it is determined that the Owner has received improper or excessive housing assistance payments, the Government shall have the right to deduct the amount of such overpayments from any amounts otherwise due the Owner, or otherwise effect recovery thereof.

EMINATION OF TENANCY.

e Owner shall be responsible for termination of tenancies, including evictions. However, conditions for payment of housing assistance payments for any resulting vacancies shall be as set forth in Section 1.6c.

OUCTION OF NUMBER OF CONTRACT UNITS FOR FAILURE TO LEASE TO ELIGIBLE FAMILIES.

After First Year Of Contract. If at any time, beginning six months after the effective date of this Contract, the Owner fails for a continuous period of six months to have at least 80 percent of the Contract Units leased or available for leasing by Families, the Government may on 30 days notice reduce the number of Contract Units to not less than the number of units under lease or available for leasing by Families, plus 10 percent of such number if the number is 10 or more, rounded to the next highest number.

At End of Initial and Each Renewal Term. At the end of the initial term of the Contract and of each renewal term, the Government may, by notice to the Owner, reduce the number of Contract Units to not less than (1) the number of units under lease or available for leasing by Families at that time or (2) the average number of units so leased or available for leasing during the last year, whichever is the greater number, plus 10 percent of such number if the number is 10 or more, rounded to the next highest number.

Restoration of Units. The Government will agree to an amendment of the Contract to provide for subsequent restoration of any reduction made pursuant to paragraph a or b of this Section if the Government determines that the restoration is justified as a result of changes in demand and in the light of the Owner's record of compliance with his obligations under this Contract and if annual contributions contract authority is available; and the Government will take such steps authorized by section 8(c)(6) of the Act as may be necessary to carry out this assurance *(see Section 1.5)*.

WARNING: 18 U.S.C. 1001 provides, among other things, that whoever knowingly and willfully makes or uses a document or writing containing any false, fictitious, or fraudulent statement or entry, in any matter within the jurisdiction of any department or agency of the United States, shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

OWNER St. John I [illegible] ates

By

*(Official Title)*

, 19

Date

United States of America
Secretary of Housing and Urban Development

By

Deputy Director, M/F Hsng. Dev.
*(Official Title)*

, 19

Date

[illegible] ect is to be completed and accepted in stages, execution of the Contract with respect to the several stages appears on the following pages [illegible] act.]

REVISED

Section 8 Staging Schedule

St. Johns Phase I
NY 36 - 4110 - 050 - (Sec 8#)
012 - 57113 - LD - EC (FHANO)

| STAGE I: 76 Units | No of Units | 0 Br | 1 Br | 2 Br | 3 Br |
|---|---|---|---|---|---|
| 1280 St Johns Place | 20 | 0 | 5 | 8 | 7 |
| 1284 St Johns Place | 18 | 0 | 6 | 9 | 3 |
| 1288 St Johns Place | 18 | 0 | 6 | 9 | 3 |
| 1292 St Johns Place | 20 | 0 | 9 | 11 | 0 |
| TOTAL STAGE I | 76 | 0 | 26 | 37 | 13 |
| OCCUPANCY DATE: | June 25, 1982 | | | | |

| STAGE II: 44 Units | No of Units | 0 Br | 1 Br | 2 Br | 3 Br |
|---|---|---|---|---|---|
| 1535 Sterling Place | 16 | 2 | 10 | 0 | 4 |
| 1539 Sterling Place | 28 | 3 | 15 | 10 | - |
| TOTAL STAGE II | 44 | 5 | 25 | 10 | 4 |
| ANTICIPATED OCCUPANCY DATE: | September 15, 1982 | | | | |

| STAGE III: | No of Units | 0 Br | 1 Br | 2 Br | 3 Br |
|---|---|---|---|---|---|
| 1550 Sterling Place | 37 | 5 | 20 | 12 | - |
| 1566 Sterling Place | 34 | 4 | 11 | 19 | - |
| TOTAL STAGE III | 71 | 9 | 31 | 31 | - |
| ANTICIPATED OCCUPANCY DATE: | October 30, 1982 | | | | |

EXECUTION OF CONTRACT WITH RESPECT TO CONTRACT UNITS COMPLETED AND ACCEPTED IN STAGES
STAGE 1

Contract is hereby executed with respect to the units described in Exhibit A-1.

[...]E DATE. The effective date of this Contract is July 1, 1982, 19__. [Insert date which shall be no earlier than the [...]ment acceptance of the project.]

SEE STAGING SHEET ATTACHED

OWNER St.Johns I Associates

By [signature]

MANAGING GENERAL PARTNER
(Official Title)

Date 8/23/82, 19__

United States of America
Secretary of Housing and Urban Development

By [signature]

Director of Housing
(Official Title)

Date 8/25, 1982

EXECUTION OF CONTRACT WITH RESPECT TO CONTRACT UNITS COMPLETED AND ACCEPTED IN STAGES
STAGE 2

Contract is hereby executed with respect to the units described in Exhibit A-2.

DATE. The effective date of this Contract is September 22, 1982, 19__. [Insert date which shall be no earlier than the [...]ment acceptance of the project.]

SEE STAGING SHEET ATTACHED

OWNER St.Johns Associates

By [signature]

(Official Title)

Date 11/30, 1982

United States of America
Secretary of Housing and Urban Development

By [signature]

Director of Housing
(Official Title)

Date 12/1, 1982

EXECUTION OF CONTRACT WITH RESPECT TO CONTRACT UNITS COMPLETED AND ACCEPTED IN STAGES

CONTINUED ON NEXT PAGE

[...] described in Exhibit A-3. [...] 19__ [...] shall be no earlier than the [...]he effective date of this Contract is [...] acceptance of the project.]

OWNER

By

(Official Title)

EXECUTION OF CONTRACT WITH RE[illegible] T TO CONTRACT UNITS COMPLETED AND AC[illegible]PTED IN STAGES
STAGE 3

This Contract is hereby executed with respect to the units described in Exhibit A-1.

[illegible]CTIVE DATE. The effective date of this Contract is December 15, 1982. [Insert date which shall be no earlier than the [illegible] of Government acceptance of the project.]

SEE STAGING SHEET ATTACHED

OWNER ST. JOHNS I ASSOCIATES

By [signature]

(Official Title)

Date 3/1, 19 83

United States of America
Secretary of Housing and Urban Development

By [signature]

DIRECTOR OF HOUSING
(Official Title)

Date 3/1, 19 83

EXECUTION OF CONTRACT WITH RESPECT TO CONTRACT UNITS COMPLETED AND ACCEPTED IN STAGES
[redacted]

This Contract is hereby executed with respect to the units described in Exhibit A-2.

[illegible]TIVE DATE. The effective date of this Contract is ______, 19___. [Insert date which shall be no earlier than the [illegible] Government acceptance of the project.]

OWNER ______

By ______

(Official Title)

Date ______, 19___

United States of America
Secretary of Housing and Urban Development

By ______

(Official Title)

Date ______, 19___

EXECUTION OF CONTRACT WITH RESPECT TO CONTRACT UNITS COMPLETED AND ACCEPTED IN STAGES
[redacted]

Contract is hereby executed with respect to the units described in Exhibit A-3.

[illegible]TIVE DATE. The effective date of this Contract is ______, 19___. [Insert date which shall be no earlier than the Government acceptance of the project.]

OWNER ______

By ______

(Official Title)

Date ______, 19___

United States of America
Secretary of Housing and Urban Development

By ______

(Official Title)

Date ______, 19___

PJR Construction Corporation

122 West End Avenue • Brooklyn, New York 11235 • (212) 332-9859
9070

January 12, 1982.

St. Johns I Assoc.
39 Broadway
New York, N.Y.

Re: St. Johns Phase I
Brooklyn, N.Y.
012-57113-LD-EC

Att: Mr. Joseph Neumann

Gentlemen:

This project, as you are aware, is split into two sites. Site One comprises the buildings on St. Johns Place containing 76 apartments. Site Two comprises the buildings on Sterling Place containing 116 apartments.

We expect the St. Johns Site to be completed prior to the Sterling Place Site. We therefore advise that you plan for occupancy accordingly.

Very truly yours,

PJR CONSTRUCTION CORPORATION
Irving M. Kusnitz

IMK/jm

EXHIBIT A CONTRACT RENTS

| UNIT SIZE | NUMBER OF UNITS | CONTRACT RENT |
|---|---|---|
| 0 BR | 14 | 496 |
| 1 BR | 82 | 598 |
| 2 BR | 78 | 713 |
| 3 BR | 17 | 830 |

EXHIBIT B PROJECT DESCRIPTION

Eight 4 story buildings providing 191 revenue producing units. Buildings are of masonry wall bearing structural system, wood joist floor system and brick exterior finish. and have hot water heat. Apartments are walk-up.

EXHIBIT C STATEMENT OF SERVICES

The owner will provide all management and maintenance services in accordance with HUD's Regulatory Agreement and outstanding Section 8 regulations. Equipment and services included in the contract rents are as follows: gas ranges, electric refrigs, kitchen exhaust fans, shades, community laundry facilities, heat and hot water.

EXHIBIT D- SEE ATTACHED FOR AFFIRMATIVE MARKETING PLAN

DATE:

TO : Benjamin Skurnick; Area Counsel, 2.3C

IN REPLY REFER TO:
2.3HDH

FROM : Evelyn J. Wolff

SUBJECT: Daily Debt Service Computation

Below is the daily debt service information to be made an exhibit to the Housing Payments Contract for:

St. John's Phase I
NY 36 - H116 - 050

DAILY DEBT SERVICE COMPUTATION WORKSHEET

| Bedroom Size (a) | Number of Units (b) | Contract Rent (c) | Total Contract Rent (d) | Contract Rent Percentage (e) | Debt Service by Bdr. Size (f) | Debt Service by Unit (g) | Daily Debt Service (h) |
|---|---|---|---|---|---|---|---|
| 0 BR | 14 | 496 | 6944 | 5.52 | 42,3[illegible] | 3024 | 8.40 |
| 1 BR | 82 | 598 | 49,036 | 39.01 | 299,267 | 3649 | 10.14 |
| 2 BR | 78 | 713 | 55,614 | 44.24 | 339,522 | 4350 | 12.08 |
| 3 BR | 17 | 330 | 14,110 | 11.23 | 86,134 | 5067 | ~~14.[illegible]~~ 14.08 |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| TOTAL | | | 125,704 | 100% | 767,142 | | |

Evelyn J. Wolff
Deputy Director for
Multifamily Housing Division

HUD-35 (7-73)

PREVIOUS EDITION IS OBSOLETE

ST. John's - Phase

"EXHIBIT " D "

The "Owner" agrees that the Affirmative Fair Housing Marketing Plan will be provided by the Department of Housing and Urban Development unless the owner provides such plan as approved by the Department of H.U.D. within the earlier of 60 days or initial closing of the construction loan.

Owner

U. S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

~~SECTION 8 HOUSING ASSISTANCE PAYMENTS PROGRAM~~

SUBSTANTIAL REHABILITATION

PART B OF THE

# HOUSING ASSISTANCE PAYMENTS CONTRACT

PRIVATE-OWNER OR PHA-OWNER PROJECT

| HAP CONTRACT LIST NUMBER AND DATE: | PROJECT NUMBER: |
|---|---|
| NY80-739 9/29/80 | NY36-H110-050 |

7/81-4/71 - 9/4/78 (Canceled)

## 2.1 NONDISCRIMINATION IN HOUSING.

a. The Owner shall not in the selection of Families, in the provision of services, or in any other manner, discriminate against any person on the grounds of race, color, creed, religion, sex, or national origin. No person shall be automatically excluded from participation in, or be denied the benefits of, the Housing Assistance Payments Program because of membership in a class such as unmarried mothers, recipients of public assistance, etc.

b. The Owner shall comply with all requirements imposed by Title VIII of the Civil Rights Act of 1968, and any rules and regulations pursuant thereto.

c. The Owner shall comply with all requirements imposed by Title VI of the Civil Rights Act of 1964, Public Law 88-352, 78 Stat. 241; the regulations of the Department of Housing and Urban Development issued thereunder, 24 CFR, Subtitle A, Part 1, Section 1.1, et seq.; the requirements of said Department pursuant to said regulations; and Executive Order 11063 to the end that, in accordance with that Act, the regulations and requirements of said Department thereunder, and said Executive Order, no person in the United States shall, on the grounds of race, color, creed, religion or national origin, be excluded from participation in, or be denied the benefits of, the Housing Assistance Payments Program, or be otherwise subjected to discrimination. This provision is included pursuant to the regulations of the Department of Housing and Urban Development, 24 CFR, Subtitle A, Part 1, Section 1.1, et seq.; issued under Title VI of the said Civil Rights Act of 1964, and the requirements of said Department pursuant to said regulations; and the obligation of the Owner to comply therewith inures to the benefit of the Government and the said Department, either of which shall be entitled to invoke any remedies available by law to redress any breach thereof or to compel compliance therewith by the Owner.

## 2.2 TRAINING, EMPLOYMENT, AND CONTRACTING OPPORTUNITIES FOR BUSINESSES AND LOWER-INCOME PERSONS.[3]

a. The project assisted under this Contract is subject to the requirements of section 3 of the Housing and Urban Development Act of 1968, as amended, 12 U.S.C. 1701u. Section 3 requires that, to the greatest extent feasible, opportunities for training and employment be given lower-income residents of the project area and contracts for work in connection with the project be awarded to business concerns which are located in, or owned in substantial part by persons residing in, the area of the project.

b. Notwithstanding any other provision of this Contract, the Owner shall carry out the provisions of said section 3 and the regulations issued pursuant thereto by the Secretary of Housing and Urban Development set forth in 24 CFR, Part 135 (published in 38 Federal Register 29720, October 23, 1973), and all applicable rules and orders of the Secretary issued thereunder prior to the execution of this Contract. The requirements of said regulations include, but are not limited to, development and implementation of an affirmative action plan for utilizing business concerns located within, or owned in substantial part by persons residing in, the area of the project; the making of a good faith effort, as defined by the regulations, to provide training, employment, and business opportunities required by section 3; and incorporation of the "section 3 clause" specified by section 135.20(b) of the regulations and paragraph d of this Section in all contracts for work in ~~connection with the project~~. The Owner certifies and agrees that he is under no contractual or other disability which would prevent him from complying with these requirements.

c. Compliance with the provisions of section 3, the regulations set forth in 24 CFR, Part 135, and all applicable rules and orders of the Secretary issued thereunder prior to approval by the Government of the application for this Contract, shall be a condition of the Federal financial ~~assistance provided to the project~~, binding upon the Owner, his successors and assigns. Failure to fulfill these requirements shall subject the Owner, his contractors and subcontractors, his successors and assigns to the sanction specified by this Contract, and to such sanctions as are specified by 24 CFR, Section 135.135.

d. The Owner shall incorporate or cause to be incorporated into any contract or subcontract for work pursuant to this Contract in excess of $10,000 ~~[illegible]~~, the following clause:

"EMPLOYMENT OF PROJECT AREA RESIDENTS AND CONTRACTORS

"A. The work to be performed under this Contract is on a project assisted under a program providing direct Federal financial assistance from the Department of Housing and Urban Development and is subject to the requirements of section 3 of the Housing and Urban Development Act of 1968, as amended, 12 U.S.C. 1701u. Section 3 requires that, to the greatest extent feasible, opportunities for training and employment be given lower-income residents of the project area and contracts for work in connection with the project be awarded to business concerns which are located in, or owned in substantial part by persons residing in, the area of the project.

"B. The parties to this Contract will comply with the provisions of said section 3 and the regulations issued pursuant thereto by the Secretary of Housing and Urban Development set forth in 24 CFR, Part 135, and all applicable rules and orders of the Department issued thereunder prior to the execution of this Contract. The parties to this Contract certify and agree that they are under no contractual or other disability which would prevent them from complying with these requirements.

"C. The contractor will send to each labor organization or representative of workers with which he has a collective bargaining agreement or other contract or understanding, if any, a notice advising the said labor organization or workers' representative of his commitments under this section 3 clause and shall post copies of the notice in conspicuous places available to employees and applicants for employment or training.

"D. The contractor will include this section 3 clause in every subcontract for work in connection with the project and will, at the direction of the applicant for or recipient of Federal financial assistance, take appropriate action pursuant to the subcontract upon a finding that the subcontractor is in violation of regulations issued by the Secretary of Housing and Urban Development, 24 CFR, Part 135. The contractor will not subcontract with any subcontractor where it has notice or knowledge that the latter has been found in violation of regulations under 24 CFR, Part 135, and will not let any subcontract unless the subcontractor has first provided it with a preliminary statement of ability to comply with the requirements of these regulations.

"E. Compliance with the provisions of section 3, the regulations set forth in 24 CFR, Part 135, and all applicable rules and orders of the Department issued thereunder prior to the execution of the Contract, shall be a condition of the Federal financial assistance provided to the project, binding upon the applicant or recipient for such assistance, its successors, and assigns. Failure to fulfill these requirements shall subject the applicant or recipient, its contractors and subcontractors, its successors, and assigns to those sanctions specified by the grant or loan agreement or contract through which Federal assistance is provided, and to such sanctions as are specified by 24 CFR, Section 135.135."

[3] Strike this Section if the Contract Rents on the effective date of this Contract, over the maximum term of this Contract, are $500,000 or less.



HUD-52522B

e. The Owner agrees that he will be bound by the above Employment of Project Area Residents and Contractors clause with respect to his own employment practices when he participates in federally assisted work.

2.3 COOPERATION IN EQUAL OPPORTUNITY COMPLIANCE REVIEWS. The Owner shall cooperate with the Government in the conducting of compliance reviews and complaint investigations pursuant to all applicable civil rights statutes, Executive Orders, and rules and regulations pursuant thereto.

2.4 FLOOD INSURANCE. If the project is located in an area that has been identified by the Secretary of Housing and Urban Development as an area having special flood hazards and if the sale of flood insurance has been made available under the National Flood Insurance Act of 1968, the Owner agrees that the project will be covered, during its anticipated economic or useful life, by flood insurance in an amount at least equal to its development or project cost (less estimated land cost) or to the maximum limit of coverage made available with respect to the particular type of property under the National Flood Insurance Act of 1968, whichever is less.

2.5 CLEAN AIR ACT AND FEDERAL WATER POLLUTION CONTROL ACT.[3] In compliance with regulations issued by the Environmental Protection Agency ("EPA"), 40 CFR, Part 15, 39 F.R. 11099, pursuant to the Clean Air Act, as amended ("Air Act"), 42 U.S.C. 1857, et seq., the Federal Water Pollution Control Act, as amended ("Water Act"), 33 U.S.C. 1251, et seq., and Executive Order 11738, the Owner agrees that:

a. Any facility to be utilized in the performance of this Contract or any subcontract shall not be a facility listed on the EPA List of Violating Facilities pursuant to section 15.20 of said regulations;

b. He will promptly notify the Department of Housing and Urban Development field office director of the receipt of any communication from the EPA indicating that a facility to be utilized for the Contract is under consideration to be listed on the EPA List of Violating Facilities;

c. He will comply with all the requirements of section 114 of the Air Act and section 308 of the Water Act relating to inspection, monitoring, entry, reports, and information, as well as all other requirements specified in section 114 and section 308 of the Air Act and the Water Act, respectively, and all regulations and guidelines issued thereunder; and

d. He will include or cause to be included the provisions of this Section in every nonexempt subcontract, and that he will take such action as the Government may direct as a means of enforcing such provisions.

2.6 REPORTS AND ACCESS TO PREMISES AND RECORDS.

a. The Owner shall furnish such information and reports pertinent to the Contract as reasonably may be required from time to time by the Government.

b. The Owner shall permit the Government or any of its duly authorized representatives to have access to the premises and, for the purpose of audit and examination, to have access to any books, documents, papers and records of the Owner that are pertinent to compliance with this Contract, including the verification of information pertinent to the housing assistance payments.

2.7 DEFAULT BY THE OWNER UNDER CONTRACT.

a. A default by the Owner under this Contract shall result if:

(1) The Owner has violated or failed to comply with any provision of, or obligation under, this Contract or of any Lease; or

(2) The Owner has asserted or demonstrated an intention not to perform some or all of his obligations under this Contract or under any Lease.

b. Upon a determination by the Government that a default has occurred, the Government shall notify the Owner of (1) the nature of the default, (2) the actions required to be taken and the remedies to be applied on account of the default (including actions by the Owner to cure the default, and, where appropriate, abatement of housing assistance payments in whole or in part and recovery of overpayments), and (3) the time within which the Owner shall respond with a showing that he has taken all the actions required of him. If the Owner fails to respond or take action to the satisfaction of the Government, the Government shall have the right to terminate this Contract in whole or in part or to take other corrective action to achieve compliance.

c. The availability of any remedy under this Contract shall not preclude the exercise of any other remedy available under this Contract or under any provisions of law, nor shall any action taken in the exercise of any remedy be deemed a waiver of any other rights or remedies. Failure to exercise any right or remedy shall not constitute a waiver of the right to exercise that or any other right or remedy at any time.

2.8 DISPUTES.

a. Except as otherwise provided herein, any dispute concerning a question of fact arising under this Contract which is not disposed of by agreement between the Department of Housing and Urban Development field office and the Owner may be submitted by the Owner to the Secretary of Housing and Urban Development. The decision of the Secretary or duly authorized representative for the resolution of such disputes shall be final and conclusive, unless determined by a court of competent jurisdiction to have been fraudulent, or capricious, or arbitrary, or so grossly erroneous as necessarily to imply bad faith, or not supported by substantial evidence. In connection with any proceeding under this Section, the Owner shall be afforded an opportunity to be heard and to offer evidence in support of his position.

b. This Section does not preclude consideration of questions of law in connection with the decision rendered under paragraph a of this Section; Provided, however, that nothing herein shall be construed as making final the decision of any administrative official, representative, or board, on a question of law.

2.9 INTEREST OF MEMBERS, OFFICERS, OR EMPLOYEES OF PHA, MEMBERS OF LOCAL GOVERNING BODY OR OTHER PUBLIC OFFICIALS. No member, officer, or employee of the PHA, no member of the governing body of the locality (city and county) in which the project is situated, no member of the governing body of the locality in which the PHA was activated, and no other public official of such locality or localities who exercises any functions or responsibilities with respect to the project, during his tenure or for one year thereafter, shall have any interest, direct or indirect, in this Contract or in any proceeds or benefits arising therefrom.

2.10 INTEREST OF MEMBER OF OR DELEGATE TO CONGRESS. No member of or delegate to the Congress of the United States of America or resident commissioner shall be admitted to any share or part of this Contract or to any benefits which may arise therefrom.

[3] Strike this Section if the Contract Rents on the effective date of this Contract, times the maximum total term of this Contract, are $100,000 or less.

2.11 ASSIGNMENT, SALE, OR FORECLOSURE.

a. The Owner agrees that he has not made and will not make any sale, assignment, or conveyance or transfer in any other form, of this Contract or the project or any part thereof or any of his interest therein, without the prior consent of the Government; Provided, however, that in the case of an assignment as security for the purpose of obtaining financing of the project, the Government shall consent in writing if the terms of the financing have been approved by the Government.

b. The Owner agrees to notify the Government promptly of any proposed action covered by paragraph a of this Section. The Owner further agrees to request the written consent of the Government in regard thereto.

c. (1) A transfer by the Owner, in whole or in part, or a transfer by a party having a substantial interest in said Owner, or transfers by more than one party of interests aggregating a substantial interest in said Owner, or any other similarly significant change in the ownership of interests in the Owner, or in the relative distribution thereof, or with respect to the parties in control of the Owner or the degree thereof, by any other method or means (e.g., increased capitalization, merger with another corporation or other entity, corporate or other amendments, issuance of new or additional ownership interests or a reclassification of ownership interests or otherwise) shall be deemed an assignment, conveyance, or transfer for purposes of this Section 2.11. An assignment by the Owner to a limited partnership, in which no limited partner has a 25 percent or more interest and of which the Owner is the sole general partner, shall not be considered an assignment, conveyance, or transfer.

(2) The term "substantial interest" means the interest of any general partner, any limited partner having a 25 percent or more interest in the organization, any corporate officer or director, and any stockholder having a 10 percent or more interest in the organization.

(3) The Owner, and the party signing this Contract on behalf of said Owner, represent that they have the authority of all of the parties having ownership interests in the Owner to agree to this provision on their behalf and to bind them with respect thereto.

d. In the event of foreclosure, including foreclosure by the Government, and in the event of assignment or sale agreed to by the Government or made to the Government, housing assistance payments shall continue in accordance with the terms of the Contract.

[If the project is subject to 24 CFR, Section 881.325, paragraph d above shall be stricken and the following shall be used instead:

e. In the event of foreclosure, or assignment or sale to the financing agency in lieu of foreclosure, or in the event of assignment or sale agreed to by the financing agency and approved by the Government (which approval shall not be unreasonably delayed or withheld), housing assistance payments shall continue in accordance with the terms of the Contract.]

031-36-44110-050

EXHIBIT "D"

The "Owner" agrees that the Affirmative Fair Housing Marketing Plan will be provided by the Department of Housing and Urban Development unless the owner provides such plan as approved by the Department of H.U.D. within the earlier of 60 days or initial closing of the construction loan.

SUITE 103

84 BUSINESS PARK DRIVE, SUITE 103, ARMONK, NEW YORK 10504 (914) 273-5800 TELEFAX (914) 273-6563

July 23, 2001
Via First Class Mail and Fax (315) ~~482~~ 428 0088

Mr. Tracy S. Newman
New York Quadel
217 Montgomery Street, Suite 400
Syracuse, NY 13202

RE: Annual Adjustment Rent Increase
LaMartine Terrace. Yonkers, NY 10701
Contract No. NY36 0020 003

Dear Mr. Newman:

The date of the above contract runs from June to June. We filed for an increase for the fiscal year 2000 which runs from June 2000 to June 2001. We also filed for a rent increase for the fiscal year 2001 running from June 2001 to June 2002.

Mr. Stephen Bolduc of my office specifically called Quadel to inquire about how we would file for two increases. It was his belief that we had to file first for the 2000-2001 increase get approval for that and then file for the second 2001 to 2002. Basically since the second rent increase is based on the first rent increase, he did not know how else it could be done.

Your office advised him to file both increases at the same time and advised him what formulas to use to arrive at the two increases. Therefore, both increases were filed at the same time.

The attached letter received by fax from you today dated July 12, 2001, implements the first increase for June 2000-2001 as the increase effective for the fiscal year 2001-2002.

There apparently is no issue that we can file for a rent increase at any point in time during the fiscal year of a project, however, that increase cannot be made retroactive. The only problem here, based on my conversation today with Cheryl of your office, is that both increases should not have been filed at the same time since only one increase can be implemented at any one time. Therefore, the information Mr. Bolduc initially received from your office was erroneous.

RECEIVED
JUL 26 2001
NEW YORK QUADEL

EXHIBIT 8
PENGAD 800-631-6989

Mr. Newman
Page Two
July 23, 2001

As you may be aware, we made numerous telephone calls to your office concerning the progress of the increases on this building and the one in Valentine. We were specifically advised there was no problem with respect to either the appraisal or the increases. While Cheryl has now stated that she advised Mr. Bolduc only one increase could be filed, I believe there has been a failure of communication. This issue was of concern to us to begin with as stated above. Mr. Bolduc not only speaks the English language but also has an MBA and had this information been conveyed to him, we would have withdrawn the second increase until the first was approved for the fiscal year 2000-2001.

This situation must be remedied since this project has not had an increase in seven (7) years for the reasons stated below.

Among the alternatives, would be to correct the approval of this increase for the fiscal year 2000-2001, not 2001-2002 and process the second increase which you already have for the year 2001-2002.

When these projects were originally built and rehabilitated under the Section 8 Turnkey Program, the costs could not be supported based on existing rent levels in the City of Yonkers because of the fact that Yonkers had imposed rent control. Rent control stopped all construction in a market that was in dire need of housing. It effectively froze the rent levels at levels that did not support construction or rehabs.

These Section 8 project were approved at 110% of fair market rent which is really free market, not rent controlled market. Rent increases were thereafter granted on an annual basis.

However, subsequently, DHUD through its eminent wisdom decided to change the rent increase formula to 70% of the median rental and thereafter lowered it further which impacted on the ability to get rent increases.

The DHUD action, however, did not freeze the cost of operating the building.

We sent an employee to various HUD seminars and either through her ignorance or the complexity of the process, she arrived at the conclusion that no increases were possible in this building.

Mr. Bolduc and myself spent a week reviewing the HUD rent increase process and, contrary to her opinion, found that the RCS Program would allow us to obtain rent increases since it does account for projects in areas where rent control is imposed.

Mr. Newman
Page Three
July 23, 2001

However, because of this error, approximately seven years went by without an increase and, therefore, resolving the current problem is of greater import to us than had we been getting increases every year.

I would also like to point out that in spite of the fact that we were not getting increases, we not only continued to maintain the property but major improvements were made such as replacing the roof, windows, the elevator, carpeting, etc., for which, even under rent control, we would have received rent increases.

Your prompt attention to resolving this matter would be appreciated.

Very truly yours,

PARK PROPERTIES ASSOCIATES, LP

Jerome Z. Ginsburg
JZG:lac
Enc.