IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PARK PROPERTIES ASSOCIATES, L.P., et al., Plaintiffs, | ) | No. 04-1757C |
| v. | ) | (Judge Allegra) |
| THE UNITED STATES, Defendant. | ) | |

DEFENDANT'S REPLY TO PLAINTIFFS' SUPPLEMENTAL BRIEF
REGARDING EXPECTATION DAMAGES

Pursuant to the Court's August 2, 2007 Order, defendant, the United States, respectfully submits this reply to the supplemental brief by plaintiffs, Park Properties, L.P., Valentine Associates, L.P., and St. John's I Associates, L.P. (hereinafter referred to as "the Owners") regarding expectation damages (i.e., "Plaintiffs' Brief on Expectation Damages" dated September 7, 2007).

The Court's August 2, 2007 Order, required additional briefing by the parties with respect to four issues:

1. In the context of determining expectation damages, at what point are the parties' expectations assessed? Specifically, should the court assess expectations at the time the contract was entered into or at the time of the breach(es)?

2. Are the parties' expectations measured solely by the terms of the contract, as reasonably construed? Is performance under similar contracts predating the execution of the contract relevant?

3. Do questions involving the application of the overall limitation in this case involve causation or mitigation? Which party has the burden of proof in demonstrating the parties' expectations regarding the use of that clause?

4. Whether, in light of the answers to the questions raised above, the party believes that this case still is amenable to being resolved as a matter of law?

The Government agrees with the Owners that the issue of the applicability of the overall limitation to the calculation of damages for the breach of contract found by the Court is amenable to being resolved as a matter of law. See Pl. Supp. Br. 19.[1/] We further agree with the Owners that, in assessing the parties' expectations under the HAP contracts, the Court should focus upon "the expectations of the parties at the time they entered the HAP contract," Pl. Supp. Br. 7, which can and should be gleaned from the terms of the Owners' HAP contracts. Perry v. Department of the Army, 992 F.2d 1575, 1578-79 (Fed. Cir. 1993) (court must "determine the intent of the parties at the time they contracted, as evidenced by the contract itself," quoting Greco v. Department of the Army, 852 F.2d 558, 560 (Fed. Cir. 1998)).[2/] And we agree that questions involving appli-

[1] In this reply, "Pl. Supp. Br. ____" refers to the referenced page(s) of "Plaintiffs' Brief on Expectation Damages" dated September 7, 2007.

[2] In response to the first issue posed by the Court, the Owners state that "expectation damages themselves are generally measured at the time of the breach," citing Carabetta Enterprises, Inc. v. United States, 68 Fed. Cl. 410, 413-14 (2005), aff'd, 482 F.3d 1360 (Fed. Cir. 2007). The court in Carabetta correctly observed that a breach-of-contract claimant "must establish forseeability, causation, and reasonable ascertainment of loss to recover for expectation damages," but it incorrectly stated that the claimant "must prove that the Government foresaw or reasonably could have foreseen the consequences at the time of its breach." 68 Fed. Cl. at 414. As discussed in "Defendant's Supplemental Brief" dated September 7, 2007, at pp. 2-4, the foreseeability limitation upon damages is applied at the time of contracting, not at the time of breach. See, e.g., Citizens Federal Bank v. United States, 474 F.3d 1314, 1321 (Fed. Cir. 2007); Indiana Michigan Power Co. v. United States, 422 F.3d 1369, 1373 (Fed. Cir. 2005); Hughes Communications Galaxy, Inc. v. United States, 271 F.3d 1060, 1066 (Fed. Cir. 2001). The precedent cited by Carabetta in support of the proposition that foreseeability of a claimed loss should be determined as of the time of breach, i.e., Chain Belt Co. v. United States, 127 Ct. Cl. 38, 115 F.Supp. 701 (1953), holds precisely the opposite. In Chain Belt, the Court of Claims opined: "In order to recover lost profits as damages for breach of contract, . . . [i]t must also be established that loss of profits in the event of breach was within the contemplation of the contracting parties either (1) because the loss was natural and inevitable upon the breach so that the defaulting party may be presumed from all the circumstances to have foreseen it; or (2) if the breach resulted in lost profits because of some special circumstances, those circumstances must have been known to the defaulting party *at the time the contract was entered into*." 127 Ct. Cl. at 58, 115 F.Supp. at 714 (emphasis added).

cation of the overall limitation to the calculation of damages in this case do not involve mitigation-of-damages precepts. The Government disagrees, however, with the Owners' refurbished analysis of the rent adjustment provisions contained in the HAP contracts in support of their contention that the overall limitation upon rent adjustments under the HAP contracts is not a limitation upon the calculation of damages for the breach of contract found by the Court.

According to the Owners, the issues enumerated above "all turn on one central question: Are the [Owners] required now to perform a separate comparability study to confirm that the rent adjustments based on the HUD-determined Automatic Annual Adjustment Factors ('AAAFs') do not exceed the so-called 'overall limitation' found in section 1.8d of the HAP contracts?" Pl. Supp. Br. 1. The Owners assert that "[t]he answer is no, because at the time they entered into their HAP Contracts, the [Owners] expected that they would receive the annual rent adjustments based on the full AAAFs, which already incorporated comparability-related criteria." Id. at 1-2. The Owners further argue that the AAAFs are the "presumptive adjustments" called for by the HAP contracts, citing Cisneros v. Alpine Ridge Group, 508 U.S. 10, 19-20 (1993), that "[t]he express terms of the HAP contracts entitle the [Owners] to the full AAAF here, because HUD did not make a specific determination that local conditions yielded rents that differed from the 'presumptive adjustments' yielded by the AAAFs," and that "[n]othing in the HAP Contract itself, or the administration of the Section 8 program by HUD, prohibits the owners from receiving the full AAAF adjustments that HUD previously calculated as appropriate for their areas." Id. at 2.

The Owners' argument is flawed in several respects. As a threshold matter, the Owners have not pointed to any evidence that, at the times the HAP contracts were entered, each of the

Owners expected that they would receive annual rent adjustments based upon the full AAAFs, which supposedly already incorporated comparability-related criteria, unless HUD specifically determined that local conditions yielded rents that differed from rents resulting from "presumptively" comparable, factor-based rent adjustments, much less that HUD knew or had reason to know that the Owners interpreted the HAP contracts in that manner. It is well-settled that, in contract interpretation, the "unexpressed, subjective unilateral intent of one party is insufficient to bind the other contracting party, especially when the latter reasonably believes otherwise." Firestone Tire & Rubber Co. v. United States, 195 Ct. Cl. 21, 30, 444 F.2d 547, 551 (1971); accord Andersen Consulting v. United States, 959 F.2d 929, 934 (Fed. Cir. 1992); Kenneth Reed Construction Corp. v. United States, 201 Ct.Cl. 282, 291, 475 F.2d 583, 588 (1973); Applegate v. United States, 52 Fed. Cl. 751, 756 (2002), aff'd, 70 Fed.Appx. 582 (Fed. Cir. 2003), cert. denied, 540 U.S. 1149 (2004); Cray Research, Inc. v. United States, 41 Fed. Cl. 427, 435 (1998); Steve Altman Photography v. United States, 18 Cl.Ct. 267, 275 (1989).

Factor-based rent adjustments are not the "presumptive adjustments" under the HAP contracts. As the court in Federal Housing Partners IV v. Cisneros, 55 F.3d 362 (8th Cir. 1995), stated:

> The contention that the AAAFs are the presumptive method of adjusting rents is incorrect by the terms of the contracts. While AAAFs might be the norm for practical reasons, the overriding principle set forth in the contracts is that "[AAAFs] shall not result in material differences between the rents charged for assisted and comparable unassisted units, as determined by the Government[.]" Because of this contractual clause, "no project owner may claim entitlement to formula-based rent adjustments that materially exceed market rents for comparable units." [Alpine Ridge, 508 U.S. at 21]. HUD's discretion to make rental comparisons and rent adjustments under the contracts prevented AAAFs from ever becoming a property

> right vested in landlords whose rents were materially different from comparable unassisted units.

Id. at 367-68.

Contract language should be afforded the meaning derived from the contract by a reasonably intelligent person acquainted with the contemporaneous circumstances. Firestone, 195 Ct. Cl. at 30, 444 F.2d at 551; Hol-Gar Manufacturing Corp. v. United States, 169 Ct. Cl. 384, 388, 351 F.2d 972, 975 (1965); Applegate, 52 Fed. Cl. at 756. The Owners also appear to contend that their interpretation of the rent adjustment provisions contained in the HAP contracts should be adopted because it comports with the meaning that would be derived from the contract by a reasonably intelligent person acquainted with the contemporary circumstances. They assert, for example, that "[a] reasonable person, looking at [the HAP contract rent adjustment provisions] would no doubt conclude that the overall limitation served merely to assure that HUD would construct area-specific AAAFs that incorporate local comparability criteria." Pl. Supp. Br. 8. The Owners contend that, "if a prospective participant in the Section 8 program had looked at a draft HAP Contract at the time the [Owners] entered into the subject HAP Contracts, he or she would have reached the conclusion that when it published the relevant local AAAF, HUD had already satisfied the overall limitation's comparability requirement." Pl. Supp. Br. 11. We do not agree.

Regarding annual rent adjustments, § 1.8a of the HAP contracts provides that "[AAAFs] will be determined by the Government at least annually" and that "interim revisions may be made as market conditions warrant." The overall limitation provision provides that, "[n]otwithstanding any other provisions of this Contract, adjustments as provided in this Section shall not result in

material differences between the rents charged for assisted and comparable unassisted units, as determined by the Government . . . ." The Owners' contention that a prospective participant in the Section 8 HAP Program would have understood the HAP contract to mean that, when it published the relevant local AAAF, HUD had already satisfied the overall limitation's comparability requirement, is unreasonable because such an interpretation would render the overall limitation inoperative or superfluous.

A "contract must be considered as a whole and interpreted to effectuate its spirit and purpose, giving reasonable meaning to all parts." Hunt Construction Group, Inc. v. United States, 281 F.3d 1369, 1372 (Fed. Cir. 2002). An "interpretation which gives reasonable meaning to all parts of an instrument will be preferred to one which leaves a portion of it useless, inexplicable, inoperative, void, insignificant, meaningless or superfluous; nor should any provision be construed as being in conflict with another unless no other reasonable interpretation is possible." Hol-Gar, 169 Ct.Cl. at 395, 351 F.2d at 979.

In Alpine Ridge, moreover, the Supreme Court held that the overall limitation provision does not empower the Government only to make prospective changes in the AAAFs where it discovers that such factors are producing materially-inflated rents. 508 U.S. at 19. Rather, as the Court held, "the [HAP] contracts do not prohibit the use of comparability studies to impose an independent cap on the formula-based rent adjustments . . . ." Id. at 17; see also id. at 21 ("We also think it clear that [the overall limitation]–which by its own terms envisions some comparison 'between the rents charged for assisted and comparable unassisted units'–affords the Secretary sufficient discretion to design and implement comparability studies as a reasonable means of effectuating its mandate."). In National Leased Housing Ass'n v. United States, 22 Cl.Ct. 649,

656 (1991), aff'd, 105 F.3d 1423 (Fed. Cir. 1997), this Court similarly concluded "that the 'Overall Limitation' provision of the HAP contracts permits HUD to conduct a comparability study and then modify the periodic rent adjustment that otherwise would result from application of the most recently published AAAFs based on the results of that study."[3/]

In National Leased Housing Ass'n v. United States, 32 Fed. Cl. 454, 466 (1994), the court observed that interpreting the overall limitation provision as expressing an overarching concern that Section 8 rents not be materially different from rents charged for comparable unassisted units squares with the parties' reasonable expectations when they entered the HAP contracts:

> If the project owners did not enter HAP contracts with HUD, they could expect to rent their units to tenants on the open market at rents approximating those charged for comparable unassisted units. Similarly, if HUD, without the benefit of the HAP contracts, tried to find apartments for low-income families, HUD could expect to pay approximately market rents. Therefore, interpreting the overall limitation provision to require adjustment of the contract rents in order to eliminate any material difference between rents charged for assisted and comparable unassisted units would be generally consistent with the reasonable expectations of both HUD and the project owners as to the value of the rented units. HUD and the projects owners would both be assured that contract rents would not stray too far from market rents. HUD could expect to pay and the project owners could expect to receive rents not materially different from the rents charged for comparable unassisted units on the open market.

To ignore the overall limitation in fashioning a damages award, therefore, would not be consis-

---

[3] AAAFs are distinct from rent comparability studies. AAAFs are set by HUD "based upon certain broad economic indices, the Consumer Price Index and the Bureau of the Census American Housing Surveys." National Leased Housing Ass'n v. United States, 105 F.3d 1423, 1426 (Fed. Cir. 1997). A rent comparability study, by contrast, is based upon a comparison of the assisted rent that would result from application of the relevant AAAF with rents charged for comparable units in three-to-five market-rate apartment buildings. Alpine Ridge, 508 U.S. at 14; National Leased Housing, 22 Cl.Ct. at 657.

tent with the reasonable expectations of the parties under the Owners' HAP contract. See also Statesman II Apartments, Inc. v. United States, 71 Fed. Cl. 662, 667 (2006) (disregarding overall limitation in calculation of damages for similarly-situated Section 8 project owners would put the owners in a better position than they would have been had the breach of contract found by the court not occurred, i.e., if HUD had performed under the HAP contract by making the annual rent adjustments in question).

The Owners also contend (seemingly inconsistently with their argument addressed above) that the overall limitation does not apply to a factor-based rent adjustment unless HUD has determined that "there was an anomaly in the local rental market that required it to double-check" the result of computing a rent adjustment based upon published annual adjustment factors. Pl. Supp. Br. 10. Again, we disagree.

On its face, the overall limitation does not provide that the overriding restriction upon rent adjustments contained in that provision is triggered only where HUD has made a specific determination that an anomaly in the local rental market warrants a second look at a potential factor-based rent adjustment. Nor has any court, including the Supreme Court in Alpine Ridge, recognized such a limitation upon the operation of the overall limitation provision contained in the HAP contracts.

The Owners also argue, incorrectly, that the Government's position regarding applicability of the overall limitation to the calculation of damages would nullify §§ 1.8b(2) and 1.8e of the HAP contracts. Pl. Supp. Br. 13. Section 1.8b(2) provides that, "[o]n the anniversary date of the Contract, the Contract Rents shall be adjusted by applying the applicable [AAAF] most recently published by the Government." Section 1.8e provides that "[a]ny adjustment in Contract

Rents shall be incorporated into Exhibit A by a dated addendum to the exhibit establishing the effective date of the adjustment." According to the Owners, "the unambiguous operation of these two clauses means that the AAAF-adjusted rent took effect on the next succeeding anniversary date and became the Contract Rent, where, as here, HUD did nothing to prevent it." Id. The Owners assert that the Government's position that the overall limitation is a constraint upon the calculation of damages for the breach of contract found by the Court "would read these provisions out of the HAP Contract, essentially saying that the rents do not take effect unless the [Owners] here undertake a comparability study years after the relevant anniversary date." Id.

The Owners assume, erroneously, that the HAP contracts are self-executing with respect to annual rent adjustments if HUD has not made a rent adjustment determination on or before the anniversary date. To the contrary, the HAP contract provisions relied upon by the Owners, i.e., §§ 1.8(2) and 1.8e, contemplate that, for an adjustment of the contract rent to occur, there must be a rent adjustment determination and corresponding action by HUD to modify the contract rent. Section 1.8b(2) specifies when annual adjustments are to be effective, i.e., "on the anniversary date" of the HAP contract. It does not provide that, absent a rent adjustment determination by HUD on or before the HAP contract anniversary date, the contract rent automatically is modified by applying a particular annual adjustment factor to the existing contract rent such that the project owner thereafter may begin billing HUD for rent subsidy payments at an elevated rate. And section 1.8e contemplates additional action to perfect a rent adjustment: that a rent adjustment under the HAP contract – whether it be an annual or a special additional rent adjustment – shall be incorporated into the HAP contract by a dated addendum establishing the effective date of the adjustment.

The Court has held that the failure of HUD to make the rent adjustments to which the Owners lay claim breached the HAP contracts. The task now before the Court is to fashion an appropriate remedy for the breach of contract found by the Court, i.e., damages sufficient to place the Owners in as good a position as they would have enjoyed had HUD not been constrained by the 1994 Amendments from fully performing the HAP contracts, keeping in mind that the Owners are not entitled, through an award of damages, to achieve a position superior to the one they reasonably would have occupied had the breach not occurred. That requires application of the overall limitation to the calculation of damages.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/John E. Kosloske
JOHN E. KOSLOSKE
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., Room 8012
Washington, D.C. 20530
Tele: (202) 307-0282
(FAX)(202) 514-8624

Attorneys for Defendant

OF COUNSEL:

NANCY CHRISTOPHER
Associate General Counsel

GERALD ALEXANDER
Assistant General Counsel

C. ALLEN VILLAFUERTE
Trial Attorney
Office of General Counsel
Department of Housing
and Urban Development
Washington, D.C.

SEPTEMBER 28, 2007

CERTIFICATE OF FILING

I hereby certify that on this 28th day of SEPTEMBER, 2007, a copy of "DEFENDANT'S REPLY TO PLAINTIFFS' SUPPLEMENTAL BRIEF REGARDING EXPECTATION DAMAGES" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/John E. Kosloske