# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PARK PROPERTIES ASSOCIATES, L.P., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 04-1757C |
| v. | ) | |
| | ) | (Judge Allegra) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFFS' REPLY BRIEF ON EXPECTATION DAMAGES

After several rounds of briefing concerning the "overall limitation" in the Plaintiffs' HAP Contracts and expectation damages, it is clear that the Plaintiffs are entitled to receive damages calculated on the basis of the AAAF-adjusted rents for each of the subject contract years. As explained below, the overall limitation is no bar to recovery by the Plaintiffs here, and the Court should grant summary judgment to the Plaintiffs with respect to damages.

## I. THE PARTIES ARE IN AGREEMENT ON MOST SUBSTANTIVE ISSUES CONCERNING DAMAGES AND THE OVERALL LIMITATION.

### A. The Parties Agree That Expectation Damages Are Assessed Based Upon The Terms Of Their Respective Housing Assistance Payments Contracts ("HAP Contracts") As Of The Time The Parties Executed Them.

The parties agree the terms of the HAP Contracts govern here. Government Supplement Brief ("Gov. Brief") at 4; Plaintiffs' Brief on Expectation Damages ("Pltfs. Brief") at 7. The HAP Contracts expressly provide that HUD calculates and publishes the automatic annual adjustment factors (AAAFs) annually (Sec. 1.8(b)(1)), that the rent adjustments become effective on the anniversary date of the HAP Contract (Sec. 1.8b(2)) and that those rents are incorporated into the HAP Contract as the new contract rent (Sec. 1.8e).

### B. The Parties Agree That Expectation Damages Are Intended To Compensate The Non-Breaching Party For "The Benefits He Expected To Receive Had The Breach Not Occurred."

Damages should put the injured party in as good a position as if the breaching party had fully performed. Gov. Brief at 2, *quoting* Glendale Federal Bank, FSB v. United States, 239 F.3d. 1374, 1380 (Fed. Cir. 2001) and *citing* San Carlos Irrigation & Drainage Dist. v. United States, 111 F.3d. 1557, 1562-63 (Fed. Cir. 1997); Pltfs. Brief at 6, 17. Previously, the Court determined that owners of Section 8 housing are entitled to receive the full AAAF-adjusted rent unless HUD takes action pursuant to the overall limitation contained at Section 1.8d of the HAP Contracts. Cuyahoga Metro. Housing Auth. v. United States, 57 Fed. Cl. 751, 759-760 (2003) ("Cuyahoga I"). HUD did not do so here and so necessarily, the Plaintiffs are entitled to receive damages calculated on the basis of the AAAF-adjusted rents.[1]

**C. The Parties Also Concur That The Plaintiffs Did Not Have An Obligation To "Mitigate" Their Damages Here.**

The Government admits that "[a]pplication of the overall limitation contained in the [Plaintiffs'] HAP contracts to the assessment of damages ***does not involve*** steps the Owners might have taken to avoid the claimed loss . . . ." Gov. Brief at 5 (emphasis added). Thus, the Government agrees with the Plaintiffs and the Court that only HUD itself can set AAAFs and implement the overall limitation. Because only HUD can take these actions and because the HAP Contract unmistakably requires the Plaintiffs to receive the AAAFs here, there was nothing that the Plaintiffs could do to mitigate their damages.

**D. The Parties Agree To The Standard Of Proof For Causation Of Expectation Damages Here.**

---

[1] To the extent the Government argues that the Plaintiffs' damages are limited to the actual dollar value of the HUD "housing assistance payments," it is mistaken. Gov. Brief at 1. The annual increases in the contract rent affected not only HUD's actual subsidy, but also the portion of the rent paid by the tenants. *See* HAP Contracts, § 1.6a (Pltfs. Brief Appendix at 7, 22, 41). To make the Plaintiffs whole, the Government must pay not only the portion of the Section 8 subsidy that it did not pay as a result of the breach, but also the portion of the tenant contribution that the Plaintiffs were unable to collect as a result of HUD's failure to make the appropriate AAAF-based adjustment.

The parties agree that, to the extent the Plaintiffs have a duty to show causation here, the Plaintiffs must only show that (1) "damages it seeks were reasonably foreseeable by the breaching party at the time of contracting"; (2) the "breach was a substantial factor in causing plaintiff's damages"; and (3) "the measure of damages is reasonably certain." Gov. Brief at 7, *quoting* Holland v. United States, 75 Fed. Cl. 483, 489 (2007) (citations and internal quotation marks omitted). All of these conditions are satisfied here. First, the Government knew at the time that it entered the HAP Contracts here that if it did not perform a comparability study (or some other action under Section 1.8d of the HAP Contract), the Plaintiffs were entitled to receive the full AAAF-adjusted rent. *See* Part I(B) (p. 2, above). Thus, the express terms of the HAP Contracts here provide that "a project owner would receive an automatic adjustment *unless HUD came forward with evidence triggering the limitation*." Cuyahoga I, 57 Fed. Cl. at 759 – 760 (emphasis added). Likewise, the Government's breach was "a substantial factor" in the injury suffered by the Plaintiffs. Where payment of the AAAF-adjusted rents was required in the absence of a HUD-performed comparability studies, where only HUD could perform those studies, and where HUD in fact did not perform those studies, these damages flowed as a natural result:

> ***In order to prove that losses were "proximately caused" by defendant's breach, plaintiffs need not show that they might have avoided or minimized such losses or that defendant's conduct was the "sole" cause of their damages***. . . . Rather, they must only show that the breach was a "substantial factor" and that the damages flowed "inevitably and naturally" therefrom.

Cuyahoga Metro Housing Auth. v. United States, 65 Fed. Cl. 534, 545 (2005) ("Cuyahoga II"), *quoting* Franconia Assocs. v. United States, 61 Fed. Cl. 718, 750 (2004) (emphasis added; intervening citations omitted). Finally, calculating the amount of the damages here is an exercise of simple mathematics: the starting contract rents at the subject time period are known, the applicable AAAFs have been duly published, and the damages themselves can be determined by

applying those adjustments on an iterative basis to the contract rents. Thus, to the extent the burden is on the Plaintiffs to demonstrate causation, they have met their burden in showing that the HAP Contracts entitle them to payment of the AAAF-adjusted rent.

**1. Action taken by some of the Plaintiffs in reliance on guidance from HUD and its agents does not break the causal chain.**

Indeed, the only matter concerning causation that the parties do not presently agree upon is the consequence of the letter sent by Jerome Ginsburg to HUD on behalf of two of the Plaintiffs, Park Properties Associates, L.P. ("Park Properties") and Valentine Associates. L.P. ("Valentine"). Pltfs. Brief Appendix at 56-58. The Government contends (Gov. Brief at 10 – 11) that these Plaintiffs did not seek rent adjustments for 1999 and 2000 because of a mistaken belief that local rent control rules precluded such increases. The letter does not support HUD's reading: the letter is a litany of complaints about misinformation furnished by HUD and its office to the Plaintiffs about rent increase issues. HUD cannot break the causal chain here by showing the Plaintiffs acted in reliance on guidance it and its agents provided.

Moreover, the only reason Mr. Ginsburg had to worry about seeking a rent increase was because, as a result of the enactment of the Departments of Veterans Affairs and Housing and Urban Development and Independent Agencies Appropriations Act, 1995, Pub. L. No. 103-327, 108 Stat. 2298, 2315 (1994) ("1994 Act"), HUD had already unlawfully attempted to shift the burden of requesting rent increases and performing comparability studies to the Plaintiffs and other Section 8 owners. Since Park Properties and Valentine would not have had to make such a decision but for HUD's breach, that decision cannot break the causal chain here.[2]

[2] The decision of Park Properties and Valentine not to pursue several rent adjustments is no more of an intervening cause than the decision of the plaintiff in Cuyahoga II not to comply with the rent adjustment procedures in the 1994 Act. Neither decision amounts to an intervening cause that would defeat causation here.

## II. THE PLAINTIFFS ARE ENTITLED TO DAMAGES BASED ON THE AAAF-ADJUSTED RENTS.

Having admitted these matters, the Government has painted itself into a corner, because it cannot now maintain, consistent with these admissions, that the Plaintiffs are required to perform comparability studies as a prerequisite to recovering their damages.

### A. The Overall Limitation Does Not Operate As A "Cap" On Damages.

The Government continues to insist that "any damages award for annual rent adjustments must be capped by the overall limitation contained in the HAP contracts," without a single supporting citation. Gov. Brief at 8. As the Plaintiffs have explained on several prior occasions, the overall limitation is not the *sine qua non* that the Government urges. First, the Government did not treat it as a cap in setting the initial contract rents. Pltfs. Brief at 4. Moreover, the cases that the Government has cited for this proposition dealt with whether, under the rent adjustment mechanism established by the Section 8 statute and the HAP Contracts, the overall limitation conferred authority on HUD to perform comparability studies. Plaintiffs' Brief In Opposition To Defendant's Cross-Motion For Partial Summary Judgment at 4-5. Those cases solely addressed HUD's power to perform rent comparability studies and certainly cannot be construed to impose a requirement to "double check" the automatic adjustments when, for whatever reason, HUD does not exercise that power.

Indeed, those cases that have construed the relation between automatic rent adjustments pursuant to Section 1.8b and the overall limitation under Section 1.8d conclude that the overall limitation does not serve as an absolute "cap" or "ceiling" here. Rather, they show that, when it calculated the AAAFs each year, HUD incorporated comparability criteria and as such, the AAAFs were designed to serve as the "presumptive adjustment called for under the [HAP] Contract." Cisneros v. Alpine Ridge Group, 508 U.S. 10, 19 (1993); Cuyahoga I, 57 Fed. Cl. at

760 (2003). As the Supreme Court explained in Alpine Ridge, "[i]t is only in those ***presumably exceptional cases*** where [HUD] has reason to suspect that the adjustment factors are resulting in materially inflated rents that a comparability study would ensue." Alpine Ridge at 19 (emphasis added). Relying on these principles, this Court has determined that, in order to carry out the express terms of the HAP Contract – in other words, to make certain that the AAAFs are truly ***automatic*** – Section 8 owners are entitled to receive the AAAFs unless, acting upon some suspicion that the AAAF-adjusted rent resulted in such a "materially inflated rent." Cuyahoga I, 57 Fed. Cl. at 759-760; Park Properties Assocs., L.P. v. United States, 74 Fed. Cl. 264 (2006). HUD did not do so here, and so, ***as a matter of the express terms of the HAP Contract,*** the Plaintiffs are entitled to receive AAAF-based damages.

The argument advanced by HUD here – that almost ten years later, it is authorized to reduce the Plaintiffs damages by conducting additional comparability studies pursuant to Section 1.8d – leads to bewildering and contradictory results. When HUD establishes AAAFs, it does so for scores of discrete geographic regions across the country; indeed, the agency possesses the power to carve out separate AAAF for particular sub-areas. 24 CFR § 888.204 (2007). As noted by Alpine Ridge, HUD incorporates comparability criteria when it calculates the AAAFs. 508 U.S at 19-20. The Court is required to give deference to the AAAFs that HUD has already calculated. *See* Thai Pineapple Pub. Co. v. United States, 187 F.3d 1362, 1365 (Fed. Cir. 1999) ("This court 'accords' deference to the determinations of the agency. . . [t]he methodologies relied upon by Commerce in making its determinations are presumptively correct."). Having concluded that the subject AAAFs are the correct rent adjustments for the Plaintiffs' properties, the Government cannot now disown its past calculations.

Whatever the Government did to determine the AAAFs in the subject years thus was what it thought was necessary to meet its duty under the law, and it cannot be changed retroactively by performing comparability studies now.[3] The Government has not raised any claim – nor can it now – that the AAAFs it calculated in the subject years are inaccurate, nor has it offered any basis "to suspect that the adjustment factors are resulting in materially inflated rents," as required by Alpine Ridge, 508 U.S. at 19. If those AAAFs were calculated in the ordinary course – and again, they are presumed so, and the Government has not suggested anything to the contrary – they remain the "presumptive adjustment" called for in the HAP Contract. Essentially, the Government is spinning the provisions of Section 1.8d to give it a legal "mulligan," allowing it to retroactively re-do the comparability calculations it already made. Those results are presumed to be correct and there is no precedent or principle that would allow the Government to essentially recalculate the AAAFs almost a decade after the old ones – by the express terms of the HAP Contract – became the lawful contract rents on each contract anniversary date. The Government has not – and cannot, at this late date – contend that its calculations of the AAAFs were inaccurate. Absent an allegation of such an error, it has no basis to deny the AAAF-based rents the Plaintiffs should have received.

**B. The Government Cannot Impose The Duty To Perform Comparability Studies On The Plaintiffs Here.**

Just as the Government cannot itself perform comparability studies now, it cannot require that the Plaintiffs perform comparability studies as a condition to receive their damages. The Section 8 statute and the HAP Contracts conferred "on HUD, and only on HUD, the burden of coming forward to show that a particular adjustment would violate the limitation." Cuyahoga I,

[3] Nothing in the Government's hypothetical redefinition of the overall limitations (Gov. Brief at 8-9) suggests that the comparable rents generated by the AAAFs in the subject years should be revisited now.

57 Fed. Cl. at 760 and cases cited. Essentially, in arguing that the Plaintiffs must undertake this duty, the Government is advancing the same argument that was rejected by the Court in Cuyahoga II, where the Government contended that the plaintiff's loss was not due to the enactment of the [1994 Act], but rather to its alleged failure to comply with the 1994 Act's requirements to perform rent increase requests. The Court in Cuyahoga II rejected that argument, holding that "[l]ogic suggests that, consistent with the theory of expectation damages, this court cannot afford controlling and preclusive effect to the very statutory provisions that trigger the breach." Cuyahoga II, 65 Fed. Cl. at 544.

Requiring the Plaintiffs to perform the same comparability studies in this case is nothing more than a back-door attempt to overturn the Court's prior holdings in Cuyahoga I and in Park Properties by forcing the Plaintiffs to perform the very task that resulted in the breach of their HAP Contracts. If the Government is correct – if the Plaintiffs here have the burden of showing that the AAAF-adjusted rent does not exceed the overall limitation – then presumably each Section 8 owner must do the same before it receives its annual rent adjustment. Indeed, this is precisely what the Government, in enacting and implementing the 1994 Act, sought to do – to require the owners, rather than HUD, to determine the validity of the annual contract adjustment – and it is precisely what the courts in Cuyahoga I, Statesman II, and Park Properties found to violate the contract. If the Court has concluded that the 1994 Act breached the Plaintiffs' HAP Contract when it denied them rent adjustments unless they performed the comparability studies that HUD alone could lawfully perform, it cannot logically impose an obligation on the Plaintiffs to perform those same studies in order to demonstrate their entitlement for damages now.

## III. BECAUSE ALL THE INFORMATION NEEDED TO CALCULATE THE PLAINTIFFS' DAMAGES IS ALREADY AVAILABLE, NO FURTHER DISCOVERY IS REQUIRED.

The Government contends that additional discovery is required here to ascertain data with respect to vacancies and unit turnovers during the subject period. Gov. Brief at 10-11. That is incorrect, because the Plaintiffs are already required to submit to HUD monthly vouchers containing this information on turnover and vacancies. HAP Contracts, § 1.6f, Pltfs. Brief Appendix at 8, 23 and 42 Each new tenant must be certified to HUD prior to payment of that apartment's subsidy. Id. These vouchers must be reviewed and approved by HUD prior to payment and later are subject to further review on the annual audit and any errors adjusted on the next voucher. HUD already has copies of all the documents to show turnover and vacancy for all these past years and any they cannot find can be furnished.

These documents, which are already in HUD's possession, are what will be used to do the damage calculation. In over 20 years HUD has applied the automatic rent adjustment factors and made payments based on these same written records and never deposed anyone on these issues. Indeed, these records are the only source upon which the Plaintiffs could testify at a deposition with respect to vacancies and turnovers, so the Government 's assertion is simply a ruse to delay the outcome of this case and to substantially and needlessly increase the Plaintiffs’ legal costs.

Moreover, turnover is only a factor if the Government is allowed to reduce the AAAFs by 1% for non turnover units. This Court has considered such a deduction not invalid based upon principle there is some savings in a tenant renewing. Park Properties, 74 Fed. Cl. at 274-76. In fact, it is not unusual for some concession to be given to a renewing tenant from the market rent. But HUD's application of this principle makes such a decrease in rent improper and unwarranted. There is nothing that would indicate that, in arriving at the standard AAAFs, HUD has excluded from its market analysis such renewal rents. In taking the 1% deduction, therefore, HUD is “double dipping.” More important, however, the 1% deduction, once imposed by the

Government, makes this decrease permanent – it does not allow an owner to recover such offsets as it normally would at the time a unit is re-rented. The current year's 1% deduction is added to each prior year's decreases, resulting in a noncumulative decrease in gross rents of 5% after five years and 10% after ten years. Moreover, if the AAAF adjustment yielded a 2% increase in any year, the 1% decrease results in a loss of 50% of that increase; if the AAAF increase is 3%, the loss is 33.3% of that year's increase. Consequently, as a result of the iterative application of the annual 1% deduction for which there is no remedy, those apartments inexorably fall further below even the Government's calculation of market rent each year without any hope of catching up. Given the low turnover and long waiting lists in subsidized buildings, this 1% reduction has a great effect on the Property's rent stream. Until HUD can demonstrate it is not double dipping and adopts a system to move the reduced rents to market, the 1% deduction should not be used to reduce Plaintiffs' damages. No landlord would grant renewal tenants concessions if they resulted in a permanent decrease in his allowable rent.

## CONCLUSION

For the foregoing reasons, the overall limitation is no constraint on the recovery of the Plaintiffs' damages here, and the Plaintiffs are therefore entitled to summary judgment with respect to their expectation damages based on each of the subject year's AAAFs, without application of the 1% non-turnover deduction.

Dated: September 28, 2007

Respectfully submitted,

/s/ Harry J. Kelly__________
Harry J. Kelly, ESQ.
NIXON PEABODY LLP
401 9th Street, N.W., Suite 900
Washington, D.C. 20004
Tele: (202) 585-8000
Fax: (202) 585-8080

Attorney for Plaintiffs

**CERTIFICATE OF FILING**

I hereby certify that on this 28th day of September, 2007, a copy of the foregoing Plaintiff's Reply Brief on Expectation Damages was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. Additionally, a copy of this filing has been transmitted by facsimile to the Government's counsel, John Kosloske, Esq.

/s/ Harry J. Kelly___________