**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| PARK PROPERTIES ASSOCIATES, L.P., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 04-1757C |
| v. | ) | |
| | ) | (Judge Allegra) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**JOINT STATUS REPORT**

Pursuant to the Court's May 23, 2008 Opinion (the "May 23 Opinion"), plaintiffs, Park Properties Associates, *et al.*, and the Defendant, the United States, respectfully submit the following joint status report setting forth their respective positions concerning the future schedule of this case with respect to calculating the Plaintiffs' damages here. The May 23 Opinion directs that, on or before June 27, 2008, the parties file a joint status report on how this case should proceed, with a proposed schedule that anticipates either settlement or trial on damages." As explained below, the Defendant states that, at this juncture of the proceedings, it is not interested in pursuing a settlement of this case. In view of that statement, the Plaintiffs and Defendant set out their alternative approaches to calculating the Plaintiffs' damages here, as follows:

**Plaintiffs' Proposal**

As a result of an exchange of correspondence between the parties,[1] it appears that the parties have agreed how damages will be calculated following the method that HUD would have used. Specifically, the parties have identified two issues that must be determined at this point: (1) the actual data and method for vacancies and turnover ratios, which are reductions from the

[1] *See* letter to Harry Kelly from John Kosloske dated June 18, 2008 (Attachment A hereto) and letter to John Kosloske from Harry Kelly dated June 24, 2008 (Attachment B hereto; without attachment).

Plaintiffs' damages, and (2) the relevance, if any, of certain correspondence allegedly relating to the damages of two of the Plaintiffs. With respect to the damage calculations, there should be no dispute about the necessary data. Indeed, as explained below, much of the necessary data can be derived from a unified set of documents – the voucher payment requests submitted by the Plaintiffs each month, and the reconciliation statements supplied by the U.S. Department of Housing and Urban Development ("HUD") in response to those vouchers. These are the documents that HUD and the Plaintiffs have used to calculate the Section 8 rent payments throughout the contract period, and they contain reliable, carefully vetted information concerning matters such as vacancies, turnovers and total payments that cannot be disputed now.[2] Issues concerning the relevance of correspondence between the parties are amenable to resolution by motion, and should not present genuine issues for trial. Consequently, the Plaintiffs propose the following approach to resolve the remaining matters in a manner that will yield useful data, eliminate factual disputes, and minimize the need for a trial in this case.

**1. Calculating the Plaintiffs' Damages.** The Plaintiffs believe that there is a limited amount of data that needs to be obtained to calculate the Plaintiffs' damages here. Fortunately, most of these data can be calculated quickly from a limited number of sources, as follows:

a) **Damages Interval.** Damages should be calculated on the basis of the Court's rulings on limitations contained in its initial decision in this case. Park Properties Associates L.P. v. United States, 74 Fed. Cl. 264, 270-271 (2006). Damages would be calculated starting with the undisputed contract rents in place at the beginning of the damages period in

[2] Plaintiffs object to the Defendant's proposal below, to the extent it seeks information concerning the original amount of damages contained in the Complaint, pursuant to RCFC 26(a)(1)(C). *See* pp. 6 - 8, below. Those original damage calculations were based on a number of assumptions, such as the application of the statute of limitations, that may no longer be appropriate, based on the Court's prior determinations. Having litigated these matters for several years, the parties' future actions should focus on determining damages based on the Court's determinations in this case, rather than recapitulating the Plaintiffs' original damage calculations.

1999 and would continue until the termination of the original Section 8 HAP contracts for the St. John's I Associates property and to the current date for the Park Properties and Valentine Associates properties.[3]

b) **Automatic Annual Adjustment Factors ("AAAFs").** The AAAFs can be derived from data previously published in the Federal Register by the U.S. Department of Housing and Urban Development ("HUD") and cannot be disputed. Some of this data was previously included in the parties' previously-submitted Statements of Facts in this case.

c) **Method of Damage Calculation.** Based on the exchange of correspondence between the parties since the May 23 Order, it appears that the parties are in general agreement that rents should be adjusted by applying the appropriate AAAFs to the preceding year's rent to determine the basis of the subsequent year's rent. This is the same method that HUD would have used to make rent adjustments itself. The specific dollar amount of the increase will be the additional subsidy due for that year after adjustments for vacancies and turnovers. These calculations will have to be performed for each unit type and then added together to determine the total damages interval using the appropriate AAAFs and related annual data. The total of all of the yearly damage calculations for each property will be the sum due.

d) **Vacancies.** Vacancies constitute a deduction against the amount that HUD is otherwise required to pay each month and, consequently, the owners file monthly voucher requests with HUD under penalty of perjury which include deductions due to vacancies.[4] *See* voucher request included in Attachment B. HUD reviews the voucher request and, in a

---

[3] If necessary, the Plaintiffs will move to amend the Complaint to adjust to address future damages.

[4] Though the HAP contract allowed HUD to pay various amounts to the owner on a vacant unit, HUD has not made such payments and therefore HUD has not paid for vacant units.

draft reconciliation report, objects to any items that it has questions on, and does not pay on any item it has questioned until those items are resolved. *See* Attachment C hereto. When payment is made a voucher reconciliation report is sent monthly with the amount that HUD will wire. These voucher requests have been submitted throughout the length of the HAP Contracts, have been thoroughly reviewed by HUD, and so contain an accurate statement of the vacancies needed to be included in damages calculations. With an integrated, fully audited body of data on rents, vacancies and related information obtained directly from HUD's files, which was used to validate every rent payment made to the Plaintiffs, there is no need for additional depositions or documentary discovery. To avoid factual disputes, the Plaintiffs agree to use HUD's own database – the same data that it would have used to calculate rent adjustments itself.

e) **Turnovers.** Turnover is determined by the amount of the vacancies occurring each year and that information can be derived directly from the vouchers. (While the Plaintiffs accept the Court's determination with respect to applying the 1% turnover deductions to rent calculations for purposes of the next phase of this case, they reserve the right to question whether, as a matter of law, HUD made those deductions correctly in this case.)

f) **Timing.** The Plaintiffs believe both the Plaintiffs and the Government should prepare their own damage calculations, using the damage calculation methods described above and copies of the vouchers and reconciliations in HUD's possession (the Plaintiffs believe that the parties ought to use documents produced by HUD to assure that they are the actual documents that HUD reviewed and audited and that supplied the basis for past rent calculations.). Subject to final agreement between the parties, the Plaintiffs believe it is reasonable for HUD to produce these materials within 45 days of the entry of an

appropriate order from the Court (the "Production Date").[5] Using the same data and these damage calculation methodologies, the parties should arrive at the same amount of damages, and should exchange their calculations within 45 days of the Production Date (the "Exchange Date"). The Plaintiffs do not believe it should be necessary to retain experts to make these calculations, but if either party does use an expert, the expert's report will be exchanged with the other side on the Exchange Date, and an additional period of 20 days would be allowed to depose the expert.

**2. Park Place/Valentine Properties Correspondence.** In the past, the Government has contended that certain statements in a July 23, 2001 letter to HUD's contractor suggest that the reason that the Park Properties and Valentine Associates plaintiffs did not pursue rent adjustments for 1999 and 2000 had less to do with the 1994 amendments to the Section 8 statute and HUD's implementing regulations, than with the owner's impression about the impact that local rent controls had on the properties' rents. The Plaintiffs disagree with the Government's factual characterization of that letter and believe that the contents of that letter are irrelevant as a matter of law, especially in light of the Court's repeated explanation that the rent adjustment mechanism in the HAP Contracts were intended to be automatic. *See* Park Properties Associates, L.P. v. United States, No. 04-1757C, 2008 U.S. Claims LEXIS 139 at *20 – 21 and n. 7 (Fed. Cl. May 23, 2008).

To resolve this matter, the Plaintiffs propose to file, within a time frame set by the Court, a motion for a protective order explaining why the Plaintiffs believe this information is irrelevant and why discovery on it should not proceed. If the Court agrees with the Plaintiffs that this matter is irrelevant to determination of damages, no discovery will be needed; if it determines

[5] If, for some reason, HUD is unable to locate a full set of the relevant documents, the parties can discuss appropriate steps to obtain the missing data.

that it is relevant, or defers a determination on these matters until a later point, discovery can be completed within the timeframe provided for the damages calculations discussed above.

The Plaintiffs believe their proposal will eliminate the need for expensive, time-consuming and ultimately unnecessary discovery; will accelerate the case schedule; will focus the parties on obtaining the information needed to calculate the Plaintiffs' damages; and will eliminate the need for trial here.

**Defendant's Proposal**

Defendant states that, at this juncture of the proceedings, it is not interested in pursuing a settlement of this case. Defendant, therefore, proposes the following pretrial and trial schedule with respect to the damages phase of this bifurcated proceeding.[6]

Fact Discovery

(a) Plaintiffs shall serve defendant with the initial disclosures required by RCFC 26(a)(1)(C) on or before July 25, 2008. The initial disclosures shall consist of a schedule of damages accompanied by a statement describing the source(s) for the items or figures listed (e.g., rent schedules, rent subsidy voucher requests), the location of the source(s), a time when the source(s) may be examined or audited by defendant, the name and address of the person(s) who prepared the damages schedule and who will be made available to defendant during any examination or audit of the source material to provide information and explanations necessary for verification of the information contained in the damages schedule.

[6] Initial discovery proceedings in this case were limited to discovery with respect to *liability* issues. See April 21, 2005 Order, ¶ 2; Joint Preliminary Status Report filed on March 28, 2005, at 4, 5.

(b) All fact discovery upon damages issues, including, but not limited to, requests for production of documents, interrogatories, and depositions of fact witnesses shall be completed on or before September 26, 2008.

Expert Discovery

(a) The disclosures of expert testimony required by RCFC 26(a)(2)(A) & (B) shall be made on or before October 24, 2008, by hand delivery or by overnight mail service (next business day delivery).

(b) The disclosure required by RCFC 26(a)(2)(C) of any evidence intended solely to contradict or rebut evidence on the same subject matter identified by plaintiff or defendant pursuant to RCFC 26(a)(2)(B) shall be made on or before November 24, 2008, by hand delivery or by overnight mail service (next business day delivery).

(c) Depositions of any person(s) identified by plaintiffs or defendant pursuant to RCFC 26(a)(2)(A) shall be completed on or before December 19, 2008.

Meeting of Counsel

Plaintiffs' counsel and defendant's counsel shall meet to satisfy the requirements of RCFC, Appendix A, ¶ 13, including, but not limited to, the exchange of exhibit and witness lists, on or before January 16, 2009.

Pretrial Submissions

(a) Plaintiffs shall file their pretrial memorandum, witness list, exhibit list, and any motion to present substantive evidence by way of deposition testimony pursuant to RCFC, Appendix A, ¶¶ 14(a), 15(a), 15(b), and 16 on or before January 30, 2009.

(b) Defendant shall file its pretrial memorandum, witness list, exhibit list, and any motion to present substantive evidence by way of deposition testimony pursuant to RCFC, Appendix A, ¶¶ 14(b), 15(a), 15(b), and 16 on or before March 2, 2009.

(c) Stipulations pursuant to RCFC, Appendix A, ¶ 17, setting forth all factual matters upon which plaintiffs and defendant agree shall be filed on or before March 16, 2009.

(d) A joint exhibit list pursuant to RCFC, Appendix A, ¶ 18, shall be filed on or before March 20, 2009.

Pretrial Conference

A pretrial conference will be held in Washington, D.C., on March 24, 2009.

Trial of Liability

A trial of damages issues will be held in Washington, D.C., during April 6-10, 2009.

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/Harry J. Kelly
HARRY J. KELLY, ESQ.
Nixon Peabody LLP
401 9th Street, N.W., Suite 900
Washington, D.C. 20004
Tele: (202) 585-8000

Attorney for Plaintiffs

/s/John E. Kosloske
JOHN E. KOSLOSKE
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., Room 8012
Washington, D.C. 20530

Tele: (202) 307-1438
(fax)(202) 514-8624

Attorneys for Defendant

June 27, 2008