ATTACHMENT A

**U.S. Department of Justice**

Civil Division

JKosloske
DJ # 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

Telephone: (202) 307-1438
Telecopy: (202) 514-8624

*Washington, D.C. 20530*

By E-Mail and First Class Mail

June 18, 2008

Harry J. Kelly, Esq.
Nixon Peabody LLP
401 9th Street, N.W.
Suite 900
Washington, D.C. 20004

Re: Park Properties Associates, L.P., et al. v. United States, No. 04-1757C (Fed. Cl.)

Dear Mr. Kelly:

This is in response to your letter of June 12, 2008. The overriding damages issue is the quantum of damages to which, under the court's rulings to date, each of the plaintiffs in this case is entitled. The Government has yet to receive from plaintiffs a comprehensive calculation of their claimed damages. All we have is plaintiffs' broad allegation in the complaint that they have been damaged "in an approximate amount of $2.75 Million." See Complaint, ¶ 21. We do not have any idea of how that figure was arrived at. From our perspective, one of the objects of damages discovery is to understand the precise amount of the damages claimed by each of the plaintiffs and the specific calculation of each of those claimed damages values. We expect to receive that information from plaintiffs in the initial disclosures required by Rule 26(a)(1)(C) and plaintiffs' evidentiary support for such calculations through document production requests. Depending upon the thoroughness and clarity with which that information is presented by plaintiffs, the Government may follow-up with contention interrogatories and/or depositions.

The factors or issues relevant to the calculation of the quantum of damages for Park Properties Associates, L.P. ("Park Properties"), and Valentine Associates, L.P. ("Valentine"), considering the court's May 23, 2008 ruling, would appear be the following:

1. The interval used to calculate damages for Park Properties and Valentine.

2. For the years that HUD or its agent for contract administration purposes did not adjust the contract rents under the Park Properties and Valentine HAP Contracts, the additional rent subsidy payments to which they would have been entitled if the contract rents for those years had been adjusted

based upon annual adjustment factors ("AAFs"). Factors relevant to that inquiry are the types and number of each type of dwelling unit, the contract rents that were in effect during those years for each type of dwelling unit, the applicable AAFs, tenant turnover/non-turnover ratio for each dwelling-unit type, and tenant vacancy rate for each dwelling-unit type.

3. For each year subsequent to a year in which Park Properties and Valentine did not receive an annual rent adjustment, any additional rent subsidy payments to which they would have been entitled for those years if the HAP contract rents for the prior years had been adjusted using AAFs. Factors relevant to that inquiry are the types and number of each type of dwelling unit, the contract rents in effect during subsequent years for each type of dwelling unit (including any rent adjustments that Park Properties and Valentine received for such years), the applicable AAFs, tenant turnover/-non-turnover ratio for each dwelling-unit type, and the tenant vacancy rate for each dwelling-unit type.

The factors or issues relevant to the calculation of the quantum of damages for St. John's I Associates, L.P. ("St. John's"), considering the court's May 23, 2008 ruling, would appear be the following:

1. The interval used to calculate damages for dwelling units covered by each of the stages in which the St. John's Phase I project was completed.

2. The date upon which the St. John's HAP Contract terminated for each of the stages in which the St. John's Phase I project was completed.

3. The types and number of each type of dwelling unit covered by each of the stages in which the St. John's Phase I project was completed.

4. For the years that HUD or its agent for contract administration purposes did not adjust the contract rents under the St. John's HAP Contract, the additional rent subsidy payments to which St. John's would have been entitled if the contract rents for those years had been adjusted based upon AAFs. Factors relevant to that inquiry are the types and number of each type of dwelling unit, the contract rents that were in effect during those years for each type of dwelling unit, the applicable AAFs, tenant turnover/-non-turnover ratio for each dwelling-unit type, and tenant vacancy rate for each dwelling-unit type.

5. For each year subsequent to a year in which St. John's did not receive an annual rent adjustment, the additional rent subsidy payments to which St. John's would have been entitled for those years if the HAP contract rents

for the prior years had been adjusted using AAFs. Factors relevant to that inquiry are the types and number of each type of dwelling unit, the contract rents in effect during subsequent years for each type of dwelling unit, the applicable AAFs, tenant turnover/non-turnover ratio for each dwelling-unit type, and tenant vacancy rate for each dwelling-unit type.

Discovery by the Government regarding the issues and factors listed above will consist of interrogatories, document production requests, requests for admission, and/or depositions.

An additional issue for discovery is the unresolved question whether the failure of Park Properties and Valentine to receive contract rent adjustments for the years 1999 and 2000 resulted from their mistaken belief that they were not eligible for rent increases because their rental housing projects (LaMartine Terrace and Lane Hill Senior Citizen Residence) were located in a housing market that was subject to local rent control regulation, and not because of the requirements of the 1994 amendments to the Section 8 statute or HUD Notice 95-12.

Very truly yours,

John Kosloske

JOHN E. KOSLOSKE
Senior Trial Counsel
Commercial Litigation Branch